C. Christine Burns #017108
Kathryn Hackett King #024698
Sarah N. O'Keefe #024598
**BURNSBARTON PLC**
2201 East Camelback Road, Ste. 360
Phone: (602) 753-4500
christine@burnsbarton.com
kate@burnsbarton.com
sarah@burnsbarton.com
*Attorney for Defendants State of Arizona
Gilbert Davidson, and Paul Shannon*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell B. Toomey,<br><br>Plaintiff,<br><br>vs.<br><br>State of Arizona; Arizona Board of Regents, d/b/a University of Arizona, a governmental body of the State of Arizona; et al.,<br><br>Defendants. | Case No. CV-19-00035-TUC-RM (LCK)<br><br>**DEFENDANTS STATE OF ARIZONA, DAVIDSON, AND SHANNON'S MOTION TO DISMISS COMPLAINT** |

Defendants State of Arizona, Gilbert Davidson, and Paul Shannon (collectively "State Defendants") move to dismiss Plaintiff Russell Toomey's Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Toomey's Complaint against the State Defendants should be dismissed in its entirety because: (1) Toomey failed to follow the administrative appeal process set forth in the health plan, and this bars his claims, (2) the health plan's exclusion for "gender reassignment surgery" does not discriminate "because of sex," as it applies equally to all employees, regardless of sex; the exclusion is just one of many other surgical and treatment exclusions in the plan; and the plan provides some other gender transition services, (3) sovereign immunity bars Toomey's claims against Davidson and Shannon, and (4) Toomey did not file a Charge of Discrimination against the State of Arizona and thus failed to exhaust his administrative remedies.[1]

---

[1] Pursuant to L.R.12.1(c), Kathryn King (counsel for State Defendants) and Burr Shields

## I. FACTUAL BACKGROUND

### A. Plaintiff Russell Toomey

According to the Complaint, Toomey is a man who is transgender. (*See* Complaint, Doc. 1, ¶¶4, 38) Toomey has a male gender identity, but the sex assigned to him at birth was female. (*Id.*) Toomey transitioned to live consistently with his male identity in 2003. (*Id.*) Since 2003, Toomey has received testosterone as a medically necessary treatment for gender dysphoria; he also received chest reconstruction surgery in 2004. (*Id.*) Toomey alleges he has "gender dysphoria," which he claims is the "diagnostic term for the clinically significant emotional distress experienced as a result of the incongruence of one's gender with their assigned sex and the physiological developments associated with that sex." (*Id.*, ¶¶27, 38) He further alleges his "treating physicians have recommended that he receive a hysterectomy as a medically necessary treatment for gender dysphoria." (*Id.*, ¶39)

### B. The Health Plan

Toomey is currently employed as an Associate Professor at the University of Arizona. (*Id.* ¶¶4, 14) He receives healthcare coverage through a self-funded health plan ("Health Plan") provided by the State of Arizona through the Arizona Department of Administration ("ADOA"). (*Id.*, ¶¶1, 32) The Health Plan identifies several categories of individuals who are eligible for coverage, including an "Eligible state Employee" and "Eligible university Employee," among others, and provides different enrollment provisions for different categories of eligible members. (*Id.*, Exh. A, at p. 6-8)

Individuals enrolled in the Health Plan must choose to receive benefits through a network provider. (*Id.*, ¶33) In 2018, the four network providers were Aetna, Blue Cross Blue Shield of Arizona ("BCBSAZ"), Cigna, and UnitedHealthcare. (*Id.*) In 2018, Toomey selected coverage through BCBSAZ. (*Id.*)

---

and Heather Macre (Plaintiff's counsel) met and conferred in good faith regarding this motion on March 15, 2018. The parties have been unable to agree the pleading is curable by a permissible amendment.

Article 10.1 of the Health Plan outlines "Exclusions and General Limitations." It states, "[i]n addition to any services and supplies specifically excluded in any other Article of the Plan Description, any services and supplies which are not described as covered are excluded. In addition, the following are specifically excluded Services and Supplies…" (*Id*., Exh. A, p. 55-58) Article 10.1 then goes on to identify numerous surgical procedures, treatments, and other medical services that are excluded from coverage. This list of 53 exclusions includes, for example, "Any medical treatment and/or prescription related to infertility once diagnosed," various "bariatric procedures," "Surgery for correction of Hyperhidrosis," "Treatment of erectile dysfunction and sexual dysfunction," "Phase 3 Cardiac rehabilitation," "hair transplants, and treatment of alopecia or hair loss," "Blood administration for the purpose of general improvement in physical conditions," "Cosmetic surgery or surgical procedures primarily for the purpose of altering appearance," "training or educational therapy for learning disabilities, developmental delays and intellectual disabilities," and other exclusions. (*Id*.) Thus, not all services and procedures deemed medically necessary by a clinician are covered under the Health Plan; certain medically necessary procedures may be excluded from coverage.

Another exclusion in the Health Plan is "Gender Reassignment Surgery." (*Id*.) While "Gender Reassignment Surgery" is excluded, the Health Plan does provide coverage for other forms of treatment for individuals with gender dysphoria. For example, coverage is provided for mental health counseling and hormone therapy medically necessary for gender dysphoria.[2] (*Id*., Exh. A, p. 26-27, 55-58).

**C. Toomey's Request for Coverage of a Hysterectomy**

Dr. Tiffany Woods Karsten submitted a precertification to BCBSAZ requesting approval for Toomey to receive a "total hysterectomy with removal of tubes and ovaries surgery" for his "health issue of transsexualism and gender identity disorder." (*Id*., Exh. G) On August 10, 2018, BCBSAZ sent a letter to Toomey explaining it could not approve

---

[2] The Health Plan defines "Covered Service" as "a service which is Medically Necessary and eligible for payment under the [Health] Plan." (Doc. 1, Exh. A, p. 93).

his request because the procedure "is considered a gender reassignment surgery, which is a benefit exclusion" under Section 10.1 of the Health Plan. (*Id.*) The August 10, 2018 letter explained, "You have the right to appeal this decision. If you or your doctor chooses to proceed with the appeal process, you may call the appeal line and fax any additional supporting information …. Please see the reverse side of this letter for the BCBSAZ appeal and grievance procedures." (*Id.*) The letter also provided contact information for Toomey to submit his appeal. (*Id.*)

As noted in the August 10, 2018 letter, the Health Plan contains "Claims Appeal Procedures." This procedure allows a member to appeal a denial of a claim for benefits. (*Id.*, Exh. A, p. 69-75). Under the procedure, the "initial request for review ***must*** be directed to the Third Party Claim administrator within 180 days after the claim payment date or the date of the notification of denial of benefits….The review of the denial will be made by the Third Party Claim Administrator, or by an appropriate named fiduciary who is neither the party who made the initial claim determination nor the subordinate of such party." (*Id.*, p. 70) (emphasis added). This is a "Level 1" appeal. (*Id.*, p. 72-73) There is also a "Level 2" appeal, which "must be filed within 60 days of the Level 1 denial" and will be reviewed and responded to by a different staff person with the Third Party Claim Administrator. (*Id.*) The final step is a "Level 3" appeal, which "must be filed within 60 days of the Level 2 denial"; this involves a "review[] by an accredited Independent Review Organization (IRO) as required under federal law at no charge to the Member." (*Id.*) In reviewing the claim, the IRO is not "bound by any decisions or conclusions reached during the Plan's internal claims and appeals process." (*Id.*) The IRO is tasked with reviewing information and documents received and considering, among other things, "The terms of [the] Plan to ensure that the IRO's decision is not contrary to the terms of the Plan, ***unless the terms are inconsistent with applicable law***." (*Id.*) Thus, the appeal process allows a member to challenge—and requires the IRO to review—whether the terms of the Health Plan are contrary to the law. The Health Plan also makes clear that a member may <u>not</u> file a lawsuit unless the member has first exhausted the administrative

review process: "12.12 <u>Limitation</u>. No action at law or in equity can be brought to recover on this Health Plan until the appeals procedure has been exhausted as described in this Plan." (*Id*., p. 74)

Toomey did not follow the appeal process described in the Health Plan and the August 10, 2018 letter from BCBSAZ. (*Id*., ¶¶6, 36) Had Toomey followed this appeal process, he could have pursued with the IRO the exact same position he is asserting in his lawsuit—that "the terms [of the Health Plan] are inconsistent with applicable law." (*Id*., Exh. A, p. 73) Despite the specific requirement in the Health Plan, Toomey failed to follow this appeal process, and chose to file this lawsuit instead.

**D. Toomey's Charge of Discrimination and Complaint.**

On August 15, 2018, Toomey filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") against "The Board of Regents of the University of Arizona," alleging sex discrimination. (*Id*., ¶22 and Exh. B; *see also* Charge, attached as Exh. 1).[3] The Board of Regents is a board established under Arizona law that "consists of ten appointive members." A.R.S. § 15-1621(A). The Board of Regents is responsible for "maintain[ing] . . . universities [that] are respectively designated northern Arizona university, Arizona state university and the university of Arizona." A.R.S. § 15-1601(A). Toomey did not file a Charge against the State of Arizona or the ADOA. (Doc. 1, ¶¶1, 22, Exh. A; Exh. 1)

As it relates to the State Defendants, Toomey's Complaint asserts two claims: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* against the State of Arizona, and (2) Equal Protection Clause of the Fourteenth Amendment (42 U.S.C. § 1983) against Shannon and Davidson. (Doc. 1). Davidson is the former Interim Director of ADOA.[4] Shannon is the Acting Assistant Director of the Benefits Services Division of

---

[3] Although Toomey did not attach his Charge to the Complaint, it is a public record and he references the Charge in the Complaint, so this Court can consider the Charge without converting this motion into a motion for summary judgment. *U.S. v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008) (court may take judicial notice of matters of public record and consider them without converting a Rule 12 motion into one for summary judgment); *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005).
[4] Elizabeth Thorson was appointed Interim Director of ADOA in February 2019. Counsel

ADOA. (*Id.*, ¶¶20, 21) Toomey seeks declaratory relief and "[p]ermanent injunctive relief . . . requiring Defendants to remove the Plan's categorical exclusion of coverage for '[g]ender reassignment surgery' and evaluate whether Dr. Toomey and the proposed classes' surgical care for gender dysphoria is 'medically necessary'." (*Id.*, p. 22).

## II. <u>LEGAL STANDARD</u>

Fed.R.Civ.P. 12(b)(6) requires dismissal when a complaint fails to state a claim upon which relief can be granted. In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face when the plaintiff pleads facts that allow the court to make a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

A complaint should also be dismissed when the Court lacks subject-matter jurisdiction over the claims presented. Fed.R.Civ.P. 12(b)(1). A court lacks subject matter jurisdiction over a Title VII claim where the plaintiff has failed to exhaust his administrative remedies by filing a Charge against the defendant. *Sommatino v. United States*, 255 F.3d 704, 707-11 (9th Cir. 2001).

## III. <u>LEGAL ANALYSIS</u>

### A. **Plaintiff's Complaint Should be Dismissed Because he did not Exhaust Administrative Remedies as Required by the Health Plan.**

The Affordable Care Act ("ACA") (Public Law 111-148) made changes to the Public Health Services Act ("PHSA") relating to group health plans, such as the Health Plan here. The PHSA regulations incorporate the claims and appeals procedures from the Employee Retirement Income Security Act ("ERISA"), including the requirement that plans provide for a full and fair review and abide by specific claims and appeals procedures – even if a plan is not subject to ERISA. 45 C.F.R. 147.136(b)(2)(ii)(C) (providing "full and fair review" and requiring plans to abide by ERISA regulations, 29

---

for the State Defendants has requested Plaintiff substitute Thorson for Davidson.

-6-

C.F.R. 2560.503-1(h)(2)). Thus, both ERISA and non-ERISA plans must provide a "full and fair review" process for a participant to appeal a claim denial.

As required in the PHSA regulations, the Health Plan at issue here provides a detailed process for a full and fair review of any adverse benefit decision. The member must file an appeal within 180 days,[5] and the process then includes a Level 2 and Level 3 appeal. An IRO (who reviews the Level 3 appeal) is to consider the "terms of [the] Plan to ensure that the IRO's decision is not contrary to the terms of the Plan, *unless the terms are inconsistent with applicable law*." (Doc. 1, Exh. A, p. 73) (emphasis added). Thus, Toomey had the opportunity, and the obligation, to give the Health Plan a chance to review his claim denial and to approve the claim if denying it was contrary to applicable law. Toomey, however, did not follow the Health Plan's required procedure to review and evaluate whether the "terms are inconsistent with applicable law"; instead, he went straight to court. This prevents him from now bringing this suit, as the Health Plan states: "No action at law or in equity can be brought to recover on this Plan until the appeals procedure has been exhausted as described in this Plan." (*Id.*, p. 74).

The courts have been clear - disputes should be addressed within the appeals process of a health plan, under both ERISA and non-ERISA plans—so courts do not become administrators of health plans. This is why exhaustion of administrative remedies is mandatory before a plan member may bring suit. *See Harrow v. Prudential,* 279 F.3d 244, 249-50 (3d Cir. 2002) (courts require exhaustion of administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned"); *McGraw v. Prudential,* 137 F.3d 1253, 1263 (10th Cir. 1998) ("ERISA contains no explicit exhaustion requirement although we have observed exhaustion of administrative (i.e., company or plan-provided) remedies is an implicit prerequisite to seeing judicial relief"); *Lane v. Sunoco,* 260 F.

---

[5] Toomey's claim was denied on August 10, 2018; therefore, his deadline to file an appeal under the Health Plan was February 6, 2019.

App'x 64, 65–66 (10th Cir. 2008); *Roche v. Aetna,* 165 F. Supp. 3d 180, 188 (D.N.J. 2016) (in case evaluating non-ERISA plan, plaintiff's argument "does not obviate the requirement to seek administrative review before filing suit"; granting summary judgment because plaintiff did not exhaust administrative remedies before filing suit).

Toomey's Complaint sidesteps the process designed in the Health Plan. In this lawsuit, Toomey is seeking coverage for a procedure under the Health Plan. He submitted a claim that was denied, but did not follow the required process in the Health Plan to appeal the denial of his claim—a process that would have allowed him to make the very same arguments to the IRO he has presented to this Court: that the "terms are inconsistent with applicable law." *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir. 1990) ("Nothing in the legislative history suggests that Congress intended federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits"). Per the Health Plan's terms, Toomey cannot bring suit before exhausting the administrative remedy, and his deadline to file an appeal passed on February 6, 2019. Thus, Toomey's Complaint should be dismissed with prejudice.

### B. Toomey's Title VII Claim Should Be Dismissed.

Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII does not define the term "sex." "It is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp.,* 571 U.S. 220, 227 (2014). "Therefore, we look to the ordinary meaning of the term [] at the time Congress enacted the statute." *Perrin v. U.S.,* 444 U.S. 37, 42 (1979). When Title VII was enacted in 1964, the "ordinary meaning" of the term "sex" was biological sex: "either of two divisions of organisms

distinguished respectively as male or female." Webster's Seventh New Collegiate Dictionary 795 (1963).

A coverage exclusion that applies equally to members of both sexes, as here, does not violate Title VII. "The critical issue" in determining whether an employer has engaged in sex discrimination, as "Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 80 (1998). The Health Plan–which excludes "gender transition surgery" for members of both sexes–applies neutrally to both men and women and does not result in disparate, disadvantageous treatment of similarly-situated male or female employees. Therefore, it does not discriminate "because of sex."

Plaintiff alleges the Health Plan exclusion discriminates against him "based on transgender status and gender nonconformity." (Doc. 1, ¶60) Congress has passed legislation that prohibits discrimination based on "gender identity" as a separate category (in addition to "sex" or "gender") in other contexts. *See* 18 U.S.C. § 249(a)(2)(A) and (c)(4) (prohibiting acts or attempts to cause bodily injury to any person "because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability of any person"); 34 U.S.C. § 12291(b)(13)(A) (prohibiting discrimination in federally funded programs "on the basis of actual or perceived race, color, religion, national origin, sex, gender identity (as defined in paragraph 249(c)(4) of Title 18), sexual orientation, or disability"). Despite those decisions, Congress has repeatedly considered but thus far rejected proposed legislation that would add "gender identity" to the list of protected classes for employment non-discrimination purposes. *See, e.g.*, The Equality Act: H.R. 2282, 115th Cong. (2017), H.R. 3185 114th Cong. (2015), S. 1858, 114th Cong. (2015); Employment Non-Discrimination Act: H.R. 1755, 113th Cong. (2013), S. 815, 113th Cong. (2013), S. 811, 112th Cong. (2011), H.R 1397, 112th Cong. (2011), H.R. 2981, 111th Cong. (2009), H.R. 3017, 111th Cong. (2009), S. 1584, 111th Cong. (2009), H.R. 2015, 110th Cong. (2007). One bill currently before Congress seeks to add "gender

identity" as a protected class in employment. The Equality Act, H.R. 5, 116th Cong. (2019). Thus, to date, Congress has decided not to add transgender status as a group to the list of protected classes in Title VII. *DeLeon v. Ashcroft,* 105 F.App'x 176, 180 (9th Cir. 2004) ("To read language into a statute that Congress has considered and rejected, is not a construction of [the] statute, but, in effect an enlargement of it by the court"); *U.S. v. LKAV,* 712 F.3d 436, 444 (9th Cir. 2013) ("a decision to [rearrange] or rewrite [a] statute falls within the legislative, not the judicial, prerogative").

Toomey is asking this Court to use Title VII to require employer-sponsored benefit plans to cover gender reassignment surgery for a classification of individuals that Title VII does not currently protect. Courts have explained this is beyond the province of the judiciary, and instead is a task for Congress. *See Etsitty v. Utah Transit Auth.,* 502 F.3d 1215, 1222 n.2 (10th Cir. 2007) ("If transsexuals are to receive legal protection apart from their status as a male or female, . . . such protection must come from Congress and not the courts"); *Ulane v. Eastern Airlines, Inc.,* 742 F.2d 1081, 1087 (7th Cir. 1984) ("if the term 'sex' as it is used in Title VII is to mean more than biological male or female, the new definition must come from Congress"); *Sommers v. Budget Mktg.,* 667 F.2d 748, 750 (8th Cir. 1982) ("the plain meaning must be ascribed to the term 'sex' in absence of clear congressional intent to do otherwise. Furthermore, the legislative history does not show any intention to include transsexualism in Title VII"); *Johnston v. Univ. of Pittsburgh*, 97 F. Supp. 3d 657, 676-77 (W.D. Pa. 2015) ("It is within the province of Congress–and not this Court– to identify those classifications which are statutorily prohibited"; sex "means nothing more than male and female, under the traditional binary conception of sex consistent with one's birth or biological sex").

Toomey may attempt to rely on *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) and its progeny to support his Title VII claim, but the holding in *Price Waterhouse* is inapposite. For one thing, the case did not involve transgender persons. Rather, in *Price Waterhouse*, a female plaintiff alleged her employer failed to promote her to partnership because she was "aggressive." The Supreme Court held Title VII was intended to prohibit

disparate treatment based on "sex stereotypes," which is a failure to conform to stereotypical gender norms based on an individual's conduct: "[A]n employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender…An employer who objects to aggressiveness in women but whose positions require this trait places women in an intolerable and impermissible catch 22: out of a job if they behave aggressively and out of a job if they do not." *Id*. at 250-51. The *Price Waterhouse* "sex stereotyping" theory is distinct from the facts here. The exclusion in the Health Plan does not require that Toomey act or behave a certain way – nor is there an allegation that the medical benefits decision was based on Toomey's conduct. The exclusion is facially neutral, applicable to all employees, regardless of sex. And Toomey's Complaint does not allege he is unable to present himself at work as a male or suffers any adverse consequences from doing so. Thus, the benefits exclusion does not constitute "sex stereotyping" under *Price Waterhouse*.

But even if Title VII reaches an employer-sponsored health plan's exclusion of gender reassignment surgery (it does not), the Complaint still does not state a claim. Title VII discrimination occurs "where an employer has treated a particular person less favorably than others *because of* a protected trait…. A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Ricci v. DeStefano,* 557 U.S. 557, 577 (2009) (emphasis added) (internal citations and question marks omitted). "It is insufficient for a plaintiff . . . to show the employer was merely aware of the adverse consequences the policy would have on a protected group." *AFSCME v. Washington,* 770 F.2d 1401, 1405 (9th Cir. 1985). Here, a facially neutral benefits policy cannot give rise to a Title VII claim where, as here, Plaintiff's Complaint does not contain allegations supporting a reasonable inference – "stronger than a mere possibility," *Windy City Innov. v. Microsoft,* 2016 WL 3361858, at *3 (N.D. Cal 2016) – that the exclusion resulted from an intent to discriminate against a protected class. *See Wood v. City of San Diego,* 678 F.3d 1075, 1081-82 (9th Cir. 2012) (being "aware"

male employees would disproportionately benefit from a change to surviving spouse benefit is not enough under Title VII).

Here, the Health Plan exclusion does not discriminate *because of* sex, sex-stereotyping, or transgender status. Indeed, the Health Plan provides coverage for some gender transition services, including mental health counseling and hormone therapy deemed medically necessary by a clinician to treat gender dysphoria—demonstrating the Health Plan does *not* eliminate coverage for all gender transition treatment. Also, the gender reassignment surgery exclusion is just one of many exclusions in the Health Plan – all of which apply to various individuals regardless of medical necessity. (Doc. 1, Exh. A, p. 26-27, 55-58, 93) Thus, Toomey's Title VII claim should be dismissed with prejudice.

### C. Toomey's Equal Protection Act Claim Should Be Dismissed.

The Equal Protection Clause of the 14th Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause "does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992). A "classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity" and is subject to minimum scrutiny—rational basis review. *Heller v. Doe*, 509 U.S. 312, 319–21 (1993).

Toomey's allegations for his Title VII and Equal Protection Act (§1983) claims are the same – that the Health Plan discriminates "based on transgender status and gender nonconformity." (Doc. 1, ¶¶60, 72). In "discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas,* whether that case is brought under §§ 1981, 1983 or Title VII. Because plaintiff's Title VII [] claims failed, so would his claims under §§1981 and 1983." *Drake v. City of Fort Collins,* 927 F.2d 1156, 1162 (10th Cir. 1991); *see also Etsitty,* 502 F.3d at 1227-28 ("Because Etsitty does not argue there was a violation of the Equal Protection Clause separate from her Title VII sex discrimination claim, her Equal Protection claim

fails for the same reasons discussed above"). Thus, for the same reasons explained above, the Health Plan does not discriminate based on sex. *Krauel v. Iowa Methodist Med. Ctr.,* 95 F.3d 674, 680 (8th Cir. 1996) (the "fertility treatment exclusion is not a sex-based classification because it applies equally to all individuals, male or female"); *Saks v. Franklin Covey,* 316 F.3d 337, 347 (2d Cir. 2003) ("Because male and female employees afflicted by infertility are equally disadvantaged by the exclusion of surgical impregnation procedures, we conclude that the plan does not discriminate on the basis of sex").

The Supreme Court has cautioned against "creat[ing] a new quasi-suspect classification and subject[ing] all governmental action based on that classification to more searching evaluation." *City of Cleburne v. Cleburne Living,* 473 U.S. 432, 446 (1985). Courts have applied the rational basis test to classifications based on transgender status. *Druley v. Patton,* 601 F.App'x 632, 635 (10th Cir. 2015) ("To date, this court has not held that a transsexual plaintiff is a member of a protected suspect class for purposes of Equal Protection claims"); *Murillo v. Parkinson,* 2015 WL 3791450, *12 (C.D. Cal. 2015); *Kaeo–Tomaselli v. Butts*, 2013 WL 399184, *5 (D. Haw. 2013) ("Nor has this court discovered any cases in which transgendered individuals constitute a 'suspect' class"); *Jamison v. Davue*, 2012 WL 996383, *4 (E.D.Cal. 2012) ("transgender individuals do not constitute a 'suspect' class, so allegations that defendants discriminated against him based on his transgender status are subject to a mere rational basis review"); *Brainburg v. Coalinga State Hosp.,* 2012 WL 3911910, *8 (E.D. Cal. 2012); *Stevens v. Williams*, 2008 WL 916991, *13 (D. Or. 2008) ("Transsexuals are not a suspect class for purposes of the equal protection clause" and thus "classifications based upon these grounds must only be reasonably related to legitimate penological interests"); *Johnston,* 97 F. Supp. 3d at 668 ("rational basis standard" for "allegations of discrimination by transgender individuals").

On a rational basis review, a classification "is accorded a strong presumption of validity." *Heller,* 509 U.S. at 319. "State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably

may be conceived to justify it." *McGowan v. State of Md.,* 366 U.S. 420, 425-26 (1961). Here, Toomey has "not allege[d] any facts suggesting the . . . decision concerning [the exclusion] do[es] not bear a rational relation to a legitimate state purpose." *Druley,* 601 F.App'x at 635-36. "Where, as here, there are plausible reasons for [the state] action, [the court's] inquiry is at an end." *U.S. Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179 (1980) (Supreme Court recognizing the "task of classifying persons for benefits inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line"). Courts have recognized that the government's interests in cost containment and reducing health costs are substantial. *See, e.g., Harris v. Lexington-Fayette Urban County Gov't,* 685 Fed. App'x 470, 473 (6th Cir. 2017); *IMS Health Inc. v. Sorrell,* 630 F.3d 263 (2d Cir. 2010). Thus, Toomey's Equal Protection Act claim should be dismissed with prejudice.

**D. Sovereign Immunity Bars the Claims Against Davidson and Shannon.**

The 11th Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. Amend. XI. The Eleventh Amendment bars suits against a state brought by private parties, whether the relief sought is money damages or an injunction. *See Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-01 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought.").

*Ex Parte Young* recognizes an exception to 11th Amendment immunity that allows an action for "prospective injunctive relief" by a private citizen against a state officer whose acts violate federal law. 209 U.S. 123 (1908). A court applying the *Ex Parte Young* doctrine "need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Public. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002).

Toomey's requested relief is not prospective injunctive relief. Instead, what Toomey actually seeks is a reversal of the Health Plan's August 10, 2018 denial of coverage for his gender reassignment surgery: Toomey seeks an injunction to "remove the Plan's categorical exclusion of coverage for '[g]ender reassignment surgery and evaluate whether [Toomey's] surgical care for gender dysphoria is 'medically necessary' in accordance with the Plan's generally applicable standards and procedures." (Doc. 1, p. 22). This remedy Toomey seeks is, in fact, a "retroactive payment of benefits" to Plaintiff, and such a request is barred by the 11th Amendment. *Edelman v. Jordan*, 415 U.S. 651 (1974); *LaFleur v. Wallace State Cmty. Coll.*, 955 F. Supp. 1406, 1422 (M.D. Ala. 1996) ("Prospective injunctive relief does not include back pay and benefits").

*Edelman* provides guidance. There, the plaintiff filed a class action for injunctive and declaratory relief against Illinois officials who were administering programs to aid the aged, blind, and disabled. The trial court "ordered the state officials to release and remit AABD benefits wrongfully withheld," but the Supreme Court held the 11th Amendment barred these "retroactive payment of benefits found to have been wrongfully withheld." *Edelman*, 415 U.S. at 656, 678. Just like in *Edelman*, Toomey's requested relief would require a retroactive award of benefits (through the expense of public monies) that were previously denied to him. As the Supreme Court articulated in *Edelman*, this is impermissible and barred by the 11th Amendment: The relief "requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those [who were denied benefits] when petitioner was under no court-imposed obligation to conform to a different standard." The relief "will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action. It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id.* at 668. Just like in *Edelman*, the relief Plaintiff

seeks against Shannon and Davidson does not meet the *Ex Parte Young* exception and is barred by the 11th Amendment.[6]

### E. Plaintiff Failed to Exhaust Administrative Remedies under Title VII.

Plaintiff has asserted a Title VII claim against the State of Arizona. But the Title VII claim should be dismissed because he did not first file an EEOC Charge against the State of Arizona; thus, he failed to exhaust his administrative remedies—a prerequisite to filing a Title VII claim. Under Title VII, a "charge under this section ***shall*** be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) ***shall*** be served upon the person against whom such charge is made within ten days thereafter." 42 U.S.C. § 2000e-5(e)(1) (emphasis added). Toomey filed a Charge against "The Board of Regents of the University of Arizona," but he never filed a Charge against the State of Arizona or ADOA, which provides the Health Plan to him as an employee of the University of Arizona. (Doc. 1, ¶¶1, 4, 22, 32 and Exh. B; Exh. 1)

Plaintiff's failure to exhaust his administrative remedies with respect to the State of Arizona undermines the purpose of the charge-filing requirements in Title VII, as the State and ADOA were never on notice of Toomey's claims and there was no opportunity to review his claims or attempt conciliation through the EEOC process: "One purpose of requiring that an administrative charge be brought prior to the institution of a lawsuit is to allow the opportunity to determine the scope of the alleged violation and attempt conciliation." *Luce v. Dalton*, 166 F.R.D. 457, 462 (S.D. Cal. 1996); *see also Lattimore v. Polaroid,* 99 F.3d 456, 464 (1st Cir. 1996) (Title VII "require[s] an employee to file an administrative charge as a prerequisite to commencing a civil action for employment

---

[6] "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945) (overruled on other grounds). "Suits against state officials in their official capacity . . .should be treated as suits against the State." *Hafer v. Melo,* 502 U.S. 21, 25 (1991).

discrimination … to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation"). Because Toomey failed to exhaust his administrative remedies against the State of Arizona, the Title VII claim should be dismissed, including for lack of subject matter jurisdiction. *Sommatino*, 255 F.3d at 707-11 (affirming dismissal for lack of subject matter jurisdiction for failure to exhaust administrative remedies by filing EEOC Charge).

## IV. CONCLUSION

For all of the reasons set forth above, the State Defendants request dismissal of Plaintiff's Complaint in its entirety and with prejudice.

RESPECTFULLY SUBMITTED this 18th day of March, 2019.

**BURNSBARTON PLC**

By /s/*Kathryn Hackett King*
C. Christine Burns
Kathryn Hackett King
Sarah N. O'Keefe

# **CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

Kathleen E. Brody
Molly Brizgys
ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
kbrody@acluaz.org
mbrizgys@acluaz.org

Joshua A. Block
Leslie Cooper
American Civil Liberties Union Foundation
125 Broad Street, Floor 18
New York, NY 10004
jblock@aclu.org
lcooper@aclu.org

James Burr Shields
Heather A. Macre
Natalie B. Virden
Aiken Schenk Hawkins & Ricciardi P.C.
2390 East Camelback Road, Suite 400
Phoenix, AZ 85016
burr@aikenschenk.com
ham@aikenschnek.com
nbv@aikenschenk.com
*Attorneys for Plaintiff*

Paul F. Eckstein
Austin C. Yost
Perkins Coie LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
PEckstein@perkinscoie.com
AYost@perkinscoie.com
DocketPHX@perkinscoie.com
*Attorneys for Defendants Arizona Board of Regents,*
*d/b/a University of Arizona; Ron Shoopman; Larry Penley;*
*Ram Krishna; Bill Ridenour; Lyndel Manson; Karrin*
*Taylor Robson; Jay Heiler; and Fred Duval*

s/Carolyn Galbreath