**WO**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Russell B. Toomey,                                              )
                                                               )        CV 19-0035-TUC-RM (LAB)
                      Plaintiff,                               )
v.                                                             )
                                                               )        **REPORT AND**
State of Arizona;  Arizona Board of Regents,)                           **RECOMMENDATION**
d/b/a University of Arizona, a governmental)
body of the State of Arizona; et al.,                          )
                                                               )
                      Defendants.                             )
_____)

Pending before the court is the motion to dismiss pursuant to Fed.R.Civ.P 12(b)(1) and 12(b)(6), filed on March 18, 2019, by the State of Arizona; Gilbert Davidson, who is interim director of the Arizona Department of Administration; and Paul Shannon, who is Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration. (Doc. 24);  (Doc. 1, p. 6)

The plaintiff in this action, Russell B. Toomey, is an associate professor employed at the University of Arizona. (Doc. 1, p. 4)  He receives health insurance from a self-funded health plan (The Plan) provided by the State of Arizona.  (Doc. 1, pp. 3, 10)  The Plan generally provides coverage for medically necessary care.  (Doc. 1, pp. 3, 10)  There are coverage exclusions, however, one of which is for "gender reassignment surgery."  (Doc. 1, p. 13)

Toomey is a transgendered male.  (Doc. 1, p. 12)  "[H]e has a male gender identity, but the sex assigned to him at birth was female."  (Doc. 1, p. 12)  Toomey has been living as a male since 2003.  (Doc. 1, p. 12)  His treating physicians have recommended he receive a hysterectomy as a medically necessary treatment for his gender dysphoria.  (Doc. 1, p. 12) Toomey sought medical preauthorization for a total hysterectomy, but he was denied under the Plan's exclusion for "gender reassignment surgery."  (Doc. 1, p. 13)

On January 23, 2019, Toomey brought the pending action in which he argues the Plan's exclusion is sex discrimination under Title VII of the Civil Rights Act of 1964 and a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment.  (Doc. 1)  In the pending motion, the defendants State of Arizona, Gilbert Davidson, and Paul Shannon  move that the action be dismissed pursuant to Fed.R.Civ.P 12(b)(1) and 12(b)(6).  (Doc. 24)

Discussion

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction to entertain a claim.  Fed.R.Civ.P.  When analyzing a facial challenge to the court's jurisdiction, the court accepts as true the factual allegations contained in the complaint and draws all reasonable inferences in the plaintiff's favor.  *Doe v. Holy See*,  557 F.3d 1066, 1073 (9th Cir. 2009). Because federal courts are courts of limited jurisdiction, the party invoking the jurisdiction of the court has the burden of proof.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).

"A Rule 12(b)(6) motion tests the legal sufficiency of the claim."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  The claim must allege a legally cognizable theory of relief and include factual allegations sufficient to support that theory.  *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

"All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."  *Clegg v. Cult Awareness Network*,  18 F.3d 752, 754 -755 (9th Cir. 1994).  "However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Id*.

To survive the motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) (internal punctuation omitted).  "[A] well-pleaded complaint may

- 2 -

proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556, 1965 (internal punctuation omitted).

Discussion: Exhaustion

The defendants argue first that this action must be dismissed because Toomey failed to exhaust the Plan's internal appeals process before bringing suit. The pertinent clause reads as follows: "No action at law or in equity can be brought to recover on this Plan until the appeals procedure has been exhausted as described in this Plan." (Doc. 1-2, p. 77) Toomey does not allege that he exhausted that procedure. *See* (Doc. 1, p. 7)

The court's job when "interpreting a contract is to ascertain and enforce the parties' intent." *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290–91, 246 P.3d 938, 941–42 (App. 2010). "To determine the parties' intent, [the court] look[s] to the plain meaning of the words as viewed in the context of the contract as a whole." *Id.* (punctuation modified)

"A contract must be construed so that every part is given effect, and each section of an agreement must be read in relation to each other to bring harmony, if possible between all parts of the writing." *Chandler Medical Bldg. Partners v. Chandler Dental Group*, 175 Ariz. 273, 277, 855 P.2d 787, 791 (App. 1993). "As a corollary, the court will not construe one provision in a contract so as to render another provision meaningless." *Id*.

"When the terms of a contract are plain and unambiguous, its interpretation is a question of law for the court." *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290–91, 246 P.3d 938, 941–42 (App. 2010) "If the agreement can be reasonably construed in more than one manner, the terms are ambiguous and subject to a determination by the trier of fact about the intent of the parties based on extrinsic evidence." *Leo Eisenberg & Co., Inc. v. Payson*, 162 Ariz. 529, 532, 785 P.2d 49, 52 (1989) (In Banc).

The Plan's exhaustion clause appears fairly straightforward. But this case is different from the ordinary run-of-the-mill insurance policy dispute. The issue therefore may be stated as follows: Did the parties intend that the internal appeals process would apply to a Title VII

or an Equal Protection Clause challenge to a Plan exclusion?  If yes, then the defendants' motion to dismiss should be granted.

The defendants note that at the third level of appeal, an adverse benefit decision is heard by an IRO (Independent Review Organization) that will consider, among other things, the "terms of the Plan to ensure that the IRO's decision is not contrary to the terms of the Plan, *unless the terms are inconsistent with applicable law*." (Doc. 24, p. 7) (citing (Doc. 1-2, p. 76)) (emphasis added)  The defendants argue that this language indicates that Toomey's Title VII claim and his Equal Protection claim would be considered on the merits by the IRO, and therefore, the exhaustion provision applies to the present action.  The court finds this argument plausible, but not entirely persuasive.

The clause cited by the defendants is one portion of a fairly extensive list of documents and information that the IRO "will consider in reaching a decision." (Doc. 1-2, p. 76)  Also listed are "medical records," "[t]he attending health care professional's recommendation," "reports from appropriate health care professionals and other documents," "[a]ppropriate practice guidelines," and "applicable clinical review criteria." *Id.*  It seems clear that the IRO is intended, in the usual case, to make a medical decision relating to the appropriateness or efficacy of a particular medical treatment.  It appears that this is the IRO's primary area of expertise.  There will be occasions, however, when the IRO must consider the terms of the Plan and whether those terms "are consistent with applicable law."  But the phrase "applicable law" does not clearly convey the scope of IRO review.  It is possible that the phrase "applicable law" includes federal civil rights statutes and the federal constitution.  But it is equally likely, given the IRO's apparent area of expertise, that the phrase is limited to the statutes and regulations that govern the health insurance industry in Arizona.

The court further notes language in the Plan indicating that IRO review is not all encompassing.  When the claimant files a Level 3 appeal, that appeal is reviewed by the assigned IRO that "will timely notify you in writing of the request's eligibility and acceptance for External Review . . . ." (Doc. 1-2, p. 76)  It is not clear what factors would determine a

- 4 -

request's "eligibility and acceptance," but it appears that there are some disputes that are beyond the scope of IRO review.

The court concludes as a matter of law that the Plan's exhaustion provision is ambiguous. It is not clear if the parties intended that the internal appeals process would apply to a Title VII or an Equal Protection Clause challenge to a Plan exclusion. The matter must be resolved by the trier of fact. The defendants' motion to dismiss should be denied on this issue.

Discussion: Title VII

The defendants further argue that Toomey fails to properly state a Title VII discrimination claim. Title VII of the Civil Rights Act of 1964 makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Toomey claims that the Plan exclusion discriminates against him on the basis of sex.

In *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711, 98 S. Ct. 1370, 1377 (1978), the Supreme Court advocated a "simple test" to determine whether an employment policy constitutes sexual discrimination under Title VII. Discrimination under Title VII occurs if "the evidence shows treatment of a person in a manner which but for that person's sex would be different." *Id*. (punctuation modified). In that case, the Court found that a pension plan that required female employees to make larger contributions than male employees, ostensibly because females live longer than males, was discrimination based on sex in violation of Title VII. *Id*. The court emphasized the fact that Title VII focuses on the plaintiff as an individual, not a member of a sexual class. *Id*. at 708, 1375.

In this case, Toomey alleges that his sex is female but his gender identity is male. He has consequently been diagnosed with "gender dysphoria," and his medical provider has concluded that a hysterectomy is the appropriate treatment. Toomey sought preapproval for the surgery, but it was denied based on the Plan exclusion for "gender reassignment surgery."

- 5 -

(Doc. 1, p. 13)  Toomey claims this denial is discrimination based on sex, but it is not.  If it were, the Plan exclusion would not apply if his sex were different, and Toomey has no evidence of that.  Accordingly, he does not state a claim for sex discrimination under Title VII.  Toomey alleges instead that he is being discriminated against because his sex and his gender identity do not match.  (Doc. 1, p. 17)  That may be so, but discrimination based only on what Toomey calls his "transgender status" does not violate Title VII.  *See, e.g., General Elec. Co. v. Gilbert*, 429 U.S. 125, 135–140, 97 S.Ct. 401 (1976)  (Disability plan that did not cover pregnancy-related disability was not discrimination based on sex for the purposes of Title VII although it arguably was discrimination based the "status" of pregnancy.) (superseded by Pregnancy Discrimination Act recognized by *Young v. United Parcel Serv., Inc*., 135 S. Ct. 1338, 1356 (2015)  (Alito, J. concurring in the judgment)).  There will be times when discrimination against a transgender individual does violate Title VII, but only where the plaintiff presents evidence showing that the discriminatory behavior would not occur if the plaintiff's sex were different. *See, e.g., Smith v. City of Salem, Ohio*, 378 F.3d 566, 575 (6th Cir. 2004)  ("[A] label, such as 'transsexual,' is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity.").

Toomey argues that "discrimination because of a person's transsexuality is discrimination because of such individual's sex" citing *Schwenk v. Hartford*, 204 F.3d 1187, 1200 (9th Cir. 2000).  It is instructive to examine that case.

In *Schwenk*, the plaintiff, a male-to-female transsexual prisoner, alleged that the defendant Mitchell, a Washington state prison guard, attempted to rape her[1] in violation of the Eighth Amendment and the Gender Motivated Violence Act (GMVA).  *Schwenk*, 204 F.3d at

---

[1]  This court uses feminine pronouns when referring to Schwenk, which was the convention used by the Ninth Circuit.  *See Schwenk v. Hartford*, 204 F.3d 1187, 1193 (9th Cir. 2000).  It is important to remember that at the time of the alleged assault Schwenk's sex was male, his gender identity was female, and his alleged attacker believed him to be a male displaying feminine traits.

1192. At the summary judgment stage, Schwenk introduced evidence that Mitchell subjected her to "an escalating series of unwelcome sexual advances and harassment that culminated in a sexual assault." *Id.* at 1193. "This harassment began with winking, performing explicit actions imitating oral sex, [and] making obscene and threatening comments . . . ." *Id.* "Then, in late 1994, Mitchell asked Schwenk to have sex with him in the staff bathroom, offering to bring her make-up and 'girl stuff' in exchange for sex." *Id.* Schwenk refused "and ran back to her cell crying." *Id.* "Later that day, Mitchell again approached Schwenk and told her that he had had oral sex with a former inmate and planned to have sex with his neighbor's young son, who [sic] he claimed to be 'grooming' for the experience." *Id.*

Schwenk subsequently brought a claim under the Eighth Amendment and the Gender Motivated Violence Act (GMVA), which "provides a new federal civil-rights cause of action for victims of gender-motivated violence—defined by the Act as crimes of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Schwenk*, 204 F.3d at 1198 (punctuation modified). On summary judgment, Mitchell argued that the GMVA claim fails because "Schwenk has alleged only that the attack occurred because of Schwenk's transsexuality, which . . . is not an element of gender, but rather constitutes gender dysphoria . . . ." *Id.* at 1200. The Ninth Circuit denied summary judgment on this issue finding that "Mitchell's actions were motivated, at least in part, by Schwenk's gender—in this case, by her assumption of a feminine rather than a typically masculine appearance or demeanor." *Id.* at 1202. Accordingly, that court found that Schwenk stated a proper claim under the GMVA. *Id.*

Toomey argues that *Schwenk* stands for the proposition that "discrimination because of a person's transsexuality is discrimination on the basis of sex" presumably because the defendant argued the opposite point[2] and lost. This court does not agree with Toomey's reading

---

[2] In fact, Mitchell argued that discrimination based on Schwenk's transsexuality is not discrimination based on *gender* because Schwenk brought his claim under the GMVA, not Title VII. *Schwenk*, 204 F.3d at 1200. For the purposes of this discussion, the court will assume that

of that case. The *Schwenk* court denied summary judgment, not because discrimination based on transsexuality is discrimination based on gender, but because Schwenk presented facts that showed he was discriminated against "because of gender" as required by the GMVA.

The outcome in *Schwenk* is a straightforward application of the "simple test" described in *Manhart*. *See City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711, 98 S. Ct. 1370, 1377 (1978). The evidence presented at summary judgment suggested that Mitchell was attracted to males who displayed feminine characteristics. If Schwenk were female (that is, if the sex assigned to her at birth was female) rather than male and displayed the same feminine appearance and demeanor that Schwenk displayed, then the attack would not have occurred. Accordingly, the alleged attack occurred "because of gender."

The court denied Mitchell summary judgment on this issue, not because of Schwenk's status as a transsexual, but because of the motivation behind the attack. The attack occurred because Schwenk was a male displaying feminine characteristics. And yes, male-to-female transsexuals ordinarily display feminine characteristics, but Schwenk's status alone was not the determinative factor. Discrimination based on a person's status as a transsexual without more is not discrimination based on gender, or sex for that matter. Toomey's Title VII claim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

Discussion: Equal Protection

The defendants further argue that Toomey fails to state a proper claim under the Equal Protection Clause. U.S.Const.Amend.XIV, § 1.

The Fourteenth Amendment provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S.Const.Amend.XIV, § 1. At first blush, it may appear that this Clause guarantees to all persons *equal treatment*. It does not. States may, from time to time, create classifications that result in disadvantages for various groups or

the reasoning in *Schwenk* would apply equally to a Title VII sex discrimination claim.

persons. *See Romer v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620, 1627 (1996). But if they do so, they must provide a justification commensurate with the gravity of inequitable treatment that results. *Id.* "[I]f a law neither burdens a fundamental right nor targets a suspect class, [it will be upheld] so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620, 1627 (1996). If, on the other hand, the State's classification "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class," the law will fail unless the State can provide a justification sufficient to survive the court's "strict scrutiny." *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312, 96 S. Ct. 2562, 2566 (1976).

In this case, the defendants argue that the Plan exclusion burdens neither a fundamental right nor a suspect class. Accordingly, they argue that the Plan exclusion does not violate the Equal Protection Clause so long as it bears a rational relation to some legitimate end. They further argue that the "government's interests in cost containment and reducing health costs" constitute, as a matter of law, a rational basis for the exclusion. (Doc. 24, p. 140)

Toomey, however, claims that discrimination based on his transgender status is subject to heightened scrutiny. Heightened scrutiny may apply where the plaintiff is a member of a "discrete and insular minority" or is characterized by an "immutable characteristic determined solely by the accident of birth." *Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848 (1971); *Frontiero v. Richardson*, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770 (1973). Toomey alleges that these criteria apply to him, and therefore any law that discriminates based on transgender status must survive a heightened level of scrutiny.

The court finds that Toomey has alleged facts that, if true, could justify a heightened level of scrutiny.[3] The defendants do not argue that, as a matter of law, the Plan exclusion

---

[3] The court notes that in *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659, 663 (9th Cir. 1977) the Ninth Circuit stated that transsexuals are not a suspect class because "transsexuals are not necessarily a discrete and insular minority nor has it been established that transsexuality is an immutable characteristic determined solely by the accident of birth . . . ."

- 9 -

would survive a heightened level of scrutiny. Accordingly, the defendants have not shown that Toomey fails to state a proper claim under the Equal Protection Clause.

Discussion: Sovereign Immunity

The defendants further argue sovereign immunity bars Toomey's claims against the defendants Davidson and Shannon, who are sued in their official capacity as state officers.

"The Eleventh Amendment erects a general bar against federal lawsuits brought against a state." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). "However, suits against a state official are an exception to this bar." *Id*. "Under the doctrine of *Ex parte Young*, suits against an official for prospective relief are generally cognizable, whereas claims for retrospective relief (such as damages) are not. *Id*. (*citing Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908)).

The defendants argue that Toomey "seeks a reversal of the Health Plan's August 10, 2018 denial of coverage for his gender reassignment surgery," a remedy, which is, in fact, "a retroactive payment of benefits." (Doc. 24, p. 15) Accordingly, they argue his claims do not fall within the *Ex Parte Young* exception.

The defendants' argument "confuses liability with remedy." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). Toomey's "allegations are rooted in events that occurred in the past," but the injunctive and declaratory relief that he seeks "would prevent future and ongoing illegality." *Id*. Toomey's proposed remedy is entirely prospective. He seeks a declaration that the Plan exclusion violates Title VII and the Equal Protection Clause and an injunction removing the Plan's exclusion and compelling the defendants to evaluate his planned surgery under the Plan's generally applicable standards and procedures. (Doc. 1, p. 22) Accordingly, this action falls comfortably within the *Ex Parte Young* exception.

---

The defendants do not cite this case, presumably because that statement is dicta and *Holloway* is not controlling authority. *See id*. ("Assuming briefly that appellant has properly raised an equal protection argument, we find no merit to it . . . .").

Discussion: Title VII Administrative Remedies

Finally, the defendants argue Toomey failed to exhaust his Title VII remedies by failing to file a charge against the State of Arizona or the Arizona Department of Administration (ADOA). The court need not reach this argument in light of the court's finding above that Toomey does not assert a proper Title VII claim.

RECOMMENDATION:

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order

GRANTING IN PART the motion to dismiss pursuant to Fed.R.Civ.P 12(b)(1) and 12(b)(6), filed on March 18, 2019, by the State of Arizona, Gilbert Davidson, and Paul Shannon. (Doc. 24) The Title VII claim should be dismissed. The remainder of the motion should be denied.

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation. If objections are not timely filed, the party's right to de novo review may be waived. The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response without the permission of the District Court.

DATED this 24th day of June, 2019.

_Leslie A. Bowman_

Leslie A. Bowman
United States Magistrate Judge

- 11 -