C. Christine Burns #017108
Kathryn Hackett King #024698
Alison Pulaski Carter #025699
**BURNSBARTON PLC**
2201 East Camelback Road, Ste. 360
Phone: (602) 753-4500
christine@burnsbarton.com
kate@burnsbarton.com
alison@burnsbarton.com
*Attorneys for Defendants State of Arizona*
*Andy Tobin, and Paul Shannon*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

**Russell B. Toomey**,

              Plaintiff,

v.

**State of Arizona; Arizona Board of Regents, d/b/a University of Arizona**, a governmental body of the State of Arizona; **Ron Shoopman**, in his official capacity as Chair of the Arizona Board of Regents; **Larry Penley**, in his official capacity as Member of the Arizona Board of Regents; **Ram Krishna**, in his official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour**, in his official capacity as Treasurer of the Arizona Board of Regents; **Lyndel Manson**, in her official capacity as Member of the Arizona Board of Regents; **Karrin Taylor Robson**, in her official capacity as Member of the Arizona Board of Regents; **Jay Heiler**, in his official capacity as Member of the Arizona Board of Regents; **Fred Duval**, in his official capacity as Member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services

Case No. CV-19-00035-TUC-RM (LAB)

**ANSWER TO COMPLAINT BY DEFENDANTS STATE OF ARIZONA, ANDY TOBIN, AND PAUL SHANNON**

1
2

Division of the Arizona Department of
Administration,

3

            Defendants.

4

5       Defendants State of Arizona, Andy Tobin, and Paul Shannon (collectively the

6  "State" or the "State Defendants"), for their Answer to Plaintiff's Complaint, hereby

7  admit, deny, and allege as follows.  The State Defendants deny all allegations in the

8  Complaint that are not specifically admitted herein.

9                              **INTRODUCTION**

10       1.      The State of Arizona provides healthcare coverage to State employees

11 through a self-funded health plan controlled by the Arizona Department of Administration

12 ("the Plan"). (Exhibit A.)

13       **Answer to Paragraph 1: The State Defendants admit the State of Arizona**

14 **provides health insurance coverage to State of Arizona employees through a self-**

15 **funded health plan administered by the Arizona Department of Administration.  The**

16 **State Defendants further admit that Exhibit A to the Complaint is the Summary**

17 **Plan Description for the 2018 health plan ("Plan").  The State Defendants deny the**

18 **remaining allegations in Paragraph 1 of the Complaint.**

19       2.      The Plan generally provides coverage for medically necessary care but

20 singles out transgender employees for unequal treatment by categorically denying all

21 coverage for "[g]ender reassignment surgery" regardless of whether the surgery qualifies

22 as medically necessary treatment. As a result, transgender individuals enrolled in the Plan

23 have no opportunity to demonstrate that their transition-related care is medically

24 necessary, and they have no opportunity to appeal any adverse determination to an

25 independent reviewer.

26       **Answer to Paragraph 2:  The State Defendants admit the Plan defines a**

27 **"Covered Service" as "a service which is Medically Necessary and eligible for**

28 **payment under the Plan" (Article 17).  The State Defendants further admit the Plan**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**contains "Exclusions and General Limitations" (Section 10.1) which exclude numerous "Services and Supplies" from coverage regardless of "Medical Necessity," and one of those exclusions is "Gender reassignment surgery."  The State Defendants deny the remaining allegations in Paragraph 2 of the Complaint.**

3.　　In the past, some public and private insurance companies excluded coverage for treatment of gender dysphoria (or "transition-related care"), including surgical treatments, based on the erroneous assumption that such treatments were cosmetic or experimental. Today, however, every major medical organization to address the issue has recognized that such exclusions have no basis in medical science and that transition-related care is effective, safe and medically necessary for treatment of gender dysphoria.

**Answer to Paragraph 3:  The State Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 3 of the Complaint, and therefore deny them.**

4.　　Plaintiff Russell Toomey, Ph.D., is a man who is transgender. He is employed as an Associate Professor at the University of Arizona. As a result of the Plan's discriminatory exclusion, Dr. Toomey has been blocked from receiving a medically necessary hysterectomy prescribed by his physician in accordance with the widely accepted standards of care for treating gender dysphoria. The Plan provides coverage for the same hysterectomies when prescribed as medically necessary treatment for other medical conditions. But, the Plan categorically excludes coverage for hysterectomies when they are medically necessary for purposes of "[g]ender reassignment."

**Answer to Paragraph 4: The State Defendants admit the Plan defines a "Covered Service" as "a service which is Medically Necessary and eligible for payment under the Plan" (Article 17).  The State Defendants further admit the Plan contains "Exclusions and General Limitations" (Section 10.1) which exclude numerous "Services and Supplies" from coverage regardless of "Medical Necessity," and one of those exclusions is "Gender reassignment surgery."  The State Defendants**

**lack sufficient knowledge or information to admit or deny the allegations that Plaintiff is a man who is transgender and currently employed as an Associate Professor at the University of Arizona, and therefore the State Defendants deny those allegations.  The State Defendants deny the remaining allegations in Paragraph 4 of the Complaint.**

5.      If the discriminatory exclusion were removed, Dr. Toomey would have an opportunity to prove that his surgery is medically necessary under the Plan's generally applicable standards for establishing medical necessity.

**Answer to Paragraph 5:  The State Defendants deny the allegations in Paragraph 5 of the Complaint.**

6.      If the discriminatory exclusion were removed, Dr. Toomey would also have the right to appeal any adverse determination to an independent reviewer within the third-party claims administrator and, if necessary, to an independent review organization.

**Answer to Paragraph 6:  The State Defendants deny the allegations in Paragraph 6 of the Complaint.**

7.      On its face, the Plan discriminates against Dr. Toomey and other transgender employees "because of …sex" in violation of Title VII of the Civil Rights Act of 1964 and deprives Dr. Toomey and other transgender employees of equal treatment under the Equal Protection Clause of the Fourteenth Amendment.

**Answer to Paragraph 7:  The State Defendants deny the allegations in Paragraph 7 of the Complaint.**

8.      Dr. Toomey brings this Complaint on behalf of himself and a proposed class of similarly situated individuals for declaratory and injunctive relief requiring Defendants to remove the Plan's categorical exclusion of coverage for "[g]ender reassignment surgery" and evaluate whether transgender individuals' surgical care for gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Answer to Paragraph 8:**   **The State Defendants admit Plaintiff is attempting to bring this Complaint on behalf of himself and a proposed class, but deny that class certification is appropriate or permissible.  The State Defendants deny that Plaintiff and any proposed class are entitled to declaratory relief, injunctive relief, or any relief whatsoever.**

**JURISDICTION AND VENUE**

9.     This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Constitution of the United States, and 42 U.S.C. § 1983.

**Answer to Paragraph 9:  Paragraph 9 of the Complaint contains legal conclusions to which no response is necessary.  In the event a response is deemed necessary, the State Defendants deny that Plaintiff has a valid claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Constitution of the United States, or 42 U.S.C. § 1983.**

10.     This Court has jurisdiction pursuant to Article III of the United States Constitution; 28 U.S.C. §§ 1331, 1343; and 42 U.S.C. § 2000e-5(f)(3).

**Answer to Paragraph 10:  The State Defendants admit jurisdiction is proper in this Court.**

11.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

**Answer to Paragraph 11:  The State Defendants deny the allegations in Paragraph 11 of the Complaint and specifically deny that Plaintiff is entitled to declaratory relief or any relief whatsoever.**

12.     Venue lies with this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice was committed in the State of Arizona.

**Answer to Paragraph 12:  The State Defendants admit venue is proper in this Court.  The State Defendants deny the remaining allegations in Paragraph 12 of the Complaint.**

**PARTIES**

13.     Plaintiff Russell Toomey, Ph.D., resides in Tucson, Arizona.

**Answer to Paragraph 13:  The State Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 13 of the Complaint, and therefore deny them.**

14.     Dr. Toomey is employed by Defendant, the Arizona Board of Regents, as an Associate Professor at the University of Arizona.

**Answer to Paragraph 14:  The State Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 14 of the Complaint, and therefore deny them.**

15.     The Arizona Board of Regents provides healthcare to its employees, including Dr. Toomey, through a self-funded plan controlled by the Arizona Department of Administration.

**Answer to Paragraph 15:  The State Defendants admit the Arizona Board of Regents offers healthcare insurance to employees of the Arizona Board of Regents through a self-funded health insurance plan administered by the Arizona Department of Administration.  The State Defendants deny the remaining allegations in Paragraph 15 of the Complaint.**

16.     Defendant Ron Shoopman is sued in his official capacity as Chair of the Arizona Board of Regents.

**Answer to Paragraph 16:  Upon information and belief, the State Defendants admit the allegations in Paragraph 16 of the Complaint.**

17.     Defendant Ram Krishna is sued in his official capacity as Secretary of the Arizona Board of Regents

**Answer to Paragraph 17:  Upon information and belief, the State Defendants admit the allegations in Paragraph 17 of the Complaint.**

18.     Defendant Bill Ridenour is sued in his official capacity as Treasurer of the Arizona Board of Regents.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Answer to Paragraph 18:  Upon information and belief, the State Defendants admit the allegations in Paragraph 18 of the Complaint.**

19.     Defendants Larry Penley, Lyndel Manson, Karrin Taylor Robson, Jay Heiler, and Fred DuVal are sued in their official capacities as Members of the Arizona Board of Regents.

**Answer to Paragraph 19:  Upon information and belief, the State Defendants admit the allegations in Paragraph 19 of the Complaint.**

20.     Defendant Gilbert Davidson is sued in his official capacity as Interim Director of the Arizona Department of Administration.

**Answer to Paragraph 20:  The State Defendants state that Gilbert Davidson is no longer a named defendant in this action.  Therefore, the State Defendants deny the allegations in Paragraph 20 of the Complaint.**

21.     Defendant Paul Shannon is sued in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration.

**Answer to Paragraph 21:  The State Defendants deny that Paul Shannon is Acting Assistant Director.  The State Defendants admit that Paul Shannon is Assistant Director of the Benefits Services Division of the Arizona Department of Administration.  Upon information and belief, the State Defendants admit the remaining allegations in Paragraph 21 of the Complaint.**

**EXHAUSTION OF ADMINSTRATIVE REQUIREMENTS**

22.     On August 15, 2018, Dr. Toomey timely filed a charge with the Equal Employment Opportunity Commission against the Arizona Board of Regents for sex discrimination in violation of Title VII.

**Answer to Paragraph 22:  Upon information and belief, the State Defendants admit that on or about August 15, 2018, Plaintiff filed an EEOC Charge against the Board of Regents of the University of Arizona, alleging sex discrimination.  The remaining allegations in Paragraph 22 of the Complaint contain legal conclusions to**

which no response is necessary.  In the event a response is deemed necessary, the State Defendants deny the remaining allegations in Paragraph 22 of the Complaint.

23.    On December 14, 2018, the Department of Justice issued a right-to-sue letter to Dr. Toomey, which was received on December 27, 2018. (Exhibit B.)

**Answer to Paragraph 23:  Upon information and belief, the State Defendants admit the Department of Justice issued a right-to-sue letter to Dr. Toomey, which is dated December 14, 2018.   The State Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 23 of the Complaint, and therefore deny them.**

## FACTUAL ALLEGATIONS

### Transgender individuals and gender dysphoria

24.    Gender identity is a well-established medical concept, referring to one's sense of oneself as belonging to a particular gender. Typically, people who are designated female at birth based on this external anatomy identify as girls or women, and people who are designated male at birth identify as boys or men. For transgender individuals, however, the sense of one's gender identity differs from the sex assigned to them at birth.

**Answer to Paragraph 24:  The State Defendants note the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition ("DSM-V"), which Plaintiff cites in the Complaint, contains definitions of "gender identity" and "transgender" that differ from those stated in Paragraph 24 of the Complaint.  The State Defendants lack sufficient knowledge or information to admit or deny the specific definitions and allegations contained in Paragraph 24 of the Complaint, and therefore deny them.**

25.    Transgender men are men who were assigned "female" at birth, but have a male gender identity. Transgender women are women who were assigned "male" at birth, but have a female gender identity.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Answer to Paragraph 25:  The State Defendants lack sufficient knowledge or information to admit or deny the specific definitions and allegations contained in Paragraph 25 of the Complaint, and therefore deny them.**

26.     Although the precise origins of each person's gender identity is not fully understood, experts agree that it likely results from a combination of biological factors as well as social, cultural, and behavioral factors.

**Answer to Paragraph 26:  The State Defendants lack sufficient knowledge or information to admit or deny the allegations identified in Paragraph 26 of the Complaint, and therefore deny them.**

27.     Being transgender is not a mental disorder. Men and women who are transgender have no impairment in judgment, stability, reliability, or general social or vocational capabilities solely because of their transgender status. But transgender men and women may require treatment for "gender dysphoria," the diagnostic term for the clinically significant emotional distress experienced as a result of the incongruence of one's gender with their assigned sex and the physiological developments associated with that sex. The criteria for diagnosing gender dysphoria are set forth in the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) (302.85).

**Answer to Paragraph 27:  The State Defendants state the DSM-V manual speaks for itself.  The State Defendants further state that "gender dysphoria" is defined in DSM-V (p. 451) as "the distress that may accompany the incongruence between one's experienced or expressed gender and one's assigned gender."  The State Defendants lack sufficient knowledge or information to admit or deny the remaining allegations identified in Paragraph 27 of the Complaint, and therefore deny them.**

28.     The widely accepted standards of care for treating gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH"). Under the WPATH standards, medically necessary treatment for gender dysphoria may

require medical steps to affirm one's gender identity and transition from living as one gender to another. This treatment, often referred to as transition-related care, may include hormone therapy, surgery (sometimes called "sex reassignment surgery" or "gender confirmation surgery"), and other medical services that align individuals' bodies with their gender identities.

**Answer to Paragraph 28:  The State Defendants state the World Professional Association for Transgender Health ("WPATH") "Standards of Care" document speaks for itself.  The State Defendants further state WPATH has several versions of "Standards of Care," and it is unknown which version Plaintiff is referencing in Paragraph 28 of the Complaint.  The State Defendants lack sufficient knowledge or information to admit or deny the remaining allegations identified in Paragraph 28 of the Complaint, and therefore deny them.**

29.     Under the WPATH standards, the exact medical treatment varies based on the individualized needs of the person, under each patient's treatment plan, the goal is to enable the individual to live all aspects of one's life consistent with one's gender identity, thereby eliminating the distress associated with the incongruence.

**Answer to Paragraph 29:  The State Defendants state the WPATH "Standards of Care" document speaks for itself.  The State Defendants further state WPATH has several versions of "Standards of Care," and it is unknown which version Plaintiff is referencing in Paragraph 29 of the Complaint.  The State Defendants lack sufficient knowledge or information to admit or deny the remaining allegations identified in Paragraph 29 of the Complaint, and therefore deny them.**

30.     In the past, public and private insurance companies excluded coverage for transition-related care based on the assumption that such treatments were cosmetic or experimental. Today, however, transition-related surgical care is routinely covered by private insurance programs. The American Medical Association, the American Psychological Association, the American Psychiatric Association, the American College

of Obstetricians and Gynecologists, and other major medical organizations have issued

policy statements and guidelines supporting healthcare coverage for transition-related care

as medically necessary under contemporary standards of care. No major medical

organization has taken the position that transition-related care is not medically necessary

or advocated in favor of a categorical ban on insurance coverage for transition-related

procedures.

**Answer to Paragraph 30:  The State Defendants lack sufficient knowledge or**
**information to admit or deny the allegations identified in Paragraph 30 of the**
**Complaint, and therefore deny them.**

31.     Medicare began covering transition-related surgery in 2014 after an

independent medical board in the U.S. Department of Health & Human Services rescinded

an old Medicare policy that had excluded surgery from Medicare coverage. The decision

explained that the Medicare surgery exclusion was based on a medical review conducted

in 1981 and failed to take into account subsequent developments in surgical techniques

and medical research. Medicare now provides coverage for transition-related surgical care

for gender dysphoria on a case-by-case basis based on individualized medical need.

**Answer to Paragraph 31:  The State Defendants lack sufficient knowledge or**
**information to admit or deny the allegations identified in Paragraph 31 of the**
**Complaint, and therefore deny them.**

**The Self-Funded Health Plan's "Gender Reassignment" Exclusion**

32.     Dr. Toomey's healthcare coverage is provided and paid for by the State of

Arizona through the Plan.

**Answer to Paragraph 32:  The State Defendants admit Dr. Toomey has health**
**insurance coverage that is partially paid for by the State of Arizona through the**
**Plan. The State Defendants deny the remaining allegations in Paragraph 32 of the**
**Complaint.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

33.     Individuals enrolled in the Plan must choose to receive benefits through a Network Provider. In 2018, the four Network Providers were Aetna, Blue Cross Blue Shield of Arizona, Cigna, and UnitedHealthcare. Dr. Toomey's Network Provider is Blue Cross Blue Shield of Arizona.

**Answer to Paragraph 33:  The State Defendants admit the allegations in Paragraph 33 of the Complaint.**

34.     The Plan generally provides coverage for medically necessary care, which the Plan defines as "services, supplies and prescriptions, meets all of the following criteria": (1) ordered by a physician; (2) not more extensive than required to meet the basic health needs; (3) consistent with the diagnosis of the condition for which they are being utilized; (4) consistent in type, frequency and duration of treatment with scientifically based guidelines by the medical-scientific community in the United States of America; (5) required for purposes other than the comfort or convenience of the patient or provider; (6) rendered in the least intensive setting that is appropriate for their delivery; and (7) have demonstrated medical value.

**Answer to Paragraph 34:  The State Defendants admit the Plan provides coverage for some services, supplies, and prescriptions that are medically necessary, and the Plan defines "Medically Necessary/Medical Necessity" as "services, supplies and prescriptions, meeting all of the following criteria: 1. Ordered by a physician; 2. Not more extensive than required to meet the basic health needs; 3. Consistent with the diagnosis of the condition for which they are being utilized; 4. Consistent in type, frequency and duration of treatment with scientifically based guidelines by the medical-scientific community in the United States of America; 5. Required for purposes other than the comfort and convenience of the patient or provider; 6. Rendered in the least intensive setting that is appropriate for their delivery; and 7. Have demonstrated medical value."  The State Defendants deny the remaining allegations in Paragraph 34 of the Complaint.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

35.     In the event that the Plan denies coverage for a treatment based on purported lack of medical necessity, the Plan provides a right to appeal the decision to an independent reviewer at the third-party claims administrator and, if necessary, to further appeal to an external independent review organization. If an independent reviewer concludes that the treatment is medically necessary, that decision is binding, and the Plan must immediately authorize coverage for the treatment.

**Answer to Paragraph 35:  The State Defendants state the Plan's appeal process (in Article 12) speaks for itself and also provides information that is not contained in Paragraph 35 of the Complaint, and therefore the State Defendants deny Plaintiff's general characterization of the entire appeal process.**

36.     The Plan does not apply these generally applicable standards and procedures to surgical care for gender dysphoria. Instead, the Plan categorically denies all coverage for "[g]ender reassignment surgery" regardless of whether the surgery qualifies as medically necessary. Transgender individuals enrolled in the Plan have no opportunity to demonstrate that their transition-related care is medically necessary or to appeal any adverse determination to an independent reviewer.

**Answer to Paragraph 36:  The State Defendants admit the Plan contains "Exclusions and General Limitations" (Section 10.1) that exclude numerous "Services and Supplies" from coverage regardless of "Medical Necessity," and one of those exclusions is "Gender reassignment surgery."  The State Defendants deny the remaining allegations in Paragraph 36 of the Complaint.**

37.     All four of the health insurance companies who serve as Network Providers for the Plan have adopted internal policies and standards for determining when transition-related surgery for gender dysphoria is medically necessary and thus, covered. (Exhibits C-F.) But, as a result of the Plan's "gender reassignment" exclusion, the Network Providers do not apply those internal policies and standards when administering the Plan

to Arizona State employees and, instead, automatically deny coverage of transition-related surgery.

**Answer to Paragraph 37:  The State Defendants state the Aetna, Blue Cross Blue Shield of Arizona, Cigna, and United Healthcare documents attached as Exhibits C-F to the Complaint speak for themselves.  The State Defendants admit the Plan contains "Exclusions and General Limitations" (Section 10.1) that exclude numerous "Services and Supplies" from coverage regardless of "Medical Necessity," and one of those exclusions is "Gender reassignment surgery."  The State Defendants deny the remaining allegations in Paragraph 37 of the Complaint.**

**Dr. Toomey's Medically Necessary Treatment for Gender Dysphoria**

38.     Dr. Toomey is a man who is transgender, which means that he has a male gender identity, but the sex assigned to him at birth was female. Dr. Toomey transitioned to live consistently with his male identity in 2003. Since 2003, Dr. Toomey has received testosterone as a medically necessary treatment for gender dysphoria. He also received medically necessary chest reconstruction surgery in 2004.

**Answer to Paragraph 38:  The State Defendants lack sufficient knowledge or information to admit or deny the allegations identified in Paragraph 38 of the Complaint, and therefore deny them.**

39.     In accordance with the WPATH Standards of Care, Dr. Toomey's treating physicians have recommended that he receive a hysterectomy as a medically necessary treatment for gender dysphoria.

**Answer to Paragraph 39: The State Defendants lack sufficient knowledge or information to admit or deny the allegations identified in Paragraph 39 of the Complaint, and therefore deny them.**

40.     The Plan provides coverage for the same surgery when prescribed as medically necessary treatment for other medical conditions, but not when the surgery is performed as part of transition-related care.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Answer to Paragraph 40:  The State Defendants admit the Plan defines a "Covered Service" as "a service which is Medically Necessary and eligible for payment under the Plan" (Article 17).  The State Defendants further admit the Plan contains "Exclusions and General Limitations" (Section 10.1) which exclude numerous "Services and Supplies" from coverage regardless of "Medical Necessity," and one of those exclusions is "Gender reassignment surgery."  The State Defendants deny the remaining allegations in Paragraph 40 of the Complaint.**

41.     Dr. Toomey has satisfied all of the criteria for a medically necessary hysterectomy under the WPATH Standards of Care.[1]

**Answer to Paragraph 41: The State Defendants lack sufficient knowledge or information to admit or deny the allegations identified in Paragraph 41 of the Complaint, and therefore deny them.**

42.     All four of the Network Providers for the Plan have adopted internal policies and guidelines that authorize hysterectomies as medically necessary treatments for gender dysphoria based on the same criteria used by the WPATH Standards of Care.

**Answer to Paragraph 42: The State Defendants state the Aetna, Blue Cross Blue Shield of Arizona, Cigna, and United Healthcare documents attached as Exhibits C-F to the Complaint speak for themselves.  The State Defendants further state the WPATH "Standards of Care" document speaks for itself.  Further, WPATH has prepared several versions of "Standards of Care," and it is unknown which version Plaintiff is referencing in Paragraph 42 of the Complaint.  The State Defendants lack sufficient knowledge or information to admit or deny the remaining allegations identified in Paragraph 42 of the Complaint, and therefore deny them.**

---

[1] Those criteria are: (a) Two referral letters from qualified mental health professionals; (b) Persistent, well documented gender dysphoria; (c) Capacity to make a fully informed decision and to consent for treatment; (d) Age of majority in a given country; (e) If significant medical or mental health concerns are present, they must be well controlled; and (f) Twelve continuous months of hormone therapy as appropriate to the patient's gender goals (unless the patient has a medical contraindication or is otherwise unable or unwilling to take hormones)

43.     As a result of the Plan's categorical exclusion for "gender reassignment surgery," Dr. Toomey's Network Provider—Blue Cross Blue Shield of Arizona—denied preauthorization for Dr. Toomey's hysterectomy on August 10, 2018. (Exhibit G.).

**Answer to Paragraph 43: The State Defendants state that Exhibit G to the Complaint speaks for itself.  The State Defendants lack sufficient knowledge or information to admit or deny the remaining allegations identified in Paragraph 43 of the Complaint, and therefore deny them.**

44.     In denying preauthorization, Blue Cross Blue Shield of Arizona did not apply its own internal guidelines for determining whether the hysterectomy is a medically necessary treatment for gender dysphoria. The denial was based solely on the Plan's exclusion for "gender reassignment surgery."

**Answer to Paragraph 44: The State Defendants state that Exhibit G to the Complaint speaks for itself.  The State Defendants lack sufficient knowledge or information to admit or deny the remaining allegations identified in Paragraph 44 of the Complaint, and therefore deny them.**

45.     The denial letter from Blue Cross Blue Shield of Arizona stated:

> [W]e cannot approve this request because the laparoscopic total hysterectomy with removal of tubes and ovaries surgery, for your diagnosis of transsexualism and gender identity disorder is considered a gender reassignment surgery, which is a benefit exclusion. This finding is based on your benefit plan booklet on pages 56 & 57 under the heading of "Exclusions and General Limitations" which states:

> 10.1 Exclusions and General Limitations

> "In addition to any services and supplies specifically excluded in any other Article of the Plan Description, any services and supplies which are not described as covered are excluded. In addition, the following are specifically excluded Services and Supplies:

> - Gender reassignment surgery."

1
2
3

If you choose to get the laparoscopic total hysterectomy with removal of tubes and ovaries surgery, BCBSAZ will not cover the costs of this service.

(Ex. G at 1.)

**Answer to Paragraph 45**:  **The State Defendants admit the quotation contained in Paragraph 45 of the Complaint is contained in Exhibit G, but the quotation is incomplete.**

## CLASS ALLEGATIONS

46.     Dr. Toomey brings this action on behalf of himself and a class of similarly situated individuals pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Through the "gender reassignment surgery" exclusion, Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2).

**Answer to Paragraph 46: The State Defendants admit Plaintiff is attempting to bring this action on behalf of himself and a proposed class, but deny that class certification is appropriate or permissible. The State Defendants deny the remaining allegations in Paragraph 46 of the Complaint.**

47.     Class certification is appropriate because Dr. Toomey challenges the facial validity of the Plan's "gender reassignment surgery" exclusion, which denies transgender individuals an equal opportunity to demonstrate that their transition-related surgical care is medically necessary. The denial of that equal opportunity is an injury in fact that can be resolved on a class-wide basis.

**Answer to Paragraph 47: The State Defendants deny the allegations in Paragraph 47 of the Complaint.**

48.     Dr. Toomey seeks a declaratory judgment and injunction requiring Defendants to remove the Plan's categorical exclusion of coverage for "[g]ender reassignment surgery" and evaluate whether transgender individuals' surgical care for

1
2
gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures.

3
4
5
**Answer to Paragraph 48:  The State Defendants admit Plaintiff is seeking declaratory judgment and an injunction, but deny that Plaintiff is entitled to a declaratory judgment, injunction, or any other relief whatsoever.**

6
7
49.     Dr. Toomey proposes two classes based on the claims against each Defendant.

8
9
10
**Answer to Paragraph 49:  Upon information and belief, the State Defendants admit Dr. Toomey has proposed two classes but deny that class certification for either proposed class is appropriate.**

11
12
13
14
15
16
17
50.     With respect to (a) the Title VII claim against the State of Arizona and the Arizona Board of Regents and (b) the equal protection claim against Defendants Ron Shoopman, Ram Krishna, Bill Ridenour, Larry Penley, Lyndel Manson, Karrin Taylor Robson, Jay Heiler, and Fred DuVal in their official capacities: the proposed class consists of all employees of the Arizona Board of Regents enrolled in the self-funded Plan controlled by the Arizona Department of Administration who have medical claims for transition-related surgical care.

18
19
20
**Answer to Paragraph 50: The State Defendants admit that Plaintiff has defined a proposed class as set forth in Paragraph 50, but deny that class certification for this proposed class is appropriate.**

21
22
23
24
25
51.     With respect to the equal protection claim against Defendants Gilbert Davidson and Paul Shannon in their official capacities: the proposed class consists of all individuals (including Arizona State employees and their dependents) enrolled in the self-funded Plan controlled by the Arizona Department of Administration who have medical claims for transition-related surgical care.

26
27
28

**Answer to Paragraph 51:** **The State Defendants admit that Plaintiff has defined a proposed class as set forth in Paragraph 51, but deny that class certification for this proposed class is appropriate.**

52.     Each of the proposed classes is so numerous that joinder of all members is impracticable.

**Answer to Paragraph 52:** **The State Defendants deny the allegations in Paragraph 52 of the Complaint.**

53.     For each of the proposed classes, there are questions of law or fact common to the class. Because Dr. Toomey brings a facial challenge, the class claims do not depend on whether a particular individual's transition-related surgery is ultimately proven to be medically necessary. Dr. Toomey merely seeks declaratory relief and an injunction providing all class members the opportunity to have their claims for transition-related surgery evaluated for medical necessity under the same standards and procedures that the Plan applies to other medical treatments.

**Answer to Paragraph 53:**  **The State Defendants deny the allegations in Paragraph 53 of the Complaint.**

54.     For each of the proposed classes, the claims or defenses of the representative parties are typical of the claims or defenses of the class.

**Answer to Paragraph 54:** **The State Defendants deny the allegations in Paragraph 54 of the Complaint.**

55.     For each of the proposed classes, Dr. Toomey will fairly and adequately protect the interests of the class.

**Answer to Paragraph 55:**  **The State Defendants deny the allegations in Paragraph 55 of the Complaint.**

**COUNT I**
**VIOLATION OF TITLE VII**
**(Against State of Arizona and Arizona Board of Regents)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

56.     Title VII of the Civil Rights Act of 1964 provides that employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…sex." 42 U.S.C. § 2000e-2(a)(1).

**Answer to Paragraph 56: The State Defendants admit the allegations contained in Paragraph 56 of the Complaint.**

57.     The State of Arizona and the Arizona Board of Regents are employers as that term is defined in Title VII, 42 U.S.C. § 2000e-(a) and (b).

**Answer to Paragraph 57:  Paragraph 57 contains a legal conclusion to which no response is necessary.  To the extent a response is deemed necessary, the State Defendants deny the allegations in Paragraph 57 of the Complaint.**

58.     An employer-sponsored health plan is part of the "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1).

**Answer to Paragraph 58:  Paragraph 58 contains a legal conclusion to which no response is necessary.  To the extent a response is deemed necessary, the State Defendants deny the allegations in Paragraph 58 of the Complaint.**

59.     Discrimination on the basis of transgender status or gender nonconformity is discrimination on the base of "sex" under Title VII.

**Answer to Paragraph 59: Paragraph 59 contains a legal conclusion to which no response is necessary.  To the extent a response is deemed necessary, the State Defendants deny the allegations in Paragraph 59 of the Complaint.**

60.     The employer-sponsored health plan provided by the State of Arizona and the Arizona Board of Regents facially discriminates based on transgender status and gender nonconformity by categorically excluding coverage for all medically necessary "gender reassignment surger[ies]."

**Answer to Paragraph 60: The State Defendants deny the allegations contained in Paragraph 60 of the Complaint.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

61.     Because medical transition from one sex to another inherently transgresses gender stereotypes, denying medically necessary coverage based on whether surgery is performed for purposes of "gender reassignment" constitutes impermissible discrimination based on gender nonconformity.

**Answer to Paragraph 61: The State Defendants deny the allegations contained in Paragraph 61 of the Complaint.**

62.     Because the need to undergo gender transition is a defining aspect of transgender status, discrimination based on gender transition is discrimination against transgender individuals as a class.

**Answer to Paragraph 62: The State Defendants deny the allegations contained in Paragraph 62 of the Complaint.**

63.     By categorically excluding all coverage for "[g]ender reassignment surgery," the Plan deprives Dr. Toomey and other transgender employees of an equal opportunity to prove that their transition-related surgery is medically necessary under the same standards and procedures that apply to other medical conditions.

**Answer to Paragraph 63: The State Defendants deny the allegations contained in Paragraph 63 of the Complaint.**

64.     By providing a facially discriminatory employer-sponsored health plan, the State of Arizona and the Arizona Board of Regents have unlawfully discriminated—and continue to unlawfully discriminate—against Dr. Toomey and members of the proposed class "with respect to [their] compensation, terms, conditions, or privileges of employment, because of …sex." 42 U.S.C. § 2000e-2(a)(1).

**Answer to Paragraph 64: The State Defendants deny the allegations contained in Paragraph 64 of the Complaint.**

**COUNT II**
**VIOLATION OF THE EQUAL PROTECTION CLAUSE**
**(Against Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal Davidson and Shannon in their official capacities)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

65.     At all relevant times, Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Davidson and Shannon have acted under color of State law.

**Answer to Paragraph 65: The State Defendants lack sufficient knowledge or information to admit or deny the allegations identified in Paragraph 65 of the Complaint, and therefore deny them.**

66.     Pursuant to 42 U.S.C. § 1983, Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Davidson and Shannon, in their official capacities, are liable for declaratory and injunctive relief for violations of the Equal Protection Clause.

**Answer to Paragraph 66:  The State Defendants deny the allegations contained in Paragraph 66 of the Complaint.**

67.     In their official capacity as officers and members of the Arizona Board of Regents, Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, and DuVal are responsible for the terms and conditions of employment at the University of Arizona.

**Answer to Paragraph 67: The State Defendants lack sufficient knowledge or information to admit or deny the allegations identified in Paragraph 67 of the Complaint, and therefore deny them.**

68.     In his official capacity as Interim Director of the Arizona Department of Administration, Defendant Gilbert Davidson is responsible for "determin[ing] the type, structure, and components of the insurance plans made available by the Department [of Administration]." Ariz. Admin. Code R2-6-103.

**Answer to Paragraph 68: The State Defendants admit Ariz. Admin. Code R2-6-103(A) provides, "Within the limits prescribed by law, the Director shall determine the type, structure, and components of the insurance plans made available by the Department."  The State Defendants state that Gilbert Davidson is no longer a**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**named defendant in this case.  The State Defendants deny the remaining allegations contained Paragraph 68 of the Complaint.**

69.     In his official capacity as Acting Assistant Director of Benefit Services Division of the Arizona Department of Administration, Defendant Paul Shannon has direct oversight and responsibility for administering the benefits insurance programs for State employees, including employees of the Arizona Board of Regents.

**Answer to Paragraph 69:  The State Defendants deny that Paul Shannon is Acting Assistant Director.  The State Defendants admit that Paul Shannon is Assistant Director of Benefit Services Division of the Arizona Department of Administration, and in that role has certain oversight and responsibility for administering the benefits insurance programs for State employees and employees of the Arizona Board of Regents.  The State Defendants deny the remaining allegations contained in Paragraph 69 of the Complaint.**

70.     The Equal Protection Clause of the Fourteenth Amendment provides: "no State shall…deny to any person within its jurisdiction the equal protection of the laws."

**Answer to Paragraph 70: The State Defendants admit the allegations in Paragraph 70 of the Complaint.**

71.     Arizona State employees are protected by the Equal Protection Clause.

**Answer to Paragraph 71: The State Defendants admit the allegations in Paragraph 71 of the Complaint, but specifically deny that Plaintiff has a valid Equal Protection Clause claim in this case.**

72.     The employer-sponsored health plan provided by the State of Arizona and the Arizona Board of Regents facially discriminates based on transgender status and gender nonconformity by categorically excluding coverage for all medically necessary "gender reassignment surgery."

**Answer to Paragraph 72: The State Defendants deny the allegations contained in Paragraph 72 of the Complaint.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

73.     Because medical transition from one sex to another inherently transgresses gender stereotypes, denying medically necessary coverage for based on whether surgery is performed for purposes of "gender reassignment" constitutes impermissible discrimination based on gender nonconformity.

**Answer to Paragraph 73: The State Defendants deny the allegations contained in Paragraph 73 of the Complaint.**

74.     Because the need to undergo gender transition is a defining aspect of transgender status, discrimination based on gender transition is discrimination against transgender individuals as a class.

**Answer to Paragraph 74: The State Defendants deny the allegations contained in Paragraph 74 of the Complaint.**

75.     By categorically excluding all coverage for "[g]ender reassignment surgery," the Plan deprives Dr. Toomey and other transgender employees of an equal opportunity to prove that their transition-related surgical is medically necessary under the same standards and procedures that apply to other medical conditions.

**Answer to Paragraph 75: The State Defendants deny the allegations contained in Paragraph 75 of the Complaint.**

76.     By providing a facially discriminatory employer-sponsored health plan, the State of Arizona and the Arizona Board of Regents, by and through Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Davidson and Shannon, acting in their respective official capacities, have unlawfully discriminated— and continue to unlawfully discriminate—against Dr. Toomey and members of the proposed class on the basis of gender, which is subject to heightened scrutiny under the Equal Protection Clause.

**Answer to Paragraph 76: The State Defendants deny the allegations contained in Paragraph 76 of the Complaint.**

1

2       77.     By providing a facially discriminatory employer-sponsored health plan, the

3   State of Arizona and the Arizona Board of Regents, by and through Defendants

4   Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Davidson and

5   Shannon, acting in their respective official capacities, have unlawfully discriminated—

6   and continue to unlawfully discriminate—against Dr. Toomey and members of the

7   proposed class on the basis of transgender status, which is independently subject to

8   heightened scrutiny under the Equal Protection Claus.

9               a.      Men and women who are transgender, as a class, have historically

10                     been subject to discrimination.

11              b.      Men and women who are transgender, as a class, have a defining

12                     characteristic that bears no relation to an ability to perform or contribute to

13                     society.

14              c.      Men and women who are transgender, as a class, exhibit immutable

15                     or distinguishing characteristics that define them as a discrete group.

16              d.      Men and women who are transgender, as a class, are a minority with

17                     relatively little political power.

18        **Answer to Paragraph 77:  The State Defendants deny the allegations**

19   **contained in Paragraph 77 of the Complaint.**

20       78.     The Plan's discriminatory exclusion is not narrowly tailored to serve a

21   compelling governmental interest.

22        **Answer to Paragraph 78: The State Defendants deny the allegations contained**

23   **in Paragraph 78 of the Complaint.**

24       79.     The Plan's discriminatory exclusion is not substantially related to an

25   important governmental interest.

26        **Answer to Paragraph 79: The State Defendants deny the allegations contained**

27   **in Paragraph 79 of the Complaint.**

28

80.     The discriminatory exclusion cannot be justified by a governmental interest in limiting coverage to medically necessary treatments because the Plan's general provisions limiting healthcare to "medically necessary" treatments already serves that interest. The only function of the categorical exclusion is to exclude medical care that would otherwise qualify as medically necessary under the Plan's generally applicable standards.

**Answer to Paragraph 80: The State Defendants deny the allegations contained in Paragraph 80 of the Complaint.**

81.     The Plan's discriminatory exclusion lacks any rational basis and is grounded in sex stereotypes, discomfort with gender nonconformity and gender transition, and moral disapproval of people who are transgender.

**Answer to Paragraph 81: The State Defendants deny the allegations contained in Paragraph 81 of the Complaint.**

**RELIEF REQUESTED**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the following relief to Dr. Toomey and members of the proposed classes:

A.     Declaratory relief, including but not limited to a declaration that Defendants State of Arizona and the Arizona Board of Regents violated Title VII and that Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Davidson and Shannon in their official capacities violated the Equal Protection Claus;

B.     Permanent injunctive relief with respect to all Defendants, requiring Defendants to remove the Plan's categorical exclusion of coverage for "[g]ender reassignment surgery" and evaluate whether Dr. Toomey and the proposed classes' surgical care for gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures;

C.     Plaintiffs' reasonable costs and attorneys' fees pursuant to Title VII and 42 U.S.C. § 1988; and

D. Such other relief as the Court deems just and proper.

**Answer to Relief Requested:  This section constitutes Plaintiff's prayer for relief.  The State Defendants deny the allegations in this section of the Complaint and deny that Plaintiff is entitled to any relief whatsoever.**

**AFFIRMATIVE DEFENSES**

A.      Plaintiff's Complaint fails to state a claim upon which relief may be granted.

B.      Plaintiff's Complaint should be dismissed for failure to exhaust administrative remedies required by the Plan.

C.      Plaintiff's Complaint should be dismissed for failure to exhaust administrative remedies, including because Plaintiff failed to timely file a Charge of Discrimination with the EEOC or similar state agency against the State of Arizona, Defendant Andy Tobin (or formerly Defendant Gilbert Davidson), or Defendant Paul Shannon.

D.      Plaintiff's claims may be barred by the doctrines of waiver, laches, and/or estoppel.

E.      Plaintiff's claims may be barred by applicable statutes of limitations.

F.      Plaintiff's claims for damages, if any, may be barred, in whole or in part, by failure to mitigate alleged damages.

G.      Plaintiff's claims may be barred by the doctrine of sovereign immunity and the Eleventh Amendment.

H.      Defendants have at all times acted in good faith to comply with the provisions of federal and state law.  Defendants have neither intentionally nor willfully violated Plaintiff's rights in any manner nor acted maliciously or with reckless disregard with respect to Plaintiff or any aspect of Plaintiff's employment, and at no time have Defendants acted with any intent to injure Plaintiff.

I.      Defendants have fulfilled all obligations imposed on them by law.

J.    Defendants' actions were taken for legitimate, non-discriminatory, and non-pretextual reasons.

K.    Plaintiff's claims are barred because the employment decision about which he complains was made on the basis of reasonable factors other than Plaintiff's sex, gender non-conformity, or transgender status.

L.    Even if Plaintiff is able to prove that a prohibited factor motivated the alleged employment action, which the State Defendants expressly deny, the same action would have been taken absent such motivation and therefore the Plaintiff's claims must fail.

M.    Defendant's actions were not designed, intended, or used to discriminate because of sex, gender non-conformity, or transgender status.

N.    To the extent Plaintiff has raised a disparate impact claim, all standards and criteria used by Defendants in the employment decision are consistent with business necessity and job-related.

O.    Any action taken by Defendants was rationally related to a legitimate government interest.

P.    Any action taken by Defendants was reasonable and necessary to serve, and substantially related to, an important government purpose.

Q.    Any action taken by Defendants was narrowly tailored to serve a compelling government interest.

R.    Plaintiff's claims may be barred on the basis of absolute/qualified immunity.

S.    The State Defendants are not Plaintiff's employer.

T.    Plaintiff cannot satisfy the prerequisites for class certification and, therefore, lack standing and cannot represent the interests of others.

U.    Class certification may be inappropriate due to conflicts of interest between Plaintiff and purported class members, or between and among purported class members.

1
2
3

V.      Plaintiff cannot satisfy the prerequisites under Federal Rule of Civil Procedure 23 to certify this action as a class action.

4
5
6
7

The State Defendants have not knowingly or intentionally waived any applicable affirmative defenses.  The State Defendants reserve the right to amend their Answer to add such affirmative defenses as may become available or apparent during this proceeding and discovery.

8
9
10

WHEREFORE, the State Defendants demand judgment against Plaintiff as follows:

11
12
13
14

A.      Dismissing the Complaint with prejudice;

B.      For costs, disbursements and attorney fees; and

C.      For such other relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED this 6th day of January, 2020.

15
16

**BURNSBARTON PLC**

17
18
19

By____*/s/ C. Christine Burns*____
C. Christine Burns
Kathryn Hackett King
Alison Pulaski Carter

20
21
22
23
24
25
26
27
28

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on January 6, 2020 I electronically transmitted the
foregoing document to the Clerk's Office using the CM/ECF System for filing and

4        transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

5        Molly Brizgys
         ACLU Foundation of Arizona

6        3707 North 7th Street, Suite 235
         Phoenix, AZ 85014

7        mbrizgys@acluaz.org

8        Joshua A. Block

9        Leslie Cooper
         American Civil Liberties Union Foundation

10       125 Broad Street, Floor 18

11       New York, NY 10004
         jblock@aclu.org

12       lcooper@aclu.org

13       James Burr Shields

14       Heather A. Macre
         Aiken Schenk Hawkins & Ricciardi P.C.

15       2390 East Camelback Road, Suite 400

16       Phoenix, AZ 85016
         burr@aikenschenk.com

17       ham@aikenschnek.com

18       *Attorneys for Plaintiff*

19       Paul F. Eckstein PEckstein@perkinscoie.com

20       Austin C. Yost AYost@perkinscoie.com
         Perkins Coie LLP

21       2901 N. Central Ave., Suite 2000
         Phoenix, AZ 85012-2788

22       DocketPHX@perkinscoie.com

23       *Attorneys for Defendants Arizona Board of Regents*
         *d/b/a University of Arizona; Ron Shoopman; Larry Penley*

24       *Ram Krishna; Bill Ridenour; Lyndel Manson; Karrin*
         *Taylor Robson; Jay Heiler; and Fred Duval*

25

26       s/*Tonya Denler*

27

28