**ACLU FOUNDATION OF ARIZONA**
**3707 North 7th Street, Suite 235**
**Phoenix, Arizona 85014**
**Telephone: (602) 650-1854**
**Facsimile: (602) 650-1376**
**Email: cwee@acluaz.org**

**Christine K. Wee – 028535**

***Counsel for Plaintiffs***

**(*Additional Counsel listed on next page)***

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
**125 Broad Street, Floor 18**
**New York, New York 10004**
**Telephone: (212) 549-2650**
**Facsimile: (212) 549-2627**
**Email: jblock@aclu.org**
**Email: lcooper@aclu.org**

**Joshua A. Block ***
**Leslie Cooper***
**(*admitted pro hac vice)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

**Russell B. Toomey,**

Plaintiff,

v.

**State of Arizona; Arizona Board of Regents, d/b/a University of Arizona,** a governmental body of the State of Arizona; **Ron Shoopman,** In his official capacity as Chair of the Arizona Board of Regents; **Larry Penley,** in his official capacity as member of the Arizona Board of Regents; **Ram Krishna,** in his official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour,** in his official capacity as treasurer of the Arizona Board of Regents; **Lyndel Manson,** in her official capacity as member of the Arizona Board of Regents; **Karrin Taylor Robson,** in her official capacity as member of the Arizona Board of Regents; **Jay Heiler,** in his official capacity as member of the Arizona Board of Regents; **Fred Duval**, in his official capacity as member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration,

Defendants.

CV 19-0035-TUC-RM (LAB)

**AMENDED COMPLAINT**

**WILLKIE FARR & GALLAGHER LLP**
**787 Seventh Avenue**
**New York, New York 10019**
**Telephone: (212) 728-8000**
**Facsimile: (212) 728-8111**
**Email: WPOWELL@WILLKIE.COM**
**Email: MFRIEMUTH@WILLKIE.COM**

**Wesley R. Powell***
**Matthew S. Friemuth***
**(*_pro hac vice_ motion to follow)**

Plaintiff Russell B. Toomey, Ph.D., on behalf of himself and all others similarly situated, brings this action against Defendants State of Arizona, Arizona Board of Regents, d/b/a University of Arizona, Ron Shoopman, Larry Penley, Ram Krishna, Bill Ridenour, Lyndel Manson, Karrin Taylor Robson, Jay Heiler, Fred DuVal, Andy Tobin, and Paul Shannon, for violations of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment.

## INTRODUCTION

1. The State of Arizona provides healthcare coverage to State employees through a self-funded health plan controlled by the Arizona Department of Administration ("the Plan"). (Exhibit A.)

2. The Plan generally provides coverage for medically necessary care, but singles out transgender employees for unequal treatment by categorically denying all coverage for "[g]ender reassignment surgery" regardless of whether the surgery qualifies as medically necessary treatment. As a result, transgender individuals enrolled in the Plan have no opportunity to demonstrate that their transition-related care is medically necessary, and they have no opportunity to appeal any adverse determination to an independent reviewer.

3. In the past, some public and private insurance companies excluded coverage for treatment of gender dysphoria (also called "transition-related care" or "gender-affirming care"), including surgical treatments, based on the erroneous assumption that such treatments were cosmetic or experimental. Today, however, every major medical organization to address the issue has recognized that such exclusions have no basis in medical science and that transition-related care is effective, safe and medically necessary for treatment of gender dysphoria.

4. Plaintiff Russell B. Toomey, Ph.D., is a man who is transgender. He is employed as an Associate Professor at the University of Arizona. As a result of the Plan's

discriminatory exclusion, Dr. Toomey has been blocked from receiving a medically-necessary hysterectomy prescribed by his physician in accordance with the widely accepted standards of care for treating gender dysphoria. The Plan provides coverage for the same hysterectomies when prescribed as medically necessary treatment for other medical conditions. But, the Plan categorically excludes coverage for hysterectomies when they are medically necessary for purposes of "[g]ender reassignment."

5. If the discriminatory exclusion were removed, Dr. Toomey would have an opportunity to prove that his surgery is medically necessary under the Plan's generally applicable standards for establishing medical necessity.

6. If the discriminatory exclusion were removed, Dr. Toomey would also have the right to appeal any adverse determination to an independent reviewer within the third-party claims administrator and, if necessary, to an independent review organization.

7. On its face, the Plan discriminates against Dr. Toomey and other transgender employees "because of . . . sex" in violation of Title VII of the Civil Rights Act of 1964 and deprives Dr. Toomey and other transgender employees of equal treatment under the Equal Protection Clause of the Fourteenth Amendment.

8. Dr. Toomey brings this Amended Complaint on behalf of himself and a proposed class of similarly situated individuals for declaratory and injunctive relief requiring Defendants to remove the Plan's categorical exclusion of coverage for "[g]ender reassignment surgery" and evaluate whether transgender individuals' surgical care for gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures.

## JURISDICTION AND VENUE

9. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Constitution of the United States, and 42 U.S.C. § 1983.

10. This Court has jurisdiction pursuant to Article III of the United States Constitution; 28 U.S.C. §§ 1331, 1343; and 42 U.S.C. § 2000e-5(f)(3).

11. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

12. Venue lies with this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice was committed in the State of Arizona.

**PARTIES**

13. Plaintiff Russell B. Toomey, Ph.D., resides in Tucson, Arizona.

14. Dr. Toomey is employed by Defendant, the Arizona Board of Regents, as an Associate Professor at the University of Arizona.

15. The Arizona Board of Regents provides healthcare to its employees, including Dr. Toomey, through a self-funded plan controlled by the Arizona Department of Administration.

16. Defendant Ron Shoopman is sued in his official capacity as Chair of the Arizona Board of Regents.

17. Defendant Ram Krishna is sued in his official capacity as Secretary of the Arizona Board of Regents.

18. Defendant Bill Ridenour is sued in his official capacity as Treasurer of the Arizona Board of Regents.

19. Defendants Larry Penley, Lyndel Manson, Karrin Taylor Robson, Jay Heiler, and Fred DuVal are sued in their official capacities as Members of the Arizona Board of Regents.

20. Defendant Andy Tobin is sued in his official capacity as Interim Director of the Arizona Department of Administration.

21. Defendant Paul Shannon is sued in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration.

## EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

22. On August 15, 2018, Dr. Toomey timely filed a charge with the Equal Employment Opportunity Commission against the Arizona Board of Regents for sex discrimination in violation of Title VII.

23. On December 14, 2018, the Department of Justice issued a right-to-sue letter to Dr. Toomey, which was received on December 27, 2018. (Exhibit B.)

## FACTUAL ALLEGATIONS

### Transgender individuals and gender dysphoria

24. Gender identity is a well-established medical concept, referring to one's sense of oneself as belonging to a particular gender. Typically, people who are designated female at birth based on their external anatomy identify as girls or women, and people who are designated male at birth identify as boys or men. For transgender individuals, however, the sense of one's gender identity differs from the sex assigned to them at birth.

25. Transgender men are men who were assigned "female" at birth, but have a male gender identity. Transgender women are women who were assigned "male" at birth, but have a female gender identity.

26. Although the precise origins of each person's gender identity is not fully understood, experts agree that it likely results from a combination of biological factors as well as social, cultural, and behavioral factors.

27. Being transgender is not a mental disorder. Men and women who are transgender have no impairment in judgment, stability, reliability, or general social or vocational capabilities solely because of their transgender status. But transgender men and women may require treatment for "gender dysphoria," the diagnostic term for the clinically significant emotional distress experienced as a result of the incongruence of one's gender with their assigned sex and the physiological developments associated with that sex. The criteria for diagnosing gender dysphoria are set forth in the Diagnostic and Statistical

Manual of Mental Disorders (DSM-V) (302.85).

28. The widely accepted standards of care for treating gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH"). Under the WPATH standards, medically necessary treatment for gender dysphoria may require medical steps to affirm one's gender identity and transition from living as one gender to another. This treatment, often referred to as transition-related care or gender-affirming care, may include hormone therapy, surgery (sometimes called "sex reassignment surgery" or "gender confirmation surgery"), and other medical services that align individuals' bodies with their gender identities.

29. Under the WPATH standards, the exact medical treatment varies based on the individualized needs of the person. Under each patient's treatment plan, the goal is to enable the individual to live all aspects of their life consistent with their gender identity, thereby eliminating the distress associated with the incongruence.

30. In the past, public and private insurance companies excluded coverage for transition-related care based on the assumption that such treatments were cosmetic or experimental. Today, however, transition-related surgical care is routinely covered by private insurance programs. The American Medical Association, the American Psychological Association, the American Psychiatric Association, the American College of Obstetricians and Gynecologists, and every other major medical organization have issued policy statements and guidelines supporting healthcare coverage for transition-related care as medically necessary under contemporary standards of care. No major medical organization has taken the position that transition-related care is not medically necessary or advocated in favor of a categorical ban on insurance coverage for transition-related procedures.

31. Medicare began covering transition-related surgery in 2014 after an independent medical board in the U.S. Department of Health & Human Services rescinded

an old Medicare policy that had excluded surgery from Medicare coverage. The decision explained that the Medicare surgery exclusion was based on a medical review conducted in 1981 and failed to take into account subsequent developments in surgical techniques and medical research. Medicare now provides coverage for transition-related surgical care for gender dysphoria on a case-by-case basis based on individualized medical need.

**The Self-Funded Health Plan's "Gender Reassignment" Exclusion**

32. Dr. Toomey's healthcare coverage is provided and paid for by the State of Arizona through the Plan.

33. Individuals enrolled in the Plan must choose to receive benefits through a Network Provider. In 2018, the four Network Providers were Aetna, Blue Cross Blue Shield of Arizona, Cigna, and UnitedHealthcare. Dr. Toomey's Network Provider is Blue Cross Blue Shield of Arizona.

34. The Plan generally provides coverage for medically necessary care, which the Plan defines as "services, supplies and prescriptions, meeting all of the following criteria": (1) ordered by a physician; (2) not more extensive than required to meet the basic health needs; (3) consistent with the diagnosis of the condition for which they are being utilized; (4) consistent in type, frequency and duration of treatment with scientifically based guidelines by the medical-scientific community in the United States of America; (5) required for purposes other than the comfort and convenience of the patient or provider; (6) rendered in the least intensive setting that is appropriate for their delivery; and (7) have demonstrated medical value.

35. In the event that the Plan denies coverage for a treatment based on purported lack of medical necessity, the Plan provides a right to appeal the decision to an independent reviewer at the third-party claims administrator and, if necessary, to further appeal to an external independent review organization. If an independent reviewer concludes that the treatment is medically necessary, that decision is binding, and the Plan must immediately

authorize coverage for the treatment.

36. The Plan does not apply these generally applicable standards and procedures to surgical care for gender dysphoria. Instead, the Plan categorically denies all coverage for "[g]ender reassignment surgery" regardless of whether the surgery qualifies as medically necessary. Transgender individuals enrolled in the Plan have no opportunity to demonstrate that their transition-related care is medically necessary or to appeal any adverse determination to an independent reviewer.

37. All four of the health insurance companies who serve as Network Providers for the Plan have adopted internal policies and standards for determining when transition-related surgery for gender dysphoria is medically necessary and, thus, covered. (Exhibits C-F) But, as a result of the Plan's "gender reassignment" exclusion, the Network Providers do not apply those internal policies and standards when administering the Plan to Arizona State employees and, instead, automatically deny coverage of transition-related surgery.

**Dr. Toomey's medically necessary treatment for gender dysphoria**

38. Dr. Toomey is a man who is transgender, which means that he has a male gender identity, but the sex assigned to him at birth was female. Dr. Toomey transitioned to live consistently with his male identity in 2003. Since 2003, Dr. Toomey has received testosterone as a medically necessary treatment for gender dysphoria. He also received medically necessary chest reconstruction surgery in 2004.

39. In accordance with the WPATH Standards of Care, Dr. Toomey's treating physicians have recommended that he receive a hysterectomy as a medically necessary treatment for gender dysphoria.

40. The Plan provides coverage for the same surgery when prescribed as medically necessary treatment for other medical conditions, but not when the surgery is performed as part of transition-related care.

41. Dr. Toomey has satisfied all of the criteria for a medically necessary hysterectomy under the WPATH Standards of Care.[1]

42. All four of the Network Providers for the Plan have adopted internal policies and guidelines that authorize hysterectomies as medically necessary treatments for gender dysphoria based on the same criteria used by the WPATH Standards of Care.

43. As a result of the Plan's categorical exclusion for "gender reassignment surgery," Dr. Toomey's Network Provider—Blue Cross Blue Shield of Arizona—denied preauthorization for Dr. Toomey's hysterectomy on August 10, 2018. (Exhibit G.)

44. In denying preauthorization, Blue Cross Blue Shield of Arizona did not apply its own internal guidelines for determining whether the hysterectomy is a medically necessary treatment for gender dysphoria. The denial was based solely on the Plan's exclusion for "gender reassignment surgery."

45. The denial letter from Blue Cross Blue Shield of Arizona stated:

> [W]e cannot approve this request because the laparoscopic total hysterectomy with removal of tubes and ovaries surgery, for your diagnosis of transsexualism and gender identity disorder is considered a gender reassignment surgery, which is a benefit exclusion. This finding is based on your benefit plan booklet on pages 56 & 57 under the heading of "Exclusions and General Limitations" which states:
>
> 10.1 Exclusions and General Limitations
>
> "In addition to any services and supplies specifically excluded in any other Article of the Plan Description, any services and supplies which are not

[1] Those criteria are: (a) Two referral letters from qualified mental health professionals; (b) Persistent, well documented gender dysphoria; (c) Capacity to make a fully informed decision and to consent for treatment; (d) Age of majority in a given country; (e) If significant medical or mental health concerns are present, they must be well controlled; and (f) Twelve continuous months of hormone therapy as appropriate to the patient's gender goals (unless the patient has a medical contraindication or is otherwise unable or unwilling to take hormones).

> described as covered are excluded. In addition, the following are specifically excluded Services and Supplies:
>
> • Gender reassignment surgery."
>
> If you choose to get the laparoscopic total hysterectomy with removal of tubes and ovaries surgery, BCBSAZ will not cover the costs of this service.

(Ex. G at 1.)

**CLASS ALLEGATIONS**

46. Dr. Toomey brings this action on behalf of himself and a class of similarly situated individuals pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Through the "gender reassignment surgery" exclusion, Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2).

47. Class certification is appropriate because Dr. Toomey challenges the facial validity of the Plan's "gender reassignment surgery" exclusion, which denies transgender individuals an equal opportunity to demonstrate that their transition-related surgical care is medically necessary. The denial of that equal opportunity is an injury in fact that can be resolved on a class-wide basis.

48. Dr. Toomey seeks a declaratory judgment and injunction requiring Defendants to remove the Plan's categorical exclusion of coverage for "[g]ender reassignment surgery" and evaluate whether transgender individuals' surgical care for gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures.

49. Dr. Toomey proposes two classes based on the claims against each Defendant.

50. With respect to (a) the Title VII claim against the State of Arizona and the Arizona Board of Regents and (b) the equal protection claim against Defendants Ron

Shoopman, Ram Krishna, Bill Ridenour, Larry Penley, Lyndel Manson, Karrin Taylor Robson, Jay Heiler, and Fred DuVal in their official capacities: the proposed class consists of all current and future employees of the Arizona Board of Regents, who are or will be enrolled in the self-funded Plan controlled by the Arizona Department of Administration, and who have or will have medical claims for transition-related surgical care.

51. With respect to the equal protection claim against Defendants Andy Tobin and Paul Shannon in their official capacities: the proposed class consists of all current and future individuals (including Arizona State employees and their dependents) who are or will be enrolled in the self-funded Plan controlled by the Arizona Department of Administration, and who have or will have medical claims for transition-related surgical care.

52. Each of the proposed classes is so numerous that joinder of all members is impracticable.

53. For each of the proposed classes, there are questions of law or fact common to the class. Because Dr. Toomey brings a facial challenge, the class claims do not depend on whether a particular individual's transition-related surgery is ultimately proven to be medically necessary. Dr. Toomey merely seeks declaratory relief and an injunction providing all class members the opportunity to have their claims for transition-related surgery evaluated for medical necessity under the same standards and procedures that the Plan applies to other medical treatments.

54. For each of the proposed classes, the claims or defenses of the representative parties are typical of the claims or defenses of the class.

55. For each of the proposed classes, Dr. Toomey will fairly and adequately protect the interests of the class.

**COUNT I**
**VIOLATION OF TITLE VII**
**(Against State of Arizona and Arizona Board of Regents)**

56. Title VII of the Civil Rights Act of 1964 provides that employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(l).

57. The State of Arizona and the Arizona Board of Regents are employers as that term is defined in Title VII, 42 U.S.C. § 2000e-(a) and (b).

58. An employer-sponsored health plan is part of the "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(l).

59. Discrimination on the basis of transgender status or gender nonconformity is discrimination on the basis of "sex" under Title VII.

60. The employer-sponsored health plan provided by the State of Arizona and the Arizona Board of Regents facially discriminates based on transgender status and gender nonconformity by categorically excluding coverage for all medically necessary "gender reassignment surger[ies]."

61. Because medical transition from one sex to another inherently transgresses gender stereotypes, denying medically necessary coverage based on whether surgery is performed for purposes of "gender reassignment" constitutes impermissible discrimination based on gender nonconformity.

62. Because the need to undergo gender transition is a defining aspect of transgender status, discrimination based on gender transition is discrimination against transgender individuals as a class.

63. By categorically excluding all coverage for "[g]ender reassignment surgery," the Plan deprives Dr. Toomey and other transgender employees of an equal opportunity to

prove that their transition-related surgery is medically necessary under the same standards and procedures that apply to other medical conditions.

64. By providing a facially discriminatory employer-sponsored health plan, the State of Arizona and the Arizona Board of Regents have unlawfully discriminated—and continue to unlawfully discriminate—against Dr. Toomey and members of the proposed class "with respect to [their] compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(l).

**COUNT II**
**VIOLATION OF THE EQUAL PROTECTION CLAUSE**

**(Against Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Tobin and Shannon in their official capacities)**

65. At all relevant times, Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Tobin and Shannon have acted under color of State law.

66. Pursuant to 42 U.S.C. § 1983, Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Tobin and Shannon, in their official capacities, are liable for declaratory and injunctive relief for violations of the Equal Protection Clause.

67. In their official capacity as officers and members of the Arizona Board of Regents, Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, and DuVal are responsible for the terms and conditions of employment at the University of Arizona.

68. In his official capacity as Director of the Arizona Department of Administration, Defendant Andy Tobin is responsible for "determin[ing] the type, structure, and components of the insurance plans made available by the Department [of Administration]." Ariz. Admin. Code R2-6-103.

69. In his official capacity as Acting Assistant Director of Benefit Services Division of the Arizona Department of Administration, Defendant Paul Shannon has direct oversight and responsibility for administering the benefits insurance programs for State

employees, including employees of the Arizona Board of Regents.

70. The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

71. Arizona State employees are protected by the Equal Protection Clause.

72. The employer-sponsored health plan provided by the State of Arizona and the Arizona Board of Regents facially discriminates based on transgender status and gender nonconformity by categorically excluding coverage for all medically necessary "gender reassignment surgery."

73. Because medical transition from one sex to another inherently transgresses gender stereotypes, denying medically necessary coverage for based on whether surgery is performed for purposes of "gender reassignment" constitutes impermissible discrimination based on gender nonconformity.

74. Because the need to undergo gender transition is a defining aspect of transgender status, discrimination based on gender transition is discrimination against transgender individuals as a class.

75. By categorically excluding all coverage for "[g]ender reassignment surgery," the Plan deprives Dr. Toomey and other transgender employees of an equal opportunity to prove that their transition-related surgical is medically necessary under the same standards and procedures that apply to other medical conditions.

76. By providing a facially discriminatory employer-sponsored health plan, the State of Arizona and the Arizona Board of Regents, by and through Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Tobin and Shannon, acting in their respective official capacities, have unlawfully discriminated—and continue to unlawfully discriminate—against Dr. Toomey and members of the proposed class on the basis of gender, which is subject to heightened scrutiny under the Equal Protection Clause.

77. By providing a facially discriminatory employer-sponsored health plan, the

State of Arizona and the Arizona Board of Regents, by and through Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Tobin and Shannon, acting in their respective official capacities, have unlawfully discriminated—and continue to unlawfully discriminate—against Dr. Toomey and members of the proposed class on the basis of transgender status, which is independently subject to heightened scrutiny under the Equal Protection Clause.

a. Men and women who are transgender, as a class, have historically been subject to discrimination.

b. Men and women who are transgender, as a class, have a defining characteristic that bears no relation to an ability to perform or contribute to society.

c. Men and women who are transgender, as a class, exhibit immutable or distinguishing characteristics that define them as a discrete group.

d. Men and women who are transgender, as a class, are a minority with relatively little political power.

78. The Plan's discriminatory exclusion is not narrowly tailored to serve a compelling governmental interest.

79. The Plan's discriminatory exclusion is not substantially related to an important governmental interest.

80. The discriminatory exclusion cannot be justified by a governmental interest in limiting coverage to medically necessary treatments because the Plan's general provisions limiting healthcare to "medically necessary" treatments already serves that interest. The only function of the categorical exclusion is to exclude medical care that would otherwise qualify as medically necessary under the Plan's generally applicable standards.

81. The Plan's discriminatory exclusion lacks any rational basis and is grounded

in sex stereotypes, discomfort with gender nonconformity and gender transition, and moral disapproval of people who are transgender.

**RELIEF REQUESTED**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the following relief to Dr. Toomey and members of the proposed classes:

A. Declaratory relief, including but not limited to a declaration that Defendants State of Arizona and the Arizona Board of Regents violated Title VII and that Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Tobin and Shannon, in their official capacities, violated the Equal Protection Clause;

B. Permanent injunctive relief with respect to all Defendants, requiring Defendants to remove the Plan's categorical exclusion of coverage for "[g]ender reassignment surgery" and evaluate whether Dr. Toomey and the proposed classes' surgical care for gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures.

C. Plaintiffs' reasonable costs and attorneys' fees pursuant to Title VII and 42 U.S.C. § 1988; and

D. Such other relief as the Court deems just and proper.

DATED this 2nd day of March, 2020.

ACLU FOUNDATION OF ARIZONA

By /s/Christine K. Wee
Christine K. Wee

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Joshua A. Block*
Leslie Cooper*
(*admitted *pro hac vice*)

WILLKIE FARR & GALLAGHER LLP
Wesley R. Powell*
Matthew S. Friemuth*
(**PRO HAC VICE* MOTION TO FOLLOW)

*Attorneys for Plaintiff Russell B. Toomey*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties.

*/s/ Christine K. Wee*
Christine K. Wee