| | |
|---|---|
| **ACLU FOUNDATION OF ARIZONA**<br>3707 North 7th Street, Suite 235<br>Phoenix, Arizona 85014<br>Telephone: (602) 650-1854<br>Facsimile:  (602) 650-1376<br>Email: vlopez@acluaz.org<br>Email: cwee@acluaz.org<br><br>Victoria Lopez*<br>Christine K. Wee – 028535<br><br>*Attorneys for Plaintiff*<br>(*admission under Arizona Rule 38(f) pending) | **AMERICAN CIVIL LIBERTIES UNION FOUNDATION**<br>125 Broad Street, Floor 18<br>New York, New York  10004<br>Telephone:  (212) 549-2650<br>Facsimile:  (212) 549-2627<br>Email: jblock@aclu.org<br>Email: lcooper@aclu.org<br><br>Joshua A. Block *<br>Leslie Cooper*<br>(*admitted pro hac vice) |

**(*Additional Counsel listed on next page*)**

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Russell B. Toomey,**<br><br>             Plaintiff,<br><br>v.<br><br>**State of Arizona; Arizona Board of Regents, d/b/a University of Arizona,** a governmental body of the State of Arizona; **Ron Shoopman,** In his official capacity as Chair of the Arizona Board of Regents; **Larry Penley,** in his official capacity as member of the Arizona Board of Regents; **Ram Krishna,** in his official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour,** in his official capacity as treasurer of the Arizona Board of Regents; **Lyndel Manson,** in her official capacity as member of the Arizona Board of Regents; **Karrin Taylor Robson,** in her official capacity as member of the Arizona Board of Regents; **Jay Heiler,** in his official capacity as member of the Arizona Board of Regents; **Fred Duval**, in his official capacity as member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration,<br><br>             Defendants. | CV 19-CV-0035-TUC-RM (LAB)<br><br>**PLAINTIFF'S SUPERSEDING MOTION FOR CLASS CERTIFICATION** |

**WILLKIE FARR & GALLAGHER LLP**
**787 Seventh Avenue**
**New York, New York 10019**
**Telephone: (212) 728-8000**
**Facsimile: (212) 728-8111**
Email: **WPOWELL@WILLKIE.COM**
Email: **MFRIEMUTH@WILLKIE.COM**

**Wesley R. Powell***
**Matthew S. Friemuth***
**(*admitted pro hac vice)**

# INTRODUCTION

The State of Arizona provides health care coverage to its employees through a self-funded healthcare plan controlled by the Arizona Department of Administration. (Am. Compl., Doc. 86).  The Plan categorically excludes "gender reassignment surgery," regardless of whether the surgery qualifies as medically necessary to treat gender dysphoria. (Am. Compl, Doc. 86 at pg. 7).  Plaintiff Russell B. Toomey, Ph.D., brings a facial challenge to that categorical exclusion under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and the Equal Protection Clause of the Fourteenth Amendment. (Am. Compl., Doc. 86 at pg. 5). On December 23, 2019, this Court denied Defendants' motion to dismiss Dr. Toomey's claims and held that Dr. Toomey had stated valid claims for relief under both Title VII and the Equal Protection Clause.  (Doc. 69).

Plaintiff respectfully moves the Court for an order certifying this case as a class action under Fed. R. Civ. P. 23(b)(2) and appointing Plaintiff's counsel as class counsel under Rule 23(g).  In support of this Motion, Plaintiff submits his own declaration about his medical claim, as well as information about his connections to the transgender community in Arizona that make him uniquely well-situated to represent the interests of the classes.

# BACKGROUND

As an employee of the Arizona Board of Regents, Dr. Toomey is provided healthcare coverage through the State of Arizona's self-funded healthcare plan controlled by the Arizona Department of Administration. (Am. Complaint, Doc. 86, pg. 1-3).  The Plan generally provides coverage for medically necessary care, but the Plan categorically denies all coverage for "[g]ender reassignment surgery" regardless of whether the surgery qualifies as medically necessary to treat gender dysphoria.  Transgender individuals enrolled in the Plan have no opportunity to demonstrate that their surgical care to treat gender dysphoria (also known as "transition-related care" or "gender-affirming care" is

medically necessary.

As a result of the Plan's categorical exclusion for "gender reassignment surgery," Dr. Toomey was denied preauthorization for his hysterectomy on August 10, 2018. (Doc. 86-7.). The denial was based solely on the Plan's exclusion for "gender reassignment surgery."

Dr. Toomey challenges the facial validity of the Plan's "gender reassignment surgery" exclusion, which denies transgender individuals an equal opportunity to demonstrate that their transition-related surgical care is medically necessary. As alleged in the Complaint, Dr. Toomey contends that the "gender reassignment surgery" exclusion facially violates Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment. (Am. Compl., Doc. 86 at pg. 5). On December 23, 2019, this Court denied Defendants' motion to dismiss Dr. Toomey's claims and held that Dr. Toomey had stated valid claims for relief under both Title VII and the Equal Protection Clause. (Doc. 69).

**Proposed Classes**

Pursuant to Federal Rule of Civil Procedure 23(b)(2), Dr. Toomey seeks class-wide injunctive and declaratory relief on behalf of two classes. (Am. Compl., Doc. 86 at pg. 11-12). For purposes of the Title VII claims against the State of Arizona and the Arizona Board of Regents, the first class is defined as:

> Current and future employees of the Arizona Board of Regents who are or will be enrolled in the self-funded Plan controlled by the Arizona Department of Administration, and who have or will have medical claims for transition-related surgical care.

For purposes of the equal protection claims against Andy Tobin and Paul Shannon in their official capacities, the second class is defined as:

> Current and future individuals (including Arizona State employees and their dependents), who are or will be enrolled in the self-funded Plan controlled by the Arizona Department of Administration, and who have or will have medical claims for transition-related surgical care.

2

# ARGUMENT

This is the paradigmatic case for class certification.  Dr. Toomey brings a facial challenge to the Plan's "gender reassignment" exclusion, which applies across the board to all Plan members regardless of medical necessity.  A single injunction would provide relief to all class members by lifting the categorical exclusion and allowing class members' claims for transition-related surgery to be evaluated for "medical necessity" under the Plan's generally applicable standards.

## I. The Proposed Classes Meet All the Rule 23(a) Requirements.

### A. Numerosity

"A proposed class satisfies the numerosity requirement if members are so numerous that joinder would be impracticable.  There is no fixed threshold, but courts in this circuit generally have held that classes of **40 or more** satisfy the numerosity requirement." *Valenzuela v. Ducey*, No. CV-16-03072-PHX-DGC, 2017 WL 6033737, at *4 (D. Ariz. Dec. 6, 2017) (internal quotation marks and citations omitted) (emphasis added).  A class can also "be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014).  "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'"  1 Alba Cone & Herbert B. Newberg, *Newberg on Class Actions* § 3.3 (4th ed. 2002))

To establish numerosity, therefore, Dr. Toomey must demonstrate—at most—that it is reasonable to believe based on general knowledge and common sense that (a) at least 40 current or future Board of Regents employees will be enrolled in the self-funded Plan and have medical claims for transition-related, (b) at least 40 current or future individuals (including Arizona State employees and their dependents) will be enrolled in the self-funded Plan and have medical claims for transition-related care.  In making that showing,

3

Dr. Toomey is not limited to evidence that would be admissible under the Federal Rules of Evidence. *Valenzuela*, 2017 WL 6033737, at *4.

Numerosity is easily satisfied in this case based on Dr. Toomey's first-hand knowledge and reasonable inferences from demographic data. Dr. Toomey is already personally aware of at least six other employees of the Board of Regents who are unable to receive transition-related surgery because of the challenged exclusion. (Toomey Decl., Exhibit A, at pg. 4).

Demographic data further indicates that the total number of class-members could be over 1,000. As of 2017, the Board of Regents employed 35,614 individuals at Arizona's public universities.[1] As of 2018, approximately 137,700 individuals receive healthcare through the State's self-funded plan.[2] According to a 2016 study from the Williams Institute, approximately 0.62% of Arizonans identify as transgender.[3] Recent surveys further reflect that an estimated 25% to 35% of individuals who identify as transgender or gender non-binary have undergone some form of gender conforming surgery.[4] And an additional 61% of transgender men and 54% of transgender women reported *wanting* some form of gender conforming surgery in the future.[5]

---

[1] Arizona Board of Regents, University System Quick Facts, *available at* https://www.azregents.edu/universtiy-system-quick-facts (last visited February 13, 2020).
[2] Arizona Department of Administration Benefits, Health Insurance Trust Fund Annual 2017 Report (2018), p. 6, *available at* https://benefitoptions.az.gov/sites/default/files/media/LEGI_HITF_2018_Annual_Report.pdf.
[3] Andrew R. Flores et. al., *How Many Adults Identify as Transgender in the United States* (2016), The Williams Institute, *available at* http://williamsinstitute.law.ucla.edu/wp-content/uploads/How-Many-Adults-Identify-as-Transgender-in-the-United-States.pdf.
[4] Ian T. Nolan, et. al., *Demographic and temporal trends in transgender identities and gender confirming surgery*, 8 Translational Andrology and Urology 3 (2019).
[5] James, S. E., Herman, J. L., Rankin, S., Keisling, M., Mottet, L., & Anafi, M. (2016), *The Report of the 2015 U.S. Transgender Survey*, Washington, DC: National Center for

4

Applying this demographic data, it is reasonable to conclude that ***approximately 221*** transgender individuals currently work for the Board of Regents and ***approximately 854*** transgender individuals currently receive healthcare through the State's self-funded Plan. Applying the conservative estimate of individuals who *have* received (25%) or *wish* to receive gender conforming surgery (57%), ***approximately 181*** such transgender individuals work for the Board of Regents and ***approximately 700*** such transgender individuals receive healthcare through the State's self-funded Plan. From this data alone, the Court can easily infer that each of the putative classes has more than 40 members. *See Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 337 (C.D. Cal. 2016) (finding numerosity satisfied where plaintiff identified 23 employees who were actual members of the subclass and presented evidence that there were 1,229 total employees because "it is reasonable for the Court to conclude that there are other employees out of 1,229 who fall within the proposed subclass"); *Williams v. Conway*, 312 F.R.D. 248, 252 (N.D.N.Y. 2016) (reasonable inference that 0.14% of prison population is profoundly deaf because 0.14% of total population is profoundly deaf).

Moreover, even without a statistical estimate of current class members, joinder would still be impractical because Dr. Toomey seeks declaratory and injunctive relief on behalf of "current and future" employees and State Plan beneficiaries "who have or will have" medical claims for transition-related surgical care. "[C]lasses including future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class members, much less joining them.'" *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019). "[T]he presence of future class members renders joinder inherently impractical, thus satisfying the numerosity requirement's fundamental purpose." *Inland Empire-*

---

Transgender Equality, pp. 105-106, *available at*
https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf.

5

*Immigrant Youth Collective v. Nielsen*, No. EDCV172048PSGSHKX, 2018 WL 1061408, at *7 (C.D. Cal. Feb. 26, 2018).

### B. Commonality

The proposed classes also satisfy the requirement of commonality. "In a civil rights suit, 'commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)), *aff'd*, 695 F.3d 990 (9th Cir. 2012).

Dr. Toomey's claims easily meet that test. He brings a facial challenge that does not depend on whether each individual's surgery is ultimately proven to be medically necessary. Instead, Dr. Toomey merely seeks declaratory relief and an injunction providing all class members the opportunity to have their claims for transition-related surgery evaluated for medical necessity under the same standards and procedures that the Plan applies to other medical treatments. The denial of that equal opportunity is an injury in fact that can be resolved on a class-wide basis because "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group," the "injury in fact" is "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993); s*ee Valenzuela*, 2017 WL 6033737, at *5 (granting class certification in which "the relevant injury is not the denial of driver's licenses, but the fact that the State imposes requirements on class members that it does not impose on other[s]"); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 127 (N.D. Cal. 2016) (granting class certification in challenge to insurance company's mental health coverage guidelines because "Plaintiffs do not ask the Court to make determinations as to whether class members were *actually* entitled to benefits. Instead, Plaintiffs seek only an order that [the insurance company]

develop guidelines that are consistent with generally accepted standards and reprocess claims for coverage that were denied under the allegedly faulty guidelines.").

### C. Typicality

Under Rule 23(a)(3), the representative party must have claims or defenses that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citations omitted). This requirement is "permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

For all the same reasons that Dr. Toomey's claims are common to the classes, Dr. Toomey's claims are also typical of the classes. Dr. Toomey is challenging the blanket exclusion for all "gender reassignment surgery," and he merely seeks the opportunity to demonstrate that transition-related surgical care is medically necessary. That facial challenge applies equally to every member of the proposed classes regardless of the particular type of transition-related surgery the class member seeks and regardless of whether the class member is ultimately successful in proving that their specific surgery is medically necessary. *See Flack v. Wisconsin Dep't of Health Servs.*, 331 F.R.D. 361, 369 (W.D. Wis. 2019) (certifying class action challenge to Wisconsin's categorical exclusion of transition-related care from Medicaid plan because "all the claims arise from defendants' enforcing the Challenged Exclusion, and the relief sought simply seeks to allow the class members the right to individually seek treatment based on medical necessity, free from enforcement of the Challenged Exclusion.").

### D. Adequacy of Representation.

#### 1. The class representatives' interests are not antagonistic to the interests of the classes

Dr. Toomey is a transgender male who is a tenured professor at the University of Arizona in the department of Family Studies and Human Development. (Decl. of Dr. Russell Toomey, Exhibit A at pg. 3). Dr. Toomey's academic research focuses on the discrimination LGBTQ youth face in their families, schools, and communities and seeks to identify ways to mitigate the association between LGBTQ discrimination and poor health outcomes. (*Id.*). Dr. Toomey is a member of the Transgender Studies Research Cluster at the University of Arizona and serves as a faculty fellow at the University of Arizona's LGBTQ Resource Center. (*Id.*). Dr. Toomey is also deeply connected to the wider transgender community in Arizona. He is on the steering committee of Camp Born this Way, an Arizona camp for transgender youth and their families. (*Id.* at 3-4). He has served on the Board of the Southern Arizona Gender Alliance which provides support, education, resources, and advocacy for Southern Arizona's community of transgender and gender non-conforming individuals. (*Id.* at 4). Given his academic expertise on these issues as well as a deep personal connection to many of the foremost transgender community groups in Arizona, Dr. Toomey is well situated to represent the interests of the classes and to communicate with them about issues in the case.

As both an employee of the University of Arizona Board of Regents and a participant of the Plan effected by its categorical exclusion of "gender reassignment surgery," Dr. Toomey adequately represents and his interests are aligned with all members of the classes. Because the complaint does not turn on each individual medical treatment but instead turns on the opportunity for each class member to demonstrate that their transition-related care is medically necessary the class members' interests are commensurate with each other.

### 2. Counsel are well qualified to represent the classes.

Plaintiff's counsel are experienced class action and civil rights practitioners. The litigation team includes (1) Victoria Lopez, Advocacy and Legal Director of the ACLU of Arizona, who represents classes in three other matters (Exhibit B, Decl. of Victoria Lopez), (2) Christine K. Wee of the ACLU of Arizona, who represents a class in one matter, (3) Joshua Block of the ACLU who has represented several classes challenging discrimination against LGBT people and has represented other transgender individuals in discrimination suits regarding access to transition-related health care (Exhibit C, Decl. of Joshua Block), and (4) Wesley Powell and Matthew Freimuth of Willkie Farr & Gallagher LLP who are experienced class action litigators (on behalf of both plaintiffs and defendants) and have also represented transgender individuals in discrimination suits regarding access to transition-related health care and public facilities (Exhibit D, Decl. of Wesley R. Powell).

## II. Dr. Toomey's Claims Should Be Certified Under Rule 23(b)(2).

Dr. Toomey brings this action on behalf of himself and two classes of similarly situated individuals pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, which authorizes class actions when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011) (quotation marks and citations omitted). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of cases suitable for certification under Rule 23(b)(2). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

Dr. Toomey's facial challenge under Title VII and the Equal Protection Clause falls squarely within the scope of Rule 23(b)(2). Through the "gender reassignment surgery" exclusion, Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2). As discussed above, class certification is appropriate because Dr. Toomey challenges the facial validity of the Plan's "gender reassignment surgery" exclusion, which denies transgender individuals an equal opportunity to demonstrate that their transition-related surgical care is medically necessary. The denial of that equal opportunity is an injury in fact that can be resolved on a class-wide basis. *See Flack*, 331 F.R.D. at 369; *Valenzuela*, 2017 WL 6033737, at *5; *Wit*, 317 F.R.D. at 127.

## CONCLUSION

Plaintiff has satisfied all prerequisites to and requirements of Rule 23 and, therefore, respectfully requests that the Court certify the proposed classes, approve the named Plaintiff as a class representative, and appoint Plaintiff's counsel to represent the classes.

DATED: this 6th day of March, 2020.

        ACLU FOUNDATION OF ARIZONA
        By  *Christine K. Wee*
           Victoria López*
           Christine K. Wee

        (*admission under Arizona Rule 38(f) pending)

        AMERICAN CIVIL LIBERTIES UNION
        FOUNDATION
           Joshua A. Block*
           Leslie Cooper*

        (*admitted *pro hac vice*)

WILLKIE FARR & GALLAGHER LLP
Wesley R. Powell*
Matthew S. Friemuth*

(*admitted *pro hac vice*)

*Attorneys for Plaintiff Russell B. Toomey*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties.

*/s/ Christine K. Wee*
Christine K. Wee