R. Shawn Oller; AZ Bar No. 019233
soller@littler.com
Peter C. Prynkiewicz; AZ Bar No. 015256
pprynkiewicz@littler.com
LITTLER MENDELSON, P.C.
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
Telephone: 602.474.3600
Facsimile: 602.957.1801

Attorneys for Defendants State of Arizona, Andy Tobin, and Paul Shannon

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell B. Toomey,<br><br>Plaintiff,<br><br>v.<br><br>State of Arizona; Arizona Board of Regents, d/b/a University of Arizona, a governmental body of the State of Arizona; Ron Shoopman, In his official capacity as Chair of the Arizona Board of Regents; Larry Penley, in his official capacity as member of the Arizona Board of Regents; Ram Krishna, in his official capacity as Secretary of the Arizona Board of Regents; Bill Ridenour, in his official capacity as treasurer of the Arizona Board of Regents; Lyndel Manson, in her official capacity as member of the Arizona Board of Regents; Karrin Taylor Robson, in her official capacity as member of the Arizona Board of Regents; Jay Heiler, in his official capacity as member of the Arizona Board of Regents; Fred Duval, in his official capacity as member of the Arizona Board of Regents; Andy Tobin, in his official capacity as Director of the Arizona Department of Administration; Paul Shannon, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration,<br><br>Defendants | Case No. CV 19-0035-TUC-RM (LAB)<br><br>**DEFENDANTS STATE OF ARIZONA, ANDY TOBIN, AND PAUL SHANNON'S RESPONSE TO PLAINTIFF'S SUPERSEDING MOTION FOR CLASS CERTIFICATION** |

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

# I. INTRODUCTION

Plaintiff Russell B. Toomey, a transgender male, contends that the exclusion of "gender reassignment surgery" from Defendant State of Arizona's self-funded healthcare plan (the "Plan") for employees of the Arizona Board of Regents (the "Board") violates Title VII of the Civil Rights Act of 1964 ("Title VII") and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff's Superseding Motion for Class Certification ("Plaintiff's Motion") seeks an order certifying this case as a class action and appointing Plaintiff's counsel as class counsel under Rule 23 of the Federal Rules of Civil Procedure.

Regarding the Title VII claim against Defendants State of Arizona and the Board, Plaintiff is seeking injunctive and declaratory relief on behalf of a class of current and future Board employees "who are or will be enrolled in the self-funded Plan controlled by the Arizona Department of Administration, and who have or will have medical claims for transition-related surgical care." (Pl.'s Mot. at 2.) Regarding the equal protection claim against Defendants Andy Tobin and Paul Shannon in their individual capacities, Plaintiff is seeking injunctive and declaratory relief on behalf of "[c]urrent and future individuals (including Arizona State employees and their dependents), who are or will be enrolled in the self-funded Plan controlled by the Arizona Department of Administration, and who have or will have medical claims for transition-related surgical care." (Pl.'s Mot. at 2.)

Defendants State of Arizona, Andy Tobin, and Paul Shannon (the "State Defendants") request that the Court deny Plaintiff's Motion because there is no factual basis for it to conclude that the proposed classes are so numerous that joinder of all their potential members is impracticable. Alternatively, even if Plaintiff could establish all of the necessary prerequisites for class certification under Rule 23(a), and he cannot establish the numerosity requirement here, the Court should exercise its discretion to deny certification as inappropriate in this case because any declaratory or injunctive relief will necessarily benefit all putative class members without the need to certify a class action and take on the accompanying burdens that a class action will entail.

## II. LAW AND ARGUMENT

### A. Plaintiff Must Prove that Class Certification is Warranted

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979). In order to justify a departure from the norm, "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). Class certification, like most issues arising under Rule 23, is committed in the first instance to the discretion of the district court. *Califano*, 442 at 703; *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978).

As the party seeking class certification, Plaintiff "bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015). The Supreme Court has explained that "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This means that "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original); *see also Falcon*, 457 U.S. at 160 ("[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable").

### B. Plaintiff Has Failed to Satisfy the Numerosity Requirement

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although this numerosity requirement imposes no absolute limitations, it "requires examination of the specific facts of each case." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). The Ninth Circuit has noted that courts generally "find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010). Smaller classes have, however, been deemed insufficient to establish numerosity. *See, e.g.*, *Harik v. California Teachers Ass'n*, 326 1042, 1051 (9th Cir. 2003) (vacating the certification of classes of seven, nine, and ten members because "[t]he Supreme Court has held fifteen is too small."); *Ikonen*

*v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.").

In order to establish numerosity here, Plaintiff argues that he "must demonstrate – at most – that it is reasonable to believe based on general knowledge and common sense that (a) at least 40 current or future Board of Regents employees will be enrolled in the self-funded Plan and have medical claims for transition-related, (b) at least 40 current or future individuals (including Arizona State employees and their dependents) will be enrolled in the self-funded Plan and have medical claims for transition-related care." (Pl.'s Mot. at 3.) Although there are times when "general knowledge" and "common sense" may lead a court to conclude that a plaintiff has satisfied the numerosity requirement, as the Supreme Court has made clear, such a conclusion must be based on a "rigorous analysis" of the "specific facts" supporting that conclusion. Plaintiff's Motion, however, fails to identify any "specific facts" supporting a conclusion that anywhere near 40 individuals who are or will be enrolled in the Plan **will assert medical claims for gender reassignment surgery, not just claims for transition-related care as Plaintiff has framed it in his Motion**.

Plaintiff attempts to rely on his "first-hand knowledge and reasonable inferences from demographic data" to meet his burden of affirmatively demonstrating that there are in fact sufficiently numerous class members that joinder would be impracticable.[1] (Pl.'s Mot. at 4.) Even using Plaintiff's "general knowledge" and "common sense" standard, however, he has failed to establish numerosity by any reasonable measure.

---

[1] Plaintiff cites *Valenzuela v. Ducey*, No. CV-16-03072-PHX-DGC, 2017 WL 6033737 (D. Ariz. Dec. 6, 2017) for the proposition that he "is not limited to evidence that would be admissible under the Federal Rules of Evidence" when seeking class certification, but *Valenzuela* did not reach that conclusion. Although it recognized that "many cases hold that the rules of evidence are not applied strictly at the class certification stage," it cited a case questioning this conclusion and explained that it "need not wrestle with this issue" because the plaintiffs there had identified sufficient evidence to establish numerosity. *Id.* at *4 n.4. *See Zuniga v. Bernalillo Cty.*, 319 F.R.D. 640, 659 n.5 (D.N.M. 2016) (concluding that the Federal Rules of Evidence applied to class certification determinations).

Regarding Plaintiff's first-hand knowledge, he submitted a declaration stating that he knows "of at least six other transgender employees at the University of Arizona or Arizona State University who are ineligible for gender reassignment surgery because of the exclusion." (Pl.'s Mot. Ex. A ¶ 16.) He also asserts, without any explanation or support, that to his knowledge "these employees have not made a claim with their insurance because they know it will be denied." (Pl.'s Mot. Ex. A ¶ 16.) The issue, of course, is not that these or any other employees are ineligible for "gender reassignment surgery" under the Plan. Everyone is ineligible for gender reassignment surgery under the Plan. The issue is whether there are at least 40 employees who "have or will have medical claims" for gender reassignment surgery. Plaintiff offers no *evidence*, first-hand or otherwise, that the six employees referred to in his declaration would pursue a claim for gender reassignment surgery if it was not excluded under the Plan. Specifically, he offers no support for his conclusion that, to his knowledge, these employees have not made a claim *because* they know it will be denied.

Plaintiff has failed to put forward any reliable estimate of the number of transgender individuals enrolled in the Plan let alone the number of transgender employees who will submit medical claims for gender reassignment surgery. This deficiency is particularly important here because of two undisputed facts based on Plaintiff's own allegations and the documentation he has cited in support of his class certification claims. First, we know that not all individuals with gender dysphoria seek or even require treatment. Second, even among those individuals who will require treatment for gender dysphoria, not all of them will seek or require gender reassignment surgery. According to Plaintiff's Amended Complaint, "transgender men and women *may* require treatment for gender dysphoria, the diagnostic term for the clinically significant emotional distress experienced as a result of the incongruence of one's gender with their assigned sex and the physiological developments associated with that sex." (Doc. 86 ¶ 27.) (emphasis added). The Amended Complaint also asserts that "[t]he widely accepted standards of care for treating gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH")" and "*may* require medical steps to affirm one's gender identity." (Doc. 86 ¶ 28.) (emphasis added).

WPATH's standards of care expressly provide that "[o]nly *some* gender-nonconforming people experience gender dysphoria at *some* point in their lives." (*See* WPATH Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People Version 7, relevant excerpts attached as <u>Exhibit A</u>, at 5). As the WPATH standards further explain, treatment for gender dysphoria is individualized and "[w]hat helps one person alleviate gender dysphoria might be very different from what helps another person. This process may or may not involve a change in gender expression or body modifications." (Ex. A at 5.) Finally, the standards explain that "while many individuals need both hormone therapy and surgery to alleviate their gender dysphoria, others need only one of these treatment options and some need neither." (Ex. A at 8.) Plaintiff's declaration does not support a conclusion that all six of the employees referenced in his declaration would be class members because it does not contain any evidence that they are among the subclass of transgender individuals with gender dysphoria who (1) will require treatment and (2) who will request gender reassignment surgery as part of that treatment.

Nor does Plaintiff's reliance on purportedly "reasonable inferences from demographic data" advance his numerosity argument. Indeed, Plaintiff's assertion that "[d]emographic data indicates that the total number of class members could be over 1,000" is entirely based on a 2016 study from the Williams Institute purportedly showing that "approximately 0.62% of Arizonans identify as transgender." (Pl.'s Mot. at 4.) As described below, the Williams Institute study does not support the conclusion that Plaintiff has satisfied the numerosity requirement.

Initially, as the WPATH standards explain, "[f]ormal epidemiological studies on the incidence and prevalence of transsexualism and gender-nonconforming identities in general have not been conducted, and efforts to achieve realistic estimates are fraught with enormous difficulties." (Ex. A at 6.) Second, the prevalence of transsexualism and gender-nonconforming identities in the ten studies discussed by the WPATH standards ranged "from 1:11,900 to 1:45,000 for male-to-female individuals (MtF) and 1:30,400 to 1:200,000 for female-to-male (FtM) individuals." (Ex. A at 7.) These numbers are far lower than the

Williams Institute's claim that 0.62% of all Arizonans identify as transgender and do not even consider the subclass of transgender individuals with gender dysphoria who will seek surgery. Third, the Williams Institute's estimate concerning Arizona was based on answers that individuals in 19 other states gave to the question whether they identified as transgender. (*See* The Williams Institute – How Many Adults Identify as Transgender in the United States? dated June 2016, attached as Exhibit B, at 7.) In other words, the Williams Institute reached its conclusion about the number of transgender individuals in Arizona without relying on any information provided by anyone who lives in Arizona. Finally, of the individuals in the 19 other states who chose to answer the question about being transgender, only 0.52% of them identified as transgender. (Ex. B at 7.)

Several of the cases cited in Plaintiff's Motion illustrate the significant difference between the specific facts proffered in those cases and the absence of facts offered here. For example, the court found that the plaintiff satisfied the numerosity requirement in *Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324 (C.D. Cal. 2016), because he identified at least 23 employees, all of whom submitted declarations in support of the class certification motion, that fell within the proposed subclass. *Id*. at 337. Based on the existence of declarations from 23 employees that the defendant denied all of them meal breaks, the court found that it was reasonable "to conclude that there are other employees out of 1,229 who fall within the proposed subclass." *Id*. In *Valenzuela*, the defendants' own evidence showed that 43 people in addition to the plaintiffs were part of the proposed class. *Valenzuela*, 2017 WL 6033737 at *4. Finally, the court found that "an inference of future class members is reasonable" based on evidence that in addition to the 22 class members that the plaintiffs identified they "made a compelling case that the number is likely higher" given that there were hundreds of thousands of DACA recipients across the country in *Inland Empire – Immigrant Youth Collective v. Nielson*, 2018 WL 1061408, *7 (C.D. Cal. Feb. 26, 2018). Unlike in each of these cases, Plaintiff has failed to offer specific facts that would support a reasonable inference that the number of class members in either class even approaches 40. Consequently, the Court must deny Plaintiff's Motion.

### C. A Class Action is Inappropriate and Unnecessary Here

The Court may certify a class action only if Plaintiff has met his burden of showing that all the prerequisites in Rule 23(a) have been met and that at least one of the requirements in Rule 23(b) has been satisfied. Plaintiff seeks class certification under Rule 23(b)(2), which allows certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Court should decline to certify a class action here because any final injunctive relief or corresponding declaratory relief would not be appropriate respecting the class as a whole. Specifically, given the declaratory or injunctive relief that the Court could order on an individual basis for Plaintiff, there would be no meaningful additional benefit to any prospective class members from ordering relief to the class as a whole.

Several circuit courts have affirmed class certification denials under Rule 23(b)(2) when a class is not needed to obtain the same relief. *See, e.g., Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973), *cert. denied*, 417 U.S. 936 (1974). The plaintiffs in *Galvan*, one of the leading cases adopting what has been referred to as the "necessity requirement," were two Puerto Ricans who were adversely affected by a New York policy denying unemployment compensation benefits to persons who left the New York labor market area and moved to an area of persistent, high unemployment. The plaintiffs alleged that, as applied, this policy was used to bar Puerto Ricans who, like themselves, worked in largely seasonal jobs in New York and returned to Puerto Rico when without work there and moved for class certification under Rule 23(b)(2). The Second Circuit affirmed the district court's denial of class certification finding that a class action was unnecessary: "insofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for the plaintiffs." *Id*. at 1261.

Other circuits, including the Ninth Circuit, have followed this approach. *See James v. Ball*, 613 F.2d 180, 186 (9th Cir. 1979), *reversed on other grounds, Ball v. James*, 451 U.S.

355 (1981). *James* was an appeal from an action commenced in this Court challenging the constitutionality of Arizona statutes limiting voting in elections for directors of the Salt River Project Agricultural and Improvement and Power District (the District) to landowners with votes essentially apportioned to owned acreage. The plaintiffs were Arizona citizens excluded from voting because they either rented land or owned less than one acre of land within the District. The Ninth Circuit found that the district court did not abuse its discretion in denying class certification under Rule 23(b)(2) because "the relief sought will, as a practical matter, produce the same result as formal class-wide relief." *Id*. at 186. Consequently, the *James* court observed that the benefits of a class action under those circumstances "would not be significant." *Id*. *See also Sandford v. R.L. Coleman Realty Co.,* 573 F.2d 173, 178–79 (4th Cir. 1978); *Craft v. Memphis Light, Gas & Water Div.,* 534 F.2d 684, 686 (6th Cir. 1976).

The First Circuit has explained that it agrees "with those circuits which deny Rule 23(b)(2) certification where it is a formality or otherwise inappropriate" but prefers "not to speak of a 'necessity requirement,' since this suggests some kind of mechanical classification, whereas the justification for denying class certification rests on the particular circumstances." *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985). In other words, "[o]ne factor that a court may properly take into account is the fact — if it be a fact — that the same relief can, for all practical purposes, be obtained through an individual injunction without the complications of a class action." *Id*. Given that Rule 23(b)(2) provides that maintaining a class action depends on the appropriateness of injunctive or corresponding declaratory relief with respect to the class as a whole, "when the same relief can be obtained without certifying a class, a court may be justified in concluding that class relief is not 'appropriate.'" *Id*. Consequently, the *Dionne* court affirmed the district court's "denial of class certification on the ground that any injunctive or declaratory relief will inure to the benefit of all those similarly situated." *Id*.

The Third Circuit recently adopted the First Circuit's approach to this issue in *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297 (3d Cir. 2016). Although it held that "necessity is not a freestanding requirement justifying the denial of class certification," it noted

that "it may be considered to the extent it is relevant to the enumerated Rule 23 criteria, including 'that final injunctive relief or corresponding declaratory relief [be] appropriate respecting the class as a whole.'" *Id*. at 310. Consequently, the *Gayle* court explained that "there may be circumstances where class certification is not appropriate because in view of the declaratory or injunctive relief ordered on an individual basis, there would be no meaningful additional benefit to prospective class members in ordering classwide relief." *Id*.

Both *Dionne* and *Gayle* also recognized that there may "be situations where a class certification under Rule 23(b)(2) will arguably be unnecessary, but where other considerations may render a denial of certification improper, such as the risk of mootness, the possibility of a defendant's non-acquiescence in the court's decision, or where class certification would not burden the court." *Id.; Dionne*, 757 F.2d at 1356. Here, however, there is no indication that Plaintiff's claims will become moot (he has already been denied precertification for gender reassignment surgery), that the State Defendants will not comply with any Court order, or that a class action would not unnecessarily burden the Court. Consequently, this Court should follow *Dionne*, *Gayle*, and *James* and deny Plaintiff's Motion because any declaratory or injunctive relief ordered on Plaintiff's behalf will necessarily benefit all putative class members in both of Plaintiff's proposed classes.

## III. CONCLUSION

The Court should deny Plaintiff's Motion because he has failed to establish that his proposed classes meet all the requirements of Rule 23(a). Specifically, he failed to identify any "specific facts" from which the Court could conclude that the putative class members of either of his proposed classes are so numerous that joinder would be impracticable. Alternatively, the Court should exercise its discretion to deny Plaintiff's Motion under Rule 23(b)(2) because it would be inappropriate in that any declaratory or injunctive relief ordered on Plaintiff's behalf will necessarily benefit all putative class members in both of Plaintiff's proposed classes.

DATED this 20th day of April 2020.

        *s/ Peter C. Prynkiewicz*
        R. Shawn Oller
        Peter C. Prynkiewicz
        LITTLER MENDELSON, P.C.
        Attorneys for Defendants State of Arizona, Andy Tobin, and Paul Shannon

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 20th day of April 2020:

Victoria Lopez
Christine K. Wee
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235 Phoenix, Arizona 85014
*Attorneys for Plaintiff*

Joshua A. Block
Leslie Cooper
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, Floor 18
New York, New York 10004
*Attorneys for Plaintiff*

Wesley R. Powell
Matthew S. Friemuth
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
*Attorneys for Plaintiff*

Paul F. Eckstein
Austin C. Yost
Perkins Coie LLP
2901 North Central Ave., Suite 2000
Phoenix, Arizona 85012-2788
*Attorneys for Defendants Arizona Board of Regents d/b/a University of Arizona; Ron Shoopman; Larry Penley; Ram Krishna; Bill Ridenour; Lyndel Manson; Karrin Taylor Robson; Jay Heiler; and Fred Duval*

*s/ Tisha A. Davis*

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600