Victoria Lopez*
Christine K. Wee (SBN 028535)
ACLU Foundation of Arizona
3707 N 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376

*Counsel for Plaintiff*
(*admission under Arizona Rule 38(f) pending)

*(Additional counsel listed on next page)*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Russell B. Toomey,**<br><br>Plaintiff,<br><br>v.<br><br>**State Of Arizona; Arizona Board of Regents, d/b/a University of Arizona**, a governmental body of the State of Arizona; **Ron Shoopman**, in his official capacity as chair of the Arizona Board Of Regents; **Larry Penley**, in his official capacity as Member of the Arizona Board of Regents; **Ram Krishna**, in his official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour**, in his official capacity as Treasurer of the Arizona Board of Regents; **Lyndel Manson**, in her official capacity as Member of the Arizona Board of Regents; **Karrin Taylor Robson**, in her official capacity as Member of the Arizona Board of Regents; **Jay Heiler**, in his official capacity as Member of the Arizona Board of Regents; **Fred Duval**, in his official capacity as Member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration,<br><br>**Defendants.** | Case No. CV 19-0035-TUC-RM (LAB)<br><br>**REPLY IN FURTHER SUPPORT OF PLAINTIFF'S SUPERSEDING MOTION FOR CLASS CERTIFICATION** |

Joshua A. Block (admitted *pro hac vice*)
jblock@aclu.org
Leslie Cooper (admitted *pro hac vice*)
lcooper@aclu.org
American Civil Liberties Union
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
Facsimile: (212) 549-2627

Wesley R. Powell (admitted *pro hac vice*)
wpowell@willkie.com
Matthew S. Friemuth (admitted *pro hac vice*)
mfriemuth@willkie.com
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

# REPLY IN FURTHER SUPPORT OF
# PLAINTIFF'S SUPERSEDING MOTION FOR CLASS CERTIFICATION

Plaintiff Russell B. Toomey, Ph.D., respectfully submits the following Reply in further support of his Superseding Motion for Class Certification. (Pl. Mot., Doc. 88).

## I. The Proposed Classes Satisfy All the Rule 23 Requirements, Including "Numerosity."

As explained in Dr. Toomey's Superseding Motion for Class Certification (Pl. Mot., Doc. 88 at 3-10), the proposed classes satisfy all the requirements for certification under Rule 23(a) and Rule 23(b)(2). In opposing the motion for class certification, the only requirement that State Defendants dispute is "numerosity." (Def. Opp., Doc. 99 at 3-7).

To demonstrate "numerosity," a plaintiff must establish that "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). But the plaintiff does not have to identify the precise size of the proposed class. "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." 1 Alba Cone & Herbert B. Newberg, Newberg on Class Actions § 3.3 (4th ed. 2002)). Moreover, courts in the Ninth Circuit have recognized that the numerosity requirement is further "relaxed" when a proposed class seeks only declaratory and injunctive relief. *See Morgan v. U.S. Soccer Fed'n, Inc.*, No. 2:19-CV-01717-RGK-AGR, 2019 WL 7166978, at *6 (C.D. Cal. Nov. 8, 2019) (collecting cases); *Valenzuela v. Ducey*, No. CV-16-03072-PHX-DGC, 2017 WL 6033737, at *5 n.5 (D. Ariz. Dec. 6, 2017) (citing cases from outside Ninth Circuit).

In the motion for class certification, Dr. Toomey provided three reasons why the proposed classes are large enough that joinder is impracticable. First, Dr. Toomey testified in a declaration that he is personally aware of six other transgender employees of the Arizona Board of Regents "who are ineligible for gender reassignment surgery because of the exclusion" and who "have not made a claim with their insurance because they know it will be denied." (Toomey Decl., Exhibit A, Doc.88-1 at 3; Pl. Mot., Doc. 88 at 4). Dr.

Toomey's declaration also noted that in his personal and professional experience "[m]any individuals do not want to identify publicly as transgender because of fear of stigma or violence." (Toomey Decl., Exhibit A, Doc. 88-1 at 3).

The State Defendants argue that Dr. Toomey's declaration does not provide sufficient detail about the basis of his knowledge that other transgender employees "have not made a claim with their insurance because they know it will be denied." (Def. Opp., Doc. 99 at 5). To remove any doubt, Dr. Toomey has submitted a supplemental declaration clarifying that the six other transgender employees informed him personally that they have not requested surgery for themselves or their dependents who are enrolled in the State's self-funded plan because they know they will be denied coverage. (Toomey Supplemental Decl., Exhibit A). Additionally, Dr. Toomey declared that he knows of more transgender employees at the University of Arizona or Arizona State University who have stated in professional forums he has attended that they have not made requests for coverage for themselves or their dependents enrolled in the State's self-funded plan for transition-related surgery with their insurance because they know they will be denied coverage.

Second, the motion presented publicly available demographic data regarding the percentage of the Arizona population that is transgender (0.62%), publicly available information from Defendants regarding the number of people employed by the Arizona Board of Regents (35,614), and publicly available information regarding the number of people enrolled in the Arizona's self-funded health plan (137,700). (Pl. Mot., Doc. 88 at 4-5). In opposing certification, the State Defendants argue that "not all individuals with gender dysphoria require or even seek treatment." (Def. Opp., Doc. 99 at 5). But in the motion for class certification, Dr. Toomey also presented publicly available data about the percentage of transgender individuals who have received some form of gender affirming surgery (25% to 35%) or who wish to receive gender affirming in the future (61% of

2

transgender men, 54% of transgender women). (Pl. Mot., Doc. 88 at 4-5). Applying a conservative estimate, publicly available data demonstrates that approximately 181 transgender individuals who work for the Board of Regents and approximately 700 transgender individuals who receive healthcare through the State's self-funded plan meet the class definition in that they have or will have medical claims for transition related surgical care. (*Id*.).[1]

The State Defendants criticize the methodology used to estimate the number of transgender individuals in Arizona. (Def. Opp., Doc. 99 at 6-7). But even if those calculations are off by an order of magnitude, the number of transgender individuals would still be large enough to make joinder impracticable. *Cf. Harris v. Rainey*, 299 F.R.D. 486, 490 (W.D. Va. 2014) (certifying class of same-sex couples in Virginia and explaining that defendants criticized the census's estimate of the number of same-sex couples in Virginia but "even if the census data is off by an order of magnitude, the numerosity requirement is plainly met").

Third, the motion for class certification explained that the joinder is inherently impracticable because Dr. Toomey seeks declaratory and injunctive relief on behalf of "current and future" employees and State Plan beneficiaries "who have or will have" medical claims for transition-related surgical care. (Pl. Mot., Doc. 88 at 5-6). However, as Dr. Toomey noted in the motion for class certification (*id*.), courts have held that "the presence of future class members renders joinder inherently impractical thus satisfying the numerosity requirement's fundamental purpose." *Inland Empire-Immigrant Youth*

---

[1] If the figure is reduced even further to reflect just individuals who report wanting transition-related surgery in the future, then there are approximately 119 transgender individuals who work for the Board of Regents and approximately 461 transgender individuals who receive healthcare through the State's self-funded plan who meet the class definition.

3

*Collective v. Nielsen*, No. EDCV172048PSGSHKX, 2018 WL 1061408, at *7 (C.D. Cal. Feb. 26, 2018); *see also J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) ("[C]lasses including future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class members, much less joining them.'"); *Rivera v. Holder*, 307 F.R.D. 539, 550 (W.D. Wash. 2015) (holding a class of 40 aliens was sufficiently numerous, "especially given the transient nature of the class and the inclusion of future class members"); *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986) ("[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size."). The State Defendants do not offer any response to this argument.

For all these reasons, Dr. Toomey's declaration, publicly available demographic estimates, and common sense all indicate that it is impracticable—indeed, impossible—to join together in a single action all current and future transgender employees and beneficiaries who have or may have claims for transition-related surgery. This is precisely the type of civil-rights action that Rule 23(b)(2) certification was designed to address. *See* Fed. R. Civ. P. 23 advisory committee's note (1966) (explaining that "[i]llustrative" of Rule 23(b)(2) class actions "are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration").

## II. Class Certification Is Necessary to Provide Class-Wide Relief and Protect the Class from Mootness.

In the alternative, Defendants also argue that the Court should "exercise its discretion" to deny class certification on the grounds that certification is not "necessary" to provide injunctive relief to the class as a whole. (Def. Opp., Doc. 99 at 8-10). But "there is no requirement that class certification must be 'necessary.' Indeed, such a requirement

4

would effectively eviscerate Rule 23(b)(2), which was specifically designed with the benefits of collective action in mind." *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) (citations omitted); *accord Greater L.A. Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*, No. CV 13-7172 PSG (ASX), 2014 WL 12561074, at *12 (C.D. Cal. May 6, 2014) ("[T]here is no requirement that class certification must be 'necessary'– and for good reason at that. If the Court adopted such a 'necessity' requirement, it would effectively eviscerate the entire purpose of Rule 23(b)(2), which was specifically designed to benefit collective, rather than merely private, action for equitable relief."); 2 Newberg on Class Actions § 4:11 (explaining that many courts "have rejected the necessity doctrine outright as being nontextual, noting that a need requirement finds no support in Rule 23 and, if applied, would entirely negate any proper class certifications under Rule 23(b)").

Even if it were permissible to deny certification based on lack of necessity, this is not a case where injunctive relief for an individual plaintiff will automatically provide relief to the class as a whole. The Ninth Circuit has cautioned that "injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification" unless broader relief is "necessary to give prevailing parties the relief to which they are entitled." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) (internal quotation marks, citations, and emphasis omitted). Because an injunction requiring Defendants to evaluate Dr. Toomey's individual claims for transition-related surgery would fully redress his individual injuries, the Court does not have authority to extend the same relief to similarly situated individuals without class certification. *See California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018), *cert. denied sub nom. Little Sisters of the Poor Jeanne Jugan Residence v. California*, 139 S. Ct. 2716, 204 L. Ed. 2d 1111

5

(2019).[2]

Class certification is also necessary to protect the classes' claims from potential mootness. The Supreme Court has repeatedly advised that class certification is "particularly important" to prevent claims from becoming moot. *Gratz v. Bollinger*, 539 U.S. 244, 268 (2003); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 72 n.27 (1997). If Dr. Toomey were to accept a job at another employer, or if unexpected events or accidents were to prevent him from being able to continue working at the University of Arizona, then his claims would become moot and the other potential class members would not receive any relief. And if Dr. Toomey prevails in this Court and obtains a permanent injunction, the injunction could be vacated as moot on appeal if Dr. Toomey undergoes surgery without waiting for all appeals to be exhausted.

State Defendants assert that Dr. Toomey faces no risk of mootness because he "has already been denied precertification for gender reassignment surgery." (Def. Opp., Doc. 99 at 10). But, as this Court explained when denying the State Defendants' motion to dismiss, Dr. Toomey "is not seeking any remedy based on his past denial of coverage but, instead, prospective relief requiring his surgery to be evaluated for medical necessity under the Plan's generally applicable standards and procedures." (Doc. 69 at 7). Indeed, Defendants have previously argued that a claim based on the past denial of coverage would be an improper claim for retrospective relief barred by the Eleventh Amendment. *Id.* Because Dr. Toomey seeks only prospective injunctive and declaratory relief, he bears the risk that

---

[2] By contrast, the only Ninth Circuit case cited by the State Defendants in which class certification was denied as not necessary (Def. Opp., Doc. 99 at 8-9) was a case in which plaintiffs challenged the method in which voting rights were apportioned for elections in a special utility district. *See James v. Ball*, 613 F.2d 180, 181 (9th Cir. 1979), *rev'd on other grounds*, 451 U.S. 355 (1981). The only way to provide relief to the individual plaintiffs was to change the method of apportioning voting rights for everyone.

those claims may become moot based on circumstances outside his control.

For all these reasons, even if the Court had discretion to deny certification as "unnecessary," certification is necessary here. *Cf. Gayle v. Warden Monmouth Cty. Corr. Inst.*, 838 F.3d 297, 310 (3d Cir. 2016) ("The circumstances in which class[-]wide relief offers no further benefit . . . will be rare, and courts should exercise great caution before denying class certification on that basis."). The motion for class certification should be granted.

## CONCLUSION

Plaintiff's motion for class certification should be granted.

DATED this 29th day of April, 2020.

        ACLU FOUNDATION OF ARIZONA

        By  /s/ *Christine K. Wee*
             Victoria Lopez
             Christine K. Wee
             3707 North 7th Street, Suite 235
             Phoenix, Arizona 85014

        AMERICAN CIVIL LIBERTIES UNION FOUNDATION
        Joshua A. Block
        (admitted *pro hac vice*)
        (admitted *pro hac vice*)
        Leslie Cooper
        125 Broad Street, Floor 18
        New York, New York 10004

        WILLKIE FARR & GALLAGHER LLP
        Wesley R. Powell
        (admitted *pro hac vice*)
        Matthew S. Friemuth
        (admitted *pro hac vice*)
        787 Seventh Avenue
        New York, New York 10019

        *Attorneys for Plaintiff Russell B. Toomey*

# CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2020, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing.

*/s/ Christine K. Wee*

Christine K. Wee