**Christine K Wee– 028535**
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
Email**:** cwee@acluaz.org

**Joshua A. Block\***
**Leslie Cooper\***
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail: jblock@aclu.org
E-Mail: lcooper@aclu.org
*\*Admitted pro hac vice*

**Wesley R. Powell\***
**Matthew S. Friemuth\***
**Nicholas Reddick\***
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
E-Mail: wpowell@willkie.com
E-Mail: mfriemuth@willkie.com
E-Mail: nreddick@willkie.com
*\*Admitted pro hac vice*

*Attorneys for Plaintiff Russell B. Toomey*

## UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| **Russell B. Toomey,** | Case No.19-cv-00035-TUC-RM (LAB) |
| Plaintiff, | |
| v. | **JOINT STATUS REPORT** |
| **State of Arizona; Arizona Board of Regents, D/B/A University of Arizona**, a governmental body of the State of Arizona; et al., | |
| Defendants. | |

Having met and conferred on September 29, 2020, the parties submit this Joint Report per Federal Rule of Civil Procedure 26(f) and the Court's order of August 14, 2020 (Doc. 114). The following numbered brief statements track those matters that the Court laid out in its order. *Id.*

**1. Nature of the case.**

**Plaintiffs' Position:**

Dr. Toomey is a man who is transgender, which means that he has a male gender identity, but the sex assigned to him at birth was female. Being transgender is not a mental disorder, but transgender men and women may require treatment for "gender dysphoria," which is the diagnostic term for the clinically significant distress experienced as a result of the incongruence of one's gender with their assigned sex and the physiological developments associated with that sex. The widely accepted standards of care for treating gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH"). Under the WPATH standards, medically necessary treatment for gender dysphoria may require medical steps to affirm one's gender identity and transition from living as one gender to another. This treatment, often referred to as gender-affirming care or transition-related care, may include hormone therapy, surgery (sometimes called "sex reassignment surgery" or "transition related surgery"), and other medical services that align individuals' bodies with their gender identities.

In accordance with the WPATH Standards of Care, Dr. Toomey's treating physicians have recommended that he receive a hysterectomy as a medically necessary treatment for gender dysphoria. Transition-related surgical care is routinely covered by private insurance programs and recognized as medically necessary by every major medical organization in the United States to consider the question. No major medical organization has taken the position that transition-related care categorically is not medically necessary or advocated in favor of a categorical ban on insurance coverage for transition-related procedures.

Dr. Toomey's healthcare coverage is provided and paid for by the State of Arizona through a self-funded health insurance plan ("the Plan"). The Plan generally provides

coverage for medically necessary care, subject to certain exclusions. In the event that the Plan denies coverage for a treatment based on purported lack of medical necessity, the Plan provides a right to appeal the decision to an independent reviewer at the third-party claims administrator and, if necessary, to further appeal to an external independent review organization.

The Plan does not apply these generally applicable standards and procedures for evaluating medical necessity for surgical care for gender dysphoria. Instead, the Plan categorically denies all coverage for "[g]ender reassignment surgery" regardless of whether the surgery qualifies as medically necessary. All four of the health insurance companies who serve as Network Providers for the Plan have adopted internal policies and standards for determining when transition-related surgery for gender dysphoria is medically necessary and, thus, covered. But, as a result of the Plan's "gender reassignment surgery" exclusion, the Network Providers do not apply those internal policies and standards when administering the Plan to Arizona State employees and, instead, automatically deny coverage of transition-related surgery.

As a result of the Plan's categorical exclusion for "gender reassignment surgery," Dr. Toomey was denied preauthorization for a hysterectomy on August 10, 2018. The denial was based solely on the Plan's exclusion for "gender reassignment surgery." Dr. Toomey alleges that the "gender reassignment surgery" exclusion facially discriminates on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment. Both claims have been certified as class actions for injunctive relief pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. For the Title VII claim, the Class consists of: "Current and future individuals (including Arizona State employees and their dependents), who are or will be enrolled in the self-funded Plan controlled by the Arizona Department of Administration, and who have or will have medical claims for transition-related surgical care." For the equal protection claim, the Class consists of: "Current and future employees of the Arizona Board of Regents who are or will be enrolled in the self-funded Plan controlled by the Arizona Department of Administration,

and who have or will have medical claims for transition related surgical care."

On behalf of himself and the certified Classes, Dr. Toomey seeks a declaration that the "gender reassignment surgery" exclusion violates Title VII and the Equal Protection Clause; a permanent injunction prohibiting Defendants from enforcing the "gender reassignment surgery" to exclude coverage for gender affirming surgery that would otherwise be recognized as medically necessary pursuant to the Plan's generally applicable standards and procedures; attorney's fees; and such other relief that the Court deems just and proper.

**The State of Arizona's, Paul Shannon's, and Andy Tobin's (collectively, the "State Defendants") Position:**

Dr. Toomey is a man who is transgender, which means that he identifies as having a male gender but was born female—the sex assigned to him at birth. Transgender men and women may require treatment for "gender dysphoria," which is a term that describes the feeling of discomfort or distress that might occur in people whose gender identity differs from their sex assigned at birth or sex-related physical characteristics. Transgender people might experience gender dysphoria at some point in their lives but not everyone is affected. Some transgender people feel at ease with their bodies, either with or without medical intervention. That is, not all transgender individuals feel significant distress, and not all require treatment.

Some entities, including the World Professional Association for Transgender Health ("WPATH"), have published standards of care for gender dysphoria. Treatments for gender dysphoria may include hormone therapy, surgery (sometimes called "sex reassignment surgery" or "transition related surgery"), and other medical services that align and individual's body to the individual's gender identity.

Dr. Toomey receives healthcare coverage through a self-funded health plan ("Plan") provided by the State of Arizona through the Arizona Department of Administration ("ADOA"). Under the Plan, a covered service is one that is *both* medically necessary and eligible for payment under the Plan. Thus, coverage can be denied *either* because a service is not medically necessary *or* because it is an excluded service (regardless of whether it is

medically necessary). Further, not all services, treatments, and procedures deemed medically necessary by a clinician are covered under the Plan. The Plan identifies fifty-three surgical procedures, treatments, and other medical services that are excluded from coverage. One such exclusion is for "[g]ender reassignment surgery." Each of these exclusions applies regardless of the employee's gender or sex. In the event that the Plan denies coverage for a treatment (either because it is not medically necessary or is excluded), the Plan provides a right to appeal the denial to an independent reviewer at the third-party claims administrator and, if necessary, to further appeal to an external independent review organization. As part of that process, the Plan allows Participants to appeal a denial the Participant believes is contrary to law.

Dr. Toomey's treating physicians recommended that he receive a hysterectomy as a medically-necessary treatment for gender dysphoria. Dr. Toomey was denied preauthorization for the surgery on August 10, 2018. The denial was based on the Plan's exclusion for "gender reassignment surgery"—a procedure health plans are not required to cover. Dr. Toomey did not follow the appeal process, as described in the Plan, to challenge this decision.

Dr. Toomey alleges that the "gender reassignment surgery" exclusion discriminates based on his status as a transgender man in violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment. Both claims have been certified as class actions for injunctive relief. On behalf of himself and the certified classes, Dr. Toomey seeks a declaration that the "gender reassignment surgery" exclusion violates Title VII and the Equal Protection Clause; a permanent injunction prohibiting Defendants from enforcing the "gender reassignment surgery" exclusion and begin coverage for gender affirming surgery that would otherwise be recognized as medically necessary pursuant to the Plan's generally applicable standards and procedures; attorneys' fees; and such other relief that the Court deems just and proper. If the Court finds that the Plan's exclusion for gender reassignment surgery violates Title VII or the Equal Protection Clause of the Fourteenth Amendment or orders a permanent or preliminary injunction prohibiting

Defendants from enforcing the exclusion, then the Plan will need to determine on a case-by-case basis, including Dr. Toomey's case, whether a claim for gender reassignment surgery is medically necessary and thus covered by the Plan.

The State Defendants assert that the Plan's exclusion violates neither Title VII or the Equal Protection Clause, and that Dr. Toomey's requested relief should be denied.

**Violations of Title VII**

**Plaintiffs' Position: Dr. Toomey, on behalf of the certified class,** brings a claim for violations of Title VII of the Civil Rights Act of 1964 against the State of Arizona and the Arizona Board of Regents. The State of Arizona and the Arizona Board of Regents are employers as that term is defined in Title VII, 42 U.S.C. § 2000e-(a) and (b). An employer-sponsored health plan is part of the "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(l).

The employer-sponsored health plan provided by the State of Arizona and the Arizona Board of Regents facially discriminates based on transgender status and gender nonconformity by categorically excluding coverage for all medically necessary "gender reassignment surger[ies]."  The "gender reassignment surgery" exclusion discriminates because of sex because an employee's sex assigned at birth is a but-for cause of their transgender status and their need for surgery to treat gender dysphoria. The "gender reassignment surgery" exclusion also facially discriminates against employees by explicitly excluding medically necessary surgery because the surgery is performed for the gender-nonconforming purpose of gender transition.

By providing a facially discriminatory employer-sponsored health plan, the State of Arizona and the Arizona Board of Regents have unlawfully discriminated—and continue to unlawfully discriminate—against Dr. Toomey and members of the proposed class "with respect to [their] compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(l).

Title VII does not provide a "cost justification defense" for employers offering facially discriminatory insurance policies. Defendants are not required to cover all medically

necessary surgeries, but Defendants may not adopt insurance exclusions that facially discriminate on the basis of sex.

**The State Defendants' Position:** The State Defendants argue that the Health Plan exclusion does not discriminate on the basis of sex, sex stereotyping, or transgender status. The Health Plan—which excludes "gender reassignment surgery" for members of both natal sexes—applies neutrally to both men and women and does not result in disparate, disadvantageous treatment of similarly-situated male or female employees. The Health Plan provides coverage for some gender transition services, including mental health counseling and hormone therapy deemed medically necessary by a clinician to treat gender dysphoria-demonstrating the Health Plan does not eliminate coverage for all gender transition treatment. Also, a medical plan is not required to cover all medically necessary procedures. Aside from certain minimum requirements, health plans have broad discretion to exclude treatments or procedures even if they are medically-necessary. Plans may exclude medically-necessary services, treatments, and procedures even if they affect one sex more than the other such as excluding coverage for breast reduction surgeries when it is medically necessary. *See* e.g., *Martin v. Masco Indus. Employees' Benefit Plan*, 747 F. Supp 1150, 1151 (W.D. Pa 1990). The gender reassignment surgery exclusion is just one of many exclusions in the Health Plan-all of which apply to various individuals regardless of medical necessity or sex of the health plan participant or beneficiary. Thus, there has been no violation of Title VII.

**The Arizona Board of Regents', Fred Duval's, Jay Heiler's, Ram Krishna's, Lyndel Manson's, Larry Penley's, Bill Ridenour's, Karrin Taylor Robson's, Ron Shoopman's (collectively, "ABOR") Position:** Arizona law requires ABOR to "accept the benefit level, plan design, insurance providers, premium level and other terms and conditions determined by" the State Defendants. A.R.S. § 38-656(E); *see also* A.R.S. § 38-656(B) (providing that, when ABOR participates in the State Defendants' health insurance, the State Defendants' plan "shall be the only health . . . insurance coverage offered to" ABOR's employees). As such, ABOR argues that it has not had and does not have the

7

reasonable authority to independently offer the coverage outside the Plan or to remove the Plan exclusion requested by Plaintiff.

ABOR has, however, consistently urged the State Defendants to remove the types of coverage exclusions at issue in this case, but the State Defendants have not eliminated all of those exclusions. That decision was in the State Defendants' sole control.

ABOR does not object to the Plaintiff's requested preliminary or permanent injunctive relief against the State Defendants. ABOR also does not object to the requested preliminary or permanent injunctive relief against it so long as the injunction (1) is entered contemporaneously with and is no greater than the injunction entered against the State Defendants, and (2) is not entered against the individually named Regents because the injunction entered against ABOR would apply to them under Federal Rule of Civil Procedure 65(d)(2)(B) and because the Regents are predictably subject to change.

**Violations of the Equal Protection Clause**

**Plaintiffs' Position: Dr. Toomey, on behalf of the certified class,** brings a claim for violations of the Equal Protection Clause of the Fourteenth Amendment against the individual members of the Board of Regents and against Andy Tobin, Director of the Arizona Department of Administration, and Paul Shannon, Assistant Director of the Benefit Services Division of the Arizona Department of Administration.

At all relevant times, Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Shannon and Tobin have acted under color of State law. Pursuant to 42 U.S.C. § 1983, Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, DuVal, Shannon and Tobin are liable in their official capacities, for declaratory and injunctive relief for violations of the Equal Protection Clause.

In their official capacity as officers and members of the Arizona Board of Regents, Defendants Shoopman, Krishna, Ridenour, Penley, Manson, Robson, Heiler, and DuVal are responsible for the terms and conditions of employment at the University of Arizona.

In his official capacity as Director of the Arizona Department of Administration, Defendant Andy Tobin is responsible for "determin[ing] the type, structure, and components

1  of the insurance plans made available by the Department [of Administration]." Ariz. Admin.
2  Code R2-6-103.

3      In his official capacity as Acting Assistant Director of Benefit Services Division of
4  the Arizona Department of Administration, Defendant Paul Shannon has direct oversight
5  and responsibility for administering the benefits insurance programs for State employees,
6  including employees of the Arizona Board of Regents.

7      The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall
8  . . . deny to any person within its jurisdiction the equal protection of the laws." Arizona State
9  employees are protected by the Equal Protection Clause. The employer-sponsored health
10 plan provided by the State of Arizona and the Arizona Board of Regents facially
11 discriminates based on sex and transgender status by categorically excluding coverage for
12 all medically necessary "gender reassignment surgery."

13     Discrimination based on sex and transgender status is subject to heightened scrutiny
14 under the Equal Protection Clause and must be substantially related to an important
15 governmental interest. Under Ninth Circuit precedent, discrimination based on sex and
16 transgender status is subject to heightened scrutiny under the Equal Protection Clause and
17 must be substantially related to an important governmental interest. *Karnoski v. Trump,* 926
18 F.3d 1180, 1200 (9th Cir. 2019).

19     Because medical transition from one sex to another inherently transgresses gender
20 stereotypes, denying medically necessary coverage for based on whether surgery is
21 performed for purposes of "gender reassignment" constitutes impermissible discrimination
22 based on gender nonconformity.

23     Because the need to undergo gender transition is a defining aspect of transgender
24 status, discrimination based on gender transition is discrimination against transgender
25 individuals as a class.

26     The "gender reassignment surgery" exclusion is not substantially related to a
27 legitimate governmental interest in controlling costs because the Supreme Court has held
28 that concerns about costs are insufficient to justify gender-based discrimination in the

distribution of employment-related benefits under heightened scrutiny.

The "gender reassignment surgery" exclusion is not even rationally related to a legitimate governmental interest in controlling costs because it arbitrarily distinguishes between similarly situated groups based on animus, sex stereotypes, and moral disapproval.

**State Defendants' Position:** State Defendants argue that the Health Plan does not target transgender persons. The gender reassignment surgery exclusion is one of many different exclusions in the Health Plan that apply to various individuals (both transgender and cisgender) regardless of medical necessity. Further, transgender individuals are covered under the Health Plan, and they receive coverage for medically necessary treatments in the vast majority of cases. All persons-transgender and cisgender-are subject to numerous exclusions for various treatments, procedures, or surgery that may be "medically necessary." Further, the Health Plan provides coverage for some gender transition services, including mental health counseling and hormone therapy deemed medically necessary by a clinician. The Health Plan does not eliminate coverage for all gender transition treatment. Further, numerous courts have held that transgender persons are not a suspect or quasi-suspect class, and as a result, applied the rational basis test to classifications based on transgender status. The Supreme Court of the United States' recent decision in *Bostock v. Clayton Cty., Georgia*, ___ U.S. ___, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) does not change this. In *Karnoski v. Trump*, the Ninth Circuit Court of Appeals did not find that transgender persons are a suspect or quasi-suspect class. 926 F.3d 1180, 1200-01 (9th Cir. 2019). The court in *Karnoski* applied a level of scrutiny greater than a rational basis test because the policy at issue was facially discriminatory, which is not the case here. *Id*. at 1200. It is the State Defendants' position that Plaintiff cannot overcome a strong presumption of validity that the exclusion does not bear a rational relation to a legitimate state purpose.

**ABOR's Position:** ABOR incorporates here its position on the Title VII issue above, which is directly applicable to Dr. Toomey's legal arguments on the Equal Protection claims against ABOR.

**2.    Factual and legal issues genuinely in dispute, and whether they can be narrowed by stipulation or motion.**

Whether the "gender reassignment surgery" exclusion discriminates against employees because of sex, in violation of Title VII.

Whether the "gender reassignment surgery" exclusion discriminates against beneficiaries on the basis of sex under the Equal Protection Clause.

Whether the "gender reassignment surgery" exclusion discriminates against beneficiaries on the basis of transgender status under the Equal Protection Clause.

Whether discrimination against transgender individuals is subject to heightened scrutiny under the Equal Protection Clause.

Whether the "gender reassignment surgery" exclusion is substantially related to an important governmental interest.  The parties have narrowed the issues in this dispute by agreeing that the medical necessity of gender affirming surgery will not be an issue in this case. That is, if it is determined that the exclusion violates Title VII or the Equal Protection Clause of the Fourteenth Amendment, the Plan will then need to determine medical necessity on case by case basis. However, the State Defendants, by agreeing with this stipulation, do not concede that Plaintiff's requested procedure (or those that other members of the Classes may request) is medically necessary. The parties may also be able to narrow the issues in dispute by stipulating that the only governmental interest relied upon by State Defendants is an interest in controlling costs.

Whether the "gender reassignment surgery" exclusion is rationally related to a legitimate governmental interest.  The parties may also be able to narrow the issues in dispute by stipulating that only governmental interest relied upon by State Defendants is an interest in controlling costs.

Whether the decision to exclude gender reassignment surgery in the Health Care Plan was actually motivated by a legitimate governmental interest.

**3.    Jurisdictional basis of the case.**

Plaintiff asserts that the Court has jurisdiction over this action per 28 U.S.C. §1331

11

because it arises under the Constitution of the United States.

**4.     Parties not yet served, and parties that have not filed an answer or other appearance.**

All parties have been served and/or Defendants do not contest service at this time. All parties have filed an answer.

**5.     Names of parties not subject to the Court's jurisdiction.**

Defendants do not contest the Court's personal jurisdiction at this time.

6.     **Dispositive or partially dispositive issues to be decided by pretrial motions, and legal issues about which pretrial motions are contemplated.**

Plaintiffs filed a Motion for Preliminary Injunction which has been fully briefed by the parties. The parties anticipate filing cross-motions for summary judgment at the close of discovery.

**7.     Whether the case is suitable for reference to arbitration, to a special master, or a United States Magistrate Judge.**

The parties do not consent to referring the case to arbitration, a special master, or a United States Magistrate Judge.

**8.     The status of related cases.**

The plaintiffs in *D.H., et al. v. Snyder,* No. 4:20-cv-00335-TUC-SHR, filed a Motion to Transfer Case to Judge Rosemary Marquez on August 11, 2020. (Doc. 113). That case challenges a categorical exclusion for "gender reassignment surgery" in Arizona's Medicaid program for minors. The Court denied that motion on October 20, 2020.

**9.     Statement of the parties' compliance with the discovery requirements of the Mandatory Initial Discovery Pilot Project.**

The parties have exchanged initial disclosures and document productions consistent with the Mandatory Initial Discovery Pilot Program.

Plaintiff served the parties with his initial discovery responses on April 17, 2019, and his amended initial discovery responses on March 26, 2020.

Defendant ABOR served the parties with their initial disclosures on April 17, 2019. Defendant ABOR then served the parties with a total of six supplemental disclosures on the

following dates: April 22, 2019, May 29, 2019, July 9, 2019, April 17, 2020, June 10, 2020, and July 15, 2020.

State Defendants served the parties with their initial disclosures on February 5, 2020, and their First Amended Mandatory Initial Discovery Responses on September 28, 2020.

**10.   Suggested changes, if any, in the limitations on discovery imposed by the Local Rules and the Federal Rules of Civil Procedure.**

None.

**11.   Proposed deadlines for:**

| EVENT | DEADLINE |
| --- | --- |
| Filing motions to amend the complaint and to join additional parties | **NOVEMBER 30, 2020** |
| Pretrial disclosure of lay witnesses, expert witnesses, and expert testimony | **DECEMBER 21, 2020;**<br>**FEBRUARY 1, 2021;**<br>**MARCH 15, 2021 (RESPECTIVELY)** |
| Completing discovery | **MAY 3, 2021** |
| Filing of dispositive motions | **JUNE 7, 2021** |
| Lodging proposed joint pretrial order | **Within 30 days after resolution of the dispositive motion; if no dispositive motion is filed then July 5, 2021.** |
| Filing a joint letter to the Court concerning the status of settlement discussions | **Plaintiffs propose that the parties will meet and confer regarding the timing of this deadline, and propose dates prior to the close of fact discovery.** |

**12.   Estimated date and length of trial.**

Plaintiffs propose that the parties will meet and confer regarding these deadlines and requirements and submit proposed dates prior to the close of fact discovery. The parties anticipate the trial length to be no longer than two weeks in duration.

**13.   Whether a jury trial has been requested.**

A jury trial has not been requested.

**14.   The prospects for settlement, including any request to have a settlement conference before a United States Magistrate Judge.**

The parties do not think a settlement conference would be productive at this stage

of the case, but may request a settlement conference after the Court rules on Plaintiff's Motion for a Preliminary Injunction.

**15.  Whether any unusual, difficult, or complex problems or issues exist that would require this case to be placed on the complex track for case management purposes.**

The parties do not believe this case poses any unusual, difficult, or complex problems that would merit the case being placed on the complex track for case management purposes.

**16.  Any other matters that the parties feel will aid the Court in expediting the disposition of this matter efficiently.**

None at this time.

Respectfully submitted this 23rd day of October, 2020.

ACLU FOUNDATION OF ARIZONA
By /s/ Christine K. Wee
    Christine K. Wee

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
    Joshua A. Block*
    Leslie Cooper*

WILLKIE FARR & GALLAGHER LLP
    Wesley R. Powell*
    Matthew S. Friemuth*
    Nicholas Reddick*
    *admitted pro hac vice

*Attorneys for Plaintiffs*

/s/ Ryan Curtis (with permission)
    Ryan Curtis
    Shannon Cohan
    Amy Abdo
    Fennemore Craig
    2394 E Camelback Rd., Ste. 600
    Phoenix, AZ 85016-3429
    rcurtis@fclaw.com
    scohan@fclaw.com
    amy@fclaw.com

*Attorneys for Defendants State of Arizona, Andy Tobin, and Paul Shannon*

*/s/ Paul F. Eckstein (with permission)*
Paul F. Eckstein
Austin C. Yost
PERKINS COIE LLP
2901 N. Central Ave., Suite 2000
Phoenix, Arizona 85012-2788
PEckstein@perkinscoie.com
AYost@perkinscoie.com

*Attorneys for Defendants Arizona Board of Regents, d/b/a University of Arizona; Ron Shoopman; Larry Penley; Ram Krishna; Bill Ridenour; Lyndel Manson; Karrin Taylor Robson; Jay Heiler; and Fred Duval*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2020, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

*/s/ Christine K. Wee*
Christine K. Wee