**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell B Toomey, | No. CV-19-00035-TUC-RM (LAB) |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court are Plaintiff's Motion for Preliminary Injunction (Doc. 115), Magistrate Judge Leslie A. Bowman's Report and Recommendation ("R&R") recommending denial of the Motion for Preliminary Injunction (Doc. 134), Plaintiff's Objection to the R&R (Doc. 135), and a Response to the R&R filed by Defendants Arizona Board of Regents ("ABOR"), Ron Shoopman, Larry Penley, Ram Krishna, Bill Ridenour, Lyndel Manson, Karrin Taylor Robson, Jay Heiler, and Fred DuVal (collectively, "University Defendants") (Doc. 139). Defendants State of Arizona, Andy Tobin, and Paul Shannon ("State Defendants") replied to Plaintiff's Objection. (Doc. 144.) The Court will deny the Motion for Preliminary Injunction, adopt in part the R&R, and overrule Plaintiff's and the University Defendants' Objections.

. . . .

. . . .

### I. Background

Plaintiff Dr. Russell B. Toomey is a transgendered male. (Doc. 1 at 12.) "He has a male gender identity, but the sex assigned to him at birth was female." (*Id*.) Dr. Toomey has been living as a male since 2003 and has received medically necessary hormone therapy and chest reconstruction surgery as treatment for diagnosed gender dysphoria. (Doc. 1 at 12; Doc. 24 at 2.) Dr. Toomey is employed as an Associate Professor at the University of Arizona. (Doc. 1 at 4.) His health insurance ("the Plan") is a self-funded plan provided by the State of Arizona. (*Id*. at 3, 10.) While the Plan provides coverage for most medically necessary care, including care related to transsexualism and gender dysphoria such as mental health counseling and hormone therapy, "gender reassignment surgery" is excluded from coverage. (*Id*. at 3, 10, 13; Doc. 24 at 3.)

At the recommendation of his doctor, Dr. Toomey sought preauthorization for a total hysterectomy from his provider, Blue Cross Blue Shield of Arizona ("BCBSAZ"). (Doc. 24 at 3.) BCBSAZ refused to approve the procedure due to the Plan's exclusion of "gender reassignment surgery." (*Id*. at 4.) Subsequently, Dr. Toomey filed an Equal Employment Opportunity Commission ("EEOC") Charge against the ABOR, alleging sex discrimination under Title VII. (Doc. 24–1.) Upon receiving a Notice of Right to Sue, he filed this lawsuit. (Doc. 39 at 15.) Plaintiff seeks declaratory relief, "including but not limited to a declaration that Defendants . . . violated Title VII and . . . the Equal Protection Clause," as well as permanent injunctive relief "requiring Defendants to remove the Plan's categorical exclusion of coverage for gender reassignment surgery and evaluate whether [Plaintiff's] . . . surgical care for gender dysphoria is 'medically necessary' in accordance with the Plan's generally applicable standards and procedures." (Doc. 1 at 22.)

On December 23, 2019, this Court denied the State Defendants' Motion to Dismiss. (Doc. 69.) On June 15, 2020, this Court granted Plaintiff's Motion to Certify Class. (Doc. 108.) On that same day, the United States Supreme Court issued a decision in *Bostock v. Clayton County, Georgia* holding that an employer violates Title VII by

firing an individual for being a transgender person, as doing so is discrimination "because of" the individual's sex. 140 S. Ct. 1731, 1741 (2020). In light of the *Bostock* decision, the parties engaged in settlement discussions. (Doc. 110.) No settlement was reached.

On September 1, 2020, Plaintiff filed the instant Motion for Preliminary Injunction. (Doc. 115.) On November 30, 2020, Magistrate Judge Bowman issued an R&R recommending that this Court deny the Motion for Preliminary Injunction. (Doc. 134.) Plaintiff and the University Defendants filed Objections to the R&R. (Docs. 135, 139.)

## II. Standard of Review

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by" a magistrate judge. 28 U.S.C. § 636(b)(1). The district judge must "make a de novo determination of those portions" of the magistrate judge's "report or specified proposed findings or recommendations to which objection is made." *Id.*; *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error.").

In determining whether to grant preliminary injunctive relief, the Court considers: (1) whether the movant "is likely to succeed on the merits"; (2) whether the movant is "likely to suffer irreparable harm" in the absence of preliminary injunctive relief; (3) the "balance of equities" between the parties; and (4) "the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## III. Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction on behalf of himself and the class members (1) barring Defendants from enforcing the categorical exclusion of coverage for gender reassignment surgery from the Plan; (2) requiring Defendants to evaluate, on a case by case basis, whether Dr. Toomey's and/or any other class members' prescribed surgical care for gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures; and (3) providing notice of the

preliminary injunction to individuals enrolled in the Plan. (Doc. 115 at 3.)

Plaintiff argues that he has met the four factors for granting preliminary injunctive relief. (*Id*. at 7.) First, Plaintiff argues that he has demonstrated a likelihood of success on the merits of the Title VII claim. (*Id*.) In support of this argument, Plaintiff relies on this Court's Order denying the Motion to Dismiss (Doc. 69), as well as two recent out-of-circuit district court decisions and the Supreme Court's *Bostock* decision. (*Id*. at 7-8.) Plaintiff further argues that he is likely to succeed on the merits of the equal protection claim. (*Id*. at 9.) Plaintiff argues that, as a matter of law, heightened scrutiny applies to his equal protection claim, and Defendants are unlikely to carry their burden of proof under the heightened scrutiny standard. (*Id*.)

Second, Plaintiff argues that he and the class members will suffer irreparable harm absent the requested injunctive relief. (*Id*. at 10.) Plaintiff argues that, as a matter of law, the denial of medically necessary care constitutes irreparable harm. (*Id*.) Plaintiff further argues that discrimination against transgender individuals constitutes irreparable harm as a matter of law. (*Id*. at 10-11.) Third, Plaintiff argues that the public interest and the balance of equities between the parties both weigh in favor of granting injunctive relief. (*Id*. at 11.) Plaintiff argues that the denial of both constitutional rights and medically necessary care supports a finding that the balance of hardships and the public interest tip in Plaintiff's favor. (*Id*.)

The State Defendants oppose the requested injunctive relief. (Doc. 123.) First, the State Defendants argue that the injunctive relief sought would effectively decide the case because it would provide Plaintiff and the class members with all of the relief they seek and effectively render this action moot; the State Defendants contend that such a result is disfavored as a matter of law. (*Id*. at 2.) The State Defendants further argue that Plaintiff seeks a mandatory injunction and has not met the heightened standard for granting such relief. (*Id*.) Next, the State Defendants argue that Plaintiff is not likely to succeed on the merits of his Title VII or equal protection claims. (*Id*.) Finally, the State Defendants argue that Plaintiff has failed to show that he or the class members will suffer irreparable

harm in the absence of injunctive relief. (*Id.*)

The University Defendants also responded to the Motion for Preliminary Injunction. (Doc. 122.) They do not oppose the requested injunctive relief as long as: (1) the injunction entered against the ABOR is no greater than the injunction entered against the State Defendants; and (2) the injunction is not entered against the individually named Regents. (*Id.*) The University Defendants object to an injunction entered against the ABOR but not the State, because the ABOR has no independent authority to provide the health insurance coverage that Plaintiff seeks. (*Id.*)

### IV.     Report and Recommendation

The R&R recommends denying Plaintiff's Motion for Preliminary Injunction. (Doc. 134.) The R&R finds that Plaintiff's burden of proof is heightened because he seeks a mandatory injunction that would order Defendants to grant him the relief he seeks in this case, and preliminary injunctive relief of that nature is generally disfavored. (*Id.* at 2-4.)

Addressing the first *Winter* factor, the R&R finds that Plaintiff is not likely to succeed on the merits of his Title VII claim because he has not shown that the Plan's exclusion of gender reassignment surgery is discrimination on the basis of transgender status. (*Id.* at 4.) The R&R construes Plaintiff's Title VII claim as a disparate-treatment claim, under which an employer treats an individual less favorably than others because of a protected trait and a plaintiff must show that the discrimination was intentional. (*Id.*); *see also Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The R&R reasons that Plaintiff is not likely to succeed on his Title VII claim because he has not shown that the Plan's categorical exclusion of gender reassignment surgery provides proof of the State's intent to discriminate against transgender persons. (*Id.* at 4-8.) The R&R further reasons that because the Plan's exclusion discriminates against some natal females but not all, the exclusion is not, on its face, discrimination based on sex. (*Id.* at 8.) The R&R further finds that Plaintiff cannot show a likelihood of success on his equal protection claim because the Plan exclusion is not facially discriminatory against all transgender persons.

(*Id.* at 8-9.)

The R&R finds that Plaintiff has shown that he is likely to suffer irreparable harm in the absence of the requested injunctive relief, because without the relief he will be denied timely medical care and such an injury cannot be remediated by money damages. (*Id.* at 9.) The R&R makes no specific finding as to the balance of hardships and the public interest, noting that there is no evidence before the Court regarding the cost of surgery, how many class members might seek surgery, or the amount of suffering that might be alleviated by granting injunctive relief. (*Id.* at 10.)

### V. University Defendants' Response to Report and Recommendation

The University Defendants filed a Response to the R&R that reiterates the arguments they raised in their Response to the Motion for Preliminary Injunction. (Docs. 139, 122.) The University Defendants indicate they do not object to the requested injunctive relief as long as (1) the injunction entered against the Arizona Board of Regents is no greater than the injunction entered against the State, and (2) the injunction is not entered against the individually named Regents. (Doc. 139.)

For the reasons explained below, the Court will not grant the requested injunctive relief. Accordingly, to the extent the University Defendants' Response to the R&R constitutes an objection, it will be overruled.

### VI. Plaintiff's Objection to Report and Recommendation

Plaintiff filed an Objection the R&R. (Doc. 135.) First, Plaintiff argues that the R&R erred in concluding that Plaintiff and the class members are unlikely to succeed on the Title VII and equal protection claims. (*Id.* at 1.) Plaintiff disputes the R&R's reliance on and application of *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976) (Title VII) and *Geduldig v. Aiello*, 417 U.S. 484 (1974) (equal protection) for its finding that he is not likely to succeed on the merits of his claims. (*Id.*) Plaintiff further disputes the R&R's finding that he can only prove his Title VII disparate-treatment claim by providing evidence that Defendants were subjectively motivated by a discriminatory intent or animus. (*Id.* at 1-2.) Plaintiff contends that the applicable standard is whether the Plan's

exclusion is facially discriminatory, not whether the exclusion was motivated by a discriminatory intent. (*Id.* at 2.) Plaintiff, relying on *Bostock*, contends that he has shown that the gender reassignment surgery exclusion facially discriminates on the basis of sex because the Plan's exclusion directly implicates the characteristics of sex and gender and discriminates based on gender nonconformity. (*Id.* at 3-4.) Plaintiff argues that *Gilbert* is no longer controlling precedent following the passage of the Pregnancy Discrimination Act, and that the R&R erred in concluding that the question under Title VII is whether a given policy discriminates against all women or all men. (*Id.* at 5.)

Plaintiff further objects that he and the class members are likely to succeed on the merits of the equal protection claim. (*Id.* at 6.) Plaintiff contends that the R&R made similar errors analyzing the equal protection claim that it made analyzing the Title VII claim. (*Id.* at 7.) Specifically, Plaintiff contests the R&R's reliance on *Geduldig* and argues that there is no rule that a facially discriminatory policy must affect every member of a particular group in order to trigger heightened scrutiny. (*Id.*) Plaintiff argues that facial discrimination in violation of the equal protection clause exists when a "defendant discriminates against individuals on the basis of criteria that are almost exclusively indicators of membership in the disfavored group," and that such discrimination is present here. (*Id.* at 8 (citing *Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013)).) Plaintiff further argues that Defendants have failed to provide any evidence to carry their burden of proof under heightened scrutiny of demonstrating that the exclusion serves an important governmental interest and "that the discriminatory means employed" "are substantially related to the achievement of those objectives." (*Id.* at 9 (citing *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1690 (2017)).)

Plaintiff objects to the R&R's findings regarding the balance of hardships and the public interest, contending that the balance of hardships tips in his favor because the denial of medically necessary care can violate the Eighth Amendment. (*Id.* at 9 (citing *Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019)).)

Lastly, Plaintiff objects to the R&R's characterization of the requested injunctive

relief as a mandatory injunction. (*Id*. at 10.) Plaintiff argues that an injunction to prevent future constitutional violations is a classic form of prohibitory injunction and should not be subjected to the heightened mandatory injunction standard. (*Id*. (citing *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017)).) Plaintiff disputes the R&R's reliance on past decisions that conflict with the Ninth Circuit's more recent precedent in *Hernandez*. (*Id*.)

The State Defendants responded to Plaintiff's Objection. (Doc. 144.) The State Defendants argue first that the R&R correctly determined that Plaintiff seeks a mandatory injunction that disrupts the status quo rather than a prohibitory injunction that maintains the status quo, and that Plaintiff has not met the heightened standard for mandatory injunctive relief. (*Id*. at 2-3 (citing *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994)).) The State Defendants further contend that the preliminary injunctive relief sought would prematurely grant the ultimate relief Plaintiff and the class members seek in this litigation—that is, gender-transition surgeries being paid for by the State—even if the State ultimately prevails in the litigation. (*Id*. at 3-5 (citing *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808-9 (9th Cir. 1963); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208-9 (10th Cir. 2009)).) The State Defendants contend that Plaintiff's reliance on *Hernandez* is inapposite because Plaintiff has not demonstrated a constitutional violation akin to the erroneous detention at issue in *Hernandez*. (*Id*. at 4.)

The State Defendants further argue that Plaintiff has not met the *Winter* factors required for a preliminary injunction to issue. (*Id*. at 5.) Specifically, the State Defendants argue that Plaintiff has not shown that (1) he is likely to succeed on the merits of either his Title VII or his equal protection claim; (2) the balance of hardships favors granting injunctive relief; or (3) the public interest favors granting injunctive relief. (*Id*. at 5-10.) The State Defendants do not respond to or argue the "irreparable harm" factor.

**VII.   Applicable Law and Analysis**

The Court declines to issue the requested preliminary injunctive relief for two reasons. First, Plaintiff and the class members seek a mandatory injunction and have not

met the heightened standard for such relief to issue. Second, the requested injunctive relief is identical to the ultimate relief Plaintiff and the class members seek in this litigation, and the Court finds it premature to grant such relief prior to discovery and summary judgment briefing.

### A. Plaintiff has not met the standard for a mandatory injunction.

"A prohibitory injunction preserves the status quo," while a "mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Stanley*, 13 F.3d at 1320 (internal citation and quotation omitted). "When a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." *Id*. "[G]enerally an injunction will not lie except in prohibitory form." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (internal citation omitted). Mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id*. Before reaching the merits of a preliminary injunction, courts consider whether the injunctive relief sought is prohibitory or mandatory. *Stanley* at 1320.

The injunctive relief that Plaintiff and the class members seek "goes well beyond simply maintaining the status quo." (*See* Doc. 115.) The status quo is the Plan as it currently exists, including its exclusion of coverage for gender reassignment surgery. Accordingly, Plaintiff seeks mandatory injunctive relief. Furthermore, the Court agrees with the State that *Hernandez* does not support Plaintiff's argument that an injunction that orders compliance with the Constitution is necessarily prohibitory rather than mandatory. *Hernandez* involves a violation of the Fifth Amendment Due Process Clause in the immigration detention context. 872 F.3d at 998. Here, Plaintiff alleges a violation of the Fourteenth Amendment Equal Protection Clause in the context of an employer's health insurance plan. (Doc. 86.) The Court does not find *Hernandez* sufficiently analogous to the present case to justify applying *Hernandez* in the manner that Plaintiff proposes. (Doc. 135 at 10.)

Plaintiff has not shown that "extreme or very serious damage will result" if the injunctive relief sought does not issue. *Anderson*, 612 F.2d at 1115. Furthermore, it is not clear that "the injury complained of is [not] capable of compensation in damages," *id.*, as Plaintiff could potentially pay out-of-pocket for gender reassignment surgery and be reimbursed by Defendants if he prevails on the merits.

**B. Courts disfavor preliminary injunctive relief that is identical to the ultimate relief sought.**

"It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo . . . pending a determination of the action on the merits." *Tanner Motor Livery*, 316 F.2d at 808–09. "[I]t is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial" in a preliminary injunction. *Id*. "This is particularly true where the relief afforded, rather than preserving the status quo, completely changes it." *Id*.; *see also RoDa Drilling*, 552 F.3d at 1208–09 ("[B]efore we will grant [mandatory injunctive] relief, we require a movant seeking such an injunction to make a heightened showing of the four factors.")

Plaintiff seeks injunctive relief (1) barring Defendants from enforcing the exclusion of coverage for gender reassignment surgery from the Plan and (2) requiring Defendants to evaluate, on a case by case basis, whether Dr. Toomey's and/or any other class members' prescribed surgical care for gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures. (Doc. 115.) Plaintiff's Amended Complaint seeks, in relevant part, "permanent injunctive relief. . . requiring Defendants to remove the Plan's categorical exclusion of coverage for 'gender reassignment surgery' and evaluate whether Dr. Toomey and the proposed classes' surgical care for gender dysphoria is 'medically necessary' in accordance with the Plan's generally applicable standards and procedures." (Doc. 86 at 15.)

The injunctive relief and the ultimate relief that Plaintiff seeks are identical. Precedent counsels against granting such relief in the absence of extraordinary

circumstances that are not present here.

Accordingly,

**IT IS ORDERED** that the Report and Recommendation (Doc. 134) is **adopted** only to the extent it recommends denying the Motion for Preliminary Injunction on the grounds that Plaintiff has not met the heightened standard for obtaining mandatory preliminary injunctive relief, and is otherwise **rejected**.

**IT IS FURTHER ORDERED** that the Motion for Preliminary Injunction (Doc. 115) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Objection (Doc. 135) is **overruled**.

**IT IS FURTHER ORDERED** that the University Defendants' Objection (Doc. 139) is **overruled**.

Dated this 26th day of February, 2021.

_____
Honorable Rosemary Márquez
United States District Judge