1   **Victoria Lopez – 330042**
2   **Christine K Wee – 028535**
    **ACLU FOUNDATION OF ARIZONA**
3   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85014
4   Telephone: (602) 650-1854
    Email: **vlopez@acluaz.org**
5   Email: **cwee@acluaz.org**

6

7   **Joshua A. Block***
    **Leslie Cooper***
8   **AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
    125 Broad Street, Floor 18
9   New York, New York 10004
    Telephone: (212) 549-2650
10  E-Mail: **jblock@aclu.org**
    E-Mail: **lcooper@aclu.org**
11  ***Admitted Pro hac vice***

12

13  **Wesley R. Powell***
    **Matthew S. Freimuth***
14  **Jordan C. Wall****
    **WILLKIE FARR & GALLAGHER LLP**
15  787 Seventh Avenue
    New York, New York 10019
16  Telephone: (212) 728-8000
    Facsimile: (212) 728-8111
17  E-Mail: **wpowell@willkie.com**
18  E-Mail: **mfreimuth@willkie.com**
    E-Mail: **jwall@willkie.com**
19
    ***Admitted Pro hac vice***
20  ****Admission Pro hac vice pending***

21

22  *Attorneys for Plaintiff Russell B. Toomey*

23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Russell B. Toomey**,<br>                              Plaintiff,<br>v.<br><br>**State of Arizona; Arizona Board of Regents, d/b/a University of Arizona**, a governmental body of the State of Arizona; **Ron Shoopman**, in his official capacity as chair of the Arizona Board of Regents; **Larry Penley**, in his official capacity as member of the Arizona Board of Regents; R**am Krishna**, in his official capacity as secretary of the Arizona Board of Regents; **Bill Ridenour**, in his official capacity as treasurer of the Arizona board of regents; **Lyndel Manson**, in her official capacity as member of the Arizona Board of Regents; **Karrin Taylor Robson**, in her official capacity as member of the Arizona Board of Regents; **Jay Heiler**, in his official capacity as member of the Arizona Board of Regents; **Fred Duval**, in his official capacity as member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as acting assistant director of the benefits services division of the Arizona Department of Administration,<br><br>                              Defendants. | No. CV 19-0035-TUC- (LAB)<br><br>**PLAINTIFF'S MOTION TO COMPEL** |

Plaintiff, Dr. Russell B. Toomey, on behalf of himself and the certified Classes ("Plaintiff"), hereby submits through the undersigned counsel the following Memorandum of Law in support of his Motion For Entry of An Order Compelling The Production Of Documents (the "Motion") from the State Of Arizona, Andy Tobin, and Paul Shannon  (collectively, the "State Defendants") in response to Plaintiff's First Request for Production of Documents and Tangible Things, dated December 8, 2020 ("Request for Production", "Request" or "RFP").  This Motion and exhibits hereto is accompanied by the Transmittal Declaration of Christine K. Wee ("Wee Decl."),  and Plaintiff's LRCiv 7.2(j)-(k) and 37.1 Statement ("Plaintiff's LRCiv Statement").

## **PRELIMINARY STATEMENT**

Plaintiff's Request for Production seeks documents and information concerning the State Defendants' reasons for excluding medically necessary gender-affirming surgeries from coverage under the Plan.  State Defendants have withheld certain documents responsive to Plaintiff's requests on grounds that these documents are protected from disclosure by the "deliberative process privilege."  Yet State Defendants have also steadfastly refused to provide almost <u>any</u> information that would allow Plaintiff, or this Court, to evaluate such privilege claims, including through the submission of a sworn declaration from the government, or through specific information explaining why the withheld documents are in any fashion "predecisional" and "deliberative."

Even if State Defendants had properly asserted the privilege, however, the deliberative-process privilege is only a qualified privilege, and it is easily overcome in this case. *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). Courts in the Ninth Circuit and across the country have consistently held that the deliberative process cannot stand in the way of disclosure in civil rights cases when the legitimacy of the government's motive and decision-making process are directly at issue.  Here, State Defendants have repeatedly argued that they had legitimate, nondiscriminatory, and non-pretextual reasons for excluding medically necessary gender-affirming care from the

Plan, and they cannot now shield from discovery the very documents that might speak to this defense (or lack thereof). Further, Plaintiff seeks to vindicate constitutional and civil rights under the Equal Protection Clause of the Fourteenth Amendment and Title VII of the Civil Rights Act of 1964, on its own behalf and for the Classes, which include Arizona State employees. The public's interest in disclosure is therefore at its zenith.

## BACKGROUND

### A.  The Factual Disputes At Issue In This Case

Plaintiff alleges that the State Defendants' categorical exclusion of medically necessary gender-affirming surgery from the health plan for state employees violates Title VII and the Equal Protection Clause. In their Joint Status Report dated October 23, 2020, the Parties agreed that one of the disputed factual questions in this case is "Whether the decision to exclude gender reassignment surgery in the Health Care Plan was actually motivated by a legitimate governmental interest." (Dkt. No. 128, at 11.)   Although Plaintiff argues that the Plan's exclusion is facially discriminatory and violative of Title VII and the Equal Protection Clause (Dkt. No. 86, at 12-15), Magistrate Judge Bowman's Report & Recommendation regarding Plaintiff's Motion for a Preliminary Injunction also concluded that Plaintiff must prove discriminatory intent by the State Defendants to succeed on his claims. (Dkt. No., at 6, 9.) Although the district court rejected this portion of the Report and Recommendation (Dkt. No. 162, at 11), it is unsettled what standard the Court will ultimately apply to Plaintiff's claims, and therefore what discovery it may need.

### B.  State Defendants' Assertion Of Deliberative Process Privilege

On December 8, 2020, Plaintiff served his Request for Production on State Defendants. (Wee Decl., Ex. 2.)   Plaintiff's Request for Production contained nine Requests, of which Request Nos. 1, 3, 5, and 9 specifically sought documents and information concerning the Plan's exclusion, and the decision-making process leading to that policy.

On December 22, 2020, State Defendants served on Plaintiff their first privilege log ("First Privilege Log"). (Wee Decl. Ex. 3.)  Notably, none of the entries on the State Defendants' First Privilege Log indicated any assertion of the deliberative process privilege.  On January 5, 2021, Plaintiff's counsel requested by email additional details about several of the entries on State Defendants' First Privilege Log.  (Wee Decl. Ex. 4.)

On January 21, 2021, State Defendants served on Plaintiff a letter responding to Plaintiff's January 5, 2021 email (Wee Decl. Ex. 5), as well as their responses and objections to Plaintiff's Request for Production.  (Wee Decl. Ex. 6.)  In that letter, State Defendants informed Plaintiff that six documents from their First Privilege Log—Entry Nos. 6, 7, 50, 67, 70, and 71—that had originally been withheld on the basis of the attorney-client privilege, were now being withheld pursuant to the deliberative process privilege. (Wee Decl. Ex. 5 at 2.)  State Defendants failed to provide an explanation for this change.  State Defendants likewise responded and objected to Plaintiffs' Request Nos. 1-6, and 9 on the basis that, among other things, each of these RFPs "seeks documents and communications protected by the. . . deliberative process privilege, and other applicable privileges." (Wee Decl. Ex. 6 at 3,  5-9, 11.)  State Defendants failed to accompany their assertion of the deliberative process privilege with any sworn declaration from the agency head of the ADOA, Mr. Paul Shannon (or from the Arizona Governor's office), setting out their review of the documents, the need for their continued confidentiality, or any other pertinent information that would have allowed Plaintiff to evaluate their privilege claim.

**C.  Parties Meet And Confer On Multiple Occasions**

On February 3, 2021, Plaintiff sent State Defendants a letter setting out deficiencies in State Defendants' responses and objections, State Defendants' document productions to-date, and addressing, among other things, State Defendants' deliberative process privilege claim.  (Wee Decl. Ex. 7.)  In that letter, Plaintiff specifically raised that State Defendants had not provided sufficient information to allow them to assess the

validity of their deliberative process privilege claim, including whether the withheld documents were "predecisional" and "deliberative." (*Id*. at 7.) Plaintiff noted that State Defendants' had not followed the required procedure of submitting a sworn declaration from the government. (*Id*. at 7-8.) Plaintiff also noted that, in all events, the privilege would be overcome here where the State Defendants' "decision-making process is the central issue." (*Id*. at 8.) Plaintiff closed that letter by agreeing to discuss these issues further at their previously scheduled meet and confer. (*Id*. at 9.)

On February 10, 2021, and then again on March 3, 2021, the Parties met and conferred by telephone on several topics, including the deliberative process privilege. (Wee Decl. Ex. 1, Declaration of Jordan C. Wall ("Wall Decl.") ¶¶ 9, 11.) At both meetings, Plaintiff reiterated their objections to State Defendants' assertion of the deliberative process privilege. (*Id*.) At their first conference, State Defendants agreed to serve an updated privilege log providing additional details in support of their privilege claim, and to evaluate whether there were any documents erroneously withheld on the basis of the deliberative process privilege. (*Id.* ¶ 9.) On February 25, 2021, State Defendants served on Plaintiff an updated privilege log ("Revised Privilege Log", Wee Decl. Ex. 8.) State Defendants' Revised Privilege Log revised the number of documents withheld on the basis of deliberative process privilege to 35. At the parties' March 3, 2021 conference, Plaintiff reiterated its objections to the State Defendants' continued assertion of the deliberative process privilege. (Wall Decl. ¶ 11 .)

On March 10, 2021, State Defendants provided a further revised privilege log ("Second Revised Privilege Log", Wee Decl. Ex. 9, and together with the First Privilege Log and Revised Privilege Log, the "Privilege Logs").[1]  State Defendants' Second

---

1  On March 17, 2021, State Defendants alerted Plaintiff that certain documents claimed to be protected by the deliberative process privilege had been inadvertently produced to Plaintiff. (Wee Decl. Ex. 10.) State Defendants provided no additional information supporting their claim of privilege with respect to these documents.

Revised Privilege Log still withheld 35 documents on the basis of the deliberative process privilege.  The State Defendants also failed on both February 25 and March 10 to provide any sworn declaration from the government invoking the deliberative process privilege.

**D.  Ongoing Dispute and Depositions**

State Defendants have withheld 35 documents on the basis of the deliberative process privilege.  Based on the limited information provided in their Second Revised Privilege Log, these documents all detail discussions about the "transgender benefits" provided under the Plan.  As State Defendants' production of document is rolling, State Defendants may continue to assert the privilege over additional documents and withhold potentially critical evidence on grounds they have failed to establish, and now effectively forfeited.  These documents are also germane to depositions that are currently ongoing.  Several of the withheld documents involve ADOA employees who have already been deposed (Ms. Yvette Medina), or whose depositions are upcoming, including: Ms. Marie Isaacson, on March 26, 2021; Mr. Scott Bender, on March 31, 2021; and, ADOA Director, Mr. Paul Shannon  in April 2021.

## **<u>ARGUMENT</u>**

A party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1); *Ocean Garden Prods. Inc. v. Blessings Inc.*, No. CV-18-00322-TUC-RM, 2020 WL 4284383, at *1 (D. Ariz. July 27, 2020) (Márquez, J.)  Discovery may be compelled when a respondent unjustifiably objects to the production of responsive documents.  Fed. R. Civ. P. 37(a)(3)(B)(iv); *Ocean Garden Prods. Inc.*, 2020 WL 4284383, at *2.  An objection based on the "deliberative process" privilege must be asserted with particularity, *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8199308, at *4 (D. Ariz. July 21, 2016), and must comply with clear procedural requirements, or else be waived.  *See L.H. v. Schwarzenegger*, No. CIVS-06-2042 LKK GGH, 2008 WL 2073958, at *8 (E.D. Cal. May 14, 2008).  State Defendants have

repeatedly failed to assert the deliberative process privilege with particularity and to comply with its clear procedural requirements, so their objections on such grounds should be deemed forfeited.[2]

Even if State Defendants properly asserted the deliberative process privilege, the privilege is a qualified one that may be overcome where the "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *F.T.C.*, 742 F.2d at 1161.  In all events, State Defendants' deliberative process privilege claims should be overcome given the heightened public interest in civil rights actions, like Plaintiff's Title VII and Equal Protection Claims (brought on behalf of Arizona State employees), and because State Defendants have placed the facts of their decision-making process directly in dispute.

## I. DEFENDANTS HAVED FAILED TO SATISFY THEIR PRIMA FACIE BURDEN FOR INVOKING THE DELIBERATIVE PROCESS PRIVILEGE

The deliberative process privilege protects documents or testimony[3] that "reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated."   *F.T.C.*., 742 F.2d at 1161.

---

2   State Defendants additionally assert the attorney-client privilege over four of the documents they claim are shielded by the deliberative process privilege. (Ex. 8, Second Revised Privilege Log, Nos. 20, 21, 75, and 207.)  The information contained in the Second Revised Privilege Log is not sufficient to enable Plaintiff to assess the validity of State Defendants' claim, or that these documents could not be sufficiently redacted to protect privileged information. *See United States v. Ruehle*, 583 F.3d 600, 607-08 (9th Cir. 2009) (attorney-client privilege is "to be strictly confined within the narrowest possible limits consistent with the logic of its principle").  Plaintiff asks that the Court perform an *in camera* review of these four documents to determine whether these documents are subject to the attorney-client privilege, and if the privileged information  is separable.

3   *See Unknown Parties*, 2016 WL 8199308, at *4 ("Generally the privilege is invoked to protect documents, but courts have applied it to testimony as well and have made no distinction between the two."); *Id.*, at *4-5  (rejecting deliberative process privilege claim with respect to deposition topics)

- 8 -

The proponent bears a "prima facie burden" of demonstrating that an agency head (or her representative) has specifically invoked the privilege through the submission of a sworn declaration. *Mayfield v. Cnty. of Los Angeles*, No. 219-CV-1298-FMO(SKx), 2020 WL 2510649, at *1 (C.D. Cal. Mar. 20, 2020); *EEOC v. Swissport Fueling, Inc.*, No. CV-10-2101-PHX-GMS, 2012 WL 1648416, at *15 (D. Ariz. May 10, 2012) ("[T]he claim of deliberative due process privilege must be raised by a formal claim made by the head of the agency after <u>she has personally considered the material in question</u> prior to the invocation of the privilege" (emphasis added)); *Unknown Parties*, 2016 WL 8199308, at *5 (agency head and <u>not</u> counsel must assert privilege for public policy reasons).

State Defendants have failed to satisfy their *prima facie* burden as they have not provided <u>any</u> sworn declarations by an agency head (or her representative) invoking the privilege, attesting to her personal review of the documents at issue, or explaining the potential harm production of such documents poses to the government.[4] *Cf. Cal. Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. 408, 413 (N.D. Cal. 2008) (submission of <u>multiple</u> "declarations by senior agency officials" not sufficient). Plaintiff alerted State Defendants to their procedural failure both in writing and during the parties' two meet and confer conferences. (Wee Decl. Ex. 7 at 8; Wall Decl. ¶¶ 9, 11.) State Defendants failed to correct this error on multiple occasions, thereby forfeiting their objection on these grounds.

## II. STATE DEFENDANTS HAVE FAILED TO ARTICULATE HOW WITHHELD DOCUMENTS ARE "PREDECISIONAL" AND "DELIBERATIVE"

State Defendants bear the further burden of establishing that the withheld

---

4 It is not even clear *which* governmental entity—*i.e.*, the ADOA or the Arizona Governor's Office—seeks to invoke the privilege. State Defendants provide only that their assertion of the deliberative process privilege is premised on the involvement of "Ms. Marie Isaacson—a representative of ADOA" who "discusses the transgender surgery exclusion with Ms. Christina Corieri—a representative of the Governor's Office." (Wee Decl. Ex. 5, at 2.)

documents or testimony are both: (1) "predecisional," *i.e.*, "generated before the adoption of an agency's policy or decision"; and (2) "deliberative," *i.e.*, reflecting "opinions, recommendations, or advice about agency policies." *F.T.C.*, 742 F.2d at 1161; *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1121 (N.D. Cal. 2003). State Defendants have not carried this burden, failing to assert with particularity that the withheld documents are either predecisional or deliberative. Their claims fail for several additional reasons too.

First, with respect to all the withheld documents, State Defendants have failed to "assert with <u>precision</u> the reason why each document is subject to the asserted [deliberative process] privilege". *EEOC*, 2012 WL 1648416, at *15 (emphasis added); *Cal. Native Plant Soc'y*, 251 F.R.D. at 413 (proponent must describe "how each document fits into the deliberative process" of policy formation). The Privilege Logs fail to do so, providing only rote descriptions of each withheld document as somehow relating to "transgender benefits." State Defendants' descriptions fall into only three categories— documents: (i) "regarding recommended proposed revisions to transgender benefits" (Ex. 8, Second Revised Privilege Log Nos. 6-7, 20-21, 50, 67, 70-71, 76, 125, 153, 170-75, 225-227); (ii) "discussing proposed transgender benefits" (Nos. 216-223); or (iii) "regarding transgender benefits" (Nos. 75, 204-09). The lack of specificity about each document is plainly inadequate. *Cal. Native Plant Soc'y*, 251 F.R.D.at 413 ("an index of documents, providing just basic information and a brief description, is inadequate <u>even</u> when accompanied by conclusory affidavits") (emphasis added); Fed. R. Civ. P. 26(b)(5)(A). Due to the lack of particularity, State Defendants have also failed to establish that the privilege applies to the <u>entirety</u> of each withheld document, and that privileged information, if any, could not be otherwise redacted. *See Karnoski v. Trump*, 926 F.3d 1180, 1204 (9th Cir. 2019) ("if the government can segregate and disclose non-privileged factual information within a document, it must").

Second, with respect to documents dated after December 8, 2016,[5] State Defendants have failed to show that the withheld documents are "predecisional." *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-52 (1975) ("[L]ower courts have uniformly drawn a distinction between predecisional communications, which are privileged . . . and communications made after the decision and designed to explain it, which are not" (emphasis added)).   By December 8, 2016, State Defendants had communicated to Network Providers that there had been no change to the Plan's exclusion of gender-affirming surgeries.  (Wee Decl. Ex. 11 (December 8, 2016 email from ADOA employee to Cigna representative stating that the ADOA "will be covering the counseling and hormonal therapy but not the surgery")).   Documents after December 8, 2016, therefore do not satisfy the "predecisional" prong.

Third, with respect to documents reflecting State Defendants' interpretation of Section 1557 of the Affordable Care Act, or ACA,[6] State Defendants have failed to show that the documents are "deliberative."   These documents likely do not "disclose the personal opinions or mental processes of decision-makers" in formulating State Defendants' policy on the Plan's exclusion, but rather interpret or explain the impact of a new federal regulation on that policy.  *Cal. Native Plant Soc'y*, 251 F.R.D. at 413; *see also Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000) ("the privilege is centrally concerned with protecting the process by which the *policy* is

---

5   Wee Decl. Ex. 8, Second Revised Privilege Log: No. 6 (January 13, 2017 email); No. 7 (January 13, 2017 email); No. 50 (January 13, 2017 email); No. 67 (February 19, 2019 email); No. 70 (October 25, 2018 email); No. 71 (October 25, 2018 email); No. 76 (December 15, 2016 email); No. 125 (January 13, 2017 email); No. 153 (February 3, 2020 email); No. 170 (December 15, 2016 email); No. 171 (December 15, 2016 email); No. 172 (December 14, 2016 email); No. 216 (May 24, 2018 email); No. 217 (May 23, 2018 email); No. 218 (May 23, 2018 email); No. 219 (May 23, 2018 email); No. 220 (May 23, 2018 email); No. 221 (May 23, 2018 Email); No. 222 (May 23, 2018 email); No. 223 (May 23, 2018 email); and No. 225 (December 16, 2016 email).

6   Wee Decl. Ex. 8, Second Revised Privilege Log, Nos. 20-21, 50, 67, 70-71, 75-76, 170-75, 204-209, and 225-27.

1  formulated" (emphasis in original)); *Mobil Oil Corp. v. Dep't of Energy*, 102 F.R.D. 1, 5
2  (N.D.N.Y. 1983) ("Working law communications, *i.e.*, those explanations or
3  interpretations of an existing decision, are not within the protection of the privilege"
4  (quotations omitted)).

5       Fourth, State Defendants have failed to show that deliberative process privilege
6  applies to documents State Defendants shared with parties who are not part of either the
7  ADOA or the Arizona Governor's Office's decision-making process.[7]  *See North Dakota*
8  *ex rel. Olson v. Andrus*, 581 F.2d 177, 179, 181-82 n.9 (8th Cir. 1978) (privileged
9  documents voluntarily disclosed to opposing counsel effected a waiver); *Marisol A. v.*
10  *Giuliani*, No. 95 Civ. 10533(RJW), 1998 WL 132810, at *8 (S.D.N.Y. Mar. 23, 1998)
11  (privilege waived to the extent protected information was publicly published in statements
12  and plans of action); *Shell Oil Co. v. I.R.S.*, 772 F. Supp. 202, 209-11 (D. Del. 1991)
13  (agency waived deliberative process privilege by orally reading to third party contents of
14  protected document).

15  **III. EVEN IF DELIBERATIVE PROCESS PRIVILEGE APPLIED, THE NEED**
16  **FOR ACCURATE FACT-FINDING WOULD OVERCOME THE PRIVILEGE**

17       The deliberative process privilege is not absolute, but qualified.  *F.T.C.*, 742 F.2d
18  at 1161.  It may be overcome when the "need for the materials and the need for accurate
19  fact-finding override the government's interest in non-disclosure."  *Id*.  For example,
20  where the agency's decision-making process is itself at issue, and not merely collateral to
21  the dispute.  *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*,
22  145 F.3d 1422, 1424 (D.C. Cir. 1998); *see also N. Pacifica, LLC*, 274 F. Supp. 2d at 1123
23  (compelling testimony about City Council decision-making process, motive and intent).
24  Or where the public interest in disclosure is compelling, as in civil rights actions.  *See,*
25  *e.g.*, *N. Pacifica, LLC*, 274 F. Supp. 2d at 1121 (asserting equal protection claims);

26  ─────────────────

27  7  Ex. 8 Second Revised Privilege Log Nos. 216-223 (documents exchanged between
28     various "various Arizona cities, counties, and agencies").

*Arizona Dream Act Coal. v. Brewer*, No. CV-12-02546-PHX-DGC, 2014 WL 171923 (D. Ariz. Jan. 15, 2014) (claiming discrimination based off of immigration status).  Here, State Defendants have placed their decision-making process directly at issue, claiming that there are legitimate, non-discriminatory, and non-pretextual reasons for the Plan's exclusion. (Dkt. No. 89 at 28.)  Further, Plaintiff seeks to vindicate his (and other public employees') civil rights under Title VII and the Equal Protection Clause. (Dkt. No. 86 at 13-17.)  In all events therefore, State Defendants' assertion of the privilege would be overcome.

The need for disclosure of the withheld documents is bolstered by the four-factor balancing test promulgated by courts, including in the Ninth Circuit, to determine when to overturn the deliberative process privilege.  The test balances: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *F.T.C.*, 742 F.2d at 1161.  An additional four factors recognized by courts also bolsters the need for disclosure, including: "(5) the interest of the litigant, and ultimately society, in accurate judicial fact finding"; (6) "the seriousness of the litigation and the issues involved"; (7) "the presence of issues concerning alleged governmental misconduct"; and (8) "the federal interest in the enforcement of federal law." *N. Pacifica, LLC,* 274 F. Supp. 2d at 1122 (internal citations omitted); *see United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989) (setting out 8-factor test).  On every factor, the balance of equities tips strongly in favor of disclosure.

### A. The Four-Factor Balancing Test Strongly Favors Disclosure Of The Withheld Documents

The first factor, *i.e.*, relevance, strongly favors disclosure. In civil rights cases such as this one, in which the government's motivations are directly at issue, information about the government's "deliberative process" is highly relevant. *N. Pacifica*, 274 F. Supp. 2d at 1124 ("Because the City Council's motive and intent are central to NP's equal protection claim . . . . th[is] factor[] weigh[s] strongly in favor of disclosure."); *In re Subpoena Duces*

1   *Tecum Served on Off. of Comptroller of Currency*, 145 F.3d at 1424 ("If the plaintiff's
2   cause of action is directed at the government's intent, however, it makes no sense to
3   permit the government to use the privilege as a shield").

4           To give just one example, several of the withheld documents are communications
5   between ADOA and a policy advisor from the governor's office name Christine Corieri.[8]
6   Before arriving at the governor's office, this policy advisor had tweeted from her personal
7   twitter account complaining about advocates requiring Medicare to provide "taxpayer
8   dollars for gender reassignment" surgeries. (Wee Decl. Ex. 12.)  To the extent that Ms.
9   Corieri had any influence over the State Defendants' decision to maintain the Plan's
10  exclusion, documents concerning her participation are highly relevant to determining
11  whether her personal opinions about gender affirming surgeries tainted  ADOA's
12  decision.

13          The second factor, *i.e.*, the availability of evidence, also strongly favors disclosure
14  as the withheld documents (and testimony about them) constitute the only source of
15  certain evidence of the State Defendants' legitimate, non-discriminatory, non-pretextual
16  reasons for the Plan's exclusion (or lack thereof).  The availability (or unavailability) of
17  comparable evidence is arguably the "most important factor" in determining whether the
18  deliberative process privilege should be overcome.  *N. Pacifica, LLC*, 274 F. Supp. 2d at
19  1124.   The lack of an administrative record otherwise detailing the government's
20  decision-making process strongly supports disclosure.  *Cf. id*. at 1125 (overcoming the
21  privilege because the "administrative record before the City Council [did] not exhaust the
22  universe of information considered by the body").  Even more so, where the government's
23  discriminatory intent is potentially relevant to the dispute, and may not be adequately
24  captured by a record.  *Id; see Mayfield*, 2020 WL 2510649, at *2 (second and third factors
25  supported disclosure because the evidence sought was "primarily, if not exclusively"

---

27  8   Wee Decl. Ex. 8, Second Revised Privilege Log, Nos. 76, 170-175, 204-206, 208-
28      209, 226-227.

under the government's control (citation omitted)).  Here, to the extent any of the withheld documents are <u>predecisional</u> (of which there would be only a few, *see supra* § 2),  there is no administrative record to speak of, such as minutes of meetings, or other comparable evidence of whether State Defendants' had a legitimate, non-discriminatory, and non-pretextual justification for the Plan's exclusion, aside from the withheld documents.

The third factor, *i.e.*, the government's role in the litigation, strongly favors disclosure as the State Defendants are named defendants in this dispute.  The deliberative process privilege "may be inapplicable where the agency's decision-making process is itself at issue." *Greenpeace*, 198 F.R.D. at 543; *Mayfield*, 2020 WL 2510649, at *2 (third factor favored disclosure where "the government . . . is a party to and the focus of the litigation" (quotation and citation omitted)).

The fourth factor, *i.e.*, potential hindrance to "frank and independent discussion regarding contemplated policies," strongly favors disclosure as the withheld documents largely do not concern a <u>contemplated</u> policy, but a longstanding one.  Further, absent the sworn declaration from an agency head (or her representative), there is no evidence to support that there will be any hindrance.   State Defendants' failure to correct this procedural defect cannot be excused. *See Unknown Parties*, 2016 WL 8199308, at *4 ("Defendants have no excuse for procedural non-compliance or for failing to prepare a privilege log with the specificity necessary [to] prevail on the merits of its assertions of privilege"); *Mayfield*, 2020 WL 2510649, at *2 (government failed to set out "how disclosure of the investigative files *in this specific case* would hinder candid discussion of contemplated public policies (emphasis in original)).

**B.  Additional Four Factors Strongly Favor Disclosure Of The Withheld Documents**

The fifth factor, *i.e.*, the interest in accurate judicial fact finding, the sixth factor, *i.e.*, the seriousness of the litigation, and the eighth factor, *i.e.*, the "federal interest in the enforcement of federal law," all strongly favor disclosure because Plaintiff seeks to vindicate federal constitutional rights, as well as civil rights.  *N. Pacifica, LLC,* 274 F.

Supp. 2d at 1123-24; *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d at 1424 ("[I]t seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination.")  Preliminarily, in "every case, the desirability of accurate fact finding weighs in favor of disclosure." *N. Pacifica, LLC*, 274 F. Supp. 2d at 1124.  The seriousness of the litigation, and the federal interest in the dispute, is even greater here because Plaintiff asserts a violation of the Equal Protection Clause involving a protected class, requiring heightened scrutiny.  *Cf. id.* at 1124 ("[E]ven though NP has alleged a violation of equal protection, no suspect class such as race or gender or some other basis for heightened scrutiny is involved"); *see Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1741 (2020) (discrimination on the basis of transgender status is discrimination on the basis of sex under Title VII).

The seventh factor, *i.e.*, issues involving alleged governmental misconduct, likewise strongly favors disclosure because such misconduct relates to the violation of constitutional and civil rights.  *See Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989) (*"*In a civil rights action where the deliberative process of State or local officials is itself genuinely in dispute, privileges designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws."); *see also N. Pacifica, LLC,* 274 F. Supp. 2d at 1123-24; *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d at 1424.  Although Plaintiff asserts that the Plan's exclusion facially discriminates against transgender and gender nonconforming individuals in violation of Title VII and the Equal Protection Clause, above, State Defendants have put their intent (including any potential misconduct) at issue in this dispute.

1

**CONCLUSION**

2

For all the reasons discussed above, Plaintiff's Motion should be granted.

3

4  Dated: March 18, 2021

ACLU FOUNDATION OF ARIZONA

5

6  By /s/ *Christine K. Wee*

7  Victoria Lopez
Christine K Wee

8  3707 North 7th Street, Suite 235
Phoenix, Arizona 85014

9

10  AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

11  Joshua A. Block*
Leslie Cooper*

12  125 Broad Street, Floor 18
New York, New York 10004

13

14  WILLKIE FARR & GALLAGHER LLP

15  Wesley R. Powell*
Matthew S. Friemuth*

16  Jordan C. Wall**
787 Seventh Avenue

17  New York, New York 10019
*Admitted pro hac vice

18  **Admission Pro hac vice pending

19

20  *Attorneys for Plaintiff Russell B. Toomey*

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2021 I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

*/s/Christine Wee*
Christine K. Wee