FENNEMORE CRAIG, P.C.
Timothy J. Berg (No. 004170)
Amy Abdo (No. 016346)
Ryan Curtis (No. 025133)
Shannon Cohan (No. 034429)
2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: tberg@fennemorelaw.com
Email: amy@fennemorelaw.com
Email: rcurtis@fennemorelaw.com
Email: scohan@fennemorelaw.com

*Attorneys for Defendants*
*State of Arizona, Andy Tobin, and Paul Shannon*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Russell B. Toomey, | No. 4:19-cv-00035 |
|---|---|
| Plaintiff, | **DEFENDANTS STATE OF ARIZONA'S, ANDY TOBIN'S, AND PAUL SHANNON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |
| v. | |
| State of Arizona, *et al.* | |
| Defendants. | |

Defendants State of Arizona, Andy Tobin, and Paul Shannon (collectively, the "State Defendants") hereby oppose Plaintiff Russell B. Toomey's Motion to Compel (the "Motion").

Plaintiff has obtained substantial evidence in this matter but still cannot prove his claims. In another attempt to find some supporting evidence, Plaintiff now requests that this Court order the State Defendants to produce documents protected by the deliberative process privilege. Rule 26 provides that parties may obtain discovery about any ***nonprivileged*** matter. Fed. R. Civ. P. 26(b)(1). Nothing in the Federal Rules of Civil Procedure authorizes a party to demand the production of privileged documents, which is

exactly what Plaintiff seeks here.

The documents withheld by the State Defendants are protected by the deliberative process privilege. The State Defendants appropriately asserted the privilege[1] and have complied with all legal requirements to do so. Plaintiff's arguments to the contrary misconstrue legal authority, the State Defendants' privilege log, and the documents at issue. Plaintiff also attempts to overcome the clearly applicable privilege by asserting that the withheld documents are the only source of relevant and important information. Plaintiff's argument is again flawed, and ignores the substantial evidence already produced in this matter. There is no justification for overcoming the clearly established privilege. The Court should deny Plaintiff's Motion.

I. **THE COURT SHOULD DENY PLAINTIFF'S MOTION TO COMPEL.**

Pursuant to Federal Rule of Civil Procedure 37, a party may move for an order compelling disclosure or discovery.[2] The moving party bears the burden of showing that the non-moving party's objections are unjustified. *Ocean Garden Prod. Inc. v. Blessings Inc.*, No. CV-18-00322-TUC-RM, 2020 WL 4284383, at *2 (D. Ariz. July 27, 2020).

---

[1] The Arizona Governor's Office also asserted that many of the same documents are privileged. Declaration of Ryan Curtis ("Curtis Decl.") at ¶ 5, Ex. 13, filed concurrently, incorporated by reference. Because the Governor's Office is not a party to this litigation, it was not permitted the opportunity to respond to Plaintiff's motion to compel the privileged documents. If the Court is inclined to order production of these documents, we understand that the Governor's Office requests the opportunity to address its independent assertion of the privilege with the Court, if the Court so desires.

[2] Rule 37 requires that a party confer with the non-moving party in an attempt to resolve the discovery dispute prior to filing a motion to compel. Fed. R. Civ. P. 37(a)(1). Plaintiff's counsel met and conferred with counsel for the State Defendants to superficially meet this requirement. Curtis Decl., ¶ 4. However, Plaintiff's counsel did not engage in any meaningful discussion regarding the State Defendants' privilege assertions. Instead Plaintiff counsel stated during a meet and confer on March 3, 2021, that unless the State Defendants produced all documents withheld pursuant to the deliberative process privilege, they would file a motion to compel. *Id.* Short of complying in full with Plaintiff's demands, there was nothing State Defendants could have done to cure any alleged defect in asserting the privilege that would have stopped Plaintiff from filing the pending Motion to Compel.

### A. The Deliberative Process Privilege.

The deliberative process privilege shields from mandatory disclosure inter and intra-governmental communications relating to decision-making matters of law or policy. 5 U.S.C. § 552(b)(5) (1996); *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021); *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The Supreme Court has expressly recognized the privilege with respect to the decision-making processes of government agencies. *See Sierra Club*, 141 S. Ct. at 785; *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148–53 (1975). The privilege is designed to protect "frank and open discussions within governmental agencies" and to prevent the "chilling" of "personal opinions and ideas of government personnel involved in the decision-making process." *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 87 (1973); *Sierra Club*, 141 S. Ct. at 785; *Warner Commc'ns,* 742 F.2d at 1161; *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000).

To qualify, a document must be both: (1) "predecisional;" and (2) "deliberative." *Warner Commc'ns*, 742 F.2d at 1161; *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). A document is pre-decisional if it is "generated before the adoption of an agency's policy or decision." *Warner Commc'ns*, 742 F.2d at 1161; *see also Sierra Club*, 141 S. Ct. at 786 ("[d]ocuments are 'predecisional' if they were generated before the agency's final decision on the matter"). A document is "deliberative" if it contains "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" or that "inaccurately reflect or prematurely disclose the views of the agency." *Warner Commc'ns*, 742 F.2d at 1161; *Nat'l Wildlife Fed'n*, 861 F.2d at 1118–19; *Sierra Club*, 141 S. Ct. at 786 (documents are "'deliberative' if they were prepared to help the agency formulate its position"). Factual material may also be considered "deliberative" if its disclosure would reveal the mental processes of the decisionmakers. *Nat'l Wildlife*, 861

FENNEMORE CRAIG, P.C.
PHOENIX

F.2d at 1119. To determine whether a document is "deliberative," "courts must consider whether the agency treats the document as its final view on the matter." *Sierra Club*, 141 S. Ct. at 786. "[A] document that leaves agency decisionmakers free to change their minds does not reflect the agency's final decision." *Id.*

In *Sierra Club*, the deliberative process privilege applied to draft biological opinion memorandum exchanged between the EPA, the U.S. Fish and Wildlife Service, and the National Marine Fisheries Service. 141 S. Ct. at 787–88. The Supreme Court noted that compelling disclosure of "any email or memorandum that has the effect of changing an agency's course" of decision "would gut the deliberative process privilege." *Id.* In *Nat'l Wildlife Fed'n*, the deliberative process privilege applied to "tentative opinions and recommendations of Forest Service employees on matters instrumental to the formulation of policies governing the allocation of the Forest's resources to competing uses." 861 F.2d at 1120. The *Nat'l Wildlife Fed'n* court further stated that "[r]ecommendations on how best to deal with a particular issue are themselves the *essence* of the deliberative process." *Id.* (emphasis in original). In *Warner Commc'ns Inc.*, the deliberative process privilege applied to "memoranda contain[ing] analyses of the record industry and the merger's potential effects on competition, and recommendations on whether the Commission should challenge the venture," where the memoranda "play[ed] a critical role" and "go to the heart" of the agency's decision-making process. 742 F.2d at 1161.

**B.     The Withheld Documents Are Protected By The Deliberative Process Privilege.**

Each document withheld by the State Defendants is pre-decisional and deliberative. A detailed summary of the content of and the basis for asserting the privilege as to each document is included in the concurrently filed Declaration of Paul Shannon.

**1.     The Withheld Documents Are Pre-Decisional.**

Plaintiff concedes that documents dated before December 8, 2016 are pre-decisional.

(*See* Doc. 168 at 11:1–11 (asserting that documents after 12/8/2016 are not pre-decisional)). Privilege Log Entry Nos. 20–21, 75, 153, 173–175, 204–209, and 226–227 are each dated prior to December 8, 2016 and are, per Plaintiff's argument, pre-decisional. (*See also* Declaration of Paul Shannon ("Shannon Decl.") at ¶¶ 5, 9, 10, 11, filed concurrently, incorporated by reference (explaining that the documents are pre-decisional).)

Plaintiff asserts that documents dated after December 8, 2016 are not pre-decisional because the Arizona Department of Administration ("ADOA") had communicated its decision to cover hormones and therapy to its insurance vendors by that time.[3] The State Defendants agree that ADOA had decided the scope of its coverage by December 8, 2016, but that does not end the inquiry or the State Defendants' deliberations. ADOA did not come to a final decision regarding the *Plan language* until December 16, 2016. (*See* Shannon Decl., ¶ 5.) Indeed, in Privilege Log Entry Nos. 76, 170, 171, and 172, which were exchanged on December 14 and 15, ADOA and the Governor's Office discussed a draft redlined version of the Plan language.[4] (*Id.*) As noted in *Sierra Club*, "[a] draft is, by definition, a preliminary version of a piece of writing subject to feedback and change." 141 S. Ct. at 786. As such, documents dated between December 8 and December 16 relating to the draft Plan language are pre-decisional. The State's decision making did not end when

---

[3] Plaintiff's Motion characterizes ADOA's communications as "that there had been no change to the Plan's exclusion." (Doc. 168 at 11:6–8.) Plaintiff is wrong. Prior to 2016, the Plan excluded "transsexual surgery, including medical or psychological counseling and hormonal therapy." Curtis Decl., Ex. 7. From 2017 to present, the Plan excludes "gender reassignment surgery" but provides coverage for hormones and therapy. (*See* Doc. 168-2, Ex. 11.)

[4] The State Defendants also withheld further transmissions of this email chain where the forwarding message was non-substantive, namely, Privilege Log Entry Nos. 6, 7, 50, 67, 70, 71, and 125. *See* Shannon Decl., ¶¶ 6–8. For example, in Privilege Log Entry Nos. 70 and 71, Ms. Yvette Medina forwarded the email chain to Mr. Scott Bender, without including any other discussion or information. *Id.* at ¶ 8. The State Defendants withheld these later communications because 95% of the content of each of the documents would need to be redacted pursuant to the privilege, and the remaining 5% would have no context or use without the privileged information. The State Defendants are willing to produce redacted versions of these communications.

it informed the vendors that the forthcoming Plan language would revise the exclusion to expand coverage and to exclude only gender transition surgery.  Other decisions were still being deliberated including the language to be included in the Plan.  ADOA concluded the deliberative process regarding the expanded coverage for the 2017 Plan when it agreed upon the final Plan language and published the Plan documents on its website.

Plaintiff's remaining argument mischaracterizes both the State Defendants' privilege log and the withheld documents.  First, Plaintiff asserts that Privilege Log Entry No. 153 is not pre-decisional because it is a "February 3, 2020 email" and was, according to Plaintiff, transmitted after ADOA made a final decision regarding the Exclusion. (Doc. 168 at 11:1–11, n.5.)  This clearly mischaracterizes the document.  Privilege Log Entry No. 153 is a set of handwritten notes from Ms. Marie Isaacson, former Assistant Director of the Benefit Services Division of ADOA, which were made contemporaneously with ADOA's decision-making process in 2015 and 2016.  Curtis Decl., Ex. 16.  Indeed, the notes reference conversations occurring on October 15, 2015 (AZSTATE.151751), November 17, 2015 (AZSTATE.151752), November 7, 2016 (AZSTATE.151753), and May 25, 2016 (AZSTATE.151760).  *Id.*  Indeed, the redacted portion of the document reflects notes from a July 11, 2016 telephone discussion.  Shannon Decl., ¶ 10.  Entry No. 153 is pre-decisional.

Next, Plaintiff asserts that Privilege Log Entry Nos. 216–223 are not pre-decisional because they were transmitted after ADOA made a final decision regarding the Exclusion. (Doc. 168 at 11:1–11, n.5.)  Plaintiff ignores, however, that these communications do not relate to ADOA's consideration of transgender benefits.  Instead, as outlined in the State Defendants' privilege log, these communications discuss "proposed transgender benefits in advance of finalization of ***[the] City of Gilbert['s]*** healthplan documents." (*See* Doc. 168-2, Ex. 9 at Entry Nos. 216–223 (emphasis added).)  That these communications occurred after ADOA, a different government entity, made its independent decision regarding transgender benefits is irrelevant.  The material fact is that the Town of Gilbert was still

considering recommendations, proposals, and suggestions relating to its own health plan, prior to making its final decision.[5]  These documents are pre-decisional and open and frank discussions between government agencies is the very reason the deliberative process exists.

### 2.     The Documents Are Deliberative.

Plaintiff also takes issue with documents purportedly "reflecting State Defendants' interpretation of Section 1557 of the Affordable Care Act."  (Doc. 168 at 11:12–12:14.)  Again, Plaintiff's argument mischaracterizes the State Defendants' privilege log.  Nowhere in the privilege log do the State Defendants assert that these documents contained interpretations or explanations of Section 1557.  (*See* Doc. 168-2, Ex. 9 at Privilege Log Entry Nos. 20–21, 50, 67, 70–71, 75–76, 170–175, 204–209, 225–227.)  To the contrary, the privilege log indicates that these documents contain "recommended proposed revisions to [ADOA's] transgender benefits."  *Id.*  Such communications clearly fall within the protections of the deliberative process privilege.

Moreover, even if the documents did contain legal interpretations of Section 1557, such information would <u>still</u> be protected.  In *Nat'l Wildlife Fed'n*, the Ninth Circuit recognized that the application of the privilege "should not turn on whether we label the contents of a document 'factual' as opposed to 'deliberative.'"  861 F.2d at 1119.  Rather, "this distinction (fact or opinion) has been refined to look at the deliberative process as a whole."  *California Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. 408, 413 (N.D. Cal. 2008).  "In some circumstances, even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the deliberative process

---

[5] Plaintiff also asserts that ADOA waived the privilege as to these documents by sharing them with the other Arizona municipalities, counties, and agencies. (Doc. 168 at 12:5–14.) As explained, Privilege Log Entry Nos. 216–223 relate to the Town of Gilbert's assessment of transgender benefits, not the analysis done by ADOA. Shannon Decl., ¶ 12. Part of the Town's decision-making process, apparently, was consulting other Arizona agencies, municipalities, and counties. *Id.* ADOA did not waive the privilege by assisting in the Town's process.

privilege." *Nat'l Wildlife Fed'n*, 861 F.2d at 1119 (citation omitted); *see also California Native Plant Soc'y*, 251 F.R.D. at 413 ("even factual material can be protected, where its disclosure would reveal a decision-maker's mental process"). In such situations, "documents containing nonbinding recommendations on law or policy" and factual materials that "reveal the mental processes of the decisionmakers" fall within the privilege. *Nat'l Wildlife Fed'n*, 861 F.2d at 1119. For example, in *Greenpeace*, the court noted that "expressions of expert opinion and professional judgment" are protected by the privilege where they "relate to the exercise of policy-oriented judgment." 198 F.R.D. at 544. Similarly, in *Nat'l Wildlife Fed'n*, the Ninth Circuit found that reports assessing "[p]rojected levels of various activities expected from implementation of the Forest Plans, the estimated costs and benefits associated with each activity, and estimates as to the Forest's maximum capacity for sustaining each activity" were protected by the deliberative process privilege, even where the reports "might be characterized as opinions on facts or the consequences of facts." 861 F.2d at 1121.

Documents reflecting ADOA's interpretation of Section 1557 would be similarly protected. ADOA's consideration and analysis of Section 1557 was an intimate part of ADOA's decision-making process relating to transgender healthcare benefits and the Exclusion. Disclosure of such documents would reveal the mental processes, recommendations, and opinions of ADOA's representatives and attorneys, as well as those of other government entities, including the Arizona Attorney General's Office (which are also protected by the attorney-client privilege) and the Arizona Governor's Office. As such, these documents are protected by the deliberative process privilege.

### C. The State Defendants Met Their Prima Facie Burden For Asserting The Privilege.

Plaintiff asserts that the State Defendants were required to affirmatively provide a declaration or affidavit from ADOA's Director prior to asserting the deliberative process

privilege. (*See* Doc. 168 at 9:1–19.) However, the cases that Plaintiff relies upon do not support this proposition.

Each of the cases cited by Plaintiff discuss requiring a declaration in the context of a motion to compel or a motion for a protective order. *See E.E.O.C. v. Swissport Fueling, Inc*, No. CV-10-2101-PHX-GMS, 2012 WL 1648416, at *15 (D. Ariz. May 10, 2012) (motion to compel); *L.H. v. Schwarzenegger*, No. CIVS-06-2042 LKK GGH, 2008 WL 2073958, at *6 (E.D. Cal. May 14, 2008) (same); *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8199308, at *1 (D. Ariz. July 21, 2016) (motion for protective order); *California Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. 408, 410 (N.D. Cal. 2008) (letter brief regarding discovery dispute); *see also Mayfield v. Cty. of Los Angeles*, No. 219CV1298FMOSKX, 2020 WL 2510649, at *1 (C.D. Cal. Mar. 20, 2020) (interpreting prior discovery order compelling production). Plaintiff has cited no case that requires the party asserting a deliberative process privilege to provide a declaration ***prior*** to briefing before the court.

Indeed, Plaintiff's cases reflect that a detailed declaration is required so that the ***court*** can properly assess the application of the privilege—not the party opposing invocation of the privilege. As the *Swissport Fueling* court explained, a declaration from the agency is necessary "so that ***the court***, in looking at the list of document, can understand the basis on which the privilege is asserted." 2012 WL 1648416, at *15 (emphasis added). In *Unknown Parties*, the defendants objected to three Rule 30(b)(6) deposition topics based on the deliberative process privilege and moved for a protective order. 2016 WL 8199308, at *1. The *Unknown Parties* court denied the protective order because it was premature, and directed the parties to proceed with the deposition. *Id.* at *5. However, the court clarified that the defendants could still object during the deposition based on the privilege and that, "subsequent to the depositions," the defendants should file the required declaration for the court's review. *Id.* Likewise, in *Mir v. Med. Bd. of California*, No. 12CV2340-GPC

(DHB), 2016 WL 3406118, at *2 (S.D. Cal. June 21, 2016), the plaintiff brought a motion to compel the defendant to produce documents withheld pursuant to the deliberative process privilege. *Aff'd sub nom. Mir v. Kirchmeyer*, No. 312CV02340GPCDHB, 2017 WL 164086 (S.D. Cal. Jan. 17, 2017). The defendant had not provided any declaration (or even a privilege log) supporting his assertion of the privilege. *Id.* at *3. The *Mir* court explained that, without a declaration, **the court** did not have sufficient information to assess the privilege claim; however, the court permitted the defendant to "continue to assert the privilege" if he submitted a privilege log and supporting declaration. *Id.* Plaintiff's arguments misconstrue the relevant case law and further demonstrate Plaintiff's wishful thinking as they have no evidence of any discriminatory intent. Moreover, based on Plaintiff's Motion and statements during the March 3 meet and confer, Plaintiff would have filed the pending Motion even if State Defendants had provided such an affidavit. Curtis Decl., ¶ 4.

The State Defendants filed concurrently with this Opposition a declaration from Paul Shannon, Assistant Director of the Benefit Services Division of ADOA.[6] *See generally* Shannon Decl. Mr. Shannon's declaration meets the particularity requirement necessary for this Court to analyze the State Defendants' privilege claim. *See generally id.* As such, the State Defendants have satisfied the procedural requirements for asserting the privilege.

## II.    NO EXCEPTION TO THE PRIVILEGE APPLIES.

The deliberative process privilege is not absolute. A party may obtain privileged information if its "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Warner Commc'ns Inc.*, 742 F.2d at 1161. The Ninth Circuit has recognized a four factor test to determine if the privilege is overcome. *Id.*

---

[6] Plaintiff's Motion repeatedly refers to Mr. Shannon as "ADOA Director." (*See* Doc. 168 at 5:18, 7:14–15.) Andy Tobin, not Paul Shannon, is the Director of ADOA.

The factors considered are: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation[7]; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.* Even if Plaintiff were to concede that discriminatory intent is necessary, Plaintiff has not shown any despite having thousands of documents and emails. There is no reason to suspect the communications related to the deliberative process contain statements showing some discriminatory intent. Plaintiff is desperately fishing in the deliberative process pond hoping to find something they have failed to find in an ocean of other evidence.

<u>Relevance of the Evidence</u>: Plaintiff has repeatedly asserted that the Exclusion is facially discriminatory and that no evidence of discriminatory intent is necessary. (Doc. 86 at 12–15; *see also* Doc. 168 at 4:14.) Under Plaintiff's own argument, then, the decision-making process and the reasons underlying ADOA's decision to uphold the Exclusion are not relevant. This factor weighs against disclosure.

<u>Availability of Other Evidence</u>: There is **substantial** other evidence available to Plaintiff that addresses this issue. Plaintiff asserts that the "only source" of the evidence he seeks is the withheld documents (Doc. 168 at 14:13–16), but that is demonstrably incorrect. First, the State Defendants have produced more than 8,000 documents in this matter.[8] Curtis Decl., ¶ 9. Much of that information could have been withheld under the deliberative

---

[7] The State Defendants recognize that the fact that the State of Arizona is a party to this matter may weigh against upholding the privilege, but government involvement is always at issue in deliberative process privilege cases. The privilege exists under the common law to allow the government to engage in full and frank discussions on policy matters. *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019). The State's involvement alone does not suggest the privilege is overcome because government involvement is always present in such matters. Instead of talking about the role ADOA had in analyzing the applicability of ACA § 1557, Plaintiff relies exclusively on the status of the State of Arizona as well as Messrs. Tobin and Shannon being Defendants. This adds nothing to the analysis.

[8] The State Defendants have also acceded to Plaintiff's request for additional searches of their electronically stored information.

process privilege. In particular, ADOA produced all of its internal communications and analyses regarding transgender benefits and the Exclusion, and its communications with each of its four insurance vendors regarding transgender benefits and with several healthcare consulting firms. *Id.* at ¶ 10. ADOA produced meeting minutes from its meetings with insurance vendors and from internal meetings. *Id.* In addition, Plaintiff subpoenaed each of ADOA's four insurance vendors and the Arizona Governor's Office. (*See* Docs. 140–143; Doc. 161.)

Moreover, despite the thousands of documents and communications devoid of any discriminatory intent, it does not follow that ADOA would suddenly engage in intentionally discriminatory discussions with the Arizona Governor's Office and other governmental entities. In addition, Plaintiff has already conducted four depositions, during which he questioned each witness regarding the reason for the Exclusion. Curtis Decl., ¶ 11. Plaintiff has stated his intention to conduct at least four more depositions, during which he can similarly question the witnesses regarding the reasons for the Exclusion. *See id.* at ¶¶ 12–13. Moreover, Plaintiff's Motion references Ms. Christina Corieri[9] and Plaintiff's inability to obtain evidence about Ms. Corieri's involvement in ADOA's decision without the withheld documents. (Doc. 168 at 14:4–12.) However, Plaintiff has indicated that he intends to depose Ms. Corieri. Curtis Decl., ¶ 13. Subject to any privileges the Governor's Office may assert in connection with Ms. Corieri's deposition (which are not the subject of Plaintiff's Motion or this Response), Plaintiff can certainly question her regarding the degree of her involvement in the decision-making process regarding the Exclusion. Further, Plaintiff propounded written discovery aimed specifically at this issue: the reasons behind the Exclusion. Curtis Decl., Ex. 16. Plainly, other substantial evidence is available to Plaintiff in the form of the Plan documents, ADOA's public statements, written discovery

---

[9] Plaintiff's Motion inadvertently refers to Ms. Corieri as "Christine Corieri." (Doc. 168 at 14:5.)

responses, the testimony of several deponents, and the thousands of documents produced in this matter. This factor weighs heavily against disclosure.

<u>The Extent That Disclosure Would Hinder Frank and Independent Discussion:</u> This factor deserves "careful consideration" because a government's interest in "full and frank communication about policymaking" is a serious concern. *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019). For example, in *Warner Commc'ns Inc.*, the court refused to compel production of privileged documents, in part, because compelling disclosure "certainly injures the quality of agency decisions," "chills frank discussion and deliberation in the future among those responsible for making governmental decisions," and "encourages the Commission to have deliberative reports and recommendations prepared only by those economists who will draw the conclusions." 742 F.2d at 1162. Similarly, here, compelling disclosure of the withheld documents would prevent a full and frank discussion of important matters and prevent full and careful consideration, be bad public policy, and not result in the best decision possible for ADOA and its health plans. Shannon Decl., ¶ 14. Placing ADOA employees and other government officials in a "fishbowl" would cause them to skirt around or sterilize their discussions of more difficult or controversial issues, in order to avoid criticism later. It would hamper the full and frank discussions that are the reason for the common law deliberative process privilege. This factor weighs against disclosure.

Because three of the four factors considered in the Ninth Circuit weigh against disclosure, the privilege is not overcome.[10] The important public policy reasons for the common law deliberative process privilege and the communications at issue should be

---

[10] Plaintiff's Motion references four additional factors occasionally considered by courts not in this jurisdiction. (Doc. 168 at 15:24–16:23.) The Ninth Circuit has not adopted these additional factors, and no published case in this District addresses them. While the State Defendants dispute that these additional factors weigh in favor of disclosure, they will not address them in detail here.

protected.

## III. CONCLUSION.

For the foregoing reasons, the deliberative process privilege applies to the withheld documents. The Court should deny Plaintiff's Motion to Compel.[11]

DATED this 1st day of April, 2021.

FENNEMORE CRAIG, P.C.

By: *s/ Ryan Curtis*
Timothy J. Berg
Amy Abdo
Ryan Curtis
Shannon Cohan
Attorneys for Defendants State of Arizona, Andy Tobin, and Paul Shannon

18261102

---

[11] If the Court is inclined to grant Plaintiff's Motion, the State Defendants request that the Court conduct an *in camera* review of the withheld documents prior to ruling upon the Motion. *See Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019) ("the district court should consider classes of documents separately".)