**Victoria Lopez – 330042**
**Christine K Wee – 028535**
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
Email: **vlopez@acluaz.org**
Email: **cwee@acluaz.org**

**Joshua A. Block***
**Leslie Cooper***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail: **jblock@aclu.org**
E-Mail: **lcooper@aclu.org**
*\*Admitted Pro hac vice*

**Wesley R. Powell***
**Matthew S. Freimuth***
**Nicholas Reddick***
**Jordan C. Wall***
**Victoria A. Sheets***
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
E-Mail: **wpowell@willkie.com**
E-Mail: **mfreimuth@willkie.com**
E-Mail: **nreddick@willkie.com**
E-Mail: **jwall@willkie.com**
E-Mail: **vsheets@willkie.com**

*\*Admitted Pro hac vice*

*Attorneys for Plaintiff Russell B. Toomey*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Russell B. Toomey**, | No. 4:19-cv-00035 |
| Plaintiff, | |
| v. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF AN ORDER COMPELLING THE PRODUCTION OF DOCUMENTS** |
| **State of Arizona; Arizona Board of Regents, D/B/A University of Arizona**, a governmental body of the State of Arizona; **Ron Shoopman**, in his official capacity as chair of the Arizona Board Of Regents; **Larry Penley**, in his official capacity as Member of the Arizona Board of Regents; **Ram Krishna**, in his official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour**, in his official capacity as Treasurer of the Arizona Board of Regents; **Lyndel Manson**, in her official capacity as Member of the Arizona Board of Regents; **Karrin Taylor Robson**, in her official capacity as Member of the Arizona Board of Regents; **Jay Heiler**, in his official capacity as Member of the Arizona Board of Regents; **Fred Duval**, in his official capacity as Member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration, | |
| Defendants. | |

Plaintiff, Dr. Russell B. Toomey, on behalf of himself and the certified Classes ("Plaintiff"), by and through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 37 and Arizona Local Rule 7.2, hereby submits this memorandum of law in further support of his Motion to Compel (the "Motion" or "Mot.") (Dkt. No. 168) and in reply to Defendants State of Arizona's, Andy Tobin's, And Paul Shannon's Opposition To Plaintiff's Motion To Compel ("Opposition" or "Opp.") (Dkt. No. 176).

## THE COURT SHOULD GRANT PLAINTIFF'S MOTION TO COMPEL

State Defendants prove too much. First, the Opposition does little to rebut that the deliberative process privilege may be overcome when the government's intent is directly at issue. (Mot. 12-16.) State Defendants all but admit that their decision-making process is at issue. (Opp. 11, n. 7.) And this Court has so held. (Dkt. No. 134 at 6, 9.) Yet State Defendants take the absurd position that the very documents they admit "reveal the mental processes, recommendations, and opinions of ADOA's representatives and attorneys, as well as those of other government entities" (Opp. 8) should not be disclosed because they <u>could not</u> contain evidence of their discriminatory intent because nothing they have produced to date indicates any political animus, so they claim. (Opp. 11-13.) This peculiar argument has no basis in either fact or logic. State Defendants' productions to date, as well as the recent depositions of Ms. Marie Isaacson and Mr. Scott Bender, increasingly support that State Defendants maintained the Plan's exclusion on "transsexual surgery" (later, "gender reassignment surgery") (the "Exclusion") because of discriminatory views about transgender and gender non-conforming individuals. The withheld documents likely contain the most direct evidence of such animus, so the privilege should be overcome.

Second, State Defendants improperly defend their deliberative process privilege claim by relying on details about the withheld documents that are neither reflected in their Privilege Logs, nor otherwise available to Plaintiff or the Court itself. (Opp. 6.) They all but concede therefore that they have failed to assert the privilege with the requisite

2

particularity. Even with these additional details, including from the long-sought declaration of the Benefits Director of the ADOA, Mr. Paul Shannon, State Defendants offer only ill-conceived or conclusory arguments supporting that the withheld documents are both predecisional and deliberative. Further, the recent deposition testimony of Ms. Marie Isaacson, the former Benefits Director of the ADOA who oversaw the review of the Exclusion, substantially contradicts many of Mr. Shannon's assertions about the ADOA's deliberations over the Exclusion. Ms. Isaacson testified that there was little to no deliberation within the ADOA about the Exclusion, and that the Arizona Governor's Office was primarily responsible for the decision to maintain the Exclusion. The withheld documents are necessary to resolving these conflicting accounts.

Finally, State Defendants have engaged in significant gamesmanship in the assertion of this particular privilege that the Court, in fairness, should not condone. In addition to selectively choosing when to assert the privilege to suit their needs (Opp. 11-12), State Defendants have been overbroad in their assertion of the privilege on behalf of the Governor's Office (and even the Town of Gilbert, Arizona). (Opp. 2, n.1; 7, n. 5.) Coupled with State Defendants' repeated failure to furnish Mr. Shannon's declaration, State Defendants should be deemed to have waived the privilege on fairness grounds.

## ARGUMENT

### I. THE PRIVILEGE SHOULD BE OVERCOME IN ALL EVENTS BECAUSE STATE DEFENDANTS' DECISION-MAKING IS DIRECTLY AT ISSUE

State Defendants offer no credible rebuttal to the well-established principle that when the government's actions are the "focal point of litigation" this "weighs against upholding the deliberative process privilege." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1028 (E.D. Cal. 2010) (history omitted). They do not contest that the "need for accurate fact-finding" may "override the government's interest in non-disclosure." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). Or that courts in the Ninth

Circuit have consistently overturned the privilege in suits seeking to vindicate civil rights, including under Title VII or the Equal Protection Clause, like here. *See, e.g.*, *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019); *Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545 (D. Ariz. 2011). Rather, State Defendants concede that the guiding four-factor test at least partially supports disclosure of the withheld documents. (Opp. 11, n. 7.)1 And they otherwise offer only ill-conceived or conclusory arguments as to the rest of that test.

### A.   Factor One: the Relevance of the Evidence

State Defendants argue, disingenuously, that documents about their decision-making process are not relevant here as Plaintiff argues that the Exclusion is facially discriminatory. (Opp. 11.) State Defendants are well-aware that they assert a defense that no animus informed their decision to maintain the Exclusion (Dkt. No. 89 at 28), and that they have previously argued that Plaintiff must prove discriminatory intent. (Dkt. No. 144, at 5.) Several ADOA witnesses have attested in depositions that the decision to maintain the Exclusion was made primarily by the Governor's Office. (Ex. 3, Marie Isaacson Transcript at 20:10-17, 324:2-22; Ex. 4, Scott Bender Rough Transcript at 153-54; Ex. 5, Yvette Medina Transcript at 52:25-53:13.) Mr. Shannon claims that almost all the withheld documents reflect exchanges between the ADOA and the Governor's Office that were essential to their decision-making. (Shannon Decl. ¶¶ 5-11.) Nothing could be more relevant to this case than these withheld documents.

### B.   Factor Two: the Availability of Other Evidence

State Defendants point to their productions as an alternative source of evidence (or lack thereof) of their discriminatory intent. (Opp. 11-13.) This is a red herring. A

---

1   State Defendants declined to argue that the other four factors Ninth Circuit courts have recognized also support disclosure (Opp. 13, n. 10), effectively conceding the point. (Mot. 13, 15-17.)

4

significant portion of their approx. 8,000 produced documents consists of administrative documents, like vendor logs, many of which are hundreds of pages long, yet contain only brief and duplicative references to the Exclusion. (Ex. 1, Wall Supp. Decl. ¶ 6.) Further, many of the meeting minutes State Defendants cite are heavily redacted (Ex. 1, Wall Supp. Decl. ¶ 7; Ex. 6, AZSTATE.011038; Ex. 7, AZSTATE.011046), and do not address the rational for maintaining the Exclusion. (Ex. 9, AZSTATE.003186 (noting that "[r]eassignment surgery will not be covered" but providing no explanation as to why).) Some documents in fact suggest the possibility of animus by extrapolation. (Ex. 6, AZSTATE.011038, at AZSTATE.011043 (September 2016 minutes noting that majority of Network Providers estimated a low cost of coverage for gender reassignment surgery and would now cover it).) Critically, State Defendants have not produced meeting minutes, if any exist, of the October 2016 meeting during which Ms. Isaacson attested the decision to maintain the Exclusion was made. (Ex. 3, Marie Isaacson Transcript at 47:24 – 48:9; *see also* Ex. 8, AZSTATE.000581 (noting meeting on Wednesday, October 19, to make decision on the Exclusion).) The absence of such important record evidence supports the disclosure of other available evidence of the decision-making process. *Cf. N. Pacifica, LLC*, 274 F. Supp. 2d at 1125.

State Defendants argue, absurdly, that given the absence of proof of their discriminatory intent in their productions (so they claim), the withheld documents could not contain such evidence either. (Opp. 12.) This argument fails as a matter of fact and logic. First, as noted above, State Defendants have produced documents supporting potential political animus at play. (Ex. 6, AZSTATE.011038, at AZSTATE.011043; Ex. 8, AZSTATE.000581 (Mr. Bender recommending against coverage despite Network Provider advice to the contrary)). Witness testimony bolsters the possibility. (Ex. 3, Marie Isaacson Transcript at 263:14—264:10; Ex. 4, Scott Bender Rough Transcript at 154-155.) However, while these documents and testimony may be some source of proof of discriminatory intent, the withheld documents potentially represent the only source of

certain kinds of proof, most importantly, clear and direct documentary evidence of political animus. (Mot. 14-15.) Second, State Defendants' argument has no basis in logic. An equally plausible explanation for the supposed absence of evidence of discriminatory intent in documents produced, but within the withheld documents, is that State Defendants have actively shielded incriminating proof through their selective assertion of the deliberative process privilege. (Opp. 11-12.)

### C. Factor Three: the Government's Role in the Litigation

State Defendants concede this factor, and rightly so, as it weighs heavily in favor of disclosure. (Opp. 11, n. 7.) State Defendants are not mere parties to this dispute, as they blithely claim, but rather the focal-point of the litigation, which strongly favors disclosure. *See Thomas*, 715 F. Supp. 2d at 1028.

### D. Factor Four: Potential Hindrance of Frank and Independent Discussion

State Defendants argue, in conclusory fashion, that disclosure would hinder frank and independent discussion among the members of the ADOA. (Opp. 13.) Neither they, nor Mr. Shannon offer an explanation of how the disclosure of any of the withheld documents would chill deliberation. Mr. Shannon reveals that the withheld documents primarily consist of years-old exchanges between the Governor's Office and the ADOA regarding transgender benefits, all of which has been forwarded and shared over the last 6 years. (Shannon Decl. ¶¶ 5-11.) It is difficult to imagine how disclosure of such old documents could impede the agency's business. Any potential chilling effect could also be "outweighed" through issuance of a protective order, redaction, restrictions to attorneys' eyes only, or limited *in camera* review. *Karnoski v. Trump*, C17-1297 MJP, 2019 WL 6894510, at *3 (W.D. Wash. Dec. 18, 2019) (history omitted).

## II. STATE DEFENDANTS HAVE FAILED TO ESTABLISH THAT EACH WITHHELD DOCUMENT IS PREDECISIONAL AND DELIBERATIVE

State Defendants' objections based on the deliberative process privilege are unjustified because: (1) these documents may not be predecisional; and (2) these documents may not be deliberative.

### A. Withheld Documents Created After the October 19, 2016 Meeting Are Not Predecisional

Ms. Isaacson attested in her deposition that the decision to maintain the Exclusion occurred in a meeting with the Governor's Office on October 19, 2016. (Ex. 3, Marie Isaacson Transcript at 47:24 – 48:9; *see also* Ex. 8, AZSTATE.000581.) Thereofre, Documents created after October 19, 2016, <u>at least</u>, cannot satisfy the predecisional prong and must be disclosed. *F.T.C.*, 742 F.2d at 1161. (Mot. 9-11.) All but 9 of the 35 withheld documents were created pre-October 19, 2016. (Mot. Ex. 8, Nos. 20, 21, 75, 204-209.) State Defendants falsely argue that Plaintiff conceded that documents dated before December 8, 2016, are predecisional. There has been no such concession. Plaintiff argued that, given the December 8, 2016 email disclosing the ADOA's stance to vendors, <u>at least</u> documents made after that date could not be considered predecisional.[2]

### B. Documents Withheld on the Basis of an ADOA Recommendation Are Not Deliberative

State Defendants have again failed to state with particularity how each of the withheld documents is deliberative. *Cal. Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. 408, 413 (N.D. Cal. 2008) (privilege requires sufficient details of "how each documents fits into the deliberative process" further, "[c]onclusory statements that a document is deliberative do not suffice"). Mr. Shannon provides only boilerplate statements that the

---

2   State Defendants' argument that it is the finalization of the Plan <u>language</u> that matters carries no water. (Opp. 5-6.) The question animating this Motion is not if the Plan's language itself is discriminatory, but whether the rationale for the Exclusion was discriminatory.

7

withheld documents are "deliberative in nature." (Shannon Decl. ¶¶ 5, 9, 10, 11, 12.) These are "nothing but a legal platitude asserted in the abstract." *Unknown Parties*, 2016 WL 8199308, at *4.

Further, Ms. Isaacson's deposition testimony contradicts Mr. Shannon's statement that the withheld documents contain or reflect deliberations at all. Mr. Shannon states that Privilege Log Entry Nos. 20-21 and 75 consist of emails attaching a "memorandum from Ms. Isaacson" to the Governor's Office with "ADOA's considerations, <u>opinions and recommendations</u>." (Shannon Decl. ¶ 9 (emphasis added).) He also claims that Privilege Log Entry Nos. 204-209 are an email chain that "discusses <u>opinions</u>, considerations, and <u>recommendations from ADOA</u> based on the legal advice so that such opinions, considerations, and opinions could be further discussed and deliberated." (*Id*. ¶ 11 (emphasis added).) Yet, Ms. Isaacson attested that she did not make a recommendation to the Governor's Office on whether to maintain the Exclusion; rather, the ADOA relied almost exclusively on the advice of legal counsel on whether they could or could not maintain the Exclusion. (Ex. 3, Marie Isaacson Transcript at 209:15-210:9.) Ms. Isaacson, as well as other ADOA witnesses, attested that the decision to maintain the Exclusion was made primarily by the Governor's Office. (Ex. 3, Marie Isaacson Transcript at 20:10-15, 324:2-22; Ex. 4, Scott Bender Rough Transcript at 153-54; Ex. 5, Yvette Medina Transcript at 52:25-53:13.) If Ms. Isaacson and others are to be believed, the withheld documents may not reflect deliberations within the ADOA on whether to maintain the Exclusion. In all events, the contradiction between Mr. Shannon's declaration and witness testimony only further supports the need for disclosure to insure accurate judicial fact-finding.

### III. STATE DEFENDANTS'S IMPROPER GAMESMANSHIP

State Defendants have waived the deliberative process privilege by failing to satisfy their *prima facie* burden by submitting a declaration from the agency head of the ADOA with the <u>requisite particularity</u>. The Court should further consider their

8

gamesmanship in asserting the privilege in determining whether a waiver has occurred, particularly "the overriding issue of fairness." *See In re McKesson Gov't Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 599 (N.D. Cal. 2009) (fairness among factors considered in determining waiver of privilege)

First, State Defendants argue that many of the documents they have thus far produced "could have been withheld under the deliberative process privilege." (Opp. 11-12.) State Defendants are wrong, as the privilege should be overcome in all events, or otherwise fails for reasons set out herein. However, State Defendants' admitted selectivity in asserting the privilege suggests that they are choosing which documents to disclose to suit their needs, i.e., disclosing supposedly privileged documents that they think help them, but withholding supposedly privileged documents that they think hurt them. Such gamesmanship is troubling as it suggests an attempt to manipulate the evidence available to Plaintiff and the Court. The Court should not condone such behavior.

Second, State Defendants have made overbroad assertions of the privilege, which is improper. *See N. Pacifica, LLC*, 274 F. Supp. 2d at 1121 (the privilege is to be "strictly confined within the narrowest possible limits consistent with the logic of its principles") State Defendants seek two bites at the proverbial apple on the privilege by attempting to assert it also <u>on behalf of</u> the Governor's Office. (Opp. 2, n. 1.) Yet throughout discovery, State Defendants have refused to comply with Plaintiff's requests to the extent they implicated the Governor's Office on the principle that the two are separate entities. (Ex. 1, Wall Suppl. Decl. ¶ 5; Ex. 2, State Defendants' Responses and Objections at General Objection Nos. 8 & 10.) State Defendants appear to wield as both sword and shield the fiction of the separateness of the agencies and instrumentalities of the State of Arizona, a named defendant, when it suits their needs. Such gamesmanship is patently unfair to Plaintiff. The Court should deny State Defendants' requests on behalf of the Governor's Office—and any decision on the withheld documents should be deemed final for all parties

9

involved (including the Governor's Office).3  The Court should also consider whether fairness supports that State Defendants may share the withheld documents freely among any "governmental" entity, no matter how attenuated,4 without waiving the alleged privilege, but in the same breath, use the legal separateness of such entities to its benefit.5

Finally, State Defendants' refusal to produce Mr. Shannon's declaration constituted another act of gamesmanship.  State Defendants are plainly wrong that such a declaration need not be filed outside of motion practice, and even then, only for the benefit of the Court's review (Opp. 9-10).  *See EEOC v. Swissport Fueling, Inc.*, No. CV-10-2101-PHX-GMS, 2012 WL 1648416, at *15 (D. Ariz. May 10, 2012) (noting deliberative process privilege must be raised—not by a cover letter from counsel nor a privilege log—but "by the head of the agency after she has personally considered the material in question"

---

3  Additionally, State Defendants' suggestion that the Court conduct an *in camera* review of all the withheld documents, but only if it is inclined to grant the Motion (Opp. 14, n. 11), should be denied.  Not only should the deliberative process privilege be overcome in all events for the reasons set forth above, a post-hoc secondary review of all the withheld documents (much like permitting the Governor's Office a chance to re-litigate this matter) will only delay the resolution of these documents and the conduct of discovery, including depositions, which are ongoing.

4  Despite the clear distinction between the ADOA as a state executive agency and the Town of Gilbert, Arizona as a municipal corporation, and their admission that State Defendants and Gilbert's decision-making process do not overlap (Opp. 7, n.5) , State Defendants incredulously  assert the privilege on Gilbert's behalf.  Presumably the inclusion of these Gilbert documents on State Defendants' Privilege Logs, despite having nothing to do with the Exclusion (Shannon Decl. ¶ 12), indicates that they are relevant to the claims and defenses at issue in this case.  State Defendants' assertion of the privilege therefore appears intended to shield potentially material information, rather than preserve some function of their decision-making process.

5  Although the U.S. Supreme Court has clarified that the deliberative process privilege applies to "inter-agency or intra-agency" communications among federal governmental agencies, Plaintiff has not found case law addressing this issue in context similar to this dispute. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2 (2001).

10

(emphasis added)); *Unknown Parties*, 2016 WL 8199308, at *5 (agency head and not counsel must assert privilege for public policy reasons); Fed. R. Civ. P. 26(b)(5)(A)(ii) (privilege log must contain sufficient detail to "enable the parties to assess the claim" (emphasis added)). Neither State Defendants nor Mr. Shannon indicate that he conducted his review of the withheld documents before State Defendants asserted the privilege in their January 21, 2021 letter, or anytime near after. (Mot. 5.) Mr. Shannon's likely post-hoc assertion of the privilege represents merely another instance of gamesmanship, as State Defendants attempt to shore up their improper assertion of the privilege in the first place.

## CONCLUSION

For all the reasons discussed above, Plaintiff's Motion should be granted.

Dated: April 8, 2021

        ACLU FOUNDATION OF ARIZONA

        By /s/ *Christine K. Wee*
        Victoria Lopez – 330042
        Christine K Wee – 028535
        3707 North 7th Street, Suite 235
        Phoenix, Arizona 85014

        AMERICAN CIVIL LIBERTIES UNION FOUNDATION
        Joshua A. Block*
        Leslie Cooper*
        125 Broad Street, Floor 18
        New York, New York 10004

        WILLKIE FARR & GALLAGHER LLP
        Wesley R. Powell*
        Matthew S. Friemuth*
        Jordan C. Wall*
        787 Seventh Avenue
        New York, New York 10019
        *Admitted pro hac vice

        *Attorneys for Plaintiff Russell B. Toomey*

# CERTIFICATE OF SERVICE

I, Christine K. Wee, hereby certify that on April 8, 2021, I caused the foregoing document to be served via electronic mail to counsel for Defendants at the following email addresses:

Timothy J. Berg tberg@fclaw.com
Amy Abdo amy@fclaw.com
Ryan Curtis rcurtis@fclaw.com
Shannon Cohan scohan@fclaw.com
FENNEMORE CRAIG, P.C.
2394 E. Camelback Road Suite 600
Phoenix, Arizona 85016

*Attorneys for Defendants State of Arizona, Andy Tobin, and Paul Shannon*

Paul F. Eckstein
Austin C. Yost AYost@perkinscoie.com
PERKINS COIE LLP
2901 N. Central Ave., Suite 2000
Phoenix, Arizona 85012-2788
DocketPHX@perkinscoie.com

*Attorneys for Defendants Arizona Board of Regents, d/b/a University of Arizona; Ron Shoopman; Larry Penley; Ram Krishna; Bill Ridenour; Lyndel Manson; Karrin Taylor Robson; Jay Heiler; and Fred Duval*

/s/ Christine K. Wee
Christine K. Wee