**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell B. Toomey, Plaintiff, v. State of Arizona; Arizona Board of Regents, d/b/a University of Arizona, a governmental body of the State of Arizona; et al., Defendants. | CV 19-0035-TUC-RM (LAB) **ORDER** |

Pending before the court is the plaintiff's motion, filed on March 18, 2021, to compel production of documents. (Doc. 168) The defendants State of Arizona, Andy Tobin, and Paul Shannon ("the State Defendants") filed a response on April 1, 2021. (Doc. 176) The plaintiff, Toomey, filed a reply on April 8, 2021 and a notice of errata on April 12, 2021. (Doc. 180); (Doc. 183)

Toomey issued his First Request for Production on December 8, 2020, in which he requested documents "concerning the State Defendants' reasons for excluding medically necessary gender-affirming surgeries" from his health insurance plan. (Doc. 168, p. 3) The State Defendants withheld certain documents "on grounds that these documents are protected from disclosure by the 'deliberative process privilege.'" *Id.* In the pending motion, Toomey seeks an order from this court precluding the State Defendants from relying on this privilege.

\\

\\

\\

The motion will be granted. The plaintiff's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *See F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

Discussion

The plaintiff in this action, Russell B. Toomey, is an associate professor employed at the University of Arizona. (Doc. 86, p. 5) (Amended Complaint) He receives health insurance from a self-funded health plan (the Plan) provided by the State of Arizona. (Doc. 86, pp. 3, 8) The Plan generally provides coverage for medically necessary care. (Doc. 86, p. 8) There are coverage exclusions, however, one of which is for "gender reassignment surgery." (Doc. 86, p. 9)

Toomey is a transgendered man. (Doc. 86, p. 9) "[H]e has a male gender identity, but the sex assigned to him at birth was female." (Doc. 86, p. 9) Toomey has been living as a male since 2003. (Doc. 86, p. 9) His treating physicians have recommended that he receive a hysterectomy as a medically necessary treatment for his gender dysphoria. (Doc. 86, p. 9) Toomey sought medical preauthorization for a total hysterectomy, but he was denied under the Plan's exclusion for "gender reassignment surgery." (Doc. 86, p. 10)

On January 23, 2019, Toomey brought the pending class action in which he argues the Plan's exclusion is sex discrimination under Title VII of the Civil Rights Act of 1964 and a violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1); (Doc. 86)

This action is currently in the discovery stage. On December 8, 2020, Toomey served his First Request for Production on the State Defendants seeking documents calculated to reveal the reason why the Plan contains an exclusion for "gender reassignment surgery." (Doc. 168,

pp. 4-5) The State Defendants produced some documents but withheld[1] 35 documents "on the basis of the deliberative process privilege." (Doc. 168, pp. 6-7)

In the pending motion, Toomey moves to compel the production of these documents pursuant to Fed.R.Civ.P.37(a)(3)(B)(iv). (Doc. 168, p. 7) He asserts that the State Defendants failed to properly invoke the privilege. He further argues that the deliberative process privilege is generally inapplicable to his Request for Production given the issues involved.

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), "A party seeking discovery may move for an order compelling . . . production . . . if . . . a party fails to produce documents."

The deliberative process privilege is a creature of federal common law. *Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923, at *1 (D. Ariz. 2014); *see also* Fed.R.Evid. 501. It "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). "It was developed to promote frank and independent discussion among those responsible for making governmental decisions . . . and also to protect against premature disclosure of proposed agency policies or decisions." *Id.* "The ultimate purpose of the privilege is to protect the quality of agency decisions." *Id.*

---

[1] In a footnote, Toomey states that some documents have been withheld under the deliberative process privilege and also because of the attorney-client privilege. (Doc. 168, p. 8, n. 2) Neither party addresses the latter privilege in any detail. Accordingly, the court expresses no opinion on the defendant's use of the attorney-client privilege.

"A document must meet two requirements for the deliberative process privilege to apply." *Warner Commc'ns Inc.*, 742 F.2d at 1161. "First, the document must be predecisional—it must have been generated before the adoption of an agency's policy or decision." *Id.* "Second, the document must be deliberative in nature, containing opinions, recommendations, or advice about agency policies." *Id.* "Purely factual material that does not reflect deliberative processes is not protected." *Id.*

"The deliberative process privilege is a qualified one." *Warner Commc'ns Inc.*, 742 F.2d at 1161. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.* "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.* "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir.1988).

In his motion, Toomey first argues that the State Defendants failed to properly invoke the deliberative process privilege. He maintains that the State Defendants failed to satisfy their prima facie burden of providing a sworn declaration by an agency head attesting to the fact that "she has personally considered the material in question prior to the invocation of the privilege." (Doc. 168, p. 9) He further asserts that the State Defendants failed to show that the withheld documents are predecisional and deliberative. *Id.* Assuming without deciding that the State Defendants properly invoked the privilege, the court finds that the plaintiff's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *See F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The court considers the four *Warner* factors. *Id.*

First, the court finds that the documents sought are highly relevant. *See Warner Commc'ns Inc.*, 742 F.2d at 1161. Toomey claims that the gender surgery exclusion is

intentional discrimination in violation of Title VII and the Equal Protection Clause of the Fourteenth Amendment. The documents sought bear directly on the thought processes and state of mind of the decision makers behind the exclusion. As such, they bear directly on the issue of intent. The document request, therefore, concerns an indispensable element of Toomey's causes of action and is directed at persons with direct knowledge of this element. *See also Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923, at *3 (D. Ariz. 2014) (Equal Protection claim requires the court to consider the "actual intent" behind the policy in question.). This factor favors the plaintiff.

The State Defendants argue, to the contrary, that the documents sought are irrelevant. (Doc. 176, p. 11) They note that Toomey has argued in the past that the Plan exclusion is facially discriminatory. They assert that "[u]nder Plaintiff's own argument . . . the decision-making process and the reasons underlying [the Arizona Department of Administration's] decision to uphold the Exclusion are not relevant." *Id.* The State Defendants are correct but only to a point. Under Toomey's previous argument, the documents sought are irrelevant. That argument, however, has not been accepted by this court to date. Unless or until it is, the issue of intent remains unresolved, and the documents remain relevant.

Under the second *Warner* factor, the court considers "the availability of other evidence." *Warner Commc'ns Inc.*, 742 F.2d at 1161. The court recognizes that other evidence on the issue of intent exists. If the authors of the plan exclusion were to be deposed, the plaintiff would have direct evidence on the issue of their intent. If, however, those authors acted in violation of the law, their testimony might be less candid than the plaintiff would like. Accordingly, the court concludes that while other evidence might exist, the documents sought by the plaintiff are likely to be the most *reliable* evidence on the issue. This factor also favors the plaintiff.

The State Defendants argue, to the contrary, that "[t]here is **substantial** other evidence available to Plaintiff" on the issue of intent. (Doc. 176, p. 11) (emphasis in original) They note that they have already produced more than 8,000 documents in this matter. The State Defendants, however, do not discuss any of those documents in detail. It is therefore impossible

for the court to conclude that those documents, or any of them, will be relevant, let alone dispositive, on the issue of intent. In other words, the court cannot conclude from the sheer quantity of documents disclosed to date that the plaintiff already has in his possession documents whose evidentiary value is comparable to the documents currently withheld. Quantity is not quality. *See, e.g., Weiler v. United States*, 323 U.S. 606, 608, 65 S. Ct. 548, 550 (1945).

The State Defendants further note that the plaintiff seems very curious as to whether Ms. Christina Corieri offered the Arizona Department of Administration (ADOA) any advice or counsel on the Plan exclusion. (Doc. 176, p. 12) The State Defendants suggest that the plaintiff could simply depose Ms. Corieri and ask her directly. As the court noted above, however, witnesses do not always remember what they said or did in the past with the same reliability that documentation can provide. *See* Shareholder Litigation, Vol. 2, § 21:6 ("The faintest ink is better than the best memory . . . .").

The third *Warner* factor requires the court to consider the government's role in the litigation. *Warner Commc'ns Inc.*, 742 F.2d at 1161. In this case, the government is itself a defendant rather than a third party. Where the government is itself a defendant, the reason for the privilege evaporates. *See In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir.), on reh'g in part, 156 F.3d 1279 (D.C. Cir. 1998). The privilege is designed to protect the proper and efficient functioning of the government. If the government itself is accused of wrongdoing, then the privilege would not necessarily protect proper governmental functioning but instead might shield governmental malfeasance. This factor strongly favors the plaintiff. *See In re Sealed Case*, 121 F.3d 729, 738 (D.C.Cir.1997) ("[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government."); *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir.), on reh'g in part, 156 F.3d 1279 (D.C. Cir. 1998) ("[I]t seems

rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination.").

The fourth *Warner* factor requires the court to consider "the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." Ordinarily, it might be assumed that disclosure of predecisional documents would make it difficult for governmental agencies to attract candid opinions in the future because parties might withhold from consideration unpopular opinions for fear that they might become public. The court finds that this general concern is of less importance in the present case. The issue here is the construction of a healthcare plan and exceptions to coverage. The construction of a healthcare plan ordinarily entails considerations of medical needs, costs, and the efficacy of treatment. One would not expect that consideration of these factors would run the risk of attracting politically sensitive or controversial views. If, as the State Defendants have suggested in the past, the Plan and its exclusions were created for entirely prosaic reasons, such as cost containment, there is little reason to fear that future health insurance decision would be adversely affected if predecisional opinions were disclosed to the public. In fact, in Arizona, one would ordinarily presume that to be the case.

"Arizona has a policy in favor of full and open disclosure, as evidenced by Arizona's open meetings law." *Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923, at *3 (D. Ariz. 2014) (*citing Rigel Corp. v. State*, 225 Ariz. 65, 72–73, 234 P.3d 633, 640–41 (App.2010) ("Arizona recognizes a legal presumption in favor of disclosing public records.")). Perhaps for this reason, "Arizona courts have not recognized a deliberative process privilege under state law." *Id.* "Arizona state government officials, therefore, should reasonably expect that their deliberations in crafting policy are open to public scrutiny," and persons giving advice to Arizona government officials should ordinarily assume that their advice will not be hidden from the public gaze. *Id.* Granting the pending motion will not disturb settled expectations in Arizona concerning the public nature of governmental records. The court finds that disclosure

of documents concerning the creation of the Plan and its exclusions will have only a minimal adverse effect on future healthcare coverage deliberations.

After considering the four *Warner* factors, the court concludes that the motion for production should be granted. *See Warner Commc'ns Inc*., 742 F.2d at 1161. The plaintiff's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.*; *See, e.g., Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923, at *3 (D. Ariz. 2014) (Deliberative process privilege did not shield documents "concerning the policy of the Governor's Office and the Arizona Department of Transportation . . . to deny driver's licenses to individuals granted deferred action status under the 2012 Deferred Action for Childhood Arrivals . . . program.").

IT IS ORDERED that the plaintiff's motion, filed on March 18, 2021, to compel production of documents is GRANTED. (Doc. 168) The State of Arizona, Andy Tobin, and Paul Shannon (The State Defendants) shall "produce all the documents currently withheld [solely] on the basis of Deliberative Process Privilege and listed on their most recent privilege log." *See* (Doc. 168-4, p. 2) The State Defendants shall comply with this order within 21 days of service.

DATED this 20th day of April, 2021.

Leslie A. Bowman

Leslie A. Bowman
United States Magistrate Judge