**Victoria Lopez- 330042**
**Christine K Wee– 028535**
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
Email: **vlopez@acluaz.org**
Email: **cwee@acluaz.org**


**Joshua A. Block***
**Leslie Cooper***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail:**jblock@aclu.org**
E-Mail: **lcooper@aclu.org**
*Admitted Pro hac vice*

**Wesley R. Powell***
**Matthew S. Freimuth***
**Nicholas Reddick***
**Jordan C. Wall***
**Victoria A. Sheets***
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
E-Mail: **wpowell@willkie.com**
E-Mail: **mfreimuth@willkie.com**
E-Mail: **nreddick@willkie.com**
E-Mail: **jwall@willkie.com**
E-Mail: **vsheets@willkie.com**


*Admitted Pro hac vice*


*Attorneys for Plaintiff Russell B. Toomey*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

**Russell B. Toomey**,

           Plaintiff,

v.

**State of Arizona; Arizona Board of Regents, d/b/a University of Arizona**, a governmental body of the State of Arizona; **Ron Shoopman**, in his official capacity as chair of the Arizona Board of Regents; **Larry Penley**, in his official capacity as Member of the Arizona Board of Regents; **Ram Krishna**, in his official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour**, in his official capacity as Treasurer of the Arizona Board of Regents; **Lyndel Manson**, in her official capacity as Member of the Arizona Board of Regents; **Karrin Taylor Robson**, in her official capacity as Member of the Arizona Board of Regents; **Jay Heiler**, in his official capacity as Member of the Arizona Board of Regents; **Fred Duval**, in his official capacity as Member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration,

           Defendants.

4:19-cv-00035-TUC-RM (LAB)

**AMENDED NOTICE OF SUBPOENA**

PLEASE TAKE NOTICE that, pursuant to the Federal Rules of Civil Procedure Rules 34(c) and 45 (together, the "Rules"), Plaintiff Russell B. Toomey, on behalf of himself and the certified Classes, by his attorneys the ACLU Foundation of Arizona, the American Civil Liberties Union Foundation, and Willkie Farr & Gallagher LLP, have issued the attached subpoena commanding the production of certain documents by, and will cause such subpoena to be served upon:

> Mercer
> CT Corporation System
> 3800 North Central Ave., Suite 460
> Phoenix, AZ 85012

Dated: April 30, 2021                    Respectfully submitted,

ACLU FOUNDATION OF ARIZONA

By /s/ *Christine K. Wee*
Victoria Lopez
Christine K Wee
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Joshua A. Block*
Leslie Cooper*
125 Broad Street, Floor 18
New York, New York 10004

WILLKIE FARR & GALLAGHER LLP
Wesley R. Powell*
Matthew S. Friemuth*
Nicholas Reddick*
Jordan C. Wall*
Victoria A. Sheets*
787 Seventh Avenue
New York, New York 10019

*Admitted pro hac vice
*Attorneys for Plaintiff Russell B. Toomey*

2

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2021 I emailed the attached document to:

Timothy J. Berg
Amy Abdo
Ryan Curtis
Shannon Cohan
Fennemore Craig, P.C.
2394 E Camelback Rd., Ste. 600
Phoenix, AZ 85016-3429
tberg@fclaw.com
amv@fclaw.com
rcurtis@fclaw.com
scohan@fclaw.com

*Attorneys for Defendants State of Arizona,*
*Andy Tobin and Paul Shannon*

Paul F. Eckstein
Austin C. Yost
PERKINS COIE LLP
2901 N. Central Ave., Suite 2000
Phoenix, Arizona 85012-2788
PEckstein@perkinscoie.com
AYost@perkinscoie.com
DocketPHX@perkinscoie.com

*Attorneys for Defendants Arizona Board of Regents,*
*d/b/a University of Arizona; Ron Shoopman; Larry Penley;*
*Ram Krishna; Bill Ridenour; Lyndel Manson; Karrin*
*Taylor Robson; Jay Heiler; and Fred Duval*

*/s/ Christine K. Wee*
Christine K. Wee

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | |
|---|---|
| Russell B. Toomey | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 4:19-cv-00035 (RM/LAB) |
| State of Arizona, et. al. | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Mercer,  CT Corporation System, 3800 North Central Ave., Ste. 460, Phoenix, AZ 85012

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHMENT

| Place: ACLU Foundation of Arizona, c/o Christine K Wee, 3707 North 7th Street, Suite 235, Phoenix, Arizona 85014 | Date and Time: 05/18/2021 5:00 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: April 30 2021

| _CLERK OF COURT_ | OR | /s/ Christine Wee |
|---|---|---|
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Plaintiff, Russell B. Toomey , who issues or requests this subpoena, are:

Christine K Wee, 3707 North 7th Street, Suite 235, Phoenix, Arizona 85014, CWee@acluaz.org, 602-773-6024

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   4:19-cv-00035 (RM/LAB)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____   on *(date)* _____ ; or

☐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $          0.00          .

I declare under penalty of perjury that this information is true.

Date: _____          _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**REQUESTS FOR PRODUCTION**[1]

1. All documents and communications between You and any of the Defendants in any way relating to, discussing, or concerning:

   a. any current or prior iteration or version of the Transgender Health Exclusion;

   b. any treatment of gender dysphoria; and

   c. transgender people, gender transition, change of sex, sex reassignment, transsexualism, or gender reassignment.

2. All documents (including, but not limited to, actuarial or other financial reports, memoranda, budgets, presentations, or analyses) concerning:

   a. the costs (both per annum and per service/treatment) of providing any form of treatment of gender dysphoria under the Plan;

   b. the fiscal impact, including potential or actual aggregate and net costs (or savings), of implementing, enforcing, amending, or eliminating the Transgender Health Exclusion,

   c. the medical necessity, safety, and efficacy (including whether a procedure is deemed experimental or cosmetic) of excluded treatments in the Transgender Health Exclusion and/or generally treatment of gender dysphoria; and

   d. any legal or regulatory implications or requirements concerning implementing, enforcing, amending, or eliminating any portion of the Transgender Health Exclusion.

---

[1] These requests are subject to the Definitions and Instructions listed in Exhibits 1 and 2, and Exhibit 3, which are also attached.

3. All documents (including, but not limited to, actuarial or other financial reports, memoranda, budgets, presentations, or analyses) concerning

   a. the costs (both per annum and per service/treatment) of providing any form of treatment of gender dysphoria generally, including under any other plans maintained by You or Your other clients/customers;

   b. the fiscal impact, including potential or actual aggregate and net costs (or savings), of implementing, enforcing, amending, or eliminating any treatment of gender dysphoria;

   c. the medical necessity, safety, and efficacy (including whether a procedure is deemed experimental or cosmetic) of any treatment of gender dysphoria; and

   d. any legal or regulatory implications or requirements concerning implementing, enforcing, amending, or eliminating any treatment of gender dysphoria.

4. All internal and external documents (including but not limited to any reports, studies, medical reviews or opinions) concerning the "medical necessity" of any treatment of gender dysphoria excluded from coverage pursuant to any current or former iteration of the Transgender Health Exclusion.

5. Documents sufficient to show, from 2010 to the present

   a. the number of hysterectomies paid for by You and the Plan each year, the medical reason for the surgery, and the individual and aggregate cost of the surgeries; and

   b. the number of medically necessary cosmetic or reconstructive surgical procedures paid for by You and the Plan each year (including but not limited to chest-reconstruction surgery, vaginoplasty, or phalloplasty, or other surgery related to the

reproductive or urogenital system) the medical reason for the surgery, and the individual and aggregate cost of the surgeries.

6. Any documents (to include any formal or informal financial or budgetary or other analyses, plans, actuarial reports, or other reports or memoranda) with respect to Your administration of the Plan showing

   a. the total annual expenses (*i.e.*, the amounts paid by the Plan to medical providers) for all treatment and services provided under the Plan from 2010 to the present, including a cost breakdown of the total expenses for each type of treatment or service;

   b. the total annual amounts paid by the Defendants to pay for the Plan for Plan recipients from 2010 to the present, including an itemized breakdown of the total amounts paid, to the extent possible; and

   c. any actuarial analyses of the Plan.

**EXHIBIT 1**

**DEFINITIONS**

1.     The term "communication," as used herein, means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium.

2.     The terms "concerning," "relating to," "referring to," "arising out of," "discussing," and their cognates are to be understood in their broadest sense and each means concerning, constituting, identifying, evidencing, summarizing, commenting upon, referring to, relating to, arising out of, describing, digesting, reporting, listing, analyzing, studying, discussing, stating, setting forth, reflecting, interpreting, concerning, recording, including, negating, manifesting, containing or comprising the subject matter identified.

3.     The terms "describe" and "description," as used herein, mean to give a detailed written account or representation of the subject matter – including, but not limited to, when used with respect to any act, action, accounting, activity, audit, practice, process, occurrence, occasion, course of conduct, happening, negotiation, relationship, scheme, communication, conference, discussion, development, circumstances, service, transaction, instance, incident, or event – setting forth the following: (a) its general nature; (b) the time and place thereof; (c) a chronological account setting forth each element thereof, what such element consisted of and what transpired as part thereof; (d) the identity (as defined herein) of each person who performed any function or had any role in connection therewith (*i.e.*, speaker, participant, contributor of information, witness, etc.) or who has any knowledge thereof, together with a description of such person's function, role or knowledge; (e) the identity (as defined herein) of each document that refers thereto or that was

used, referred to or prepared in the course of or as a result thereof; and (f) the identity (as defined herein) of each oral communication that was a part thereof or referred thereto.

4. The terms "document" and "documents" shall have the broadest meaning allowable under the Rules and applicable case law, and shall include without limitation, electronically stored information and written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies and all attachments and appendices thereto. Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, applications, communications, interoffice or intraoffice correspondence, books, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries, electronic mail, texts, chats, records of telephone conversations or interviews, summaries or other records of personal conversations, minutes or summaries or other records of personal meetings and conferences, summaries or other records of meetings and conferences, summaries, entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, work sheets, drafts, graphs, maps, charts, tables, marginal notations, notebooks, telephone bills or records, bills, statements and records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, letters of credit, envelopes or folders or similar containers, vouchers, analyses, studies, surveys, transcripts of hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tapes, photographs, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic,

computer-generated, or electronically stored matter (or printouts thereof), however and by whomever produced, prepared, reproduced, disseminated, or made.

5.    "Draft(s)" shall mean any formulation, outline, sketch, conceptualization, or version of a document created prior to the final version of that document.

6.    The terms "identify," "specify" and "state" mean to refer to the subject matter by providing a detailed account or description of the subject matter, including, but not limited to, the following:

a.    when applicable to a document, to set forth in writing at a minimum and in the following order: (i) the name of the document; (ii) the nature of the document (*e.g.*, letter, contract, memorandum) and any other information (*i.e.*, its title, index or file number) which would facilitate in the identification thereof; (iii) the date the document was prepared or created; (iv) the identity of each person who performed any function or had any role in connection therewith (*i.e.*, author, contributor of information, recipient, etc.) or who has any knowledge thereof, together with a description of each such person's function, role or knowledge; (v) its subject matter and substance, or, in lieu thereof, annex a legible copy of the document to Your answers to these interrogatories; (vi) identification of all persons who are in possession of the original and any copy of the document; (vii) its present location and the identity of its present custodian, or, if its present location and custodian are not known, a descript of its last known disposition; (viii) where a document is other than a paper (*i.e.*, computer or recording tape, microfilm disk, microfiche, etc.), a full description of the tangible thing on which the information is recorded, and the device or the devices needed to read or listen to the document; and (ix) if the

document has been destroyed or is otherwise no longer in existence or cannot be found, the reason why such document no longer exists, the identity of the person(s) responsible for document no longer being in existence and the identity of the document's last custodian.

b. when applicable to a natural person, to set forth in writing at a minimum and in the following order: (i) his/her full name; (ii) his/her present and/or last known business and residence address and telephone number, or an undertaking that the person may be contacted through responding counsel; (iii) his/her present or last known business affiliation; and (iv) his/her present or last known business position (including job title and a description of job functions, duties and responsibilities);

c. when applicable to any entity or person other than a natural person, to set forth in writing at a minimum and in the following order: (i) its full name; (ii) the address and telephone number of its principal place of business; (iii) the jurisdiction under the laws of which it has been organized or incorporated and the date of such organization or incorporation; (iv) the identity of all individuals who acted and/or authorized another to act on its behalf in connection with the matters referred to; (v) in the case of a corporation, the names of its directors and principal officers; and (vi) in the case of an entity other than a corporation, the identities of its partners or principals or all individuals who acted or who authorized another to act on its behalf in connection with the matters referred to;

d. when applicable to an oral communication, to set forth in writing at a minimum and in the following order: (i) the date, time, place, manner and substance of such communication; (ii) the identity of all persons who participated in, listened to, or

had access to transcripts or summaries of such communication or copies thereof; (iii) each such person's function, role, or knowledge; and (iv) the identity of all documents which memorialize, commemorate, summarize, record or directly refer or relate, in whole or in part, to such communication.

7.      The term "including" means "including, but not limited to," and shall not be construed to limit the scope of any definition or request herein.

8.      The term "person" means any natural person, corporation, partnership, proprietorship, association, joint venture, group, governmental or public entity, or any other form or organization of legal entity, and all of their directors, officers, employees, representatives, and agents.  The term "person" specifically includes, but is not limited to, any interest or lobbying group, or any employee or representative thereof, such as the Center for Arizona Policy, the Alliance Defending Freedom, the American Legislative Exchange Council, the Christian Medical and Dental Society, and the Franciscan Alliance, Inc.

9.      "Defendants" mean Defendants State of Arizona, Arizona Board of Regents, d/b/a University of Arizona, Ron Shoopman, Larry Penley, Ram Krishna, Bill Ridenour, Lyndel Manson, Karrin Taylor Robson, Jay Heiler, Fred DuVal, Andy Tobin, and Paul Shannon and all of their predecessors and successors in interest, and all of their representatives, attorneys, and agents.  The Defendant, State of Arizona, includes the current and prior administrations of the Office of the Arizona Governor, the Arizona Attorney General's Office, as well as current and former members and employees of the Arizona Legislature, in their official capacities.

10.     The "Plan" means any current or prior version or iteration of the State of Arizona's self-funded health plan controlled by the Arizona Department of Administration.

11.     The "Transgender Healthcare Exclusion" means the policy contained within the Plan to exclude from coverage "gender reassignment surgery," and any and all current or prior iterations of any policy in the Plan that excludes or excluded coverage for any additional medical or surgical treatment or services to treat gender dysphoria, including the earliest iteration of the Plan's Transgender Healthcare Exclusion.

12.     The term "treatment for gender dysphoria" refers to any medical, surgical, or behavioral treatment or services to treat gender dysphoria, gender transition, transition-related care, gender affirmation, or gender reassignment.

13.     "You" and "Your" mean UnitedHealthcare Insurance Company and its present and former parents, subsidiaries, affiliates, related entities, predecessors, successors, and assignees, and any of their present and former officers, directors, employees, partners, agents, representatives or any other Person acting, or purporting to act, on behalf of any of them, including but not limited to Stephanie Martin (Strategic Client Executive, Client Management, UnitedHealthcare National Accounts), Heather Gallegos (Senior Account Manager, Client Management, Government, Labor & Education), Amy Clatterbuck (Account Vice President, Client Management, UnitedHealthcare National Accounts), and Dr. Thomas Biuso (Attendee of the Arizona Department of Administration Benefit Services Division Medical Directors Meetings).

**EXHIBIT 2**

**INSTRUCTIONS**

1.      If You object to any specific request in whole or in part, state with particularity each objection, the basis for it, and the categories of information to which the objection applies. You must respond to any portion of a request to which You do not object.

2.      If You fail to produce a document or provide information requested on the grounds that such document or information is no longer in Your possession, custody, or control, You shall state what disposition was made of that document or information, including, when applicable, the circumstances of any loss or destruction of such document or information.

3.      Each document requested should be produced in its entirety without deletion or redactions, except as subject to applicable privileges, regardless of whether You consider the entire document to be responsive to these requests or relevant to the claims.

4.      You are required to respond to this Request by drawing upon all materials in Your possession, custody, or control. These sources include, but are not limited to, Your employees, successors, assigns, agents, advisors, accountants, experts, representatives, attorneys and/or consultants, or anyone else acting or purporting to act on Your behalf or remote computing system (such as SharePoint or Gmail) with whom You maintain or maintained an account.

5.      If any document requested is withheld on the grounds of privilege or otherwise, You shall provide a log with the following information relating to each document or portion of a document withheld:

        a.      the kind of document (e.g., memorandum, letter, notes, etc.);

        b.      the date of the document or, if no date appears thereon, the approximate
                date the document was prepared;

        c.      the identity of the author(s);

- 13 -

    d.     the identity of the Person(s) to whom the document is addressed;

    e.     the identity of any other recipients of the document that appear on the document as having received a copy;

    f.     the identity of any attachments to the documents and whether the attachments have been produced;

    g.     the subject matter or the information contained in the document;

    h.     the nature of the privilege or immunity asserted, including the attorney and client involved, and the grounds for withholding the document; and

    i.     the number of pages of the document.

If You fail to set forth a sufficient factual basis for the assertion of any claim of privilege or protection, then any arguable claim or privilege or protection shall be waived. Compliance with the above instructions is not to be construed as an admission by Plaintiff that such privilege or protection is valid, and Plaintiff reserves his right to challenge any purported claim of privilege or protection.

    6.    If You believe that only a portion of a document is protected by an applicable privilege, the non-privileged portion shall be produced with the allegedly privileged portion redacted and indicated as such. You shall provide the information set forth in Instruction No. 5 for each such redaction. Any attachment to an allegedly privileged document shall be produced unless You also contend that the attachment is privileged, in which case the information required in Instruction No. 5 shall be provided separately for each such attachment.

    7.    If any documents requested were at one time in existence but no longer are, please so state, specifying in detail for each document: (a) the document type, (b) a specific description of the subject matter of the document, (c) the date upon which the document ceased to exist, (d)

the identity of each Person having knowledge of the circumstances under which the document ceased to exist, and (e) the identity of each Person having knowledge or who had knowledge of the contents thereof.

8.     Each Request for Production set forth herein is a request for the original (or copy when the original is not available) of the final version of such document(s), as well as non-identical copies by reason of notations or markings.

9.     More than one Request for Production set forth herein may call for production of the same document. The presence of such duplication is not intended and shall not be interpreted to narrow or limit in any way the scope of each individual Request for Production set forth herein.

10.    The documents or tangible things produced in response hereto shall be segregated and clearly marked or labeled so as to correspond to the specific production request to which such documents or tangible things are responsive and are being produced.   Alternatively, such documents or tangible things shall be produced as they are kept in the usual course of business, including the production of files from which such documents or tangible things are taken.

11.    Information shall not be withheld merely because such information is stored electronically (e.g., word processing files, electronic mail, databases, accounting information, and spreadsheets).

12.    In addition to physical documents or objects, each Request for Production set forth herein specifically calls for the production of electronic or magnetic data responsive to the Request, including data that has been deleted.

13.    Each Request for Production set forth herein calls for the following methods of production:

a.   *Hard Copy Documents.* (i) All black and white hard copy documents will be scanned and produced in electronic form. The hard copy documents shall be converted to a single page TIFF images and produced following the same protocol set forth herein or otherwise agreed to by the parties. (ii) Images of all file labels, file headings, and file folders associated with any hard copy document will be produced with the images of the hard copy documents. (iii) Document breaks for paper documents shall be based on Logical Document Determination (or "LDD") rather than on physical document breaks. (iv) The database load file shall include the following fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, REDACTED, and CDVOLUME.

b.   *Metadata Fields and Processing.* Each of the metadata and coding fields set forth in Exhibit 3 that can be extracted shall be produced for that document. The parties are not obligated to manually populate any of the fields in Exhibit 3 if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct.

c.   *TIFFs.* Single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Single page TIFF images should be named according to the unique bates number, followed by the extension ".TIF". Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).

d.   *Text Files.* For each document originating in electronic format, a separate text file containing the full text of each document should be provided with a file with the

TIFF images and a file with the document metadata. Text of native files should be extracted directly from the native file. The text file should be named according to the unique bates number, followed by the extension ".TXT." The parties agree that the full text and/or OCR of any document will not be contained within a database load file, but rather as a standalone file with each text file containing the text for an entire single document.

e.   *Database Load Files.* An ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (*e.g.*, Concordance). The first line of each text file must contain a header row identifying each data field by name. Each document within the database load file must contain the same number of fields as identified in the header row.

f.   *Cross-Reference Image File Registration.* An image load file that can be loaded into commercially acceptable production software (*e.g.*, Opticon, iPro). Each TIFF in a production must be referenced in the corresponding image load file. An exemplar load file format is below.

ABC0000001,PROD001,\\IMAGES\001\ABC0000001.tif,Y,,,2
ABC0000002,PROD001,\\IMAGES\001\ABC0000002.tif,,,,
ABC0000003,PROD001,\\IMAGES\001\ABC0000003.tif,Y,,,1

g.   *Bates Numbering.* All images must be assigned a unique and sequential Bates Number. Each party agrees to use the same Bates Numbering format through its entire production unless a new Bates format is necessary, at which point the party using the new Bates Numbering format will inform the other party of the change.

h.   *Protective Order Designations.* Any document(s) determined by the producing party to fall within the scope of a protective order shall have the appropriate level of designated language (*i.e.*, CONFIDENTIAL, ATTORNEYS' EYES ONLY,

OUTSIDE COUNSEL RESTRICTED, etc.) afforded by the protective order endorsed on each TIFF image of said document(s).

i.   *Native File Productions.* The parties agree that when producing a native file, they will include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number and state "See Native Document" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the document with its original file extension. The filename field produced in the production load file that reflects the original metadata should maintain the original file name. If a native file falls within the scope of a protective order (*see* paragraph (h), above), then the appropriate designation is to be included in the filename along with the assigned Bates number (*i.e.*, ABC000001_CONFIDENTIAL.xls).

j.   *Microsoft Office files, WordPerfect, and other standard documents (e.g., Google Docs and PDF documents).* MS Office files, WordPerfect, other standard documents, such as PDF documents, will be converted to single-page TIFF images and produced consistent with the specifications herein. If the document contains comments or tracked changes, then the TIFF images shall be generated to include the comments or track changes contained in the file.

k.   *Email and attachments.* E-mail and attachments should be converted to single-page TIFF images and produced consistent with the specifications provided herein. Attachments shall be processed as separate documents, and the text database load file shall include a field in which the producing party shall identify the production range of all attachments of each e-mail.

l.    *Microsoft PowerPoint and other Presentation Files.* The parties shall process presentations (*e.g.*, MS PowerPoint, Google Presently) to include hidden slides and speaker's notes by imaging in a way that both the slide and the speaker's notes display on the TIFF image.

m.    *Spreadsheets.* The parties shall produce spreadsheets (*e.g.*, MS Excel, Google Trix) in native format where available. *See paragraph (i) above.* If a spreadsheet requires redaction, the parties will use native file redaction applications (*e.g.*, Blackout).

n.    *Good Cause for Additional Native Files.* If good cause exists to request production of specified files in native format, then the party may request such production and provide an explanation of the need for native file review.

o.    *Other Documents or Data.* If production of certain structured or other electronic data that is not easily converted to static TIFF images, such as databases, CAD drawings, GIS data, videos, audio files, websites, social media, then the parties will meet and confer to discuss an appropriate form of production.

p.    *Social media and other web-based content.* The production of social media or other web-based content should be converted to single-page TIFF images and produced consistent with the specifications provided herein. If the social media and/or web-based content cannot be produced in single-page TIFF images, then the parties shall meet and confer to discuss a form of production. Further, the parties will also confer regarding the specific web location of the social media or other web-based content and agree upon the available metadata that can be produced therewith.

q.    *Color Documents.* Parties will produce documents in black and white, unless to do so would alter or obscure the substance of the document. A party may request that

a reasonable number of documents be produced in a color format upon review of the other party's production.in single page JPEG format.

r.     *Redactions.* In the event that a document requires redaction, the parties agree the native file, if applicable, will be excluded from the production.  In addition, any redacted text will be omitted from the full text and/or OCR, and any corresponding metadata fields from the production. The TIFF image will readily identify the redactions.

s.     *Production Media.* Documents and electronically stored information ("ESI") shall be produced on optical media (CD or DVD), external hard drives, or via an FTP site, or similar, readily accessible electronic media.

t.     *Encryption.* Industry-standard encryption tools and practices must be used when transferring data between parties. Passwords must be at least 8 characters with a mix of character sets and sent in a separate communication from the encrypted data. Among other places, You shall search for electronic documents stored on all servers, networks, hard drives, desktop computers, notebook computers, personal digital devices, all back-up storage media or devices, and with any third-party cloud providers. Each responsive Document shall be produced in its entirety. In producing documents, if an identical copy appears in more than one Person's files, You shall either (1) produce each copy or (2) provide the names of each Custodian in the "Custodian" field.

14.     Documents not otherwise responsive to these requests shall be produced if such documents concern the documents that are responsive to the requests or if such documents are attached to documents called for by these requests and constitute routing slips, transmittal memoranda, letters, emails, comments, evaluations, or similar materials.

15.     Your response to these Requests for Production should not be delayed if they cannot be fully complied with by the date set for the presentation of documents for any reason, including, but not limited to, the assertion of any privilege, interposition of any objection, ongoing investigation, or current unavailability of documents. All available documents should be produced on the date set for presentation, and any unavailable documents should be produced as soon as they become available.

16.     These Requests for Production are deemed to be continuing in nature so as to require that You supplement Your response if You obtain or discover additional information or documents between the time of the initial response and the time of hearing or trial herein. This paragraph shall not be construed to alter any obligation to comply with all other instructions in these Requests for Production.

17.     Plaintiff hereby expressly reserves the right to supplement these Requests for Production and to propound new requests, to the extent permitted by applicable law and rules.

18.     In construing any request, instruction or definition, the singular form of a word shall include the plural and the plural form of a word shall include the singular.

19.     The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

20.     The terms "all" and "each" shall be construed as all and each, as necessary to bring within the scope of the request all information that might otherwise be construed to be outside of its scope.

21.     Plaintiff is willing to meet and confer in good faith with respect to any objections set forth by You.

## **RELEVANT TIME PERIOD**

1.      The relevant Time Period for these Requests for Production shall be through the date of production, unless otherwise specified.

**EXHIBIT 3**

**METADATA FIELDS**

The production load files produced by You must contain the following metadata fields. Fields with an asterisk (*) are not required to be populated if they otherwise contain redacted material.

| Field Name | Field Description |
|---|---|
| **BEGBATES** | The first Bates number as stamped on the production image |
| **ENDBATES** | The last Bates number as stamped on the production image |
| **BEGATTACH** | The first Bates number of the first document in a family |
| **ENDATTACH** | The last Bates number of the last document in a family |
| **ATTACH COUNT** | The number of attachments in a family |
| **CUSTODIAN** | The individual or organization (e.g. company name) from whom the document was collected |
| **RECORD TYPE** | The type of document (e.g., Email, Attachment, Edoc) |
| **FILE EXTENSION** | The file extension of the document (e.g., .pdf, .doc, .xls, etc.) |
| **PATH*** | The full file, folder, or directory structure from which the document was collected. |
| **HASH MD5** | The MD5 or SHA-1 hash value |
| **NATIVE PATH*** | The path to the native file produced (e.g., Excel files) |
| **SUBJECT*** | The subject line of an email |
| **DATE SENT** | The date an email was sent (format: MM/DD/YYYY) |
| **TIME SENT** | The time an email was sent |
| **TIME RECEIVED** | The time an email was received |
| **FAMILY_DATE** | The date of the parent document of the family to which the document belongs |
| **TO** | The name(s) and email address(es) of the recipient(s) in the "To" line of an email |
| **FROM** | The name and email address of the sender of an email |
| **CC** | The name(s) and email address(es) of the recipient(s) in the "CC" line of an email |
| **BCC** | The name(s) and email address(es) of the recipient(s) in the "BCC" line of an email |

| | |
|---|---|
| **AUTHOR** | Any value populated in the author field in the file properties of an electronic document |
| **TITLE\*** | The title of an electronic document. |
| **FILE NAME\*** | The filename of an electronic document |
| **FILE LENGTH** | The size of an electronic document in bytes |
| **DATE LAST MODIFIED** | The date an electronic document was last modified (format: MM/DD/YYYY) |
| **TIME LAST MODIFIED** | The time an electronic document was last modified |
| **CREATE DATE** | The date an electronic document was created (format: MM/DD/YYYY) |
| **CREATE TIME** | The time an electronic document was created |
| **PAGE COUNT** | The number of pages in a document |
| **TIME ZONE** | Eastern Standard Time |