1   **Victoria Lopez – 330042**
2   **Christine K Wee – 028535**
    **ACLU FOUNDATION OF ARIZONA**
3   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85014
4   Telephone: (602) 650-1854
5   Email**:** vlopez@acluaz.org
    Email**:** cwee@acluaz.org
6
7   **Joshua A. Block***
    **Leslie Cooper***
8   **AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
    125 Broad Street, Floor 18
9   New York, New York 10004
10  Telephone: (212) 549-2650
    E-Mail: jblock@aclu.org
11  E-Mail: lcooper@aclu.org
    *Admitted pro hac vice*
12
13  **Wesley R. Powell***
    **Matthew S. Freimuth***
14  **Jordan C. Wall***
    **Victoria Sheets***
15  **Justin Garbacz***
    **WILLKIE FARR & GALLAGHER LLP**
16  787 Seventh Avenue
17  New York, New York 10019
    Telephone: (212) 728-8000
18  E-Mail: wpowell@willkie.com
19  E-Mail: mfreimuth@willkie.com
    E-Mail: jwall@willkie.com
20  E-Mail: vsheets@willkie.com
    E-Mail: jgarbacz@willkie.com
21
22  *Admitted pro hac vice*
23  *Attorneys for Plaintiff Russell B. Toomey*
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Russell B. Toomey,**<br><br>          Plaintiff,<br><br>v.<br><br>**State of Arizona; Arizona Board of Regents, D/B/A University of Arizona**, a governmental body of the State of Arizona; et al.,<br><br>          Defendants. | Case No.19-cv-00035-TUC-RM (LAB)<br><br>**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

Plaintiff, Dr. Russell B. Toomey, on behalf of himself and the certified Classes ("Plaintiff"), hereby submits through the undersigned counsel the following Memorandum of Law in support of his Motion For Entry Of An Order Compelling The Production Of Documents (the "Motion") from the State Of Arizona, Andy Tobin, and Paul Shannon (collectively, the "State Defendants") in response to Plaintiff's First Request For Production Of Documents And Tangible Things, dated December 8, 2020 ("Request for Production," "Request" or "RFP").  This Motion and exhibits hereto are accompanied by the Transmittal Declaration of Christine K. Wee ("Wee Decl."), and Plaintiff's LRCiv 7.2(j)-(k) and 37.1 Statement ("Plaintiff's LRCiv Statement").

1

**PRELIMINARY STATEMENT**

Plaintiff's Request for Production seeks documents and information concerning the State Defendants' rationale for maintaining an exclusion for "gender reassignment surgery" (the "Exclusion") in the State of Arizona's self-funded health care plan (the "Plan"). As this Court has previously recognized, documents regarding "the thought processes and state of mind of the decision makers behind the exclusion . . . bear directly on the issue of intent," which is potentially an "indispensable element of Toomey's causes of action."  (Doc. 187, p.5)

State Defendants have withheld certain documents responsive to Plaintiff's requests and relevant to the issue of intent on the grounds that these documents are protected from disclosure by the attorney-client privilege. The most recent iteration of the State Defendants' Privilege Log, served on May 10, 2021, asserts the attorney-client privilege with respect to eighty-five documents. (*See* Wee Decl. Ex. 9) Yet, State Defendants have waived attorney-client privilege with respect to legal advice they considered on the legality of the Exclusion, *i.e.*, whether ADOA was required by law to cover gender reassignment surgery. They have done so in two ways.

*First*, State Defendants have waived the attorney-client privilege by asserting and relying on legal advice as a defense to the charge that discriminatory intent did not motivate their decision to maintain the Exclusion, effectively placing this legal advice at issue. When a party relies on advice of counsel to defend or explain its conduct, it cannot assert the attorney-client privilege to shield that advice from discovery. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992). By (i) using legal advice as an explanation for its rationale for the Exclusion, but (ii) withholding from Plaintiff the advice it allegedly relied on in maintaining the Exclusion, the State Defendants improperly attempt to use advice of counsel as both a sword and a shield. *Id.*

*Second*, and alternatively, State Defendants have waived attorney-client privilege by disclosing the substance of the legal advice. Voluntary disclosure of the content of a privileged attorney communication constitutes "waiver of the privilege as to all other such

communications on the same subject." *Weil v. Inv./Indicators, Research and Mgt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). State Defendants have disclosed the legal advice that was allegedly provided to them regarding the legality of the Exclusion to both (i) the Governor's Office and (ii) the Plaintiff. Either disclosure is sufficient to effect a waiver.

## BACKGROUND

### A. The Factual Disputes At Issue In This Case

Plaintiff alleges that State Defendants' categorical exclusion of medically necessary gender-affirming surgery from the health plan for state employees violates Title VII and the Equal Protection Clause. In their Joint Status Report dated October 23, 2020, the parties agreed that one of the disputed factual questions in this case is "[w]hether the decision to exclude gender reassignment surgery in the Health Care Plan was actually motivated by a legitimate governmental interest." (Doc. 128, p. 11) Although Plaintiff argues that the Exclusion is facially discriminatory and violative of Title VII and the Equal Protection Clause (*See* generally Doc. 86), Magistrate Judge Bowman's Report & Recommendation regarding Plaintiff's Motion for a Preliminary Injunction also concluded that Plaintiff must prove discriminatory intent by the State Defendants to succeed on his claims. (Doc. 134, pp. 6-9) It is unsettled what standard the Court will ultimately apply to Plaintiff's claims, and therefore discovery about State Defendants' intent "concerns an indispensable element of Toomey's causes of action" and such "documents remain relevant." (Doc. 187, p. 5)

### B. Defendants' Withholding of Documents Based on Attorney-Client Privilege

On December 8, 2020, Plaintiff served his Request for Production on State Defendants. (Wee Decl., Ex. 2) Request Nos. 1, 3, and 9 specifically sought documents and information concerning the Exclusion, and the decision-making behind it. On May 10, 2021, State Defendants furnished their most up-to-date privilege log ("Privilege Log", Wee Decl. Ex. 9) The Privilege Log withheld eighty-five documents on the basis of attorney-client privilege.

## C.  State Defendants Affirmatively Place Legal Advice At Issue

### i.   State Defendants' Interrogatory Responses

Throughout discovery, State Defendants have asserted that they maintained the Exclusion based on advice of counsel about its legality. In June 2020, Plaintiff propounded interrogatories asking State Defendants to "identify and describe all reasons why" the State of Arizona maintains the Exclusion. (Wee Decl., Ex. 4, No. 1) State Defendants responded that:

> The State of Arizona's self-funded health plan excludes coverage for gender reassignment surgery <u>because</u> the State concluded, under the law, that it was not legally required to change its health plan to provide such coverage under either Title VII of the Civil Rights Act or under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

(Wee Decl., Ex. 5 at No. 1 (emphasis added)) Thus, State Defendants independently put at issue their understanding of the legality of the Exclusion at the time of decision-making[1] as a rationale for maintaining the Exclusion.[2]

Plaintiff's Interrogatory No. 4 asked State Defendants to "[i]dentify all persons who participated in formulating, adopting, maintaining, reviewing, approving, or deciding to continue" the Exclusion.  (Wee Decl., Ex. 4, No. 4) State Defendants identified six individuals, three of whom are lawyers for the State, indicating that counsel were central to the decision-making regarding the Exclusion.  ((Wee Decl., Ex. 5, No. 4)) Plaintiff's Interrogatory No. 7 asked State Defendants to identify "all research, studies, data, reports, publications, testimony, or other documents considered, reviewed, or relied on by

---

[1]   State Defendants' current position that the Exclusion is lawful is distinct from the understanding that the State Defendants had at the time of decision-making, which occurred in 2016. Because the State Defendants have pointed to their alleged understanding that the Exclusion was lawful in 2016 as a rationale for the Exclusion, Plaintiff in fairness must be able to probe the veracity of the legal advice relied upon.

[2]   As Plaintiff is unable to review the State Defendants' communications with counsel however, Plaintiff also has reason to be skeptical of State Defendants' actual understanding of the legality of the Exclusion, and whether that understanding in fact motivated the decision to maintain the Exclusion in 2016.

Defendants relating to the [] Exclusion. . . ." (Wee Decl., Ex. 4, No. 7)  State Defendants listed two memoranda they relied on in making this decision—one from Marie Isaacson to Mike Liburdi, dated August 3, 2016 regarding "Affordable Care Act § 1557," and another from outside legal counsel Fennemore Craig, P.C.to Marie Isaacson dated July 20, 2016, regarding "Summary and Implications of § 1557 and Transgender Coverage Requirements"—both of which, according to the State Defendants, "are covered by the attorney-client privilege."  (Wee Decl., Ex. 5, No. 7)

### ii.  Deposition Testimony From State Defendants Witnesses

Plaintiff also inquired about State Defendants' rationale for the Exclusion in depositions of witnesses disclosed by State Defendants as having knowledge regarding the matter, including in depositions of Ms. Marie Isaacson, Director of the Benefits Service Division of the ADOA from 2015-2018, and Mr. Scott Bender, Plan Administration Manager of the ADOA from 2015-Present.[3]  When counsel for Plaintiff and the Arizona Board of Regents ("ABOR") questioned Ms. Isaacson and Mr. Bender regarding the rationale for the Exclusion, both witnesses consistently pointed to advice of counsel as a rationale for maintaining the Exclusion.  Indeed, they testified that the key reason for maintaining the Exclusion was because State Defendants were advised that it was lawful. (Wee Decl., Ex. 6 at 31:8-32:8 (testifying that  "the deciding factor" for maintaining the Exclusion was "[w]hat was required by law for us to cover," and that "legal counsel" were among the "group who made the decision"); *id*., Ex. 7 at 167:12-168:3 (testifying that the "primary reason" for maintaining the Exclusion was that ADOA understood that it was "not required" by law to cover the benefit))

---

[3]  Wee Decl., Ex. 5, No. 2 (identifying, among others, Ms. Isaacson and Mr. Bender as "persons with knowledge" of "the reasons" for maintaining the Exclusion).

**D. State Defendants Voluntarily Disclosed Legal Advice**

    **i.  *Disclosure of Legal Advice to Governor's Office In 2016***

As noted above, State Defendants have asserted that they relied on two legal memoranda, dated August 3, 2016 ("August 2016 Memorandum") and July 20, 2016 ("July 2016 Memorandum"), in making the decision to maintain the Exclusion. (Wee Decl., Ex. 5, No. 7) State Defendants identified the August 2016 Memorandum as being submitted to the Governor's Office. (Wee Decl., Ex. 5, No. 7 ("Memorandum from Marie Isaacson to Mike Liburdi, General Counsel at the Governor's Office") Deposition testimony corroborates that both memoranda were shared with the Governor's Office in 2016. (Wee Decl., Ex. 6 at 39:8-17 (stating that written legal advice was shared with Governor's Office prior to meeting in 2016 where Exclusion was decided on)) Further, Ms. Isaacson disclosed the content of this legal advice to Ms. Christina Corieri, a representative of the Governor's Office, in telephone calls. (*Id*. at 42:12-18)

    **ii.  *Disclosure of Legal Advice During Isaacson Deposition***

Additionally, during her March 26, 2021 deposition, Ms. Isaacson independently broached the subject of the legal advice that ADOA received when asked whether she had made any professional or personal recommendation on whether to maintain the Exclusion. (*Id.* at 18:16-25 ("No. . . .  We sought legal counsel regarding what was required.")) Ms. Isaacson then voluntarily disclosed, <u>without objection</u> from State Defendants' counsel, the substance of the legal advice provided to State Defendants regarding the Exclusion in 2016. Specifically, Ms. Isaacson disclosed that State Defendants were advised by counsel that "some services" were required to be covered, but gender reassignment surgery in particular was "not required to be covered."  (*Id.* at 19:6-24)

**E. Parties Meet And Confer**

On April 28, 2021, Plaintiff sent State Defendants a letter advising them that State Defendants had waived attorney-client privilege with respect to legal advice they received regarding the legality of the Exclusion by both (i) placing the legal advice at issue and (ii) disclosing the legal advice. (Wee Decl. Ex. 8) On May 5, 2021, counsel for Plaintiff met and

1   conferred with counsel for State Defendants, who advised counsel for Plaintiff that they
2   disagreed with the arguments raised in Plaintiff's April 28 letter. (Wee Decl. Ex. 1,
3   Declaration of Jordan C. Wall ("Wall Decl.") ¶¶ 5-6) During this meet and confer, counsel
4   for Plaintiff also argued that State Defendants' sharing of legal advice with the Governor's
5   Office amounted to a waiver. (*Id.* at ¶ 7)

6       On May 10, 2021, State Defendants sent Plaintiff an email, again reiterating that they
7   did not believe any wavier had occurred. (Wee Decl. Ex. 10) State Defendants argued that
8   sharing legal advice with the Governor's Office did not amount to waiver because such
9   communications were protected by the common interest doctrine. (*Id.*)  On May 14, 2021,
10  Plaintiff responded by email, informing State Defendants that it generally disagreed with
11  their positions, and that given the parties' differences, it expected to seek this Court's
12  intervention. (Wee Decl. Ex. 12) At a subsequent meet and confer on May 18, 2021, State
13  Defendants agreed that the parties had reached an impasse. (Wall Decl. ¶ 12)

14                              **ARGUMENT**

15      A party "may obtain discovery regarding any nonprivileged matter that is relevant to
16  any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P.
17  26(b)(1); *Ocean Garden Prods. Inc. v. Blessings Inc.*, No. CV-18-00322-TUC-RM, 2020
18  WL 4284383, at *1-2 (D. Ariz. July 27, 2020) (Márquez, J.) (discovery may be compelled
19  when a respondent unjustifiably objects to the production of responsive documents).
20  Attorney-client privilege protects only "confidential communications between attorneys and
21  clients, which are made for the purpose of giving legal advice."  *United States v. Sanmina*
22  *Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). Because the privilege "impedes full and free
23  discovery of the truth, the attorney-client privilege is strictly construed."  *Weil v.*
24  *Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). The burden of
25  establishing attorney-client privilege "rests not with the party contesting the privilege, but
26  with the party asserting it," as is the case with all evidentiary privileges claimed. *Id.* at 25.
27  One of the elements that the party asserting attorney-client privilege must prove is that it has
28  not waived the privilege. *Id.; Sanmina Corp.*, 968 F.3d at 1116.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  STATE DEFENDANTS HAVE WAIVED ATTORNEY-CLIENT PRIVLEGE BY ASSERTING THE ADVICE OF COUNSEL TO DEFEND THEIR RATIONALE FOR THE EXCLUSION

The doctrine that "protects attorney-client communications may not be used both as a sword and a shield." *Melendres v. Arpaio*, CV-07-2513-PHX-GMS, 2015 WL 12911719, at *2 (D. Ariz. May 14, 2015) (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (internal adjustments omitted)). A party asserting the advice of legal counsel to defend its motivation or intent in taking certain action, cannot then assert the attorney-client privilege to shield that advice from discovery. *Chevron Corp.*, 974 F.2d at 1162-63 (finding defendant waived attorney-client privilege by relying on legal advice to support reasonableness of actions). The Ninth Circuit has adopted a three-prong test to evaluate whether a party has waived the attorney-client privilege due to the offensive use of the privilege:

> First, the court considers whether the party is asserting the privilege as the result of some affirmative act, such as filing suit . . . Second, the court examines whether through this affirmative act, the asserting party puts the privileged information at issue. . . . Finally, the court evaluates whether allowing the privilege would deny the opposing party access to information vital to its defense.

*United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (internal citations and quotations omitted); *see also Chevron Corp.*, 974 F.2d at 1162-63. Here, all three prongs are satisfied.

*First*, State Defendants have affirmatively asserted advice of counsel in defense of their motivation for maintaining the Exclusion. State Defendants affirmatively cited their understanding that ADOA was not required to cover gender reassignment surgery as a rationale for the Exclusion in their response to written discovery. (Wee Decl., Ex. 5 at No. 1) State Defendants' responses to written discovery also assert that counsel was centrally involved in the now-in-question decision-making regarding the Exclusion. (*Id.* at No. 4) Further, testimony from witnesses identified and offered by State Defendants who were directly involved in the decision-making on the Exclusion, specifically Ms. Isaacson and

Mr. Bender, supports that the legal advice of counsel on the legality of the Exclusion was a predominate, if not the sole, rationale for maintaining the Exclusion. (Wee Decl., Ex. 6 at 31:8-32:8; *id*., Ex. 7 at 167:12-168:3) As such, State Defendants have affirmatively placed legal advice, and their alleged understanding of their legal obligations, front and center in the present dispute over intent.

Contrary to the State Defendant's assertion, (Wee Decl., Ex.10), a party need not formally plead an advice of counsel defense in order to affirmatively place legal advice at issue. Courts in the Ninth Circuit have found that a party can affirmatively place legal advice at issue during discovery through witness testimony or a declaration, where the party—in *substance* if not in form—relies on advice of counsel to defend or explain its actions. *See Chevron,* 974 F.2d at 1162-63 (finding that defendant placed advice at issue during discovery when it submitted a declaration saying that its decision to make a particular investment was reasonable because it was made based on advice of counsel); *Melendres*, 2015 WL 12911719 at *4 (finding that privileged information was placed at issue by defendant "testifying about its reliance on advice of defense counsel.") Moreover, the State Defendant's form-over-substance argument—that a party must plead an advice of counsel defense in order to put legal advice at issue—has been flatly rejected by the Arizona Supreme Court, which reasoned that neither Arizona state nor federal jurisprudence support such a restriction. *See State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169, 1175-77 (Ariz. 2000) (citing federal and Arizona case law on wavier of attorney-client privilege and holding that an express advice of counsel defense is not required to waive the privilege).

*Second*, State Defendants' affirmative reliance on legal advice as a rationale for maintaining the Exclusion places otherwise privileged information squarely at issue in the present dispute regarding intent behind the Exclusion. Where a party explains the motivation for its conduct by maintaining that it believed its actions were legal, it affirmatively places its "knowledge of the law and the basis for [its] understanding of what the law requires in issue." *Chevron*., 974 F.2d at 1162 (internal quotations omitted).

9

1   The Ninth Circuit's decision in *Chevron* is instructive. In *Chevron*, the plaintiff's
2   claims centered around the defendant's motivation for entering into an investment,
3   specifically whether the defendant intended to obtain control over plaintiff at the time of the
4   relevant investment. *See id.* at 1157. The defendant asserted—by submitting a declaration
5   during discovery—that its investment was reasonable and not intended to obtain control of
6   the plaintiff "because it was based on the advice of counsel." *Id.* at 1162-1163. The Ninth
7   Circuit held that, by affirmatively relying on legal advice to explain the intent of its action,
8   the defendant had "put[] at issue the [legal] advice it received," and thus waived the attorney-
9   client privilege. *Id.*

10   Similarly, State Defendants' affirmative claim that the Exclusion is non-
11   discriminatory because they understood the Exclusion to be lawful at the time it was
12   implemented based on the advice of counsel necessarily puts at issue the State Defendant's
13   actual understanding of the lawfulness of the Exclusion at the time of decision-making. *See*
14   *id.* In order to be able to evaluate the veracity of the State Defendants' allegations regarding
15   their understanding of the law as a rationale for the Exclusion, Plaintiff and the Court must
16   be able to see the advice State Defendants considered in maintaining the Exclusion. State
17   Defendants "cannot invoke the attorney-client privilege to deny [Plaintiff] access to the very
18   information that [Plaintiff]" needs in order to evaluate State Defendants' purported rationale.
19   *See id.* at 163.

20   *Third*, the information being withheld by State Defendants is vital to the case, as it
21   goes to the heart of State Defendants' rationale for maintaining the Exclusion. This Court
22   has recently recognized that the issue of State Defendants' rationale for the Exclusion
23   remains a live and critical one. (Doc. 187, at 5) The information being withheld is especially
24   critical in the present dispute, because State Defendants rely almost exclusively on advice
25   of counsel in explaining their rationale for the Exclusion.[4]  Fairness strongly supports that

26

27   _____
     [4]   State Defendants cite cost as another non-discriminatory basis for maintaining the
28         Exclusion, but the salience of this rationale has been undermined by the State's own
           witnesses. (*See, e.g.*, Wee Decl., Ex. 6 at 31:8-15 (Marie Isaacson testifying that cost

State Defendants not be allowed to withhold documents and communications regarding this legal advice. *See Arizona ex rel. Goddard v. Frito-Lay, Inc.,* 273 F.R.D. 545, 557 (D. Ariz. 2011) (finding that out of fairness, a government agency cannot "bolster" a determination it makes by citing a legal conclusion, "and at the same time claim the attorney-client privilege in how it arrived at the conclusion."); *Chevron*, 974 F.2d at 1162-63; *Melendres*, 2015 WL 12911719 at *4; *Amlani*, 169 F.3d at 1196.

## II.   STATE DEFENDANTS HAVE WAIVED ATTORNEY-CLIENT PRIVLEGE BY DISCLOSING ADVICE Of COUNSEL

Alternatively, State Defendants waived the attorney-client privilege by (1) disclosure to the Arizona Governor's Office in 2016 and (2) disclosure during Ms. Isaacson's March 2021 deposition, without objection from counsel.

### A. Waiver By Sharing Legal Advice With Governor's Office

"[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege." *Sanmina Corp*., 968 F.3d at 1116 (internal citations omitted). Here, the State Defendants waived the attorney-client privilege when they voluntarily shared privileged information with the Governor's Office regarding the Exclusion, both through sharing the July 2016 Memorandum and the August 2016 Memorandum, as well as discussing such advice telephonically and during the October 2016 meeting. State Defendants have maintained throughout this litigation that the Governor's Office is a third party, distinct from ADOA, and even directed Plaintiff to serve a third-party subpoena to obtain documents from the Governor's Office. (Wee Decl., Ex. 2 at No. 8, objecting to production of documents in possession of Governor's Office) To that end, the State Defendants and the Governor's Office retained separate counsel with respect to this litigation—implying that the two entities understand themselves as separate, with distinct, incongruent interests regarding the

---

was not "the driving factor" in ADOA's decision, and that instead legal advice that ADOA was not required to cover gender reassignment surgery was the principal rationale); *Id.*, Ex. 7 at 167:12-168:3 (Scott Bender testifying that cost was secondary, and that advice about what ADOA was required or not required to cover was the primary basis of ADOA's decision))

1  Exclusion.

2      State Defendants have also incorrectly argued that the common interest doctrine

3  protects their sharing of privileged information with the Governor's Office, preventing any

4  waiver. (Wee Decl., Ex. 10) The common interest doctrine only applies however "when

5  attorneys exchang[e] confidential communications from clients who are or potentially may

6  be codefendants or have common interests in litigation." *Sapphire Sales Sols., LLC v. Best

7  W. Intl., Inc*., CV-12-01538-PHX-ROS, 2013 WL 12284534, at *2 (D. Ariz. June 27, 2013)

8  (emphasis added). The shared material must also be made in pursuit of some joint strategy—

9  whether written or unwritten. *In re Pac. Pictures Corp.,* 679 F.3d at 1129 (9th Cir. 2012).

10  State Defendants have offered no evidence that either they or the Governor's Office had

11  contemplated any imminent or potential litigation when they exchanged privileged

12  information evaluating the Exclusion in 2015/16, or even soon after. Ms. Isaacson, who

13  testified that she was present during conversations with the Governor's office, specifically

14  stated that discussions with the Governor were not related to any lawsuit, but instead

15  concerned "coverage of transgender benefits."  (Wee Decl., Ex. 6 at 72:16-22; *id.* 179:24-

16  180:1) This litigation itself was not filed until much later, on January 3, 2019.

17      Even if litigation had been contemplated, State Defendants' and the Governor's

18  Office's supposed shared interest in the outcome of this litigation alone does not warrant

19  application of the common interest doctrine. *In re Pac. Pictures Corp.*, 679 F.3d at 1129

20  ("[A] shared desire to see the same outcome in a legal matter is insufficient to bring a

21  communication between two parties within this exception") (citation omitted). There must

22  have been some coordination of strategy in anticipation of litigation at the time the privileged

23  information was shared to permit application of the common interest doctrine. Rather, the

24  privileged material appears to have been shared between principals for the ADOA and the

25  Governor's Office for the purposes of making changes to the Plan's design, not for purposes

26  of an existing or imminent lawsuit, and State Defendants—who have the burden of proving

27  that no wavier has occurred—have provided no authority to support that such general

28  policymaking conversations are protected by the common interest privilege. *See Sanmina*

Corp., 968 F.3d at 1116 (party asserting privilege has burden to establish that waiver has not occurred).

**B.  Wavier By Disclosing Legal Advice During Isaacson Deposition**

Waiver by disclosure occurs during a deposition when a witness voluntarily discloses legal advice. *See Weil*, 647 F.2d at 24 (finding waiver where party disclosed substance of the legal advice during deposition); *see also Thomas v. F.F. Fin., Inc.*, 128 F.R.D. 192, 192-94 (S.D.N.Y. 1989) (finding subject matter waiver where a party disclosed information about legal representation during deposition). The objective fact of such voluntary disclosure, without objection of counsel, and in the absence of surprise or deception, may be sufficient to rule on the question of waiver. *Weil*, 647 F.2d. at 25 n. 13.

During her deposition, Ms. Isaacson forthrightly disclosed some of the content of legal advice received by State Defendants regarding the legality of the Exclusion, *i.e.*, that "some services" had to be covered, but not gender reassignment surgery. (Wee Decl., Ex. 6 at 19:6-24) As noted above, Ms. Isaacson independently disclosed this legal advice without prompting from the examining counsel, and without timely objection from counsel. *Id.* This disclosure amounts to waiver. *Sanmina Corp.*, 968 F.3d at 1116. Privilege is not saved, as State Defendants have suggested, by the fact the specific legal advice was not disclosed; it is enough that Ms. Isaacson disclosed the *content* of the attorney-client communications. (*See* Wee Decl., Ex. 6 at 19:06-24) See *Sanmina Corp.*, 968 F.3d at 1123-24 (holding that "voluntary disclosure of the content of a privileged attorney communication constitutes waiver") (quoting *Weil*, 647 F.2d. at 24)

Because waiver by State Defendants happened via disclosure, it amounted to a waiver "as to all other communications on the same subject." *Hernandez*, 604 F.3d at 1100. The subject of the disclosed advice was on the legality of the Exclusion, *i.e.*, whether ADOA was required by law to cover gender reassignment surgery. *See* Wee Decl., Ex. 6 at 19:18-24. Therefore, any privilege claimed over documents containing legal advice regarding whether ADOA was required by law to cover gender reassignment surgery at the time of decision-making has been waived.

13

## CONCLUSION

For all the reasons discussed above, Plaintiff's Motion should be granted.

Respectfully submitted this 20th day of May, 2021.


ACLU FOUNDATION OF ARIZONA

By */s/ Christine Wee*
    Victoria Lopez - 330042
    Christine K. Wee - 028535
    3707 North 7th Street, Suite 235
    Phoenix, Arizona 85014

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
    Joshua A. Block*
    Leslie Cooper*
    125 Broad Street, Floor 18
    New York, New York 10004

WILLKIE FARR & GALLAGHER LLP
    Wesley R. Powell*
    Matthew S. Freimuth*
    Jordan C. Wall*
    Victoria Sheets*
    Justin Garbacz*
    787 Seventh Avenue
    New York, New York 10019

*admitted pro hac vice*

*Attorneys for Plaintiff Russell B. Toomey*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2021, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

/s/ *Christine K. Wee*
Christine K. Wee