**Victoria Lopez** – 330042
**Christine K Wee** – 028535
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
Email**:** vlopez@acluaz.org
Email**:** cwee@acluaz.org

**Joshua A. Block***
**Leslie Cooper***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail: jblock@aclu.org
E-Mail: lcooper@aclu.org
*\*Admitted pro hac vice*

**Wesley R. Powell***
**Matthew S. Freimuth***
**Nicholas Reddick***
**Jordan C. Wall***
**Victoria A. Sheets***
**Justin Garbacz***
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
E-Mail: wpowell@willkie.com
E-Mail: mfreimuth@willkie.com
E-Mail: nreddick@willkie.com
E-Mail: jwall@willkie.com
E-Mail: vsheets@willkie.com
E-Mail: jgarbacz@willkie.com
*\*Admitted Pro hac vice*

*Attorneys for Plaintiff Russell B. Toomey*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Russell B. Toomey,**<br><br>          Plaintiff,<br><br>v.<br><br>**State of Arizona; Arizona Board of Regents, D/B/A University of Arizona**, a governmental body of the State of Arizona; et al.,<br><br>          Defendants. | Case No.19-cv-00035-TUC-RM (LAB)<br><br>**PLAINTIFF'S MOTION FOR ENTRY OF AN ORDER COMPELLING THE PRODUCTION OF DOCUMENTS** |

Plaintiff, Dr. Russell B. Toomey, on behalf of himself and the certified classes ("Plaintiff"), hereby submits through the undersigned counsel the following Memorandum of Law in support of his Motion For Entry Of An Order Compelling The Production Of Documents (the "Motion") from the Office of the Governor of the State of Arizona (the "Governor's Office") in response to Plaintiff's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated February 17, 2021 (the "Subpoena").  This Motion and exhibits hereto are accompanied by the Transmittal Declaration of Christine K. Wee ("Wee Decl."), and Plaintiff's LRCiv 7.2(j)-(k) and 37.1 Statement ("Plaintiff's LRCiv Statement").

## PRELIMINARY STATEMENT

In this class-action lawsuit, Plaintiff challenges the State of Arizona's categorical exclusion for "gender reassignment surgery" (the "Exclusion") from coverage under the self-funded health care plan (the "Plan") controlled by the Arizona Department of Administration

("ADOA"). Although Plaintiff contends that the Exclusion facially discriminates based on sex and transgender status, in violation of Title VII and the Equal Protection Clause, this Court has held that whether the Exclusion was adopted or maintained based on a discriminatory intent may be a dispositive issue in the case.

Discovery has revealed that when ADOA considered whether to remove the Exclusion in 2016, the Governor's Office—and particularly Senior Health Policy Advisor, Christina Corieri—played a key role in the State Defendants' decision to maintain the Exclusion. (Wee Decl., Ex. 9 at 324:2-325:2 (Marie Isaacson, former Director of ADOA Benefits Services Division testified that decision to maintain the Exclusion was "an announcement" from Christina Corieri in the Governor's Office and that "[t]here wasn't really a discussion"); *id.* at 32:7 (testifying that the Governor's Office was in the "group that made the decision" regarding the Exclusion); *id.*, (Wee Decl., Ex. 12, at 4 (listing Michael T. Liburdi, John M. Fry, Nicole A. Ong, and Christina Corieri from the Governor's Office as "persons with knowledge of the genesis, formulation, adoption, maintenance, or continuation of (a) the Challenged Exclusion and (b) any earlier versions of the exclusion"); *id.*, 10 at 65:5-10 (Scott Bender, current ADOA Plan Administration Manager, testified that the ADOA reports to the Governor's Office, and that the Governor's Office is "the decision maker[]" regarding changes to the Plan)).

Plaintiff brings this Motion to Compel the Governor's Office to produce seventeen documents1 that are relevant to whether Ms. Corieri and other advisors involved in the

---

[1] Plaintiff seeks production of the following seventeen documents improperly withheld:

(1) 06/17/2015 correspondence and attachments from Marks re Healthcare Plans
(2) 01/17/2017 correspondence and attachment from Harding re Department of Corrections
(3) 01/18/2017 correspondence from Vineyard re Administrative Code
(4) 01/22/2017 correspondence from Fischer re House Bill
(5) 01/23/2017 correspondence from Conger re House Bill
(6) 01/23/2017 correspondence from Fischer re House Bill
(7) 01/23/2017 correspondence from Seiden re Proposed Legislation

2

decision to maintain the Exclusion harbored discriminatory intent. The Governor's Office has withheld these seventeen communications based on a purported "executive communications privilege" for state governors, which has no basis in federal law, and alternatively based on claims of "deliberative process privilege," which this Court has already rejected. Allowing the Governor's Office to avoid discovery through these unfounded claims of privilege would result in burying the exact evidence that Plaintiff may need to prove his claim through the discriminatory intent of decision makers.

## BACKGROUND

### A.  The Factual Disputes at Issue in This Case

Plaintiff alleges that the Exclusion, which categorically excludes surgeries sought by transgender people from coverage under the Plan, violates Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment. In their Joint Status Report dated October 23, 2020, the parties agreed that one of the disputed factual questions in this case is "[w]hether the decision to exclude gender reassignment surgery in the Health Care Plan was actually motivated by a legitimate governmental interest." (Doc. 128, p. 11.) Although Plaintiff maintains that the Exclusion is facially discriminatory (Doc. 86, pp. 2-15), it is clear that the question of intent may yet be an issue at summary judgment or trial.[2]

---

(8) 01/23/2017 correspondence from Conger re Proposed Legislation
(9) 01/23/2017 correspondence from Corieri re Proposed Legislation
(10) 01/24/2017 correspondence from Favreau re Proposed Legislation
(11) 01/24/2017 correspondence from Corieri re Proposed Legislation
(12) 01/25/2017 correspondence from Roemer re Proposed Legislation
(13) 01/25/2017 correspondence from Harding re Proposed Legislation
(14) [the second, identical log entry for] 01/25/2017 correspondence from Harding re Proposed Legislation
(15) 01/25/2017 correspondence from Conger re Proposed Legislation
(16) 08/06/2020 correspondence from Snyder re Healthcare Coverage
(17) 08/06/2020 correspondence from Snyder re Administrative Code.  (Wee Decl., Ex. 7)

[2] Magistrate Judge Bowman's Report & Recommendation regarding Plaintiff's Motion for a Preliminary Injunction concluded that Plaintiff must prove discriminatory intent by the State Defendants to succeed on his claims. (Doc. 134, pp. 6, 9.)  Further, this Court recently ordered that documents concerning "the thought processes and state of mind of the decision

3

Testimony confirming that the Governor's Office was integral to the decision to maintain the Exclusion evidences further need for the discovery Plaintiff now seeks to determine whether Ms. Corieri and other officials involved in the decision to maintain the Exclusion harbored discriminatory intent. Based on public statements made by Ms. Corieri before she joined the Governor's Office, Plaintiff has reason to believe that Ms. Corieri may have acted based on her personal opposition to government insurance coverage for transition-related surgery. In 2014, an independent appeals board within the U.S. Department of Health & Human Services struck down Medicare's exclusion of coverage for transition-related surgery; in response, Ms. Corieri tweeted: "advocates now demanding taxpayer dollars for gender reassignment surgery under Medicare - bet Medicaid is next." (Wee Decl., Ex. 11)

### B.  Governor's Office First Assertion of Privileges

On February 17, 2021, Plaintiff served the Subpoena on the Governor's Office. (Wee Decl., Ex. 2, at 4) The Subpoena contained one single Request for Production seeking documents and information "regarding surgery to treat gender dysphoria (also referred to as 'transition related' surgery, 'sex reassignment' surgery, 'gender reassignment' surgery, 'sex change', 'transgender surgery' or 'transsexual surgery'" including "insurance coverage for such surgeries in health insurance plans administered by the Arizona Department of Administration, Medicaid, Medicare, or any other government health care program." (Wee Decl., Ex. 2, at 4).

On March 10, 2021, the Governor's Office produced some documents responsive to Plaintiff's Subpoena, consisting of sixteen documents, totaling four hundred and five pages, along with a corresponding privilege log (the "Original Privilege Log") which claimed sixty-six documents to be protected by either the attorney-client privilege, executive

---

makers behind the exclusion" be turned over because they bear directly upon intent as an "indispensable element" of Plaintiff's claims. It is unsettled what standard the Court will ultimately apply to Plaintiff's claims, but for now "the issue of intent remains unresolved, and the documents remain relevant." (Doc. 187, p. 5.)

communications privilege, or common interest privilege. (Wee Decl., Ex. 3) That same day, the Governor's Office served Plaintiff with its Reponses and Objections to Plaintiff's Subpoena. ("R&Os") (Wee Decl., Ex. 4)

In its R&Os, the Governor's Office also objected to the Subpoena claiming it "purport[ed] to impose duties upon the Governor's Office that are beyond the obligations of Rule 45" and that Plaintiff should turn to the "named Defendants in this action, which are more appropriate recipients of Plaintiff's requests." (Wee Decl., Ex. 4, at 2) But the Governor's Office cannot pretend to be an uninterested third-party, since the State of Arizona is the named Defendant, and both the State Defendants and the Governor's Office claim to have such congruent interests in this litigation that the common interest doctrine would apply. (Wee Decl., Ex. 7); (Doc. 201, p. 15).

Despite this, State Defendants have represented that the Governor's Office documents are not within their control and that Plaintiffs would need to subpoena the Governor's Office directly. (Wee Decl., Ex. 8, at General Objections 8, 10) In any event, Rule 45 requires the Governor's Office to produce documents responsive to the Subpoena.

### C. Parties' Letter Exchange and First Meet And Confer

On April 19, 2021, in response to the Governor's Office's R&Os, Plaintiff sent a letter notifying the Governor's Office of Plaintiff's objections to the improper assertions of the executive communications, deliberative process, attorney-client, and common interest privileges,[3] including specifically the fact that there is no basis in federal law to apply executive communications privilege to state governors. (Wee Decl., Ex. 5)

In a letter dated April 30, 2021, counsel for the Governor's Office reaffirmed the Governor's Office's positions on the privilege claims asserted in its Original Privilege Log. (Wee Decl., Ex. 6) The Parties then met and conferred on May 7, 2021 to discuss the pending issues. (Sheets Decl.) However, the parties were unable to reach an agreement as to the

---

[3] Plaintiff reserves all rights to later challenge the withholding of documents based on the attorney-client and common interest privileges.

5

applicability of the executive communications and deliberative process privileges to the withheld documents. *Id*.

### D. Governor's Office's Revised Privilege Log and Second Meet & Confer

Following the meet and confer, the Governor's Office served Plaintiff with a supplemental and revised privilege log ("Revised Privilege Log") on May 26, 2021. (Wee Decl., Ex. 7) The Governor's Office continued to withhold sixty-seven documents, of which Plaintiff currently disputes seventeen as improperly withheld. Specifically, the Governor's Office is withholding documents under the inapplicable executive communications privilege (or, as they argue in the alternative, the deliberative process privilege because "if the Court concludes an executive communications privilege does not apply to the documents, the deliberative process privilege applies"). (Wee Decl., Ex. 7, at n.2) Notably, the Governor's Office has continued to assert the executive communications privilege despite the lack of basis in federal law, and has continued to assert (in the alternative) the deliberative process privilege despite the Court's ruling that "plaintiff's 'need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure.'" (Doc. 187, p. 8).

The Governor's Office and Plaintiff again met and conferred on June 1, 2021 but could not reach agreement. (Sheets Decl.)

## ARGUMENT

The scope of discovery under Rule 45 is the same as under Rule 26(b). *Evanston Ins. Co. v. Murphy*, No. CV-19-04954-PHX-MTL, 2020 WL 6869292, at *2 (D. Ariz. Nov. 23, 2020) ("The scope of discovery through a subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b).") (internal quotations omitted). Plaintiff has a right to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Ocean Garden Prods. Inc. v. Blessings Inc.*, No. CV-18-00322-TUC-RM, 2020 WL 4284383, at *1 (D. Ariz. July 27, 2020) (Márquez, J.) Discovery may be compelled by the Court where, as here, the commanded party unjustifiably withholds responsive documents. Fed. R. Civ.

P. 45(d)(2)(B).

## I. THE DOCUMENTS WITHHELD BY THE GOVERNOR'S OFFICE ARE RELEVANT TO ESTABLISH WHETHER THE EXCLUSION WAS MAINTAINED FOR DISCRIMINATORY REASONS.

The seventeen documents at issue in this Motion to Compel are relevant to establish whether Christina Corieri and other members of the Governor's Office acted with discriminatory intent when they made the decision to maintain the Exclusion challenged in this case. All of the documents, identified as responsive to the Subpoena, discuss gender reassignment surgery. Four of the documents are communications between Ms. Corieri and the Arizona Health Care Cost Containment System ("AHCCCS") and the Department of Corrections, presumably to discuss whether those agencies would be covering surgery for Medicaid recipients or prisoners.[4] Twelve documents are e-mails among members of the Governor's Office between 1/22/2017 and 1/25/2017 about proposed legislation.[5] Those documents likely refer to legislation introduced in January 2017 that would have prohibited Arizona's Medicaid program and Department of Corrections from providing gender reassignment surgeries.[6] And another withheld communication between the Arizona Department of Insurance (Gerrie Marks) and Ms. Corieri from 2015 (when the challenged coverage decision was made) bears the telling subject line: "Healthcare Plans."[7]

The Governor's Office contends that these documents are irrelevant because they do not directly involve ADOA's Plan at issue in this case. But it is well-established "that evidence of the employer's discriminatory attitude *in general* is relevant and admissible to prove . . . discrimination." *Heyne v. Caruso*, 69 F.3d 1475, 1479–80 (9th Cir. 1995) (emphasis in original). "[A]n employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility

---

[4] *See supra* n.1 (2-3), and (16-17).
[5] Nine of which have the subject "Proposed Legislation" and three of which have the subject "House Bill." *See supra* n.1 (4-15).
[6] https://www.azcentral.com/story/news/politics/legislature/2017/01/24/arizona-bills-ban-state-coverage-gender-reassignment-surgeries-medicaid-prison-inmates/96966272/
[7] *See supra* n.1 (1).

7

towards that group is the true reason behind [adverse action against] an employee who is a member of that group." *Id.* at 1479. As noted above, Plaintiff already has reason to believe that Ms. Corieri may have acted based on her personal opposition to government insurance coverage for transition-related surgery.

The requested documents therefore are highly relevant to show whether Ms. Corieri and other members of the Governor's Office were ideologically opposed to all instances of using "taxpayer dollars for gender reassignment surgeries," (Wee Decl., Ex. 11) via state-provided insurance, Medicare, Medicaid, prison health care or otherwise. As Judge Bowman previously recognized in the Report and Recommendation, Plaintiff would be able to establish that the ADOA Exclusion was maintained for a discriminatory purpose if Plaintiff could show "that the Plan exclusion exists because the Plan authors do not like gender transition." (Doc. 134, p. 6). There is good reason to suspect that the documents at issue in this motion may bear on this exact issue.

## II. THE EXECUTIVE COMMUNICATIONS PRIVILEGE IS NOT AVAILABLE FOR STATE GOVERNORS UNDER APPLICABLE FEDERAL LAW

Because the legal claims in this case arise under federal law, the Governor's Office's claims of privilege are governed by federal common law, not by state law. *See* Fed. R. Evid. 501; *Melendres v. Arpaio*, CV-07-2513-PHX-GMS, 2015 WL 12911719, at *1 (D. Ariz. May 14, 2015) ("Issues of privilege in federal question cases are determined by federal law").

The Governor's Office argues that communications involving the Governor's advisors are protected from disclosure by an "executive communications privilege." In doing so, the Governor's Office invites this Court to create new federal common law which would extend the "presidential communications privilege," as the Ninth Circuit refers to it, to a state governor. *Karnoski v. Trump*, 926 F.3d 1180, 1205 at n.21 (9th Cir. 2019); *Hobley v. Chicago Police Commander Burge*, 445 F. Supp. 2d 990, 998 (N.D. Ill. 2006).

But under federal law, the "executive communications privilege" is limited to the President. *Hobley v. Chicago Police Commander Burge*, 445 F. Supp. 2d 990, 998 (N.D.

8

Ill. 2006); *Patterson v. Burge*, 451 F. Supp. 2d 947, 955 (N.D. Ill. 2006), *objections sustained*, No. 03 C 4433, 2007 WL 1498974 (N.D. Ill. May 17, 2007). There is simply "no federal authority for extending" the executive communications privilege "to a state governor." *Hobley*, 445 F. Supp. 2d 990, 998 (N.D. Ill. 2006)); *see also Patterson*, 451 F. Supp. 2d 947, 955 (N.D. Ill. 2006); *Child. First Found., Inc. v. Martinez*, No. CIV. 1:04-CV-0927, 2007 WL 4344915, at *6 n.11 (N.D.N.Y. Dec. 10, 2007); 98 C.J.S. Witnesses § 423 at n.3 (March 2021) (finding that "[f]ederal law does not recognize an executive communications privilege for state Governors"). The presidential communications privilege is rooted in concerns about the separation of powers between the President under Article II and federal courts under Article III. *Hobley*, 445 F. Supp. 2d at 997-98. Those separation-of-powers concerns do not apply when a federal court enforces federal law against a state official. The Ninth Circuit recognizes that the privilege protects "communications directly involving and documents actually viewed by the President, as well as documents solicited and received by the President or his immediate White House advisers." *Karnoski*, 926 F.3d 1180 at 1203 (9th Cir. 2019) (internal quotations omitted).

In support of its claims for an executive communications privilege, the Governor's Office cites to decisions from the supreme courts of other States recognizing an executive communications privilege under state law. *See Cap. Info. Grp. v. State, Off. of Governor*, 923 P.2d 29, 34–35 (Alaska 1996); *Republican Party of New Mexico v. New Mexico Tax'n & Revenue Dep't*, 283 P.3d 853, 860–61 (New Mexico 2012); *Freedom Found. v. Gregoire*, 310 P.3d 1252, 1260 (Wash. 2013). Even if the Arizona Supreme Court were to adopt a similar privilege under Arizona state law, the privilege would still not apply to the *federal* claims in this case. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155, 1159 (9th Cir. 2016) (reversing district court for erroneously applying California privilege law to federal claims).[8]

---

[8] The Governor's Office has also cited a one-off order in *Merritt v. State*, CV17-04540-PHX-DGC (D. Ariz. March 19, 2018), which allowed the Governor to redact personal information and information allegedly protected by "executive privilege," and record the

9

In any event, even if Arizona state law was relevant here, the Governor's Office provides no reason to think that Arizona courts would recognize such a privilege for the Governor. To the contrary, the Supreme Court of Arizona has touted a "strong policy favoring open disclosure and access, as articulated in Arizona statutes and case law." *Cox Arizona Pubs., Inc. v. Collins*, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993). The Arizona state legislature has also declined to grant any statutory authority for the courts to recognize an executive communications privilege. *See* Ariz. Rev. Stat. Ann. § 39-121 (requiring that not only "Public records [but also] other matters in the custody of any officer shall be open to inspection by any person at all times during office hours"). For these reasons, as this Court has recognized, "Arizona state government officials, therefore, should reasonably expect that their deliberations in crafting policy are open to public scrutiny (Doc. 187, p. 8); and that, as this Court has recognized, "persons giving advice to Arizona government officials should ordinarily assume that their advice will not be hidden from the public gaze." *Id.* (citing *Arizona Dream Act Coal. v. Brewer*, No. CV-12-02546-PHX-DGC, 2014 WL 171923, at *3 (D. Ariz. 2014) (citing *Rigel Corp. v. State*, 225 Ariz. 65, 72–73, 234 P.3d 633, 640–41 (App.2010)); *See* (Doc. 187, p. 7).

Further, if an executive communications privilege were applicable to this case, the privilege would not be absolute. To overcome it, Plaintiff "must make a preliminary showing of need demonstrating 'that the evidence sought [is] directly relevant to issues that are expected to be central to the trial' and 'is not available with due diligence elsewhere.'" *Karnoski*, 926 F.3d 1180 at 1205 (quoting *In re Sealed Case*, 121 F.3d 729 at 754). Plaintiff need not "pinpoint with precision what materials [he is] seeking," but instead meets his burden so long as his "discovery requests are narrowly tailored to seek evidence that is directly relevant to central issues in the litigation and is not available with due diligence

---

withheld information on a privilege log. The decision did not rule on the underlying merits of the privilege claims. The court was primarily concerned about whether personal identifying information should be turned over and did not substantively analyze the issue of executive privilege at all.

10

elsewhere." *Id.* Once Plaintiff meets this preliminary burden, then the burden shifts and the person asserting executive communications privilege must "invoke the privilege formally and make particularized objections to 'show that the interest in secrecy or nondisclosure outweighs the need' for responsive material." *Id.* (quoting *Dellums v. Powell,* 642 F.2d 1351, 1363 (D.C. Cir. 1980)).

This Court has already acknowledged the importance of documents that go toward intent of the decision makers. (Doc. 187, at 4-5). ("The documents sought bear directly on the thought processes and state of mind of the decision makers behind the exclusion. As such, they bear directly on the issue of intent. The document request, therefore, concerns an indispensable element of [Plaintiff's] causes of action and is directed at persons with direct knowledge of this element.") If the decision to maintain the Exclusion has been made by the Governor's Office, as witnesses have testified, the continued withholding of responsive documents would unfairly compromise Plaintiff's right and ability to litigate this case.

Plaintiff has demonstrated the need for discovery. The Governor's Office, however, has not met its burden to justify withholding plainly relevant evidence. Neither the Revised Privilege Log nor any other communication from the Governor's Office indicates, in a particularized manner, the reasons why—if the executive communications privilege did apply (and it does not)—"'nondisclosure outweighs the need' for responsive material." *Karnoski*, 926 F.3d 1180 at 1205 (quoting *Dellums*, 642 F.2d at 1363).

**III. IF DELIBERATIVE PROCESS PRIVILEGE WERE TO APPLY, IT IS OVERCOME FOR THE SAME REASONS ARTICULATED BY THE COURT**

Because Plaintiff's (and the Court's) fact-finding needs surrounding the intent of decision makers remain the same, and because the Governor's Office has been identified as a heavily involved decision maker, the same arguments from the Motion to Compel filed on March 18, 2021 (Doc. 168) apply to the Governor's Office.

The deliberative process privilege "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *F.T.C. v. Warner*

11

*Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id*. "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id*. "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir.1988).

Here, the Governor's Office failed to properly assert the deliberative process privilege by neglecting to include a sworn declaration from the head of the agency explaining the contents of the withheld documents and/or how the documents were predecisional and deliberative. *EEOC v. Swissport Fueling, Inc.*, No. CV-10-2101-PHX-GMS, 2012 WL 1648416, at *15 (D. Ariz. May 10, 2012) ("[T]he claim of deliberative due process privilege must be raised by a formal claim made by the head of the agency after she has personally considered the material in question *prior* to the invocation of the privilege" (emphasis added)). However, even if the Governor's Office had properly asserted the privilege, the production of the withheld documents is required here under the *Warner* factors.

This Court previously found that all four *Warner* factors cut in favor of production of documents related to intent of decision makers improperly withheld by State Defendants under the deliberative process privilege. (Doc. 187). *First*, this Court articulated that Plaintiff's request for documents relating to gender surgery exclusion are relevant as they "bear directly on the issue of intent . . . [and] therefore, concerns an indispensable element of Plaintiff's causes of action . . ." (*Id*. at 5). *Second*, this Court explained that the withheld documents are the "most *reliable* evidence on the issue." *Third*, this Court reasoned that the government's role in the litigation "strongly favors the plaintiff." (*Id*. at 6). *Fourth*, this Court found that disclosure of the documents would only have a "minimal adverse effect on

12

future healthcare coverage deliberations." (*Id*. at 8).  Simply put, this Court's prior analysis and holding is equally applicable here because Plaintiff's need for accurate fact-finding of these documents relevant to intent of the decision makers overrides the Governor's Office's interest in non-disclosure.  For these very same reasons, we ask that the Court grant this Motion to Compel.

## CONCLUSION

For all the reasons discussed above, Plaintiff's Motion should be granted.

Respectfully submitted this 4th day of June, 2021.

ACLU FOUNDATION OF ARIZONA

By */s/ Christine Wee*
  Victoria Lopez - 330042
  Christine K. Wee - 028535
  3707 North 7th Street, Suite 235
  Phoenix, Arizona 85014

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
  Joshua A. Block*
  Leslie Cooper*
  125 Broad Street, Floor 18
  New York, New York 10004

WILLKIE FARR & GALLAGHER LLP
  Wesley R. Powell*
  Matthew S. Freimuth*
  Nicholas Reddick*
  Jordan C. Wall*
  Victoria A. Sheets*
  Justin Garbacz*
  787 Seventh Avenue
  New York, New York 10019

**admitted pro hac vice*

*Attorneys for Plaintiff Russell B. Toomey*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2021, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

I, further hereby certify that on June 4, 2021, I emailed the attached document to:

>Betsy Lamm
>Daniel Dowd
>Kaysey L. Fung
>Cohen Dowd Quigley
>The Camelback Esplanade One
>2425 East Camelback Road, Suite 1100
>Phoenix, Arizona 85016
>BLamm@CDQLaw.com
>DDowd@CDQLaw.com
>KFung@CDQLaw.com
>
>*Attorneys for Office of Governor Douglas A. Ducey*

/s/ *Christine K. Wee*
Christine K. Wee
