**Victoria Lopez** – 330042
**Christine K Wee** – 028535
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
Email**:** vlopez@acluaz.org
Email**:** cwee@acluaz.org

**Joshua A. Block\***
**Leslie Cooper\***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail: jblock@aclu.org
E-Mail: lcooper@aclu.org
***Admitted pro hac vice***

**Wesley R. Powell\***
**Matthew S. Freimuth\***
**Nicholas Reddick\***
**Jordan C. Wall\***
**Victoria A. Sheets\***
**Justin Garbacz\***
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
E-Mail: wpowell@willkie.com
E-Mail: mfreimuth@willkie.com
E-Mail: nreddick@willkie.com
E-Mail: jwall@willkie.com
E-Mail: vsheets@willkie.com
E-Mail: jgarbacz@willkie.com
***Admitted Pro hac vice***

*Attorneys for Plaintiff Russell B. Toomey*

1
2
3
4
5
6

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

7
8
9

**Russell B. Toomey,**

               Plaintiff,

10

v.

11
12

**State of Arizona; Arizona Board of Regents, D/B/A University of Arizona**, a governmental body of the State of Arizona; et al.,

13
14
15

               Defendants.

Case No.19-cv-00035-TUC-RM (LAB)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR ENTRY OF AN ORDER COMPELLING THE PRODUCTION OF DOCUMENTS**

16
17
18
19
20
21
22
23

Plaintiff, Dr. Russell B. Toomey, on behalf of himself and the certified Classes ("Plaintiff"), through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 37 and Arizona Local Rule 7.2, hereby submits this memorandum of law in further support of his Second Motion to Compel (the "Motion" or "Mot.") (Doc. 195) and in reply to Defendants State of Arizona's, Andy Tobin's, And Paul Shannon's Opposition To Plaintiff's Second Motion To Compel ("Opposition" or "Opp.") (Doc. 201).

24

### THE COURT SHOULD GRANT PLAINTIFF'S MOTION TO COMPEL

25
26
27
28

State Defendants fail to rebut that they have waived attorney-client privilege with respect to legal advice they received concerning the legality of the Exclusion. The Opposition's false, revisionist recount of State Defendants' written discovery responses, mischaracterization of witness testimony, and *ad nauseum* recitation of largely irrelevant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

facts are all misdirection.  At bottom, State Defendants have waived the privilege by putting at-issue legal advice they received regarding the Exclusion, and attempting to use that advice as both a sword and a shield.  Alternatively, State Defendants have waived the privilege by their consistent, affirmative, and selective disclosure of its content.

Finally, State Defendants' argument that the Motion is deficient because it does not adequately list the documents sought is both factually inaccurate and unsupported by law.

## **ARGUMENT**

### I.  THE STATE DEFENDANTS WAIVED ATTORNEY-CLIENT PRIVILEGE BY ASSERTING THAT ADVICE OF COUNSEL IS A NONDISCRIMINATORY "REASON[] WHY" THEY  HAVE MAINTAINED THE EXCLUSION

State Defendants admit that the attorney-client privilege can be waived where a party's "subjective intent" is at issue, and a party justifies its decisions or actions based on the "legal advice it received."  (Opp. 4)  State Defendants otherwise fail to cite any authority rebutting the soundness of the this principle, commonly known as the "at-issue doctrine."  State Defendants instead dispute the applicability of the doctrine here.  (Opp. 4-12)  As this Court has consistently held, State Defendants' intent remains a live and critical issue in the case.  (Doc. 134 at 9;  Doc 187 at 5)  State Defendants attempt to explain away their consistent, affirmative, and selective assertion of the legal advice received about the legality of the Exclusion to justify its maintenance.  (*See* Opp. 4–12)  Each of their explanations fails.

**First**, State Defendants disingenuously suggest that their interrogatory responses neither affirmatively nor impliedly assert an advice of counsel defense. (Opp. 4–9) State Defendants argue, incredibly, that their responses merely "disclose[] that legal counsel was consulted" and that the responses do not say "what the legal advice was," "whether [State Defendants] relied upon legal counsel's advice" or "whether actions were based on or justified by legal advice." (Opp. 4)  State Defendants' revisionist take on their own

discovery responses makes no sense, and the Court need only read the interrogatories to which they responded to see why.

Preliminarily, in their Answer to Plaintiff's Complaint, State Defendants averred that the Exclusion is lawful because it was maintained for non-discriminatory reasons. (Doc 89 at 28, J)  Accordingly, Plaintiff's Interrogatory No. 1 asked State Defendants to "[i]dentify and describe all *reasons why* the State of Arizona's self-funded health plan controlled by the [ADOA] excludes coverage for 'gender reassignment surgery[.]'" (Doc. 195-3, Ex 4 at No. 1 (emphasis added))  The interrogatory does not ask State Defendants to "provide[] a backdrop" to the ADOA's decision-making in 2016 (Opp. 5) or to "explain[] the context" behind the decision to maintain the Exclusion (Opp. 8). Rather, it quite clearly seeks the *reasons why* the Exclusion was put into place, if not for discriminatory purposes.  State Defendants responded that the Exclusion was maintained "*because* the State concluded, under the law, that it was not legally required" to cover gender reassignment surgery.  (Doc 195-3, Ex 5 No. 1 (emphasis added))  The plain words of this response put forth legal advice or understanding of legality as a basis for the Exclusion.

Plaintiff's Interrogatory Nos. 4 and 7 asked State Defendants to (1) "[i]dentify all persons who participated in formulating, adopting, maintaining, reviewing, approving, or deciding to continue the exclusion" (No. 4), and to (2) "[i]dentify all research, studies, data, reports, publications, testimony, or other documents considered, reviewed, or relied on by Defendants relating to the Challenged Exclusion" (No. 7).  (Doc. 195-3, Ex. 4 Nos. 4, 7)   State Defendants responded to Interrogatory No. 4 by pointing to, among others, at least three lawyers, including Michael Liburdi, John Fry, and Nicole A. Ong.  (Doc. 195-3, Ex. 5 No. 4) In response to Interrogatory No. 7, State Defendants identified only two specific documents: memoranda, by and between Ms. Isaacson and legal counsel that are allegedly "covered by the attorney-client privilege," which are the subject of the

instant Motion.[1]  (Doc. 195-3, Ex. 5 No. 7)  It is unambiguous, especially in light of their response to Interrogatory No. 1, that State Defendants were affirmatively asserting their reliance on legal advice, including the legal advice reflected in these memoranda, to support an allegedly non-discriminatory basis for the Exclusion.  This is further supported by testimony of State witnesses, who have affirmed that legal advice was not just a consideration, but the "primary reason" for maintaining the Exclusion.  (Mot. 5)

**Second**, State Defendants contend that they "have not asserted advice of counsel as an affirmative defense in [their] Answer" or otherwise.  (Opp. 4)  State Defendants recognize, however, that the at-issue doctrine may be invoked due to both formal and informal assertions of such defenses.  (*See* Opp. 4 ("advice of counsel defense need not be asserted in a pleading"))  Courts examine and scrutinize the substantive claims and defenses of the parties when considering the applicability of the doctrine, and several have applied it when defenses such as the "advice of counsel" were implicitly made through affirmative acts occurring in discovery.  *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *Melendres v. Arpaio*, CV-07-2513-PHX-GMS, 2015 WL 12911719, at *2-3 (D. Ariz. May 14, 2015).  In *Chevron*, the at-issue doctrine was implicated "[d]uring the course of discovery," after the defendant corporation submitted a witness declaration maintaining that the investment in dispute had been reasonable "based upon" legal considerations, and further, was "made in reliance upon" the advice of counsel.  *Chevron* 974 F.2d at 1162 (9th Cir. 1992).  In *Melendres*, the doctrine was "implicitly invoked" when witnesses testifying on behalf of defendant the Maricopa Sheriff's Office explained their alleged attempt to comply with a preliminary injunction by asserting that defendant's counsel had "reviewed" and were "looking into" compliance with the order.  *Melendres*, 2015 WL 12911719, at *3 (D. Ariz. May 14, 2015).  Further, the Court applied the doctrine *despite* the Sheriff's Office's *explicit*

---

[1]     State Defendants' also noted that they had "gathered information and data from insurers and other entities regarding their experience providing transgender benefits, including reassignment surgery" but cited no specific documents, studies, or analyses.

disclaimer of any such defense in response to written discovery.  *Melendres, et al. v. Penzone, et al.*, No. 2:07-cv-02513 (D. Ariz. Dec 12, 2007), Doc. 1045-3, Ex. N, at Resp. to Interrog. No. 9.  There is no credible dispute, therefore, that State Defendants could have, and, in fact, have implicated the doctrine through their written discovery responses.

**Third**, State Defendants cite Ms. Isaacson's and Mr. Bender's current employment status to argue that neither has the authority to waive privilege.  (Opp. 10-11)  This argument is not only a red herring, but leads to absurd results.  Both Ms. Isaacson and Mr. Bender were identified by the State Defendants as individuals possessing knowledge about the "reasons" for the Exclusion (Doc. 195-3, Ex .5 No. 2), which the State alleges are entirely non-discriminatory.  (Doc. 89 at 28, J).  State Defendants then proffered them as witnesses they would offer at trial (Doc. 146 ¶¶ 3, 5), and in response to Plaintiff's request to depose them, State Defendants chose to prepare them for and then defend them in those depositions.  Ms. Isaacson therefore is far from a "non-party" witness, as State Defendants claim.  (Opp. 12-14)  Further, State Defendants point to Ms. Isaacson's status as a former employee to distract from the more foundational issue that during her deposition, they failed to timely object to her disclosure of the content of the legal advice State Defendants received regarding the legality of the Exclusion.[2]  It would lead to absurd results if parties could avoid their duty to maintain the confidentiality of privileged information, and timely object to its disclosure, through the use of a "strategic spokesperson" lacking authority to waive privilege, as this Court has recognized.  *Melendres*, 2015 WL 12911719, at *3 n.1 (rejecting argument that employee who testified on behalf of defendant was not authorized to waive the privilege because defendant had put forth and benefitted from employee's testimony, and holding

---

[2]   State Defendants' cases on authority to waive privilege are all specific to the corporate context; they point to no authority or policy reason why this principle should be extended to public employees of the state, particularly when, as is the case here, the State maintains that its decisions were made for lawful reasons, and has a policy favoring the disclosure of governmental records.  (Doc. 187 at 7)

that "[i]t would eviscerate the privilege and waiver doctrines if a party could immunize its voluntary disclosure in contravention of privilege simply by doing so through a strategic spokesperson.")

**Fourth**, State Defendants construct in Frankenstein fashion a wholly false and misleading "slippery slope" argument that Plaintiff somehow seeks to compel this Court to "hold that a waiver of privileged communications occurs whenever a party acknowledges that a lawyer was present at a meeting." (Opp. 8 ) State Defendants have waived attorney-client privilege through their own affirmative actions and attempting to leverage certain legal advice to their benefit, while simultaneously shielding that advice from Plaintiff's scrutiny. Plaintiff's argument is premised on these actions, not the mere fact that State Defendants received legal advice in connection with the Exclusion in 2016.[3] While Plaintiff is entitled to be skeptical of any allegations or claims made by the State Defendants, he only contends that he became entitled to examine privileged communications once State Defendants affirmatively set forth legal advice, and their understanding of that advice, as a rationale for the Exclusion in this litigation.

## II.   STATE DEFENDANTS WAIVED ATTORNEY-CLIENT PRIVILEGE BY DISCLOSING ADVICE OF COUNSEL

State Defendants fail to rebut their waiver of attorney-client privilege based on (1) disclosure to the Governor's Office from 2015 to 2018 and/or (2) disclosure during Ms. Isaacson's deposition without objection. (Mot. at 11-13)

### A. Waiver By Sharing Legal Advice With Governor's Office

State Defendants have waived attorney-client privilege by sharing legal advice with the Governor's Office—an entity that State Defendants themselves have held out as a third party, distinct from ADOA. (Mot. 11-12) The Opposition contends that this

---

[3]    Plaintiff rejects entirely State Defendants' cry wolf arguments that they are "damned if they do and damned if they don't" (Opp. 2), and these should be dismissed out of hand. Plaintiff does not seek to punish State Defendants for the fact of consulting counsel. He simply seeks to probe what State Defendants have put forward as an allegedly non-discriminatory basis for the Exclusion, which in fairness he must be allowed to do in order to effectively challenge the State's defense.

sharing between ADOA and the Governor's Office was protected by the common interest doctrine (Opp. 14-17), but no facts adduced thus far in the case support the doctrine's applicability here, including any of the largely irrelevant facts State Defendants recite concerning other disputes involving transgender issues.

The common interest doctrine applies in circumstances involving actual or prospective litigation. (Mot. 12)  Where the doctrine has applied prior to the initiation of a lawsuit, the parties asserting it have generally been co-defendants cooperating with respect to a common indictment or dispute.  State Defendants' own cases support this. *See Hunydee v. U.S.*, 355 F.2d 183, 185 (9th Cir. 1965) (applying common interest to where "two or more persons who are subject to possible indictment in connection with the same transactions[.]"); *U.S. v. Gonzalez*, 669 F.3d 974, 978-79 (9th Cir. 2012) (finding common interest between two potential codefendants); *U.S. v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989) (same).  Nothing in the record supports that State Defendants and the Governor's Office coordinated their discussions of the Exclusion due to any pending or prospective dispute.[4]  Rather, State Defendants and the Governor's Office, each distinct and separate governmental entities, worked together to make policy. The fact that these policy discussions may have been informed by changes in the law does not transform the policymaking purpose of their work together into a common interest purpose for imminent litigation.  If it did, the common interest privilege would effectively apply to all policymaking work, so long as the conversation was in some way informed by law (as almost all policymaking is).

**B.  Waiver By Disclosing Legal Advice During Isaacson Deposition**.

State Defendants attempt to rebut their waiver during Ms. Isaacson's deposition by wrongly arguing that Ms. Isaacson did "not reference legal advice." (Opp. 13).  Ms. Isaacson clearly testified about the *content* of the legal advice given to State Defendants—*i.e.*, that State Defendants could exclude some, but not all transgender

---

[4]    State Defendants failure to offer any supporting declaration corroborating that such coordination occurred or was intended is also telling.

1  benefits, and that they were not legally required to cover "gender reassignment surgery."

2  (Mot. 6, 13)[5]  State Defendants also reiterate that Ms. Isaacson could not, as a "non-party"

3  and former employee, waive attorney-client privilege belonging to State Defendants.

4  (Opp. 12-14).  But Plaintiff does not contend that Ms. Isaacson waived the privilege via

5  her testimony; rather, *State Defendants waived the privilege* by failing to assert it at the

6  deposition and allowing Ms. Isaacson to testify about the content of privileged legal

7  advice rendered to State Defendants. (Mot. 11)

8  ### III.    THE MOTION STATES WHICH DOCUMENTS PLAINTIFF SEEKS

9          State Defendants argue, incorrectly, that the Motion does not sufficiently identify

10  the documents it seeks.  State Defendants' solitary support for this argument is entirely

11  inapt.  (Opp. 2 (citing *Hawkins v. Winkfield*, No. 2:19-cv-1228 TLN KJN P, 2021 WL

12  1193421, at *2 (E.D. Cal. Mar. 30, 2021) (holding that *pro se* motion was deficient due

13  to failure to identify the "specific discovery request and responses he challenges")))

14  Here, Plaintiff has clearly identified the exact requests and responses that he challenges.

15  (Doc 195-1).  As State Defendants admit (Opp. 17), the Motion specifically identifies 85

16  documents Plaintiff alleges have been withheld improperly on the basis of attorney-client

17  privilege.  (Mot. 2)  Because Plaintiff cannot currently review these documents, he can

18  only assume that all 85 of them fall within the scope of what the Motion seeks *i.e.*

19  communications related to "legal advice [State Defendants] received on the legality of

20  the Exclusion."  (Doc. 195-4)

21          Courts routinely decide motions of this nature by reference to "subject matter."

22  *See  Melendres* 2015 WL 12911719, at *6 (D. Ariz. May 14, 2015) (ordering production

23  of privileged communications "on the subject matter" of the defendants' decision-

24  making); *Chevron* 974 F.2d at 1163 (9th Cir. 1992) (remanding to district court to order

25  production of privileged communications "relied upon . . . to support the reasonableness"

26

27  [5]      Separate and apart from Ms. Isaacson's testimony, State Defendants' voluntarily
disclosed the content of this legal advice in response to written discovery requests. (195-
28  3, Ex. 5 at No. 1 (stating that the "State concluded, under the law, that it was not legally
required to change its health plan[.]"))

of defendant's investment); *see also Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (district courts have "broad discretion to manage discovery."). This is precisely what Plaintiff seeks here: production of all documents on the subject of the legality of the Exclusion *i.e.* the principal purported non-discriminatory basis for the State Defendants' maintenance of the Exclusion.

## **CONCLUSION**

For all the reasons discussed above, Plaintiff's Motion should be granted.

Dated: June 10, 2021

ACLU FOUNDATION OF ARIZONA

By /s/ *Christine K. Wee*
Victoria Lopez – 330042
Christine K Wee – 028535
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Joshua A. Block*
Leslie Cooper*
125 Broad Street, Floor 18
New York, New York 10004

WILLKIE FARR & GALLAGHER LLP
Wesley R. Powell*
Matthew S. Friemuth*
Nicholas Reddick*
Jordan C. Wall*
Victoria A. Sheets*
Justin Garbacz*
787 Seventh Avenue
New York, New York 10019

*Admitted pro hac vice

*Attorneys for Plaintiff Russell B. Toomey*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2021, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

*/s/ Christine K. Wee*
Christine K. Wee
