**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Russell B. Toomey,<br><br>　　　　　　Plaintiff,<br>v.<br><br>State of Arizona; Arizona Board of Regents, d/b/a University of Arizona, a governmental body of the State of Arizona; et al.,<br><br>　　　　　　Defendants. | CV 19-0035-TUC-RM (LAB)<br><br>**ORDER** |

Pending before the court is the plaintiff's motion, filed on May 20, 2021, to compel production of documents. (Doc. 195) The defendants State of Arizona, Andy Tobin, and Paul Shannon ("the State Defendants") filed a response on June 4, 2021. (Doc. 202) The plaintiff, Russell B. Toomey, filed a reply on June 10, 2021. (Doc. 205)

Toomey served on the State Defendants his First Request for Production on December 8, 2020. (Doc. 195) "Request Nos. 1, 3, and 9 specifically sought documents and information concerning the [State's health insurance plan] Exclusion [for gender reassignment surgery] and the decision-making behind it." (Doc. 195, p. 4) The State Defendants withheld 85 documents on the basis of attorney-client privilege. *Id.* In the pending motion, Toomey seeks an order from this court compelling production of those documents.

The motion will be granted. The State Defendants maintain that the Exclusion is not the product of intentional discrimination. It exists, they say, because they were advised by counsel that it is legal and nothing in the law requires the State's health insurance plan to cover gender reassignment surgery. By allegedly relying on this legal advice as evidence that they harbored

no discriminatory intent, the State Defendants have waived by implication the attorney-client privilege as to that advice. The court does not reach Toomey's alternate arguments.

Discussion

The plaintiff in this action, Russell B. Toomey, is an associate professor employed at the University of Arizona. (Doc. 86, p. 5) (Amended Complaint) He receives health insurance from a self-funded health plan ("the Plan") provided by the State of Arizona. (Doc. 86, pp. 3, 8) The Plan generally provides coverage for medically necessary care. (Doc. 86, p. 8) There are coverage exclusions, however, one of which is for "gender reassignment surgery" ("the Exclusion"). (Doc. 86, p. 9)

Toomey is a transgendered man. (Doc. 86, p. 9) "[H]e has a male gender identity, but the sex assigned to him at birth was female." (Doc. 86, p. 9) Toomey has been living as a male since 2003. (Doc. 86, p. 9) His treating physicians have recommended that he receive a hysterectomy as a medically necessary treatment for his gender dysphoria. (Doc. 86, p. 9) Toomey sought medical preauthorization for a total hysterectomy, but he was denied under the Plan's exclusion for gender reassignment surgery. (Doc. 86, p. 10)

On January 23, 2019, Toomey brought the pending class action in which he argues the Plan's Exclusion is sex discrimination under Title VII of the Civil Rights Act of 1964 and a violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1); (Doc. 86)

This action is currently in the discovery stage. On December 8, 2020, Toomey served his First Request for Production on the State Defendants seeking documents calculated to reveal the reason why the Plan contains an exclusion for gender reassignment surgery. (Doc. 195, p. 4) The State Defendants produced a privilege log identifying 85 documents withheld "on the basis of attorney-client privilege." (Doc. 195, p. 4)

In the pending motion, Toomey moves to compel the production of these documents pursuant to Fed.R.Civ.P.37(a)(3)(B). (Doc. 195, p. 2); *see also* LRCiv 37.1 He asserts that the State Defendants implicitly waived the attorney-client privilege "by asserting and relying on

legal advice as a defense to the charge that discriminatory intent . . . motivat[ed] their decision to maintain the Exclusion, effectively placing this legal advice at issue." (Doc. 195, p. 3)  He further argues that the State Defendants waived the privilege by sharing that legal advice with the Governor's office and himself.  (Doc. 195, pp. 3-4)

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv),  "A party seeking discovery may move for an order compelling . . . production . . . if . . . a party fails to produce documents." In this case, the State Defendants resist production of 85 documents based on the attorney-client privilege. "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir.1988) (construing the attorney-client privilege).  Where, as here, federal law provides the rule of decision, the contours of an evidentiary privilege are governed by federal common law. Fed. R. Evid. 501.

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020).  "Whether information is covered by the attorney-client privilege is determined by an eight-part test: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.*  In this case, the parties dispute only element (8) – the issue of waiver.

Waiver may be express or implied. An express waiver "occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Id.* at 1117. "In contrast, waiver by implication, or implied waiver, is based on the rule that a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation." *Id.* "Waivers by implication rest on the 'fairness principle,' which is often expressed in terms of preventing a party from using the privilege as both a shield and a sword." *Id.* "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Id.*

In this case, the State Defendants maintain that the Exclusion is not the product of intentional discrimination. It exists in large part, they say, because the State Defendants were advised that it is legal and nothing in the law requires the Plan to cover gender reassignment surgery. By allegedly relying on this legal advice to explain their actions, the State Defendants have waived by implication their attorney-client privilege as to that advice. The State Defendants argue generally that they never raised an "advice of counsel defense." The record, however, indicates otherwise.

In their answer to Toomey's interrogatories, the State Defendants stated that that the Plan contains the Exclusion, in part, "because the State concluded, under the law, that it was not legally required to change its health plan to provide such coverage under either Title VII of the Civil Rights Act or under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution." (Doc. 195, p. 5); (Doc. 195-3, p. 53) The State Defendants explicitly asserted that, "The legal advice that the State received regarding this issue is covered by the attorney-client privilege." (Doc. 195-3, p. 53) The State Defendants specifically identified two memoranda, one from Marie Isaacson, dated August 3, 2016, and one from outside legal counsel Fennimore Craig, P.C., dated July 20, 2016, as documents covered by attorney-client privilege that were "considered, reviewed, or relied on by Defendants relating

to the Exclusion." (Doc. 195, pp. 5-6) In their respective depositions[1], Marie Isaacson, Director of the Benefits Service Division of the Arizona Department of Administration (ADOA) from 2015-2018, and Scott Bender, Plan Administration Manager of the ADOA from 2015-present, testified that "the deciding factor" or the "primary reason" for the continuing existence of the Exclusion was that the law did not require gender reassignment surgery to be covered. (Doc. 195, p. 6) Isaacson stated that "We sought legal counsel and that – with the legal counsel's recommendation and meeting with the governor's office there was a decision made – a conclusion made to cover some services . . . . The counseling and hormone therapy were covered. And surgery was not covered." (Doc. 195-3, p. 65, depo. p. 19, lns.8-15)

Toomey cannot adequately dispute this proffered reason for the actions of the State Defendants, that it was legal, without access to the legal advice that the State Defendants received. "Fairness" dictates that they disclose that legal advice to him. *See, e.g, Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162–63 (9th Cir. 1992) ("[T]o the extent that Pennzoil claims that its tax position is reasonable because it was based on advice of counsel, Pennzoil puts at issue the tax advice it received.").

In their response, the State Defendants argue that they never asserted an "advice of counsel defense." (Doc. 201, p. 5) They did say that the Plan contains the Exclusion "because the State concluded, under the law, that it was not legally required to change its health plan . . . ." But this was simply their understanding of "what the law was at the time of the decision to expand transgender benefits while continuing to exclude surgeries." (Doc 201, p. 6) Their understanding, they assert, was not necessarily based on the advice of counsel. The court is not convinced.

If the State Defendants' understanding of the law was based, say, on a newspaper article, then they would not have affirmatively stated that "[t]he legal advice that the State received

---

[1] The State Defendants identified Isaacson and Bender as "persons with knowledge of the genesis, formulation, adoption, maintenance, or continuation of" the Exclusion. (Doc. 195-3, p. 32)

regarding this issue is covered by the attorney-client privilege." (Doc. 195-3, p. 53) The attorney-client privilege does not cover newspaper articles. Moreover, the State Defendants specifically identified two memoranda, one from Marie Isaacson, dated August 3, 2016, and one from outside legal counsel Fennimore Craig, P.C., dated July 20, 2016, as documents covered by attorney-client privilege that were "considered, reviewed, or relied on by Defendants relating to the Exclusion." (Doc. 195, pp. 5-6) The court concludes that the State Defendants' understanding of the law was based in large part on advice from counsel.

With regard to the memoranda, the State Defendants insist that they "did not disclose any legal advice contained therein, did not indicate there was a recommendation from legal counsel, and did not state that the State Defendants relied on any advice of legal counsel." (Doc. 201, p. 10) The court is not persuaded. The State Defendants implied that they received legal advice on the propriety of the Exclusion from counsel and relied on that legal advice when they decided to establish or maintain the Exclusion even if they did not say so explicitly. "Fairness" dictates that Toomey is entitled to discover what that advice was. That advice is not shielded from discovery by the attorney-client privilege.

IT IS ORDERED that the plaintiff's motion, filed on May 20, 2021, to compel production of documents is GRANTED. (Doc. 195) The State of Arizona, Andy Tobin, and Paul Shannon (The State Defendants) shall "produce all the documents currently withheld on the basis of attorney-client privilege they received on the legality of the Exclusion . . . ." The State Defendants shall comply with this order within 14 days of service.

DATED this 28th day of June, 2021.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge