**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Russell B. Toomey, | ) | CV 19-0035-TUC-RM (LAB) |
|        Plaintiff, | ) | |
| v. | ) | **ORDER** |
| State of Arizona;  Arizona Board of Regents, | ) | |
| d/b/a University of Arizona, a governmental | ) | |
| body of the State of Arizona; et al., | ) | |
|        Defendants. | ) | |

Pending before the court is the plaintiff's motion, filed on June 4, 2021, to compel production of documents.  (Doc. 202)  The Office of the Governor, Douglas A. Ducey, filed a response on June 18, 2021.  (Doc. 208)  The plaintiff, Russell B. Toomey, filed a reply on June 25, 2021.  (Doc. 210)  The court held a hearing on the motion on August 11, 2021.  (Doc. 237)

On February 17, 2021, Toomey served on the Governor's Office a subpoena "seeking documents and information regarding surgery to treat gender dysphoria . . . including insurance coverage for such surgeries in health insurance plans administered by the Arizona Department of Administration, Medicaid, Medicare and any other government health care program."  (Doc. 202, p. 5)  (punctuation modified)  The Governor's Office produced some documents but withheld others.  (Doc. 202, pp. 5-7)  In the pending motion, Toomey seeks an order from this court compelling production of 17 of those withheld documents.  (Doc. 202, p. 7)  He maintains that those documents are relevant and not privileged under either the executive communications privilege or the deliberative process privilege.  *Id.*

1   The motion will be granted.  The documents are relevant on the issue of intent.  Neither
2   the executive communications privilege nor the deliberative process privilege precludes their
3   disclosure.

4

5   Discussion

6   The plaintiff in this action, Russell B. Toomey, is an associate professor employed at the
7   University of Arizona.  (Doc. 86, p. 5) (Amended Complaint)  He receives health insurance
8   from a self-funded health plan ("the Plan") provided by the State of Arizona.  (Doc. 86, pp. 3,
9   8)  The Plan generally provides coverage for medically necessary care.  (Doc. 86, p. 8)  There
10  are coverage exclusions, however, one of which is for "gender reassignment surgery" ("the
11  Exclusion").  (Doc. 86, p. 9)

12  Toomey is a transgendered man.  (Doc. 86, p. 9)  "[H]e has a male gender identity, but
13  the sex assigned to him at birth was female."  *Id.*  Toomey has been living as a male since 2003.
14  *Id.*  His treating physicians have recommended that he receive a hysterectomy as a medically
15  necessary treatment for his gender dysphoria.  *Id.*  Toomey sought medical preauthorization for
16  a total hysterectomy, but he was denied under the Plan's exclusion for gender reassignment
17  surgery.  (Doc. 86, p. 10)

18  On January 23, 2019, Toomey brought the pending class action in which he argues the
19  Plan's Exclusion is sex discrimination under Title VII of the Civil Rights Act of 1964 and a
20  violation of the Equal Protection Clause of the Fourteenth Amendment.  (Doc. 1);  (Doc. 86)

21  This action is currently in the discovery stage.  Toomey has uncovered evidence that the
22  Arizona Department of Administration considered removing the Exclusion in 2016 but "the
23  Governor's Office . . . played a key role in the State Defendants' decision to maintain the
24  Exclusion."  (Doc. 202, p. 3)

25  On February 17, 2021, Toomey served on the Governor's Office a subpoena "seeking
26  documents and information regarding surgery to treat gender dysphoria . . . including insurance
27  coverage for such surgeries in health insurance plans administered by the Arizona Department

28

- 2 -

of Administration, Medicaid, Medicare and any other government health care program." (Doc. 202, p. 5) (punctuation modified)  He seeks to discover whether "members of the Governor's Office acted with discriminatory intent when they made the decision to maintain the Exclusion . . . ."  (Doc. 202, p. 8 )  The Governor's Office produced some documents but continues to withhold 67 others.  (Doc. 202, pp. 5-7)  In the pending motion, Toomey seeks an order from this court compelling production of 17 of those withheld documents.   (Doc. 202, p. 7)  The Governor's Office states that those withheld documents do not relate directly to the Plan Exclusion that is the focus of Toomey's lawsuit.  They relate to other health plans such as Medicare or Medicaid.  Nevertheless, Toomey maintains that those 17 documents are relevant and are not subject to either the executive communications privilege or the deliberative process privilege as the Governor's Office has alleged.  *Id.*

Toomey moves to compel the production of these documents pursuant to Fed.R.Civ.P 45(d)(2)(B)(i). (Doc. 202, pp. 7-8)  That Rule states that "the serving party may move the court for the district where compliance [with his subpoena] is required for an order compelling production or inspections." Fed.R.Civ.P 45(d)(2)(B)(i); *see also* Fed. R. Civ. P. 37(a)(3)(B)(iv) ("A party seeking discovery may move for an order compelling . . . production . . . if . . . a party fails to produce documents.").

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Relevancy for the purpose of the rule "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020).

1
2
3
4
5
6

The court concludes first that the documents are relevant pursuant to Rule 26(b)(1).  A major issue in this case is whether the defendants intentionally discriminated against transgender individuals when establishing or maintaining the Plan Exclusion. Toomey has uncovered evidence that "the Governor's Office . . . played a key role in the State Defendants' decision to maintain the Exclusion." (Doc. 202, p. 3)  It is therefore reasonable for Toomey to seek documents from the Governor's Office on the issue of intent.

7
8
9
10
11
12
13
14

The Governor's Office argues that the documents are not relevant because they do not relate specifically to the Plan Exclusion that is the subject of the pending litigation.  Instead, they relate to "surgery to treat gender dysphoria" and "insurance coverage for such surgeries in health insurance plans administered [not only] by the Arizona Department of Administration [but also by] Medicaid, Medicare and any other government health care program." (Doc. 202, p. 5)  They assert that documents that relate to other insurance plans such as Medicaid or Medicare will add nothing to Toomey's inquiry as to whether the Plan Exclusion is the product of intentional discrimination.

15
16
17
18
19
20
21
22
23
24
25
26
27

Toomey maintains that the documents sought are still relevant on the issue of intent even if they do not relate specifically to the Plan Exclusion.  And the court agrees.  Evidence of a pattern of discriminatory animus revealed in connection with a different insurance coverage could be relevant to establish intentional discrimination in the pending action.  *See* Fed.R.Evid.404(b)  (Evidence of other acts may be admitted on the issue of motive or intent.). It may, of course, turn out that those documents are not particularly persuasive on the issue of intent.  Toomey has not seen them yet and is not required to show that they will be admissible at trial.  *See, e.g*., Fed.R.Evid. 401 et seq.  He need only show that the document request is "relevant" as that term is broadly construed.  *See In re Williams-Sonoma, Inc*., 947 F.3d at 539; *see also* Fed.R.Civ.P. 26(b)(1)  ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").  If the 17 documents evince discriminatory intent in connection with those other insurance plans, it seems plausible that that discriminatory intent also animated the decision to maintain the Plan Exclusion. *See, e.g., RK Ventures, Inc. v. City*

28

*of Seattle,* 307 F.3d 1045, 1062 (9th Cir. 2002) ("In addition, the City's allegedly discriminatory treatment of other clubs playing rap and hip-hop music and catering to African American patrons may be relevant evidence of an unconstitutional purpose."); *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995) ("[A]n employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group."); *Burke v. City of Santa Monica*, 2011 WL 13213593, at *15 (C.D. Cal. 2011) ("Given the need to prove intent by circumstantial evidence, courts have found that the probative value of prior acts evidence is especially great.").

The Governor's Office argues in the alternative that discovery is precluded by the "executive communications privilege" or the "deliberative process privilege." (Doc. 208, pp. 8, 14) (*citing, inter alia, Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019)). Where, as here, federal law provides the rule of decision, the contours of an evidentiary privilege are governed by federal common law. Fed. R. Evid. 501.

In *Karnoski*, the Ninth Circuit explained that there are two executive privileges: the presidential communications privilege and the deliberative process privilege. *Karnoski*, 926 F.3d at 1203. The presidential communications privilege is a "presumptive privilege for presidential communications." *Id.* "The privilege covers documents reflecting presidential decision making, regardless of whether the documents are predecisional or not and it covers the documents in their entirety." *Id.* "The privilege is fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708, 94 S. Ct. 3090, 3107 (1974).

"A party seeking to overcome a claim of presidential privilege must demonstrate: first, that each discrete group of the subpoenaed materials likely contains important evidence; and second, that this evidence is not available with due diligence elsewhere." *Karnoski v. Trump*, 926 F.3d 1180, 1205 (9th Cir. 2019). "The first component, likelihood of containing important evidence, means that the evidence sought must be directly relevant to issues that are expected

to be central to the trial." *Id.* "The second component, unavailability, reflects [the president's] insistence that privileged presidential communications should not be treated as just another source of information." *Id.*

The Governor's Office argues that the documents that Toomey seeks are covered by an *executive* communications privilege that is a natural extension of the *presidential* communication privilege. (Doc. 208, p. 9)  The Governor's Office, however, has not directed the court to a Ninth Circuit case that recognizes this "natural extension" to the federal common law.  *See also* Fed. R. Evid. 501.  This absence of Ninth Circuit case law may be explained by examining the reason for the privilege.   The presidential communication privilege is "inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708, 94 S. Ct. 3090, 3107 (1974).  The courts of the judicial branch are naturally keen to avoid unnecessary conflict with the head of the executive branch, a coequal branch of government under the Federal Constitution.   Accordingly, the judicial branch recognizes a special presidential communications privilege.  The reasoning that animates the presidential communications privilege, however, does not exist in the instant case where the Governor's Office seeks to preclude the District Court from ordering it to comply with a discovery subpoena. The Governor's Office does not represent a coequal branch of government vis-a-vis the federal judicial branch.  The court concludes that the proposed "executive communications privilege" is not part of the federal common law.  *See, e.g., Patterson v. Burge*, 451 F. Supp. 2d 947, 956 (N.D. Ill. 2006)  ("The court finds no federal authority for extending to a state governor the presidential communications privilege."), *objections sustained on other grounds*, 2007 WL 1498974 (N.D. Ill. 2007).

The Governor's Office does hold a deliberative process privilege, which *is* a creature of federal common law.  *Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923, at *1 (D. Ariz. 2014);  *see also* Fed.R.Evid. 501. The deliberative process privilege "protects documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Karnoski v. Trump*, 926 F.3d

1180, 1203 (9th Cir. 2019)  "It was developed to promote frank and independent discussion among those responsible for making governmental decisions . . . and also to protect against premature disclosure of proposed agency policies or decisions." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). "The ultimate purpose of the privilege is to protect the quality of agency decisions." *Id.*

"A document must meet two requirements for the deliberative process privilege to apply." *Warner Commc'ns Inc.*, 742 F.2d at 1161.  "First, the document must be predecisional—it must have been generated before the adoption of an agency's policy or decision." *Id.*  "Second, the document must be deliberative in nature, containing opinions, recommendations, or advice about agency policies." *Id.*  "Purely factual material that does not reflect deliberative processes is not protected." *Id.*  The court assumes, without deciding, that all 17 documents are predecisional and deliberative.

"The deliberative process privilege is a qualified one." *Warner Commc'ns Inc.*, 742 F.2d at 1161.  "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.* "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.*  "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir.1988).

This court concludes first that the documents are relevant.  *See Warner Commc'ns Inc.*, 742 F.2d at 1161.  Toomey claims that the Plan Exclusion is intentional discrimination in violation of Title VII and the Equal Protection Clause of the Fourteenth Amendment.  As the court explained above, Toomey has evidence that the Governor's Office was involved in the decision to maintain the Exclusion.  A request for documents held by the Governor's Office on the issue of "surgery to treat gender dysphoria" in connection with "insurance coverage for such

surgeries" seems reasonably calculated to uncover the thought processes behind the decisions to cover or deny coverage for those procedures. If those documents reveal discriminatory intent in connection with insurance schemes other than the Plan Exclusion, which is at issue here, it seems plausible that that discriminatory intent also animated the decision to maintain the Plan Exclusion. *See also Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923, at *3 (D. Ariz. 2014) (Equal Protection claim requires the court to consider the "actual intent" behind the policy in question.). This factor favors disclosure.

Under the second *Warner* factor, the court considers "the availability of other evidence." *Warner Commc'ns Inc*., 742 F.2d at 1161. The court recognizes that the 17 documents at issue here do not relate directly to the Plan Exclusion that is the focus of the present litigation. Instead, they relate to other health insurance plans. (Doc. 202, p. 5) (punctuation modified) Documents that relate directly to the Plan Exclusion are potentially more relevant than the 17 documents that relate to other insurance plans. This factor favors the Governor's Office.

The third *Warner* factor requires the court to consider the government's role in the litigation. *Warner Commc'ns Inc*., 742 F.2d at 1161. In this case, the government is not a defendant, it is a third-party. It is not, however, a *disinterested* third-party. As the court explained above, Toomey has evidence that the Governor's Office was involved in the decision to maintain the Exclusion. The Governor's Office concedes the point. *See* (Doc. 208, p. 2, n. 1) Where there is a claim that a prior decision was the product of intentional discrimination in violation of the Constitution and federal law, it is reasonable to expect that the office that participated in that decision should be required to disclose documents related to the motivation of the decision makers. This factor strongly favors disclosure. *See* Fed.R.Civ.P. 1; *In re Sealed Case*, 121 F.3d 729, 738 (D.C.Cir.1997) ("[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government."); *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) ("[I]t seems rather

obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination."), *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998).

The fourth *Warner* factor requires the court to consider "the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Warner Commc'ns Inc*., 742 F.2d at 1161.  Ordinarily, it might be assumed that disclosure of predecisional documents would make it difficult for governmental agencies to attract candid opinions in the future because parties might withhold from consideration unpopular opinions for fear that they might become public.  The court finds that this general concern is of less importance in the present case because Arizona law generally favors disclosure of governmental documents.

"Arizona has a policy in favor of full and open disclosure, as evidenced by Arizona's open meetings law."  *Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923, at *3 (D. Ariz. 2014)  (*citing Rigel Corp. v. State*, 225 Ariz. 65, 72–73, 234 P.3d 633, 640–41 (App.2010) ("Arizona recognizes a legal presumption in favor of disclosing public records.")).  Perhaps for this reason,  "Arizona courts have not recognized a deliberative process privilege under state law."  *Id.*  "Arizona state government officials, therefore, should reasonably expect that their deliberations in crafting policy are open to public scrutiny," and persons giving advice to Arizona government officials should ordinarily assume that their advice will not be hidden from the public gaze.  *Id.*  Granting the pending motion will not disturb settled expectations in Arizona concerning the public nature of governmental records.  The court finds that the disclosure sought here will have only a minimal adverse effect on future healthcare coverage deliberations.

The Governor's Office argues that the adverse effects of disclosure would be enormous because "disclosure of the scope demanded here is virtually limitless, *i.e.,* exceeding the actual decision/Exclusion/Plan at issue and extending to executive communications and deliberative documents relating to ***other decisions and policies*** simply because those documents contain a reference to 'gender affirming surgery'."  (Doc. 208, p. 17)  (emphasis in original)  In fact,

1   Toomey's subpoena seeks documents held by the Governor's Office that reference "surgery to
2   treat gender dysphoria" in connection with "insurance coverage for such surgeries."  He cabins
3   his request by specifying that the documents' mention of "surgery to treat gender dysphoria"
4   must be within the context of "insurance coverage."  The court further recalls that in the
5   pending motion only 17 documents are at issue. The court finds that the scope of Toomey's
6   subpoena is not "virtually limitless."  *See* (Doc. 208, p. 17)

7        After considering the four *Warner* factors, the court concludes that the plaintiff's motion,
8   filed on June 4, 2021, to compel production of documents should be granted.  *See Warner*
9   *Commc'ns Inc.*, 742 F.2d at 1161.  The plaintiff's "need for the materials and the need for
10  accurate fact-finding override the government's interest in non-disclosure."  *Id.*;  *See, e.g.*,
11  *Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923, at *1, 3 (D. Ariz. 2014)  (Deliberative
12  process privilege did not shield documents "concerning the policy of the Governor's Office and
13  the Arizona Department of Transportation . . . to deny driver's licenses to individuals granted
14  deferred action status under the 2012 Deferred Action for Childhood Arrivals . . . program.").

15

16        IT IS ORDERED that the plaintiff's motion, filed on June 4, 2021, to compel production
17  of documents is GRANTED.  (Doc. 202)  The Governor's Office shall produce the 17
18  documents sought in that motion within 14 days of the date of this order.

19

20        DATED this 27th day of August, 2021.

21

22

23

24        _____
25                    Leslie A. Bowman
                  United States Magistrate Judge
26

27

28                                          - 10 -