COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Telephone 602•252•8400

Daniel G. Dowd (012115)
Email: ddowd@CDQLaw.com
Betsy J. Lamm (025587)
Email: blamm@CDQLaw.com
Kaysey L. Fung (032585)
Email: kfung@CDQLaw.com
   Attorneys for Non-Party The Office of
   Governor Douglas A. Ducey

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Russell B. Toomey,<br><br>                   Plaintiff,<br><br>vs.<br><br>State of Arizona; The Arizona Board of Regents, D/B/A University of Arizona, a governmental body of the State of Arizona; et al.,<br><br>                   Defendants. | Case No.  4:19-CV-00035-RM-LAB<br><br>**THE OFFICE OF GOVERNOR DOUGLAS A. DUCEY'S OBJECTIONS TO ORDER (DOC. 238)**<br><br>**(Oral Argument Requested)** |

Pursuant to Federal Rule of Civil Procedure ("Rule") 72(a) and 28 U.S.C.A. § 636(b)(1), The Office of Governor Douglas A. Ducey (the "Governor's Office") objects to the August 27, 2021 Order entered by United States Magistrate Judge Leslie A. Bowman (Doc. 238) (the "Order") granting Plaintiff Russell B. Toomey's June 4, 2021 Motion for Entry of An Order Compelling the Production of Documents (Doc. 202) ("Motion"). Respectfully, the Order is clearly erroneous and contrary to the law because:

(1) The Order misconstrues the scope of the Subpoena at issue, inaccurately stating that the Subpoena was narrowly tailored to seek relevant documents. The Magistrate's erroneous construction of the Subpoena serves as the foundation for the Magistrate's faulty relevancy conclusion and privilege analysis.

(2) The Order improperly rejects the Governor's Office's executive communications privilege, erroneously concluding the privilege "is not part of the federal common law."

(3) While recognizing the Governor's Office holds a deliberative process privilege over the documents at issue, the Order misapplies the *Warner* factors to erroneously conclude the Plaintiff has overcome the privilege.

(4) The Order requires blanket production of privileged documents without the Magistrate first conducting an *in camera* review to confirm the documents' relevancy, excise irrelevant material, and ensure the Governor's Office's privilege is not unnecessarily breached. The Magistrate erroneously treated communications within the State's Executive Branch as just another source of information.

Each of these errors warrants reversal of the Order. *See, e.g.*, Fed. R. Civ. P. 72(a); *Raghav v. Wolf*, 2021 WL 763850, at *2 (D. Ariz. Feb. 26, 2021) (factual findings are "clearly erroneous" if the District Court is "left with the definite and firm conviction that a mistake has been committed"; a decision is "contrary to law" if the magistrate "applies an incorrect legal standard or fails to consider an element of the applicable standard" (citations omitted)); *accord Morgal v. Maricopa Cnty. Bd. Of Sup'rs*, 284 F.R.D. 452, 458–59 (D. Ariz. 2012).

**I.    THE ORDER MISCONSTRUES THE SCOPE OF PLAINTIFF'S SUBPOENA.**

The Magistrate's misreading of the scope of the Subpoena infected her analysis and led to a

clearly erroneous outcome. Plaintiff's Motion sought to compel 17 documents technically responsive to a February 2021 Subpoena, which broadly demanded all documents over a ten-year period that contain any reference to surgery to treat gender dysphoria:

> **All documents** created or transmitted **from January 1**, **2011 to the present regarding surgery to treat gender dysphoria** (also referred to as "transition related" surgery, "sex reassignment" surgery, "gender reassignment" surgery, "sex change," "transgender surgery" or "transsexual surgery"), **including but not limited to documents regarding insurance coverage** for such surgeries ….

[*See* Doc. 202-3, Ex. 2, p. 4 (emphasis added).]

The Subpoena was unbounded: if a document mentioned gender-related surgery, it was responsive and must be produced. The Order, however, repeatedly mischaracterizes the Subpoena. [*See* Order (Doc. 238) at 1:18-21 & 2:25-3:2 (selectively quoting the Motion's mischaracterization of the Subpoena, omitting the "but not limited to" language), 7:26-8:2 & 9:27-10:4 (mischaracterizing the Subpoena as limited to documents "on the issue of 'surgery to treat gender dysphoria' in connection with 'insurance coverage for such surgeries'").] Indeed, the Order says Plaintiff "cabins his request by specifying that the documents' mention of 'surgery to treat gender dysphoria' must be within the context of 'insurance coverage.'" [*Id.* at 10:2-4.] This statement is patently incorrect.

The impact of the Magistrate's misreading of the Subpoena permeates the Order, as the Magistrate, operating under the false impression that a responsive document necessarily relates to insurance coverage for gender dysphoria, equates a document's responsiveness with its relevancy. Further compounding this error, the Order states that the Governor's Office's own description of the documents reveals their relevancy. Yet, to support this reference, the Order relies exclusively on Plaintiff's self-serving assertions regarding the content of documents he has not seen. [*See id.*, at 3-4 (citing Plaintiff's Motion as support for its description of the documents).] Finally, the Order repeats the same misconstruction of the Subpoena's scope in applying the *Warner* factors to overcome the Governor's Office's assertion of deliberative process privilege. [*Id.* at 8.]

The Order's erroneous characterization of the Subpoena may have been caused by Plaintiff's repeated, but unsupported, characterizations. For example, during oral argument on the Motion, counsel for Plaintiff stated the "request here is no mere fishing contest….plaintiff has made a

2

narrowly tailored request for just 17 documents that are both relevant and proportional to the needs of this specific case." [August 11, 2021 Telephonic Motion Hearing, attached at **Exhibit A**, at 8:5-9.] Counsel later stated: "Plaintiff has focused on just 17 [documents] because they explicitly relate to health care coverage and policies." [*Id.* at 43:2-3.] These statements are false. Plaintiff did not serve a narrowly tailored request for 17 documents; he served an expansive subpoena that resulted in the Governor's Office producing hundreds of documents (thousands of pages). [*See id.* at 19:16-25, 37:23-25.] Plaintiff also did not focus his Motion on 17 documents "because they explicitly relate to health care coverage and policies"; he moved to compel every single document withheld solely on the basis of executive privilege, regardless of the documents' content (about which Plaintiff, by definition, can only speculate). [*See* Doc. 202, at 2-3, 6.] Regardless of the source of the error, the Magistrate's findings rely upon a misreading of the Subpoena and must be reversed.

Finally, the Magistrate's conclusion – again founded upon this misconstruction of the Subpoena – that the subject documents are "relevant" under Rule 26 imposes an impermissibly broad standard on a non-party and disregards on-point authority. As explained in Governor's Office's Opposition (but not mentioned in the Order), courts in the Ninth Circuit and Arizona have repeatedly recognized heightened relevancy requirements for non-party discovery. *See Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted … the 'necessary' restriction may be broader when a nonparty is the target of discovery."); *BBK Tobacco & Foods LLP v. Skunk Inc.*, 2020 WL 2395104, at *2 (D. Ariz. May 12, 2020) ("In the third-party subpoena context, however, courts have often demanded a stronger-than-usual showing of relevance[.]"); *AmSurg Holdings Inc. v. Anireddy*, 2020 WL 1703617, at *2 (D. Ariz. Apr. 8, 2020) ("[A] party must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure.'" (*quoting R. Prasad Indus. v. Flat Iron Env't. Sols. Corp.*, 2014 WL 2804276, at *2 (D. Ariz. June 20, 2014)). The Magistrate erroneously failed to impose, and Plaintiff has not met, this burden to demonstrate the relevancy of the documents at issue. As the Magistrate based the relevance finding on the erroneous assumption that a responsive document mentions insurance coverage for gender dysphoria, the Order should be reversed or, at minimum, vacated to permit the Magistrate to conduct the *in camera* review discussed *infra.*

## II. THE ORDER WRONGLY REJECTS THE EXECUTIVE COMMUNICATIONS PRIVILEGE.

The executive communications privilege protects from disclosure communications involving, and documents solicited or received by, the chief executive or his/her immediate advisors. *See Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019). The purpose of the privilege is to facilitate governmental decision-making and ensure executives are informed by candid advice. *In re Sealed Case*, 121 F.3d 729, 741, 747-53 (D.C. Cir. 1997); *accord United States v. Nixon,* 418 U.S. 683, 708 (1974) (addressing the expectation of confidentiality of communications with the President, which has "all the values to which we accord deference for the privacy of all citizens and, added to those values, is the necessity for protection of the **public interest** in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking" (emphasis added)). "The privilege is fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." [Order (Doc. 238), at 5:20-22 (quoting *Nixon*, 418 U.S. at 708).]

The purpose of the privilege and the public interests at stake apply equally to the Governor's Office. *See Hayes v. Reed*, 1997 WL 125742, *9 n.8 (E.D. Pa. Mar. 13, 1997). As *Hayes* explained:

> Plaintiffs also overlook the fact that the executive privilege serves an important public function. **The Governor, as chief executive, must be accorded a qualified power to protect the confidentiality of communications pertaining to the function of the executive branch. This power is analogous to the qualified constitutionally-based privilege of the President, which is "fundamental to the operation of government** and inextricably rooted in the separation of powers...." Confidentiality is vital …. More importantly, this executive privilege protects and insulates the sensitive decisional and consultative responsibilities of the Governor which can be discharged most effectively with privacy and security.

*Id.* (emphasis added) (quoting *Nixon,* 418 U.S. at 708). Another district judge has aptly explained in the context of deliberative process privilege that there is "no principled distinction" between state and federal officials in the context of this privilege: "If there exists a need to protect candid, private communications among federal executive officials and their staff, the need to protect candid, private communications among county officials and their staff is no less compelling." *United States v. Irvin*, 127 F.R.D. 169, 172 (C.D. Ca. 1989). Federal Rule of Evidence 501 requires that this Court interpret the common law of privilege in light of reason and experience. *Accord Trammel v. United States*, 445 U.S. 40, 47-53 (1980) (explaining that Rule 501 reflects an intent to afford courts the

flexibility to develop rules of privilege on a case-by-case basis and leave the door open to change). Applying this authority and respecting the reality that the purpose of the privilege is no less fundamental to the operation of the Governor's Office than to the President's Office, an executive communications privilege naturally extends to the Governor's Office.  The Order's flat rejection of the Governor's Office's executive communications privilege based on the absence of separation of powers considerations improperly ignores the critical policy justifications underlying the privilege.[1]

The Order further references the lack of Ninth Circuit precedent extending the executive communications privilege to governors.  [Order (Doc. 238), at 6:6-9.]  While true that **neither party** has identified Ninth Circuit authority accepting or rejecting the privilege, that fact is not dispositive[2] and does not negate the multiple other district courts that have recognized this privilege for state governors.  *See Merritt v. State*, CV17-4540-PHX-DGC, ¶ 2(b) (D. Ariz. March 19, 2018) (Judge Campbell allowing the Governor's Office to assert executive communications privilege to withhold documents, subject to preparation of a privilege log) (attached to the Motion at Doc. 202-3, Ex. 13-F); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 385 F. Supp. 3d 130, 134-35 (D.P.R. 2019) (recognizing existence of executive privilege protecting communications between governor and his advisors), *objections overruled*, 390 F. Supp. 3d 311 (D.P.R. 2019); *JM through Foley v. N.M. Dep't of Health*, 2009 WL 10698414, at *3, 6 (D.N.M. Aug. 20, 2009) (applying executive privilege to the New Mexico Governor's Office to shield executive branch communications); *Hayes*, 1997 WL 125742 at n.8 (recognizing executive privilege for state governors); *Haber v. Evans*, 2004 WL 963995, *4 (E.D. Pa. May 4, 2004) (applying executive privilege to state inspector general; describing the privilege as protecting "the sensitive decisional and consultative responsibilities of the Governor").  The Magistrate ignores these cases (and their underlying rationale) and relies on a single Northern

---

[1]  The Order further creates problematic federalism concerns, effectively suggesting that federal courts can – through the recognition or rejection of executive privileges – directly affect the "fundamental operation" of the highest executive office within State government.  *See, e.g. Bond v. U.S.*, 564 U.S. 211, 221 (2011) ("The allocation of powers in our federal system preserves the integrity, dignity, and residual sovereignty of the States. The federal balance is, in part, an end in itself, to ensure that States function as political entities in their own right.").

[2]  Indeed, this Court recently recognized a federal law enforcement privilege despite no Ninth Circuit authority formally recognizing the privilege.  *See Moore v. Garnand*, 2020 WL 1432838, at *5 (D. Ariz. Mar. 24, 2020), *clarified on denial of reconsideration*, 2020 WL 2308481 (D. Ariz. May 8, 2020).

District of Illinois case for the proposition that "[t]he court finds no federal authority for extending to a state governor the presidential communications." [Order (Doc. 238), at 6:18-22 (quoting *Patterson v. Burge*, 451 F. Supp. 2d 947, 956 (N.D. Ill. 2006)).] Given the clear policy and purpose underlying the privilege, *Patterson* reached the wrong result.[3] The Order's rejection of executive communications privilege for the Governor's Office is contrary to the law and must be reversed.

### III. THE ORDER MISAPPLIES THE *WARNER* FACTORS TO IMPROPERLY SURMOUNT THE DELIBERATIVE PROCESS PRIVILEGE.

There is no dispute that the deliberative process privilege extends to the Governor's Office, protecting from disclosure communications relating to its decision-making process. [*See* Order (Doc. 238), at 6:23-24.] Similar to the executive communications privilege, "the ultimate purpose of the privilege is to protect the quality of agency decisions." *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The privilege "is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.' To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (citation omitted). Although the privilege is qualified, a plaintiff may only obtain protected, "deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Warner Commc'ns*, 742 F.2d at 1161; *accord In re Sealed Case*, 121 F.3d at 737–38.

Although correctly recognizing that the Governor's Office holds a deliberative process privilege, the Order erroneously applies the factors articulated by the Ninth Circuit to overcome the privilege. [*See* Order (Doc. 238), at 7-10 (addressing the *Warner* factors, including (1) the relevance of the evidence sought, (2) the availability of other evidence, (3) the Governor's Office's role in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussions).]

---

[3] While the Northern District of Illinois has a history of refusing to extend executive privileges to state entities, the District of Arizona has rejected that approach. *See Wilson v. Maricopa Cnty.*, 2006 WL 842247, at *1 (D. Ariz. Mar. 29, 2006) (recognizing that the deliberative process privilege extends to local governments; distinguishing 2001 decision from the Northern District of Illinois that held the opposite).

6

In particular, the Order's analysis of the first factor is clearly erroneous, as the Magistrate's relevancy analysis hinged on the misconstruction of the Subpoena described above. [*See id.* at 7:22-8:7 (inaccurately describing the Subpoena as being limited to documents "in connection with 'insurance coverage for such surgeries'").] The Order then erroneously concludes that the first factor favors disclosure because the mischaracterized Subpoena (**not** the subject documents) "seems reasonably calculated to uncover the thought processes," which might "reveal discriminatory intent" in other circumstances, which might be relevant to whether discriminatory intent animated the exclusion at issue. [*Id.* at 7:26-8:5.] Whether an inaccurately framed Subpoena could encompass documents that might be relevant to Plaintiff's claims is **not** the governing standard – the documents themselves should be "highly relevant" to the Plaintiff's claims. *See Ariz. Rehabilitation Hosp., Inc. v. Shalala*, 185 F.R.D. 263, 271 (D. Ariz. 1998) (applying the *Warner* factors and finding materials "not highly relevant," as they did not include "the agency's statement of what it will do and why"); *cf. ICM Registry, LLC v. U.S. Dep't of Com.*, 538 F.Supp.2d 130, 133 (D.D.C. 2008) ("If every hint of marginal misconduct sufficed to erase the privilege, the exception would swallow the rule."). The Magistrate's conclusion that the subject documents are relevant based on a misconstrued Subpoena and speculation about the documents' content is erroneous.[4]

The Magistrate also erred in applying the fourth *Warner* factor. Court after court has recognized the "obvious realization" that candor will be chilled and the quality of governmental decisions will suffer if officials are "forced to operate in a fishbowl." *E.g. Sierra Club, Inc.*, 141 S. Ct. at 785 (citing cases); *Nixon*, 418 U.S. at 705 ("Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process."). The Order improperly dismisses this "obvious" reality. Instead, relying almost exclusively on *Arizona Dream Act Coalition v. Brewer*, the Magistrate concludes that "the disclosure sought here [of privileged documents] will have only a minimal

---

[4] As the Order notes, the subject documents do not address the exclusion at issue in this case and evidence concerning that exclusion has been produced. [Order (Doc. 238), at 8:9-13.] Thus, even if the documents were somehow marginally relevant, Plaintiff has "little need" for them. *Warner Commc'ns*, 742 F.2d at 1161-62 (finding documents relevant, but concluding that the requesting party "had little need" for them in view of the availability of other evidence).

adverse effect on future healthcare coverage deliberations" because Arizona's public records law favors "full and open disclosure." [Order (Doc. 238), at 9.]

The Magistrate misinterprets Arizona public records law, which is actually fatal to her conclusion. While Arizona indeed favors disclosure of public records, privileged documents do **not** fall within the scope of records subject to disclosure. *See* A.R.S. §§ 41-1279.05, 49-1403 (addressing exceptions to the public records laws); *Fann v. Kemp*, 2021 WL 3674157, at *3, ¶ 16 (Ariz. App. Aug. 19, 2021) ("[T]hough there is a presumption in favor of disclosing public records, this presumption can be rebutted by a demonstration of 'confidentiality, privacy, or the best interests of the state'. . . . If any of these interests outweigh the public's right to access the records," the public entity can refuse disclosure. (citing *Scottsdale Unified Sch. Dist. No. 48 of Maricopa Cnty. v. KPNX Broad. Co.*, 191 Ariz. 297, 300, ¶ 9 (1998)); *Mathews v. Pyle*, 75 Ariz. 76, 80 (1952) ("documents received by the Governor in his official capacity" are "subject to inspection by an interested citizen unless they are confidential or of such a nature that it would be against the best interests of the state to permit a disclosure of their contents"). The Magistrate's rationale is circular. Arizona's public policy favoring open public records does not justify disclosure of privileged materials from the Governor's Office, as privileged materials are not subject to disclosure under that public records law.

The Order next suggests that disclosure of the subject documents will only have a "minimal adverse effect on future healthcare coverage deliberations" because the Subpoena is supposedly narrowly tailored and the Order only requires production of 17 documents. [*See* Order (Doc. 238), at 9-10.] Respectfully, this analysis misses the point. As set forth above, the Subpoena is not narrowly tailored and the Magistrate's analysis of this fourth *Warner* factor is again based on a misunderstanding of the Subpoena. [*See id.* at 10:1-4.] The breadth of the Subpoena weighs against disclosure, not in favor of it. [*See* Opposition (Doc. 208), at 16-17.] Moreover, the number of documents at issue is not the determining factor. Disclosure of even one privileged document can have a chilling effect on future deliberations within the Governor's Office. The focus here must be, as a matter of law and logic, on the extent to which disclosure will hinder frank and independent discussions in the future (which, in turn, hinders candid, informed decision making). *See, e.g.*, *Shalala*, 185 F.R.D. at 271 (disclosure of privileged documents "would hinder the Agency's **future**

8

rulemaking ability as it would stifle 'creative debate and candid consideration of alternatives' and undermine 'the integrity of the decision-making process itself'" (emphasis added)).  Applying the *Warner* factors in view of the **actual** scope of the Subpoena, the actual scope of Arizona public records law (and its exceptions), the Governor's Office's interest in the confidentiality of privileged communications, and the obvious risk of harm from disclosure, Plaintiff has not overcome the privilege and the Magistrate's Order is clearly erroneous.

The Magistrate's deliberative process analysis further improperly applied the *Warner* factors to all 17 subject documents as a whole, without considering classes of documents separately.  This error also warrants reversal of the Magistrate's Order.  *See Karnoski*, 926 F.3d at 1206 (explaining "the district court should consider classes of documents separately when appropriate" and recognizing that certain types of documents "may require greater deference").  Had the Magistrate reviewed the documents *in camera* as requested, she could have avoided many of the errors in the Order's deliberative process privilege analysis.  *See, e.g.*, *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 980, 982 (9th Cir. 2009); *Shalala*, 185 F.R.D. at 270.

### IV. THE MAGISTRATE SHOULD CONDUCT AN *IN CAMERA* REVIEW.

Because of the tension created by the invocation of the executive communications or deliberative process privilege, courts must first "explore other avenues" for resolving a discovery dispute.  *See Karnoski*, 926 F.3d at 1207 (vacating discovery order involving executive communications and deliberative process privileges "because the district court did not fulfill its obligation 'to explore other avenues, short of forcing the Executive to invoke privilege'").  These avenues include assessing the relevancy of the subject documents before addressing privilege claims and conducting an *in camera* review to confirm the documents' relevancy.  *See id.*  *In camera* review is common in cases involving relevancy or privilege concerns.  *See, e.g.*, *Lahr*, 569 F.3d at 980, 982 (district court reviewed documents *in camera* to confirm application of deliberative process privilege; Ninth Circuit also reviewed the documents *in camera* to assess the same); *Wilson v. Larson*, 2019 WL 9078642, *10–11 (D. Ariz. Nov. 14, 2019) (confirming, after *in camera* review, the documents involved an unrelated investigation and were not relevant to petitioner's claims), *report and recommendation adopted*, 2020 WL 3129691 (D. Ariz. June 12, 2020); *Acosta v. Austin Elec. Servs., LLC*,

9

2018 WL 10799180 (D. Ariz. Dec. 6, 2018) (conducting *in camera* review of documents prior to deciding deliberative process privilege assertions); *Shalala*, 185 F.R.D. at 270 (conducting *in camera* review to determine, *inter alia*, applicability of the deliberative process privilege, the existence of factual material that could be excised from the deliberative materials, and "whether Plaintiffs' need for the document[s] outweighs the Government's interest in nondisclosure"). When executive communications are at issue, *in camera* review is required prior to ordering production. *Karnoski*, 926 F.3d at 1205-06 ("[T]he district court must conduct *in camera* review before any materials are turned over to Plaintiffs to excise non-relevant material and 'ensure that presidential confidentiality is not unnecessarily breached.'").

Without addressing the specific request for *in camera* review, the Order compels production of privileged documents the Magistrate presumes are relevant based on their responsiveness to a misinterpreted Subpoena. Respectfully, the Magistrate could not adequately assess relevancy or the Governor's Office's privilege assertions without first reviewing the documents *in camera*. The Magistrate's failure to conduct an *in camera* review warrants reversal of her decision. *Cf. In re Sealed Case*, 121 F.3d at 740 (explaining that no deference is given to a district court's ruling on a subpoena that "rests upon a misapprehension of the relevant legal standard," "is unsupported by the record," is made without explanation, or is made without *in camera* review of the subject documents (citations omitted)). As only 17 documents are at issue, review of the documents is necessary in view of the importance of the privileges at issue. Prior to ordering production of any of the privileged documents, the District Court, or at minimum the Magistrate, must review the subject documents *in camera* to determine their relevance, excise irrelevant material, and ensure the Governor's Office's significant interests are not unnecessarily breached.

### V. CONCLUSION.

For the reasons set forth above, the findings in the Magistrate's Order are clearly erroneous and the decisions are contrary to law. The Governor's Office respectfully requests that the Court reverse the Order and instruct the Magistrate to deny Plaintiff's Motion. Alternatively, at minimum, the Court should vacate the Order and order *in camera* review of the subject documents.

. . .

RESPECTFULLY SUBMITTED this 10th day of September, 2021

        COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
  Attorneys for Non-Party The Office of
  Governor Douglas A. Ducey

By:    */s/ Betsy J. Lamm*
        Daniel G. Dowd
        Betsy J. Lamm
        Kaysey L. Fung

