**Victoria Lopez- 330042**
**Christine K Wee– 028535**
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
Email: **vlopez@acluaz.org**
Email: **cwee@acluaz.org**


**Joshua A. Block\***
**Leslie Cooper\***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail:**jblock@aclu.org**
E-Mail: **lcooper@aclu.org**
*Admitted Pro hac vice*

**Wesley R. Powell\***
**Matthew S. Freimuth\***
**Jordan C. Wall\***
**Victoria A. Sheets\***
**Justin Garbacz\***
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
E-Mail: **wpowell@willkie.com**
E-Mail: **mfreimuth@willkie.com**
E-Mail: **jwall@willkie.com**
E-Mail: **vsheets@willkie.com**
E-Mail: **jgarbacz@willkie.com**

*Admitted Pro hac vice*


*Attorneys for Plaintiff Russell B. Toomey*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Russell B. Toomey**, | 4:19-cv-00035-TUC-RM (LAB) |
| Plaintiff, | |
| v. | |
| **State of Arizona; Arizona Board of Regents, d/b/a University of Arizona**, a governmental body of the State of Arizona; **Ron Shoopman**, in his official capacity as chair of the Arizona Board of Regents; **Larry Penley**, in his official capacity as Member of the Arizona Board of Regents; **Ram Krishna**, in his official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour**, in his official capacity as Treasurer of the Arizona Board of Regents; **Lyndel Manson**, in her official capacity as Member of the Arizona Board of Regents; **Karrin Taylor Robson**, in her official capacity as Member of the Arizona Board of Regents; **Jay Heiler**, in his official capacity as Member of the Arizona Board of Regents; **Fred Duval**, in his official capacity as Member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration, | **PLAINTIFF'S RESPONSE TO GOVERNOR'S OFFICES' OBJECTIONS TO ORDER (DOC. 238)**<br><br>**(EXPEDITED CONSIDERATION REQUESTED)** |
| Defendants. | |

1

Plaintiff, Dr. Russell B. Toomey, on behalf of himself and the certified Classes ("Plaintiff"), through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 72 and Arizona Local Rule 7.2, hereby submits this Response to the Governor's Office's Objections (the "Objections") (Doc. 239) to Magistrate Judge Bowman's Order granting Plaintiff's Motion to Compel Production of Documents (the "Order") (Doc. 238).[1]  Given the upcoming dispositive motion deadline in this case (Doc. 234), and the fact that depositions have been held in abeyance pending resolution of this Motion, Plaintiff requests expedited consideration of the Order.[2]

## THE COURT SHOULD AFFIRM THE MAGISTRATE'S ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

Judge Bowman's Order compels the Governor's Office to produce just 17 documents—all of which, by virtue of being responsive to Plaintiff's single document request, involve (i) a discussion of "gender reassignment surgery" (ii) among members of the Governor's Office, which (iii) undisputedly played a central role in the decision to maintain the Exclusion that Plaintiff seeks to prove is discriminatory.  Moreover, the Governor's own descriptions of the documents show that they relate to policy and legislation regarding transgender healthcare, *i.e.* the central issue in this case.  As Judge Bowman properly recognized, these documents very likely shed light on any general animus or ideology (or lack thereof) behind Arizona's decision to maintain the Exclusion, even if they do not directly relate to the Exclusion or mention health insurance.  And they are not shielded by either the executive communications or

---

[1] Capitalized terms shall have the same meaning as attributed to such identical terms in Plaintiff's Motion to Compel (Doc. 202) (the "Motion" or "Mot.") and Reply in Support of the Motion (Doc. 210) (the "Reply"), unless otherwise defined herein.

[2] "[T]he parties have agreed to wait for resolution" of this motion and Plaintiff's May 20 motion to compel the production of documents withheld by State Defendants (Doc. 195), currently being considered by this Court on State Defendants' July 12 objections (Doc. 233) to Judge Bowman's June 28 order on that motion (Doc. 213) "before conducting outstanding depositions of fact witnesses in an effort to avoid unduly burdening witnesses who may otherwise have their depositions re-noticed."  (Doc. 233 at 3, No. 4 (Granted at Doc. 234))

deliberative process privilege, neither of which allow a governor to conceal potential evidence of discrimination in a federal civil rights action challenging state action.

Far from being "clearly erroneous" or "contrary to law," Judge Bowman's ruling is squarely grounded in the governing legal standards.   The Governor's Objections provide no valid reason to disturb Judge Bowman's sound application of those standards to the circumstances here.  (Objections at 1; Fed. R. Civ. P. 72(a); *Jones v. Davis*, CV-19-08055-PCT-MTL-JZB, 2021 WL 2012667, at *1 (D. Ariz. May 20, 2021) (affirming magistrate ruling on non-dispositive matter under clearly erroneous standard of review, citing Fed. R. Civ. P. 72(a)).  The Court should also reject the Governor's proposed *in camera* review, which will only delay the (already delayed) resolution of Plaintiff's claims.  This Court should affirm the Order, and direct the Governor to produce the 17 withheld documents immediately.

## ARGUMENT

## I.   THE COURT PROPERLY CONCLUDED THAT THE MOTION SEEKS RELEVANT DOCUMENTS

The Objections argue that Judge Bowman "misread[] the scope of the subpoena," which rendered the Order—specifically its finding regarding relevance—"clearly erroneous."  (Objections 1-2)  The Governor both (i) confuses the scope of the Subpoena with the scope of the Motion and the 17 documents it seeks, and (ii) provides no credible arguments for rejecting Judge Bowman's apt determination that the documents are relevant to this case.

### A.  The Scope of Subpoena Is Not Before The Court

As a threshold matter, the Order is not premised on the scope of the Subpoena.[3] The Governor conflates the scope of the Subpoena (which returned only 414 documents

---

[3] The Order *does* properly reject the Governor's Office's characterization of the Subpoena as "virtually limitless," in the context of evaluating the deliberative process privilege and the potential impact of disclosure on Arizona state policymaking.  (Order 9-10)  But even if the Subpoena were overbroad in scope (it is not), the Plaintiff only sought to compel 17 of the 67 withheld documents (Doc. 202-3, Ex. 7), and the Order only implicates those 17 documents.

total) with Judge Bowman's finding as to the relevance of the 17 documents sought by Plaintiff's Motion.  (Order at 4 ("The court concludes first that the [17] documents are relevant pursuant to Rule(26)(b)(1).")   Indeed, at oral argument, counsel to the Governor's Office acknowledged that the issue before the Court is *not* the scope of the Subpoena, but the discoverability of 17 documents enumerated in Plaintiff's Motion. (Doc. 239-1, Aug. 11, 2021 Hr'g Tr. at 22) (**Judge Bowman**: "[. . .] but today we are only talking about 17 documents. Isn't that a fair analysis?"; **Mr. Dowd**: "Yes. They've moved on 17 documents.")  If the Governor genuinely believed that the Subpoena (which contains a single document request, limited to the subject of "surgery to treat gender dysphoria") was overbroad or unduly burdensome, it could have brought a motion to quash the Subpoena, which it failed to do.  (Doc. 239-1, Aug. 11, 2021 Hr'g Tr. at 38) (Plaintiff's counsel noting that "we are here on [P]laintiff's motion to compel, not the Governor's Office motion to quash the subpoena.")  The Governor's Office's belated attack on the scope of Plaintiff's Subpoena is a red herring, and does not affect Judge Bowman's Order, much less render it clearly erroneous or contrary to the law.

**B.  Judge Bowman Correctly Determined That The Documents Are Relevant**

Judge Bowman properly concluded that the 17 documents at issue are relevant. (Order at 2, 4)  During discovery, relevance is "construed broadly" to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  (Order at 3 (citing *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020))).  Because "[a] major issue in this case is whether the defendants intentionally discriminated against transgender individuals," and "the Governor's Office played a key role" in maintaining the Exclusion," it is "reasonable for [Plaintiff] to seek documents from the Governor's Office on the issue of intent."  (*Id.*)

It is well-established "that evidence of the [decision-maker's] discriminatory attitude *in general* is relevant and admissible to prove . . . discrimination."  *Heyne v.*

*Caruso*, 69 F.3d 1475, 1479–80 (9th Cir. 1995) (emphasis in original).[4]  As Judge Bowman properly observed, the "documents sought [by the Motion] are still relevant on the issue of intent even if they do not relate specifically to the Plan Exclusion." (Order at 4)  Indeed, the Governor concedes as much by disclosing the documents on its privilege log, which would not have been required had the documents not met the broad standard of discoverability under the Federal Rules.  Fed. R. Civ. P. 26(b)(1) and (b)(5) (requiring withheld documents to be logged only when they are "otherwise discoverable"); *Briggs v. Cty. of Maricopa*, No. CV-18-02684-PHX-EJM, 2021 WL 1192819, at *3, *7 (D. Ariz. Mar. 30, 2021) (noting that "the scope of discovery allowed by a [Rule 45] subpoena is identical to the scope of discovery under Rule 26," and finding that a privilege log need only include the "relevant and not overly broad" communications over which privilege is claimed.)  The Order correctly found that if the documents were responsive to the Subpoena, they must at least make some general reference to gender reassignment surgery or gender dysphoria, and therefore potentially reveal whether the Governor holds an ideological opposition or general hostility to transgender individuals, which bears on discriminatory motive.[5] (Order at 4 (citing cases))  The discussion of gender reassignment surgery or gender dysphoria in these documents is not made by just anyone, but rather the Governor's Office—which by its own admission was involved in the ultimate decision to maintain the Exclusion.  (Doc. 208 at 2, n.1)

Moreover, according to the *Governor's own supporting declaration*, the documents address not only gender reassignment or gender dysphoria, but also healthcare policy more specifically.  (*E.g.,* Doc 208-1 at Nos. 6 ("I can testify that, in general, the Documents relate to the state [ACA] benchmark plan, healthcare available

---

[4] Please see Plaintiff's Motion (Mot. at 8) for fully articulated arguments on the well-documented relevance of general intent.

[5] As Plaintiff argued in the Motion, the documents could also be relevant to undermining defendants' credibility with respect to their allegedly non-discriminatory explanations for the Exclusion.  (Mot. at 4).

through [AHCCCS], healthcare available through the Arizona Department of Corrections . . . or proposed legislation relating to healthcare")) Additionally, the 17 documents actually before the Court do not span a "ten-year period" (Objections at 3); almost all of them are confined to a three-day window that happens to align with proposed legislation to prohibit the coverage of gender-reassignment surgeries in the State of Arizona through Medicaid and the Department of Corrections. (*See* Mot. at 7-8; *id*. at nn.5-6 (summarizing documents)) Therefore, the Governor's own descriptions suggest the documents at issue are not just "relevant" in the broad sense contemplated by Federal Rules—but that they are *highly relevant*, and likely to be critical evidence in this case.

The Court's finding of relevance does not "impose[] an impermissibly broad standard on a non-party." (Objections 4)[6] As Judge Bowman recognized, the Governor's Office concedes that it was "involved in the decision to maintain the Exclusion," so is not a "disinterested third party." (Order at 8) Even if the Governor's Office were a disinterested party, it could hardly claim that the Order compelling 17 documents is overbroad or burdensome.

Nor is the Order undermined by any "false impression that a responsive document necessarily relates to insurance coverage for gender dysphoria." (Objections at 3) Judge Bowman's reasoning explicitly *rejects* the notion that a document is only relevant if it relates to the Exclusion (Order at 4), and does not condition relevance upon whether or not a document discusses "insurance coverage." To the contrary, the Order recognizes that documents evidencing general attitudes toward gender transition are relevant

---

[6] The cases cited by the Governor's Office (Objections at 4), in which courts balanced the interest of the party seeking discovery against the non-party's interest in non-disclosure, were all decided in the context of a motion to quash and are thus irrelevant here, as the Governor's Office did not file a motion to quash the Subpoena. Even if it had, such a motion would likely have been dismissed for the same reasons outlined in the Order, including the Governor's close involvement with the Exclusion. (*See* Order at 8)

(potentially *critical*, even) to Plaintiff's claims of discriminatory intent,[7] even if they do not squarely address the medical insurance coverage immediately at issue.  (*Id.*)

## II. THE ORDER PROPERLY REJECTS THE EXECUTIVE COMMUNICATIONS PRIVILEGE.

The Governor does not dispute that federal common law governs the claims of privilege at issue.  (Order at 5; Mot. at 9; Aug. 11, 2021 Hr'g Tr. at 32:14-16)  Further, the Governor's Office admits that it has not identified *Ninth Circuit* authority adopting the executive communications privilege.  (Objections 6)  The Court properly recognized that application of the executive communications privilege to state governors "is not part of *federal common law*."  (Order at 6 (emphasis added); *see also* Mot. at 9); a conclusion shared by federal courts across the country.  (Order at 6; Motion at 9-10 (listing cases))

Judge Bowman recognized, and rejected, the Governor's attempt to invoke the presidential communications privilege, which federal common law has previously reserved to the President,  by renaming it the "executive communications privilege," and citing inapposite cases.[8]  (Order at 6)  Judge Bowman correctly declined to sanction this because "[t]he Governor's Office does not represent a coequal branch of government vis-à-vis the federal judicial branch," and "[t]he reasoning that animates the presidential communications privilege . . . does not exist in the instant case."  (*Id.*)  The conclusion

---

[7] For example, if a member of the Governor's staff sent an internal email saying "the Governor thinks gender dysphoria is a hoax and would like to encourage lawmakers to draft a bill banning any coverage for it," then this hypothetical email (i) would be critical evidence of discriminatory intent, (ii) would be responsive to the Subpoena, and (iii) could very well mirror one of the communications sought by the Motion with subject line "Proposed Legislation." (*See* Mot. at 3, n.1)  But under the Governor's narrow view, the email would not be relevant because it does not directly relate to the Exclusion or mention "insurance."   Judge Bowman's Order properly rejected such a constricted construction of relevance at the discovery stage of a discrimination dispute.

[8] See Mot. at 10-11, n.8 (addressing Governor's cited authority).  As the Governor's Office acknowledges, *United States v. Irvin*, 127 F.R.D. 169, 172 (C.D. Ca. 1989) does not deal with executive communications privilege, but rather deliberative process privilege.  (Objections at 5)

accords with Supreme Court precedent. *United States v. Gillock*, 445 U.S. 360, 370 (1980)).

Given the clear limitation of the presidential privilege under federal law, the Governor bases his position almost entirely on state law (Objections at 6-7; *supra* §II at n.8), but *Arizona* law does not recognize this privilege either. This is unsurprising, given Arizona's "policy in favor of full and open disclosure." (Order at 9 (quoting *Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923, at *3 (D. Ariz. 2014)); Mot. at 11)

Because Judge Bowman found that federal common law does not recognize an executive communications privilege for governors (Order at 6), she did not reach the question of whether the privilege would be overcome in this case. For all the reasons Plaintiff asserted in the previous briefings, it would be. (*See* Mot. at 11-12)

## III. THE ORDER PROPERLY APPLIES THE WARNER FACTORS TO OVERCOME THE DELIBERATIVE PROCESS PRIVILEGE

The overwhelming weight of evidence supports the Order's finding that the deliberative process privilege ("DPP") has been overcome. (Order 7-10) As an initial matter, the Objections only address Judge Bowman's analysis with respect to *Warner* factors one and four.[9] (Objections 7-10) The Governor seems to concede the correctness of the Order's analysis with respect to factor three, the "government's role in the litigation," which Judge Bowman determined "strongly favors disclosure." (Order at 8) Nor could the Governor possibly challenge this conclusion, given that it has "conce[eded]" that it was "involved in the decision to maintain the Exclusion." (*Id*.)

Factor one weighs heavily in favor of disclosure. As described *supra* at § I(B), the Order properly determined that the 17 documents sought by the Motion are relevant.

---

[9] Judge Bowman determined that *Warner* factor two, the "availability of other evidence," "favors the Governor's Office." (Order 8) Respectfully, the Plaintiff disagrees, and maintains that **_all_** of the *Warner* factors favor disclosure. As the Governor's Office conceded at oral argument, "if [Plaintiff] needed the information in these 17 documents, [he] could not get that information in any other way." (Aug. 11, 2021 Hr'g Tr. at 34:14-17) These documents may be critical to proving intent, and they have no meaningful substitute from any other source.

Indeed, the Governor's own descriptions of the documents reveal that they not only discuss surgery to treat gender dysphoria (by virtue of being responsive to the Subpoena), but also discuss policy and legislation related to transgender healthcare, making them highly relevant to this case. *See supra* at § I(B) (citing Mot. at 9, nn.5-6).

The Governor's Office suggests that Judge Bowman's finding of relevance is somehow "clearly erroneous" by citing to inapposite cases involving administrative disputes. *See Ariz. Rehabilitation Hosp., Inc. v. Shalala*, 185 F.R.D. 263, 271 (comments of "unknown agency personnel" were not relevant to administrative challenge to Medicaid cost reimbursement)[10]; *ICM Registry, LLC v. U.S. Dep't of Com.*, 538 F. Supp.2d 130, 133 (federal agency's "ministerial" determination of whether or not to approve a domain name did not involve the type of misconduct that justified overcoming DPP). Unlike these case, Plaintiff alleges more than mere "ministerial" error—he alleges *intentional discrimination*, which is exactly the type of misconduct that warrants overcoming the deliberative process privilege. *See* Doc. 187 at 6-7 (citing *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998)) ("[I]t seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination.").

Factor four also weighs heavily in favor of overcoming DPP. Judge Bowman did not err in her evaluation of the fourth *Warner* factor by "misinterpret[ing] Arizona public records law[.]" (Objections at 9) The Objections acknowledge Arizona's "presumption in favor of disclosing public records," and then attempt to discount the consequence of that presumption by citing to cases recognizing limited exceptions for "confidentially, privacy, or the best interests of the state." *Id.* at 8 (citing *Scottsdale Unified Sch. Dist. No. 48 of Maricopa County v. KPNX Broad. Co.*, 955 P.2d 534, 537 (Ariz. 1998)). The "burden" of "overcoming the legal presumption favoring disclosure" is on the Governor. *Scottsdale*, 955 P.2d at 537. The Governor's Office has not identified, and cannot

---

[10] *Shalala* also does not, as the Governor falsely suggests, require a document to be "highly relevant" to overcome DPP. (Objections at 7)

identify, what interest in confidentiality or privacy warrants thwarting the presumption here.  If Arizona's "policy in favor of full and open disclosure" (Order 9) is applicable anywhere, it is applicable in the context of decision-making regarding public health.  And if the 17 documents are as innocuous as the Governor makes them out to be, "there is little reason to fear that future health insurance decision[s] would be adversely affected if predecisional opinions were disclosed to the public."  (Doc. 187 at 7)

Finally, even if the Objections identified clear error in Judge Bowman's application of the *Warner* factors (they do not), Plaintiff maintains that the Governor has not properly asserted the privilege (Motion at 12; Reply at 10), a threshold question which was not decided in the Order because the privilege was easily overcome.  (*See* Order at 7)

## IV.  *IN CAMERA* REVIEW IS UNNECESSARY AND WOULD CAUSE FURTHER DELAY

Here is what matters: all 17 requested documents undisputedly (i) involve some discussion of "surgery for gender dysphoria," (ii) by a member of the Governor's Office (iii) which was a key decision-maker regarding the Exclusion. The Governor's own descriptions (*see* supra at § I(B) (citing Mot. at 8, nn.5-6)) also show they are highly relevant.  *In camera* review of the documents is thus unnecessary, and should be declined for the following reasons.

***First***, *in camera* review would cause further delay.  Plaintiffs served the Governor's Office with the underlying subpoena in *February* of 2021,  (Mot. Ex. 2 at 4) and has been required to stall pending depositions and resolution of its claims due to persistent resistance from the Governor to discovery, despite its undisputed role in maintaining the Exclusion.

***Second***, the Governor's request for *in camera* review unfairly asks this Court to play evidence gatekeeper prematurely without the necessary context (*e.g.* the full record of deposition testimony, documents produced by other parties) to do so.

**Third**, *in camera review* here is not, as the Governor falsely suggests, "required." (Objections at 11 (citing *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019)))[11]  *In camera* review is discretionary, *see e.g.*, *MacLean v. U.S. Dep't of Def.*, 240 F. App'x 751, 753 (9th Cir. 2007), and Judge Bowman's decision not to conduct such review was neither clearly erroneous nor contrary to law.[12]

## CONCLUSION

For the foregoing reasons, the Court should (i) affirm Judge Bowman's Order, granting Plaintiff's Motion to Compel, and (ii) compel immediate production of the 17 documents requested therein, without *in camera* review.

Dated: September 17, 2021

ACLU FOUNDATION OF ARIZONA

By /s/ Christine K. Wee
Victoria Lopez
Christine K Wee

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Joshua A. Block*
Leslie Cooper*

---

[11] *Karnoski* acknowledged that courts are "urged" (not *required*) to explore "other avenues" when (1) a subpoena is "unnecessarily broad" and (2) the Executive has not yet invoked executive privilege, but may be forced to do so if the overbroad subpoena is not dealt with through other avenues.  926 F.3d; *id*. at 1204-06 ("We express no opinion as to whether Defendants may be compelled to disclose any particular evidence . . . to the district court for *in camera* review.").

[12] The Governor's Office's reliance upon *In re Sealed Case* 121 F.3d 729 (D.C. Cir. 1997) for the proposition that Judge Bowman's "failure to conduct an in camera review warrants reversal of her decision" is unavailing.  (Objections at 11)  In that case, the appellate court needed "some articulation of the district court's reasons for its ruling" before affording deference, but "the district court provided no explanation."  *In re Sealed Case*, 121 F.3d at 740.  By contrast, Judge Bowman provided a 10-page examination of precedent and policy supporting the Court's conclusions.

WILLKIE FARR & GALLAGHER LLP
Wesley R. Powell*
Matthew S. Freimuth*
Jordan C. Wall*
Victoria A. Sheets*
Justin Garbacz*

*Admitted pro hac vice

*Attorneys for Plaintiff Russell B. Toomey*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17 2021, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

/s/ Christine K. Wee
Christine K. Wee