**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell B Toomey, | No. CV-19-00035-TUC-RM (LAB) |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court is Defendants State of Arizona, Andy Tobin, and Paul Shannons' ("State Defendants") Appeal (Doc. 223) of the Magistrate Judge's Order (Doc. 213) Granting Plaintiff's Second Motion to Compel Production of Documents (Doc. 195). Plaintiff responded to the Appeal. (Doc. 232.) For the following reasons, the Appeal will be denied and Magistrate Judge Leslie A. Bowman's Order granting the Motion to Compel will be affirmed.[1]

**I.     Background**

Plaintiff Dr. Russell B. Toomey is a transgender male who is employed as an Associate Professor at the University of Arizona. (Doc. 86 at 3, 5.)[2] His health

---

[1] The Court finds that the Appeal is suitable for decision without oral argument and accordingly denies the State Defendants' request for oral argument.
[2] All record citations herein refer to the document and page numbers generated by the Court's electronic filing system.

insurance—a self-funded plan ("the Plan") controlled by the Arizona Department of Administration ("ADOA")—categorically excludes "gender reassignment surgery" from coverage. (*Id.* at 5, 8-9.)  Plaintiff brings this class action lawsuit alleging that the exclusion of gender reassignment surgery is sex discrimination under Title VII of the Civil Rights Act and a violation of the Fourteenth Amendment Equal Protection Clause. (*Id.* at 13-17.)  One of the disputed factual questions in this case is "[w]hether the decision to exclude gender reassignment surgery in [the Plan] was actually motivated by a legitimate governmental interest." (Doc. 128 at 11.)

Plaintiff served Defendants with his first set of Requests for Production on December 8, 2020.  (Doc. 195 at 1; Doc. 195-3 at 8-27.) Requests for Production One, Three, and Nine sought documents and information concerning the Plan's exclusion of gender reassignment surgery and the decision-making behind the exclusion. (Doc. 195 at 4; Doc. 195-3 at 23-26.) The State Defendants withheld 85 documents as attorney-client privileged.

## II.   Plaintiff's Motion to Compel

Plaintiff seeks to compel disclosure of the 85 documents that the State Defendants have withheld based on their assertion of the attorney-client privilege. (Doc. 195 at 2.) Plaintiff contends that the State Defendants waived the attorney-client privilege with respect to those documents: (1) "by asserting and relying on legal advice as a defense to the charge that discriminatory intent [motivated] [Defendants'] decision to maintain the Exclusion," and (2) by voluntarily disclosing the substance of the legal advice. (*Id*. at 3-4.)

In support of his first argument, Plaintiff argues that the State Defendants placed the legal advice they received regarding the legality of the exclusion for gender reassignment surgery at issue by asserting it in their Responses to his First, Fourth, and Seventh Interrogatories, as well as during the depositions of former Director of ADOC Benefits Service Division Marie Isaacson and ADOA Plan Administration Manager Scott Bender. (*Id*. at 4-6.) Plaintiff's First Interrogatory asked Defendants to identify the

reasons why the Plan excludes coverage for gender reassignment surgery. (Doc. 195-3 at 30-31.) The State Defendants responded, in relevant part, that the Plan excludes gender reassignment surgery "because the State concluded, under the law, that it was not legally required" to provide such coverage. (Doc. 195-3 at 31.) Plaintiff's Fourth Interrogatory asked Defendants to identify all persons involved in making decisions related to the exclusion of gender reassignment surgery. (Doc. 195-3 at 33.) The State Defendants' Response identified three attorneys for the State; Plaintiff thus argues that the attorneys were central to the decision-making regarding the exclusion. (Doc. 195 at 5; Doc. 195-3 at 33). Plaintiff's Seventh Interrogatory asked Defendants to produce any documents that Defendants relied on relating to the exclusion. (Doc. 195-3 at 35.) The State Defendants' Response listed two memoranda—one from Marie Isaacson to Mike Liburdi, dated August 3, 2016 regarding "Affordable Care Act § 1557," and another from outside legal counsel Fennemore Craig, P.C. to Marie Isaacson dated July 20, 2016, regarding "Summary and Implications of § 1557 and Transgender Coverage Requirements"—both of which Defendants asserted were covered by the attorney-client privilege. (*Id*.) Marie Isaacson and Scott Bender testified during their depositions that the decision to exclude gender reassignment surgery from coverage under the Plan was based on what the Plan was legally required to cover. (Doc. 195-3 at 69, 79.) Plaintiff argues that these Interrogatory Responses and deposition testimony amount to an assertion of legal advice as a defense to his charge that the exclusion of coverage for gender reassignment surgery was motivated by discriminatory intent. (Doc. 195 at 5-6, 9-12.)

Next, Plaintiff argues that Defendants waived the attorney-client privilege by voluntarily disclosing the substance of the legal advice they received regarding the exclusion of gender reassignment surgery to the Governor's Office in 2016 and during the deposition of Marie Isaacson. (Doc. 195 at 7, 12-14; *see also* Doc. 195-3 at 57-58, 66.)

. . . .

. . . .

### III. Magistrate Judge Bowman's Order

In her Order granting Plaintiff's Motion to Compel ("the Order"), Magistrate Judge Bowman finds that the State Defendants implicitly waived the attorney-client privilege with respect to the withheld documents by relying upon the legal advice they received regarding exclusion of coverage for gender reassignment surgery as "evidence that they harbored no discriminatory intent" in maintaining the exclusion. (Doc. 213 at 1-2, 4.) The Order rejects Defendants' argument that they did not raise an "advice of counsel defense" as unsupported by the record, namely the Interrogatory Responses and deposition testimony discussed above. (*Id.* at 4-5.) The Order concludes that Plaintiff cannot realistically dispute Defendants' claimed reason for maintaining the exclusion of coverage for gender reassignment surgery without access to the legal advice that Defendants relied upon in making that decision, and that "fairness" thus mandates that Plaintiff be able to review the substance of that advice. (*Id.* at 5-6.) Because the Order finds that Defendants waived the attorney-client privilege by relying on the advice of legal counsel as a defense to the charge of discriminatory intent, it does not reach the merits of Plaintiff's alternate arguments involving witness deposition testimony or disclosure of the documents to the Governor's Office. (*Id.* at 2.)

### IV. State Defendants' Appeal of the Order

On appeal, the State Defendants object to the Order on four grounds: (1) they did not assert or imply an "advice of counsel" defense through Interrogatory Responses or deposition testimony; (2) neither Marie Isaacson nor Scott Bender have authority to waive the attorney-client privilege; (3) compelling disclosure of the privileged documents violates public policy; and (4) the Order is unclear and ambiguous. (Doc. 223.)

First, the State Defendants argue that they never asserted—in their Answer, Interrogatory Responses, or deposition testimony—that they relied on the advice of counsel in deciding to maintain the Plan's exclusion of coverage for gender reassignment surgery, and that the Order "reads too much into" their Interrogatory Responses. (*Id.* at 1-6.) The State Defendants further contend that their Interrogatory Responses indicate that

they relied on non-privileged documents from "insurers and other entities" regarding the coverage exclusion. (*Id.* at 4.) Defendants further contend that because they never stated the parameters of the legal advice received or the degree to which they relied upon it, they did not put that legal advice at issue. (*Id.* at 5.)

Second, Defendants argue that the deposition testimony of Marie Isaacson and Scott Bender could not waive the attorney-client privilege because neither witness had the authority to speak on behalf of the State Defendants. (*Id.* at 6-7.) Third, Defendants argue that compelling production of the documents would violate public policy because State officials should be encouraged to consult with counsel in developing policies and thus allowing the State to engage in privileged communications with legal counsel is "uniquely important." (*Id.* at 7-8.)

Lastly, Defendants contend that the Order is "unclear and ambiguous" because it does not specify which documents it compelled Defendants to produce. (*Id.* at 8-10.) Defendants request that, if the Court affirms the Order, it compel production of only the attorney-client communications that relate to the legality of the exclusion and that were exchanged prior to the State's final decision to maintain the exclusion. (*Id.* at 9-10.)

**V.     Applicable Law**

Issues of privilege in federal question cases are determined by federal law. Fed. R. Evid. 501. "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988); *see also United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). The Ninth Circuit employs an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id*. (internal citation omitted). Here, the parties dispute only element (8), whether the privilege was waived. (*See* Doc. 213 at 3.)

Express waiver "occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Sanmina Corp.*, 968 F.3d at 1116-1117 (internal citation and quotation omitted). "In contrast, waiver by implication, or implied waiver, is based on the rule that a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation." *Id*. at 1117. "Waivers by implication rest on the 'fairness principle,' which is often expressed in terms of preventing a party from using the privilege as both a shield and a sword." *Id*. (citing *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)); *see also Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield.")). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Sanmina Corp.*, 968 F.3d at 1117. Accordingly, "a holder of the attorney-client privilege or work-product immunity cannot claim that legal advice from his attorney justifies his actions while simultaneously shielding that advice from disclosure." *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2015 WL 12911719, at *2 (D. Ariz. May 14, 2015).

"An implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its

defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (citing *Hearn v. Rhay*, 68 F.R.D. 547, 581 (E.D. Wash. 1975)). "[A]n overarching consideration is whether allowing the privilege to protect against disclosure of the information would be manifestly unfair to the opposing party." *Id.* (internal quotation omitted).

### VI. Analysis

The record supports affirming Magistrate Judge Bowman's Order compelling production of the withheld documents. The Court's review of the record reveals that, despite the State Defendants' protestations to the contrary, the State Defendants' Interrogatory Responses indicate that they relied on the advice of legal counsel in deciding to maintain the exclusion of coverage for gender reassignment surgery. (*See* Doc. 195-3 at 28-37.) This constitutes an affirmative act placing the privileged materials at issue. Furthermore, as Judge Bowman concluded, Plaintiff is unable to adequately respond to this defense without viewing the withheld documents. Without disclosure of the withheld documents, Plaintiff cannot fully respond to Defendants' argument that their reason for maintaining the exclusion was lawful and non-discriminatory because it was based on legal advice. As such, fairness mandates that the documents be disclosed. While the Court acknowledges that the public policy underlying the attorney-client privilege serves to protect the State's ability to engage in privileged communications with its lawyers, that interest does not overcome Plaintiff's right to fully litigate the merits of this action.

Accordingly,

**IT IS ORDERED** that Defendant's Appeal of the Order (Doc. 223) is **denied**.

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that Magistrate Judge Bowman's Order (Doc. 213) granting Plaintiff's Motion to Compel (Doc. 195) is **affirmed**. Within **fourteen (14) days** of the date of this Order, Defendants shall produce all documents related to Defendants' decision-making regarding the exclusion of coverage for gender reassignment surgery as requested in Plaintiff's Requests for Production One, Three, and Nine, including legal advice that may have informed that decision-making. Defendants need not produce documents that relate solely to their defense in the instant litigation.

Dated this 21st day of September, 2021.

_____
Honorable Rosemary Márquez
United States District Judge