Victoria Lopez- 330042
Christine K Wee– 028535
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
Email: **vlopez@acluaz.org**
Email: **cwee@acluaz.org**

Joshua A. Block*
Leslie Cooper*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail: **jblock@aclu.org**
E-Mail: **lcooper@aclu.org**
*Admitted Pro hac vice*

Wesley R. Powell*
Matthew S. Freimuth*
Jordan C. Wall*
Victoria A. Sheets*
Justin Garbacz*
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
E-Mail: **wpowell@willkie.com**
E-Mail: **mfreimuth@willkie.com**
E-Mail: **jwall@willkie.com**
E-Mail: **vsheets@willkie.com**
E-Mail: **jgarbacz@willkie.com**

*Admitted Pro hac vice*

*Attorneys for Plaintiff Russell B. Toomey*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Russell B. Toomey**, <br><br> Plaintiff, <br> v. <br> **State of Arizona; Arizona Board of Regents, d/b/a University of Arizona**, a governmental body of the State of Arizona; **Ron Shoopman**, in his official capacity as chair of the Arizona Board of Regents; **Larry Penley**, in his official capacity as Member of the Arizona Board of Regents; **Ram Krishna**, in his official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour**, in his official capacity as Treasurer of the Arizona Board of Regents; **Lyndel Manson**, in her official capacity as Member of the Arizona Board of Regents; **Karrin Taylor Robson**, in her official capacity as Member of the Arizona Board of Regents; **Jay Heiler**, in his official capacity as Member of the Arizona Board of Regents; **Fred Duval**, in his official capacity as Member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration, <br><br> Defendants. | 4:19-cv-00035-TUC-RM (LAB) <br><br> **MEMORANDUM OF LAW IN OPPOSITION TO STATE DEFENDANTS' MOTION TO STAY AN ORDER COMPELLING THE PRODUCTION OF DOCUMENTS** |

Plaintiff, Dr. Russell B. Toomey, on behalf of himself and the certified Classes ("Plaintiff"), by and through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 37 and Arizona Local Rule 7.2, hereby submits this memorandum of law in opposition to State Defendants' Motion to Stay (the "Motion" or "Mot.") (Doc. 242) the September 21, 2021 order compelling the production of documents (the "September 21 Order") (Doc. 241).[1]

## PROCEDURAL BACKGROUND

Dr. Toomey is a Professor at the University of Arizona, and a transgender man. As a state employee, he receives healthcare coverage under the State of Arizona's self-funded health plan controlled by the Arizona Department of Administration (the "Plan"). On August 10, 2018, Dr. Toomey was denied preauthorization for a hysterectomy, a procedure deemed medically necessary by his treating physicians for treatment of his gender dysphoria. The sole basis for the denial was the Plan's categorical exclusion of coverage for "[g]ender reassignment surgery" (the "Exclusion"). On January 23, 2019, Dr. Toomey filed this action, seeking, among other things, to bar Defendants from enforcing the Exclusion and improperly denying him, and others similarly situated as him, vital healthcare.

On December 8, 2020, Dr. Toomey served a request for production on State Defendants[2] seeking documents and information concerning their rationale for maintaining the Exclusion under the Plan. (Wee Decl., Ex. 1). State Defendants withheld certain documents responsive to Dr. Toomey's requests on the grounds that these documents were allegedly protected by the attorney-client privilege. The most recent iteration of the State Defendants' Privilege Log, served on May 10, 2021, asserts the attorney-client privilege

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as such identical terms defined in Plaintiff's Motion To Compel Production Of Documents, dated May 20, 2021 (Doc. 195).

[2] The State of Arizona, Andy Tobin, in his official capacity as Director of the Arizona Department of Administration, and Paul Shannon, in his official capacity as Assistant Acting Director of the Benefit Services Department of the Arizona Department of Administration.

1

with respect to eighty-five documents. (See Wee Decl., Ex. 2).

On May 20, 2021, Dr. Toomey filed a motion to compel the production of certain documents withheld on the basis of attorney-client privilege. (Doc. 195). The parties briefed the issue, and on June 28, 2021, Magistrate Judge Bowman issued a written order, granting Dr. Toomey's motion to compel ("June 28 Order"). (Doc. 213). Judge Bowman ordered production of "all the documents currently withheld on the basis of attorney-client privilege [State Defendants] received on the legality of the Exclusion" within 14 days—i.e., by July 12, 2021. (Doc. 213 at 6). On July 12, 2021, at the last possible moment, State Defendants objected to the June 28, 2021 Order. (Doc. 223). Dr. Toomey opposed. (Doc. 232). On September 21, 2021, this Court affirmed Judge Bowman's June 28 Order, and directed State Defendants to produce the documents no later than Tuesday, October 5, 2021. (Doc. 241). On Friday, October 1, 2021, near the close of business, State Defendants filed a Motion to Stay the September 21 Order while they petition the Ninth Circuit for a writ of mandamus against this Court. (Mot. at 6).[3] State Defendants' motion amounts to little more than another effort to delay discovery, again near the last moment, vital to the prosecution of Dr. Toomey's claims, and ultimately the healthcare he has improperly and long been denied.

## ARGUMENT

**THE COURT SHOULD DENY STATE DEFENDANTS' MOTION TO STAY**

"A stay is not a matter of right, even if irreparably injury might otherwise result." *Sanchez v. Attorney General of Ariz.*, No. CV-17-00224-TUC-RM, 2021 WL 2105610, at *1 (D. Ariz. May 25, 2021) (Márquez, J.) (quoting *Nken v. Holder*, 556 U.S. 418, 433-34

---

[3] As preliminary matter, Dr. Toomey notes that the parties did not meet and confer prior to State Defendants filing the present Motion to stay an order to produce discovery documents. LRCiv 7.2(j) ("No discovery motion will be considered . . . unless a statement of moving counsel is attached thereto certifying that after personal consultation and sincere efforts to do so, counsel have been unable to satisfactorily resolve the matter. Any discovery motion brought before the Court without prior personal consultation with the other party and a sincere effort to resolve the matter, may result in sanctions.")

(2009)). Rather, a stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular care." *Id.* (citation omitted); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") Courts consider four factors when considering a motion to stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Sanchez*, 2021 WL 2105610, at *1 (citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* (citation omitted). And where there is "even a fair possibility" of harm to the opposing party, the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

State Defendants have completely failed to carry their burden; not one of the considered factors favors an exercise of this Court's discretion to grant a stay. Nothing of the arguments State Defendants have now thrice repeated to this Court supports that a "clear case of hardship or inequity," let alone irreparable injury, will result from their compliance with the September 21 Order. To the contrary, State Defendants are compelled to produce documents and information as a result of their own actions, including their citation to legal advice and memoranda in defense of Dr. Toomey's claims. (September 21 Order at 7; June 28 Order at 5-6.) Further, the potential harm a stay poses to Dr. Toomey is immense as he, and similarly situated others, will continue to be denied timely medical care.

I. **ALL FOUR FACTORS WEIGH AGAINST THE GRANT OF A STAY**
   **A. Dr. Toomey Will Be Substantially Harmed By A Stay**

Courts have long recognized that "the denial of needed medical care is serious and a sufficient showing of irreparable harm . . . ." *Alday v. Raytheon Co.*, No. CV 06-32 TUC

3

DCB, 2008 WL 11441997, at *5 (D. Ariz. Oct. 2, 2008) (denying motion to stay enforcement of judgment); *see also Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982) ("Plaintiffs have shown a risk of irreparable injury, since enforcement of [Medicaid] rule may deny them needed medical care"); *Newton-Nations v. Rogers*, 316 F. Supp. 2d 883, 888 (D. Ariz. 2004) ("The Ninth Circuit has found irreparable injury established by a showing that plaintiffs may be denied medical care."). A stay of the Court's September 21 Order will substantially harm Dr. Toomey and the certified classes as it will delay the ultimate resolution of this case.

State Defendants admit that a stay will further delay the prosecution of this case, including depositions of "key witnesses of the State of Arizona" like Defendant Andy Tobin. (Mot. at 5).[4] Depositions have been held in abeyance now three months since Judge Bowman's June 28 Order owing to State Defendants' consistently last minute efforts to delay discovery further. State Defendants' blithe characterization of delay as Dr. Toomey's "only possible harm" (Mot. at 5) callously disregards the nature of Dr. Toomey's complaint and harm; however, every day that passes in this case is another day that Dr. Toomey and other class members are denied access to medically necessary care based on an exclusion that targets them on the basis of their transgender status or identity, and ultimately, sex. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1742 (2020). Further, Dr. Toomey seeks to vindicate his and others' rights under Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The violation of one's constitutional rights "cannot be adequately remedied through damages," and "therefore generally constitute an irreparable harm." *One Unnamed Deputy*

---

[4] State Defendants attempt to minimize the importance of this production dispute by painting it as a small piece of overall discovery, but this is far from the truth. The deadline for dispositive motions is approaching in less than six weeks on November 12, 2021. To file its dispositive motion, Dr. Toomey must first depose the admittedly "key" State witnesses; to depose key State witnesses, the parties must complete document production; and to complete document production, the parties must obtain a final resolution of Dr. Toomey's motion to compel. If the State Defendants impede the first domino in the row, the rest cannot fall—creating an overall delay in discovery as well as delay in justice for Dr. Toomey and class members.

4

*Dist. Attorney v. Cty. of Los Angeles*, No. CV 09-7931 ODW (SSX), 2010 WL 11463169, at *5 (C.D. Cal. Mar. 2, 2010) (brackets omitted); *see also Melendres v. Maricopa Cty.*, No. 07-CV-02513-PHX-GMSM, 2009 WL 2515618, at *2 (D. Ariz. Aug. 13, 2009) ("Plaintiffs have a strong interest in resolving their claims expeditiously and in vindicating any constitutional or statutory violations to which they may have been subjected.").

### B. State Defendants Will Not Be Irreparably Injured By Production

State Defendants' claim of "the grave harm" posed to them by compliance with this Court's Order (Mot. at 5) is entirely holographic. State Defendants, presumably in consultation with and assistance from their counsel, made a strategic decision to put forward legal advice as their reason for maintaining the Exclusion.[5] As this Court properly found, "State Defendants' Interrogatory Responses indicate they relied on the advice of legal counsel in deciding to maintain the exclusion of coverage for gender reassignment surgery." (Order at 7). This is not a case where legal advice was disclosed through some inadvertent production of documents on which the Plaintiff seeks to capitalize—rather, State Defendants affirmatively cited legal advice as the underlying reason for maintaining the Exclusion in their responses to Dr. Toomey's First,[6] Fourth,[7] and Seventh Interrogatories.[8]

---

[5] Wee Decl. Ex. 4, at Nos. 1, 4, 7.

[6] In response to Dr. Toomey's Interrogatory No. 1, requesting State Defendants "identify and describe all reasons why" the State of Arizona maintains the Exclusion, (Wee Decl. Ex. 3, at No. 1) (emphasis added), State Defendants put forward as its sole reason for maintaining the Exclusion was "*because* the State concluded, under the law, that it was not legally required to change its health plan to provide such coverage under either Title VII of the Civil Rights Act or under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution." ((Wee Decl. Ex. 4, No. 1) (emphasis added)).

[7] In response to Dr. Toomey's Interrogatory No. 4, which asked State Defendants to "[i]dentify all persons who participated in formulating, adopting, maintaining, reviewing, approving, or deciding to continue" the Exclusion, (Wee Decl., Ex. 3, No. 4), State Defendants identified six individuals as possessing the requisite knowledge in discovery, half of which were lawyers.

[8] In response to Dr. Toomey's Interrogatory No. 7, which requested State Defendants to identify "all research, studies, data, reports, publications, testimony, or other documents considered, reviewed, or relied on," State Defendants described two memoranda—one from Marie Isaacson to attorney Mike Liburdi, dated August 3, 2016, regarding "Affordable Care Act § 1557," and another from outside legal counsel Fennemore Craig,

5

(Wee Decl. Ex. 4, No. 1, 4, 7).

State Defendants plainly cannot use such legal advice as a sword, and then rely on the attorney-client privilege to shield that advice from disclosure and scrutiny. *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2015 WL 12911719, at *2 (D. Ariz. May 14, 2015) ("[A]ttorney-client communications may not be used both as a sword and a shield.") (citation omitted); *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (citations omitted). Although State Defendants have repeatedly insisted they did not assert an "an 'advice-of-counsel' defense" (Mot. at 2-3), their interrogatories speak for themselves (and are corroborated by deposition testimony). (Doc. 195 at 5-6; Doc. 205 at 3-7; Doc. 232 at 4-8). Compelling State Defendants to comply with the Order does not injure them—rather, it rightfully precludes them from exploiting the privilege to gain an unfair advantage they have attempted to create for themselves in this litigation.

State Defendants also incorrectly contend that a stay would maintain the status quo. (Mot. at 5). Here, the status quo is that Dr. Toomey and affected classes are actively being denied medically necessary care, and the chance to resolve this case absent fair discovery. State Defendants' own cited authority notes that "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury." *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008) (Mot.at 5). Here, the idea of simply "maintaining the status quo" is especially ill-placed where the documents were wrongfully withheld in the first place. As set forth above, without disclosure of the documents compelled by the Order, it is *Dr. Toomey* who is suffering injury, as Dr. Toomey is unable to adequately prosecute his civil rights claims and, accordingly, remains unable to access medically necessary care.

Furthermore, as Dr. Toomey has previously briefed (Doc. 195, at 5-6; Doc. 205, at 3-7; Doc. 232, at 4-8), State Defendants' witnesses have consistently pointed to advice of

---

P.C. to Marie Isaacson, dated July 20, 2016, regarding "Summary and Implications of § 1557 and Transgender Coverage Requirements"—both of which, according to the State Defendants, "are covered by the attorney-client privilege." (Wee Decl., Ex. 4, No. 7).

6

counsel as a rationale for maintaining the Exclusion, thereby revealing that counsel presumably instructed the ADOA that they could Maintain the Exclusion (*See* Doc 232 at 5-6). Accordingly, State Defendants' disclosure of these documents should not reveal content that Dr. Toomey is not already generally aware of from this testimony. If the documents do reveal something to the contrary–that counsel instructed the ADOA that the Exclusion was discriminatory–then the only harm is a result of State Defendants making misrepresentations to Dr. Toomey and this Court.

Finally, any risk of injury to State Defendants has been mitigated by this Court's carefully considered Order, which specifically excludes "documents that relate solely to [State Defendants'] defense in the instant litigation." (September 21 Order at 8).

### C. State Defendants Are Not Likely To Succeed On The Merits

State Defendants are very unlikely to succeed on the merits as (1) they have not asserted proper grounds to entertain a petition for writ of mandamus, and (2) even if the Ninth Circuit entertained State Defendants' petition, Judge Bowman's June 28 Order and Judge Márquez's September 21 Order do not evidence the requisite "usurpation of power" and clear abuse of discretion to warrant such relief.

### i. State Defendants Have Not Asserted Grounds for Mandamus

Mandamus is not appropriate where "nothing more than an erroneous application of the law" has been raised. *Gulf Rsch. & Dev. Co. v. Harrison*, 185 F.2d 457, 459 (9th Cir. 1950); *see also In re Boon Glob. Ltd.*, 923 F.3d 643, 649 (9th Cir. 2019) ("A writ of mandamus will not issue merely because the petitioner has identified legal error. . . . Mandamus, it must be remembered, does not run the gauntlet of reversible errors." (internal quotations omitted)). "Mandamus cannot be subverted to perform the function of an interlocutory appeal, over which [the Ninth Circuit has] no jurisdiction." *Gulf Rsch. & Dev. Co.*, 185 F.2d at 459. The "only ground upon which the court may grant the writ of mandamus" is an "action in aid of [the Ninth Circuit's] appellate jurisdiction." *Fred Benioff Co. v. McCulloch*, 133 F.2d 900, 900 (9th Cir. 1943). Here, State Defendants are attempting to do precisely what the Ninth Circuit has warned against: using a petition for writ of

mandamus "to perform the function of an interlocutory appeal" of the Court's order on Dr. Toomey's motion to compel, by alleging "nothing more than an erroneous application of law" as to its waiver of the attorney-client privilege over the documents to be produced.

### ii. A Mandamus Petition, If Entertained, Would Fail On The Merits

"Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies." *Gulf Rsch. & Dev. Co.*, 185 F.2d at 459 (quoting *Ex parte Fahey*, 332 U.S. 258, 259-260 (1947)). "As extraordinary remedies, they are reserved for really extraordinary causes." *Id.* The Ninth Circuit has directed that "[o]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion will justify the invocation of this remedy." *In re Boon Glob. Ltd.*, 923 F.3d at 649 (quoting *In re Van Dusen*, 654 F.3d 838, 840–41 (9th Cir. 2011). This Court has neither usurped power nor abused its discretion in ordering the production of the documents pertaining to advice of counsel that State Defendants put at issue throughout this litigation. In deciding whether to grant mandamus, the Ninth Circuit is guided by a list of factors,[9] but "even where the factors are satisfied, the court may deny the petition." *In re Boon Glob. Ltd.*, 923 F.3d at 649. State Defendants' arguments were fully briefed and considered by this Court before both Judge Bowman (Doc. 213) and Judge Márquez (Doc. 241), and neither of those orders reflects any usurpation of power or clear abuse of discretion as to warrant mandamus.

### D. Public Interest Disfavors A Stay

The public interest weighs in favor of denying the Motion. State Defendants are neither a private individual or private entity attempting to shield their completely private communications with an attorney; but rather, State Defendants are the State of Arizona and

---

[9] The Factors are: "(1) whether the petitioner has other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order makes an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems, or legal issues of first impression." *In re Boon Glob. Ltd.*, 923 F.3d at 649 (internal quotations omitted).

8

its civil servants, in their capacity serving the people of Arizona. As this Court has long-recognized, "Arizona has a policy in favor of full and open disclosure, as evidenced by Arizona's open meetings law." (Order on Motion to Compel the Governor's Production, Doc. 238, at 9) (*citing Ariz. Dream Act Coal. v. Brewer*, No. CV-12-02546-PHX-DGC, 2014 WL 171923, at *3 (D. Ariz. 2014) (citing *Rigel Corp. v. State of Ariz*, 234 P.3d 633, 640–41 (Ariz. Ct. App. 2010) ("Arizona recognizes a legal presumption in favor of disclosing public records.")). Accordingly, Arizona State government officials should "reasonably expect that their deliberations in crafting policy are open to public scrutiny," and persons giving advice to Arizona government officials should assume their advice will not be hidden from the public gaze. *Ariz. Dream Act Coal.*, 2014 WL 171923, at *3.

Here, given Arizona's policy of full and open disclosure, the public has an interest in the State Defendants complying with the Order and producing documents which this Court determined the public is entitled to see. This is especially true where the documents at issue directly address the Arizona public's access to healthcare. Therefore, the public's interest in having transparent leadership and governance far outweighs any public interest asserted by the State Defendants.[10]

## CONCLUSION

For all the reasons discussed above, State Defendants' Motion should be denied.

Dated: October 5, 2021

                              ACLU FOUNDATION OF ARIZONA

                              By /s/ Christine K. Wee
                              Victoria Lopez
                              Christine K Wee

---

[10] State Defendants' position that the public has in interest in appellate review is inapposite under these circumstances, as "[m]andamus is an original action at law." *State of Ariz. v. U.S. Dist. Ct. for Dist. of Ariz.*, 709 F.2d 521, 523 (9th Cir. 1983). Therefore, the Ninth Circuit will not be conducting "appellate review" when determining the petition for mandamus, and this interest is not implicated.

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Joshua A. Block*
Leslie Cooper*

WILLKIE FARR & GALLAGHER LLP
Wesley R. Powell*
Matthew S. Freimuth*
Jordan C. Wall*
Victoria A. Sheets*
Justin Garbacz*

*Admitted pro hac vice

*Attorneys for Plaintiff Russell B. Toomey*

**CERTIFICATE OF SERVICE**

I, Christine K. Wee, hereby certify that on October 5, 2021, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

*/s/ Christine K. Wee*
Christine K. Wee