**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 14 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: STATE OF ARIZONA; et al., _____ <br><br> STATE OF ARIZONA; et al., <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA, TUCSON, <br><br> Respondent, <br><br> RUSSELL B. TOOMEY; et al., <br><br> Real Parties in Interest. | No.   21-71312 <br><br> D.C. No. <br> 4:19-cv-00035-RM-LAB <br><br><br> MEMORANDUM[*] |

Petition for Writ of Mandamus

Argued and Submitted March 10, 2022
Phoenix, Arizona

Before:  PAEZ, CLIFTON, and WATFORD, Circuit Judges.

Dr. Russell B. Toomey ("Toomey"), an Associate Professor at the

University of Arizona and a trans man, filed the underlying action against the State

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

of Arizona; Andy Tobin ("Tobin"), the Director of the Arizona Department of Administration ("ADOA"), in his official capacity; Paul Shannon ("Shannon"), the Acting Assistant Director of the Benefit Services Division of ADOA, in his official capacity; the Arizona Board of Regents, the governing body of the University of Arizona; and the individual members of the Board of Regents, in their official capacities. Toomey claims that the state-provided health care plan, which excludes coverage for hysterectomies that are medically necessary for the purposes of "gender reassignment," discriminates on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment.

The State of Arizona, Tobin, and Shannon (collectively, "State defendants") asserted as an affirmative defense to Toomey's claims that "Defendants' actions were taken for legitimate, non-discriminatory, and non-pretextual reasons." In a subsequent interrogatory, Toomey asked the State defendants to

> [i]dentify and describe all reasons why the State of Arizona's self-funded health plan controlled by the Arizona Department of Administration (the "Plan") excludes coverage for "[g]ender reassignment surgery" (the "Challenged Exclusion") including, but not limited to, (a) each and every State or governmental interest that you contend is advanced by the exclusion, (b) a detailed explanation for why you contend that the exclusion furthers that state interest, and (c) all facts in support of your explanation.

The State defendants responded, in relevant part,

> The State of Arizona's self-funded health plan excludes coverage for gender reassignment surgery because the State concluded, under the law, that it was

2

not legally required to change its health plan to provide such coverage under either Title VII of the Civil Rights Act or under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Specifically, prior to the Supreme Court's ruling in *Bostock v. Clayton County*, Title VII protections on the basis of sex had not been applied to individuals based on their sexual orientation or transgender status. Further, rules promulgated by the Department of Health and Human Services ("HHS") regarding nondiscrimination provisions under Section 1557 of the Affordable Care Act prohibited blanket exclusions of all treatments of gender dysphoria, but did not require plans subject to the law to cover all treatments for gender dysphoria or gender transition services. The legal advice that the State received regarding this issue is covered by the attorney-client privilege.

In a subsequent request for production, Toomey sought additional documents and information related to the State defendants' rationale for maintaining the exclusion. The State defendants withheld eighty-five relevant documents, claiming that they were protected by the attorney-client privilege. Toomey filed a motion to compel, arguing that the State defendants' interrogatory responses and the deposition testimony of some State witnesses had placed the legal advice they received at issue and therefore implicitly waived the privilege. The Magistrate Judge granted the motion as to all documents, finding that the State defendants had raised an advice of counsel defense and therefore implicitly waived the privilege. The State defendants appealed the order to the district court, but the district court agreed that the privilege had been waived and denied the appeal. The State defendants subsequently filed the instant petition for a writ of mandamus challenging the order granting the motion to compel.

The All Writs Act, 28 U.S.C. § 1651(a), confers the power of mandamus on federal appellate courts. Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal quotation marks and citation omitted). Because it is "one of the most potent weapons in the judicial arsenal," *id*. (internal quotation marks and citation omitted), mandamus will not issue unless the district court's decision involved a "clear abuse of discretion or usurpation of judicial power," *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953) (internal quotation marks omitted). If the decision is merely "erroneous" or even reversible, it will not be corrected by mandamus. *See id*. at 382.

We consider five factors, the *Bauman* factors, in determining whether to grant a writ of mandamus: (1) the petitioner has no other adequate way to obtain the relief sought; (2) the petitioner will suffer damage or prejudice that cannot be corrected on appeal; (3) the district court clearly erred as a matter of law; (4) the error is often repeated or shows the district court's persistent disregard for the federal rules; and (5) there are new and important issues at stake. *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977). "The third factor, clear error as a matter of law, is a necessary condition for granting a writ of mandamus." *In re Van Dusen*, 654 F.3d 838, 841 (9th Cir. 2011).

There is no evidence that the district court clearly erred in determining that the State defendants implicitly waived the attorney-client privilege. Clear error is a deferential standard, and it "requires of us a firm conviction" that the district court has made a mistake in interpreting the law or has committed a "clear abuse of discretion." *In re Walsh*, 15 F.4th 1005, 1009 (9th Cir. 2021) (internal quotation marks and citation omitted). Here, the State defendants point to no precedent that would foreclose the district court's holding. Instead, they parse the language of their interrogatory response to argue that the statements at issue are ambiguous and do not necessarily indicate that the State relied on the advice of legal counsel in deciding to maintain the exclusion of coverage for gender confirmation surgery. Because the language is susceptible to multiple interpretations, however, it was not clearly erroneous for the district court to reach the opposite conclusion. The district court was well within its discretion to decide both that the State defendants raised an advice of counsel defense and that fairness mandated that Toomey have access to the documents underlying that defense.

While the State defendants' concession at oral argument that they would disclaim reliance on an advice of counsel defense was significant, it does not change this analysis. Because the State defendants did not make this concession in front of the district court, it could not have factored into the district court's decision. Nonetheless, should the State defendants ask the district court to

reconsider its decision in light of this concession, we are confident that the district court will give that request full consideration.

**PETITION FOR A WRIT OF MANDAMUS DENIED.**