**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell B Toomey, | No. CV-19-00035-TUC-RM (LAB) |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court is the Office of Governor Douglas A. Ducey's (the "Governor's Office") Appeal (Doc. 239) of Magistrate Judge Leslie A. Bowman's Order (Doc. 238) granting Plaintiff's Motion to Compel Production of Documents from the Governor's Office (Doc. 202). Plaintiff responded to the Appeal. (Doc. 240.) For the following reasons, the Appeal will be denied, and Magistrate Judge Bowman's Order affirmed.[1]

### I.    Background

Plaintiff Dr. Russell B. Toomey is a transgender male who is employed as an Associate Professor at the University of Arizona. (Doc. 241 at 1-2.) His health insurance—a self-funded plan ("the Plan") controlled by the Arizona Department of

---

[1] The Court finds that the Appeal is suitable for decision without oral argument and therefore denies the Governor's Office's request for oral argument.

1   Administration ("ADOA")—categorically excludes "gender reassignment surgery" from

2   coverage (the "Exclusion"). (*Id*.) Plaintiff brings this class action lawsuit alleging that the

3   exclusion of gender reassignment surgery is sex discrimination under Title VII of the

4   Civil Rights Act and a violation of the Fourteenth Amendment Equal Protection Clause.

5   (*Id*.) One of the disputed factual questions in this case is "[w]hether the decision to

6   exclude gender reassignment surgery in [the Plan] was actually motivated by a legitimate

7   governmental interest." (*Id*.)

8           On February 17, 2021, Toomey served on the Governor's Office a subpoena

9   "seeking documents and information regarding surgery to treat gender dysphoria . . .

10  including insurance coverage for such surgeries in health insurance plans administered by

11  the Arizona Department of Administration, Medicaid, Medicare and any other

12  government health care program." (Doc. 238 at 1; Doc. 202 at 4-5.) The Governor's

13  Office produced some documents but withheld others. (Doc. 238 at 1; Doc. 202 at 5-7.)

14  Plaintiff's Motion to Compel seeks production of 17 of those withheld documents. (Doc.

15  202 at 7.)

16          On September 21, 2021, this Court issued an Order directing Defendants State of

17  Arizona, Andy Tobin, and Paul Shannon (the "State Defendants") to produce "all

18  documents related to Defendants' decision-making regarding the exclusion of coverage

19  for gender reassignment surgery as requested in Plaintiff's Requests for Production One,

20  Three, and Nine, including legal advice that may have informed that decision-making."

21  (*See* Doc. 241.) State Defendants petitioned the Ninth Circuit Court of Appeals for a writ

22  of mandamus regarding that Order; the petition for writ of mandamus is currently

23  pending before that Court. (*See* Doc. 245.) This Court temporarily stayed its September

24  21, 2021 Order pending resolution of the petition for writ of mandamus. (*See* Doc. 251.)

25  **II.    Plaintiff's Motion to Compel**

26          Plaintiff's Motion to Compel seeks production of 17 documents which the

27  Governor's Office has withheld based on assertions of irrelevance, the executive

28  communications privilege, and the deliberative process privilege. (*See* Doc. 238 at 3-7.)

1    Plaintiff argues that the 17 withheld documents, all of which discuss gender reassignment
2    surgery, are relevant to determining the key issue of whether the Governor's Office and
3    its staff members acted with discriminatory intent in deciding to maintain the Exclusion.
4    (Doc. 202 at 7-8.) Three categories of documents are at issue: (1) communications in
5    2017 and 2020 between Senior Health Policy Advisor Christina Corieri, the Arizona
6    Health Care Cost Containment System ("AHCCCS"), and the Arizona Department of
7    Corrections ("ADOC"); (2) emails sent in January 2017 among Governor's Office staff
8    members discussing proposed legislation; and (3) a 2015 communication between Ms.
9    Corieri and Gerrie Marks at the Arizona Department of Insurance with the subject line
10   "Healthcare Plans." (*Id*. at 7.) Plaintiff argues that the documents are "highly relevant to
11   show whether Ms. Corieri and other members of the Governor's Office were
12   ideologically opposed to all instances" of state-provided insurance coverage, including
13   Medicare, Medicaid, and prison health care, for gender reassignment surgery. (*Id*. at 8.)

14   Plaintiff further argues that the executive communications privilege, which the
15   Governor's Office asserts protects the documents from disclosure, does not apply to
16   communications involving the Governor's Office because federal law limits that
17   privilege—also called the presidential communications privilege—to the President and
18   White House advisors. (*Id*. at 8-11) Plaintiff contends that there is no federal authority for
19   extending the privilege to a state governor. (*Id*.) Plaintiff additionally argues that the
20   Arizona Supreme Court has articulated a "strong policy favoring open disclosure and
21   access" of state records, and that even if the Governor's Office could successfully assert
22   the executive communications privilege, Plaintiff would make the requisite showing to
23   overcome the privilege due to the relevance and limited availability of the evidence. (*Id*.)

24   Lastly, Plaintiff argues that the deliberative process privilege does not protect the
25   documents from disclosure because the Governor's Office failed to follow the proper
26   procedure for asserting the privilege when it failed to provide a sworn declaration from
27   the head of the agency explaining the contents of the withheld documents and/or how the
28   documents were pre-decisional and deliberative. (Doc. 202 at 11-12.) Plaintiff further

argues that even if the Governor's Office had properly asserted the privilege, its assertion would fail upon evaluation of the four factors set forth in *F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) and that Magistrate Judge Bowman's analysis set forth in her April 20, 2021 Order granting Plaintiff's Motion to Compel (Doc. 187)[2] should apply equally here. (*Id.*)

In response, the Governor's Office argues that (1) the documents are not relevant in discerning its intent in deciding to maintain the Exclusion; (2) the executive communications privilege protects the documents and applying that privilege here is a "natural extension" of federal law governing federal privileges; (3) Plaintiff has not met his burden of showing a need for the documents based on relevance and unavailability elsewhere; (4) the deliberative process privilege also protects the documents because they are pre-decisional and deliberative, the Governor's Office properly asserted the privilege by providing a declaration from Ms. Corieri, and Plaintiff has not shown that the privilege is overcome. (Doc. 208.)

### III.    Magistrate Judge Bowman's Order

In her Order granting Plaintiff's Motion to Compel, Magistrate Judge Bowman finds that the withheld documents are relevant to the issue of the intent underlying the Exclusion and that neither the executive communications privilege nor the deliberative process privilege precludes their disclosure. (Doc. 238.) In reaching this conclusion, the Order highlights the evidence uncovered by Plaintiff in the course of discovery that the Arizona Department of Administration considered removing the Exclusion in 2016 and that the Governor's Office "played a key role in State Defendants' decision to maintain the exclusion." (Doc. 202 at 3; Doc. 238 at 2.)

---

[2] In the April 20, 2021 Order, Magistrate Judge Bowman concluded that the four *Warner* factors weighed in favor of granting the Motion to Compel. (Doc. 187 at 8.) This Court affirmed Magistrate Judge Bowman's Order and directed State Defendants to produce "all documents related to Defendants' decision-making regarding the exclusion of coverage for gender reassignment surgery as requested in Plaintiff's Requests for Production One, Three, and Nine, including legal advice that may have informed that decision-making." (Doc. 241.)

1       First, the Order finds the documents are relevant pursuant to Fed. R. Civ. P.

2   26(b)(1) because it is reasonable to conclude that the documents might address the issue

3   of whether Defendants intentionally discriminated against transgender individuals in

4   maintaining the Exclusion. (Doc. 238 at 4.) The Order rejects the Governor's Office

5   argument that the documents are irrelevant because they relate not to the Exclusion

6   specifically but rather to the State of Arizona's insurance coverage for surgery for gender

7   dysphoria more broadly, finding that they are relevant even if not specifically related to

8   the Exclusion because they may reveal a "pattern of discriminatory animus." (*Id*.)

9       Next, the Order finds that the presidential or executive communications privilege

10  does not preclude disclosure of the documents. (*Id*. at 5-6.) The Order rejects the

11  Governor's Office's argument that the presidential communication privilege should

12  extend to the Governor's Office. (*Id*.) The Order notes that the Governor's Office has not

13  directed the court to a Ninth Circuit case extending the executive communications

14  privilege to a state governor and finds that the rationale underlying the privilege—

15  namely, the separation of powers between the federal judicial and executive branches of

16  government—does not apply to the state executive branch. (*Id*. at 6.)

17      The Order next finds that, although the Governor's Office does hold a deliberative

18  process privilege that protects documents reflecting the process by which the Governor's

19  Office makes decisions, that privilege does not preclude production of the documents.

20  (*Id*. at 6-10.) In reaching this conclusion, the Magistrate Judge analyzes the four *Warner*

21  factors and finds that (1) the documents are relevant; (2) other evidence may be available

22  that would be more responsive to Plaintiff's discovery requests; and (3) the documents

23  may bear on Plaintiff's claim that the decision to maintain the Exclusion was a product of

24  intentional discrimination. (*Id*.) The Order concludes that Plaintiff's "need for the

25  materials and the need for accurate fact-finding override the government's interest in

26  non-disclosure." (*Id*. at 10.)

27  . . . .

28  . . . .

### IV.     The Governor's Office's Appeal of the Order

On appeal, the Governor's Office objects to the Order on four grounds. First, the Governor's Office argues that the Order "misconstrues the scope of the Subpoena at issue" and that this misinterpretation underlies the Order's incorrect findings regarding relevancy and privilege application, essentially arguing that the contested documents are not relevant because the subpoena in response to which the documents were produced was overly broad. (*Id*. at 1-3.) Second, the Governor's Office argues that the Order erred in rejecting the executive communications privilege because (1) public policy supports the application of the privilege and (2) district courts have applied the privilege to state executive officers. (*Id*. at 4-5.) Third, the Governor's Office argues that the Order's application of the *Warner* factors was erroneous. (*Id*. at 6-9.) Fourth, the Governor's Office argues that the Magistrate Judge should conduct an *in camera* review of the documents to discern their relevance before potentially ordering their disclosure. (*Id*. at 9-10.)

### V.     Applicable Law

Federal Rule of Civil Procedure 45 states that "the serving party may move the court for the district where compliance [with his subpoena] is required for an order compelling production or inspections." Fed. R. Civ. P 45(d)(2)(B)(i); *see also* Fed. R. Civ. P. 37(a)(3)(B)(iv) (A party seeking discovery may move for an order compelling production if a party fails to produce documents.).

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevancy under Rule 26 "has been construed broadly to encompass any matter that bears on, or that

1  reasonably could lead to other matter[s] that could bear on, any issue that is or may be in

2  the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020).

3      Evidence of discriminatory intent, treatment, or attitude is generally relevant and

4  admissible to prove unconstitutional discrimination. *See Heyne v. Caruso*, 69 F.3d 1475,

5  1479–80 (9th Cir. 1995) ("[E]vidence of the employer's discriminatory attitude in general

6  is relevant and admissible to prove . . . discrimination.") (emphasis omitted); *see also RK*

7  *Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1062 (9th Cir. 2002) ("[T]he City's

8  allegedly discriminatory treatment of other clubs playing rap and hip-hop music and

9  catering to African American patrons may be relevant evidence of an unconstitutional

10  purpose.").

11      Because the legal claims in this case arise under federal law, federal law governs

12  the Governor's Office's assertions of the executive communications privilege. *See* Fed.

13  R. Evid. 501; *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2015 WL 12911719, at

14  *1 (D. Ariz. May 14, 2015) ("Issues of privilege in federal question cases are determined

15  by federal law."). The executive communications privilege protects "communications

16  directly involving, and documents actually viewed by the President, as well as documents

17  solicited and received by the President or his immediate White House advisers." *Trump v.*

18  *Karnoski*, 926 F.3d 1180, 1203 (9th Cir. 2019) (internal quotations omitted). "The

19  privilege covers documents reflecting presidential decision making and deliberations,

20  regardless of whether the documents are predecisional or not[.]" *Id.* Federal district courts

21  have refused to extend the privilege to state governors. See *Hobley v. Chicago Police*

22  *Commander Burge*, 445 F. Supp. 2d 990, 998 (N.D. Ill. 2006); *Patterson v. Burge*, 451 F.

23  Supp. 2d 947, 955 (N.D. Ill. 2006); *see also* 98 C.J.S. Witnesses § 423 at n.3 (March

24  2021) ("[f]ederal law does not recognize an executive communications privilege for state

25  Governors").

26      The Supreme Court of Arizona has articulated a "strong policy favoring open

27  disclosure and access." *Cox Arizona Pubs., Inc. v. Collins*, 852 P.2d 1194, 1198 (1993).

28  "[P]ersons giving advice to Arizona government officials should ordinarily assume that

their advice will not be hidden from the public gaze." *Arizona Dream Act Coal. v. Brewer*, No. CV-12-02546-PHX-DGC, 2014 WL 171923, at *3 (D. Ariz. 2014).

The deliberative process privilege "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Warner Commc'ns Inc.*, 742 F.2d at 1161. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.* "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.* "[T]he claim of deliberative due process privilege must be raised by a formal claim made by the head of the agency after she has personally considered the material in question prior to the invocation of the privilege." *EEOC v. Swissport Fueling, Inc.*, No. CV-10-2101-PHX-GMS, 2012 WL 1648416, at *15 (D. Ariz. May 10, 2012). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir.1988).

## VI. Analysis

The Court will affirm Magistrate Judge Bowman's Order compelling production of the withheld documents. The contested documents are relevant and neither the executive communications privilege nor the deliberative process privilege precludes their disclosure.

The Governor's Office's focus on the scope of the subpoena is misplaced. At issue is not the scope of the subpoena, but the discoverability of the 17 documents the Governor's Office is withholding. Regardless of the breadth of the subpoena, Plaintiff seeks in his Motion to Compel production only of 17 particular documents, and the Court is satisfied that those documents are relevant to the key issue of the intent underlying the

decision to maintain the Exclusion. Plaintiff has uncovered evidence that the Governor's Office played a role in Defendants' decision to maintain the Exclusion. It is reasonable to conclude that the documents might address the issue of whether Defendants, with input from the Governor's Office, intentionally discriminated against transgender individuals in maintaining the Exclusion. The documents need not relate solely to the Exclusion to be relevant because they may reveal a pattern of discriminatory animus by Defendants.

The executive communications privilege does not preclude the discoverability of the documents. The Governor's Office has not presented a compelling reason to extend the privilege to state governors and, in the absence of controlling Ninth Circuit Court of Appeals authority mandating that it do so, the Court declines to so extend it.

Nor does the deliberative process privilege preclude discoverability. In weighing the four *Warner* factors, the Court finds as to the first factor that the documents are relevant, as discussed *supra*. As to the second factor, Plaintiff does not have other readily available evidence that addresses the issue of the Governor's Office's role in the State Defendants' decision to maintain the Exclusion. Although Plaintiff may have other evidence relating to the State Defendants' motivation behind the decision to maintain the Exclusion (*see* Doc. 241), that evidence has not yet been disclosed (*see* Doc. 251). Additionally, the documents at issue here are the only evidence Plaintiff has of the Governor's Office's role in the decision. Thus, the second factor weighs in favor of disclosure. As to the third factor, it too favors disclosure because the Governor's Office was involved in the decision to maintain the Exclusion. As to the fourth factor, "the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions," *Warner*, 742 F.2d at 1161, the Court finds that although disclosure may have such an effect, this possibility is not sufficient to outweigh Plaintiff's need for the documents, the need for accurate fact-finding, and the weight of the first three *Warner* factors. Furthermore, as Magistrate Judge Bowman concluded, Arizona has a policy that favors public disclosure of government records, including those

1   relating to policy making. (Doc. 238 at 9.) Accordingly, the deliberative process privilege

2   does not preclude disclosure.

3          Lastly, the Court declines to grant the Governor's Office's request for an *in*

4   *camera* review of the documents prior to their disclosure.

5          Accordingly,

6          **IT IS ORDERED** that the Governor's Office Appeal of Magistrate Judge

7   Bowman's Order (Doc. 239) is **denied**.

8          **IT IS FURTHER ORDERED** that Magistrate Judge Bowman's Order (Doc.

9   238) granting Plaintiff's Motion to Compel (Doc. 202) is **affirmed**. Within **fourteen (14)**

10  **days** of the date of this Order, the Governor's Office shall produce the 17 documents that

11  are the subject of the Motion to Compel.

12         Dated this 6th day of May, 2022.

13

14

15

16                                            _____

17                                            Honorable Rosemary Márquez
                                              United States District Judge
18

19

20

21

22

23

24

25

26

27

28