# EXHIBIT A

| | |
|---|---|
| **From:** | Sheets, Victoria <VSheets@willkie.com> |
| **Sent:** | Thursday, April 28, 2022 9:52 PM |
| **To:** | 'Curtis, Ryan'; 'Cohan, Shannon'; 'Yost, Austin C. (Perkins Coie)'; 'Eckstein, Paul (Perkins Coie)'; 'Joshua Block'; 'Christine Wee'; Powell, Wesley; Wall, Jordan; Garbacz, Justin |
| **Subject:** | Toomey v State of Arizona - Proposed Stipulation |
| **Attachments:** | 2022.04.[ ] Draft Stipulation re ACP Documents.DOCX |

Counsel,

Please find attached the draft stipulation as previously discussed.

Best,
Victoria

**Victoria A. Sheets**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8858 | Fax: +1 212 728 8111
vsheets@willkie.com | vCard | www.willkie.com bio

**Victoria Lopez –330042**
**Christine K Wee– 028535**
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
Email**:** cwee@acluaz.org

**Joshua A. Block***
**Leslie Cooper***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail: jblock@aclu.org
E-Mail: lcooper@aclu.org
*Admitted pro hac vice*

**Wesley R. Powell***
**Matthew S. Friemuth***
**Jordan C. Wall***
**Victoria A. Sheets***
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
E-Mail: wpowell@willkie.com
E-Mail: mfriemuth@willkie.com
E-Mail: jwall@willkie.com
E-Mail: vsheets@willkie.com

*Admitted pro hac vice*

*Attorneys for Plaintiff Russell B. Toomey*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Russell B. Toomey,** | Case No.19-cv-00035-TUC-RM (LAB) |
| Plaintiff, | |
| v. | **[PROPOSED] JOIINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| **State of Arizona; Arizona Board of Regents, D/B/A University of Arizona**, a governmental body of the State of Arizona; et al., | |
| Defendants. | |

Plaintiff, Dr. Russell B. Toomey, on behalf of himself and the certified Classes ("Plaintiff") and the State Of Arizona, Andy Tobin, and Paul Shannon (collectively, the "State Defendants"), through their undersigned counsel, stipulate and agree as follows:

State Defendants will not put forward—through written pleadings, testimony, documents, or any other form of evidence—as a reason it decided to maintain the Exclusion or as a reason why it did not have discriminatory intent that the State concluded that it was not legally required to change its health plan to provide such coverage.  Instead, Defendants will move forward on the other reason cited in response to Interrogatory No. 1: cost containment and reducing health care costs.  This stipulation includes any evidence or reference to a legal requirement to cover the health coverage at issue.

Defendant will also amend its interrogatory response Nos. 1 and 7 to read as follows:

**INTERROGATORY NO. 1:**  Identify and describe all reasons why the State of Arizona's self-funded health plan controlled by the Arizona Department of Administration (the "Plan") excludes coverage for "[g]ender reassignment surgery" (the "Challenged Exclusion") including, but not limited to, (a) each and every State or governmental interest that you contend is advanced by the exclusion, (b) a detailed explanation for why you contend that the exclusion furthers that state interest, and (c) all facts in support of your explanation.

ANSWER:  **The State of Arizona's self-funded health plan excludes coverage for gender reassignment surgery because** ~~the State concluded, under the law, that it was not legally required to change its health plan to provide such coverage under either Title VII of the Civil Rights Act or under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Specifically, prior to the Supreme Court's ruling in Bostock v. Clayton County, Title VII protections on the basis of sex had not been applied to individuals based on their sexual orientation or transgender status. Further, rules promulgated by the Department of Health and Human Services ("HHS") regarding nondiscrimination provisions under Section 1557 of the Affordable Care Act prohibited blanket exclusions of all treatments of gender dysphoria, but did not require plans subject to the law to cover all treatments for gender dysphoria or gender transition services. The legal advice that the State received regarding this issue is covered by the attorney-client privilege.~~

~~T~~**[t]he State or governmental interests advanced by the exclusion are cost containment and reducing health care costs. The State gathered information from**

3

private insurers and public entities who did provide coverage for gender reassignment surgery in an effort to determine how its own health care costs would be impacted. Although the cost estimates varied, they unquestionably showed that removing the exclusion for gender reassignment surgery would increase costs and that such increases could be significant.

**INTERROGATORY NO. 7:**  Identify all research, studies, data, reports, publications, testimony, or other documents considered, reviewed, or relied on by Defendants relating to the Challenged Exclusion, including identifying the date or approximate date of consideration, review, or reliance by the Arizona Board of Regents ("ABOR") and the Arizona Department of Administration (the "ADOA"); and the ADOA and ABOR employee(s) who considered, reviewed, or relied on such documents and their role(s). A complete answer to this interrogatory should include documents relating to the medical necessity, safety, and efficacy (including whether a procedure is deemed experimental) of excluded treatments and services; the public health effects of enforcing, amending, or eliminating the Challenged Exclusion; and the cost/fiscal impact to ADOA or ABOR of enforcing, amending, or eliminating the Challenged Exclusion.

**ANSWER:**  ~~Defendants considered a Memorandum from Marie Isaacson to Mike Liburdi, General Counsel at the Governor's Office dated August 3, 2016, regarding Affordable Care Act § 1557, and a Memorandum regarding Non-discrimination – Transgender Coverage and a Memorandum from outside legal counsel at Fennemore Craig to Marie Isaacson dated July 20, 2016, regarding Summary and Implications of § 1557 and Transgender Coverage Requirements. Both~~

~~of these documents are covered by the attorney-client privilege.~~ **Defendants** ~~also~~ **gathered information and data from insurers and other entities regarding their experience providing transgender benefits, including reassignment surgery. Plaintiffs may ascertain the non-privileged information requested in this Interrogatory from the documents that Defendants have produced in this action.**

Plaintiff stipulates to this motion and agrees to withdraw as moot Plaintiff's Motion to Compel Production of Documents (Dkt. No. 195), the subject of Order (Dkt. No. 241).

Respectfully submitted this [X^th] day of April, 2022.

ACLU FOUNDATION OF ARIZONA
By */s/ DRAFT*
   Victoria Lopez
   Christine K. Wee

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
   Joshua A. Block*
   Leslie Cooper*

WILLKIE FARR & GALLAGHER LLP
   Wesley R. Powell*
   Matthew S. Friemuth*
   Jordan C. Wall*
   Victoria A. Sheets*
   **admitted pro hac vice*

*Attorneys for Plaintiff*

*/s/ DRAFT (with permission)*
   Timothy J. Berg
   Amy Abdo
   Ryan Curtis
   Shannon Cohan
   Fennemore Craig
   2394 E Camelback Rd., Ste. 600
   Phoenix, AZ 85016-3429
   tberg @fclaw.cm

52637359.2

amy@fclaw.com
rcurtis@fclaw.com
scohan@fclaw.com

*Attorneys for Defendants State of Arizona,*
*Andy Tobin, and Paul Shannon*

*/s/ DRAFT (with permission)*
Paul F. Eckstein
Austin C. Yost
PERKINS COIE LLP
2901 N. Central Ave., Suite 2000
Phoenix, Arizona 85012-2788
PEckstein@perkinscoie.com
AYost@perkinscoie.com

*Attorneys for Defendants Arizona Board of Regents,*
*d/b/a University of Arizona; Ron Shoopman; Larry*
*Penley; Ram Krishna; Bill Ridenour; Lyndel Manson;*
*Karrin Taylor Robson; Jay Heiler; and Fred Duval*

## CERTIFICATE OF SERVICE

I hereby certify that on [DATE], I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

*/s/ Christine K. Wee*
Christine K. Wee

# EXHIBIT B

| From: | Curtis, Ryan <RCurtis@fennemorelaw.com> |
|---|---|
| **Sent:** | Tuesday, May 3, 2022 7:44 PM |
| **To:** | Wall, Jordan |
| **Cc:** | Powell, Wesley; Sheets, Victoria; Garbacz, Justin; 'Joshua Block'; 'Christine Wee'; 'Eckstein, Paul (Perkins Coie)'; 'Yost, Austin C. (Perkins Coie)'; Cohan, Shannon |
| **Subject:** | RE: Toomey v State of Arizona - Proposed Stipulation [FC-Email.FID11439673] |
| **Attachments:** | 2022-05-03 State Defendants Proposed Stipulation re Atty-Client Priv Documents.docx |

## *** EXTERNAL EMAIL ***

Jordan,

Thank you for sending the revised stipulation. Plaintiff's proposed stipulation differs greatly from what was clarified at oral argument and from what we indicated State Defendants' could agree to during our meet and confer on April 22. Accordingly, State Defendants propose a different stipulation.

The attached proposed stipulation reflects State Defendants' clarification made at oral argument on March 10, 2022, that they are not asserting an advice of counsel defense in this case and will not put forward such a defense in this case through written pleadings, testimony, documents, or any other form of evidence. State Defendants discussed this concession at 7:24 to 7:56 of the video-recorded oral argument. The Ninth Circuit found State Defendants' concession at oral argument to be significant. Further, that concession was the basis for the Ninth Circuit's statement at the end of its April 14 Order that should State Defendants ask the District Court to reconsider its ruling on the attorney-client privileged documents, that the District Court would give such a request full consideration. That is the primary basis of State Defendants' Motion for Reconsideration pending before the District Court and the terms of the concession is what State Defendants are proposing be memorialized in a stipulation.

Please let us know if you would like to discuss this issue.

Ryan C. Curtis, Chair - ERISA & Employee Benefits Practice Group

---

# FENNEMORE.

2394 East Camelback Road, Suite 600, Phoenix, AZ 85016-3429
T: 602.916.5426 | F: 602.916.5626 | M: 480.290.3785
rcurtis@fennemorelaw.com  |  View Bio
Admitted in Arizona and Nevada



**CONFIDENTIALITY NOTICE:** The information contained in this message may be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please immediately reply to the sender that you have received the message in error. Then delete it. Thank you.

**From:** Curtis, Ryan
**Sent:** Monday, May 2, 2022 5:37 PM
**To:** Wall, Jordan <JWall@willkie.com>; Cohan, Shannon <scohan@fennemorelaw.com>

**Cc:** Powell, Wesley <wpowell@willkie.com>; Sheets, Victoria <VSheets@willkie.com>; Garbacz, Justin <JGarbacz@willkie.com>; 'Joshua Block' <jblock@aclu.org>; 'Christine Wee' <CWee@acluaz.org>; 'Eckstein, Paul (Perkins Coie)' <PEckstein@perkinscoie.com>; 'Yost, Austin C. (Perkins Coie)' <AYost@perkinscoie.com>
**Subject:** RE: Toomey v State of Arizona - Proposed Stipulation [FC-Email.FID11439673]
Thank you Jordan. Understanding Plaintiff's deadline to respond to the motion for reconsideration, we do expect to have a response to the proposed stipulation tomorrow.

**From:** Wall, Jordan <JWall@willkie.com>
**Sent:** Monday, May 2, 2022 5:26 PM
**To:** Curtis, Ryan <RCurtis@fennemorelaw.com>; Cohan, Shannon <scohan@fennemorelaw.com>
**Cc:** Powell, Wesley <wpowell@willkie.com>; Sheets, Victoria <VSheets@willkie.com>; Garbacz, Justin <JGarbacz@willkie.com>; 'Joshua Block' <jblock@aclu.org>; 'Christine Wee' <CWee@acluaz.org>; 'Eckstein, Paul (Perkins Coie)' <PEckstein@perkinscoie.com>; 'Yost, Austin C. (Perkins Coie)' <AYost@perkinscoie.com>
**Subject:** RE: Toomey v State of Arizona - Proposed Stipulation
Ryan, Shannon—
Attached is a revised draft of the proposed stipulation, correcting a few typos.
In light of the court's request that we respond to State Defendants' motion for reconsideration, would you let us know if State Defendants will agree to the terms of the proposed stipulation by tomorrow, May 3.
Thanks,
Jordan

**Jordan C. Wall**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8465 | Fax: +1 212 728 9465
jwall@willkie.com | vCard | www.willkie.com bio
Pronouns: he, him, his

**From:** Sheets, Victoria <VSheets@willkie.com>
**Sent:** Thursday, April 28, 2022 9:52 PM
**To:** 'Curtis, Ryan' <RCurtis@fennemorelaw.com>; 'Cohan, Shannon' <scohan@fennemorelaw.com>; 'Yost, Austin C. (Perkins Coie)' <AYost@perkinscoie.com>; 'Eckstein, Paul (Perkins Coie)' <PEckstein@perkinscoie.com>; 'Joshua Block' <jblock@aclu.org>; 'Christine Wee' <CWee@acluaz.org>; Powell, Wesley <wpowell@willkie.com>; Wall, Jordan <JWall@willkie.com>; Garbacz, Justin <JGarbacz@willkie.com>
**Subject:** Toomey v State of Arizona - Proposed Stipulation
Counsel,
Please find attached the draft stipulation as previously discussed.
Best,
Victoria

**Victoria A. Sheets**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8858 | Fax: +1 212 728 8111
vsheets@willkie.com | vCard | www.willkie.com bio

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a

limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Victoria Lopez** –**330042**
**Christine K Wee**– **028535**
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
Email**:** cwee@acluaz.org

**Joshua A. Block\***
**Leslie Cooper\***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail: jblock@aclu.org
E-Mail: lcooper@aclu.org
*Admitted pro hac vice*

**Wesley R. Powell\***
**Matthew S. Friemuth\***
**Jordan C. Wall\***
**Victoria A. Sheets\***
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
E-Mail: wpowell@willkie.com
E-Mail: mfriemuth@willkie.com
E-Mail: jwall@willkie.com
E-Mail: vsheets@willkie.com

*Admitted pro hac vice*

Attorneys for Plaintiff Russell B. Toomey

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**Russell B. Toomey,**

              Plaintiff,

v.

**State of Arizona; Arizona Board of Regents, D/B/A University of Arizona**, a governmental body of the State of Arizona; et al.,

              Defendants.

Case No.19-cv-00035-TUC-RM (LAB)

**[PROPOSED] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

     Plaintiff, Dr. Russell B. Toomey, on behalf of himself and the certified Classes ("Plaintiff") and Defendants the State Of Arizona, Andy Tobin, and Paul Shannon (collectively, the "State Defendants"), through their undersigned counsel, stipulate and agree as follows:

     State Defendants will not put forward as a defense—through written pleadings, testimony, documents, or any other form of evidence—that it relied upon legal advice.

     Further, Plaintiff agrees to withdraw as moot Plaintiff's Motion to Compel Production of Documents (Dkt. No. 195), the subject of Order (Dkt. No. 241). This Stipulation renders as moot the State Defendants' Motion for Reconsideration (Dkt. No. 261).

 ///

 ///

 ///

 ///

2

Respectfully submitted this [____] day of May, 2022.

ACLU FOUNDATION OF ARIZONA
By */s/ DRAFT*
   Victoria Lopez
   Christine K. Wee

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
   Joshua A. Block*
   Leslie Cooper*

WILLKIE FARR & GALLAGHER LLP
   Wesley R. Powell*
   Matthew S. Friemuth*
   Jordan C. Wall*
   Victoria A. Sheets*
   **admitted pro hac vice*

*Attorneys for Plaintiff*

*/s/ DRAFT (with permission)*
   Timothy J. Berg
   Amy Abdo
   Ryan Curtis
   Shannon Cohan
   Fennemore Craig
   2394 E Camelback Rd., Ste. 600
   Phoenix, AZ 85016-3429
   tberg @fclaw.cm
   amy@fclaw.com
   rcurtis@fclaw.com
   scohan@fclaw.com

*Attorneys for Defendants State of Arizona,
Andy Tobin, and Paul Shannon*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ DRAFT (with permission)*
   Paul F. Eckstein
   Austin C. Yost
   PERKINS COIE LLP
   2901 N. Central Ave., Suite 2000
   Phoenix, Arizona 85012-2788
   PEckstein@perkinscoie.com
   AYost@perkinscoie.com

*Attorneys for Defendants Arizona Board of Regents, d/b/a University of Arizona; Ron Shoopman; Larry Penley; Ram Krishna; Bill Ridenour; Lyndel Manson; Karrin Taylor Robson; Jay Heiler; and Fred Duval*

**CERTIFICATE OF SERVICE**

I hereby certify that on [DATE], I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

*/s/ Christine K. Wee*
Christine K. Wee

21187232

# EXHIBIT C

| | |
|---|---|
| **From:** | Wall, Jordan <JWall@willkie.com> |
| **Sent:** | Friday, May 6, 2022 8:48 AM |
| **To:** | 'Curtis, Ryan' |
| **Cc:** | Powell, Wesley; Sheets, Victoria; Garbacz, Justin; 'Joshua Block'; 'Christine Wee'; 'Eckstein, Paul (Perkins Coie)'; 'Yost, Austin C. (Perkins Coie)'; Cohan, Shannon |
| **Subject:** | RE: Toomey v State of Arizona - Proposed Stipulation [FC-Email.FID11439673] |

Ryan,

Thank you for getting back to us.  We have reviewed your counterproposal, and we cannot agree.  State Defendants' stipulation does not adequately address the issues raised in Dr. Toomey's motion to compel, namely his need for the withheld documents in order to fully assess State Defendants' defense based on their purported legal rationale for the Exclusion, which you indicated during our April 22 meet and confer State Defendants intend to continue asserting.   We also do not think your stipulation or your explanation below accurately reflects the concessions State Defendants made on this matter before the Ninth Circuit at oral argument.

We will respond to your motion as invited by the court.


Thanks,
Jordan


**Jordan C. Wall**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8465 | Fax: +1 212 728 9465
jwall@willkie.com | vCard | www.willkie.com bio
Pronouns: he, him, his

**From:** Curtis, Ryan <RCurtis@fennemorelaw.com>
**Sent:** Tuesday, May 3, 2022 7:44 PM
**To:** Wall, Jordan <JWall@willkie.com>
**Cc:** Powell, Wesley <wpowell@willkie.com>; Sheets, Victoria <VSheets@willkie.com>; Garbacz, Justin <JGarbacz@willkie.com>; 'Joshua Block' <jblock@aclu.org>; 'Christine Wee' <CWee@acluaz.org>; 'Eckstein, Paul (Perkins Coie)' <PEckstein@perkinscoie.com>; 'Yost, Austin C. (Perkins Coie)' <AYost@perkinscoie.com>; Cohan, Shannon <scohan@fennemorelaw.com>
**Subject:** RE: Toomey v State of Arizona - Proposed Stipulation [FC-Email.FID11439673]

**\*\*\* EXTERNAL EMAIL \*\*\***


Jordan,

Thank you for sending the revised stipulation. Plaintiff's proposed stipulation differs greatly from what was clarified at oral argument and from what we indicated State Defendants' could agree to during our meet and confer on April 22. Accordingly, State Defendants propose a different stipulation.

The attached proposed stipulation reflects State Defendants' clarification made at oral argument on March 10, 2022, that they are not asserting an advice of counsel defense in this case and will not put forward such a defense in this case through written pleadings, testimony, documents, or any other form of evidence. State Defendants discussed this concession at 7:24 to 7:56 of the video-recorded oral argument. The Ninth Circuit found State Defendants' concession at oral argument to be significant. Further, that concession was the basis for the Ninth Circuit's statement at the end of its April 14 Order that should State Defendants ask the District Court to reconsider its ruling on the attorney-client privileged documents, that the District Court would give such a request full consideration. That is the primary basis of State Defendants' Motion for Reconsideration pending before the District Court and the terms of the concession is what State Defendants are proposing be memorialized in a stipulation.

Please let us know if you would like to discuss this issue.

Ryan C. Curtis,  Chair - ERISA & Employee Benefits Practice Group



2394 East Camelback Road, Suite 600, Phoenix, AZ 85016-3429
T: 602.916.5426  |  F:  602.916.5626  |  M:  480.290.3785
rcurtis@fennemorelaw.com  |  View Bio
Admitted in Arizona and Nevada



**CONFIDENTIALITY NOTICE:** The information contained in this message may be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please immediately reply to the sender that you have received the message in error. Then delete it. Thank you.

**From:** Curtis, Ryan
**Sent:** Monday, May 2, 2022 5:37 PM
**To:** Wall, Jordan <JWall@willkie.com>; Cohan, Shannon <scohan@fennemorelaw.com>
**Cc:** Powell, Wesley <wpowell@willkie.com>; Sheets, Victoria <VSheets@willkie.com>; Garbacz, Justin <JGarbacz@willkie.com>; 'Joshua Block' <jblock@aclu.org>; 'Christine Wee' <CWee@acluaz.org>; 'Eckstein, Paul (Perkins Coie)' <PEckstein@perkinscoie.com>; 'Yost, Austin C. (Perkins Coie)' <AYost@perkinscoie.com>
**Subject:** RE: Toomey v State of Arizona - Proposed Stipulation [FC-Email.FID11439673]

Thank you Jordan. Understanding Plaintiff's deadline to respond to the motion for reconsideration, we do expect to have a response to the proposed stipulation tomorrow.

**From:** Wall, Jordan <JWall@willkie.com>
**Sent:** Monday, May 2, 2022 5:26 PM
**To:** Curtis, Ryan <RCurtis@fennemorelaw.com>; Cohan, Shannon <scohan@fennemorelaw.com>
**Cc:** Powell, Wesley <wpowell@willkie.com>; Sheets, Victoria <VSheets@willkie.com>; Garbacz, Justin <JGarbacz@willkie.com>; 'Joshua Block' <jblock@aclu.org>; 'Christine Wee' <CWee@acluaz.org>; 'Eckstein, Paul (Perkins Coie)' <PEckstein@perkinscoie.com>; 'Yost, Austin C. (Perkins Coie)' <AYost@perkinscoie.com>
**Subject:** RE: Toomey v State of Arizona - Proposed Stipulation

Ryan, Shannon—

Attached is a revised draft of the proposed stipulation, correcting a few typos.

In light of the court's request that we respond to State Defendants' motion for reconsideration, would you let us know if State Defendants will agree to the terms of the proposed stipulation by tomorrow, May 3.


Thanks,
Jordan


**Jordan C. Wall**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8465 | Fax: +1 212 728 9465
jwall@willkie.com | vCard | www.willkie.com bio
Pronouns: he, him, his

---

**From:** Sheets, Victoria <VSheets@willkie.com>
**Sent:** Thursday, April 28, 2022 9:52 PM
**To:** 'Curtis, Ryan' <RCurtis@fennemorelaw.com>; 'Cohan, Shannon' <scohan@fennemorelaw.com>; 'Yost, Austin C. (Perkins Coie)' <AYost@perkinscoie.com>; 'Eckstein, Paul (Perkins Coie)' <PEckstein@perkinscoie.com>; 'Joshua Block' <jblock@aclu.org>; 'Christine Wee' <CWee@acluaz.org>; Powell, Wesley <wpowell@willkie.com>; Wall, Jordan <JWall@willkie.com>; Garbacz, Justin <JGarbacz@willkie.com>
**Subject:** Toomey v State of Arizona - Proposed Stipulation

Counsel,

Please find attached the draft stipulation as previously discussed.

Best,
Victoria

**Victoria A. Sheets**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8858 | Fax: +1 212 728 8111
vsheets@willkie.com | vCard | www.willkie.com bio

---

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT D

Page 1

1          UNITED STATES COURT OF APPEALS

2              FOR THE NINTH CIRCUIT

3  -------------------------------------------------x

4  No. 21-71312

5  -------------------------------------------------x

6  In re: STATE OF ARIZONA; et al.,

7

8  STATE OF ARIZONA; et al.,

9          Petitioners,

10  v.

11  UNITED STATES DISTRICT COURT FOR

12  THE DISTRICT OF ARIZONA, TUCSON,

13          Respondent,

14  RUSSELL B. TOOMEY; et al.,

15          Real Parties in Interest.

16  -------------------------------------------------x

17              Oral Argument

18              March 10, 2022

19

20

21

22  B E F O R E :

23  HON. PAUL J. WATFORD

24  HON. RICHARD A. PAEZ

25  HON. RICHARD CLIFTON

Page 2

1          MR. BERG:  May it please the Court.

2     I'm Timothy Berg of Fennemore Craig, representing

3     Petitioner, State of Arizona, Andy Tobin, and

4     Paul Shannon.

5          The issue presented here is whether the

6     Petitioners waived their attorney/client

7     privilege by stating in answers to

8     interrogatories that they consulted Counsel with

9     respect to the policy at issue here, by

10    identifying those Counsel, and by identifying

11    attorney/client privileged documents, but not

12    disclosing the contents of the communications or

13    documents, or raising an advice of counsel

14    defense.  The answer has to be no, there has been

15    no waiver here, and the District Court committed

16    clear error.

17          As then-Judge, later Justice Ginsburg

18    stated in United States versus White, implied

19    waiver in sum is not appropriately invoked when a

20    client has gone to an attorney in good faith,

21    seeking an opinion as to the legality of certain

22    conduct in an area where legal boundaries may be

23    difficult for the layman to discern.  I think the

24    clear lesson of the White case is, simply because

25    someone says, I didn't have intent to commit a

Page 3

1   crime, or I didn't have intent to discriminate,

2   and as part of the discovery they reveal that

3   they talked to their lawyer, that isn't a waiver

4   of the attorney/client privilege.  It takes

5   something more.  Again, as Justice Ginsburg said,

6   it has to be specific -- then-Judge Ginsburg,

7   pardon me said it has to be specific in a

8   positive waiver, and that hasn't happened here.

9           HON. MIDDLE:  Can I change the facts

10  here just -- only slightly?  What if the

11  Plaintiff sues, says, you know, we've

12  discriminated against us in not providing this

13  coverage, and you -- your clients say, well, the

14  reason we didn't provide the coverage has nothing

15  to do with discrimination?  We consulted with our

16  lawyers, and they told us the law prohibited us

17  from offering that coverage.

18          MR. BERG:  Well, I think, Your Honors,

19  if what we say is, we didn't have bad intent here

20  because we relied on the advice of our lawyers in

21  deciding we didn't have bad intent, that is a

22  waiver.  But that isn't what happened here.

23          HON. PAUL WATFORD:  Okay.  And, just to

24  stop --

25          MR. BERG:  Okay.

1            HON. PAUL WATFORD:  -- that is, though,
2    what the District Court thought you had done.  Is
3    that right?
4            MR. BERG:  Yes.  But I think the
5    District Court is in error, and I think --
6            HON. PAUL WATFORD:  Okay.
7            MR. BERG:  -- this is something this
8    Court can decide itself de novo, because you have
9    in front of you the materials the District Court
10   looked at, the interrogatory answers.
11           HON. PAUL WATFORD:  Right.
12           MR. BERG:  Unlike a typical case, where
13   we might put a witness on and there's a
14   credibility issue, this Court has in front of it
15   the specific interrogatory answers the District
16   Court relied on --
17           HON. PAUL WATFORD:  Right.
18           MR. BERG:  -- in concluding there was a
19   waive.  So, it seems to me, what you have in
20   front of you isn't a fact question.  You have a
21   legal question of whether those interrogatory
22   answers are sufficient to create a waiver.
23           HON. PAUL WATFORD:  Okay.  So, why is
24   what happened here different from the
25   hypothetical I posed?

```
 1            MR. BERG:  Because we didn't say, we
 2   had no intent here.  Our lawyers told us we could
 3   do this legally, and therefore, we thought it was
 4   legal.  What we said is, we had no intent.  We
 5   were asked, what are the reasons that you did
 6   this?  We said, well, we talked to our lawyers,
 7   and we also had cost concern and cost containment
 8   issues.  It is different.
 9            I think that the attorney/client
10   privilege is important, and drawing this line is
11   really important.  And it may seem subtle, but I
12   think there's a significant difference between
13   saying, I talked to my lawyer.  I had no intent
14   to discriminate.  I looked at other things, which
15   is true here -- again, the record reflects that
16   our client went out to its insurance brokers, it
17   gathered legal opinions from legal periodicals,
18   it did all sorts of other things other than just
19   talk to its lawyers -- and say, we had no
20   malintent, and saying, the reason I can prove I
21   didn't have discriminatory intent here is that I
22   talked to my lawyer, and my lawyer told me it was
23   legal to do this.  And that isn't what happened
24   here.
25            And that's the kind of defense that I
```

Page 6

```
 1    think, if you found in the White, case would be a
 2    waiver.  Just, again, Judge Ginsburg in that case
 3    makes the distinction between saying, generally,
 4    I had no -- I think in that case, it was intent
 5    to commit a crime rather than discriminatory, but
 6    I had no mis intent, and oh, by the way, part of
 7    what I did was walk to my lawyer, and saying, the
 8    reason I can defend and I didn't have mis intent
 9    is I relied on the advice of my Counsel in making
10    this decision.  And because I relied on advice of
11    counsel, the Court can't find that I had bad
12    intent.
13              HON. PAUL WATFORD:  So, the reason I
14    put the hypothetical the way I did is that I'm
15    not sure I see a huge difference between what you
16    actually said.  So, instead of saying, we
17    consulted with our lawyers, and we were told it's
18    prohibited to offer this coverage, when asked,
19    give us the reasons why you didn't offer the
20    coverage, you say, well, we consulted with our
21    lawyers, and they told us we didn't have to.  And
22    that's our reason, and that's why there's no
23    discrimination, because they told us we didn't
24    have to offer it.  And it seems to me, isn't it
25    just half-dozen of one and six of the other?
```

1              MR. BERG:  Your Honor, Your Honor,

2    you've taken it a step further than I think the

3    interrogatory answer does.

4              HON. PAUL WATFORD:  Okay.

5              MR. BERG:  We have not said -- the

6    interrogatory answers said, what considerations

7    did you take into account in deciding not to

8    offer this?

9              HON. PAUL WATFORD:  It said, what are

10   the reasons why you didn't.  Okay?

11             MR. BERG:  Right.

12             HON. PAUL WATFORD:  So, and one of the

13   reasons given --

14             MR. BERG:  One of them was, we talked

15   to our -- we talked to our lawyers --

16             HON. PAUL WATFORD:  -- and they told us

17   we didn't have to do it.

18             MR. BERG:  Okay.  That isn't what the -

19   - I don't think that's what the interrogatory

20   answer says, Your Honor.

21             HON. PAUL WATFORD:  Okay.  Well, let's

22   look at the interrogatory.  Pull it up and you

23   can quote it to me.

24             MR. BERG:  Let me -- I don't think I

25   have the exact words of the interrogatory answer

Page 8

```
 1    in front of me.  I have it back over there.  But
 2    I don't believe we said, and therefore, we didn't
 3    do it.  I think we said, we talked to our lawyer,
 4    we -- and we were told -- you're right -- we were
 5    told it was not legally required.  We also looked
 6    at cost containment and cost (indiscernible).
 7              HON. PAUL WATFORD:  Right.  Two
 8    reasons.
 9              MR. BERG:  Again -- okay.
10              HON. PAUL WATFORD:  You gave two
11    reasons, and that's why you said there was no
12    discrimination.
13              MR. BERG:  But -- but no, that -- there
14    is -- you're making a -- you're making a step
15    we're not making.
16              HON. PAUL WATFORD:  Okay.
17              MR. BERG:  What we said is, this is why
18    we did it.  We haven't said, those reasons in and
19    of themselves aren't discriminatory.  Again, we
20    relied on our lawyer's advice in deciding we
21    could legally do this, and therefore, we had no
22    malintent.  Plaintiff is still entitled to prove
23    that our intent was bad or that -- or if they can
24    prove without intent that we've discriminated in
25    some way, they can do that.
```

```
 1              The defense -- because the
 2   attorney/client privilege is so important, I
 3   think the Court has to be careful in how broadly
 4   you read waivers.  And to me, if you read the
 5   White case, if you read the other cases in the
 6   circuit, the -- what a client does to waive the
 7   defense is to say, you can't find me guilty, or
 8   you can't find me liable, because I relied on my
 9   lawyer's advice.  And that isn't what --
10              HON. RICHARD CLIFTON:  Are you saying
11   that there was no reliance on the Counsel's
12   advice?
13              MR. BERG:  What I'm saying, Your Honor,
14   is that the interrogatory response doesn't
15   reflect --
16              HON. RICHARD CLIFTON:  Other question.
17              MR. BERG:  Okay.
18              HON. RICHARD CLIFTON:  What is the
19   State's position as to whether or not it relied
20   upon advice of counsel?  Would it disclaim
21   reliance upon advice of counsel as a defense?
22              MR. BERG:  I think it would disclaim
23   reliance on advice of counsel as a defense, Your
24   Honor, yes.  If you're asking me, what did the
25   State consider, I think the interrogatory
```

Page 10

```
 1   reflects that we talked to our lawyers, we talked
 2   to insurance brokers --
 3             HON. RICHARD CLIFTON:  Let me be more
 4   focused --
 5             MR. BERG:  Okay.  I'm sorry.
 6             HON. RICHARD CLIFTON:  -- because I
 7   don't want to lose all your time.  What role does
 8   advice of counsel play in this case, from your
 9   perspective?
10             MR. BERG:  I don't think it plays any
11   role unless we raise advice of counsel as a
12   defense, and we haven't done that.  So --
13             HON. RICHARD CLIFTON:  And are you
14   prepared to disclaim raising advice of counsel as
15   a defense?
16             MR. BERG:  Yes, Your Honor, we are.  We
17   are not sitting here, saying -- we are not saying
18   to the Court -- obviously, the issue before this
19   Court is privilege and not liability for whether
20   or not the plan is invalid.  But I think what we
21   are saying is, no one is claiming we -- that
22   advice of counsel is a defense to the underlying
23   claim here, which is of course what is not in
24   front of the Court today.  What's in front of the
25   Court today is a privilege question and a
```

 1   mandamus question.

 2            HON. PAUL WATFORD:  Okay.  So, I think

 3   that's helpful, but let me -- and we'll have to

 4   ask your opponents and see what they say about

 5   this.  But as I understand, what you're saying is

 6   that you've provided these interrogatory

 7   responses.  You're saying that the District Court

 8   and the Plaintiffs misinterpreted what you were

 9   trying to say there.  And you're saying now, to

10   the extent that any of you all thought that we

11   were trying to raise some kind of an advice of

12   counsel defense, we are not doing so.  We are,

13   you know, assuming this case were to go to a jury

14   or whatever, we are not going to be arguing that.

15   And I guess, if we or the District Court were to

16   hold you to that, then there'd be no reason for

17   them to get access to these documents?  Is that

18   what you're saying?

19            MR. BERG:  Correct, Your Honor.

20   Exactly.  That's precisely the argument we're

21   making.

22            HON. RICHARD PAEZ:  Is that what you

23   told the District Court?

24            MR. BERG:  Your Honor, I believe so.  I

25   was not --

```
 1            HON. RICHARD PAEZ:  But did you tell
 2    the District Court you were not going to rely on
 3    a advice of counsel defense?
 4            MR. BERG:  I don't -- I do not believe
 5    -- I don't know the answer to that question.
 6            HON. RICHARD PAEZ:  So, why -- how can
 7    we say that the District Court clearly erred?
 8            MR. BERG:  Because --
 9            HON. RICHARD PAEZ:  This is a -- you
10    know, mandamus, we don't go around issuing writs
11    of mandamus against the District Court very
12    often.  They have to -- there has to be clear
13    error.  There has to be, you know, a case that
14    they've just disregarded.  It's pretty tough.
15            MR. BERG:  It would be my position,
16    Your Honor, that the interrogatory answers, even
17    without the concession I just made -- and I'm
18    sorry I hit the microphone; I know I'm not
19    supposed to touch it.  Even if -- even without
20    the concession that I just made in response to
21    Judge Clifton, it is still clear we were not
22    raising an advice of counsel defense, and the
23    Court's finding that we were is a clear legal
24    error, based on what's in the interrogatories.
25            HON. RICHARD PAEZ:  It's a legal error,
```

```
                                            Page 13
 1    or a factual error?
 2             MR. BERG:  Legal error.  I think it's -
 3    - I think the question here is whether what is in
 4    these interrogatory answers is sufficient as a
 5    legal matter --
 6             HON. RICHARD PAEZ:  I thought you -- I
 7    thought one of the bases for the District Court's
 8    ruling was that they found a waiver by
 9    implication.
10             MR. BERG:  Yes, Your Honor.  And the
11    waiver by implication would be if we'd raised an
12    advice of counsel defense.  That is -- that is
13    waiver by implication.
14             HON. RICHARD PAEZ:  Well, I mean, you
15    didn't raise it in your answer.
16             MR. BERG:  Well, Your Honor, if we
17    raised it in these interrogatory answers, that
18    would be a waiver by -- I think an explicit
19    waiver would say, we're waiving our
20    attorney/client privilege.  Nobody suggests we
21    did that.  Nobody suggests we disclosed the
22    content of attorney -- or at least the District
23    Court didn't find we disclosed the content.
24             What it found was an implied waiver,
25    based on its interpretation of these
```

Page 14

```
 1  interrogatory answers as legally meeting the
 2  provisions of an advice of counsel defense.  And
 3  our position is, they do not do that, that if you
 4  read the interrogatory answers, we are not
 5  saying, we are relying on advice of counsel as a
 6  defense in this case, and we're waiving our
 7  attorney/client privilege by doing so.  It simply
 8  isn't here.
 9          HON. PAUL WATFORD:  Well, it took me a
10  little while, but I have it in front of me.
11          MR. BERG:  Okay.
12          HON. PAUL WATFORD:  So let me just
13  quote it and make sure you're on board with this.
14  So, Interrogatory Number 1 -- let's forget about
15  4 and 7.  Those other ones didn't seem --
16          MR. BERG:  Okay.  I agree with Your
17  Honor, the key one is 1.
18          HON. PAUL WATFORD:  Okay.  So,
19  Interrogatory 1 asks you to identify and describe
20  all reasons why the plan excludes coverage for
21  gender reassignment surgery.  And then, what your
22  clients say is, the State of Arizona's self-
23  funded health plan excludes coverage for gender
24  reassignment surgery because the State concluded
25  under the law that it was not legally required to
```

```
 1   change its health plan to provide such coverage
 2   under Title 7, blah, blah, blah.  And then,
 3   later, you say, hey, by the way, that legal
 4   advice we got is privileged.
 5             MR. BERG:  Yeah.
 6             HON. PAUL WATFORD:  So, that seems to
 7   be -- okay, well, you respond to that, then.
 8   That's what you said.
 9             MR. BERG:  Okay.  To me, that is not
10   saying, we are defending based on that advice of
11   counsel, and we're arguing we didn't have intent,
12   based on the fact we got advice from our counsel
13   on that.  And that is what I'm suggesting to you
14   in light of the United States versus White would
15   be required to be a waiver here.  It takes
16   something more than us saying, we talked to our
17   lawyers about this, and one of the reasons we
18   took into account in making our decision was that
19   we talked to our lawyers.
20             If we had said, you cannot prove we had
21   intent here because we went and talked to our
22   lawyers, and they told us it was legal, and we
23   went ahead and did it anyway, that would be an
24   advice of counsel defense.  That would be
25   sufficient to be an implied waiver.  That would
```

1   permit the discovery order here.

2        HON. RICHARD PAEZ:  To prevail, do the

3   Plaintiffs have to prove intent?

4        MR. BERG:  I think, Your Honor, that

5   certainly, on at least some of their theories,

6   they do.  I do think intent is an issue here.  I

7   wouldn't quarrel with that proposition.  But I

8   don't think that what we -- I don't think that

9   that interrogatory answer says we have a defense

10  to intent based on advice of counsel, and I think

11  that's what it would need to do.

12       HON. RICHARD PAEZ:  So, what would one

13  of your witnesses say, just that they determined

14  that it wasn't -- it wasn't illegal?

15       MR. BERG:  Deposition testimony was

16  taken, Your Honor.  In this case, it was

17  deposition testimony of people who did not have

18  the ability to waive the privilege.  They don't

19  have the authority to waive the privilege.  I

20  think frankly, one of the reasons the District

21  Court focused on the interrogatory responses is

22  that, if you get into the deposition testimony,

23  you have to worry about whether a former employee

24  can, at a time of a deposition when she no longer

25  works for our client, waive their privilege.  And

1  so, I think that's why the focus here was on the
2  interrogatory answers, Your Honor.
3           HON. RICHARD PAEZ:  I don't think that
4  answers my question.
5           MR. BERG:  Okay.  I believe if you look
6  at the -- if you look at --
7           HON. RICHARD PAEZ:  What would a
8  witness say on the stand about intent or about
9  counsel?  Would they --
10           MR. BERG:  Oh, I --
11           HON. RICHARD PAEZ:  Is it your -- does
12  your concession mean that no witness is going to
13  get up there and say, we consulted with a lawyer?
14  That's not going to be -- you're not going to do
15  that.
16           MR. BERG:  I think what my concession
17  means is no witness is going to get up there and
18  said, because we had legal advice that we could
19  do this, we didn't have the intent.  What they're
20  going to get up and say is, we looked at a whole
21  bunch of things, and here was what we decided to
22  do, and one of the reasons was cost containment.
23  And one of the reasons is, when we looked at all
24  this stuff, including stuff from our insurance
25  company and outside periodicals, we didn't think

Page 18

1  we had to cover them, and we didn't think we had
2  bad intent.
3          But that's not, in my -- again, I think
4  if you read the White case, a waiver, even an
5  implied waiver, has to be positive and specific,
6  and we don't get there here.
7          HON. RICHARD PAEZ:  Okay.
8          MR. BERG:  I'd like to save a little
9  bit of time for rebuttal, if I may, Your Honor.
10  Thank you.
11          HON. PAUL WATFORD:  We'll make sure you
12  have time for rebuttal.
13          MR. BERG:  Okay.
14          HON. PAUL WATFORD:  Okay.  Let's hear
15  from Counsel for the Respondent.
16          MR. BERG:  I'll just get out of your
17  way here.
18          MR. WALL:  Good morning, Your Honors.
19  May it please the Court, Jordan Wall, Wilkie Farr
20  & Gallagher, on behalf of the real party in
21  interest, Dr. Russell B. Toomey.  Thank you for
22  this opportunity to be heard.
23          As the Court has noted, a petition for
24  a writ of mandamus is indisputably a drastic and
25  extraordinary remedy that is granted in the case

Page 19

```
 1   of extraordinary causes involving exceptional
 2   circumstances.  As this Court has consistently
 3   recognized, and including in in re Van Dusen,
 4   this is not an instance where the mandamus is
 5   warranted because it is not a case of
 6   extraordinary circumstances.  Yes, Your Honor?
 7              HON. PAUL WATFORD:  Yeah, yeah, and you
 8   -- I don't want to cut off the rest of your
 9   argument, but maybe can you just respond, like,
10   the concession you just heard on -- from the
11   lectern today?  That's good enough, not good
12   enough?  Tell us your response to that.
13              MR. WALL:  Your Honor, it's not good
14   enough, and it was not an argument that was
15   presented to the District Court, and I think
16   there are several reasons for that.  Backing out,
17   the Petitioners claim that it is all focused on
18   Interrogatory Number 1 is plainly incorrect.  The
19   record is replete with instances in which the
20   Petitioners put forward affirmatively the advice
21   of counsel.  You can look -- we've already
22   discussed Interrogatory Number 1, which they were
23   responding to the question as to, why do you
24   maintain the exclusion?  And the answer, that we
25   reached a legal conclusion that we were not
```

Page 20

```
 1   required to provide such care, and the legal
 2   advice we received on this --
 3            HON. PAUL WATFORD:  Okay.  Right, we
 4   just went through that.  And so, then, your
 5   opponent stands up and says, to the extent there
 6   was any confusion on that, I'm going to clear it
 7   up right now.  We were not trying to interject
 8   the advice we got from our lawyers, and we are
 9   not going to interject, going forward, the advice
10   of our lawyers as a defense to the -- you know,
11   the intent element of your claims.  Why doesn't
12   that eliminate the need for you now -- as a
13   matter of fairness, because that's the basis on
14   which the District Court ruled -- why doesn't
15   that eliminate the need for you to get access to
16   these privileged documents?
17            MR. WALL:  Well, Your Honor, because
18   the involvement of Counsel here has now become a
19   factual point in the case.  And so, even though
20   Petitioners have disclaimed that they will rely
21   on this, it is the burden of Dr. Toomey to
22   establish an evidentiary record refuting their
23   defense.  For instance, in response to
24   Interrogatory Number 4 and Number 7, which I
25   heard Your Honor say you didn't think mattered, I
```

                                            Page 21

1    would point to Petitioner's own cases, Hernandez

2    versus Canyon.  They have miscited those for

3    different reasons about, you know, a blanket

4    waiver of --

5              HON. PAUL WATFORD:  Can I tell you why

6    I don't think those are relevant?  It's because

7    they're just -- you asked them questions that

8    they have to give truthful answers to.  Tell us

9    all the people you consulted with.  Okay, well, I

10   can't lie and not mention my lawyer, so you can't

11   possibly predicate a waiver of attorney/client

12   privilege on a truthful -- you're just asking for

13   truthful factual information.  If the person

14   doesn't intend in the litigation to interject

15   advice of counsel as any kind of defense, the

16   mere answering your question truthfully can't be

17   a waiver.  That's why I just think you've got to

18   put everything on the response to Interrogatory

19   Number 1, right?

20             MR. WALL:  And I understand your point,

21   Your Honor.  And what I would say is that the

22   Petitioners fundamentally misunderstand the

23   nature of an implied waiver in the at-issue

24   doctrine.  As the Court established in Chevron

25   Corp v. Pennzoil, what undergirds the at-issue

Page 22

1    doctrine is the fairness principle.  By putting

2    forward the advice of counsel both in

3    Interrogatory Number 1, but also noting the

4    involvement of counsel in the decision making

5    here at Interrogatory Number 4, these are issues

6    of fact that now Dr. Toomey needs to establish an

7    evidentiary record on.  In Hernandez, what the

8    Court noted was that the involvement of counsel -

9    -

10            HON. RICHARD CLIFTON:  Well, let me --

11   why?  I mean, if the question of whether this

12   constitutes discrimination is a legal question as

13   to which advice of counsel you have to assume

14   happened.  If they thought that they had to, they

15   presumably would have provided the coverage

16   that's being sought.  But the Court's going to

17   decide whether the law requires the provision of

18   that coverage, and the Court, to be polite about

19   it, really doesn't care very much about what the

20   advice of counsel some years before was.  So, why

21   does it matter?  Is the advice of counsel really

22   an issue in the underlying case?

23            MR. WALL:  Your Honor, I think it

24   matters for two reasons.  The first is because

25   the advice of counsel is the stated reason why

Page 23

```
 1  the government has maintained this --

 2            HON. RICHARD CLIFTON:  You have to

 3  assume that's the case.  I mean, even if they had

 4  never mentioned lawyer, I think you would accept

 5  that if they'd been told by their lawyers, you

 6  don't have a prayer, this is clearly covered as -

 7  - this would be discriminatory not to cover this.

 8  So, I just take as a given that's out there.  I

 9  don't think it's going to be passionately

10  disputed.  On your point, you don't think you

11  have to persuade the Court that the State's

12  lawyers gave them advice that they didn't follow.

13  You're interested in what the state of the law

14  is, which the Court will decide.  So, why is it

15  you have to prove something about advice of

16  counsel if it's not offered as a defense beyond

17  this interpretation of the law?

18            MR. WALL:  Well, Your Honor, because

19  t's been offered as a defense both by the witness

20  -- by numerous witnesses that the Petitioners

21  have put forward as persons with knowledge about

22  the decision making here.  And so, we have to

23  establish a record to be able to refute this

24  defense.

25            HON. RICHARD CLIFTON:  Well, but what
```

Page 24

```
 1   are you going to refute?
 2            MR. WALL:  Well, that's what we're
 3   looking for the discovery, Your Honor.  We want
 4   to be able to examine the advice that was
 5   provided, because one of the reasons Petitioners
 6   have claimed that they have -- they decided to
 7   main the exclusion is because of the legal
 8   reasoning.
 9            HON. RICHARD CLIFTON:  But well, but
10   still, the Court's not going to be persuaded by
11   whatever legal reasoning was offered by counsel
12   to the State some years before.  You're not going
13   to argue to the Court that it has to accept
14   whatever the Arizona lawyer said to the State.
15   You're going to argue to the Court the law
16   requires these services to be provided;
17   otherwise, you're violating -- it constitutes sex
18   discrimination.  So, why is advice of counsel
19   relevant?
20            MR. WALL:  Well, Your Honor, because
21   intent is a factor in this case.
22            HON. RICHARD CLIFTON:  How is intent a
23   factor?
24            MR. WALL:  Well, Your Honor, Dr.
25   Toomey's alleged claims under both it's a
```

1   violation of the Equal Protection Clause of the

2   14th Amendment and Title VII.  Under Title VII,

3   Dr. Toomey is pleading a case based on disparate

4   treatment or disparate impact, of which this may

5   be supporting evidence as to animus or

6   discriminatory intent on the part of the

7   government.  For instance, if the documents

8   corroborate that the Petitioners were informed

9   that, yes, this exclusion is illegal, we think

10  that would be a relevant fact as part of the

11  record to present before the District Court.

12          We also think the involvement of

13  counsel in the actual decision making here puts

14  their involvement as a factual point in the

15  record to be developed.  We cannot simply accept

16  Petitioner's representation that we received

17  legal advice and everything is, you know, okay.

18  Dr. Toomey, again, has the burden of establishing

19  that evidentiary record.

20          What I would also say is, the Court

21  asks fairly, you know, when we get to trial, what

22  will witnesses say?  And I think, as you look

23  through the record -- and it's established in all

24  of our papers, as we had cited the deposition

25  testimony itself -- that all the witnesses have

```
 1   repudiated, now, that cost was a significant

 2   factor in the Court -- in the Petitioner's

 3   decision making.  They have all uniformly pointed

 4   to the legal advice they received about his

 5   decision making, and that was the basis for the

 6   Petitioner's decision to maintain the exclusion.

 7            HON. RICHARD CLIFTON:  Okay, but I

 8   don't really understand that.  I mean, the fact

 9   that the -- a lawyer says you don't have to do it

10   doesn't explain why you don't do it.  It just

11   says that's a permissible course.  And if they

12   disclaim cost, is there any other reason offered

13   for not providing the service that your client

14   seeks to obtain?

15            MR. WALL:  Well, yes, Your Honor,

16   because I believe Dr. Toomey -- it's incumbent

17   upon him to be able to examine that record if

18   that is now, as we believe through discovery, the

19   only reason why they maintained the exclusion.

20            HON. RICHARD CLIFTON:  But that's not a

21   reason to maintain the exclusion.  To say that

22   you don't have to do something doesn't mean you

23   don't do something.  It just says it's an option

24   available.  You can do it or you can not do it

25   for whatever reason.  But that you don't have to
```

Page 27

```
 1  do it isn't, by itself, an explanation for why
 2  you don't do it.  Cost is what I anticipated the
 3  response to be, and that's what I'd understood
 4  until you just said they disclaimed cost, so...
 5            MR. WALL:  Well, Your Honor, I would
 6  say that we have to think in the context of how
 7  this response from Petitioners came about.  And
 8  the answer, Petitioners averred that there are
 9  legitimate nondiscriminatory and non-pretextual
10  reasons why they maintain the exclusion.  When
11  they were asked what those reasons were, the very
12  first thing they pointed to was, we are -- the
13  legal conclusion was that we are not required to
14  do so.  It is their explanation as to -- and they
15  have affirmatively (indiscernible) into this case
16  that the legitimate reason why they do not have
17  to cover it -- they can maintain the exclusion is
18  legal advice.
19            HON. PAUL WATFORD:  I mean, I think I
20  understand your argument if they said in response
21  to your assertion that you acted with
22  discriminatory intent, and they said, no, no, no.
23  We weren't trying to discriminate.  Our policy is
24  always to do the bare minimum that the law, you
25  know, requires, and we went to our lawyers, and
```

Page 28

```
 1   they told us, no, the law doesn't require it.
 2   And so, we said, okay, well, that settles it.  I
 3   mean, that wouldn't negate intent, I suppose.  It
 4   would be a nondiscriminatory, you know, neutral
 5   reason for why they took the course of action
 6   they did.
 7            But I guess my problem still, and I
 8   wanted to come back to your response on this, if
 9   they now come forward and say that is not -- that
10   is most definitely not the defense we are going
11   to assert, the advice we got from Counsel is
12   never going to be interjected as a basis to
13   defend against the intent element of your claims,
14   I guess I'm still struggling to understand why
15   you need, and as a matter of fairness, access to
16   these documents. I just -- maybe if there's
17   another -- you can take another run at answering
18   that, because I'm still not clear on how this
19   concession doesn't eliminate this problem.
20            MR. WALL:  True, Your Honor.  And I
21   think the reason for that is because the Court
22   understood that even if Petitioners will sit here
23   and disclaim that they're going to rely on the
24   advice of counsel, it's not so much that there
25   are magic words as to the assertion of that
```

Page 29

```
 1   defense.  It's not that you have to say, we're
 2   asserting advice of counsel defense or that we
 3   relied on certain evidence.  The Court
 4   established in Chevron Corp v. Pennzoil that once
 5   a party has placed its knowledge of the law at
 6   issue, it also places the basis of its
 7   understanding of what the law requires at issue.
 8            And so, everything is relevant to our
 9   ability to develop the record.  That includes the
10   newspaper articles; that includes consultation
11   with other governmental entities, as well as the
12   legal advice they relied upon on forming that
13   understanding of the law, which they cite as
14   their chief reason for maintaining the exclusion.
15   We need all of that evidence to be able to refute
16   this defense that there were legitimate reasons
17   to maintaining the exclusion.
18            HON. PAUL WATFORD:  And is it your
19   understanding from our cases that once you've put
20   at issue legal advice you got from counsel, it's
21   kind of -- it's just a one-way street?  You can
22   never take that back?  Do you know what I mean?
23   Because they're kind of saying, this was all a
24   mistake.  To the extent that the way we drafted
25   the interrogatory response that led you and the
```

```
 1    District Court to think that we were trying to
 2    put at issue the legal advice, that was just --
 3    it was all a big misunderstanding, we're ready to
 4    step back from that; you're basically saying, as
 5    I hear you, nope, that's not an option.  Once
 6    you've kind of, you know, gone down that road,
 7    you're stuck, and we now get access to all these
 8    documents, whether you like it or not.  So --
 9            MR. WALL:  Well, Your Honor, I think
10    this goes to your question of whether this is a
11    legal question for determination or a factual
12    question.  And that's my point in saying that
13    it's not just Interrogatory Number 1.  It's the
14    involvement of counsel which is the factual point
15    in this case in that decision making.
16            HON. RICHARD CLIFTON:  How could
17    counsel not be involved?  I mean, just by nature,
18    your argument is that the law requires.  Anybody
19    looking at it would say, well, the first
20    question, does the law require?  So, the fact
21    that they consulted with counsel doesn't strike
22    me as very meaningful here.  If they hadn't
23    consulted with counsel, that might be meaningful.
24    But that's the -- this is the dog that barked.
25            MR. WALL:  Well, Your Honor, I would
```

Page 31

```
 1   say that it's not the mere consultation with
 2   counsel.  And that's why I think Petitioner's
 3   concerns that somehow, allowing the District
 4   Court's order to stand will entail a parade of
 5   horribles for every instance in which the
 6   Government says it consulted counsel, is that the
 7   specific reason they explained for maintaining
 8   this exclusion is the legal rationale.  You can
 9   imagine that the Government might have other
10   legitimate bases for maintaining exclusion, such
11   as costs, such as a facially neutral policy that
12   they only was the bare minimum, which discovery
13   has now repudiated as the case.  They did not
14   have that policy, and they do treat -- cover
15   other policies that -- or other benefits that are
16   not legally required.
17           But the reason the -- the reason the
18   Petitioners asserted for maintaining the
19   exclusion is the advice of counsel.  And so, that
20   is an entirely relevant fact that we need to be
21   able to explore.
22           HON. RICHARD PAEZ:  Let me ask you
23   this.  I was not expecting the concession that
24   Counsel offered during his argument.  That wasn't
25   in my, you know, on my radar screen at the time.
```

Page 32

```
 1   It seems to me, though, that it's significant
 2   enough that the District Court should be able to
 3   consider that and maybe rethink whether or not
 4   she -- ordering disclosure is the appropriate
 5   thing.
 6            MR. WALL:  Well, Your Honor, I would --
 7   I would say that, you know, the club of mandamus,
 8   as we've all noted, is extraordinary, and the
 9   fact that --
10            HON. RICHARD PAEZ:  I'm reluctant --
11   you know, the concession was made in front of us,
12   and I'm just reluctant to say, you know, the
13   concession, and therefore, District Court, you
14   clearly erred.  Mandamus; set aside that order.
15   I'm not sure that that -- well, I'm not sure that
16   I'm prepared to do that just because we got a
17   concession here today.
18            It seems like the District Court should
19   be able to consider that and to think through
20   some of the questions that I was asking, because,
21   you know, when I asked him about what would a
22   witness testify to, and he said, well, we can --
23   you know, we determined that it was lawful or
24   whatever, and we considered this -- we consulted
25   with people.  Well, the first thing the cross-
```

Page 33

```
 1   examination is going to be, who did you consult
 2   with?
 3            MR. WALL:  You're right, Your Honor,
 4   and I would say that --
 5            HON. RICHARD PAEZ:  And it seems to me
 6   that those kinds of issues that relate to the
 7   litigation itself ought to be explored by the
 8   District Court, not by -- I mean, this is -- I
 9   wasn't expecting this.
10            MR. WALL:  Well, Your Honor, that's
11   exactly why I would say the petition of mandamus
12   should not warn here.  If you consider the other
13   Bauman factors, particularly the first factor
14   about the availability of other adequate means of
15   relief, Petitioners certainly could have failed
16   to comply with the Court's discovery order, and
17   they would have had available to them post-
18   judgment relief, where a court could have
19   reviewed this and said, you know, they didn't
20   actually put this at issue, that, you know, could
21   remand it for a new trial and have this evidence
22   excluded.  But they didn't do that.  They --
23            HON. RICHARD PAEZ:  Well, they could
24   file a motion for reconsideration and say, hey,
25   look, Judge, you got it all wrong.  We're not
```

1    going to raise this as a defense.

2              MR. WALL:  Well, Your Honor, they

3    didn't file a motion for reconsideration.

4              HON. RICHARD PAEZ:  Oh, I know.  I'm

5    saying, but there's ways they could have brought

6    this to the District Court's attention, and they

7    didn't do it.

8              MR. WALL:  Exactly, and that's why the

9    petition does not lie.  Because they could have

10   failed to comply with the order, and the District

11   Court could have entered a discovery sanction

12   saying that you cannot assert this defense,

13   exactly what Petitioners have conceded here

14   before.  And that's why the petition should lie.

15   None of the Bauman factors, specifically the

16   clear error that we've discussed already, support

17   granting this petition.  The District Court did

18   not err.  It certainly got this right.  And it

19   certainly did not commit clear error.

20             HON. PAUL WATFORD:  Okay.

21             MR. WALL:  Thank you, Your Honors.

22             HON. PAUL WATFORD:  Thank you very much

23   for your argument.  Let's put two minutes on the

24   clock for rebuttal.

25             MR. BERG:  Let me start with the last

Page 35

```
 1   point.  To argue that the State of Arizona should
 2   have disobeyed an order of the District Court,
 3   permitted itself to be found in contempt, and
 4   then proceed to litigate this issue is something
 5   this Court has rejected in a couple -- in several
 6   cases we've cited in our reply, but also, I
 7   think, ignores the reality that to say it's an
 8   adequate remedy to violate a court order seems to
 9   me to be inappropriate.
10             HON. RICHARD PAEZ:  Well, you could
11   have gone back and filed a motion for
12   reconsideration, saying, hey, Judge, you know,
13   there's been a -- there's been a mistake here.
14             MR. BERG:  Well, what we did do is,
15   first we were in front of the magistrate judge.
16   We made our argument.  Then we went to the
17   District Court, and we made our argument.  I
18   don't think --
19             HON. RICHARD PAEZ:  You didn't make
20   this concession in front of the District Court,
21   did you?
22             MR. BERG:  Your Honor, I didn't argue
23   this.  I don't know exactly what was said in
24   front of the District Court on oral --
25             HON. RICHARD PAEZ:  Right, but
```

1   something --

2           MR. BERG:  There wasn't any oral

3   argument --

4           HON. RICHARD PAEZ:  But wait a minute.

5   Something clicked along the way, and you decided,

6   well, you know, I've got to make it clear.  I'm

7   going to make it clear to the Ninth Circuit that

8   this is not -- that the District Court

9   misunderstood, and I'm going to concede in front

10  of the District Court that we will not raise an

11  advice of counsel defense.  It's all a

12  misconstruction.  And now you're asking us, on

13  that basis, to issue a writ of mandamus against

14  the District Court.

15          MR. BERG:  Yes, because we think it was

16  clear from the interrogatory answer that we

17  weren't raising that defense, Your Honor.  I

18  mean, it may be clearer because I got asked the

19  specific question today and I answered it

20  specifically.  But remember, in this case,

21  neither the magistrate judge nor the district

22  judge had oral argument.  We didn't have a

23  dialogue like we've had here today.  We filed

24  papers.  We took our position, which we still

25  stand by, which is that the interrogatory answer

1   to Interrogatory Number 1, which is the only one

2   I think that is even close, isn't sufficient to

3   raise an advice of counsel defense, and

4   therefore, there wasn't a waiver.

5            Now, had we had oral argument, and had

6   we had a chance to have the kind of exchange

7   we've had here, it may have -- it may have been

8   clear.  The attorney/client privilege is an

9   incredibly important privilege.  It is the oldest

10  privilege known to the law, and --

11           HON. RICHARD CLIFTON:  Let me ask you

12  about that.

13           MR. BERG:  Yes.

14           HON. RICHARD CLIFTON:  And we're --

15           MR. BERG:  Sure, Your Honor.

16           HON. RICHARD CLIFTON:  -- I'm going to

17  beg your indulgence and my colleagues'.  We've

18  all lived with the attorney/client privilege.  We

19  understand its importance.  In this particular

20  case, how does it really matter?  I mean, unless,

21  in fact, it turns out that, as your colleague

22  suggested, maybe the advice was, you can't do

23  this, and they decided to disregard it.  I don't

24  expect that's the case.  I expect you have your

25  usual lawyer qualifications and so forth, but --

Page 38

```
 1    I used to write those letters myself.
 2              But in practical terms, okay, suppose
 3    those documents are produced.  How does it
 4    matter?
 5              MR. BERG:  Well, I think -- first of
 6    all, I think going forward, it may chill the
 7    State in how it uses its lawyers.  And that's a
 8    harm that revises -- I think when the
 9    attorney/client privilege for government agencies
10    is undermined.
11              Secondly, without -- without -- there
12    may well be information in those attorney/client
13    confidences about, like for example, future
14    litigation strategy, I don't know -- I am
15    speculating -- that you would not want to turn
16    over to the other side in litigation.  I mean,
17    there are lots of reasons why there's an
18    attorney/client privilege and a work product
19    privilege, and one of them is to prevent one side
20    from going to school in their case on the other
21    side's legal theories and legal thought, Your
22    Honor.
23              HON. PAUL WATFORD:  Okay.  Thank you
24    very much.
25              MR. BERG:  Thank you very much, Your
```

```
                                        Page 39
 1   Honors.

 2              HON. PAUL WATFORD:  We appropriate it.

 3   The case just argued is submitted, and we are

 4   adjourned for the day.

 5              CLERK:  All rise.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 40

1              C E R T I F I C A T I O N

2

3     I, Sonya Ledanski Hyde, certify that the

4     foregoing transcript is a true and accurate

5     record of the proceedings.

6

7

8     *Sonya M. Ledanski Hyde*

9     _____

10

11    Veritext Legal Solutions

12    330 Old Country Road

13    Suite 300

14    Mineola, NY 11501

15

16    Date: May 2, 2022

17

18

19

20

21

22

23

24

25

| & |
| --- |
| **&**   18:20 |

| 1 |
| --- |
| **1**   14:14,17,19 19:18,22 21:19 22:3 30:13 37:1 |
| **10**   1:18 |
| **11501**   40:14 |
| **12151**   40:8 |
| **14th**   25:2 |

| 2 |
| --- |
| **2**   40:16 |
| **2022**   1:18 40:16 |
| **21-71312**   1:4 |

| 3 |
| --- |
| **300**   40:13 |
| **330**   40:12 |

| 4 |
| --- |
| **4**   14:15 20:24 22:5 |

| 7 |
| --- |
| **7**   14:15 15:2 20:24 |

| a |
| --- |
| **ability**   16:18 29:9 |
| **able**   23:23 24:4 26:17 29:15 31:21 32:2,19 |
| **accept**   23:4 24:13 25:15 |
| **access**   11:17 20:15 28:15 30:7 |
| **account**   7:7 15:18 |
| **accurate**   40:4 |
| **acted**   27:21 |
| **action**   28:5 |
| **actual**   25:13 |
| **adequate**   33:14 35:8 |

**adjourned**   39:4
**advice**   2:13 3:20 6:9,10 8:20 9:9,12 9:20,21,23 10:8,11 10:14,22 11:11 12:3,22 13:12 14:2,5 15:4,10,12 15:24 16:10 17:18 19:20 20:2,8,9 21:15 22:2,13,20 22:21,25 23:12,15 24:4,18 25:17 26:4 27:18 28:11 28:24 29:2,12,20 30:2 31:19 36:11 37:3,22
**affirmatively**   19:20 27:15
**agencies**   38:9
**agree**   14:16
**ahead**   15:23
**al**   1:6,8,14
**alleged**   24:25
**allowing**   31:3
**amendment**   25:2
**andy**   2:3
**animus**   25:5
**answer**   2:14 7:3 7:20,25 12:5 13:15 16:9 19:24 27:8 36:16,25
**answered**   36:19
**answering**   21:16 28:17
**answers**   2:7 4:10 4:15,22 7:6 12:16 13:4,17 14:1,4 17:2,4 21:8
**anticipated**   27:2
**anybody**   30:18

**anyway**   15:23
**appeals**   1:1
**appropriate**   32:4 39:2
**appropriately**   2:19
**area**   2:22
**argue**   24:13,15 35:1,22
**argued**   39:3
**arguing**   11:14 15:11
**argument**   1:17 11:20 19:9,14 27:20 30:18 31:24 34:23 35:16,17 36:3,22 37:5
**arizona**   1:6,8,12 2:3 24:14 35:1
**arizona's**   14:22
**articles**   29:10
**aside**   32:14
**asked**   5:5 6:18 21:7 27:11 32:21 36:18
**asking**   9:24 21:12 32:20 36:12
**asks**   14:19 25:21
**assert**   28:11 34:12
**asserted**   31:18
**asserting**   29:2
**assertion**   27:21 28:25
**assume**   22:13 23:3
**assuming**   11:13
**attention**   34:6
**attorney**   2:6,11,20 3:4 5:9 9:2 13:20 13:22 14:7 21:11 37:8,18 38:9,12,18

**authority**   16:19
**availability**   33:14
**available**   26:24 33:17
**averred**   27:8

| b |
| --- |
| **b**   1:14,22 18:21 |
| **back**   8:1 28:8 29:22 30:4 35:11 |
| **backing**   19:16 |
| **bad**   3:19,21 6:11 8:23 18:2 |
| **bare**   27:24 31:12 |
| **barked**   30:24 |
| **based**   12:24 13:25 15:10,12 16:10 25:3 |
| **bases**   13:7 31:10 |
| **basically**   30:4 |
| **basis**   20:13 26:5 28:12 29:6 36:13 |
| **bauman**   33:13 34:15 |
| **beg**   37:17 |
| **behalf**   18:20 |
| **believe**   8:2 11:24 12:4 17:5 26:16 26:18 |
| **benefits**   31:15 |
| **berg**   2:1,2 3:18,25 4:4,7,12,18 5:1 7:1,5,11,14,18,24 8:9,13,17 9:13,17 9:22 10:5,10,16 11:19,24 12:4,8,15 13:2,10,16 14:11 14:16 15:5,9 16:4 16:15 17:5,10,16 18:8,13,16 34:25 35:14,22 36:2,15 37:13,15 38:5,25 |

**beyond** 23:16
**big** 30:3
**bit** 18:9
**blah** 15:2,2,2
**blanket** 21:3
**board** 14:13
**boundaries** 2:22
**broadly** 9:3
**brokers** 5:16 10:2
**brought** 34:5
**bunch** 17:21
**burden** 20:21
  25:18

**c**

**c** 40:1,1
**canyon** 21:2
**care** 20:1 22:19
**careful** 9:3
**case** 2:24 4:12 6:1
  6:2,4 9:5 10:8
  11:13 12:13 14:6
  16:16 18:4,25
  19:5 20:19 22:22
  23:3 24:21 25:3
  27:15 30:15 31:13
  36:20 37:20,24
  38:20 39:3
**cases** 9:5 21:1
  29:19 35:6
**causes** 19:1
**certain** 2:21 29:3
**certainly** 16:5
  33:15 34:18,19
**certify** 40:3
**chance** 37:6
**change** 3:9 15:1
**chevron** 21:24
  29:4
**chief** 29:14
**chill** 38:6

**circuit** 1:2 9:6
  36:7
**circumstances**
  19:2,6
**cite** 29:13
**cited** 25:24 35:6
**claim** 10:23 19:17
**claimed** 24:6
**claiming** 10:21
**claims** 20:11 24:25
  28:13
**clause** 25:1
**clear** 2:16,24
  12:12,21,23 20:6
  28:18 34:16,19
  36:6,7,16 37:8
**clearer** 36:18
**clearly** 12:7 23:6
  32:14
**clerk** 39:5
**clicked** 36:5
**client** 2:6,11,20
  3:4 5:9,16 9:2,6
  13:20 14:7 16:25
  21:11 26:13 37:8
  37:18 38:9,12,18
**clients** 3:13 14:22
**clifton** 1:25 9:10
  9:16,18 10:3,6,13
  12:21 22:10 23:2
  23:25 24:9,22
  26:7,20 30:16
  37:11,14,16
**clock** 34:24
**close** 37:2
**club** 32:7
**colleague** 37:21
**colleagues** 37:17
**come** 28:8,9
**commit** 2:25 6:5
  34:19

**committed** 2:15
**communications**
  2:12
**company** 17:25
**comply** 33:16
  34:10
**concede** 36:9
**conceded** 34:13
**concern** 5:7
**concerns** 31:3
**concession** 12:17
  12:20 17:12,16
  19:10 28:19 31:23
  32:11,13,17 35:20
**concluded** 14:24
**concluding** 4:18
**conclusion** 19:25
  27:13
**conduct** 2:22
**confidences** 38:13
**confusion** 20:6
**consider** 9:25 32:3
  32:19 33:12
**considerations** 7:6
**considered** 32:24
**consistently** 19:2
**constitutes** 22:12
  24:17
**consult** 33:1
**consultation** 29:10
  31:1
**consulted** 2:8 3:15
  6:17,20 17:13
  21:9 30:21,23
  31:6 32:24
**containment** 5:7
  8:6 17:22
**contempt** 35:3
**content** 13:22,23
**contents** 2:12

**context** 27:6
**corp** 21:25 29:4
**correct** 11:19
**corroborate** 25:8
**cost** 5:7,7 8:6,6
  17:22 26:1,12
  27:2,4
**costs** 31:11
**counsel** 2:8,10,13
  6:9,11 9:20,21,23
  10:8,11,14,22
  11:12 12:3,22
  13:12 14:2,5
  15:11,12,24 16:10
  17:9 18:15 19:21
  20:18 21:15 22:2
  22:4,8,13,20,21,25
  23:16 24:11,18
  25:13 28:11,24
  29:2,20 30:14,17
  30:21,23 31:2,6,19
  31:24 36:11 37:3
**counsel's** 9:11
**country** 40:12
**couple** 35:5
**course** 10:23
  26:11 28:5
**court** 1:1,11 2:1
  2:15 4:2,5,8,9,14
  4:16 6:11 9:3
  10:18,19,24,25
  11:7,15,23 12:2,7
  12:11 13:23 16:21
  18:19,23 19:2,15
  20:14 21:24 22:8
  22:18 23:11,14
  24:13,15 25:11,20
  26:2 28:21 29:3
  30:1 32:2,13,18
  33:8,18 34:11,17
  35:2,5,8,17,20,24

36:8,10,14
**court's** 12:23 13:7 22:16 24:10 31:4 33:16 34:6
**cover** 18:1 23:7 27:17 31:14
**coverage** 3:13,14 3:17 6:18,20 14:20,23 15:1 22:15,18
**covered** 23:6
**craig** 2:2
**create** 4:22
**credibility** 4:14
**crime** 3:1 6:5
**cross** 32:25
**cut** 19:8

**d**

**date** 40:16
**day** 39:4
**de** 4:8
**decide** 4:8 22:17 23:14
**decided** 17:21 24:6 36:5 37:23
**deciding** 3:21 7:7 8:20
**decision** 6:10 15:18 22:4 23:22 25:13 26:3,5,6 30:15
**defend** 6:8 28:13
**defending** 15:10
**defense** 2:14 5:25 9:1,7,21,23 10:12 10:15,22 11:12 12:3,22 13:12 14:2,6 15:24 16:9 20:10,23 21:15 23:16,19,24 28:10 29:1,2,16 34:1,12
36:11,17 37:3
**definitely** 28:10
**deposition** 16:15 16:17,22,24 25:24
**describe** 14:19
**determination** 30:11
**determined** 16:13 32:23
**develop** 29:9
**developed** 25:15
**dialogue** 36:23
**difference** 5:12 6:15
**different** 4:24 5:8 21:3
**difficult** 2:23
**discern** 2:23
**disclaim** 9:20,22 10:14 26:12 28:23
**disclaimed** 20:20 27:4
**disclosed** 13:21,23
**disclosing** 2:12
**disclosure** 32:4
**discovery** 3:2 16:1 24:3 26:18 31:12 33:16 34:11
**discriminate** 3:1 5:14 27:23
**discriminated** 3:12 8:24
**discrimination** 3:15 6:23 8:12 22:12 24:18
**discriminatory** 5:21 6:5 8:19 23:7 25:6 27:22
**discussed** 19:22 34:16
**disobeyed** 35:2
**disparate** 25:3,4
**disputed** 23:10
**disregard** 37:23
**disregarded** 12:14
**distinction** 6:3
**district** 1:11,12 2:15 4:2,5,9,15 11:7,15,23 12:2,7 12:11 13:7,22 16:20 19:15 20:14 25:11 30:1 31:3 32:2,13,18 33:8 34:6,10,17 35:2,17 35:20,24 36:8,10 36:14,21
**doctrine** 21:24 22:1
**documents** 2:11 2:13 11:17 20:16 25:7 28:16 30:8 38:3
**dog** 30:24
**doing** 11:12 14:7
**dozen** 6:25
**dr** 18:21 20:21 22:6 24:24 25:3 25:18 26:16
**drafted** 29:24
**drastic** 18:24
**drawing** 5:10
**dusen** 19:3

**e**

**e** 1:22,22 40:1
**element** 20:11 28:13
**eliminate** 20:12,15 28:19
**employee** 16:23
**entail** 31:4
**entered** 34:11
**entirely** 31:20
**entities** 29:11
**entitled** 8:22
**equal** 25:1
**err** 34:18
**erred** 12:7 32:14
**error** 2:16 4:5 12:13,24,25 13:1,2 34:16,19
**establish** 20:22 22:6 23:23
**established** 21:24 25:23 29:4
**establishing** 25:18
**et** 1:6,8,14
**evidence** 25:5 29:3 29:15 33:21
**evidentiary** 20:22 22:7 25:19
**exact** 7:25
**exactly** 11:20 33:11 34:8,13 35:23
**examination** 33:1
**examine** 24:4 26:17
**example** 38:13
**exceptional** 19:1
**exchange** 37:6
**excluded** 33:22
**excludes** 14:20,23
**exclusion** 19:24 24:7 25:9 26:6,19 26:21 27:10,17 29:14,17 31:8,10 31:19
**expect** 37:24,24
**expecting** 31:23 33:9

explain  26:10
explained  31:7
explanation  27:1
  27:14
explicit  13:18
explore  31:21
explored  33:7
extent  11:10 20:5
  29:24
extraordinary
  18:25 19:1,6 32:8

**f**

f  1:22 40:1
facially  31:11
fact  4:20 15:12
  22:6 25:10 26:8
  30:20 31:20 32:9
  37:21
factor  24:21,23
  26:2 33:13
factors  33:13
  34:15
facts  3:9
factual  13:1 20:19
  21:13 25:14 30:11
  30:14
failed  33:15 34:10
fairly  25:21
fairness  20:13
  22:1 28:15
faith  2:20
farr  18:19
fennemore  2:2
file  33:24 34:3
filed  35:11 36:23
find  6:11 9:7,8
  13:23
finding  12:23
first  22:24 27:12
  30:19 32:25 33:13
  35:15 38:5

focus  17:1
focused  10:4 16:21
  19:17
follow  23:12
foregoing  40:4
forget  14:14
former  16:23
forming  29:12
forth  37:25
forward  19:20
  20:9 22:2 23:21
  28:9 38:6
found  6:1 13:8,24
  35:3
frankly  16:20
front  4:9,14,20 8:1
  10:24,24 14:10
  32:11 35:15,20,24
  36:9
fundamentally
  21:22
funded  14:23
further  7:2
future  38:13

**g**

gallagher  18:20
gathered  5:17
gender  14:21,23
generally  6:3
ginsburg  2:17 3:5
  3:6 6:2
give  6:19 21:8
given  7:13 23:8
go  11:13 12:10
goes  30:10
going  11:14 12:2
  17:12,14,14,17,20
  20:6,9,9 22:16
  23:9 24:1,10,12,15
  28:10,12,23 33:1
  34:1 36:7,9 37:16

38:6,20
good  2:20 18:18
  19:11,11,13
government  23:1
  25:7 31:6,9 38:9
governmental
  29:11
granted  18:25
granting  34:17
guess  11:15 28:7
  28:14
guilty  9:7

**h**

half  6:25
happened  3:8,22
  4:24 5:23 22:14
harm  38:8
health  14:23 15:1
hear  18:14 30:5
heard  18:22 19:10
  20:25
helpful  11:3
hernandez  21:1
  22:7
hey  15:3 33:24
  35:12
hit  12:18
hold  11:16
hon  1:23,24,25 3:9
  3:23 4:1,6,11,17
  4:23 6:13 7:4,9,12
  7:16,21 8:7,10,16
  9:10,16,18 10:3,6
  10:13 11:2,22
  12:1,6,9,25 13:6
  13:14 14:9,12,18
  15:6 16:2,12 17:3
  17:7,11 18:7,11,14
  19:7 20:3 21:5
  22:10 23:2,25
  24:9,22 26:7,20

27:19 29:18 30:16
  31:22 32:10 33:5
  33:23 34:4,20,22
  35:10,19,25 36:4
  37:11,14,16 38:23
  39:2
honor  7:1,1,20
  9:13,24 10:16
  11:19,24 12:16
  13:10,16 14:17
  16:4,16 17:2 18:9
  19:6,13 20:17,25
  21:21 22:23 23:18
  24:3,20,24 26:15
  27:5 28:20 30:9
  30:25 32:6 33:3
  33:10 34:2 35:22
  36:17 37:15 38:22
honors  3:18 18:18
  34:21 39:1
horribles  31:5
huge  6:15
hyde  40:3
hypothetical  4:25
  6:14

**i**

identify  14:19
identifying  2:10
  2:10
ignores  35:7
illegal  16:14 25:9
imagine  31:9
impact  25:4
implication  13:9
  13:11,13
implied  2:18 13:24
  15:25 18:5 21:23
importance  37:19
important  5:10,11
  9:2 37:9

**inappropriate**
  35:9
**includes**  29:9,10
**including**  17:24
  19:3
**incorrect**  19:18
**incredibly**  37:9
**incumbent**  26:16
**indiscernible**  8:6
  27:15
**indisputably**
  18:24
**indulgence**  37:17
**information**  21:13
  38:12
**informed**  25:8
**instance**  19:4
  20:23 25:7 31:5
**instances**  19:19
**insurance**  5:16
  10:2 17:24
**intend**  21:14
**intent**  2:25 3:1,19
  3:21 5:2,4,13,21
  6:4,6,8,12 8:23,24
  15:11,21 16:3,6,10
  17:8,19 18:2
  20:11 24:21,22
  25:6 27:22 28:3
  28:13
**interest**  1:15 18:21
**interested**  23:13
**interject**  20:7,9
  21:14
**interjected**  28:12
**interpretation**
  13:25 23:17
**interrogatories**
  2:8 12:24
**interrogatory**
  4:10,15,21 7:3,6

7:19,22,25 9:14,25
11:6 12:16 13:4
13:17 14:1,4,14,19
16:9,21 17:2
19:18,22 20:24
21:18 22:3,5
29:25 30:13 36:16
36:25 37:1
**invalid**  10:20
**invoked**  2:19
**involved**  30:17
**involvement**  20:18
  22:4,8 25:12,14
  30:14
**involving**  19:1
**issue**  2:5,9 4:14
  10:18 16:6 21:23
  21:25 22:22 29:6
  29:7,20 30:2
  33:20 35:4 36:13
**issues**  5:8 22:5
  33:6
**issuing**  12:10

**j**

**j**  1:23
**jordan**  18:19
**judge**  2:17 3:6 6:2
  12:21 33:25 35:12
  35:15 36:21,22
**judgment**  33:18
**jury**  11:13
**justice**  2:17 3:5

**k**

**key**  14:17
**kind**  5:25 11:11
  21:15 29:21,23
  30:6 37:6
**kinds**  33:6
**know**  3:11 11:13
  12:5,10,13,18

20:10 21:3 25:17
25:21 27:25 28:4
29:22 30:6 31:25
32:7,11,12,21,23
33:19,20 34:4
35:12,23 36:6
38:14
**knowledge**  23:21
  29:5
**known**  37:10

**l**

**law**  3:16 14:25
  22:17 23:13,17
  24:15 27:24 28:1
  29:5,7,13 30:18,20
  37:10
**lawful**  32:23
**lawyer**  3:3 5:13,22
  5:22 6:7 8:3 17:13
  21:10 23:4 24:14
  26:9 37:25
**lawyer's**  8:20 9:9
**lawyers**  3:16,20
  5:2,6,19 6:17,21
  7:15 10:1 15:17
  15:19,22 20:8,10
  23:5,12 27:25
  38:7
**layman**  2:23
**lectern**  19:11
**led**  29:25
**ledanski**  40:3
**legal**  2:22 4:21 5:4
  5:17,17,23 12:23
  12:25 13:2,5 15:3
  15:22 17:18 19:25
  20:1 22:12 24:7
  24:11 25:17 26:4
  27:13,18 29:12,20
  30:2,11 31:8
  38:21,21 40:11

**legality**  2:21
**legally**  5:3 8:5,21
  14:1,25 31:16
**legitimate**  27:9,16
  29:16 31:10
**lesson**  2:24
**letters**  38:1
**liability**  10:19
**liable**  9:8
**lie**  21:10 34:9,14
**light**  15:14
**line**  5:10
**litigate**  35:4
**litigation**  21:14
  33:7 38:14,16
**little**  14:10 18:8
**lived**  37:18
**longer**  16:24
**look**  7:22 17:5,6
  19:21 25:22 33:25
**looked**  4:10 5:14
  8:5 17:20,23
**looking**  24:3 30:19
**lose**  10:7
**lots**  38:17

**m**

**magic**  28:25
**magistrate**  35:15
  36:21
**main**  24:7
**maintain**  19:24
  26:6,21 27:10,17
**maintained**  23:1
  26:19
**maintaining**  29:14
  29:17 31:7,10,18
**making**  6:9 8:14
  8:14,15 11:21
  15:18 22:4 23:22
  25:13 26:3,5
  30:15

**malintent** 5:20
8:22
**mandamus** 11:1
12:10,11 18:24
19:4 32:7,14
33:11 36:13
**march** 1:18
**materials** 4:9
**matter** 13:5 20:13
22:21 28:15 37:20
38:4
**mattered** 20:25
**matters** 22:24
**mean** 13:14 17:12
22:11 23:3 26:8
26:22 27:19 28:3
29:22 30:17 33:8
36:18 37:20 38:16
**meaningful** 30:22
30:23
**means** 17:17 33:14
**meeting** 14:1
**mention** 21:10
**mentioned** 23:4
**mere** 21:16 31:1
**microphone** 12:18
**middle** 3:9
**mineola** 40:14
**minimum** 27:24
31:12
**minute** 36:4
**minutes** 34:23
**mis** 6:6,8
**miscited** 21:2
**misconstruction**
36:12
**misinterpreted**
11:8
**mistake** 29:24
35:13

**misunderstand**
21:22
**misunderstanding**
30:3
**misunderstood**
36:9
**morning** 18:18
**motion** 33:24 34:3
35:11

**n**

**n** 40:1
**nature** 21:23
30:17
**need** 16:11 20:12
20:15 28:15 29:15
31:20
**needs** 22:6
**negate** 28:3
**neither** 36:21
**neutral** 28:4 31:11
**never** 23:4 28:12
29:22
**new** 33:21
**newspaper** 29:10
**ninth** 1:2 36:7
**non** 27:9
**nondiscriminatory**
27:9 28:4
**nope** 30:5
**noted** 18:23 22:8
32:8
**noting** 22:3
**novo** 4:8
**number** 14:14
19:18,22 20:24,24
21:19 22:3,5
30:13 37:1
**numerous** 23:20
**ny** 40:14

**o**

**o** 1:22 40:1
**obtain** 26:14
**obviously** 10:18
**offer** 6:18,19,24
7:8
**offered** 23:16,19
24:11 26:12 31:24
**offering** 3:17
**oh** 6:6 17:10 34:4
**okay** 3:23,25 4:6
4:23 7:4,10,18,21
8:9,16 9:17 10:5
11:2 14:11,16,18
15:7,9 17:5 18:7
18:13,14 20:3
21:9 25:17 26:7
28:2 34:20 38:2
38:23
**old** 40:12
**oldest** 37:9
**once** 29:4,19 30:5
**ones** 14:15
**opinion** 2:21
**opinions** 5:17
**opponent** 20:5
**opponents** 11:4
**opportunity** 18:22
**option** 26:23 30:5
**oral** 1:17 35:24
36:2,22 37:5
**order** 16:1 31:4
32:14 33:16 34:10
35:2,8
**ordering** 32:4
**ought** 33:7
**outside** 17:25

**p**

**paez** 1:24 11:22
12:1,6,9,25 13:6

13:14 16:2,12
17:3,7,11 18:7
31:22 32:10 33:5
33:23 34:4 35:10
35:19,25 36:4
**papers** 25:24
36:24
**parade** 31:4
**pardon** 3:7
**part** 3:2 6:6 25:6
25:10
**particular** 37:19
**particularly** 33:13
**parties** 1:15
**party** 18:20 29:5
**passionately** 23:9
**paul** 1:23 2:4 3:23
4:1,6,11,17,23
6:13 7:4,9,12,16
7:21 8:7,10,16
11:2 14:9,12,18
15:6 18:11,14
19:7 20:3 21:5
27:19 29:18 34:20
34:22 38:23 39:2
**pennzoil** 21:25
29:4
**people** 16:17 21:9
32:25
**periodicals** 5:17
17:25
**permissible** 26:11
**permit** 16:1
**permitted** 35:3
**person** 21:13
**persons** 23:21
**perspective** 10:9
**persuade** 23:11
**persuaded** 24:10
**petition** 18:23
33:11 34:9,14,17

petitioner 2:3
petitioner's 21:1
  25:16 26:2,6 31:2
petitioners 1:9 2:6
  19:17,20 20:20
  21:22 23:20 24:5
  25:8 27:7,8 28:22
  31:18 33:15 34:13
placed 29:5
places 29:6
plainly 19:18
plaintiff 3:11 8:22
plaintiffs 11:8
  16:3
plan 10:20 14:20
  14:23 15:1
play 10:8
plays 10:10
pleading 25:3
please 2:1 18:19
point 20:19 21:1
  21:20 23:10 25:14
  30:12,14 35:1
pointed 26:3 27:12
policies 31:15
policy 2:9 27:23
  31:11,14
polite 22:18
posed 4:25
position 9:19
  12:15 14:3 36:24
positive 3:8 18:5
possibly 21:11
post 33:17
practical 38:2
prayer 23:6
precisely 11:20
predicate 21:11
prepared 10:14
  32:16

present 25:11
presented 2:5
  19:15
presumably 22:15
pretextual 27:9
pretty 12:14
prevail 16:2
prevent 38:19
principle 22:1
privilege 2:7 3:4
  5:10 9:2 10:19,25
  13:20 14:7 16:18
  16:19,25 21:12
  37:8,9,10,18 38:9
  38:18,19
privileged 2:11
  15:4 20:16
problem 28:7,19
proceed 35:4
proceedings 40:5
produced 38:3
product 38:18
prohibited 3:16
  6:18
proposition 16:7
protection 25:1
prove 5:20 8:22,24
  15:20 16:3 23:15
provide 3:14 15:1
  20:1
provided 11:6
  22:15 24:5,16
providing 3:12
  26:13
provision 22:17
provisions 14:2
pull 7:22
put 4:13 6:14
  19:20 21:18 23:21
  29:19 30:2 33:20
  34:23

puts 25:13
putting 22:1

## q

qualifications
  37:25
quarrel 16:7
question 4:20,21
  9:16 10:25 11:1
  12:5 13:3 17:4
  19:23 21:16 22:11
  22:12 30:10,11,12
  30:20 36:19
questions 21:7
  32:20
quote 7:23 14:13

## r

r 1:22 40:1
radar 31:25
raise 10:11 11:11
  13:15 34:1 36:10
  37:3
raised 13:11,17
raising 2:13 10:14
  12:22 36:17
rationale 31:8
reached 19:25
read 9:4,4,5 14:4
  18:4
ready 30:3
real 1:15 18:20
reality 35:7
really 5:11 22:19
  22:21 26:8 37:20
reason 3:14 5:20
  6:8,13,22 11:16
  22:25 26:12,19,21
  26:25 27:16 28:5
  28:21 29:14 31:7
  31:17,17

reasoning 24:8,11
reasons 5:5 6:19
  7:10,13 8:8,11,18
  14:20 15:17 16:20
  17:22,23 19:16
  21:3 22:24 24:5
  27:10,11 29:16
  38:17
reassignment
  14:21,24
rebuttal 18:9,12
  34:24
received 20:2
  25:16 26:4
recognized 19:3
reconsideration
  33:24 34:3 35:12
record 5:15 19:19
  20:22 22:7 23:23
  25:11,15,19,23
  26:17 29:9 40:5
reflect 9:15
reflects 5:15 10:1
refute 23:23 24:1
  29:15
refuting 20:22
rejected 35:5
relate 33:6
relevant 21:6
  24:19 25:10 29:8
  31:20
reliance 9:11,21
  9:23
relied 3:20 4:16
  6:9,10 8:20 9:8,19
  29:3,12
relief 33:15,18
reluctant 32:10,12
rely 12:2 20:20
  28:23

relying  14:5
remand  33:21
remedy  18:25 35:8
remember  36:20
replete  19:19
reply  35:6
representation
  25:16
representing  2:2
repudiated  26:1
  31:13
require  28:1 30:20
required  8:5 14:25
  15:15 20:1 27:13
  31:16
requires  22:17
  24:16 27:25 29:7
  30:18
respect  2:9
respond  15:7 19:9
respondent  1:13
  18:15
responding  19:23
response  9:14
  12:20 19:12 20:23
  21:18 27:3,7,20
  28:8 29:25
responses  11:7
  16:21
rest  19:8
rethink  32:3
reveal  3:2
reviewed  33:19
revises  38:8
richard  1:24,25
  9:10,16,18 10:3,6
  10:13 11:22 12:1
  12:6,9,25 13:6,14
  16:2,12 17:3,7,11
  18:7 22:10 23:2
  23:25 24:9,22

26:7,20 30:16
31:22 32:10 33:5
33:23 34:4 35:10
35:19,25 36:4
37:11,14,16
right  4:3,11,17
  7:11 8:4,7 20:3,7
  21:19 33:3 34:18
  35:25
rise  39:5
road  30:6 40:12
role  10:7,11
ruled  20:14
ruling  13:8
run  28:17
russell  1:14 18:21

**s**

sanction  34:11
save  18:8
saying  5:13,20 6:3
  6:7,16 9:10,13
  10:17,17,21 11:5,7
  11:9,18 14:5
  15:10,16 29:23
  30:4,12 34:5,12
  35:12
says  2:25 3:11
  7:20 16:9 20:5
  26:9,11,23 31:6
school  38:20
screen  31:25
secondly  38:11
see  6:15 11:4
seeking  2:21
seeks  26:14
self  14:22
service  26:13
services  24:16
set  32:14
settles  28:2

sex  24:17
shannon  2:4
side  38:16,19
side's  38:21
signature  40:8
significant  5:12
  26:1 32:1
simply  2:24 14:7
  25:15
sit  28:22
sitting  10:17
six  6:25
slightly  3:10
solutions  40:11
sonya  40:3
sorry  10:5 12:18
sorts  5:18
sought  22:16
specific  3:6,7 4:15
  18:5 31:7 36:19
specifically  34:15
  36:20
speculating  38:15
stand  17:8 31:4
  36:25
stands  20:5
start  34:25
state  1:6,8 2:3
  9:25 14:22,24
  23:13 24:12,14
  35:1 38:7
state's  9:19 23:11
stated  2:18 22:25
states  1:1,11 2:18
  15:14
stating  2:7
step  7:2 8:14 30:4
stop  3:24
strategy  38:14
street  29:21

strike  30:21
struggling  28:14
stuck  30:7
stuff  17:24,24
submitted  39:3
subtle  5:11
sues  3:11
sufficient  4:22
  13:4 15:25 37:2
suggested  37:22
suggesting  15:13
suggests  13:20,21
suite  40:13
sum  2:19
support  34:16
supporting  25:5
suppose  28:3 38:2
supposed  12:19
sure  6:15 14:13
  18:11 32:15,15
  37:15
surgery  14:21,24

**t**

t  40:1,1
t's  23:19
take  7:7 23:8
  28:17 29:22
taken  7:2 16:16
takes  3:4 15:15
talk  5:19
talked  3:3 5:6,13
  5:22 7:14,15 8:3
  10:1,1 15:16,19,21
tell  12:1 19:12
  21:5,8
terms  38:2
testify  32:22
testimony  16:15
  16:17,22 25:25
thank  18:10,21
  34:21,22 38:23,25

**theories** 16:5 38:21

**thing** 27:12 32:5 32:25

**things** 5:14,18 17:21

**think** 2:23 3:18 4:4,5 5:9,12 6:1,4 7:2,19,24 8:3 9:3 9:22,25 10:10,20 11:2 13:2,3,18 16:4,6,8,8,10,20 17:1,3,16,25 18:1 18:3 19:1,5 20:25 21:6,17 22:23 23:4,9,10 25:9,12 25:22 27:6,19 28:21 30:1,9 31:2 32:19 35:7,18 36:15 37:2 38:5,6 38:8

**thought** 4:2 5:3 11:10 13:6,7 22:14 38:21

**time** 10:7 16:24 18:9,12 31:25

**timothy** 2:2

**title** 15:2 25:2,2

**tobin** 2:3

**today** 10:24,25 19:11 32:17 36:19 36:23

**told** 3:16 5:2,22 6:17,21,23 7:16 8:4,5 11:23 15:22 23:5 28:1

**toomey** 1:14 18:21 20:21 22:6 25:3 25:18 26:16

**toomey's** 24:25

**touch** 12:19

**tough** 12:14

**transcript** 40:4

**treat** 31:14

**treatment** 25:4

**trial** 25:21 33:21

**true** 5:15 28:20 40:4

**truthful** 21:8,12 21:13

**truthfully** 21:16

**trying** 11:9,11 20:7 27:23 30:1

**tucson** 1:12

**turn** 38:15

**turns** 37:21

**two** 8:7,10 22:24 34:23

**typical** 4:12

**u**

**undergirds** 21:25

**underlying** 10:22 22:22

**undermined** 38:10

**understand** 11:5 21:20 26:8 27:20 28:14 37:19

**understanding** 29:7,13,19

**understood** 27:3 28:22

**uniformly** 26:3

**united** 1:1,11 2:18 15:14

**uses** 38:7

**usual** 37:25

**v**

**v** 1:10 21:25 29:4

**van** 19:3

**veritext** 40:11

**versus** 2:18 15:14 21:2

**vii** 25:2,2

**violate** 35:8

**violating** 24:17

**violation** 25:1

**w**

**wait** 36:4

**waive** 4:19 9:6 16:18,19,25

**waived** 2:6

**waiver** 2:15,19 3:3 3:8,22 4:22 6:2 13:8,11,13,18,19 13:24 15:15,25 18:4,5 21:4,11,17 21:23 37:4

**waivers** 9:4

**waiving** 13:19 14:6

**walk** 6:7

**wall** 18:18,19 19:13 20:17 21:20 22:23 23:18 24:2 24:20,24 26:15 27:5 28:20 30:9 30:25 32:6 33:3 33:10 34:2,8,21

**want** 10:7 19:8 24:3 38:15

**wanted** 28:8

**warn** 33:12

**warranted** 19:5

**watford** 1:23 3:23 4:1,6,11,17,23 6:13 7:4,9,12,16 7:21 8:7,10,16 11:2 14:9,12,18 15:6 18:11,14 19:7 20:3 21:5

27:19 29:18 34:20 34:22 38:23 39:2

**way** 6:6,14 8:25 15:3 18:17 29:21 29:24 36:5

**ways** 34:5

**we've** 3:11 8:24 19:21 32:8 34:16 35:6 36:23 37:7 37:17

**went** 5:16 15:21 15:23 20:4 27:25 35:16

**white** 2:18,24 6:1 9:5 15:14 18:4

**wilkie** 18:19

**witness** 4:13 17:8 17:12,17 23:19 32:22

**witnesses** 16:13 23:20 25:22,25

**words** 7:25 28:25

**work** 38:18

**works** 16:25

**worry** 16:23

**writ** 18:24 36:13

**write** 38:1

**writs** 12:10

**wrong** 33:25

**x**

**x** 1:3,5,16

**y**

**yeah** 15:5 19:7,7

**years** 22:20 24:12