FENNEMORE CRAIG, P.C.
Timothy J. Berg (No. 004170)
Amy Abdo (No. 016346)
Ryan Curtis (No. 025133)
Shannon Cohan (No. 034429)
2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: tberg@fennemorelaw.com
Email: amy@fennemorelaw.com
Email: rcurtis@fennemorelaw.com
Email: scohan@fennemorelaw.com

*Attorneys for Defendants
State of Arizona, Andy Tobin, and Paul Shannon*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Russell B. Toomey, | No. 4:19-cv-00035 |
|---|---|
| Plaintiff, | **DEFENDANTS STATE OF ARIZONA'S, ANDY TOBIN'S, AND PAUL SHANNON'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION AND MOTION TO STAY ORDER** |
| v. | |
| State of Arizona, *et al.* | |
| Defendants. | |
| | **(ORAL ARGUMENT REQUESTED)** |

Plaintiff's Memorandum of Law In Opposition to State Defendants' Motion For Reconsideration And Motion to Stay (Doc. 264) (the "Opposition") mischaracterizes the State of Arizona's, Andy Tobin's, and Paul Shannon's (the "State Defendants") statements during oral argument before the Ninth Circuit Court of Appeals and the scope of the State Defendants' concession disclaiming any advice-of-counsel defense. At oral argument, State Defendants reemphasized their position that they have not asserted any advice-of-counsel defense. They further agreed to affirmatively disclaim any ***advice-of-counsel*** defense in the future. State Defendants did not disclaim, however, and have never disclaimed their position that the State maintained the exclusion for gender reassignment surgery (the "Exclusion"), in part, because it was not legally required to provide coverage

for such procedures. The State Defendants' disclaimer (without more) nullifies Plaintiff's argument that, as a matter of fairness, he needs access to legal advice State Defendants received regarding the legality of the Exclusion in order to address an advice-of-counsel defense in this litigation. This is further supported by Plaintiff's arguments in the Motion to Compel Production of Documents (Doc. 195) (the "Motion to Compel"), in which Plaintiff *did* argue that production of the privileged documents were necessary because the State Defendants had asserted reliance on advice of counsel as a defense. (*See, e.g.*, Doc. 195 at 3:17–19[1] ("State Defendants have waived the attorney-client privilege by asserting and relying on legal advice *as a defense* to the charge that discriminatory intent did not motivate their decision to maintain the Exclusion[.]") (emphasis added).) For these reasons, as more fully outlined below, the Court should grant the State Defendants' Motion for Reconsideration and enter an order denying Plaintiff's Second Motion to Compel.

## I. **THE COURT SHOULD DENY PLAINTIFF'S MOTION TO COMPEL.**

### A. **The State Defendants Disclaimed an Advice-of-Counsel *Defense*—and Only the Advice-of-Counsel Defense—During Oral Argument Before The Ninth Circuit.**

Throughout oral argument before the Ninth Circuit, the State Defendants clearly stated that they were disclaiming any "advice-of-counsel defense," not their position that the State was not legally required to provide coverage for gender reassignment surgery. The pertinent discussions are as follows:

> HON. RICHARD CLIFTON: What is the State's position as to whether or not it relied upon advice of counsel? Would it disclaim reliance upon ***advice of counsel as a defense***?
>
> MR. BERG: I think it would disclaim reliance on ***advice of counsel as a defense***, Your Honor, yes.

(Doc. 264-2 at 32:18–24 (emphasis added).)

---

[1] Unless otherwise noted, pin citations refer to the ECF page number listed at the top of the page for filed documents.

>HON. RICHARD CLIFTON: And are you prepared to disclaim raising ***advice of counsel as a defense***?
>
>MR. BERG: Yes, Your Honor, we are. . . . But I think what we are saying is, no one is claiming we -- that ***advice of counsel is a defense*** to the underlying claim here[.]

(*Id.* at 33:13–23 (emphasis added).)

>HON. PAUL WATFORD: . . . But as I understand, what you're saying is that you've provided these interrogatory responses. You're saying that the District Court and the Plaintiffs *(sic)* misinterpreted what you were trying to say there. And you're saying now, ***to the extent that any of you all thought that we were trying to raise some kind of an advice of counsel defense, we are not doing so***. We are, you know, assuming this case were to go to a jury[2] or whatever, we are not going to be arguing that. And I guess, if we or the District Court were to hold you to that, then there'd be no reason for them to get access to these documents? Is that what you're saying?
>
>MR. BERG: Correct, Your Honor. Exactly. That's precisely the argument we're making.

(*Id.* at 34:2–21 (emphasis added).)

The Ninth Circuit did not suggest once during oral argument that the State Defendants would need to revise their Interrogatory responses or abandon their position that they maintained the Exclusion because they believed the State is not legally required to provide coverage for gender reassignment surgeries. Indeed, the State Defendants actually detailed to the Ninth Circuit that they would continue to assert that they were not legally required to provide such coverage and that the State's determination was based on a number of factors:

>HON. RICHARD PAEZ: Is it your -- does your concession mean that no witness is going to get up there and say, we consulted with a lawyer? That's not going to be -- you're not going to do that.
>
>MR. BERG: I think what my concession means is no witness is going to get up there and said *(sic)*, because we had legal advice that we could do this, we didn't have the intent. ***What they're going to get up and say is, we looked at a whole bunch***

---

[2] No party requested or demanded a jury trial for this case. (*See* Doc. 128 at 13:24-25.)

***of things, and here was what we decided to***, and one of the reasons was cost containment. ***And one of the reasons is, when we look at all this stuff, including stuff from our insurance company and outside periodicals, we didn't think we had to cover them***, and we didn't think we had bad intent.

(*Id.* at 40:11–41:2 (emphasis added).)

Contrary to Plaintiff's suggestion, the State Defendants' Motion for Reconsideration is entirely consistent with their representations before the Ninth Circuit and the Ninth Circuit's discussion of the concession disclaiming an advice-of-counsel defense.

Further, Plaintiff has the burden of showing State Defendants had discriminatory intent, and State Defendants have asserted that they had no discriminatory intent, in part, because they concluded the law did not require that transgender surgeries had to be covered. That is not the same as an advice-of-counsel defense that would waive the attorney-client privilege. Indeed, there is a significant difference between an advice-of-counsel defense (not asserted here, and affirmatively disclaimed in any event), and defenses based on intent. The two are different and must not be conflated. *U.S. v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989). The lower court in *White* erred by equating the defendant's denial of intent with a reliance on advice of counsel defense. *Id*. at 270. As Judge Ginsburg explained, "A rule thus forfeiting the [attorney-client] privilege upon denial of *mens rea* would deter individuals from consulting with their lawyers to ascertain the legality of contemplated actions; it would therefore undermine the animating purpose of the privilege." *Id*. Further, "Reliance on advice of counsel is an affirmative defense, an assertion more specific than general denial of criminal intent." *Id*. Indeed, the defendant in *White* "carefully refrained from relying on any statements of counsel and expressly disavowed any intent to rely on an advice-of-counsel defense." *Id*. State Defendants likewise have not asserted and affirmatively disavow any advice-of-counsel defense.

. . .

. . .

### B. Plaintiff's Motion to Compel Argued That the State Defendants Were Purportedly Asserting an Advice-of-Counsel Defense.

To fully address Plaintiff's arguments in the Opposition, it is necessary to consider the stated basis for Plaintiff's Motion to Compel. Plaintiff argued that the State Defendants waived the attorney-client privilege by "asserting and relying on legal advice *as a defense* to the charge that discriminatory intent [motivated] [State Defendants'] decision to maintain the Exclusion."[3] (Doc. 195 at 3:17–19 (emphasis added); *see also id.* at 9:1–11:6.)

Ruling upon the Motion to Compel, Magistrate Judge Bowman found that the State Defendants had implicitly asserted an advice-of-counsel defense. (*See* Doc. 213 at 4:10–16 ("By allegedly relying on [] legal advice to explain their actions, the State Defendants have waived by implication their attorney-client privilege as to that advice.").) Magistrate Judge Bowman was "not convinced" by the State Defendants' argument that they have never asserted such a defense. (*See id.* at 4:10–16, 5:16–22.) In sum, Magistrate Judge Bowman found that the privilege had been waived because she found that the State Defendants had asserted an advice-of-counsel defense, as argued by Plaintiff.

This Court affirmed Magistrate Judge Bowman's Order and stated that "the State Defendants' Interrogatory Responses indicate that they relied on the advice of legal counsel in deciding to maintain the exclusion of coverage for gender reassignment surgery." (Doc. 241 at 7:8–12.) The Court went on to state that "Plaintiff is unable to adequately respond to *this defense* without viewing the withheld documents." (*Id.* at 7:13–17 (emphasis added).) Therefore, this Court also found that the privilege had been waived due to an implied advice-of-counsel defense, consistent with Plaintiff's arguments.

---

[3] Plaintiff's Motion to Compel also asserted that the State Defendants waived the privilege by disclosing the content of privileged communications during depositions and to the Governor's Office. Neither this Court nor the Ninth Circuit relied on this rationale in deciding the Motion to Compel, State Defendants' Objection to the Order, or the Petition for Writ of Mandamus. State Defendants continue to dispute that they waived the privilege through disclosure, but will not address that argument in detail here.

Now, for the first time, Plaintiff claims that he never argued that the privilege was waived due to an advice-of-counsel defense. (*See* Doc. 264 at 9:11–20.) This is plainly inaccurate, as demonstrated above. Moreover, both Magistrate Judge Bowman's Order and this Court's Order are premised on a finding that the State Defendants implicitly asserted an advice-of-counsel defense in their Interrogatory responses. (*See generally* Docs. 213, 241.) The State Defendants' disclaimer nullifies this purportedly implied defense and, as a result, nullifies the need for Plaintiff, based on any fairness concern, to obtain the State Defendants' privileged documents to rebut the defense.

### C. The State Defendants' Disclaimer Also Resolves Any Concern Under the "At-Issue" Doctrine.

Plaintiff attempts to sidestep its prior argument about an advice-of-counsel defense resulting in waiver, by now asserting that the Court instead relied on the "at issue" doctrine. (*See* Doc. 264 at 9:11–20.) This argument is equally unpersuasive because Plaintiff cannot satisfy any element of the "at issue" doctrine in light of the State Defendants' disclaimer of the advice-of-counsel defense.

The "at issue" doctrine applies when "a party, in the course of litigation, (1) makes an affirmative act injecting privileged materials into a proceeding, (2) thereby putting the materials at issue, (3) where application of the privilege would deny the opposing party access to information needed to effectively litigate its rights in the adversarial system." *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (emphasis added); *see also Melendres v. Arpaio*, CV-07-2513-PHX-GMS, 2015 WL 12911719, at *2 (D. Ariz. May 14, 2015). "[D]isclosing that legal counsel was consulted, the subject about which advice [was] received, or that action was taken based on that advice, does not necessarily waive the privilege protection." *Melendres*, 2015 WL 12911719, at *3.

The State Defendants maintain that they have never "injected" their privileged communications into this litigation. (*See* Docs. 201, 223.) However, in light of the

disclaimer made by State Defendants at oral argument before the Ninth Circuit—clarifying both that they have not asserted the advice-of-counsel defense in the past and *will not* assert it at any point in the future—any argument that the State Defendants put their legal advice at issue in Interrogatory No. 1[4] must be withdrawn.  Indeed, the Ninth Circuit framed the State Defendants' disclaimer as a statement that they "were not trying to interject the advice [they] got from [their] lawyers, and [they] are not going to interject, going forward, the advice of [their] lawyers as a defense." (*See* Doc. 264-2 at 43:4–16 (Hon. Paul Watford).) Therefore, the State Defendants have now clarified that they did not inject their privileged communications into this litigation or put those privileged communications at issue.

In addition to the fact that Plaintiff cannot show the first two elements of the "at issue" doctrine, Plaintiff also cannot satisfy the important fairness requirement.  To meet this element, Plaintiff must show that "application of the privilege would deny [him] access to information needed to effectively litigate [his] rights." *Amlani*, 169 F.3d at 1195; *see also Melendres*, 2015 WL 12911719 at *2.  Because the State Defendants are not asserting the advice-of-counsel defense, Plaintiff does not need the privileged communications to effectively prosecute his claims.  This concern was raised multiple times by the Ninth Circuit during oral argument. (*See* Doc. 264-2 at 43:11-16 (Hon. Paul Watford stating "Why doesn't [the concession] eliminate the need for you now -- as a matter of fairness, because that's the basis on which the District Court ruled -- why doesn't that eliminate the need for you to get access to these privileged documents?"); *id.* at 51:14–19 ("I'm still struggling to understand why you need, and as a matter of fairness, access to these documents.  I just -- maybe if there's another -- you can take another run at answering that, because I'm still not clear on how this concession doesn't eliminate this problem.").)

---

[4] The Ninth Circuit affirmatively rejected the argument that the State Defendants' responses to Interrogatory Nos. 4 and 7 could constitute a waiver. (Doc. 264-2 at 43:17–44:19.) Judge Watford explained to Plaintiff that "mere[ly] answering your question truthfully can't be a waiver." (*Id*. at 44:15-17.)

Plaintiff was unable to provide any satisfactory response at oral argument and presents no different argument in his Opposition. Instead, Plaintiff's Opposition simply relies on this Court's prior statement that Plaintiff cannot "adequately respond to this [advice-of-counsel] defense" without the privileged documents; as discussed above, this concern no longer applies in light of the State Defendants' concession. Quite simply, Plaintiff does not need access to the State Defendants' privileged documents to refute a defense that will never be raised. Fairness weighs strongly in favor of preserving the State Defendants' important attorney-client privilege, because Plaintiff does not need the privileged documents to refute a defense never asserted that, in any event, State Defendants have disclaimed.

### D. Plaintiff's Requested Exclusionary Ruling Is Not Appropriate.

Plaintiff's Opposition requests that the Court "issue an order *broadly* precluding the State Defendants from presenting any evidence *or arguments* bearing State Defendants' purported understanding of the legality of the Exclusion." (Doc. 264 at 13:10–14 (emphasis added).) This request is not supported by the law or the facts of this case.

First—and most important—whether the State is required to provide coverage for gender reassignment surgeries is a question of law that the Court must decide. (*See* Doc. 264-2 at 45:16–18 ("the Court's going to decide whether the law requires the provision of that coverage"); *id.* at 46:13–14 ("You're interested in what the state of the law is, which the Court will decide."); *see also id.* at 47:12–18 ("You're not going to argue to the Court that it has to accept whatever the Arizona lawyer said to the State. You're going to argue to the Court the law requires these services to be provided; otherwise, you're violating -- it constitutes sex discrimination.").) Whether the State Defendants were required to provide coverage for gender reassignment surgeries goes to the very heart of this litigation, and entering an order precluding the State Defendants from "arguing" that the Exclusion is legal

. . .

. . .

would effectively grant summary judgment in Plaintiff's favor.[5]  That would be improper.

Second, Plaintiff's cited cases do not support its request for an exclusionary order. Plaintiff relies heavily on *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003).  (*See* Doc. 264 at 10:19–11:11, 13:3–15:6.)  *Bittaker* is a federal habeas petition, in which the criminal defendant alleged ineffective assistance of counsel.  331 F.3d at 716.  The question in *Bittaker* was not whether the privilege had been waived, but what the scope of the waiver was.  *Id.* at 716–17.  In contrast, this is a civil litigation where the State Defendants have not asserted an advice-of-counsel defense implicating its attorney-client communications. *Bittaker* provides no support for Plaintiff's requested order.

Furthermore, even if *Bittaker* were applicable (it is not), the *Bittaker* court expressly disapproved of orders such as the one that Plaintiff requests.  When discussing the application of an implied waiver, the *Bittaker* court stated that "[t]he court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them." *Id.* at 720 (emphasis in original).  State Defendants do not implicate the legal advice received or indicate what the advice was.  The *Bittaker* court further explained that this posture was "important" for three reasons.  *Id.*  First, "the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it" and, as a result, "the scope of the waiver" must be "tailored" to the "needs of the opposing party in litigating the claim." *Id.*  Second, the party may preserve the privilege by "choosing to abandon the claim that gives rise to the waiver condition." *Id.* at 721.  Third, the disclosing party "is entitled to rely on the contours of the waiver the court imposes, so that it will not be unfairly surprised in the future by learning that it actually waived more

---

[5] In their Opposition to the Motion to Compel, State Defendants offered the legal rationale and factual background for why they *expanded* coverage for transgender services effective January 1, 2017, but kept the surgery exclusion at issue. (*See* Doc. 201 at 6:14–9:10.)

than it bargained for in pressing its claims." *Id.* Plaintiff's proposed exclusionary order trivializes all of these important concerns and requests that the Court enter exactly the type of order disapproved of in *Bittaker*. The Court should not grant Plaintiff's request for an order precluding the State Defendants from arguing the legality of the Exclusion.

### E. The State Defendants' Motion is Timely.

Plaintiff argues that the State Defendants could have brought this issue before the Court on prior occasions, but fails to identify when or how such an argument should have been made. Neither the Magistrate Judge nor the Court entertained oral argument on the Motion to Compel or the State Defendants' Objection to the Order. It was only during the March 10, 2022, oral argument at the Ninth Circuit that this issue was discussed.

Once raised, the Ninth Circuit deemed the State Defendants' disclaimer to be "significant" enough to warrant reconsideration by this Court:

> HON. RICHARD PAEZ: Let me ask you this. I was not expecting the concession that Counsel offered during his argument. That wasn't in my, you know, on my radar screen at the time. ***It seems to me, though, that it's significant enough that the District Court should be able to consider that and maybe rethink whether or not she -- ordering disclosure is the appropriate thing***.

(Doc. 264-2 at 31:22–32:5 (emphasis added).) In its Memorandum Opinion, the Ninth Circuit again suggested that the State Defendants seek reconsideration and stated that it was "confident" that the Court "will give that request full consideration." (Doc. 260 at 5–6.) The State Defendants' concession made at oral argument disclaiming any advice-of-counsel defense going forward is a new fact and issue that in the Ninth Circuit's view is significant enough to warrant reconsideration by this Court. Therefore, the State Defendants request that the Court consider the substance of the Motion, now fully briefed by the parties.

### II. CONCLUSION

Therefore, State Defendants request that the Court reconsider its Order and deny Plaintiff's Motion to Compel.

DATED this 16th day of May, 2022.

                                        FENNEMORE CRAIG, P.C.

                                        By: *s/ Ryan Curtis*
                                               Timothy J. Berg
                                               Amy Abdo
                                               Ryan Curtis
                                               Shannon Cohan
                                               Attorneys for Defendants State of Arizona, Andy Tobin, and Paul Shannon

21564766

FENNEMORE CRAIG, P.C.

PHOENIX