UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Russell B. Toomey,            )
                              )
          Plaintiff,          )   CV 19-035-RM(LAB)
                              )
     vs.                      )
                              )   Tucson, Arizona
State of Arizona, et al.,     )   July 22, 2022
                              )   10:02 a.m.
          Defendant.          )
_____

TRANSCRIPT OF PROCEEDINGS
MOTION FOR RECONSIDERATION AND MOTION TO STAY ORDER

BEFORE THE HONORABLE ROSEMARY MARQUEZ
UNITED STATES DISTRICT JUDGE
405 W. CONGRESS STREET
TUCSON, ARIZONA 85701

Cindy J. Shearman, RDR, CRR, CRC
405 W. Congress Street, Suite 1500
Tucson, AZ 85701
520-205-4286

Proceedings Reported by Realtime Court Reporter
Transcript prepared by computer-aided transcription

1                          A P P E A R A N C E S

2

    For the Plaintiff:
3
    Victoria Sheets
4   Willkie Farr & Gallagher, LLP
    787 Seventh Avenue
5   New York, NY 10019-6099

6   Christine K. Wee
    ACLU Foundation of Arizona
7   3707 N. 7th Street, Suite 235
    Phoenix, AZ 85014

8

9   For Defendants State of Arizona, Shannon, Tobin:

10  Timothy Berg
    Fennemore Craig, PC
11  2394 E. Camelback Road, Suite 600
    Phoenix, AZ 85016

12
    Ryan Curtis
13  Fennemore Craig, PC
    1 S. Church Avenue, Suite 1010
14  Tucson, AZ 85701-1627

15
    For Defendants Arizona Board of Regents, Shoopman, Penley,
16  Ridenour, Manson, and Duval:

17  Austin Yost (Appearing telephonically)
    Perkins Coie, LLP
18  2901 N. Central Avenue, Suite 200
    Phoenix, AZ 85012
19

20

21

22

23

24

25

                      UNITED STATES DISTRICT COURT

```
 1                    P R O C E E D I N G S

 2           (Call to order of court, 10:02 a.m.)

 3           CLERK:  CV 19-35, Russell B. Toomey versus the State

 4    of Arizona, et al., on for a motion hearing.

 5       Counsel, state your appearances, please.

 6           MS. SHEETS:  Victoria Sheets from Willkie Farr &

 7    Gallagher on behalf of the plaintiff.  Good morning, Your

 8    Honor.

 9           THE COURT:  Good morning.

10           MR. BERG:  Timothy Berg and Ryan Curtis of Fennemore

11    Craig on behalf of defendants.

12           THE COURT:  Good morning.

13           MR. YOST:  Good morning, Your Honor.  This is Austin

14    Yost on behalf of the Arizona Board of Regents appearing

15    telephonically.

16           THE COURT:  Good morning.

17       Anybody else on the phone?

18       Thank you.  This is the time set for oral argument on your

19    motion to reconsider.  Would you like to be heard?

20           MR. BERG:  Yes, Your Honor.

21       May it please the court.  Timothy Berg of Fennemore Craig

22    on behalf of defendant State of Arizona, Andy Tobin, and Paul

23    Shannon.

24       The issue before this court is whether it should continue

25    to require these defendants to produce documents that are
```

UNITED STATES DISTRICT COURT

1    subject to the attorney-client privilege when the defendants

2    have not asserted any reliance on an advice of counsel defense

3    and indeed have expressly disclaimed it.

4         THE COURT:  So -- and I guess the reason that I wanted

5    to have this oral argument is because I've reviewed the

6    transcripts and the order in the Ninth Circuit and the advice

7    of counsel defense was disclaimed and made clear.  However, the

8    issue is still the legal rationale for the exclusion.  And I'm

9    just wondering how that's going to be presented if there is no

10   advice of counsel or any consultation with counsel that would

11   come forth during a trial.

12        For example, if you're maintaining -- I guess what I want

13   to know is:  Are you maintaining as a defense that you thought

14   it was legal to exclude?

15        MR. BERG:  Yes, Your Honor.

16        THE COURT:  Okay.  And then, of course, the plaintiff

17   is going to ask:  Well, didn't you consult a lawyer?  Didn't

18   you, you know, take steps to -- or under what basis are you

19   maintaining this defense?  How is it that you're maintaining

20   this defense?

21        And I don't see how the advice of counsel or the

22   consultation with counsel doesn't come in.

23        MR. BERG:  It seems to me, Your Honor, that -- and I

24   think the interrogatory answer says this -- the client did a

25   number of things besides consult counsel.  It talked to its

1  insurance brokers, it went out and did its own search of

2  industry legal and industry periodicals, it made its own

3  analysis.  And I believe the client is entitled to say:  Based

4  on non-privileged information that we had available to us, we

5  concluded that we weren't required to do this.

6         THE COURT:  So --

7         MR. BERG:  And a jury can accept that or not but, I

8  mean --

9         THE COURT:  So was there any advice -- so you're

10  saying based on -- so the plaintiff is going to ask, you know:

11  Did you consult an attorney?  And what is the response to that?

12         MR. BERG:  The response is, as it was in the

13  interrogatories was, yes, Your Honor.  But that doesn't -- the

14  *White* case that we cited in our motion --

15         THE COURT:  Hold on, hold on just a second.  Then the

16  next question is --

17         MR. BERG:  I'm sorry.

18         THE COURT:  -- and did you consider the, whatever

19  advice counsel gave you in your analysis that this was a legal

20  exclusion?

21         MR. BERG:  Your Honor, at this point, I think the

22  answer to that question is:  I'd have to look at whether that

23  question in and of itself is privileged.  Certainly if what

24  plaintiffs asked us is, "What did your lawyer tell you?", our

25  position would be that's privileged and we don't have to

1  disclose that.

2          THE COURT:  But see aren't we running around in

3  circles now because it is the advice of counsel that you're --

4  I mean, you're going to rely on advice of counsel, you're just

5  naming it something different.

6          MR. BERG:  No, Your Honor, we're not relying on advice

7  of counsel.  What we're relying on is the independent decision

8  that was reached by the defendants, including them looking at

9  other things such as periodicals, talking to their insurance

10  agent, doing their own analysis.  And we're not going to say:

11  We didn't have a mal intent here because our lawyer told us

12  this was legal.  That's what we disclaimed at the Ninth Circuit

13  and what we would disclaim in front of you today.

14      No witness is going to get on the stand and testify to the

15  jury in this case that we thought we were fine because our

16  lawyer told us we were fine.  What they're going to say --

17          THE COURT:  So if -- hold on just a second.  So if, if

18  the question then becomes:  Did your lawyer tell you that this

19  was not legal, did you take that into consideration?

20          MR. BERG:  I think, again, the answer to that is

21  that's privileged information and that question isn't

22  appropriately asked.  If -- if -- if -- if the plaintiffs want

23  to prove that, based on what we looked at that's not

24  privileged, that our intent wasn't good, that's their

25  privilege.

1      At bottom, Your Honor, the issue in this case really isn't

2  what our intent was anyway.  It really is, is this a legal

3  restriction or not?  And obviously, as Judge Clifton pointed

4  out, I think quite -- quite pleasantly in the Ninth Circuit

5  argument, it really doesn't matter what an Arizona lawyer told

6  our client about whether this is valid or not.  You and/or a

7  jury are ultimately going to decide whether this is a valid

8  restriction in the policy, and what -- what lawyers thought

9  doesn't really matter.

10      And if our intent is based on a general search we did of

11  other things, then plaintiffs are entitled to impeach that.

12  You know, how could you rely on your insurance agent for legal

13  advice instead of your lawyer?  That's a perfectly legitimate

14  argument for them to make it seems to me.

15      THE COURT:  But I think the whole crux of the case is,

16  the question is whether -- whether this exclusion is -- well,

17  I'm just -- I guess my concern is that if it becomes an issue

18  whether or not there was reliance on the advice of counsel or

19  that that became part of your analysis, whether it was bad, you

20  know, it's not legal or it is legal, then the other side should

21  have an opportunity to see what that information was.

22      MR. BERG:  And I agree, Your Honor, if we were

23  standing up here and saying:  We talked to our lawyers and they

24  told us that we could do this and that's our defense.  We

25  couldn't have bad intent because we had legal advice telling us

1   that this was a legally defensible position, let's say.  Then I

2   think at that point plaintiffs would be entitled, we'd have

3   waived the privilege by advice of counsel defense, that's what

4   an advice of counsel defense is.

5      If what we say is, "Irrespective of what" -- I'm sorry.  I

6   didn't mean to hit the microphone -- "irrespective of what our

7   lawyers told us, we concluded that we didn't have to do this

8   because we looked at it ourselves, we consulted with insurance

9   people, we looked at periodicals, we talked about it

10   ourselves," then plaintiffs are entitled to attack that

11   analysis and prove that it wasn't reasonable or we didn't have

12   a good intent.

13      I don't think intent is required for all of their claims

14   anyway but even if it is, they can still attack intent in that

15   way.  The legal analysis becomes irrelevant unless we're

16   relying on it as a defense.

17        THE COURT:  But if you're saying, "We looked at the,

18   you know, at all of these things," and let's say your lawyers

19   told you, "No, this is an illegal exclusion," then wouldn't

20   that be relevant?

21        MR. BERG:  I think not, Your Honor.  I mean, I think,

22   again, the point was made by Judge Clifton in the argument at

23   the Ninth Circuit.  The issue here isn't:  Why I do something

24   isn't because my lawyer told me I could do it or not.  If my

25   lawyer tells me I can do it, I still have to make a decision

1   that I want to do it, that I have an intent to do it.  If a

2   lawyer tells me I can't do it, I still have to make a decision

3   I want to do it, I have an intent to do it.

4       The legal advice goes to an advice of counsel defense.  The

5   question of what was my intent is a question -- my intent --

6   the department's intent, I'm sorry, is what -- what they

7   intended, and that doesn't -- if we're not relying on legal

8   advice as a defense on intent, legal advice doesn't come into

9   it.

10      That's our position and we think one that the Ninth Circuit

11  found at least persuasive enough to suggest that we come back

12  here in front of you again.

13          THE COURT:  Okay.  Thank you.  Was there anything else

14  you wanted to --

15          MR. BERG:  No, I think that really covers it, Your

16  Honor.

17          THE COURT:  Okay.  Thank you.

18      Ms. Sheets?

19          MS. SHEETS:  Good morning, Your Honor.

20          THE COURT:  Good morning.

21          MS. SHEETS:  May it please the court.  The issue

22  before the court right now, as the court has already pointed

23  out, is an issue of abandonment.  It all boils down to one

24  question:  Have State defendants sufficiently abandoned under

25  the Ninth Circuit *Bittaker* standard the claims that gave rise

1    to the implied waiver in the first place here?  And the answer

2    is no, they have not.  In fact, State defendants have doubled

3    down on the original claim giving rise to the waiver, using the

4    exact same language.

5        There's been some back and forth in the papers and this

6    morning about what was said and what concession may have been

7    made before the Ninth Circuit.  But what really matters, and I

8    think the Ninth Circuit recognized this when they asked State

9    defendants to come back to this court, is the concession that's

10   being made before this court today.

11       And we don't have to guess about the scope of that

12   concession because State defendants put it in their reply brief

13   to this court.  On page 1 of the reply brief State defendants

14   say that State defendants did not disclaim and have never

15   disclaimed their position that the State maintained the

16   exclusion for gender reassignment surgery in part because it

17   was not legally required to provide coverage.

18       They go on to say on page 2 that throughout the oral

19   argument before the Ninth Circuit State defendants clearly

20   stated they were disclaiming an advice of counsel defense, in

21   quotes, not their position that the State was not legally

22   required to provide coverage for transgender reassignment

23   surgery.

24       And that language sounded so familiar to me and it should

25   sound familiar to the court.  I went back and looked at

1    interrogatory number one, the claim that gave rise to the

2    implied waiver as found by this court and Magistrate Bowman.

3    Under interrogatory number one, when the defendants were asked

4    to identify and describe all reasons why they maintained the

5    exclusion, the language is exactly echoed.  They said they

6    maintained the exclusion and their rationale was because the

7    State concluded under the law it was not legally required to

8    change it's health plan to provide such coverage.

9        So whatever concession, quote, unquote concession, was

10   supposedly made before the Ninth Circuit, we don't have to

11   guess what the scope of that concession was and why it is not

12   adequate under the *Bittaker* standard to prevent disclosure.

13       When we look to *Bittaker* we say, you know, did they

14   sufficiently abandon the claim, the claim that gave rise to the

15   waiver?  No, this is the exact kind of conduct that gave rise

16   to the waiver in the first place, and far from abandoning that

17   claim, they have doubled down on the exact same language in

18   their reply before the court now.

19       And under *Bittaker*, you know, and in, as it was applied in

20   an analogous context in the civil case *Hamilton* by this court,

21   a party who has raised an attorney-client privileged issue by

22   implied waiver can choose to either, A, abandon its claims that

23   gave rise to the implied waiver; or, B, produce the documents

24   as required by fairness.  The State defendants could have

25   abandoned their claim, and our proposed order reflects this,

1   what we're asking the court to do.

2         THE COURT:  Why is it your position that they haven't

3   fully abandoned their claim?

4         MS. SHEETS:  Your Honor, the claim that gave rise to

5   the waiver that the legal rationale -- excuse me, that the

6   rationale were maintaining the exclusion, one of the reasons

7   the exclusion was maintained, was that State defendants'

8   subjective belief at the time they made the decision was that

9   they were not legally required to cover the exclusion.  That is

10  the claim that gave rise to the waiver.  That is the claim that

11  this court and the magistrate court found to give rise to the

12  waiver.

13       And, by the way, this argument that, you know, newspaper

14  articles and insurers were consulted and that advice of counsel

15  has nothing to do with the fact that State defendants had this

16  subjective belief that they weren't legally required to cover

17  this has already been considered by the court and rejected.

18       When you look at the interrogatory responses themselves,

19  you know, they do list newspaper articles and insurers but the

20  bulk of it, you know, up front and behind and in the number

21  four and number seven interrogatories which still stand, that

22  affirmative act as identified by this court, all those

23  interrogatories still stand.  They indicate that absolutely

24  attorney-client -- excuse me -- attorneys were consulted in

25  coming to the conclusion, the State defendants coming to the

1  conclusion at the time they were not legally required to cover

2  this procedure or these procedures and that that's why they

3  maintained the exclusion.

4      THE COURT:  So it's -- so there is an admission that

5  they took into account the attorney's advice in coming to this

6  conclusion?  Is that --

7      MS. SHEETS:  That is how we and how this court

8  previously read the interrogatories which still stand.

9      And, by the way, we approached State defendants after the

10  Ninth Circuit argument, and this is attached as Exhibit A to

11  our response to the motion before the court, we approached them

12  with a proposal, a proposed stipulation:  Revise the

13  interrogatories, you know, make the abandonment that is

14  required under *Bittaker* which would allow, you know, plaintiff

15  to go forward and not need access to the privileged documents.

16  That proposal was rejected.  So those interrogatories stand,

17  the affirmative act stands.

18      And we've also heard from -- on the point of newspaper

19  articles and insurance carriers not being the only source of

20  the determination for the subjective belief that State

21  defendants had that they weren't legally required to cover

22  this, we've heard from witnesses in this case in depositions

23  that absolutely attorneys were consulted, those attorneys were

24  the same attorneys identified by witnesses as were identified

25  in the interrogatories, in interrogatory number four

1    specifically, and like in *Hamilton*, you know, there are two

2    legal memoranda that were identified in interrogatory number

3    seven.  All of these still stand.

4         And far from abandoning those claims, regardless of

5    whatever was said by, quote, unquote, advice of counsel claim

6    which State defendants have always maintained that they have

7    not been pursuing here, which was not an argument that won over

8    the magistrate court nor this court previously, the fact is

9    that everything we see points to what common sense tells us is

10   also true that if State defendants are putting forth this

11   rationale and that their subjective belief at the time they

12   made the decision was that they were not legally required to

13   cover the surgeries, you know, why --

14            THE COURT:  Why is that -- like counsel, Mr. Berg,

15   says, why is that relevant here, their subjective belief?

16            MS. SHEETS:  Yes, I was following that discussion with

17   Mr. Berg and I think there's a little bit of what -- we're

18   skipping a step when we talk about the issue in this trial

19   being the legality and whether it is legal right now to not

20   cover and maintain the exclusion.

21        And what's really at issue here is not the overall, you

22   know, heart of the case, whether it's legal now, but what's at

23   issue here when State defendants would be required to abandon

24   their claim is whether it was their subjective belief at the

25   time because that's their defense.  Their defense is not, I

1  mean, another defense obviously would need to be that it's

2  legal now but their defense in this context is not that it's

3  legal now and that an attorney at the time they were making

4  this decision, it doesn't matter whether or not they were

5  advised if it was legal, that doesn't make it legal or not

6  legal now.  The issue is whether and how that advice of counsel

7  at the time impacted their subjective belief at the time they

8  were making the decision to maintain the exclusion, which --

9       THE COURT:  But why is that relevant at trial, their

10  subjective belief?

11       MS. SHEETS:  Yes, Your Honor.  Because at trial we

12  expect, as we've seen throughout discovery, when asked the

13  reasons and when -- yes, when asked the reasons why the

14  exclusion was maintained, you know, besides some discriminatory

15  intent, there have been a few reasons put forth by State

16  defendants, one is cost, that has been exhaustively gone

17  through in discovery and we feel we have an adequate handle on

18  that.

19     The other is we were not legally required to do so.  This

20  is something we've heard from witnesses throughout discovery,

21  this is something that we're hearing today from opposing

22  counsel.  And it's relevant and necessary under *Bittaker* and

23  the fairness principle that plaintiff be allowed to probe and

24  find out for themselves the underlying materials that opposing

25  counsel says the State defendants were relying on at the time.

1          THE COURT:  Because it goes to discriminatory intent

2     or what does it go to?

3          MS. SHEETS:  Yes, Your Honor, it goes to intent.

4          THE COURT:  Okay.  Thank you, Ms. Sheets.

5        Mr. Berg, anything else?

6          MR. BERG:  Yes, just briefly, Your Honor.  I'm going

7     to do something I normally don't do and that's ask the court to

8     look at a couple of things again.  If you look at the *White*

9     case that we cited to you, then Judge, later Justice,

10    Ginsberg's opinion makes it clear that just because intent is

11    an issue, that doesn't amount to a waiver of attorney-client

12    privilege.  Whether or not I had intent -- bad intent doesn't

13    make or discriminatory intent in this case doesn't make

14    attorney-client privilege insufficient.

15         THE COURT:  Well, I don't think -- I think in that

16    case, and I have read the case, they're not discussing, I mean,

17    they didn't have an affirmative -- they didn't have a defense

18    that you're proposing.

19         MR. BERG:  They had a defense that they didn't intend

20    to violate the law and mens rea, the other side had to prove

21    mens rea, it wasn't actually a defense, and it's really not a

22    defense here.  To the extent any of their claims require proof

23    of intent, our saying we don't have bad intent isn't an

24    affirmative defense, Your Honor, it's a denial of their

25    allegation.

1    If you -- Ms. Sheets has gone back and relied on

2   interrogatories four and seven as well as one, and I want to

3   cover this real quickly.  If the court looks at the Ninth

4   Circuit argument, it's, I think, pretty clear that the Ninth

5   Circuit didn't find either interrogatory four or interrogatory

6   seven to be a waiver.  What the court said was you asked them

7   who you talked to and they told you.  They can't waive the

8   attorney-client privilege because they said they talked to

9   somebody.  You asked them what documents they looked at and

10  they told you.  That can't be a waiver.

11    What the Ninth Circuit suggested is that the issue before

12  this court is whether the response to interrogatory number one

13  is a waiver.  And we contend it is not.  Let me go back to --

14  and, in fact, go back to the question of advice of counsel

15  versus understanding of legality.  If the court reviews its

16  original order requiring these documents to be produced and the

17  magistrate judge's original order requiring the documents --

18  I'm sorry.  I have this mask on and I'm making it hard on

19  everybody.  Let me change this -- to be produced, you'll see

20  that the reason that the court ordered them to be produced was

21  because it concluded that we were relying on advice of our

22  counsel that it was legal.  And that's in both -- if you look

23  at our reply, we set this out in more detail but -- and that's

24  an advice of counsel defense.  If we were doing that, there

25  would be a waiver here.  But that's not what we're doing.

1    We're saying:  Irrespective of what our lawyers told us, we

2  didn't think we had to do this legally and we didn't have bad

3  intent.  That may be an issue for some of their claims, it may

4  be an issue not for other of their claims.  As the court's

5  pointed out, as I've pointed out, and as Ms. Sheets admitted,

6  basically the issue in this case really is, is this a valid

7  restriction.  And whatever legal advice Ms. Sheets's client

8  had, my client had, anybody had is irrelevant.  The question is

9  the re --

10    THE COURT:  Well, is it irrelevant if you got bad --

11  if you got advice and you ignored it?  If they -- if your

12  lawyers told you it's illegal to -- it's not legal to exclude,

13  so all of your reading of these articles and all of your

14  reading of whatever independent research that you did, I, as

15  your lawyer am telling you, this is going to create problems

16  for you, this is, you know, you're not acting within the law

17  because our position is blah.  Let's say that that was the

18  privileged information.

19    Would that be relevant?

20    MR. BERG:  I don't think so, Your Honor.  Again, the

21  question of why we did what we did is in that answer, and it's

22  the other things we looked at.

23    I hate to say this.  I've been a lawyer for 46 years and

24  I've had any number of clients come to me for advice and then

25  not do what I've told them to do or do something I've told them

1   they shouldn't do.  Normally -- I don't practice criminal law,

2   I do civil law.  So I don't really end up telling people:

3   You're going to go to jail if you do what I told you not to do.

4       But that's just one of the factors somebody looks at but

5   here we're not relying on that.  We're not saying -- if we were

6   saying to this court, if we were going to say to the jury, "We

7   had -- we had clean hands and a pure mind because our lawyers

8   told us we could do this," then absolutely they'd be entitled

9   to see what our lawyer said.

10      If we said, "Didn't matter what our lawyers told us, we

11  decided we didn't have to do this and we went ahead and made

12  that decision anyway," then the privileged information isn't at

13  issue and the court shouldn't order it to be produced.

14          THE COURT:  Well, wouldn't it be relevant because then

15  at that point the plaintiff could argue that you weren't acting

16  with clean hands and that you had discriminatory intent?

17          MR. BERG:  Again, Your Honor, I don't think so.  The

18  question of what advice somebody gets from a lawyer doesn't, I

19  think, bear on, like I say, you could get conflicting advice

20  from your lawyer and I don't think it proves intent that you

21  did something your lawyer didn't do, not if you're not

22  defending on the advice your lawyer gave you.

23          THE COURT:  Okay.

24          MR. BERG:  Thank you, Your Honor.  Appreciate the

25  time.  I'm sorry for talking to through the mask.

1          THE COURT:  No, no, that's fine.  Thank you for coming

2    down here.

3         All right.  I will take the matter under advisement and

4    issue a ruling.  Thank you.

5         (Whereupon, the matter was concluded at 10:27 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1                      C E R T I F I C A T E

2

3           I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6      __/s Cindy J. Shearman_____           July 27, 2022_
       CINDY J. SHEARMAN, RDR, CRR                 DATE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25