# EXHIBIT 27

Message

| | |
|---|---|
| **From:** | Eveleth, Ray G [EvelethR@aetna.com] |
| on behalf of | Eveleth, Ray G <EvelethR@aetna.com> [EvelethR@aetna.com] |
| **Sent:** | 6/9/2016 11:57:16 AM |
| **To:** | Scott Bender [Scott.Bender@azdoa.gov] |
| **CC:** | Dash, Jay A [DashJ@aetna.com] |
| **Subject:** | RE: Final rule - enhanced protection for transgender individuals |
| **Attachments:** | robinson_v_dignity_complaint_-filed.pdf |

Scott,

Currently, your plan would be required to cover this based on medical necessity. We are asking our Compliance department for guidance to our self-funded clients. However, attached is a current case in the 9th Circuit that addresses this very issue. I'd be curious what UHC's response is.

I apologize for including the NPL link, this is an internal link. It spells out our procedures based on a member requesting either a Par or Non-Par provider.

Be well,

**Ray Eveleth**
Senior Account Executive
Aetna Public & Labor Sector
4500 E. Cotton Center Blvd., Phoenix, AZ 85040
T 602-659-9238
C 480-220-5452
F 860-900-7050
EvelethR@aetna.com

**aetna**

---

**From:** Scott Bender [mailto:Scott.Bender@azdoa.gov]
**Sent:** Thursday, June 09, 2016 10:42 AM
**To:** Eveleth, Ray G
**Cc:** Dash, Jay A
**Subject:** RE: Final rule - enhanced protection for transgender individuals

Thank you for the response Ray. The second link below to the National Provider Precertification does not work for me, is there an attachment you could send instead? To clarify on the below procedures and these requiring preauthorization, assuming Aetna determines there is medical necessity based on the criteria, is our plan required to offer the reassignment benefits even though we're self insured? This seems to be the sticking point and if we have an option or not.

Thanks,
Scott

**From:** Eveleth, Ray G [mailto:EvelethR@aetna.com]
**Sent:** Thursday, June 09, 2016 9:53 AM
**To:** Scott Bender <Scott.Bender@azdoa.gov>
**Cc:** Dash, Jay A <DashJ@aetna.com>
**Subject:** RE: Final rule - enhanced protection for transgender individuals

Hi Scott,

Below is our official response plus I'm including additional information about our National Medical Excellence Program as it would be a source for referral.

In regards to reassignment surgery/other treatments required during transition Aetna considers it medically necessary when all of the criteria is met per Clinical Policy Bulletin 0615
http://www.aetna.com/cpb/medical/data/600_699/0615.html.

Also sharing additional information as it applies to NME:
The National Medical Excellence (NME) Program has 3 components:

- National Transplantation Program - designed to help arrange covered care for organ and tissue transplants, including heart, lung, liver, kidney, pancreas, peripheral stem cell and bone marrow transplants

- National Special Case Program - developed to provide referral management for preauthorized services for members with very complex conditions that are not commonly encountered in routine patient management activities. Some examples of diagnosis/procedures qualifying as NME special cases are:

    o   Acrocephalosyndactyla
    o   Brachial Plexus Neuropathies
    o   Desmoid Tumors
    o   Dysautonomia Familial
    o   Epidermolysis Bullosa
    o   Fragile X Syndrome
    o   Gender reassignment surgery - see Precertification Policy/Overview: National Participating Provider Precertification List (NPL)
    o   Laryngotracheal Reconstruction
    o   Merkel Cell Cancer
    o   Moyamoya Disease
    o   The Special Case Program also includes the Hemophilia Program. The NME Hemophilia Program is responsible for providing case management and factor precertification services to all members diagnosed with hemophilia or vonWillebrand's Disease.

- Out of Country Care for members who need emergency inpatient medical care while temporarily traveling outside of the continental United States.


Be well,

**Ray Eveleth**
Senior Account Executive
Aetna Public & Labor Sector
4500 E. Cotton Center Blvd., Phoenix, AZ 85040
T 602-659-9238
C 480-220-5452
F 860-900-7050
EvelethR@aetna.com



**From:** Scott Bender [mailto:Scott.Bender@azdoa.gov]
**Sent:** Wednesday, June 08, 2016 6:17 PM
**To:** Muth, Ken; Severns, Colette; Emmons, Erica 654; Eveleth, Ray G; Dash, Jay A; heather_k_gallegos@uhc.com
**Subject:** Final rule - enhanced protection for transgender individuals

Hi all,

Now that the HHS has issued a final rule on the nondiscrimination in health programs under the ACA, we need some guidance as to whether our plans as they exist will be compliant as of the effective date of July 18, 2016. The ruling expands protection for transgender individuals with respect to accessibility for health services that may not be denied or limited due to an individuals assigned sex at birth, gender identity or recorded gender. What's not clear is if our plans must now cover reassignment surgery, or other treatments required during a transition. Please advise how your organization is treating this ruling and how specifically the ADOA plans are impacted.

Thanks
Scott


**Scott Bender**
Plan Administration Manager
ADOA – Benefit Services Division | State of Arizona
100 North 15th Avenue, Suite 260, Phoenix, AZ  85007
p: 602-542-4958 | f: 602-542-4048 | Scott.Bender@azdoa.gov
http://benefitoptions.az.gov/



NOTICE: This e-mail and any attachments to it may contain information that is PRIVILEGED and CONFIDENTIAL under State and Federal law and is intended only for the use of the specific individual(s) to whom it is addressed. This information may only be used or disclosed in accordance with law, and you may be subject to penalties under law for improper use or further disclosure of the information in this e-mail and its attachments. If you have received this e-mail in error, please immediately notify the person named above by reply e-mail, and then delete the one you received.

This e-mail may contain confidential or privileged information. If you think you have received this e-mail in error, please advise the sender by reply e-mail and then delete this e-mail immediately. Thank you. Aetna
This e-mail may contain confidential or privileged information. If you think you have received this e-mail in error, please advise the sender by reply e-mail and then delete this e-mail immediately. Thank you. Aetna

| | |
|---|---|
| 1 | Elizabeth O. Gill (SBN 218311) |
| | Christine Sun (SBN 218701) |
| 2 | ACLU FOUNDATION OF NORTHERN CALIFORNIA, INC. |
| | 39 Drumm Street |
| 3 | San Francisco, CA 94111 |
| | T: (415) 621-2493 |
| 4 | F: (415) 255-8437 |
| | egill@aclunc.org |
| 5 | csun@aclunc.org |
| 6 | Joshua A. Block* |
| | Leslie Cooper* |
| 7 | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| | LGBT & HIV PROJECT |
| 8 | 125 Broad Street |
| | New York, New York 10004 |
| 9 | T: (212) 549-2593 |
| | T: (212) 549-2584 |
| 10 | F: (212) 549-2650 |
| | jblock@aclu.org |
| 11 | lcooper@aclu.org |
| 12 | Darrell Hill (Bar No. 030424)* |
| | ACLU FOUNDATION OF ARIZONA |
| 13 | 3707 North 7th Street, Suite 235 |
| | Phoenix, AZ 85014 |
| 14 | T: (602) 773-6008 |
| | F: (602) 650-1376 |
| 15 | dhill@acluaz.org |
| 16 | Attorneys for Plaintiff Josef Robinson |
| 17 | * Pro hac vice motion to follow |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| JOSEF ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. _____ |
| v. | ) | |
| | ) | **COMPLAINT** |
| DIGNITY HEALTH d/b/a CHANDLER | ) | |
| REGIONAL MEDICAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMPLAINT

AZSTATE.136337

# COMPLAINT

1. This is a civil rights complaint for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Patient Protection and Affordable Care Act § 1557, 42 U.S.C. § 18116 ("Section 1557").

2. Dignity Health owns and operates the fifth largest health care system in the United States. It provides health benefits to its employees through a self-funded plan (the "Dignity Health Plan").

3. The Dignity Health Plan singles out transgender employees for unequal treatment by categorically depriving them of all medical care for gender dysphoria, a serious medical condition codified in the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) and International Classification of Diseases (ICD-10).

4. In the past, public and private insurance companies excluded coverage for gender dysphoria based on the erroneous assumption that such treatments were cosmetic or experimental. Today, however, it is widely recognized that such exclusions have no basis in medical science.

5. Plaintiff Josef Robinson is an employee of Dignity Health who works at Dignity Health's Chandler Regional Medical Center. As a result of the categorical exclusion in the Dignity Health Plan, Mr. Robinson has been forced to pay thousands of dollars out of pocket in order to obtain medically necessary care for gender dysphoria, and he has had to forego some medically necessary care entirely.

6. The explicit and categorical exclusion of care for gender dysphoria discriminates against Mr. Robinson and other transgender employees on the basis of sex, in violation of Title VII and Section 1557.

7. Mr. Robinson brings this action against Dignity Health d/b/a Chandler Regional Medical Center seeking declaratory and injunctive relief and damages caused by the discriminatory denial of medically necessary care.

**JURISDICTION**

8. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Patient Protection and Affordable Care Act § 1557, 42 U.S.C. § 18116 ("Section 1557").

9. This Court has jurisdiction pursuant to Article III of the United States Constitution; 28 U.S.C. §§ 1331, 1343; and 42 U.S.C. § 2000e-5(f)(3).

10. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

11. This Court has personal jurisdiction over Defendant because Defendant's corporate headquarters is located in this District.

**VENUE**

12. Venue lies with this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice was committed at Dignity Health's corporate headquarters in San Francisco and employment records relevant to such practice are maintained and administered at Dignity Health's corporate headquarters in San Francisco.

13. Venue also lies with this Court pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2) because Defendant resides in this District, and a substantial part of the events or omissions giving rise to the claim occurred at Dignity Health's corporate headquarters in San Francisco.

**INTRADISTRICT ASSIGNMENT**

14. This action arises in the San Francisco Division because a substantial part of the events or omissions which give rise to the claim occurred at Dignity Health's corporate headquarters in San Francisco.

**PARTIES**

15. Plaintiff Josef Robinson resides in Chandler, Arizona.

16. Dignity Health is a non-profit corporation organized under the laws of California. Its corporate headquarters is located in San Francisco, California.

17. Dignity Health does business in Chandler, Arizona as the Dignity Health Chandler Regional Medical Center.

COMPLAINT 2

## EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

18. On December 3, 2015, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission against Dignity Health for sex discrimination in violation of Title VII.

19. On February 2, 2016, Plaintiff filed an amended charge.

20. On May 12, 2016, the EEOC issued a determination finding reasonable cause to believe that the Dignity Health Plan discriminates against Mr. Robinson on the basis of sex by excluding all treatments for gender dysphoria from health care coverage in violation of Title VII. (Exhibit A.)

21. On May 16, 2016, the EEOC issued a right-to-sue letter to Plaintiff. (Exhibit B.)

## FACTUAL ALLEGATIONS

22. Mr. Robinson is a man who is transgender. That means that he was assigned the sex of female at birth, but his gender identity is male and he identifies as a man.

23. "Gender identity" is a well-established medical concept, referring to one's sense of oneself as belonging to a particular gender. Typically, people who are designated female at birth based on their external anatomy identify as girls or women, and people who are designated male at birth identify as boys or men. For transgender individuals, however, the sense of one's self—one's gender identity—differs from the sex assigned to them at birth. Transgender men are men who were assigned "female" at birth, but have a male gender identity. Transgender women are women who were assigned "male" at birth, but have a female gender identity.

24. The medical diagnosis for the feeling of incongruence beyond one's gender identity and one's sex assigned at birth, and the resulting distress caused by that incongruence, is "gender dysphoria" (previously known as "gender identity disorder"). Gender dysphoria is a serious medical condition codified in the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) and International Classification of Diseases (ICD-10). The criteria for diagnosing gender dysphoria are set forth in the DSM-V (302.85).

25. The widely accepted standards of care for treating gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH"). The WPATH

COMPLAINT 3

1 Standards of Care have been recognized as the authoritative standards of care by the leading
2 medical organizations, the U.S. Department of Health and Human Services, and federal courts.

3     26.      Under the WPATH standards, medically necessary treatment for gender dysphoria
4 may require medical steps to affirm one's gender identity and help an individual transition from
5 living as one gender to another. This treatment, often referred to as transition-related care, may
6 include hormone therapy, surgery (sometimes called "sex reassignment surgery"), and other
7 medical services that align individuals' bodies with their gender identities. The exact medical
8 treatment varies based on the individualized needs of the person.

9     27.      According to every major medical organization and the overwhelming consensus
10 among medical experts, treatments for gender dysphoria, including surgical procedures, are
11 effective, safe, and medically necessary when clinically indicated to alleviate gender dysphoria.

12     28.      In the past, public and private insurance companies excluded coverage for
13 transition-related care based on the erroneous assumption that such treatments were cosmetic or
14 experimental. Today, however, the medical consensus recognizes that such discriminatory
15 exclusions of transition-related healthcare have no basis in medical science.

### Dignity Health Plan's Categorical Exclusion of Coverage

17     29.      Dignity Health owns and operates the fifth largest health care system in the
18 United States.

19     30.      Since January 2014, and at all times relevant to this Complaint, Mr. Robinson has
20 been an employee of Dignity Health, working as a nurse at the Dignity Health Chandler Regional
21 Medical Center.

22     31.      Dignity Health provides health care coverage to employees, including Mr.
23 Robinson, through a self-funded plan administered by United Medical Resources ("UMR"),
24 which is a fully owned subsidiary of United Healthcare.

25     32.      The health plan offered to employees at Chandler Regional Medical Center is the
26 Dignity Health Arizona Preferred Plan ("Dignity Health Plan"). (Exhibit C.)

COMPLAINT      4

AZSTATE.136341

33. The Dignity Health Plan has a categorical exclusion of "Treatment, drugs, medicines, services and supplies for, or leading to, sex transformation surgery." (Exhibit C at 63.)

34. United Healthcare has adopted policy guidelines for coverage of medically necessary treatments for gender dysphoria in accordance with the WPATH Standards of Care, including, *inter alia*, continuous hormone replacement therapy, complete hysterectomy, orchiectomy, penectomy, vaginoplasty, vaginectomy, clitoroplasty, labiaplasty, salpingo-oophorectomy, metoidioplasty, scrotoplasty, urethroplasty, placement of testicular prosthesis, phalloplasty, thyroid chondroplasty, bilateral mastectomy, and augmentation mammoplasty. *See* United Healthcare Coverage Determination Guideline CDG.011.05: Gender Dysphoria (Gender Identity Disorder) Treatment (Oct. 1, 2015), https://www.unitedhealthcareonline.com/ccmcontent/ProviderII/UHC/en-US/Assets/ProviderStaticFiles/ProviderStaticFilesPdf/Tools%20and%20Resources/Policies%20and%20Protocols/Medical%20Policies/Medical%20Policies/Gender_Identity_Disorder_CD.pdf.

35. Because the Dignity Health Plan categorically excludes all coverage related to "sex transformation surgery," the Dignity Health Plan does not cover any of the medically necessary treatments for gender dysphoria that would be covered as medically necessary under United Healthcare's coverage determination guidelines.

**Denial of Medically Necessary Care**

36. As a result of the Dignity Health Plan's categorical exclusion of coverage related to "sex transformation surgery," Mr. Robinson has been denied coverage for medically necessary treatments for gender dysphoria that were prescribed to him in accordance with the WPATH Standards of Care.

37. As a result of the Dignity Health Plan's categorical exclusion of coverage related to "sex transformation surgery," Mr. Robinson has been forced to pay out of pocket for medically necessary hormone therapy to treat his gender dysphoria and will have to continue doing so for the foreseeable future.

COMPLAINT 5

AZSTATE.136342

38. On or around August 24, 2015, Mr. Robinson received a double mastectomy as part of his medically necessary treatment for gender dysphoria in accordance with the WPATH Standards of Care.

39. Mr. Robinson attempted to obtain pre-authorization for the double mastectomy surgery, but UMR denied coverage in letters dated June 22, 2015, and August 13, 2015, based on the "sex transformation" exclusion in the Dignity Health Plan. (Exhibits D, E.)

40. As a result, on or around August 24, 2015, Mr. Robinson paid approximately $7,450 out of pocket for his medically necessary surgery.

41. Mr. Robinson appealed the denial of coverage, but UMR upheld the adverse benefit determination in a letter dated February 12, 2016. (Exhibit F.) The letter stated that the "sex transformation" exclusion in the Dignity Health Plan "excludes all treatment related to th[e] diagnosis" of gender dysphoria.

42. In accordance with the WPATH Standards of Care, Mr. Robinson's medical providers have referred him to a surgeon for medically necessary phalloplasty surgery, but Mr. Robinson does not have sufficient funds to pay for the phalloplasty out of pocket.

43. Mr. Robinson was originally scheduled to undergo the surgery in March 2016. Because the medically necessary phalloplasty surgery is excluded from coverage under the Dignity Health Plan as a form of "sex transformation surgery," Mr. Robinson was forced to cancel the scheduled surgery and lose the money he had paid as a deposit.

**Response from Dignity Health**

44. On September 24, 2015, Mr. Robinson's fiancée, who is also an employee at Dignity Health, emailed Dignity Health Chief Executive Officer Lloyd Dean to ask him to remove the "sex transformation" exclusion from the Dignity Health Plan so that Mr. Robinson could receive coverage for his medically necessary care. (Exhibit G at 4-8.)

45. On September 24, 2015, Mr. Dean responded by email: "Thanks for sharing this very unfortunate situation. I am asking our head of HR to look into this matter and to then follow up with you. Thanks for bringing this to my attention." (Exhibit G at 4.) Mr. Dean included

COMPLAINT  6

AZSTATE.136343

1  Daryll Robinson, Dignity Health Executive Vice President and Chief Human Resources Officer,
2  as an email recipient.
3      46.    On October 26, 2015, the Chief Human Resources Officer provided the following
4  information to Mr. Robinson's fiancée by email:

> You have raised a unique issue that warrants more thought and review. I have spoken with our employee benefits team as well as our policy staff. All agree that the issue you have raised is both unique and important. Rather than provide an answer that is not thoroughly and carefully considered from all angles, I'd like to convene a small team of individuals from HR, Mission, Ethics and potentially operations to discuss your situation.

(Exhibit G at 1.)

    47.    On November 6, 2015, the Chief Human Resources Officer provided the following information to Mr. Robinson's fiancée by email:

> Thank you for raising this issue for contemplation and discernment. We held our discussion with representatives from HR Policy, Employee Benefits, Total Rewards, Mission Integration and Ethics on Thursday morning, November 5th. We discussed your situation through the lens of our values, our internal policy and our ethical & religious directives. We also considered our medical plan insurance coverages for both fully insured plans in California and self-funded plans in Arizona and individual state requirement statutes, but we did not have an employment attorney involved in the meeting.
>
> With specific intent, we deliberated whether our existing policies were discriminatory and inconsistent with our organization values as you stated in your letter. We found no evidence of discriminatory practice in the employee benefit plan documents, internal practice or the administration of the plan.

(Exhibit H.)

    48.    After Mr. Robinson filed a charge of discrimination with the EEOC, Dignity Health submitted a position statement responding to the charge. (Exhibit I.) In the position statement, Dignity Health asserted that the exclusion of healthcare for gender dysphoria was not discriminatory because "health benefits under the Dignity plan are not provided for any personality disorders, including sexual/gender identity disorders and behavior and impulse control disorders." (Ex. I at 6.)

    49.    Contrary to the assertions in Dignity Health's position statement, gender dysphoria is not considered a "personality disorder" by the medical community.

COMPLAINT                                    7

AZSTATE.136344

# COUNT ONE
## Violation of Title VII

50. Title VII provides that employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

51. Dignity Health is an employer as that term is defined in Title VII, 42 U.S.C. § 2000e-(b).

52. Plaintiff is an employee of Dignity Health as that term is defined in Title VII, 42 U.S.C. § 2000e(f).

53. An employer-sponsored health plan is part of the "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1).

54. Discrimination on the basis of transgender status or gender nonconformity is discrimination on the basis of "sex" under Title VII.

55. By categorically excluding all medically necessary care related to "sex transformation surgery," the Dignity Health Plan has drawn a classification that discriminates based on transgender status and gender nonconformity.

56. Because the only individuals who require medically necessary care to treat gender dysphoria are transgender individuals, denying coverage for such health care constitutes discrimination based on transgender status. As a result of the exclusion in the Dignity Health Plan, non-transgender employees receive coverage for all of their medically necessary healthcare, but transgender individuals do not.

57. Because medical transition from one sex to another inherently violates gender stereotypes, denying coverage for such health care constitutes impermissible discrimination based on gender nonconformity.

58. By excluding all healthcare related to "sex transformation surgery" from the only available health plan it provides to employees, Dignity Health has unlawfully discriminated

COMPLAINT 8

against Mr. Robinson—and continues to unlawfully discriminate against him—based on his sex in violation of Title VII.

## COUNT TWO
### Violation of ACA § 1557

59. Section 1557 of the Patient Protection and Affordable Care Act § 1557, 42 U.S.C. § 18116 ("Section 1557"), provides that "an individual shall not, on the ground prohibited under . . . title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.)"—which prohibits discrimination "on the basis of sex"—"be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

60. Dignity Health receives federal financial assistance, and is therefore a "covered entity" for purposes of Section 1557.

61. On May 13, 2017, the U.S. Department of Health and Human Services issued a final rule (the "Final Rule"). *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31376 (May 18, 2016) (to be codified at 45 C.F.R. Part 92).

62. The Final Rule states that a covered entity "that provides an employee health benefit program to its employees and/or their dependents shall be liable for violations of [Section 1557] in that employee health benefit program" if "[t]he entity is principally engaged in providing or administering health services." 45 C.F.R. § 92.208(a).

63. Because Dignity Health is principally engaged in the business of providing health services, Section 1557 and 45 C.F.R. § 92.208(a) prohibit Dignity Health from discriminating against employees on the basis of sex in the terms of its employer-sponsored health care plan.

64. The Final Rule states that a covered entity "providing or administering health-related insurance" may not "[h]ave or implement a categorical coverage exclusion or limitation for all health services related to gender transition." 45 C.F.R. § 92.207(b)(4).

COMPLAINT 9

AZSTATE.136346

65. The Dignity Health Plan's categorical exclusion for treatment related to "sex transformation surgery" is a "categorical coverage exclusion or limitation for all health services related to gender transition" under 45 C.F.R. § 92.207(b)(4).

66. Discrimination on the basis of transgender status or gender nonconformity is discrimination on the basis of "sex" under Section 1557.

67. By categorically excluding all medically necessary care related to "sex transformation surgery," the Dignity Health Plan has drawn a classification that discriminates based on transgender status and gender nonconformity.

68. Because the only individuals who require medically necessary care to treat gender dysphoria are transgender individuals, denying coverage for such health care constitutes discrimination based on transgender status. As a result of the exclusion in the Dignity Health Plan, non-transgender employees receive coverage for all of their medically necessary healthcare, but transgender individuals do not.

69. Because medical transition from one sex to another inherently violates gender stereotypes, denying coverage for such health care constitutes impermissible discrimination based on gender nonconformity.

70. By excluding all healthcare related to "sex transformation surgery" from the only available health plan it provides to employees, Dignity Health has unlawfully discriminated against Mr. Robinson—and continues to unlawfully discriminate against him—on the basis of sex in violation of Section 1557.

**REQUEST FOR RELIEF**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the following relief:

A. Declaratory relief, including but not limited to a declaration that Defendant violated Title VII and Section 1557;

B. Injunctive relief;

C. Compensatory and consequential damages in an amount to be determined at trial;

COMPLAINT 10

AZSTATE.136347

| | | |
|---|---|---|
| 1 | D. | Punitive damages for violation of Title VII; |
| 2 | E. | Pre-judgment and post-judgment interest at the highest lawful rate; |
| 3 | F. | Plaintiffs' reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and |
| 4 | G. | Such other relief as the Court deems just and proper. |

June 6, 2016

ACLU FOUNDATION OF NORTHERN CALIFORNIA, INC.

By: /s/ Elizabeth O. Gill
Elizabeth O. Gill
Attorneys for Plaintiff Josef Robinson

COMPLAINT 11

AZSTATE.136348

# EXHIBIT 28

Message

| | |
|---|---|
| **From**: | Emmons, Erica 654 [Erica.Emmons@Cigna.com] |
| on behalf of | Emmons, Erica 654 <Erica.Emmons@Cigna.com> [Erica.Emmons@Cigna.com] |
| **Sent**: | 6/15/2016 11:41:41 AM |
| **To**: | Scott Bender [Scott.Bender@azdoa.gov] |
| **CC**: | Maddalena, Diana M 646 [Diana.Maddalena@Cigna.com] |
| **Subject**: | RE: Final rule - enhanced protection for transgender individuals |

Hi Scott –
I sent your inquiry to Cigna's healthcare legislation team. Below is Cigna's response at this point:

Employers should be aware of whether they are considered a "covered entity" as defined in the final regulation. Employers such as hospitals or other provider types that receive Federal financial assistance are impacted by the rule in its entirety (that would include requirements for language assistance, disability accessibility - including in connection with building and facilities, and assuring equal access to services for persons in a protected class). Employers are also impacted if they operate a health program or activity which, in any part, receives Federal financial assistance or funding (examples include Medicare Part A, student health plans, advanced premium tax credits, and many more).

For the "average" employer, the primary impact will be the requirement to eliminate categorical exclusions or limitations for all health services related to gender transition. ASO clients, for whom Cigna is the TPA, will be responsible for making their own determination of how they will handle coverage or exclusion for gender transition.

Should an ASO client establish a benefit design that is defined as discriminatory – it either contains a categorical exclusion, or contains a difference in cost sharing (like a lifetime maximum or a higher copay) for gender transition services, they may be subject to investigation by the EEOC for such practices. These issues will not fall under the enforcement responsibilities of the Office of Civil Rights in connection with this Nondiscrimination rule, but may be referred to the EEOC for enforcement. Employers who have insured coverage with Cigna will see their plans modified at the first renewal on and after 1/1/2017 – to remove any outright exclusion for gender transition.

The industry, as a whole, is in the very early stages of analyzing this wide-ranging regulation, and additional clarification may be provided as that process continues.

Erica Emmons | Strategic Account Executive | Government and Education | Cigna | 5310 East High Street, Suite 200 | Phoenix, AZ 85054 | Direct: 480.426.6761 | Mobile: 480.622.0899 | erica.emmons@cigna.com



*Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel.* © *Copyright 2016 Cigna.*

---

**From:** Scott Bender [mailto:Scott.Bender@azdoa.gov]
**Sent:** Wednesday, June 08, 2016 6:17 PM
**To:** Muth, Ken; Severns, Colette; Emmons, Erica 654; Eveleth, Ray G; Dash, Jay A; heather_k_gallegos@uhc.com
**Subject:** Final rule - enhanced protection for transgender individuals

Hi all,

Now that the HHS has issued a final rule on the nondiscrimination in health programs under the ACA, we need some guidance as to whether our plans as they exist will be compliant as of the effective date of July 18, 2016. The ruling expands protection for transgender individuals with respect to accessibility for health services that may not be denied or limited due to an individuals assigned sex at birth, gender identity or recorded gender. What's not clear is if our plans must now cover reassignment surgery, or other treatments required during a transition. Please advise how your organization is treating this ruling and how specifically the ADOA plans are impacted.

AZSTATE.009210

Thanks
Scott


**Scott Bender**
Plan Administration Manager
ADOA – Benefit Services Division | State of Arizona
100 North 15th Avenue, Suite 260, Phoenix, AZ  85007
p: 602-542-4958 | f: 602-542-4048 | Scott.Bender@azdoa.gov
http://benefitoptions.az.gov/



NOTICE: This e-mail and any attachments to it may contain information that is PRIVILEGED and CONFIDENTIAL under State and Federal law and is intended only for the use of the specific individual(s) to whom it is addressed. This information may only be used or disclosed in accordance with law, and you may be subject to penalties under law for improper use or further disclosure of the information in this e-mail and its attachments. If you have received this e-mail in error, please immediately notify the person named above by reply e-mail, and then delete the one you received.

-----------------------------------------------------------------------------
CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright (c) 2016 Cigna
==============================================================================