# Exhibit 23

# Estimated annual costs to included transgender benefits
9/23/2019

|                                                                  | **Data**       |
| ---------------------------------------------------------------- | -------------- |
| PY 2019 ADOA adult membership (18+)                              | 104,248        |
| Estimated 0.3% of adults are transgender (1)                    | 0.30%          |
| Estimated 0.3% transgender  individuals in ADOA membership       | 313            |
| Estimated Health care cost per year for transgender people (2)   | $38,500        |
| Current ADOA health benefits - average cost per adult  (3)       | $3,880         |
| Estimated additional cost per transgender person                 | $34,620        |
| Estimated additional annual costs per year                       | $10,827,164    |

Notes:

(1) https://www.cheatsheet.com/money-career/these-insurers-offer-transgender-health-care-coverage.html/
(2) https://www.jhsph.edu/news/news-releases/2015/study-paying-for-transgender-health-care-cost-effective.html
(3) Based on year to date PY 2019 medical and pharmacy claims

...

AZSTATE.151099
AZSTATE.151099

# Exhibit 24

Paul F. Eckstein (#001822)
Austin C. Yost (#034602)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
PEckstein@perkinscoie.com
AYost@perkinscoie.com
DocketPHX@perkinscoie.com

*Attorneys for Defendants Arizona Board of Regents,*
*Ron Shoopman, Larry Penley, Ram Krishna,*
*Bill Ridenour, Lyndel Manson, Karrin Taylor Robson,*
*Jay Heiler, and Fred DuVal*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Russell B. Toomey**, <br><br> Plaintiff, <br><br> v. <br><br> **State of Arizona**; **Arizona Board of Regents, d/b/a University of Arizona**, a governmental body of the State of Arizona; **Ron Shoopman**, in his official capacity as Chair of the Arizona Board of Regents; **Larry Penley**, in his official capacity as Member of the Arizona Board of Regents; **Ram Krishna**, in his official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour**, in his official capacity as Treasurer of the Arizona Board of Regents; **Lyndel Manson**, in her official capacity as Member of the Arizona Board of Regents; **Karrin Taylor Robson**, in her official capacity as Member of the Arizona Board of Regents; **Jay Heiler**, in his official capacity as Member of the Arizona Board of Regents; **Fred DuVal**, in his official | Case No. CV 19-00035-TUC-RM (LAB) <br><br> **DEFENDANTS ARIZONA BOARD OF REGENTS, RON SHOOPMAN, LARRY PENLEY, RAM KRISHNA, BILL RIDENOUR, LYNDEL MANSON, KARRIN TAYLOR ROBSON, JAY HEILER, AND FRED DUVAL'S FIFTH SUPPLEMENTAL DISCLOSURE STATEMENT** |

capacity as Member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration,

Defendants.

Pursuant to Federal Rules of Civil Procedure 26(a)(1) and 26(e)(1), as well as Mandatory Initial Discovery Pilot Project General Order 17-08, Defendants Arizona Board of Regents ("the Board"), Ron Shoopman, Larry Penley, Ram Krishna, Bill Ridenour, Lyndel Manson, Karrin Taylor Robson, Jay Heiler, and Fred DuVal (collectively, "University Defendants") provide the following disclosures concerning their claims and defenses in this action ("Supplemental Disclosure"). This Supplemental Disclosure is based on information that is reasonably available to University Defendants at this time. University Defendants make these disclosures without waiving their right to protect from disclosure any and all communications protected by the attorney-client privilege, work-product doctrine, and any other applicable privilege or discovery protection. **Additions in the text of the disclosures below are indicated in bold and underlined.**

## I.   FACTUAL BASES OF CLAIMS OR DEFENSES

This action arises out of an exclusion of insurance coverage contained in a self-funded health insurance plan ("the Plan") that the State of Arizona uses to offer healthcare coverage to State of Arizona employees and that is controlled by the Arizona Department of Administration ("ADOA"). The Plan generally offers coverage for medically necessary care and excludes coverage for, among other things, "[g]ender reassignment surgery."

Plaintiff Russell B. Toomey ("Plaintiff") is a transgender man. Plaintiff is employed by the Board as an Associate Professor at the University of Arizona. Plaintiff's health insurance coverage is offered by the State of Arizona and ADOA through the Plan. On

August 10, 2018, Plaintiff's Network Provider under the Plan, Blue Cross Blue Shield of Arizona, denied Plaintiff preauthorization for a "laparoscopic total hysterectomy with removal of tubes and ovaries surgery" purportedly on the grounds that the Plan excludes coverage for "[g]ender reassignment surgery." Plaintiff chose not to appeal his claim denial through the Plan's appeals process, but instead chose to challenge the Plan's exclusion of "[g]ender reassignment surgery" in this lawsuit.

As part of the State of Arizona, University Defendants offer the health insurance that ADOA permits them to offer. University Defendants have previously urged ADOA to remove the types of coverage exclusions requested by Plaintiff, but ADOA has not eliminated all those exclusions. That decision was in ADOA's sole control. University Defendants do not object to Plaintiff's requested injunctive relief against the State of Arizona, Andy Tobin, and Paul Shannon (collectively, "State Defendants"), but request to be dismissed from this suit because University Defendants have no reasonable choice but to offer health insurance under the Plan that ADOA provides and controls.

## II.   LEGAL THEORY ON WHICH EACH CLAIM OR DEFENSE IS BASED

Plaintiff's First Amended Complaint ("FAC") alleges two claims: (1) Plaintiff alleges that Defendants State of Arizona and the Board violated Title VII of the Civil Rights Act of 1964 because the Plan controlled by ADOA generally offers coverage for medically necessary care and excludes coverage for, among other things, "[g]ender reassignment surgery," which Plaintiff alleges is discrimination on the basis of "sex"; and (2) Plaintiff alleges that Defendants Shoopman, Penley, Krishna, Ridenour, Manson, Robson, Heiler, DuVal, Tobin, and Shannon violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because the Plan controlled by ADOA generally offers coverage for medically necessary care and excludes coverage for, among other things, "[g]ender reassignment surgery," which Plaintiff alleges is discrimination on the basis of transgender status and gender non-conformity and does not survive any level of scrutiny under the Equal Protection Clause.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.     The Court should dismiss Plaintiff's FAC because Plaintiff did not exhaust the administrative remedies required by the Plan.**

The Affordable Care Act (Public Law 111-148) amended the Public Health Services Act's ("PHSA") provisions relating to group health insurance plans, such as the Plan. PHSA regulations incorporate the claims and appeals procedures from the Employee Retirement Income Security Act ("ERISA"), including the requirement that health insurance plans provide for a "[f]ull and fair review" and abide by specific claims and appeals procedures, even when a plan is not subject to ERISA. *See* 45 C.F.R. § 147.136(b)(2)(ii)(C); 29 C.F.R. § 2560.503-1(h)(2). In short, ERISA and non-ERISA health insurance plans must provide a "[f]ull and fair review" process for a member of the plan to appeal a claim denial. *See id.*

In line with PHSA regulations, the Plan contains a detailed process for a full and fair review of any adverse benefit decision. First, a member of the Plan must file a Level 1 appeal "within 180 days from the claim denial date." (Doc. 1, Exh. A at 72). Then, the process includes a Level 2 and Level 3 appeal. (*Id.*). An Independent Review Organization ("IRO") reviews a member's Level 3 appeal, and in doing so, the IRO is required to consider the "terms of [the] Plan to ensure that the IRO's decision is not contrary to the terms of the Plan, *unless the terms are inconsistent with applicable law*." (*Id.* at 72–73) (emphasis added). As a result, a member of the Plan has the opportunity, and the obligation, to give the Plan a chance to review a claim denial and to approve the claim if denying it was "inconsistent with applicable law." (*Id.* at 73). A member's failure to exhaust the Plan's claims and appeals procedures bars a suit to recover under the Plan. (*Id.* at 74). This exhaustion requirement is evident by the Plan's plain terms: "No action at law or in equity can be brought to recover on this Plan until the appeals procedure has been exhausted as described in this Plan." (*Id.*).

Plaintiff's health insurance coverage is offered by the State of Arizona and ADOA through the Plan. (Doc. 1 ¶ 32). Plaintiff's Network Provider under the Plan, Blue Cross Blue Shield of Arizona, denied Plaintiff preauthorization for a "laparoscopic total hysterectomy with removal of tubes and ovaries surgery" on August 10, 2018. (Doc. 1, Exh.

G at 1). Under the Plan's terms, therefore, Plaintiff was required to file a Level 1 appeal from that claim denial within 180 days from August 10, 2018. (Doc. 1, Exh. A at 72). Plaintiff did not file a Level 1 appeal on or before February 6, 2019, which is the date that is 180 days from August 10, 2018. Although Plaintiff could have appealed his claim denial to a Level 3 appeal that would have required the IRO to approve Plaintiff's claim if denying it was "inconsistent with applicable law," Plaintiff chose not to appeal his claim denial. (*Id.* at 73). Thus, because Plaintiff did not exhaust the Plan's appeals procedure, Plaintiff cannot bring this lawsuit. (*Id.* at 74); *see also, e.g.*, *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998) (noting that, although "ERISA contains no explicit exhaustion requirement," courts have observed that "exhaustion of administrative (i.e., company- or plan-provided) remedies is an implicit prerequisite to seeking judicial relief") (internal quotation marks and citations omitted); *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980) (concluding, based on ERISA's text and legislative history, that "sound policy requires the application of the exhaustion doctrine" under ERISA).

> **B.    University Defendants do not have the reasonable authority to offer the coverage and remove the Plan exclusion requested by Plaintiff.**

ADOA is required to allow the Board to participate in ADOA's health insurance plan, but the Board's "participation is only allowed in a health plan that is offered by" ADOA. A.R.S. § 38-651(J); *see also* A.R.S. § 38-656(A) (authorizing the Board to include "its employees and spouses and the dependents of its employees" in the ADOA health insurance plan when the Board determines that ADOA health insurance coverage is "necessary or desirable and in the best interests of its employees"); A.R.S. § 38-656(B) (providing that, when the Board participates in ADOA's health insurance plan, ADOA's plan "shall be the only health . . . insurance coverage offered to" the Board's employees). Further, the Board's participation in ADOA's health insurance plan is explicitly conditioned on the Board "agree[ing] to accept the benefit level, plan design, insurance providers, premium level and other terms and conditions determined by" ADOA. A.R.S. § 38-656(E). Arizona law also requires the Board to agree to "accept any other contractual arrangements

made by [ADOA] with health . . . insurance providers." *Id.* Finally, when the Board participates in ADOA's health insurance plan, Arizona law requires the Board to offer ADOA's insurance coverage "for at least two years." A.R.S. § 38-656(D).

University Defendants do not object to offering the insurance coverage requested by Plaintiff, but because Arizona law requires University Defendants to "accept the benefit level, plan design, insurance providers, premium level and other terms and conditions determined by" ADOA, A.R.S. § 38-656(E), University Defendants do not have the reasonable authority to offer the coverage and remove the Plan exclusion requested by Plaintiff. As part of the State of Arizona plan, University Defendants must offer the health insurance that ADOA permits them to offer. University Defendants have previously urged ADOA to remove the types of coverage exclusions requested by Plaintiff, but ADOA has not eliminated all those exclusions. That decision was in ADOA's sole control. University Defendants do not object to Plaintiff's requested injunctive relief against State Defendants, but request to be dismissed from this suit because University Defendants have no reasonable choice but to offer insurance under the Plan that ADOA provides and controls.

## III.   PERSONS LIKELY TO HAVE DISCOVERABLE INFORMATION

Based on the information available to them as of the date of this Supplemental Disclosure, University Defendants believe that the following individuals either have or may have knowledge or information relevant to the matters at issue. University Defendants incorporate by reference the persons who may have knowledge or information identified by Plaintiff and State Defendants and reserve the right to supplement this list as discovery is conducted. In addition, the general topics of information identified below do not constitute an exhaustive list of the matters to which each person may have discoverable information. University Defendants reserve the right to request and use any discoverable information from any individual, whether or not relating to the subjects specifically identified.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.      Russell B. Toomey, Ph.D.**
      c/o Plaintiff Russell B. Toomey's Counsel

As Plaintiff, Dr. Toomey has knowledge regarding the allegations in the FAC and Plaintiff's requested relief.

**2.      Gilbert Davidson**
      c/o State Defendants' Counsel

On information and belief, Mr. Davidson is a former Interim Director of ADOA and, as such, has knowledge regarding the allegations in the FAC and Plaintiff's requested relief.

**3.      Elizabeth Thorson**
      c/o State Defendants' Counsel

On information and belief, Ms. Thorson is a former Interim Director of ADOA and, as such, has knowledge regarding the allegations in the FAC and Plaintiff's requested relief.

**4.      Andy Tobin**
      c/o State Defendants' Counsel

On information and belief, Mr. Tobin is a defendant because he is the Director of ADOA and, as such, has knowledge regarding the allegations in the FAC and Plaintiff's requested relief.

**5.      Paul Shannon**
      c/o State Defendants' Counsel

On information and belief, Mr. Shannon is a defendant because he is the Acting Assistant Director of the Benefit Services Division for ADOA and, as such, has knowledge regarding the allegations in the FAC and Plaintiff's requested relief.

**6.      Helena Rodrigues, Ph.D.**
      c/o Perkins Coie LLP
      2901 North Central Avenue, Suite 2000
      Phoenix, Arizona 85012-2788

Dr. Rodrigues is the Associate Vice President for Human Resources ("HR") at the University of Arizona. On information and belief, Dr. Rodrigues has knowledge about the University of Arizona HR's communications with University of Arizona employees and others about the Plan, including ADOA representatives.

1
2
3

    **7.**    **Allison Vaillancourt, Ph.D.**
           c/o Perkins Coie LLP
           2901 North Central Avenue, Suite 2000
           Phoenix, Arizona 85012-2788

4
5
6
7
8

    Dr. Vaillancourt is the Vice President for Business Affairs and HR at the University of Arizona. On information and belief, Dr. Vaillancourt has general knowledge about the University of Arizona's healthcare benefits offered to University of Arizona employees as well as the University of Arizona HR's communications with University of Arizona employees and others about the Plan.

9
10
11

    **8.**    **Mary Beth Tucker**
           c/o Perkins Coie LLP
           2901 North Central Avenue, Suite 2000
           Phoenix, Arizona 85012-2788

12
13
14
15
16
17

    Ms. Tucker is the Assistant Vice President for HR at the University of Arizona. Ms. Tucker was the Director of the University of Arizona's Office of Institutional Equity ("OIE") as well as the University of Arizona's Title IX Coordinator. On information and belief, Ms. Tucker has knowledge about OIE's administrative review of the Plan under the University of Arizona's Nondiscrimination and Anti-Harassment Policy and the University of Arizona HR's and OIE's communications with University of Arizona employees.

18
19
20

    **9.**    **Celina Ramirez**
           c/o Perkins Coie LLP
           2901 North Central Avenue, Suite 2000
           Phoenix, Arizona 85012-2788

21
22
23

    Ms. Ramirez is the Chief Compliance Officer at the University of Arizona. On information and belief, Ms. Ramirez has knowledge about the University of Arizona's communications with University of Arizona employees about the Plan.

24
25
26

    **10.**    **Andrew Comrie, Ph.D.**
           c/o Perkins Coie LLP
           2901 North Central Avenue, Suite 2000
           Phoenix, Arizona 85012-2788

27
28

    Dr. Comrie is a Professor in the School of Geography and Development at the University of Arizona. From July 3, 2012 through July 1, 2018, Dr. Comrie was the

University of Arizona's Senior Vice President of Faculty Affairs and Provost. On information and belief, Dr. Comrie has knowledge about his communications with constituent groups affected by the Plan.

      **11.**    **Gregg Goldman**
           c/o Perkins Coie LLP
           2901 North Central Avenue, Suite 2000
           Phoenix, Arizona 85012-2788

Mr. Goldman was a Senior Vice President for Business Affairs and Chief Financial Officer at the University of Arizona. On information and belief, Mr. Goldman has knowledge about his communications with constituent groups affected by the Plan as well as the University of Arizona's communications with State of Arizona representatives to remove the Plan's prior exclusions for transgender medical services.

      **12.**    **Janet Bostwick**
           c/o Perkins Coie LLP
           2901 North Central Avenue, Suite 2000
           Phoenix, Arizona 85012-2788

Ms. Bostwick was a Senior Compliance Consultant with the OIE at the University of Arizona. On information and belief, Ms. Bostwick has knowledge about OIE's administrative review of the Plan under the University of Arizona's Nondiscrimination and Anti-Harassment Policy.

      **13.**    **Sabrina Vazquez**
           c/o Perkins Coie LLP
           2901 North Central Avenue, Suite 2000
           Phoenix, Arizona 85012-2788

Ms. Vazquez is the Senior Director of State Relations in Government and Community Relations at the University of Arizona. On information and belief, Ms. Vazquez has knowledge about the Board's efforts to withdraw Arizona's public universities from ADOA's healthcare plan.

14.  **Kody Kelleher**
     c/o Perkins Coie LLP
     2901 North Central Avenue, Suite 2000
     Phoenix, Arizona 85012-2788

Mr. Kelleher is currently the Senior Advisor for Government and Community Relations at the University of Arizona. He is the past Director of Government Affairs and an Assistant Vice President of Government Affairs for the Board, where he was employed from November 2014 to late 2017. On information and belief, Mr. Kelleher has knowledge about the Board's efforts to withdraw Arizona's public universities from ADOA's healthcare plan.

15.  **<u>Judith Cato</u>**
     **<u>c/o Perkins Coie LLP</u>**
     **<u>2901 North Central Avenue, Suite 2000</u>**
     **<u>Phoenix, Arizona 85012-2788</u>**

**<u>Ms. Cato is the Benefits Director at Arizona State University. On information and belief, Ms. Cato has general knowledge about the healthcare benefits that are offered to Arizona State University employees and Arizona State University's communications with its employees regarding the Plan.</u>**

## IV.   PERSONS WHO HAVE GIVEN STATEMENTS

University Defendants are aware of the following people who have made statements regarding the claims or defenses in this case. Discovery in this case is only beginning, and so University Defendants reserve the right to update this list as discovery progresses.

1.  **Russell B. Toomey**
    c/o Plaintiff Russell B. Toomey's Counsel

Mr. Toomey filed an Equal Employment Opportunity Commission Charge ("EEOC") against the Board in 2018. Further, Mr. Toomey made statements regarding the claims or defenses in this case on January 24, 2019 in a published entry on the American Civil Liberties Union ("ACLU") website titled, "Arizona Provides Me Unequal Healthcare Because I'm Transgender."

## V.   DOCUMENTS AND OTHER EVIDENCE

Based on the information available to them as of the date of this Supplemental Disclosure, University Defendants believe that the following documents and other evidence may contain information relevant to the matters at issue in this case. University Defendants incorporate by reference the documents and other evidence identified by Plaintiff and State Defendants and reserve the right to supplement this list as discovery is conducted.

1.   The Plan—*i.e.*, the self-funded health insurance plan that the State of Arizona uses to offer healthcare coverage to State of Arizona employees and that is controlled by ADOA. [ABOR-TOOMEY000709–000817]

2.   Blue Cross Blue Shield of Arizona's August 10, 2018 letter to Plaintiff regarding the denial of preauthorization for "a laparoscopic total hysterectomy with removal of tubes and ovaries surgery." [ABOR-TOOMEY000705–000708]

3.   Plaintiff's Charge of Discrimination document that he filed with the EEOC regarding the Board. [ABOR-TOOMEY000818–000819]

4.   The U.S. Department of Justice's right-to-sue letter to Plaintiff regarding the Board. [ABOR-TOOMEY000704]

5.   Plaintiff's January 24, 2019 published entry on the ACLU website titled, "Arizona Provides Me Unequal Healthcare Because I'm Transgender." [ABOR-TOOMEY000820–821]

6.   Correspondence and/or documents created by, sent to, received by, or circulated between and among, University Defendants, including University of Arizona employees, regarding the Plan's exclusion for "[g]ender reassignment surgery." [ABOR-TOOMEY000001–000703, ABOR-TOOMEY000822–001520, ABOR-TOOMEY001521–003218, ABOR-TOOMEY000872–000875, ABOR-TOOMEY000947, ABOR-TOOMEY000975–000976]

7.   **Correspondence and/or documents created by, sent to, received by, or circulated between and among, University Defendants, including Arizona State University employees, regarding the Plan's exclusion for "[g]ender reassignment surgery." [ABOR-TOOMEY003219–003444]**

8.   Any documents attached to the pleadings or other filings in this case.

Some of the foregoing documents have already been attached to pleadings or other filings filed by one or more of the parties in this matter and are therefore believed to be already in possession of the parties. Additional documents in these categories in University

Defendants' possession, custody, or control that are not already in possession of the other parties, and that can be located based on a reasonable, good faith search, will be produced within a reasonable time.

With respect to electronically stored information, University Defendants will meet and confer with Plaintiff and State Defendants pursuant to the Mandatory Initial Discovery Pilot Project's orders to agree on matters relating to its disclosure and production, taking into account the proportional needs and reasonable accessibility limitations contained in Federal Rules of Civil Procedure 26(b)(1) and (2).

## VI.   COMPUTATION AND MEASURE OF DAMAGES

Plaintiff did not request any damages in his FAC. And in any event, University Defendants maintain that Plaintiff is not entitled to any damages or other recovery from University Defendants for any claims alleged in this action. At this time, University Defendants are not asserting any affirmative claim for damages, except the recovery of their attorneys' fees and costs as requested in their Answer to Plaintiff's FAC.

## VII.   RELEVANT INSURANCE AGREEMENTS

State Risk has denied coverage (or determined that it was not obligated to provide coverage) because Plaintiff only requested declaratory and injunctive relief in his FAC. University Defendants are covered by an excess insurance plan issued by United Educators, but University Defendants are still researching whether the United Educators policy will provide coverage in this case.

-12-

1 June 10, 2020

**PERKINS COIE LLP**

2

3 By: *s/ Paul F. Eckstein*
        Paul F. Eckstein

4       Austin C. Yost
        2901 North Central Avenue, Suite 2000

5       Phoenix, AZ 85012

6 *Attorneys for Defendants Arizona Board of*

7 *Regents, Ron Shoopman, Larry Penley, Ram*
   *Krishna, Bill Ridenour, Lyndel Manson, Karrin*

8 *Taylor Robson, Jay Heiler, and Fred DuVal*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Certificate of Service**

I hereby certify that, on June 10, 2020, I e-mailed a copy of the foregoing to:

| | |
|---|---|
| Wesley R. Powell<br>Matthew S. Friemuth<br>Nicholas Reddick<br>Kristen Killian<br>**Willkie Farr & Gallagher LLP**<br>787 Seventh Avenue<br>New York, NY 10019<br>wpowell@willkie.com<br>mfriemuth@willkie.com<br>nreddick@willkie.com<br>kkillian@willkie.com | R. Shawn Oller<br>Peter C. Prynkiewicz<br>**Littler Mendelson, P.C.**<br>2425 East Camelback Road, Suite 900<br>Phoenix, AZ 85016<br>soller@littler.com<br>pprynkiewicz@littler.com<br><br>*Attorneys for Defendants State of Arizona,*<br>*Andy Tobin, and Paul Shannon* |
| Joshua A. Block<br>Leslie Cooper<br>**American Civil Liberties Union**<br>**Foundation**<br>125 Broad Street, Floor 18<br>New York, NY 10004<br>jblock@aclu.org<br>lcooper@aclu.org | |
| Christine K. Wee<br>Victoria Lopez<br>**ACLU Foundation of Arizona**<br>3707 North 7th Street, Suite 235<br>Phoenix, AZ 85014<br>cwee@acluaz.org<br>vlopez@acluaz.org<br><br>*Attorneys for Plaintiff Russell Toomey* | |

*s/ Clair Wendt*

-14-

# Exhibit 25

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

**Arizona Civil Rights Division and EEOC**
State or local Agency, if any

| Name (*Indicate Mr., Ms., Mrs.*)<br>Mr. Russell B. Toomey, Ph.D. | Home Phone No. (*Include Area Code*)<br>(520) 429-6496 | |
|---|---|---|
| STREET ADDRESS<br>5901 E. Ryan Place | CITY, STATE AND ZIP CODE<br>Tucson, Arizona 85712 | Date of Birth<br>09/28/1981 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>The Board of Regents of the University of Arizona | No. Employees, Members<br>500 + | Phone No. (*Include Area Code*)<br>(520) 621-2211 |
|---|---|---|
| Street Address                  City, State and ZIP Code<br>Arizona Board of Regents, Attention Secretary, 2020 N. Central Ave., Suite 230, Phoenix, AZ 85004-4593 | | |
| Name | No. Employees, Members | Phone No. (*Include Area Code*) |
| Street Address                  City, State and ZIP Code | | |

| CAUSE OF DISCRIMINATION BASED ON (*Check appropriate box(es)*) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (*Specify*) | EARLIEST          LATEST<br>7/19/18          7/19/18<br>X CONTINUING ACTION |

THE PARTICULARS ARE (*If additional space is needed, attach extra sheet(s)*):

I have been employed by The Board of Regents of the University of Arizona ("U of A") since August 17, 2015, most recently as an Associate Professor. I have received health insurance through the U of A since August 17, 2015. The U of A provides its employees with health insurance through a self-funded health plan controlled by the Arizona Department of Administration ("the Plan"). The Plan generally provides coverage for medically necessary care, which the plan defines as "services, supplies and prescriptions, meeting all of the following criteria": (1) ordered by a physician; (2) not more extensive than required to meet the basic health needs; (3) consistent with the diagnosis of the condition for which they are being utilized; (4) consistent in type, frequency and duration of treatment with scientifically based guidelines in the medical-scientific community in the United States of America; (5) required for purposes other than the comfort and convenience of the patient or provider; (6) rendered in the least intensive setting that is appropriate for their delivery; and (7) have demonstrated medical value.

I am a transgender male, which means that my gender identity is male, but the sex I was assigned at birth was female. I have been living as a male since 2003, when I legally changed my name, began dressing and living as a man, and began taking gender affirming hormones. I have consistently received hormone therapy since 2003. I received gender affirming "top" surgery in 2004. Despite these actions, I suffer from anxiety, depression, and distress due to my experience of dysphoria. I have been in counseling for several years and have been diagnosed with Gender Dysphoria.

Based on this diagnosis, I met with Dr. Tiffany Karsten, an OB/GYN, in June 2018. Dr. Karsten recommended that I have a hysterectomy in order to treat my Gender Dysphoria. Dr. Karsten's office then submitted a preauthorization request for the hysterectomy to the health insurance provided by the Plan, Blue Cross Blue Shield of Arizona ("BCBSAZ"). Dr. Karsten's office left me a voicemail about the preauthorization and told me that based on the information they received, BCBSAZ did not require preauthorization for the hysterectomy and that the surgery would be covered 100% after a $100.00 co-pay. However, I later called BCBSAZ and asked them what the coverage would be if the hysterectomy was submitted with a code for Gender Dysphoria. I was told that there would be $0 in coverage and that the entire procedure would be out of pocket.

Surgical care to treat Gender Dysphoria (sometimes referred to as "transition related surgery," "gender confirming surgery," or "gender reassignment surgery") can be medically necessary treatment for Gender Dysphoria under the Plan's generally applicable criteria. The Plan provides coverage for hysterectomies when prescribed as medically necessary treatment for medical conditions, however the Plan categorically excludes coverage for the same hysterectomies when they are medically necessary to treat Gender Dysphoria. The Plan's exclusion is discriminatory and subjects me to different treatment on the basis of sex.

907297.1

TOOMEY000378

I believe I have been discriminated against due to my sex in violation of Title VII of The Civil Rights Act, as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – (*When necessary for State and Local Requirements*) |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Date                              Charging Party (*Signature*)<br>9/15/18 | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Month, day and year) |

907297.1

TOOMEY000379

Exhibit 26

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Russell B. Toomey,       )Case No.CV19-0035-TUC-RM (LAB)
                         )
         Plaintiff,    )
                         )
            vs.      )
                         )
State of Arizona, et al.,)
                         )
         Defendants.   )
_____)

DEPOSITION OF RUSSELL B. TOOMEY, Ph.D.

Phoenix, Arizona
May 26, 2021
9:00 a.m.

REPORTED BY:
JENNIFER HANSSEN, RPR
Certified Reporter
Certificate No. 50165

PREPARED FOR:
CONDENSED/ASCII

(Certified Copy)

24

1    around gender -- transgender-related care.

2       Q.    Did Kent State provide any benefits for

3    transgender-related care?

4       A.    I cannot recall.

5       Q.    But you do recall that it prohibited any gender

6    reassignment surgery?

7       A.    Yes.

8       Q.    When you went to see Dr. Karsten and she

9    recommended a hysterectomy for you, did she schedule you

10   for a hysterectomy?

11      A.    I did receive a call for scheduling, yes.

12      Q.    And did you schedule?

13      A.    No.

14      Q.    Why not?

15      A.    The correspondence I received suggested that I

16   would only have a $100 co-pay and so I decided to call

17   the insurance company to confirm that prior to

18   scheduling.

19      Q.    So was it your understanding that Dr. Karsten's

20   office reached out to your carrier for precertification

21   on your behalf?

22      A.    Yes.

23      Q.    And was that BlueCross/BlueShield?

24      A.    Yes.

25      Q.    And did Dr. Karsten's office inform you that

1  you had been approved for coverage for the hysterectomy

2  and you would be required to pay out of pocket a $100

3  co-pay?

4      A.    They stated that my insurance company did not

5  require preauthorization.

6      Q.    And they informed you that they were informed

7  you would be required to only pay a $100 co-pay;

8  correct?

9      A.    Yes.

10     Q.    Were you surprised when you received that

11 information?

12     A.    Yes.

13     Q.    Were you happy?

14     A.    Yes.

15     Q.    Yet you didn't go forward to schedule the

16 hysterectomy?

17     A.    No.

18     Q.    And was that because you were expecting a

19 denial of coverage?

20     A.    Yes.

21     Q.    And you thought the denial of coverage would be

22 helpful for your lawsuit?

23     A.    No.

24     Q.    Did you think it was necessary for your

25 lawsuit?

26

1    A.    Yes.

2    Q.    And you wanted to move forward with the

3  lawsuit, didn't you?

4    A.    I don't feel like I can answer a yes or no

5  answer to that because I knew that I would be getting a

6  bill down the road for the hysterectomy if I proceeded.

7    Q.    And how did you know that?

8    A.    Because it's listed as an exclusion.

9    Q.    You called BlueCross/BlueShield; correct?

10    A.    I did.

11    Q.    When you first called, they told you that you

12  were approved for the procedure, didn't they?

13    A.    I can't recall the specifics of that

14  conversation.

15    Q.    You're the one that brought to

16  BlueCross/BlueShield's attention that you were getting a

17  hysterectomy for purposes of gender dysphoria; right?

18    A.    I believe that my doctor had sent over the

19  code.

20    Q.    You believe your doctor sent the code over for

21  gender dysphoria?

22    A.    Yes.

23    Q.    And why do you believe that?

24    A.    Because that was the reason for the procedure.

25    Q.    Do you recall you providing that information to

1   BlueCross/BlueShield?

2      A.     I recall asking them to check that.

3      Q.     And why did you ask them to check it?

4      A.     Because I was very fearful of, in the end,

5   getting a very, very large medical bill at the end of

6   surgery.

7      Q.     Did you also ask them to check it because you

8   wanted to have in hand a denial of benefits letter?

9      A.     No.

10     Q.     Did you request such a letter from

11   BlueCross/BlueShield?

12     A.     I cannot recall.

13     Q.     Did anyone instruct you to contact

14   BlueCross/BlueShield after your doctor's office told you

15   that the pay would simply be $100 out of pocket?

16     A.     I cannot recall.

17     Q.     You don't remember?

18     A.     (Shakes head.)

19     Q.     So you don't remember if it was your idea or

20   someone else's?

21     A.     I believe it was mine.

22     Q.     You recorded the conversation with BlueCross;

23   correct?

24     A.     I did.

25     Q.     Did anyone recommend that you do that?

28

1    A.    No.

2    Q.    Why did you record it?

3    A.    I wanted to have proof for myself going forward

4  that it would be denied.

5    Q.    And when you say proof for yourself, do you

6  mean for purposes of the lawsuit that brings us here

7  today?

8    A.    Yes.

9    Q.    How did you do the recording?

10   A.    I recorded on my cellphone.

11   Q.    Through an app or how did you do it?

12   A.    Through an app.

13   Q.    What app did you use?

14   A.    I think it was the basic, like, recording app

15  that was on all phones at that time.

16   Q.    Okay.  And have you provided that recording to

17  anyone?

18   A.    Yes.

19   Q.    Who?

20   A.    My legal team.

21   Q.    And when did you provide it to them?

22   A.    In the past few weeks.

23   Q.    So you had it on your -- did you have it on

24  your phone or somewhere else?

25   A.    I had it saved somewhere else.

# Exhibit 27

1  FENNEMORE CRAIG, P.C.
   Timothy J. Berg (No. 004170)
2  Amy Abdo (No. 016346)
   Ryan Curtis (No. 025133)
3  Shannon Cohan (No. 034429)
   2394 E. Camelback Road
4  Suite 600
   Phoenix, Arizona  85016
5  Telephone:  (602) 916-5000
   Email:  tberg@fennemorelaw.com
6  Email:  amy@fennemorelaw.com
   Email:  rcurtis@fennemorelaw.com
7  Email:  scohan@fennemorelaw.com

8  *Attorneys for Defendants*
   *State of Arizona, Andy Tobin, and Paul Shannon*
9

10              UNITED STATES DISTRICT COURT

11                  DISTRICT OF ARIZONA

12  Russell B. Toomey,                    No. 4:19-cv-00035

13              Plaintiff,                 **DEFENDANTS STATE OF
                                           ARIZONA'S, ANDY TOBIN'S, AND
14       v.                                PAUL SHANNON'S FIRST
                                           SUPPLEMENTAL RESPONSES TO
15  State of Arizona; Arizona Board of Regents   PLAINTIFF'S FIRST SET OF
    d/b/a University of Arizona, a         INTERROGATORIES**
16  governmental body of the State of Arizona;
    Ron Shoopman, in his official capacity as
17  Chair of the Arizona Board of Regents;
    Larry Penley, in his official capacity as
18  Member of the Arizona Board of Regents;
    Ram Krishna, in his official capacity as
19  Secretary of the Arizona Board of Regents;
    Bill Ridenour, in his official capacity as
20  Treasurer of the Arizona Board of Regents;
    Lyndel Manson, in her official capacity as
21  Member of the Arizona Board of Regents;
    Karrin Taylor Robson, in her official
22  capacity as Member of the Arizona Board
    of Regents; Jay Heiler, in his official
23  capacity as Member of the Arizona Board
    of Regents; Fred Duval, in his official
24  capacity as Member of the Arizona Board
    of Regents; Andy Tobin, in his official
25  capacity as Director of the Arizona
    Department of Administration; Paul
26

FENNEMORE CRAIG, P.C.

PHOENIX

Shannon, in his official capacity as Acting
Assistant Director of the Benefits Services
Division of the Arizona Department of
Administration,

              Defendants.

Propounding Party:  Russell B. Toomey

Answering Parties:  State of Arizona, Andy Tobin, and Paul Shannon

Set No.:           One

## GENERAL STATEMENT AND OBJECTIONS

1.      Defendants object to each interrogatory to the extent that it is vague and/or ambiguous and agrees to respond to Plaintiff's interrogatories based solely on their interpretation of any vague or ambiguous language.

2.      Defendants object to each interrogatory to the extent that it is overly broad, unduly burdensome, or oppressive.

3.      Defendants object to each interrogatory to the extent that it seeks confidential, proprietary, private, or privileged information and will respond to any such interrogatory, if otherwise discoverable, after the parties have agreed to a protective order.

4.      Defendants object to each interrogatory to the extent that it seeks information that is irrelevant to Plaintiff's claims or Defendants' defenses and is not reasonably calculated to lead to the discovery of admissible evidence.

5.      Defendants object to each interrogatory to the extent that it requires any action or response beyond that required by the Federal Rules of Civil Procedure, the Scheduling Order, or the Local Rules.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify and describe all reasons why the State of Arizona's self-funded health plan controlled by the Arizona Department of Administration (the "Plan") excludes coverage for "[g]ender reassignment surgery" (the "Challenged

Exclusion") including, but not limited to, (a) each and every State or governmental interest that you contend is advanced by the exclusion, (b) a detailed explanation for why you contend that the exclusion furthers that state interest, and (c) all facts in support of your explanation.

**ANSWER**:  The State of Arizona's self-funded health plan excludes coverage for gender reassignment surgery because the State concluded, under the law, that it was not legally required to change its health plan to provide such coverage under either Title VII of the Civil Rights Act or under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Specifically, prior to the Supreme Court's ruling in *Bostock v. Clayton County*, Title VII protections on the basis of sex had not been applied to individuals based on their sexual orientation or transgender status. Further, rules promulgated by the Department of Health and Human Services ("HHS") regarding nondiscrimination provisions under Section 1557 of the Affordable Care Act prohibited blanket exclusions of all treatments of gender dysphoria, but did not require plans subject to the law to cover all treatments for gender dysphoria or gender transition services.  The legal advice that the State received regarding this issue is covered by the attorney-client privilege.

The State or governmental interests advanced by the exclusion are cost containment and reducing health care costs.  The State gathered information from private insurers and public entities who did provide coverage for gender reassignment surgery in an effort to determine how its own health care costs would be impacted.  Although the cost estimates varied, they unquestionably showed that removing the exclusion for gender reassignment surgery would increase costs and that such increases could be significant.

**FIRST SUPPLEMENTAL ANSWER**:  At some point prior to 2005, the State of Arizona moved its healthcare coverage for employees to a self-funded health plan.  At that time, the State maintained the same plan documents, including the same exclusions, as was

utilized by the prior insurance providers.  The plan documents included an exclusion for "transsexual surgery including medical or psychological counseling and hormonal therapy in preparation for, or subsequent to, any such surgery."

**INTERROGATORY NO. 2:**  Identify all persons with knowledge of the reasons why the Plan excludes coverage for ""[g]ender reassignment surgery," and state what each such person knows.

**ANSWER**:  Defendants object to this interrogatory because it seeks information covered by the attorney-client privilege. Subject to and without waiving this objection, Defendants state that Michael T. Liburdi, the former General Counsel for the Office of the Arizona Governor, John M. Fry of the Arizona Attorney General's Office, Nicole A. Ong, the former General Counsel of the ADOA, Christina Corieri, a licensed attorney and Senior Policy Advisor Office of the Arizona Governor, Marie Isaacson, the former Director of the Benefits Services Division of the ADOA, and Scott Bender, the Plan Administrator for the ADOA have knowledge of why the Plan excludes coverage for gender reassignment surgery as described in the response to Interrogatory No. 1 above.  ADOA also received attorney-client privileged legal advice from Ryan C. Curtis at Fennemore Craig, P.C., as well as now former Fennemore Craig attorney Erwin Kratz.

**INTERROGATORY NO. 3:**  Identify all persons with knowledge of the genesis, formulation, adoption, maintenance, or continuation of (a) the Challenged Exclusion and (b) any earlier versions of the exclusion before the current language was adopted, and state what each such person knows.

**ANSWER**:  Defendants object to this interrogatory because it seeks information covered by the attorney-client privilege. Subject to and without waiving this objection, Defendants state that Michael T. Liburdi, the former General Counsel for the Office of the Arizona Governor, John M. Fry of the Arizona Attorney General's Office, Nicole A. Ong, the former General Counsel of the ADOA, Christina Corieri, Senior Policy Advisor Office

of the Arizona Governor, Marie Isaacson, the former Director of the Benefits Services Division of the ADOA, and Scott Bender, the Plan Administrator for the ADOA have knowledge regarding the Challenged Exclusion.   ADOA also received attorney-client privileged legal advice from Ryan C. Curtis at Fennemore Craig, P.C., as well as now former Fennemore Craig attorney Erwin Kratz.

**INTERROGATORY NO. 4:**  Identify all persons who participated in formulating, adopting, maintaining, reviewing, approving, or deciding to continue the exclusion of coverage for ""[g]ender reassignment surgery" from the Plan, including any experts consulted, and state what each such person knows.

**ANSWER**:  Defendants object to this interrogatory because it seeks information covered by the attorney-client privilege. Subject to and without waiving this objection, Defendants state that Michael T. Liburdi, the former General Counsel for the Office of the Arizona Governor, John M. Fry of the Arizona Attorney General's Office, Nicole A. Ong, the former General Counsel of the ADOA, Christina Corieri, Senior Policy Advisor Office of the Arizona Governor, Marie Isaacson, the former Director of the Benefits Services Division of the ADOA, and Paul Shannon, the Director of the Benefits Services Division of the ADOA participated in these decisions.

**INTERROGATORY NO. 5:**  Identify all persons who assisted in preparing the answers to these Interrogatories or provided information contained in the answers, and state his or her title, duties, role in preparing the answers, and the interrogatory answer(s) to which he or she provided information or assistance. This identification should also indicate whether the information provided is within his or her knowledge or was obtained from some other person or source; if the information was obtained from another person or source, that person or source should also be identified.

**ANSWER**:  Defendants object to this interrogatory because it violates the work-product doctrine as set forth in *Hickman v. Taylor*, 329 U.S. 495 (1947).  Several courts

have held that the work product doctrine covers various aspects of an attorney's investigation, including the witnesses who were interviewed, how long they were interviewed, and when they were interviewed. *See, e.g., Commonwealth of Massachusetts v. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149, 153 (D. Mass. 1986) (holding it was improper to seek disclosure of "the names of persons interviewed by an adverse party's attorney together with the dates and places of such interviews."); *Board of Ed. of Evanston TP v. Admiral Heating*, 104 F.R.D. 23, 32 (N.D. Ill. 1984) (to tell plaintiffs whom defendants have interviewed, where and when such interviews took place, and whether or not a record was made is to give plaintiffs no more knowledge of substantive relevant facts, but rather to afford them the potential for significant insights into the defendant lawyers' preparation of their case and their mental processes); *Besley-Welles Corp. v. Balax, Inc.*, 43 F.R.D. 368, 371 (E.D. Wis. 1968) (interrogatory seeking statement as to adverse party's efforts to locate witnesses goes to attorney's preparation for trial and comes under the *Hickman* rule that gives an attorney's work product qualified immunity from discovery); *Uinta Oil Refining Co. v. Continental Oil Co.*, 226 F. Supp. 495, 506 (D. Utah 1964) (sustaining objection to interrogatory seeking names of all persons from whom plaintiffs had taken or requested statements, explaining that "[t]he detailed pattern of investigation and exploration in and of itself is not a proper subject for discovery.").

**INTERROGATORY NO. 6:**   Identify all public or non-public meetings of Defendants in which the Challenged Exclusion and/or the Plan's coverage for medical or surgical treatments or services to treat gender dysphoria (or "transition-related care") was discussed, listing the date of each meeting, the nature of each meeting, and the attendees of the meeting; and identifying any documents or other materials relating to those meetings in Defendants' custody or control.

**ANSWER**:   Defendants object to this interrogatory because it seeks information covered by the attorney-client privilege. Subject to and without waiving this objection,

1    Defendants state that the individuals identified in response to Interrogatory No. 2 who were

2    employees of ADOA or the Governor's Office above held meetings and discussions

3    regarding the Plan's surgical treatments or services to treat gender dysphoria between June

4    and November 2016, some of which included the participation of outside counsel from

5    Fennemore Craig, P.C.  Defendants possess documents regarding these meetings that will

6    be identified in their privilege log.

7        **FIRST SUPPLEMENTAL ANSWER**:  No meetings were held regarding the prior

8    iteration of the exclusion for gender reassignment surgery.  The exclusion was adopted

9    when the State of Arizona transferred its healthcare coverage to a self-funded health plan.

10   However, at that time, the State merely continued the coverages and exclusions utilized by

11   its prior insurance providers.  No known meetings were held to discuss the transgender care

12   exclusion until the issuance of Patient Protection and Affordable Care Act ("ACA") Rule

13   1557.

14       **INTERROGATORY NO. 7:**   Identify all research, studies, data, reports,

15   publications, testimony, or other documents considered, reviewed, or relied on by

16   Defendants relating to the Challenged Exclusion, including identifying the date or

17   approximate date of consideration, review, or reliance by the Arizona Board of Regents

18   ("ABOR") and the Arizona Department of Administration (the "ADOA"); and the ADOA

19   and ABOR employee(s) who considered, reviewed, or relied on such documents and their

20   role(s). A complete answer to this interrogatory should include documents relating to the

21   medical necessity, safety, and efficacy (including whether a procedure is deemed

22   experimental) of excluded treatments and services; the public health effects of enforcing,

23   amending, or eliminating the Challenged Exclusion; and the cost/fiscal impact to ADOA or

24   ABOR of enforcing, amending, or eliminating the Challenged Exclusion.

25       **ANSWER**:  Defendants considered a Memorandum from Marie Isaacson to Mike

26   Liburdi, General Counsel at the Governor's Office dated August 3, 2016 regarding

1   Affordable Care Act § 1557, and a Memorandum regarding Non-discrimination—

2   Transgender Coverage and a Memorandum from outside legal counsel at Fennemore Craig

3   to Marie Isaacson dated July 20, 2016 regarding Summary and Implications of § 1557 and

4   Transgender Coverage Requirements.  Both of these documents are covered by the attorney-

5   client privilege. Defendants also gathered information and data from insurers and other

6   entities regarding their experience providing transgender benefits, including reassignment

7   surgery.   Plaintiffs may ascertain the non-privileged information requested in this

8   Interrogatory from the documents that Defendants have produced in this action.

9        **FIRST SUPPLEMENTAL ANSWER**:  When the State of Arizona transferred its

10   healthcare coverage to a self-funded health plan, it adopted the coverages and exclusions

11   utilized by its prior insurance providers, which included the prior iteration of the exclusion

12   for gender reassignment surgery.   No known additional documents were reviewed in

13   relation to the transgender care exclusion until the issuance of ACA Rule 1557.

14        **INTERROGATORY NO. 8:**   Identify and describe any formal or informal

15   consideration by Defendants of amending or eliminating the Challenged Exclusion,

16   including identifying the date or approximate date of consideration, the ADOA and ABOR

17   employees or offices involved in such consideration and their role(s), the nature of the

18   considered changes, and what (if any) actions were taken by ADOA and ABOR.

19        **ANSWER**:  Defendants object to this interrogatory because it seeks information

20   covered by the attorney-client privilege.  Subject to and without waiving this objection,

21   Defendants state that they have informally considered amending or eliminating the

22   Challenged Exclusion after Plaintiff filed this action and since the Supreme Court's decision

23   in *Bostock v. Clayton County*.  Paul Shannon, Scott Bender, and Defendants' counsel have

24   . . .

25   . . .

26   . . .

1    been involved in such considerations.

2           DATED this 21st day of January, 2021.

3                                          FENNEMORE CRAIG, P.C.

4

5                                    By:   *s/ Ryan Curtis*
                                           Timothy J. Berg
6                                          Amy Abdo
                                           Ryan Curtis
7                                          Shannon Cohan
                                           Attorneys for Defendants State of
8                                          Arizona, Andy Tobin, and Paul
                                           Shannon
9

10   COPY of the foregoing e-mailed this
     21st day of January, 2021 to:
11
     Victoria Lopez
12   Christine K. Wee
     ACLU FOUNDATION OF ARIZONA
13   3707 North 7th Street, Suite 235
     Phoenix, Arizona 85014
14   *Attorneys for Plaintiff*

15   Joshua A. Block
     Leslie Cooper
16   AMERICAN CIVIL LIBERTIES
     UNION FOUNDATION
17   125 Broad Street, Floor 18
     New York, New York 10004
18   *Attorneys for Plaintiff*

19   Wesley R. Powell
     Matthew S. Friemuth
20   Jordan Wall
     Victoria Sheets
21   WILLKIE FARR & GALLAGHER LLP
     787 Seventh Avenue
22   New York, New York 10019
     *Attorneys for Plaintiff*
23

24

25

26

FENNEMORE CRAIG, P.C.

PHOENIX

- 9 -

1  Paul F. Eckstein
   Austin C. Yost
2  Perkins Coie LLP
   2901 North Central Ave., Suite 2000
3  Phoenix, Arizona 85012-2788
   *Attorneys for Defendants Arizona*
4  *Board of Regents d/b/a University of*
   *Arizona; Ron Shoopman; Larry*
5  *Penley; Ram Krishna; Bill Ridenour;*
   *Lyndel Manson; Karrin Taylor*
6  *Robson; Jay Heiler; and Fred Duval*

7  *s/ Ryan Curtis*

8  17734350

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FENNEMORE CRAIG, P.C.

PHOENIX