**Christine K Wee** – 028535
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
Email**:** cwee@acluaz.org

**Joshua A. Block***
**Leslie Cooper***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail: jblock@aclu.org
E-Mail: lcooper@aclu.org
*\*Admitted pro hac vice*

**Wesley R. Powell***
**Matthew S. Freimuth***
**Jordan C. Wall***
**Justin Garbacz***
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
E-Mail: wpowell@willkie.com
E-Mail: mfreimuth@willkie.com
E-Mail: jwall@willkie.com
*\*Admitted pro hac vice*

*Attorneys for Plaintiff Russell B. Toomey*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Russell B. Toomey,**<br><br>       Plaintiff,<br><br>       v.<br><br>**State of Arizona; Arizona Board of Regents, D/B/A University of Arizona**, a governmental body of the State of Arizona; et al.,<br><br>       Defendants. | Case No.19-cv-00035-TUC-RM (LAB)<br><br>**DECLARATION OF**<br>**DR. RUSSELL B. TOOMEY** |

I, Dr. Russell B Toomey, declare and state as follows:

1. I submit this declaration in support of Plaintiff's Motion for Summary Judgment.

2. The following information is within my own personal knowledge. If called as a witness, I would and could competently testify to the facts stated herein.

3. I am a tenured professor at the University of Arizona, where I am Professor of Family Studies and Human Development. I teach undergraduate and graduate courses on adolescent development, human sexuality, and advanced graduate-level applied statistics.

4. My research focuses on the processes by which sexual and gender minority youth thrive and are resilient despite the oppressive barriers and challenges they encounter in society. I also serve on the Executive Council for the Society for Research on Adolescence and the Editorial Board for the Journal of Youth and Adolescence.

5. I am a man who is transgender. This means I have a male gender identity, but the sex assigned to me at birth was female.

6. In 2003—when I was in my early 20s and completing my undergraduate education at Ohio University—I was diagnosed with gender dysphoria and transitioned to living consistently with my male identity. At the time, the diagnostic term used for treating transgender people was "gender identity disorder."

7. Since 2003, I have received testosterone as a medically necessary treatment for gender dysphoria, as prescribed by my physicians.

8. I also received medically necessary chest reconstructive surgery in 2004. My health insurance did not provide coverage for gender-affirming surgery, and I had to pay $8,000 for the cost of the surgery. I was just out of college, and my father-in-law had to co-sign a loan so that I could afford the procedure.

9. My medical providers also recommended that I receive a hysterectomy as medically necessary care to treat my gender dysphoria, but I could not afford to pay for it. As a result, I was forced to continue living with aspects of my body that do not align with my identity and cause me significant clinical anxiety and distress.

10. After graduating from Ohio University, I received a Master's degree from Kent State University in 2006, and a Ph.D. from the University of Arizona in 2011. I then worked as a post-doctoral research fellow and an Assistant Research Professor at Arizona State University, and as an Assistant Professor at Kent State University. Throughout this time, my health insurance plans excluded coverage for gender-affirming surgery, which prevented me from receiving the hysterectomy recommended by my physicians.

11. In 2015, the University of Arizona recruited me for a tenure-track position in the department for Family Studies and Human Development. During the recruitment process, I became aware that the University of Arizona's employer-provided health plan categorically excludes coverage for gender-affirming surgery.

12. I was particularly disappointed to learn about the exclusion in University of Arizona's health plan because I knew from my professional work that many private and public health insurance policies had begun removing these types of exclusions as outdated and contrary to contemporary standards of care.

13. I thought the University of Arizona's insurance exclusion was discriminatory. I contacted the University of Arizona's Office of Institutional Equity, but I did not pursue litigation because I did not yet have tenure, and I did not think I had enough job security to challenge the insurance exclusion without risking retaliation.

14. After I received tenure in 2017, I finally felt that I had enough security in my career to challenge the exclusion of gender-affirming surgery. Before initiating a legal challenge, I went through the steps of submitting a formal request for coverage with my insurance administrator. I had not previously submitted an insurance claim for surgery because I knew from reading my insurance policy that gender-affirming surgery would not be covered.

15. To submit a request for coverage, I went through steps of obtaining surgery-referral letters from my mental-health providers and consulting with a surgeon, Dr. Tiffany Karsten. Dr. Karsten confirmed that I satisfied all the criteria for receiving surgery under the applicable standards of care published by the World Professional Association for

Transgender Health ("WPATH"). Dr. Karsten contacted the third-party administrator for my health insurance plan to request pre-authorization for the surgery.

16. On August 10, 2018, the third-party administrator for my insurance plan (BCBSAZ) denied preauthorization for my surgery. The denial letter was based solely on the Plan's exclusion for "gender reassignment surgery." The letter concluded by stating that "If you choose to get the laparoscopic total hysterectomy with removal of tubes and ovaries surgery, BCBSAZ will not cover the costs of this service."

17. As a result of the exclusion in my health plan, I have been refused coverage without even evaluating whether my surgery is medically necessary.

18. It is not financially feasible for me to pay out of pocket for a hysterectomy.

19. I decided to bring this lawsuit as a class action to improve not only my life, but the lives of many other Arizonans who are affected by the exclusion in Arizona's health plans. I know from my work that transition-related surgery can be life-saving. No one should be denied medically necessary care because of who they are.

20. It is incredibly frustrating and demoralizing to know that Arizona will cover hysterectomies for any other medically necessary condition, but refuses to cover the same surgery for me just because it has been classified as a "gender reassignment surgery." In addition to the pain of having to live with parts of my body that cause me significant distress, I have felt stigmatized and demeaned by being told by the Arizona government that my medical needs—and the medical needs of other transgender people—are less worthy of care than the medical needs of people who are cisgender.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated this 20th day of September 2022

_Russell B Toomey_
Dr. Russell B. Toomey