1   FENNEMORE CRAIG, P.C.
    Timothy J. Berg (No. 004170)
2   Amy Abdo (No. 016346)
    Ryan Curtis (No. 025133)
3   Shannon Cohan (No. 034429)
    2394 E. Camelback Road, Suite 600
4   Phoenix, Arizona 85016
    Telephone: (602) 916-5000
5   Email: tberg@fennemorelaw.com
    Email: amy@fennemorelaw.com
6   Email: rcurtis@fennemorelaw.com
    Email: scohan@fennemorelaw.com
7
    *Attorneys for Defendants*
8   *State of Arizona, Andy Tobin, and Paul Shannon*

9                    UNITED STATES DISTRICT COURT

10                        DISTRICT OF ARIZONA

11   Russell B. Toomey,                    CV-19-00035-TUC-RM

12              Plaintiff,                 **DEFENDANTS STATE OF**
                                           **ARIZONA'S, ANDY TOBIN'S, AND**
13         v.                              **PAUL SHANNON'S REPLY IN**
                                           **SUPPORT OF MOTION FOR**
14   State of Arizona, *et al.*            **SUMMARY JUDGMENT**

15              Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

1

**TABLE OF CONTENTS**

2  I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT. ............................ 1

3      A.    Plaintiff's Title VII Claim Fails. ................................................. 1

4          1.    The Exclusion Is Not Facially Discriminatory................................. 1

5          2.    Plaintiff Cannot Prove A Disparate Treatment Claim. .................... 4

6              a.    Plaintiff Cannot Meet His Burden of Proof. ........................ 4

7              b.    State Defendants Have Legitimate Reasons for the

8                   Exclusion. ................................................................. 5

9              c.    State Defendants' Reason Is Not Pretext. ............................ 5

10                   (1)    Plaintiff Has No Direct Evidence of Pretext. ............. 6

11                   (2)    Plaintiff Has No Circumstantial Evidence of

12                         Pretext. ............................................................... 7

13      B.    Plaintiff's Equal Protection Claim Fails. .................................... 10

14          1.    The Exclusion Is Not Facially Discriminatory. ............................ 10

15          2.    The Exclusion Meets Constitutional Scrutiny. ............................ 11

16  II.    CONCLUSION ........................................................................... 12

17

18

19

20

21

22

23

24

25

26

27

28

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

- i -

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO (AFSCME) v. State*

5

*of Washington*, 770 F.2d 1401 (9th Cir. 1985) ......................................... 9, 10

6

*Anderson v. S. Dakota Ret. Sys.*,
924 N.W.2d 146 (S.D. 2019) ................................................................... 2

7

8

*Bostock v. Clayton County, Georgia*,
__ U.S. __, 140 S. Ct. 1731 (2020) ............................................................ 3

9

10

*Bucklew v. Precythe*,
__ U.S. __, 139 S. Ct. 1112 (2019) .......................................................... 10

11

12

*Califano v. Goldfarb*,
430 U.S. 199 (1977) ................................................................................. 12

13

*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*,
642 F.3d 728 (9th Cir. 2011) ................................................................. 5, 8

14

15

*Diaz v. Brewer*,
656 F.3d 1008 (9th Cir. 2011) .................................................................. 12

16

17

*Dobbs v. Jackson Women's Health Org.*,
__ U.S. __, 142 S. Ct. 2228 (2022) ................................................. 2, 10, 11

18

19

*Fain v. Crouch*,
CV 3:20-0740, 2022 WL 3051015 (S.D.W. Va. Aug. 2, 2022) ................... 10

20

21

*Geduldig v. Aiello*,
417 U.S. 484 (1974) ...................................................................... 1, 2, 10, 11

22

*Gen. Elec. Co. v. Gilbert*,
429 U.S. 125 (1976) .............................................................................. 1, 2

23

24

*Godwin v. Hunt Wesson, Inc.*,
150 F.3d 1217 (9th Cir. 1998), *as amended* (Aug. 11, 1998) ................... 5, 6

25

26

*Harris v. Lexington-Fayette Urban Cnty. Gov't*,
685 Fed. App'x 470 (6th Cir. 2017) ........................................................ 12

27

*IMS Health Inc. v. Sorrell*,
630 F.3d 263 (2d Cir. 2010) ..................................................................... 12

28

*Lange v. Houston County, Ga.*,
   No. 5:19-CV-392, 2022 WL 1812306 (M.D. Ga. June 2, 2022) ............................ 2, 10

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973), *as modified by Hazen Paper Co. v. Biggins*,
   507 U.S. 604 (1993) ........................................................................................... 4, 5

*Memorial Hosp. v. Maricopa County*,
   415 U.S. 250 (1974) ................................................................................................ 12

*Merrick v. Farmers Ins. Grp.*,
   892 F.2d 1434 (9th Cir. 1990) ................................................................................... 6

*Munoz v. Mabus*,
   630 F.3d 856 (9th Cir. 2010) ................................................................................. 5, 8

*Pham v. City of Seattle*,
   7 Fed. App'x 575 (9th Cir. 2001) .............................................................................. 9

*Sneddon v. ABF Freight Sys.*,
   489 F. Supp. 2d 1124 (S.D. Cal. 2007) ...................................................................... 6

*Tex. Dept. of Cmty. Affairs v. Burdine*,
   450 U.S. 248 (1981) ............................................................................................. 9, 10

*U.S. Postal Serv. Bd. of Governors v. Aikens*,
   460 U.S. 711 (1983) ............................................................................................. 9, 10

*In re Union Pac. R.R. Emp. Practices Litig.*,
   479 F.3d 936 (8th Cir. 2007) ............................................................................. 1, 2, 5

*Vasquez v. County of Los Angeles*,
   349 F.3d 634 (9th Cir. 2003), *as amended* (Jan. 2, 2004) ........................................ 6

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*,
   429 U.S. 252 (1977) ............................................................................................. 8, 9

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) .............................................................................. 5, 8

*Wallace v. Pyro Min. Co.*,
   789 F. Supp. 867 (W.D. Ky. 1990), *aff'd*, 951 F.2d 351 (6th Cir. 1991) ..................... 2

*Weinberger v. Wiesenfeld*,
   420 U.S. 636 (1975) ................................................................................................ 12

*Wood v. City of San Diego*,
  678 F.3d 1075 (9th Cir. 2012) ............................................................. 6, 9, 10

**Statutes**

42 U.S.C.A. § 2000e(k) ...................................................................................... 2

20 U.S.C. 1681. ................................................................................................... 2

42 U.S.C. § 18116 .............................................................................................. 2

**Other Authorities**

81 Fed. Reg. 31376, 31386 (May 18, 2016) (codified at 45 C.F.R. pt. 92) ....................... 8

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

State Defendants[1] are entitled to summary judgment in their favor. The Exclusion does not facially discriminate on the basis of sex or gender. At most, the Exclusion creates two groups—those who want "gender reassignment surgery" and those who do not—which both contain men and women. In addition, there is no evidence of discriminatory motive. Plaintiff attempts to create such evidence by mischaracterizing documents and testimony. Such misconstrued facts do not create a purported "pervasive state-wide policy" against transgender persons or a material question of fact.

## I.     THE COURT SHOULD GRANT SUMMARY JUDGMENT.

### A.     Plaintiff's Title VII Claim Fails.

#### 1.     The Exclusion Is Not Facially Discriminatory.

The Exclusion does not facially discriminate based on sex, gender nonconformity, or sex stereotyping. The Plan excludes "gender reassignment surgery"[2] for all Plan participants. (*See* Doc. 295 (SOF), ¶ 48; *see also* Doc. 296 (Curtis Decl.), Ex. 1 (Toomey Depo.) at 61:6–9, 61:18–21, 120:24–121:2.) This Exclusion does not explicitly reference any one sex or gender. (*Id.*; *see also* Doc. 296, Ex. 1 at 61:6–17, 120:16–17 (admitting that the Exclusion is not specific to transgender persons and does not identify a particular sex).) The Plan does not penalize any employee for a characteristic or trait that it tolerates in another employee; it simply does not provide coverage for "gender reassignment surgery" for any Plan member, regardless of their gender, sex, or diagnosis. This is characteristic of facially neutral health plans.[3] *See, e.g., Geduldig v. Aiello*, 417 U.S. 484, 497 n.20 (1974); *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 139 (1976); *In re Union Pac. R.R. Emp. Practices Litig.*, 479 F.3d 936, 945 (8th Cir. 2007).

---

[1] Capitalized terms are defined in the Motion for Summary Judgment (Doc. 293).
[2] Plaintiff incorrectly argues, without any Plan citation, that the Exclusion excludes coverage for surgeries "to align a person's physical characteristics with their gender identity." (Doc. 321, 9:1–5.) Pursuant to ADOA's insurance vendor's coverage guidelines, the Exclusion applies when the only reason for the surgery is treatment of gender dysphoria. (Doc. 316 (CSOF), ¶ 71; Doc. 295 (SOF), ¶ 48) However, the Plan does not cover such surgeries for any Plan participant, regardless of their sex, gender, or gender identity. (*Id.*) The determining factor is the *reason* for the surgery. Indeed, as Plaintiff recognizes, both males and females are eligible for hysterectomies under the Plan for other diagnoses. (Doc. 321, 9 n.6.)
[3] The cases cited in Plaintiff's Motion are distinguishable. (Doc. 315, 8:19–11:5.)

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

Plaintiff criticizes State Defendants' reliance on *Geduldig* and *Gilbert* because Congress later decided to enact the Pregnancy Discrimination Act of 1978 ("PDA"), which expanded the scope of Title VII to include "pregnancy, childbirth, or related medical conditions." (Doc. 321, 11:5–21.) 42 U.S.C.A. § 2000e(k). The enactment of the PDA, however, did not overrule the reasoning in *Gilbert* and did not mandate that health plans provide coverage for conditions that affect only one sex or gender. Indeed, several courts, including this one, have continued to apply the logic of *Gilbert* after the PDA and have found that regulation of procedures or conditions that affect only one sex are not discriminatory under Title VII. (*See* Doc. 134 at 5.) *See Union Pac. R.R.*, 479 F.3d at 944–45;[4] *Wallace v. Pyro Min. Co.*, 789 F. Supp. 867, 868 (W.D. Ky. 1990), *aff'd*, 951 F.2d 351 (6th Cir. 1991) (no Title VII violation for refusal to grant personal leave for breastfeeding); *see also Anderson v. S. Dakota Ret. Sys.*, 924 N.W.2d 146, 152 (S.D. 2019) (noting that "discrimination based upon sex does not result simply because an employer's disability benefits plan is less than all-inclusive" in relation to retirement benefits); *Dobbs v. Jackson Women's Health Org.*, __ U.S. __, 142 S. Ct. 2228, 2245–46 (2022).[5] If anything, Congress's enactment of the PDA after *Gilbert* illustrates that an act of Congress is the appropriate method for expanding protections to new groups or traits of individuals. Here, Congress passed Affordable Care Act Section 1557, which incorporates Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*) to prohibit discrimination on the basis of sex in health programs. 42 U.S.C. § 18116. HHS promulgated the 2016 Rules and the Plan complies with those Rules. Plaintiff continually fails to dispute that the Exclusion complies with the 2016 Rules.

---

[4] Plaintiff's attempt to distinguish *Union Pac. R.R.* is misguided. In *Union Pac. R.R.*, the Eighth Circuit considered whether a health plan that prohibited coverage for prescribed contraceptives (which only women can utilize) was discriminatory. 479 F.3d at 944–45. While it is true that the Eighth Circuit compared the effect of the exclusion on both men and women, the holding remains the same: health plan exclusions that, in practice, affect only one sex are not facially discriminatory under Title VII. *Id.* at 945.

[5] Plaintiff cites *Lange v. Houston County, Ga.*, No. 5:19-CV-392 (MTT), 2022 WL 1812306 (M.D. Ga. June 2, 2022). (Doc. 321, 11:14–21.) *Lange* does not comment on or affect the published decisions in *Union Pac. R.R.*, *Anderson*, *Wallace*, or *Dobbs*. Moreover, in *Lange*, the health plan at issue contained a blanket exclusion for "coverage for drugs for sex change surgery and services and supplies for a sex change and/or the reversal of a sex change," which is markedly dissimilar from the Exclusion here. 2022 WL 1812306, at *2.

1    Further, contrary to Plaintiff's suggestion, *Bostock v. Clayton County, Georgia*,
2  ___ U.S. ___, 140 S. Ct. 1731 (2020), does not decide this matter. Justice Alito's dissent
3  in *Bostock* identified several areas of Title VII that remain unsettled, including healthcare.
4  *Id.* at 1778–1783 (Alito, J., dissenting). Indeed, Justice Alito specifically referenced this
5  litigation. *Id.* at 1781, n.56.

6    Consistent with *Bostock*, the Plan does not treat any participant differently based
7  on their sex. The Plan excludes various treatments for all participants. (Doc. 295 (SOF),
8  ¶ 18.) Gender reassignment surgery is only one such excluded treatment. All Plan
9  participants are subject to every exclusion in the Plan. Put another way, many treatments
10  and services (including gender reassignment surgery) are excluded for any person who
11  seeks them, regardless of their sex, gender, or transgender status. Transgender individuals,
12  including Plaintiff, can obtain coverage for a surgery for any of the same conditions that a
13  cisgender person can receive coverage for a surgery.[6] (Doc. 295, ¶¶ 11–12.) In *Bostock*,
14  the Supreme Court explained that "a but-for test directs us to change one thing at a time
15  and see if the outcome changes. If it does, we have found a but-for cause." 140 S. Ct. at
16  1739. Here, this analogy plays out two ways. First, the Court can keep Plaintiff's sex the
17  same but hypothetically change Plaintiff's diagnosis to another medical condition, such as
18  cancer; in that instance, Plaintiff would be entitled to coverage for surgery under the Plan.
19  Second, the Court can keep Plaintiff's diagnosis of gender dysphoria but hypothetically
20  change Plaintiff's sex from female to male; in that instance, Plaintiff would not be entitled
21  to coverage for surgery. Hypothetical examples that change *both* the sex *and* the diagnosis
22  of a plaintiff are inconsistent with *Bostock's* but-for test, which requires that the analysis
23  only "change one thing at a time." *Id*. Under *Bostock*'s reasoning, therefore, the Exclusion
24  does not discriminate "because of" sex but rather draws a line for treatment of a specific
25  medical diagnosis. Any difference in treatment is not based on sex.

26  _____
[6] In addition, State Defendants recently became aware that the Arizona Board of Regents
27  apparently authorized the Arizona universities to provide $10,000 per Plan participant for
gender reassignment surgery, beginning January 1, 2023. (*See* CSOF Response, ¶ 19.)
28  This further undermines Plaintiff's standing and status as a class representative. (*See* Doc.
293 (MSJ) at 3, n.1.)

**2.      Plaintiff Cannot Prove A Disparate Treatment Claim.**

To prove a disparate treatment claim, Plaintiff must show evidence of discrimination or satisfy the *McDonnell Douglas* framework. The Response only argues the third element of the *McDonnell Douglas* framework—whether State Defendants' articulated reasons for the Exclusion are a pretext. (*See* Doc. 321, 14:11–23:14.)

a.      Plaintiff Cannot Meet His Burden of Proof.

Plaintiff cannot meet the first element of the *McDonnell Douglas* framework— discrimination. To do so, Plaintiff must demonstrate, *inter alia*, that another similarly-situated employee received better treatment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), *as modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

Here, Plaintiff cannot demonstrate that cisgender employees receive better treatment. Whether coverage is available for a particular treatment is determined by the language of the Plan. The Exclusion is one of many limitations, to which all participants are subject, regardless of their gender, sex, or diagnosis. (Doc. 316 (CSOF), ¶ 16.) Simply, gender reassignment surgery is excluded for any person who seeks it. However, all Plan participants (man or woman, cisgender or transgender) would be eligible for coverage for a service to treat another condition. In fact, Plaintiff admits that transgender Plan participants can receive surgeries for all the same reasons as cisgender persons. (*Id.*, ¶¶ 79–81.) Cisgender persons do not receive better treatment under the Plan.

Plaintiff wrongly argues that "the Plan denies [him] coverage for the very same medically necessary care other Plan participants can obtain," and that he "seeks the same care that cisgender Plan participants seek." (Doc. 321, 15 n.7.) First, the Plan does not cover all procedures a Plan participant (or even a doctor) may consider "medically necessary." Whether a treatment is "medically necessary" is determined by the language of the Plan and ADOA's insurance administrators' coverage guidelines. (Doc. 316 (CSOF), ¶ 16; Doc. 296 (Curtis Decl.), Ex. 13 (Schafer Depo.) at 215:22–216:14.) Even if a procedure is deemed "Medically Necessary" under the Plan and by the insurance administrators, it may still be excluded from coverage. (*See* Doc. 295 (SOF), ¶ 18.)

Second, as outlined in State Defendants' Motion, a Plan participant seeking coverage for a hysterectomy for a condition other than gender dysphoria is not similarly situated to Plaintiff. *See Union Pac. R.R.*, 479 F.3d at 943-45 (proper comparator for challenge to insurance exclusion for contraception was the narrow benefit sought, not a broader category of preventative medicines). Plaintiff does not rebut this argument. (*See generally* Doc. 321, 15 n.7.) Therefore, providing coverage for hysterectomies for some conditions but not others does not make the Plan discriminatory on the basis of sex.

Moreover, while it is true that both transgender and cisgender Plan participants may seek coverage for a hysterectomy, the Exclusion is not so limited. The category of "gender reassignment surgery" encompasses multiple different surgeries. (Doc. 316, ¶ 27.) Many of these surgeries would not be performed on a cisgender person or are not eligible for coverage under the Plan because they are "cosmetic." (*Id.*, ¶¶ 6, 27.)

b.    State Defendants Have Legitimate Reasons for the Exclusion.

Plaintiff does not refute that State Defendants have articulated legitimate, non-discriminatory reasons for the Exclusion.[7] (*See generally* Doc. 321, 14–23.) State Defendants have met their burden under step two of the *McDonnell Douglas* framework.

c.    State Defendants' Reason Is Not Pretext.[8]

Plaintiff cannot meet his burden to show "specific, substantial" evidence that State Defendants' cost rationale is pretextual. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220–22 (9th Cir. 1998), *as amended* (Aug. 11, 1998); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002); *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010). Denying the credibility of the reason is insufficient. *Munoz*, 630 F.3d at 865; *see also Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011). Courts only require that the employer honestly believed its reasons, even if the reason is objectively false or trivial. *Villiarimo*, 281 F.3d at 1063.

---

[7] State Defendants maintained the Exclusion for two reasons—it was legal and cost—but are precluded from arguing as a defense that they believed it was legal. (*See* Doc. 278.)

[8] If the Court agrees with Plaintiff that a question of material fact exists, that dooms both State Defendants' Motion and Plaintiff's Motion, and the Court must deny both Motions.

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

*(1)    Plaintiff Has No Direct Evidence of Pretext.*

Plaintiff argues that: (1) a former senior advisor in the Governor's Office, Christina Corieri, demonstrated anti-transgender animus; and (2) ADOA employees purportedly felt politically pressured into not eliminating the Exclusion. (Doc. 321, 16.) To reach these arguments, Plaintiff misstates testimony and trumpets irrelevant facts.

First, Plaintiff's references to Ms. Corieri's ten-year old tweet mischaracterizes not only the substance of the tweet but also ignores Ms. Corieri's testimony about it. Ms. Corieri's tweet was made in April 2013, years prior to her employment at the Governor's Office. (Doc. 322, ¶ 15.) The tweet does not express any animus against transgender persons. Indeed, the tweet does not reference transgender persons, the State, the Plan, or the Exclusion. (*See id*.) Therefore , the tweet is not direct evidence of discrimination. *See Godwin*, 150 F.3d at 1221; *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004). At best, Ms. Corieri's tweet is a stray remark that requires multiple, unsupported inferences to suggest any discriminatory intent in the context of the Plan. Such a stray, isolated remark is insufficient. *See, e.g.*, *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438-39 (9th Cir. 1990).

In addition, the tweet was made several years before Ms. Corieri began her employment with the Governor's Office, at a time when Ms. Corieri was working on issues related to Medicaid expansion and its costs generally, and more than three years before ADOA made its decision to expand coverage for gender dysphoria. (*See* Doc. 296, Ex. 32, 12:2-4.) It was also three years before the 2016 Rules were published. As a result, Ms. Corieri's tweet is unrelated to ADOA's decision-making process and cannot be the basis for a finding of discriminatory motive. *See Wood*, 678 F.3d at 1081 ("liability depends on whether the protected trait actually motivated the employer's decision"); *see also Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1130 (S.D. Cal. 2007) ("[r]emarks . . . when unrelated to the decisional process[] are insufficient to demonstrate that the employer relied on illegitimate criteria") (citation omitted).

Similarly, Plaintiff's references to emails received by Ms. Corieri are entirely

1   irrelevant. Ms. Corieri testified that she did not recall receiving the emails, did not read

2   them, and (contrary to Plaintiff's statement) did not sign up to receive the emails. (State

3   Defendants' Response to Plaintiff's Countervailing Statement of Facts ("SOF Response"),

4   filed concurrently, ¶ 16.) Indeed, Ms. Corieri testified that she often received emails

5   which she did not sign up for due to the public nature of her Governor's Office email

6   address. (*Id*.) Throughout her deposition, Ms. Corieri made clear that she does not harbor

7   any animus towards transgender persons or gender reassignment procedures. (*Id.*)

8       Second, Plaintiff attempts to transform a few isolated statements by other witnesses

9   regarding the political nature of gender reassignment surgery into a state-sponsored

10  conspiracy against transgender persons. Nothing could be further from the truth. All State

11  Defendant witnesses testified that no one at ADOA or the Governor's Office made any

12  discriminatory remarks regarding transgender persons.[9] (*See* Doc. 295 (SOF), ¶¶ 49–50.)

13          *(2)     Plaintiff Has No Circumstantial Evidence of Pretext.*[10]

14      It is undisputed that: (1) removing the Exclusion would increase costs; (2) ADOA

15  conducted and relied upon cost analyses relating to the Exclusion during its deliberations;

16  and (3) ADOA's cost analyses indicated that removing the Exclusion would add

17  $130,000-$582,000 in costs annually. (Doc. 316 (CSOF), ¶¶ 94–95; Doc. 321, 17.)

18      Plaintiff's argument that ADOA has added other benefits to the Plan without regard

19  to cost misstates the facts. First, as to bariatric surgery, ADOA removed an exclusion for

20  laparoscopic sleeve gastrectomy based on recommendations from its insurance

21  administrators and because it resulted in fewer surgical complications than other bariatric

22  surgical procedures. (Doc. 316 (CSOF), ¶ 23(b).) As a result, extending coverage to

23  laparoscopic sleeve gastrectomy would *decrease* total costs to the Plan. Second, as to 3D

24  mammograms, ADOA did not remove an exclusion for 3D mammograms. (Doc. 316

25  (CSOF), ¶ 23(e).) Instead, ADOA's insurance administrators revised their coverage

26  _____

27  [9] Plaintiff's reliance on Elizabeth Schafer's testimony should be disregarded. Ms. Schafer testified that she did not recall anyone directing her to remove the identified language and only "guessed" that someone didn't want the cost in writing. (CSOF Response, ¶ 20(a).)

28  [10] The Response concedes Plaintiff's first two allegations of circumstantial evidence. (Doc. 321, 17, n.8.) State Defendants will not further address those points.

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

guidelines to recognize 3D mammograms as not experimental. (*Id.*) Moreover, the cost was the same as a standard mammogram. (*Id.*) Third, as to the hepatitis-C medication, ADOA's coverage of that drug significantly reduced total cost to the Plan. (Doc. 316 (CSOF), ¶ 23(g).) The medication *cures* hepatitis-C, thereby reducing the cost of future healthcare claims for that member. (*Id.*) There is no evidence that State Defendants approved coverage for additional treatments or services without regard to increased costs.

Second, Plaintiff admits that ADOA conducted its typical research process when considering revising the Exclusion. (Doc. 321, 19:12–17.) Plaintiff argues, however, that State Defendants purportedly ignored their research when making the ultimate decision.[11] (*Id.*, 19:17–18.) This is nothing more than an argument that State Defendants' cost rationale is not credible. Such an argument is insufficient to withstand summary judgment. *See Villiarimo*, 281 F.3d at 1063; *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010); *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011).

In addition, ADOA's consultation with the Governor's Office is consistent with its traditional process. ADOA always consulted the Governor's Office regarding proposed revisions to the Plan design and contribution strategy. (Doc. 316 (CSOF), ¶ 55.) Revising the Exclusion would have required both a revision to the Plan design (removing an exclusion) and to the contribution strategy (increasing costs). As a result, ADOA consulted with the Governor's Office. Contrary to Plaintiff's suggestion, however, ADOA completed a thorough review of the Exclusion and potential revisions, which it presented to the Governor's Office. (Doc. 295 (SOF), ¶¶ 32–48.) That research also included an analysis of the potential costs associated with removing the Exclusion. (*Id.*, ¶¶ 36–38.)

Plaintiff relies upon *Village of Arlington Heights v. Metropolitan Housing*

---

[11] Plaintiff's argument that ADOA ignored insurance carriers' input that they would cover gender reassignment surgery is misleading. Pursuant to the 2016 Rules, insurance carriers were <u>required</u> to provide compliant insurance plans. Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31376, 31386 (May 18, 2016) (codified at 45 C.F.R. pt. 92). While the 2016 Rules did not require any particular service be covered, the carriers decided to cover surgery in their fully-insured plans. ADOA's consideration of the Exclusion as a self-insured plan was "independent" and ADOA was "responsible for making [its] own determination." (*See* Doc. 296 (Curtis Decl.), Exs. 26 & 28.)

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

*Development Corp.*, 429 U.S. 252 (1977), to argue that departing from a traditional process is evidence of discrimination.[12] (Doc. 321, 20:16–22.) In *Village of Arlington Heights*, however, the Supreme Court found that the plaintiffs failed to prove "that discriminatory purpose was a motivating factor." 429 U.S. at 270–71. Specifically, the Supreme Court approved of the Court of Appeals's statement that the defendant's "policy, though not always applied with perfect consistency, had on several occasions formed the basis for the Board's decision." *Id.* at 270. Similarly, here, ADOA followed its standard process when it evaluated the Exclusion, including considering insurance vendor recommendations, market trends, the interest of Plan participants, cost, legal requirements, and clinical effectiveness. (Doc. 295 (SOF), ¶¶ 32–42.) ADOA then reviewed this information and, in consultation with the Governor's Office, made its decision to exclude only "gender reassignment surgery." Even if, as Plaintiff suggests, ADOA's standard process was not followed exactly every single time ADOA considered a Plan exclusion, that is not sufficient to support a finding of discriminatory motive. *See Vill. of Arlington Heights*, 429 U.S. at 270–71.

Third, Plaintiff's arguments regarding this history behind the Exclusion are misplaced. The discriminatory motive alleged must play a role in the employer's decision-making process and have a determinative influence on the outcome. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983); *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO (AFSCME) v. State of Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985); *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012). Plaintiff does not dispute that ADOA does not know the rationale for the original iteration of the Exclusion. The original rationale behind any specific exclusion was not a factor traditionally considered by ADOA. (Doc. 295 (SOF), ¶ 20.) As such, the original rationale behind the Exclusion cannot have "actually motivated" the decision to revise the Exclusion.

Fourth, Plaintiff wrongly argues that a *post*-litigation cost analysis for removing the

---

[12] Plaintiff also cites to *Pham v. City of Seattle*, 7 Fed. App'x 575, 578 (9th Cir. 2001). (Doc. 321, 21:2–5.) In *Pham*, there was "evidence of discriminatory statements made by some persons participating in the decision." *Id.* Plaintiff has no such evidence here.

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

Exclusion is relevant to *pretext*. Doc. 321, 22:25–23:14. Again, any discriminatory motive alleged must have "actually motivated" the employer's decision. *See Aikens*, 460 U.S. at 716; *Burdine*, 450 U.S. at 256; *AFSCME*, 770 F.2d at 1405; *Wood*, 678 F.3d at 1081. A cost analysis completed three years ***after*** ADOA's decision regarding the Exclusion obviously could not have "actually motivated" the decision. There is no dispute that ADOA conducted cost analyses relating to the Exclusion and relied upon those calculations during its deliberations, and that those costs analyses demonstrate that removing the Exclusion would increase costs to the Plan. (Doc. 316 (CSOF), ¶ 94–95; Doc. 321, 17.) State Defendants' cost rationale is plainly not a post-hoc rationalization.

Finally, any argument that State Defendants' rationale is a pretext is implausible. ADOA ***expanded*** coverage for gender dysphoria in 2016 to include hormone therapy and counseling. (Doc. 316 (CSOF), ¶¶ 103–104.) Contrary to Plaintiff's suggestion, ADOA was not required to do so because the 2016 Rules did not require coverage of any specific service and were being challenged in multiple courts. (*See* Doc. 293 (MSJ), 18:23–20:3.)

## B.   Plaintiff's Equal Protection Claim Fails.

### 1.   The Exclusion Is Not Facially Discriminatory.

"A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, __ U.S. __, 139 S. Ct. 1112, 1127 (2019). For example, in *Geduldig*, a state insurance policy that excluded coverage for a medical procedure that only one sex can undergo did not classify on the basis of sex. 417 U.S. at 495–97. The classification created two groups—pregnant and non-pregnant people. *Id*. at 496 n.20. Although "the first group is exclusively female," the Court reasoned "the second includes members of both sexes," which revealed a "lack of identity" between pregnancy and sex. *Id. Geduldig* is still instructive and has been cited in numerous recent opinions. *See Dobbs*, 142 S. Ct. at 2246; *Lange*, 2022 WL 1812306, at *8; *Fain v. Crouch*, CV 3:20-0740, 2022 WL 3051015, at *8 (S.D.W. Va. Aug. 2, 2022).

Plaintiff argues that this Court should disregard *Geduldig* for four reasons, each of which fails. First, Plaintiff argues that the Exclusion has "explicit sex classifications."

(Doc. 321, 13:18–22.) A simple reading of the Exclusion dispels this argument. The Exclusion does not reference any single sex or gender. (Doc. 295 (SOF), ¶ 25.)

Second, Plaintiff inaccurately argues that the Exclusion denies coverage to transgender persons that it provides to cisgender persons. (Doc. 321, 13:23–27.) As discussed above, this is plainly inaccurate. *Supra*, § I.A.2.a.

Third, the Exclusion is not a proxy for discrimination against transgender persons. Not all transgender persons have gender dysphoria (*see* DSM-V S2H14) or seek "gender reassignment surgery" (Doc. 316 (CSOF), ¶ 82). As a result, restrictions on treatment for gender dysphoria are not *per se* restrictions on transgender persons. In addition, ADOA actually ***expanded*** coverage for gender dysphoria in 2016 to ***add*** coverage for hormone therapy and counseling. (*Id.*, ¶ 103.) Contrary to Plaintiff's suggestion, ADOA was not "legally required" to do so because the 2016 Rules did not require coverage of any specific treatment of service and the 2016 Rules were being challenged in multiple courts. (*See* Doc. 293 (MSJ), 18:23–20:3.)

Finally, Plaintiff states—without any explanation or authority—that the Exclusion facially discriminates based on gender nonconformity and sex stereotypes. (Doc. 321, 14:5–7.) As established in the Motion, the Exclusion is not facially discriminatory. The Court should disregard Plaintiff's conclusory statement otherwise.

## 2.   The Exclusion Meets Constitutional Scrutiny.

The regulation of a medical procedure that may affect only one sex or gender does not trigger heightened constitutional scrutiny unless the regulation is a "mere pretex[t]" for discrimination. *Dobbs*, 142 S. Ct. at 2245–46; *see also Geduldig*, 417 U.S. at 496, n.20. As outlined above, the Exclusion is not a pretext for discrimination. (*Supra*, § I.A.2.c.)

State Defendants' interests in cost containment and reducing health costs are legitimate and important state interests.[13] (*See* Doc. 69 (Order denying Motion to Dismiss)

---

[13] State Defendants' cost concerns were not invented *post hoc*. Plaintiff discusses ADOA's post-litigation cost analysis for removing the Exclusion. (Doc. 298 at 8:25–9:20.) A cost analysis completed three years after ADOA's decision regarding the Exclusion cannot have "actually motivated" it, and is therefore irrelevant.

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

at 16:12–14.) *See, e.g., Harris v. Lexington-Fayette Urban Cnty. Gov't*, 685 Fed. App'x 470, 473 (6th Cir. 2017); *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 276 (2d Cir. 2010). Plaintiff does not refute any of these cases, and Plaintiff's cited cases do not support his argument. First, *Diaz v. Brewer*, 656 F.3d 1008, 1013 (9th Cir. 2011), did not hold that cost concerns were insufficient for rational basis review. Instead, *Diaz* considers a preliminary injunction and rules that the plaintiffs were likely to succeed on their claim that an exclusion of same-sex domestic partners from insurance coverage was "arbitrary." *Id.* at 1013. Second, in *Califano v. Goldfarb*, 430 U.S. 199, 217 (1977), the Supreme Court stated that an unverified assumption that a policy would "save the Government time, money, and effort" was insufficient. In contrast, here, State Defendants' cost analyses were thoroughly researched and have not been disputed in this litigation.[14] (Doc. 316 (CSOF), ¶¶ 94–96; Doc. 295 (SOF), ¶¶ 37–40.) Finally, in *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 254 (1974), the Supreme Court applied strict scrutiny.

The Exclusion is rationally and substantially related to State Defendants' interests in cost containment. ADOA's consideration of coverage for gender dysphoria was no different than its consideration of other exclusions. (Doc. 316 (CSOF), ¶ 102.) ADOA researched the cost associated with the Exclusion and determined that removing the Exclusion would increase Plan costs, which would primarily be paid by the Plan participants. (Doc. 295 (SOF), ¶¶ 37–40; Doc. 316 (CSOF), ¶¶ 94–96, 111.) Cost reductions and efficiencies are one of the State's primary focuses. (Doc. 316 (CSOF), ¶ 108.) Cost weighed into most decisions by ADOA, including those relating to the Plan. (*See* Doc. 295 (SOF), ¶ 40.) ADOA did not remove exclusions from the Plan if there was any cost increase, unless revision was legally required. ADOA furthered its interests in cost containment and reducing costs to the Plan by maintaining the Exclusion.

## II.   CONCLUSION

Therefore, State Defendants are entitled to summary judgment in their favor.

---

[14] Plaintiff also cites *Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975). (Doc. 321, 24:21–22.) However, *Weinberger* does not discuss cost concerns and is otherwise inapplicable.

1    DATED this 23rd day of November, 2022.

2                                      FENNEMORE CRAIG, P.C.

3                                      By: *s/ Ryan Curtis*

4                                          Timothy J. Berg
                                           Amy Abdo
5                                          Ryan Curtis
                                           Shannon Cohan
6                                          Attorneys for Defendants State of
                                           Arizona, Andy Tobin, and Paul
7                                          Shannon

8    28354095

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX
                                        - 13 -