**Christine K Wee – 028535**
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
E-Mail**:** cwee@acluaz.org

**Joshua A. Block***
**Leslie Cooper***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail: jblock@aclu.org
E-Mail: lcooper@aclu.org
*Admitted pro hac vice*

**Wesley R. Powell***
**Matthew S. Freimuth***
**Jordan C. Wall***
**Justin Garbacz***
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
E-Mail: wpowell@willkie.com
E-Mail: mfreimuth@willkie.com
E-Mail: jwall@willkie.com
E-Mail: jgarbacz@willkie.com
*Admitted pro hac vice*

*Attorneys for Plaintiff Russell B. Toomey*
*and the certified classes*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Russell B. Toomey,**<br><br>                    Plaintiff,<br><br>          v.<br><br>**State of Arizona**; **Arizona Board of Regents**, a governmental body of the State of Arizona; **Ron Shoopman**, in his official capacity as Member of the Arizona Board of Regents; **Larry Penley**, in his official capacity as Treasurer of the Arizona Board of Regents; **Cecilia Mata**, in her official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour**, in his official capacity as Member of the Arizona Board of Regents; **Lyndel Manson**, in her official capacity as Chair of the Arizona Board of Regents; **Robert Herbold**, in his official capacity as Member of the Arizona Board of Regents; **Jessica Pacheco**, in her official capacity as Member of the Arizona Board of Regents; **Fred DuVal**, in his official capacity as Member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration**,**<br><br>                    Defendants. | Case No.19-cv-00035-TUC-RM (MAA)<br><br>**CONSENT MOTION FOR APPROVAL OF CONSENT DECREE** |

## <u>INTRODUCTION</u>

Plaintiff, Dr. Russell B. Toomey, on behalf of himself and the certified classes (collectively, "Plaintiffs" or the "Certified Classes") by and through counsel, respectfully move the Court for approval of the settlement and agreed form of consent decree (the "Consent Decree") reached with Defendants State of Arizona, Andy Tobin, and Paul

Shannon (collectively, "State Defendants") and the Arizona Board of Regents, d/b/a University of Arizona, Ron Shoopman, Larry Penley, Cecilia Mata, Bill Ridenour, Lyndel Manson, Robert Herbold, Jessica Pacheco, and Fred DuVal[1] (collectively, the "ABOR Defendants," and together with State Defendants, the "Defendants"), pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  This Motion is accompanied by the Transmittal Declaration of Christine K. Wee and the exhibits thereto, including the proposed Consent Decree.

Plaintiffs have conferred with Defendants, who consent to the filing of this Motion.

For the reasons set forth below, the agreed to Consent Decree is fair, reasonable, and adequate, and serves the best interests of the Certified Classes.  Accordingly, Plaintiff, on behalf of the Certified Classes, and with the consent of Defendants, respectfully requests that the Court: (1) approve the Consent Decree, including the parties' agreed upon arrangement for the payment of Plaintiffs' counsels' fees by State Defendants, as set out below; and (2) enter the Consent Decree.

## STATEMENT OF FACTS

### A.    Factual and Procedural Background

The State of Arizona provides health care coverage to its employees through a self-funded healthcare plan (the "Plan") administered by the Arizona Department of Administration. (Am. Compl., Doc. 86.)  The Plan excludes "gender reassignment surgery," regardless of whether the surgery qualifies as medically necessary to treat gender dysphoria (the "Exclusion").  (Am. Compl, Doc. 86 at pg. 7.)  Dr. Toomey filed his Complaint on January 23, 2019, against the Defendants for violations of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment, seeking relief in the form of a declaratory judgment and a permanent injunction requiring the Defendants to remove the Plan's exclusion of coverage for

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Ron Shoopman and Bill Ridenour  have been substituted with their successors in office, Doug Goodyear and Gregg Brewster and Andy Tobin has been substituted by his successor in office Elizabeth Alvarado-Thorson.

"[g]ender reassignment surgery" and evaluate whether Dr. Toomey and the proposed classes' surgical care for gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures.  (Doc. 86.)

State Defendants filed a Motion to Dismiss the Complaint on March 18, 2019. (Doc. 24.)  On December 20, 2019, after full briefing from the parties, the Court denied the State Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and held that Dr. Toomey stated claims upon which relief can be granted.  (Doc. 69.)

Dr. Toomey filed an Amended Complaint on March 2, 2020 (Doc. 86), and an amended Motion to Certify Class on March 6, 2020.  (Doc. 88.)  State Defendants filed their Answer to the Amended Complaint on March 10, 2020 (Doc. 89), and ABOR Defendants filed their Answer to the Amended Complaint on March 16, 2020 (Doc. 91).

Dr. Toomey's amended Motion to Certify Class was granted on June 15, 2020. (Doc. 108.)  The Court certified the following class with respect to Dr. Toomey's Title VII claim:

> Current and future employees of the Arizona Board of Regents who are or will be enrolled in the self-funded Plan controlled by the Arizona Department of Administration, and who have or will have medical claims for transition-related surgical care.

(*See* Doc. 105.)  The Court certified the following class with respect to Dr. Toomey's Equal Protection claim:

> Current and future individuals (including Arizona State employees and their dependents), who are or will be enrolled in the self-funded Plan controlled by the Arizona Department of Administration, and who have or will have medical claims for transition-related surgical care.

(*Id*.)

Following failed settlement negotiations in July of 2020, two years of subsequent discovery and related discovery disputes, and the close of fact discovery, State Defendants and Dr. Toomey each moved for summary judgment in their favor on September 26, 2022.  (Doc. 293; Doc. 309.)  Briefing for summary judgment concluded

on November 23, 2022, with oral argument scheduled to take place in front of Magistrate Judge Bowman on January 9, 2023.

On January 4, 2023, in light of renewed settlement discussions, the parties jointly requested that oral argument be postponed.  (Doc. 346.)  On January 5, 2023, the Court granted the joint motion, postponing oral argument and ordering the parties to submit a joint status report regarding settlement on or before March 6, 2023.  (Doc. 347.)  On March 6, 2023, the parties filed a Joint Status report to inform the Court that the parties had made significant progress towards settlement and the parties requested an additional 30 days to finalize the settlement and provide an update to the Court by April 5, 2023.  (Doc. 249.)   On April 5, 2023, the parties submitted a Joint Status Report to inform the Court that the parties were working on drafting and finalizing documentation relating to the settlement, including a motion for the Court's approval of the settlement.  (Doc. 350).  Therein, the parties requested to have until July 15, 2023, to update the Court regarding the status of settlement.  *Id*.  On April 12, 2023, the Court ordered that the parties file either a stipulation of dismissal or a further status report on or before July 15, 2023.  (Doc. 351).

Since January 5, 2023, the parties have engaged in settlement negotiations to resolve this matter and remove the Exclusion.  At all times, the negotiations were adversarial, non-collusive, and at arm's length between experienced attorneys who are familiar with class action litigation in general, and with the legal and factual issues of this case in particular.  Further, separate from the settlement discussions, Governor Hobbs issued Executive Order 2023-12 on June 27, 2023, directing the Arizona Department of Administration to remove the Exclusion from the Plan effective as soon as practicable.  Pursuant to Executive Order 2023-12 and A.R.S. § 38-654(G), on June 27, 2023, State Defendants provided notice to the Joint Legislative Budget Committee of removal of the Exclusion from the Plan, effective August 11, 2023.

The Parties' discussions culminated in an agreement that Defendants are permanently enjoined from reinstating the Exclusion and that ABOR would notify all

current employees of ABOR who are currently participants in the plan of the plan change and the State of Arizona would notify all other eligible State employees of the plan change. To memorialize the terms of this agreement, the parties jointly agreed to a Consent Decree for the Court's approval.

**B.    The Consent Decree**

The proposed Consent Decree is filed with the Court together with this Motion. Wee Decl., Ex. 1..

Defendants have agreed to enter into a Consent Decree with the Court whereby they will be permanently enjoined from providing or administering a health plan for employees of the Arizona Board of Regents or the State of Arizona and their beneficiaries that categorically excludes coverage of medically necessary surgical care to treat gender dysphoria.  Pursuant to the Consent Decree, Defendants' health plan for employees of the Arizona Board of Regents or the State of Arizona and their beneficiaries shall evaluate health care claims for surgical care to treat gender dysphoria pursuant to the health plan's generally applicable standards and procedures for determining whether a service is a "covered expense," including the generally applicable procedures for determining whether a service meets the definition of "medically necessary."  The Consent Decree also permanently enjoins State Defendants from enforcing or applying A.R.S. § 38-656(E) to the extent that it is inconsistent with this Consent Decree.

As described further below, the proposed Consent Decree also provides for the State Defendants' payment of $500,000.00 in attorneys' fees to Plaintiffs' counsel.

**C.    Attorney's Fees and Costs**

The Certified Classes and Defendants have negotiated and have agreed that the Certified Classes are entitled to $500,000.00 in attorney's fees.[2]  This number is a mere fraction of the millions of dollars in fees actually incurred by Plaintiffs' counsel resulting

---

[2] State Defendants do not admit liability for Plaintiff's claims in this litigation, that Plaintiff is the prevailing party, or that Plaintiff is entitled to an award of his costs or attorneys' fees. Nonetheless, in the interest of settlement, State Defendants agreed to pay Plaintiff a reasonable sum for his incurred attorneys' fees.

from over 7,000 hours of work in prosecuting this case.  Because Plaintiffs will have obtained complete success in this litigation, they would have been entitled to a fully compensatory fee award, but in the interest of settlement, Plaintiffs have accepted what the parties have agreed is a reasonable fee.

### ARGUMENT AND AUTHORITY

Any proposed settlement of a certified class's claim must be approved by the Court.  Fed. R. Civ. P. 23(e).  Federal courts strongly favor and encourage settlements, especially in class actions and other complex matters.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").  This Court has broad discretion to approve or reject a proposed settlement.  *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011) (noting that the standard of review is "clear abuse of discretion" and the appellate court's review is "extremely limited"); *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (noting that approval of a class action consent decree will be "rarely overturned," only when "the terms of the agreement contain convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations and that the district court was wrong in concluding otherwise.").  Ultimately, the Court may only approve a settlement that, taken as a whole, is 'fair, reasonable, and adequate.'" Fed. R. Civ. P. 23(e)(2); *see also In re Bluetooth*, 654 F.3d 935, 946 (9th Cir. 2011); *Staton*, 327 F.3d at 960 (examining the settlement, which included a consent decree, "as a whole, rather than the individual component parts. . . for overall fairness") (citation and quotation marks omitted).  In making this determination, courts balance several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

- 7 -

*City of Seattle*, 955 F.2d at 1291 (citation omitted).

Ordinarily, the approval process for a class action settlement takes place in two stages—"a preliminary approval followed by a later final approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016); *Howard v. Web.com Grp. Inc.*, No. CV-19-00513-PHX-DJH, 2020 WL 3827730, at *3 (D. Ariz. July 8, 2020); *see also Manual for Complex Litigation (Fourth)* ("MCL 4th") §§ 21.632 – 21.634, at 432–34 (2014). However, preliminary notice and approval is not uniformly required in Rule 23(b)(2) class actions. *Jeanne Stathakos v. Columbia Sportswear Co.*, 4:15-CV-04543-YGR, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018) (listing cases). In such class actions, notice is not required if certain factors are present, including: (1) the settlement provides near complete relief to the plaintiffs; (2) the settlement provides for only injunctive relief; (3) there is no evidence of collusion between the parties; and (4) the cost of notice is excessive. *See Green v. Am. Express Co.*, 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001); *Lilly v. Jamba Juice Co.*, 13-CV-02998-JST, 2015 WL 1248027, at *8–9 (N.D. Cal. Mar. 18, 2015); *J.S. v. Attica Cent. Sch.*, 00-CV-513S, 2012 WL 3062804, at *2–3 (W.D.N.Y. July 26, 2012).

### A. No Preliminary Notice To The Class Members Is Required.

#### i. *The Consent Decree Provides Plaintiffs With Complete Relief.*

In the Complaint, Plaintiffs sought relief in the form of a declaratory judgment and a permanent injunction requiring the Defendants to remove the Plan's exclusion of coverage for "[g]ender reassignment surgery" and evaluate whether Dr. Toomey and the proposed classes' surgical care for gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures. (Doc. 86.) As a Rule 23(b)(2) case, injunctive relief prohibiting Defendants' policy and practice of excluding transition-related surgical care, not monetary relief, has always been Plaintiff's goal.

In turn, the Consent Decree permanently enjoins Defendants from providing or administering a health plan for employees of the Arizona Board of Regents or the State

of Arizona and their beneficiaries that categorically excludes coverage of surgical care to treat gender dysphoria, and requires them to evaluate health care claims for surgical care to treat gender dysphoria pursuant to the health plan's generally applicable standards and procedures for determining whether a service is a "covered expense," including the generally applicable procedures for determining whether a service meets the definition of "medically necessary."

As such, the Consent Decree provides Plaintiffs with full relief:  Defendants will now offer to all current and future enrollees in the Plan coverage for "[g]ender reassignment surgery" that is deemed "medically necessary" according to the Plan's generally applicable standards and procedures.

      *ii.*    *The Consent Decree Provides Only Injunctive Relief.*

      *iii.*    *The Consent Decree is a permanent injunction.  As summarized above, the Consent Decree permanently prohibits State Defendants from categorically excluding coverage of surgical care to treat gender dysphoria from its health plan for employees of the Arizona Board of Regents or the State of Arizona and their beneficiaries.  The Consent Decree provides no monetary relief to Dr. Toomey or any other individual members of the Certified Classes.[3]  There Is No Evidence of Collusion.*

The Consent Decree is the result of serious, informed, and arm's-length negotiations between experienced attorneys for both parties who are familiar with class action litigation and with the factual issues of this case.  While the parties have regularly submitted bi-monthly settlement updates to the Court, there had not been much movement until the change of administration at the Governor's office in 2023, which led to the real movement of settlement negotiations.  Following this administration change, the parties participated in several weeks of negotiations discussing the appropriate remedy for removing the Exclusion, and exchanging numerous offers and counter-offers.  At all times, Plaintiffs' counsel have placed the interests of the Certified Classes ahead of their

---

[3] The fact that the Consent Decree also provides an award of attorneys' fees to Plaintiffs does not contradict its injunctive nature at heart.  *See Attica Cent. Sch.*, 2012 WL 3062804, at *4 ("the Plaintiffs in this case sought only injunctive relief in the form of equitable remedies, costs, and attorney's fees from Defendant").

own, scrutinizing the settlement details to ensure the most appropriate form of relief for the Certified Classes as a whole. Therefore, there is no evidence of collusion between the Parties.

> iv.   *The Burdens of Notice Would Be Excessive.*

Where the first three *Green* factors are satisfied, courts do not require that the cost of notice itself be excessive to approve a class action settlement without preliminary notice or a fairness hearing. *See Attica Cent. Sch.*, 2012 WL 3062804, at *4 (analyzing only the first three *Green* factors); *Lilly*, 2015 WL 1248027, at *8 (same). Each of the first three *Green* factors strongly weigh in favor of approving the Consent Decree without preliminary notice.

In addition, the potential cost and burden of providing notice of the Consent Decree to all members of the Certified Classes would be excessive here. First, the number and identities of persons in the Certified Classes is unknown and unknowable. The Certified Classes contain both current ***and future*** employees of the Arizona Board of Regents or the State of Arizona and their beneficiaries. (Doc. 105.) It is practically impossible to provide notice to all potential future employees of ABOR or the State of Arizona (some of whom may not currently live within the State), and to all potential future beneficiaries of current or future employees of ABOR or the State of Arizona (some of whom may not even be born yet). Even if the scope of the notice was limited to current employees of ABOR and the State of Arizona and their beneficiaries, that group still includes more than 100,000 persons. ADOA does not have email addresses for all members of the Plan. As a result, any notice of the Consent Decree would have to be mailed via U.S. mail to all current employees and their beneficiaries, which would impose a cost of more than $60,000 on Defendants.

Second, providing notice of the Consent Decree to all current employees of ABOR and the State of Arizona and their beneficiaries, and setting a fairness hearing may impose costs and burdens upon the Court. Advance notice that the Plan intends to provide such coverage and of the fairness hearing may invite improper objections and inappropriate

- 10 -

participation at the fairness hearing by people who are not part of the Certified Classes. Objections from those not in the Certified Classes are not relevant to the analysis that the Court must undertake in considering and approving the Consent Decree.  However, the Court would be required to expend resources and time to listen to and evaluate each objection raised, even to determine whether the objection is legitimate.  Further, Governor Hobbs issued Executive Order 2023-12 on June 27, 2023, directing ADOA to remove the Exclusion from the Plan.

Approving the Consent Decree without preliminary notice and a fairness hearing will prevent both the Court and the parties from excessive and unnecessary costs and burdens.

**B.    The Consent Decree Should Be Approved.**

        *i.    The Consent Decree Is the Product of Serious, Informed, and Non-Collusive Negotiations.*

If the settlement is the product of an arms-length, non-collusive, negotiated resolution, "courts afford the parties the presumption that the settlement is fair and reasonable."  *Spann*, 314 F.R.D. at 324. The Ninth Circuit has identified three signs of collusion:

> 1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> 2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> 3) the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth*, 654 F.3d at 947 (internal quotation marks and citations omitted).

None of these three factors are present here. As a Rule 23(b)(2) case, injunctive

relief prohibiting Defendants' policy and practice of excluding transition-related surgical care, not monetary relief, has always been the goal. The Consent Decree clearly achieves Plaintiffs' goal. Class counsel is not receiving a disproportionate or unreasonable amount of the attorneys' fees. Plaintiffs' counsel will recover just $500,000.00 in attorneys' fees despite the fact that as of March 2023, Plaintiffs' counsel had dedicated over 7,400 hours to this case for an estimated total of $6,578,292.50 in fees. There is no "clear sailing" provision in the Consent Decree and there is no reversion of any settlement fees to Defendants.

Moreover, as stated above, the Consent Decree is also the result of serious, informed, and arm's-length negotiations between experienced attorneys for all parties who are familiar with class action litigation and with the factual issues of this case and therefore, the Consent Decree should be afforded an initial presumption of fairness. *See supra*, § A.iii. At all times, Plaintiffs' counsel have placed the interests of the Certified Classes ahead of their own, scrutinizing the settlement details to ensure the most appropriate form of relief for the Certified Classes as a whole. Plaintiffs' attorneys believe the Consent Decree is in the interests of the named Plaintiff, Dr. Toomey, and the Certified Classes. Dr. Toomey has reviewed and approved the proposed Consent Decree.

ii.   *The Consent Decree Does Not Suffer From Any Obvious Deficiencies.*

Courts have denied approval of settlements when the proposed settlement contains defects such as: unreasonably high attorney's fees (*Pokorny v. Quixtar Inc.*, 2011 WL 2912864, *1 (N.D. Cal. 2011); *In re Chiron Corp. Securities Litigation*, 2007 WL 4249902, *1 (N.D. Cal. 2007)), unduly preferential treatment of class representatives (*West v. Circle K Stores, Inc.*, 2006 WL 1652598, *12 (E.D. Cal. 2006)), deficient notice plan (*Fraser v. Asus Computer Intern.*, 2012 WL 6680142, *4–5 (N.D. Cal. 2012); *Walter v. Hughes Communications, Inc.*, 2011 WL 2650711, *15–16 (N.D. Cal. 2011)), unjustifiably burdensome claims procedure (*Walter v. Hughes Communications, Inc.*, 2011 WL 2650711, *16 (N.D. Cal. 2011)), plainly unfair allocation scheme (*Cordy v. USS-Posco Industries*, 2013 WL 4028627, *4 (N.D. Cal. 2013)), or overly broad release

of liability (*City of Long Beach v. Monsanto Company*, 2020 WL 7060140, *2 (C.D. Cal. 2020); *Lusk v. Five Guys Enterprises LLC*, 2019 Wage & Hour Cas. 2d (BNA) 490717, 2019 WL 7048791, *10 (E.D. Cal. 2019); *Gonzalez-Tzita v. City of Los Angeles*, 2019 WL 7790440, *10 (C.D. Cal. 2019). *See also* William B. Rubenstein, *Newberg on Class Actions* § 13:15 (5th ed. Nov. 2018 Update) (collecting cases). Here, the Consent decree does not suffer from any of these potential deficiencies. The lack of any obvious deficiencies weighs in favor of approval.

        *iii.*    *The Consent Decree Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class.*

Class representative Dr. Toomey will receive the exact same relief as all Class members: injunctive relief prohibiting Defendants' policy and practice of excluding transition-related surgical care from the Plan, thereby allowing him, and all other Class members, to be evaluated for surgical care to treat gender dysphoria (if desired) pursuant to the Plan's generally applicable standards and procedures for determining whether care is "medically necessary." Dr. Toomey is forgoing any incentive reward, commonly provided to compensate a named plaintiff for bearing the risks of litigation and their time participating in the case. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.").

        *iv.*    *The Consent Decree Falls Within the Range of Possible Approval.*

"To determine whether a settlement 'falls within the range of possible approval' a court must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011) (quoting *In re Tableware*, 484 F.Supp.2d at 1080). "[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas v. J.P. Morgan*

*Chase & Co.*, 2012 U.S. Dist. LEXIS 166704, at *16–17 (N.D. Cal. 2012).  Here, the fairness and the adequacy of the Consent Decree far outweigh the risks (and costs) of pursuing the litigation to judgment, as the Certified Classes have obtained full relief: Defendants will now offer to all current and future enrollees in the Plan transition-related surgical care deemed "medically necessary" according to the Plan's generally applicable standards and procedures.  The value of the Consent Decree also matches Certified Classes' expected recovery at the outset of the litigation, as no monetary damages were sought.

     *v.*   *The Requested Attorneys' Fees and Costs Are Fair and Reasonable.*

  Title VII grants a court the discretion to allow a prevailing party reasonable attorneys' fees, including litigation expenses and costs. *See* 42 U.S.C. § 2000e-5(k). "Plaintiffs who prevail under Title VII are entitled to attorneys' fees in 'all but special circumstances.'" *Everts v. Sushi Brokers LLC*, No. CV-15-02066-PHX-JJT, 2018 WL 3707923, at *1 (D. Ariz. Aug. 3, 2018) (quoting *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978)). "In determining whether requested attorneys' fees are reasonable, courts apply the lodestar method." *Id.*; *see also In re Bluetooth*, 654 F.3d at 941 ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes," such as Title VII, "where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation.").   The lodestar approach consists of two steps. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "First, the court establishes a lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate," excluding from the requested amount "any hours that are excessive, redundant, or otherwise unnecessary." *Id.* (internal citation omitted). Then, in rare cases, "the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." *Id.* (internal citation omitted).

1    Local Rule 54.2(c)(3) lists 13 factors this Court can consider to determine whether

2  a requested award of attorneys' fees is reasonable:

3    (A) The time and labor required of counsel; (B) The novelty and difficulty
     of the questions presented; (C) The skill requisite to perform the legal
4    service properly; (D) The preclusion of other employment by counsel
     because of the acceptance of the action; (E) The customary fee charged in
5    matters of the type involved; (F) Whether the fee contracted between the
     attorney and the client is fixed or contingent; (G) Any time limitations
6    imposed by the client or the circumstances; (H) The amount of money, or
     the value of the rights, involved, and the results obtained; (I) The
7    experience, reputation and ability of counsel; (J) The "undesirability" of the
     case; (K) The nature and length of the professional relationship between the
8    attorney and the client; (L) Awards in similar actions; and (M) Any other
     matters deemed appropriate under the circumstances.
9

10    Here, Plaintiff's counsel have dedicated over 7,400 hours to this case for an

11  estimated total of $6,578,292.50.   Such efforts included, but were not limited to:

12  responding to and ultimately prevailing on the State Defendants' motion to dismiss;

13  efforts to certify the Classes; the conduct of discovery, including extensive depositions

14  and third-party discovery; Plaintiffs' success on their discovery motions against State

15  Defendants and the Governor's Office, including in an appeal to the Ninth Circuit of this

16  court's order; and the full briefing of summary judgment.

17    However, for purposes of settlement, the parties have agreed to an award of

18  $500,000.00.   The attorneys' fees and costs are extremely reasonable under the

19  circumstances of this case.   For example, in *Everts*, the court approved $71,000.00 in

20  attorneys' fees in a Title VII claim for approximately 280 hours of work by Plaintiff's

21  attorneys.   Courts have also found attorneys' fees and costs reasonable when the award

22  proposed in the settlement is significantly less than what the attorneys might otherwise

23  be entitled to under the lodestar analysis.   *See, e.g.*, *G.F. v. Contra Costa Cnty*, No. 13-

24  cv-03667, 2015 WL 7571789, at *16 (N.D. Cal. 2015) (Class action lawsuit alleging

25  ADA violations at Contra Costa County Juvenile Hall.   Court approved attorneys' fees

26  and costs as agreed to in settlement agreement for $2,505,000.00 when lodestar analysis

27  totaled $4,414,045.55.).

28

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant approval of the Consent Decree, including the fees and costs payments to Plaintiff's counsel.

DATED this 7th day of July, 2023.


ACLU FOUNDATION OF ARIZONA

By /s/ *Christine K. Wee*
   Christine K. Wee
   3707 North 7th Street, Suite 235
   Phoenix, Arizona 85014

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
   Joshua A. Block*
   Leslie Cooper*
   125 Broad Street, Floor 18
   New York, New York 10004

WILLKIE FARR & GALLAGHER LLP
   Wesley R. Powell*
   Matthew S. Freimuth*
   Jordan C. Wall*
   Justin Garbacz*
   787 Seventh Avenue
   New York, New York 10019

*Admitted pro hac vice

*Attorneys for Plaintiff Russell B. Toomey
and the certified classes*

1

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2023, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

*/s/ Christine K. Wee*
Christine K. Wee