DREW C. ENSIGN PLLC
Drew C. Ensign (No. 025463)
202 E. Earll Drive
Suite 490
Phoenix, AZ 85004
Telephone: (602) 492-5969
drewensignlaw@gmail.com
*Counsel for Proposed Amici*
*President Petersen and Speaker Toma*

Linley Wilson (No. 027040)
Arizona House of Representatives
1700 W. Washington St.
Phoenix, AZ 85007
(602) 926-5418
LWilson@azleg.gov
*Counsel for Speaker Toma*

Greg Jernigan (No. 003216)
Arizona State Senate
1700 W. Washington St.
Phoenix, AZ 85007
(602) 926-5544
GJernigan@azleg.gov
*Counsel for President Petersen*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Russell B. Toomey,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>State of Arizona et al.,<br><br>　　　　　　Defendants. | Case No: CV-19-00035-TUC-RM (LAB)<br><br>**PROPOSED BRIEF OF AMICUS CURIAE ARIZONA SENATE PRESIDENT PETERSEN AND SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES TOMA** |

1

## TABLE OF CONTENTS

2

**INTRODUCTION**..........................................................................................................**1**

3

**ARGUMENT** ..................................................................................................................**2**

4

   **I.**   **ISSUANCE OF EXECUTIVE ORDER 2023-12 MOOTS THIS ACTION** ......**2**

5

**II.** **EVEN IF THE COURT FINDS JURISDICTION, THE COURT SHOULD**
6     **NOT APPROVE THE PARTIES' PROPOSED SETTLEMENT.** ....................**5**

7

   **A. This Court Cannot Accept a Consent Decree that Exceeds the Scope of this**
     **Lawsuit or Attempts to Bind the Arizona Legislature on Questions of**
8      **Public Policy** ........................................................................................................**5**

9

   **B. The EO and Proposed Consent Decree Threaten to Violate A.R.S. § 32-**
     **3230.........** …………………………………………………………………**6**
10

11

   **C. The Proposed Fee Award is Unreasonable and Excessive** .........................**10**

12

**CONCLUSION**.............................................................................................................**12**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Speaker of the Arizona House of Representatives Ben Toma and Arizona Senate President Warren Petersen (collectively, the "Legislative Leaders"), respectfully submit this proposed brief as amici curiae (1) addressing the legal effect of Arizona Executive Order 2023-12 ("EO"), which Governor Hobbs issued on June 27, 2023, and (2) opposing approval of the proposed Consent Decree and $500,000 attorneys' fee award.

As explained below, EO 2023-12 moots this dispute. This Court should accordingly dismiss this action for lack of subject matter jurisdiction, rather than approve the proposed Consent Decree. *See*, *e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, *the only function remaining to the court is that of announcing the fact and dismissing the cause.*'" (citation omitted) (emphasis added)).

But even if jurisdiction existed, this Court should decline to approve the proposed Consent Decree. As an initial matter, the parties, who now have shifted to the same side of the matter, are attempting to use this proceeding and this Court to bind the State on a policy matter—which is not a proper function of the judicial branch. *See Ewing v. California*, 538 U.S. 11, 24 (2003) (noting the importance of the judiciary's "traditional deference to legislative policy choices," which are "made by state legislatures, not federal courts"); *Keith v. Volpe*, 118 F.3d 1386, 1393 (9th Cir. 1997) (holding a district court "lost sight of its limitations" under the federal Constitution when it refused to "confront the fact that its interpretation of [a] Consent Decree and its resulting injunction "had the effect of overriding" a California state law). And the parties, of course, cannot agree to terms that exceed their authority or supplant state law. *See Keith*, 118 F.3d at 1393; *Kasper v. Bd. of Elec. Comm'rs*, 814 F.2d 332, 341 (7th Cir. 1987) ("A consent decree is not a method by which state agencies may liberate themselves from the statutes enacted by the legislature that created them."). This Court recently reiterated that while parties are

free to settle disputes amongst themselves, they cannot alter what the Constitution means by agreement amongst themselves; nor should they be permitted to tie the hands of the State by private agreement. *See Local 99 United Food & Commercial Workers v. Ashley*, No. 21-CV-1015 (D. Ariz. May 1, 2023).

Next, both the EO and Consent Decree threaten to violate a provision of Arizona statutory law, A.R.S. § 32-3230—which took effect on April 1, 2023, and which the Governor, Plaintiffs, and Defendants make no mention of in the EO or the proposed Consent Decree. The parties' complete failure to address § 32-3230 in the proposed Consent Decree—despite its unquestionable relevance—raises significant concerns that the proposed Consent Decree is overly broad and cannot be approved as-written. The proposed Consent Decree appears to encompass minors, which would plainly violate Arizona law. *See* A.R.S. § 32-3230(A) ("A physician may not provide irreversible gender reassignment surgery to any individual who is under eighteen years of age.").

Finally, even assuming this Court retains jurisdiction after Governor Hobbs' issuance of the EO, this Court should also reject the proposed $500,000 taxpayer-funded award of attorneys' fees to Plaintiffs. The proposed Consent Decree adds *no meaningful relief* beyond the complete relief that the Governor's EO already provided to the Class. And the parties' own filing shows that the renewed settlement discussions were spurred by the change in Governor and subsequently the Defendants' change of position. *See* Doc. 346. Without any marginal benefit to the Class beyond what the EO has already supplied, Plaintiffs are not entitled to any fee award—let alone half a million dollars of taxpayer money for what amounts to little more than mere memorialization of relief that Executive Order 2023-12 already gave them.

## ARGUMENT

### I.    ISSUANCE OF EXECUTIVE ORDER 2023-12 MOOTS THIS ACTION

This suit involves a challenge to an exclusion of coverage for gender reassignment surgery for health insurance plans for state employees (the "Exclusion"). Executive Order

1  2023-12 effectively repeals the Exclusion.[1] As a result, this action is moot and this Court

2  lacks jurisdiction to approve the proposed Consent Decree.

3  "To qualify as a case fit for federal-court adjudication, 'an actual controversy must

4  be extant *at all stages of review*, not merely at the time the complaint is filed.'" *Arizonans*

5  *for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (emphasis added). "If an intervening

6  circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at

7  any point during litigation, the action can no longer proceed and must be dismissed as

8  moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). And the Supreme

9  Court has cautioned that judgments issued by federal courts where the parties are in

10  agreement, and thus "have the same interest"—as is the case here—are both "highly

11  reprehensible" and a "nullity" under Article III. *Lord v. Veazie*, 49 U.S. 251, 255-56

12  (1850).[2] Thus even if this Court approved the proposed Consent Decree, a future

13  Governor could readily contend that he or she was not bound by the Consent Decree,

14  since it was entered without subject matter jurisdiction—both because the dispute was

15  already moot when the Consent Decree was entered and because the parties were no

16  longer actually adverse, eliminating any Article III case or controversy here.

17  Moreover, "[e]ven when Article III permits the exercise of federal jurisdiction,

18  *prudential considerations demand that [federal courts] insist upon 'that concrete*

19  *adverseness* which sharpens the presentation of issues upon which the court so largely

20  depends for illumination of difficult constitutional questions.'" *United States v. Windsor*,

21  570 U.S. 744, 760 (2013) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962) (emphasis

22  added)). That "concrete adverseness" is palpably absent here as both Plaintiffs and the

23  Defendants, as well as the Governor Hobbs, are all in obvious alignment as to their

24  _____

25  [1]   The Executive Order does require compliance with A.R.S. § 38-654(G) before the repeal of the Exclusion takes effect. *See* EO § 1(a). But compliance with section 38-

26  654(G) is purely ministerial and will not prevent the repeal of the Exclusion from occurring. Instead, the repeal of the Exclusion has been now inexorably set into motion.

27  The EO is further perfectly clear that it "take[s] effect immediately." EO § 7.

   [2]   Legislative Leaders reserve their right to seek intervention on behalf of the 56th

28  Legislature to challenge any declaratory or injunctive relief issued.

1    desired policy ends—*i.e.*, the elimination of the Exclusion and coverage of gender

2    reassignment surgery. Moreover, Defendants' silence regarding the *obvious* mootness

3    issue here—which appears to be a *complete defense* for them—is further powerful

4    evidence that "concrete adverseness" is wanting here.

5          Thus, even if Article III did not preclude entry of the proposed Consent Decree,

6    prudential considerations underlying this Court's equitable jurisdiction do. Federal courts

7    simply "are not in the business of pronouncing that past actions which have no

8    demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18

9    (1998). Indeed, "[n]o matter how vehemently the parties continue to dispute the

10    lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is

11    no longer embedded in any actual controversy about the plaintiffs' particular legal

12    rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted)). And, as

13    here, repeal of a challenged policy renders a "claim for declaratory and injunctive relief

14    with respect to the [government's] old rule … moot." *See New York State Rifle & Pistol*

15    *Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (holding case was moot

16    after policy change gave Plaintiffs the "precise relief" they were seeking).

17          The EO's repeal of the Exclusion renders this suit every bit as moot as *New York*

18    *State Rifle & Pistol* became post-repeal. *See id.* Similarly, Governor Hobbs's EO ensures

19    that the Exclusion will no longer have any "continuing effect." *See Spencer*, 523 U.S. at

20    18. Indeed, the EO expressly alludes to this lawsuit, suggesting that this lawsuit may have

21    even motivated Governor Hobbs to issue the EO. *See* EO 2023-12 at 2 ("[A] lawsuit was

22    filed against the State on January 23, 2019 alleging the Exclusion violates Title VII of the

23    Civil Rights Act of 1964 and Fourteenth Amendment of the United States Constitution.").

24    And the Exclusion's repeal further deprives both Toomey and the Class here of any

25    "personal stake" in the dispute about the lawfulness of the Exclusion since the Exclusion

26    will no longer affect them (or anyone else).[3]

27

28    [3]   Toomey may not avoid mootness by seeking damages. *Compare Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021) (availability of nominal damages can avoid

This case has thus become moot under *all* of the Supreme Court's standards set forth above. *See New York State Rifle & Pistol Ass'n*, 140 S. Ct. at 1526; *Genesis Healthcare Corp.*, 569 U.S. at 72; *Spencer*, 523 U.S. at 18. And because this suit is now moot, "the only function remaining [for] th[is] [C]ourt is that of announcing the fact and dismissing the cause.'" *Steel Co.*, 523 U.S. at 94.

## II.   EVEN IF THE COURT FINDS JURISDICTION, THE COURT SHOULD NOT APPROVE THE PARTIES' PROPOSED SETTLEMENT

Even if this case were not moot, this Court should decline to approve the proposed Consent Decree. Judicial restraint is particularly warranted here because: (1) a real possibility exists that the Consent Decree will improperly interfere with future policy decisions of the Arizona Legislature, running afoul of bedrock principles of federalism; (2) to comply with and give effect to a recently-enacted state law, A.R.S. § 32-3230, EO 2023-12 cannot be legally construed to allow transgender surgery for minors and the proposed Consent Decree must exclude minors from the covered Class; and (3) the proposed fee award of $500,000 funded by Arizona taxpayers is unreasonable.

### A. This Court Cannot Accept a Consent Decree that Exceeds the Scope of this Lawsuit or Attempts to Bind the Arizona Legislature on Questions of Public Policy

As discussed above, the parties' proposed settlement gives Plaintiffs the relief they are seeking, even though EO 2023-12 already accomplishes this result. The parties' filings over the past six months and the EO confirm that the parties are all now on the same page in this litigation and are now attempting to use this proceeding to bind the State to the current Governor's policy choice—all without the Court resolving the legal arguments Plaintiffs have raised in this litigation. As of last fall, the parties had fully briefed motions for summary judgment, making this case far from a clear win for

mootness). Due to sovereign immunity, Plaintiffs cannot obtain damages from the State or State officials, and instead may only seek prospective relief. *See Edelman v. Jordan*, 415 U.S. 651, 663-667 (1974). And this Court lacks jurisdiction to issue any prospective relief under Article III as set forth above.

Plaintiffs. But that is exactly what they are positioned to receive from this Court through the proposed Consent Decree.

The Arizona Legislature's interest in fulfilling its constitutional responsibility to enact legislation in the future on this subject and others, which reflect the policy choices of Arizonans, are paramount, *see* A.R.S. § 12-1841, and must be adequately protected in this litigation. *See Seisinger v. Siebel*, 203 P.3d 483, ¶ 26 (Ariz. 2009) ("The legislature has plenary power to deal with any topic unless otherwise restrained by the Constitution."). And when a court is asked to approve a consent decree, "it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." *Local No. 93, Intern. Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 522 (1986). In this delicate procedural posture, this Court should reject the parties' proposed Consent Decree because it attempts to improperly bind Arizona lawmakers to Plaintiffs' policy choices. *See generally Horne v. Flores*, 557 U.S. 433, 448-49 (2009) (explaining that "institutional reform injunctions often raise sensitive federalism concerns" because "[s]uch litigation commonly involves areas of core state responsibility", that "[f]ederalism concerns are heightened" when "a federal court decree has the effect of dictating state or local budget priorities", and consent decrees "present a risk of collusion between advocacy groups and executive officials who want to bind the hands of future policymakers") (citations omitted).

Accordingly, because policy choices at issue here belong to the legislative branch, not the Judiciary or parties in a lawsuit, this Court should reject the Consent Decree.

**B. The EO and Proposed Consent Decree Threaten to Violate A.R.S. § 32-3230**

As noted above, a recently-enacted Arizona law explicitly prohibits physicians from performing "irreversible gender reassignment surgery to any individual who is under eighteen years of age." *Id.* § 32-3230(A). As then-Governor Ducey explained to then-Secretary Hobbs when approving Senate Bill 1138—which enacted A.R.S. § 32-

6

3230—this bill was a "common-sense and narrowly-targeted" measure that "delays any irreversible gender reassignment surgery until the age of 18." Gov.'s Letter Signing Senate Bill 1138 (March 30, 2022).[4] Governor Ducey observed that "[t]hroughout law, children are protected from making irreversible decisions, including buying certain products or participating in activities that can have lifelong health implications." *Id.* And "many doctors who perform these procedures on adults agree it is not within the standards of care to perform these procedures on children." *Id.*

The EO does not even mention A.R.S. § 32-3230. In law, as in life, "silence is most eloquent." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266–67 (1979). Governor Hobbs' silence on A.R.S. § 32-3230 is particularly telling as the EO *does* mandate compliance with the procedural niceties of A.R.S. § 38-654(G)—just not the substantive prohibition of A.R.S. § 32-3230. The EO thus cherry picks the statutory provisions with which it will acknowledge and cites to other policy preferences of the Governor (such as those in EO 2023-01). And it is unlikely that Governor Hobbs was simply unaware of Arizona's statutory prohibition on gender reassignment surgery for minors. When Senate Bill 1138 was signed into law, then-Secretary Hobbs condemned the bill as denying "trans Arizonans the freedom to be their authentic selves" and asserted that the law "will have long-lasting and devastating effects on trans people, their families, and their communities."[5] In addition, Plaintiffs' counsel's organization, the ACLU, both urged Governor Ducey to veto the bill enacting § 32-3230,[6] and then post-signing

---

[4] *Available at* https://www.azleg.gov/govlettr/55leg/2r/sb1138.pdf.

[5] Statement of Katie Hobbs, *Katie Hobbs Stands With Trans Community Amid Hateful Laws Signed By Governor Ducey* (Mar. 31, 2022), https://katiehobbs.org/campaign-updates/press-releases/katie-hobbs-stands-with-trans-community-amid-hateful-laws-signed-by-governor-ducey/.

[6] *See* Cole, Devon, CNN, *Arizona lawmakers pass bill outlawing gender-affirming treatment for trans youth* (Mar. 24, 2022), https://www.cnn.com/2022/03/24/politics/arizona-transgender-health-care-ban-sports-ban/index.html.

7

1   "signaled it would challenge the ban on gender reassignment surgery in court."[7]

2       Instead of mentioning A.R.S. § 32-3230, the EO goes out of its way to cite a

3   decision of an Arkansas district court that held a ban on "gender-affirming care for

4   minors" violated "equal protection and due process." *See* EO 2023-12 at 2. Governor

5   Hobbs pronounces in the EO that "the State healthcare plan's exclusion of gender-

6   affirming care is contrary to the values of [her] administration as expressed in Executive

7   Order 2023-01." *Id*. Critically, however, no definition of "gender-affirming care" exists

8   under Arizona law, and Governor Hobbs has no authority to unilaterally rewrite statutes

9   through Executive Orders. Under the Arizona Constitution, the Governor is required to

10  faithfully execute the laws, Ariz. Const. art. 5, § 4, and may exercise powers that

11  "reasonably commensurate with such a broad responsibility," but this constitutional

12  authority "is not a source from which the power to make legislative decisions can be

13  created." *Litchfield Elem. School Dist. No. 79 v. Babbitt*, 608 P.2d 792, 797 (Ariz. App.

14  1980). As the Arizona Attorney General explained decades ago, "[t]he power of the

15  Governor to issue executive orders in Arizona is not definitively codified," but

16  "[w]hatever executive order power exists cannot be used to override the provisions" of

17  Arizona statutes. Ariz. Att'y Gen. Op. No. I77-163, 1977 WL 22106 (1977).

18      Although Governor Hobbs and the Legislative Leaders may fundamentally

19  disagree on matters of policy, such as those expressed in A.R.S. § 32-3230, the

20  Legislature's stated policies prevail over any conflicting statements in the Governor's

21  executive orders. Consequently, Governor Hobbs cannot expressly or by implication

22  undo Arizona's prohibition on irreversible gender reassignment surgery for minors. *See*

23  A.R.S. § 32-3230(A).

24      Likewise, the proposed Consent Decree similarly ignores A.R.S. § 32-3230, which

25  suggests that the parties either did not realize that A.R.S. § 32-3230 took effect on April

26

27  ---
    [7] *See* Caspani, Maria, Reuters, UPDATE 1-Oklahoma, Arizona ban transgender students
    from girls' sports (Mar. 30, 2022), https://www.reuters.com/article/usa-transgender-
28  oklahoma-idUSL2N2VX41F.

8

1, 2023, or decided to ignore the statute while submitting a proposed Consent Decree to the Court that risks violating A.R.S. § 32-3230. Significantly, the Class that this Court certified (to include dependents) before the statute's passage could arguably encompass minors. The proposed Consent Decree even alludes to transgender surgery for minors by providing that the settlement will apply to "employees … *and their beneficiaries*," which include "*dependents*," Doc. 353-1 at 2, 4–5 (emphasis added)—*i.e.*, children that fall within the prohibition of § 32-3230. But because of the enactment of A.R.S. § 32-3230(A), minors cannot be members of the Class and any Consent Decree must be narrowly written to encompass only adults.

In *Keith v. Volpe*, the Ninth Circuit considered a district court's interpretation that the consent decree at issue in that case overrode state law. 118 F.3d at 1392. The Ninth Circuit concluded that the district court "simply lost sight of its limitations" by "improperly" concluding "that the decree prevailed over state law." *Id.* at 1393. According to the court, the parties to the consent decree "could not agree to terms which would exceed their authority and supplant state law." *Id.* Just as in *Keith*, "the doctrine of federalism forbids" the court here from allowing a consent decree to override valid Arizona law. *See id.* at 1394.

Thus, even if the dispute presented here were still justiciable under Article III (*but see supra* § I), this Court should exercise caution and decline to wade into tangled thicket of state law by approving a Consent Decree that silently violates Arizona statutory law. It is unclear how the parties intend for the proposed Consent Decree (or EO) to operate in light of A.R.S. § 32-3230. Plaintiffs' and Defendants' attempt to ignore that proverbial elephant in the room warrants this Court's emphatic rejection.

The parties' failure to address how the proposed Consent Decree (or EO) operates in light of A.R.S. § 32-3230 raises a host of issues. Putative coverage of gender reassignment surgery for minors may mean little in practice if such surgeries remain unlawful to perform in Arizona. Or perhaps the parties believe that once the Consent

1  Decree is approved by this Court, they will be able to argue that it silently preempts
2  A.R.S. § 32-3230.

3        As this court has recently recognized, a "Court will not lightly pronounce a state
4  statute, unconstitutional or preempted, without rigorous review. Indeed, courts have
5  rejected stipulations or consent judgments from parties that purport to deem a statute as
6  unconstitutional. This is because the constitutionality of a statute is a legal question for
7  the court to decide, not the parties." *See Local 99 United Food & Commercial Workers*,
8  No. 21-CV-1015 at 2. And this Court further cited favorably other precedents refusing to
9  accept stipulations of unconstitutionality. *Id.* (citing *National Revenue Corp. v. Violet*,
10 807 F.2d 285, 288 (1st Cir. 1986) ("For an attorney general to stipulate that an act of the
11 legislature is unconstitutional is a clear confusion of the three branches of government; it
12 is the judicial branch, not the executive, that may reject legislation." (citations omitted))
13 and *West v. Bank of Commerce & Trusts*, 167 F.2d 664, 666 (4th Cir. 1948) (finding the
14 "parties may not stipulate the invalidity of statutes or ordinances, and ... courts are
15 required to disregard such stipulations since matters of public interest transcending the
16 rights of the litigants are involved.")).

17      **C. The Proposed Fee Award is Unreasonable and Excessive**

18      Finally, this Court should deny Plaintiffs' requests for $500,000 in taxpayer funds
19 as attorneys' fees. Because the proposed Consent Decree essentially adds nothing beyond
20 what the EO already gave them, there is no incremental value to the Class that could
21 justify the proposed half-a-million-dollar award. "The cases are unanimous that simply
22 *doing* work on behalf of the class does not create a right to compensation; the focus is on
23 whether that work provided a benefit to the class." *In re Cendant Corp. Sec. Litig.*, 404
24 F.3d 173, 191 (3d Cir. 2005). "The crux of th[e] inquiry is distinguishing *those benefits*
25 *created by class counsel* from the benefits created under [EO 2023-12]." *In re Prudential*
26 *Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 338 (3d Cir. 1998)
27 (emphasis added). Thus, any attorneys' fees award "must be proportioned to the
28 incremental benefits *they* confer on the class, not the total benefits." *Reynolds v.*

10

*Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002) (emphasis added). Applying these principles, the Ninth Circuit has affirmed a total denial of fees—even where the attorneys did substantial work—where Class Counsel "fail[ed] to establish how, precisely, these activities [at issue] benefitted the Class." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 914 F.3d 623, 642 (9th Cir. 2019).

Here, the proposed Consent Decree provides no meaningful marginal relief to the Class beyond what the EO already gave them. The EO repealed the challenged Exclusion entirely, thus giving Plaintiffs *complete relief*. The proposed Consent Decree simply orders Defendants to do what the EO already commands them to do. It is effectively a redundant command to take actions that were certain to be taken anyway even if no injunction ever issued.

The parties point to the many hours they have expended on this case to reach this successful outcome, *see* Doc. 353 at 14, but this Court should also be mindful that as recently as January of this year, this Court was set to hear oral argument on competing motions for summary judgment from both Plaintiffs and Defendants. The parties had engaged in settlement discussions in 2020 with no agreement, *see* Doc. 353 at 4, and the parties' own filing shows that the renewed settlement discussions were spurred by the change in Governor and subsequently the Defendants' change of position, *see* Doc. 346 (asking the Court on January 4, 2023, to postpone argument on the summary judgment motions because "Counsel for the Parties have begun discussions regarding a potential settlement of this dispute" and "[p]ostponing oral argument will also permit newly inaugurated Governor Katie Hobbs and her administration time to familiarize themselves with the case and the issues raised by Plaintiff's claims."). The Plaintiffs can hardly be considered a prevailing party when it was the Governor and EO 2023-12—and not this litigation—that supplied Plaintiffs with the precise relief they sought. Plaintiffs are not entitled to any fee award—let alone half a million dollars of taxpayer money for what amounts to little more than mere memorialization of relief that Executive Order 2023-12 already gave them.

The proposed Consent Decree ultimately represents little more than a superfluous memorialization of what the EO already mandates. It would be an injunction requiring Defendants to take actions they were already going to perform anyway. Such redundant relief cannot justify a fee award of $500,000 from Arizona taxpayers.

A $500,000 fee award is further inappropriate given the parties' failure to address A.R.S. § 32-3230. *See supra* § II(B). This Court should not reward concealment of material legal issues by approving such a large award.

## CONCLUSION

As the Ninth Circuit has emphasized, the Court should be "mindful of the United States Supreme Court's admonition that a 'federal court is more than a recorder of contracts from whom parties can purchase injunctions; it is an organ of government constituted to make judicial decisions.'" *Keith*, 118 F.3d at 1393. Because Executive Order 2023-12's repeal of the Exclusion moots this action, this Court should dismiss this suit *sua sponte* for lack of jurisdiction. Alternatively, if jurisdiction remains, the Court should reject the Consent Decree because it violates separation of powers and fails to address how the Consent Decree operates in light of A.R.S. § 32-3230. This Court should also decline to adopt the proposed $500,000 taxpayer-funded fee award.

Respectfully submitted this 10th day of July, 2023.

By: s/ Drew C. Ensign
Drew C. Ensign (No. 025462)
202 E. Earll Drive
Suite 490
Phoenix, AZ 85004
*Counsel for Proposed Amici President Petersen*
*and Speaker Toma*

Linley Wilson (No. 027040)
Arizona House of Representatives
1700 W. Washington St.
Phoenix, AZ 85007
*Counsel for Speaker Toma*

Greg Jernigan (No. 003216)
Arizona State Senate
1700 W. Washington St.
Phoenix, AZ 85007
*Counsel for President Petersen*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 10th day of July, 2023, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, which will transmit a Notice of Electronic Filing to counsel for all parties to the case that are registered CM/ECF users.


        s/ Drew C. Ensign

14