**Christine K. Wee** – 028535
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
E-Mail**:** cwee@acluaz.org

**Joshua A. Block\***
**Leslie Cooper\***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, Floor 18
New York, New York 10004
Telephone: (212) 549-2650
E-Mail: jblock@aclu.org
E-Mail: lcooper@aclu.org
*\*Admitted pro hac vice*

**Wesley R. Powell\***
**Matthew S. Freimuth\***
**Jordan C. Wall\***
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
E-Mail: wpowell@willkie.com
E-Mail: mfreimuth@willkie.com
E-Mail: jwall@willkie.com
*\*Admitted pro hac vice*

*Attorneys for Plaintiff Russell B. Toomey*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **Russell B. Toomey**,<br><br>     Plaintiff,<br><br>v.<br><br>**State of Arizona**; **Arizona Board of Regents**, a governmental body of the State of Arizona; **Ron Shoopman**, in his official capacity as Member of the Arizona Board of Regents; **Larry Penley**, in his official capacity as Treasurer of the Arizona Board of Regents; **Cecilia Mata**, in her official capacity as Secretary of the Arizona Board of Regents; **Bill Ridenour**, in his official capacity as Member of the Arizona Board of Regents; **Lyndel Manson**, in her official capacity as Chair of the Arizona Board of Regents; **Robert Herbold**, in his official capacity as Member of the Arizona Board of Regents; **Jessica Pacheco**, in her official capacity as Member of the Arizona Board of Regents; **Fred DuVal**, in his official capacity as Member of the Arizona Board of Regents; **Andy Tobin**, in his official capacity as Director of the Arizona Department of Administration; **Paul Shannon**, in his official capacity as Acting Assistant Director of the Benefits Services Division of the Arizona Department of Administration**,**<br><br>     Defendants. | No. 19-cv-00035-TUC-RM (MAA)<br><br>**OPPOSITION TO THE MOTION OF ARIZONA SENATE PRESIDENT PETERSEN AND SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES TOMA FOR LEAVE TO FILE A BRIEF AS AMICUS CURIAE AND PROPOSED BRIEF** |

Plaintiff Dr. Russell B. Toomey, on behalf of himself and the Certified Classes ("Dr. Toomey"), submits the following opposition (the "Opposition") to (i) the Motion of Arizona Senate President Petersen and Speaker of the Arizona House of Representatives Toma for Leave to File a Brief as *Amicus Curiae* and Memorandum in Support (the "Motion" or "Mot.") (Doc. 354) and (ii) the Proposed Brief of *Amicus Curiae* Arizona Senate President Petersen and Speaker of the Arizona House of Representatives Toma (the "Proposed Brief" or "PB").[1] This Opposition is accompanied by the Transmittal Declaration of Christine K. Wee, and exhibits thereto.

## INTRODUCTION

Dr. Toomey filed this lawsuit on behalf of the Certified Classes in 2019, alleging that State Defendants' categorical exclusion of gender-affirming surgery (the "Exclusion") under Arizona's health plan for state employees (the "Plan") violates Title VII and the Equal Protection Clause. After years of discovery and motion practice, including motions to dismiss, to certify the classes, to compel discovery (up to and before the Ninth Circuit), and most recently cross-motions for summary judgment, Dr. Toomey and State Defendants have reached a resolution that hinges upon both the removal of the Exclusion from the Plan and the entry of a consent decree permanently enjoining the reintroduction of that Exclusion. Although the parties have not agreed on every issue relating to this litigation, they now agree that the settlement and agreed form of consent decree (the "Consent Decree") is fair, reasonable and adequate, and it serves the best interests of the State of Arizona, ABOR, Dr. Toomey, and the Certified Classes. *Compare* Consent Mot., Ex. 1 ¶ 19, *with id.* ¶ 21.

This widely publicized litigation has been known to Senator Petersen, Speaker Toma (the "Legislators") and the rest of the Arizona Legislature for years, yet none saw fit to appear in this action. Only now, at the eleventh hour, do the Legislators seek leave to appear in order to lob a meritless attack against a Consent Decree that provides customary relief to

---

[1] Capitalized terms not otherwise defined herein have the same meaning given to such identical terms in Dr. Toomey's Consent Motion for Approval of Consent Decree ("Consent Motion" or "Consent Mot.") (Doc. 353).

1

resolve a case challenging an obvious violation of federal civil rights law. Let there be no mistake: the Motion is a mere Trojan Horse by which the Legislators articulate a deep animus towards gender-affirming care for political gain. It should be denied for the following reasons: *First*, the Legislators fail to contribute any relevant information or perspective concerning the Consent Decree and otherwise lack any cognizable interest in this dispute or any adjacent dispute. *Second*, this litigation is not mooted by Executive Order 2023-12. *Third*, the Consent Decree is appropriately tailored to protect the Certified Classes and to properly enforce federal law, and there is no conflict between the Consent Decree and A.R.S. § 32-3230(A), despite the Legislators' repeated assertions to the contrary. *Fourth*, the attorneys' fees provided in the settlement—which reflect a small fraction of the costs and time spent litigating this case over the past four years—are well within the range of reasonableness. Accordingly, this Court should proceed with approving the Consent Decree, which ensures that Dr. Toomey and the Certified Classes receive the relief they have worked so hard to achieve and that federal law requires.

## ARGUMENT

**I. THE LEGISLATORS FAIL TO CONTRIBUTE ANY RELEVANT INFORMATION OR PERPSECTIVE CONCERNING THE CONSENT DECREE AND OTHERWISE LACK ANY COGNIZABLE INTEREST IN THE DISPUTE.**

This Court has broad discretion to permit or reject an amicus brief. *JZ v. Catalina Foothills Sch. Dist.*, No. CV-20-00490-TUC-RCC, 2021 WL 5396089, at *1 (D. Ariz. Nov. 18, 2021). This Court can grant or refuse prospective amicus participation based on whether the proffered information is timely, relevant, or otherwise useful. *Ctr. for Biological Diversity v. U.S. EPA*, No. CV-20-00555-TUC-DCB, 2023 WL 4542990, at *2 (D. Ariz. June 27, 2023). "An amicus brief should normally be allowed when . . . the amicus has an interest in some other case that may be affected by the decision in the present case, or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide . . . . Otherwise, leave to file an amicus curiae brief should be denied." *Id.*

2

1   The Legislators do not purport to offer any information relevant to the issues actually
2   before the Court—i.e., whether, under Federal Rule of Civil Procedure 23(e), the proposed
3   settlement agreement is fair, adequate and reasonable to the Certified Classes.  Instead, the
4   Legislators assert that they have an "interest in vindicating the constitutionality of provisions
5   of Arizona law" as set forth in A.R.S. § 12-1841.  Mot. at 2.  A.R.S. § 12-1841 provides in
6   relevant part that "[i]n any proceeding in which a state statute, ordinance, franchise or rule
7   is alleged to be unconstitutional, the attorney general and the speaker of the house of
8   representatives and the president of the senate…shall be entitled to be heard."  A.R.S. § 12-
9   1841(A) "does not confer blanket authority . . . to defend the constitutionality of a state law"
10  even by the Arizona Senate President or House Speaker.  *Miracle v. Hobbs*, 333 F.R.D. 151,
11  155 (D. Ariz. 2019) (rejecting the then Senate President's and House Speaker's "highly
12  generalized argument" regarding their alleged interest in upholding the constitutionality of
13  Arizona laws).

14   Here, the Legislators offer no specific facts or credible arguments supporting their
15  interest in or perspective on this lawsuit, any adjacent dispute, or the Consent Decree.  The
16  only Arizona law the Legislators purport to be defending via the Motion is A.R.S. § 32-
17  3230, which bans gender-affirming surgery for minors.  But, as discussed further below, this
18  lawsuit does not challenge A.R.S. § 32-3230 and the Consent Decree does not even mention
19  this statute, let alone grant relief from it.  Ultimately, the Legislators simply assert a highly
20  generalized interest in an alleged "constitutional responsibility to enact legislation in the
21  future on this subject and others, which reflect the policy choices of Arizonans . . . ."  PB at
22  6; Mot. at 2.

23   The Legislators' generic interest in hypothetical, "future" legislation on gender-
24  affirming care is unsupported and largely irrelevant to this Court's evaluation of the Consent
25  Decree, which is directed at matters within the purview of Arizona's executive branch.  The
26  Plan is administered by the ADOA, whose direction, operation and control are vested in the
27  Director of the ADOA (currently, Defendant Andy Tobin, who consents to the settlement).
28  A.R.S. § 41-701(B);  Doc. 320 at  ¶ 10.  Administration of the Plan, and enforcement of the

3

Exclusion, falls almost entirely within the authority of the executive. Doc. 320 at ¶ 10. As the Legislators concede, their role in reviewing any changes to ADOA's health plans is "purely ministerial." Mot. 3 n.1. Far from encroaching upon the Arizona Legislature's authority or responsibilities, the Consent Decree addresses the obligations of the parties responsible for the maintenance and administration of the Plan, i.e., State Defendants and ABOR, who consent.[2] The Court should reject the non-party Legislators' last-minute intrusion into matters outside their authority and defer to Defendants, who are fully authorized to negotiate and accept the Consent Decree. *Defs. of Wildlife v. Jewell*, No. CV-14-02472-TUC-JGZ, 2016 WL 7852469, at *3 (D. Ariz. Oct. 18, 2016) (holding that the court "should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment") (*citing S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984)); *Friendly House v. Whiting,* No. CV 10-1061-PHX-SRB, 2010 WL 11452277, at *19, n. 15  (D. Ariz. Oct. 8, 2010) ("[T]he Ninth Circuit Court of Appeals has held [that], 'In the absence of exceptional circumstances ... we do not address issues raised only in an amicus brief.'")

## II. ISSUANCE OF EXECUTIVE ORDER 2023-12 DOES NOT MOOT THIS ACTION.

Executive Order 2023-12—which directs ADOA to remove the challenged exclusion—does not moot the claims of Dr. Toomey and the Certified Classes. A party asserting mootness "bears the heavy burden of establishing that there remains no effective relief a court can provide." *Sackett v. U.S. EPA*, 8 F.4th 1075, 1082 (9th Cir. 2021), *rev'd and remanded on other grounds*, 143 S. Ct. 1322 (2023). "The question is not whether the precise relief sought at the time the case was filed is still available, but whether there can be

---

[2]  Tellingly, the Legislators have never challenged that the State of Arizona, the ADOA, ABOR, and their respective representatives, are not the properly named defendants to this suit, or sought to intervene. Even now, the Legislators do not seek intervention. PB at 2. Should the Legislators seek intervention, however, Dr. Toomey reserves the right to challenge any such request for the reasons set out above, among others, including a lack of standing and the extreme prejudice of any such request at this late stage.

4

*any* effective relief." *Id*. at 1082-83  (quotations omitted) (emphasis added).  This burden is heightened when the alleged mootness stems from a defendant's voluntary cessation of the complained of conduct.  *Id.*  A "defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 169-70 (2000).  Otherwise, courts would be compelled to leave the defendant "free to return to his old ways."  *Id.*  Accordingly, a case is moot only if, "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sackett*, 8 F.4th at 1083.

When a government entity is the defendant committing to voluntary cessation, courts draw a critical distinction between the repeal of statutes and mere changes to executive policies.  Where a government voluntarily ceases the challenged conduct by passing or repealing legislation, the Ninth Circuit applies a "presumption" that the legislative action is sufficient to moot a case. *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc).  But when the government merely changes an executive policy, there is "no bare deference" to the government, and the court must "probe the record to determine whether the government has met its burden" to establish mootness.  *Brach v. Newsom*, 38 F.4th 6, 13 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 854 (2023) (en banc) (holding case was mooted after government rescinded COVID-19 policy given the changed circumstances following the pandemic, making fear of reinstatement of policies too remote and speculative).  Thus, while a "statutory change ... is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed. . . an executive action that is not governed by any clear or codified procedures cannot moot a claim" because "the government's new position could be easily abandoned or altered in the future." *Fikre v. FBI*, 904 F.3d 1033, 1038-41 (9th Cir. 2018) (citations omitted).  Importantly here, no defendant or other representative of Arizona's executive branch takes the position that the Executive Order moots Plaintiff's claims.

The Legislators' heavy reliance on *New York State Rifle & Pistol Ass'n, Inc. v. City*

*of New York*, 140 S. Ct. 1525 (2020) ignores this critical distinction. The claims in *New York Rifle* were mooted by a *statutory* change of law. *Id.* at 1526. By contrast, executive action alone is generally insufficient. *See, e.g.*, *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 458, n.1 (2017) (finding a controversy remained live where no barriers could prevent the Governor of Missouri from reinstating unilaterally the same challenged executive policy in the future); *Cooper v. Newsom*, 13 F.4th 857, 863 (9th Cir. 2021) (explaining that an executive order changing execution protocols did not moot claim because "[n]othing prevents Governor Newsom, or a future Governor, from withdrawing the Executive Order and proceeding with preparations for executions"); *Indigenous Env't Network v. Trump*, 541 F. Supp. 3d 1152, 1158 (D. Mont. 2021) (explaining that President Biden's revocation of cross-border permit did not moot case because "[a] president's decision to issue unilaterally a new cross-border permit would require no approval, no process, no examination, and could be performed without warning.").[3]

Like the executive actions that were insufficient to moot the claims in *Trinity Lutheran*, *Cooper*, and *Indigenous Environmental Network*, Governor Hobbs' issuance of Executive Order 2023-12 does not moot the claims of Dr. Toomey or the Certified Classes. The Executive Order—which could be rescinded at any time by Governor Hobbs or a future governor—is "not governed by any clear or codified procedures" that would prevent "the government's new position" from being "easily abandoned or altered in the future." *Fikre*, 904 F.3d at 1038-41. The State of Arizona has maintained the Exclusion in one form or

---

[3] The Legislators otherwise rely on plainly inapposite cases. *See generally United States v. Windsor*, 570 U.S. 744 (2013) (finding case was *not* moot even where DOJ stopped defending constitutionality of law); *but see Spencer v. Kemna*, 523 U.S. 1 (1998) (mooting habeas corpus petition alleging unconstitutional parole revocation procedures because petitioner's sentence expired); *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) (mooting trademark infringement suit where defendant filed "unconditional and irrevocable" covenant where defendant satisfied "formidable burden of showing that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur" because covenant encompassed all conceivable claims against other party (emphasis added)).

another since as long as anyone can remember (Doc. 299 ¶ 31), and the Consent Decree was achieved only after four years of costly and contentious litigation.  Even now, the Consent Decree itself reflects that the parties are not in complete agreement—for example, no Defendant admits liability for Plaintiff's claims under Title VII and the Equal Protection Clause.  Consent Mot., Ex. 1 ¶ 19.  Indeed, the Legislators' own proposed brief demonstrates that the Exclusion remains at risk, because (i) a "future Governor" may challenge the Consent Decree even if the Court adopts (PB at 3) and (ii) the Arizona Legislature may , "enact legislation in the future on this subject . . . ."  PB at 6. [4]  The Legislators' own admissions make plain that this is not a case in which it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Sackett*, 8 F.4th at 1083.

### III.   THE CONSENT DECREE IS APPROPRIATELY TAILORED TO PROTECT DR. TOOMEY AND THE CLASSES' RIGHTS UNDER FEDERAL LAW AND DOES NOT CONFLICT WITH A.R.S. § 32-3230(A).

The Legislators' substantive objections to the Consent Decree are meritless.  "[A] district court should enter a proposed consent judgment if the court decides that it is fair, reasonable and equitable and does not violate the law or public policy."  *Sierra Club, Inc. v. Elec. Controls Design, Inc.,* 909 F.2d 1350, 1355 (9th Cir. 1990).  The Court's review should be in "light of the public policy favoring settlement."  *Defs. of Wildlife v. Jewell*, CV-14-02472-TUC-JGZ, 2016 WL 7852469, at *3 (D. Ariz. Oct. 18, 2016).  Thus, the district court's role should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

---

[4]  To be sure, in the context of evaluating restrictions related to COVID-19, courts have generally found cases to be moot after executive orders rescinded the challenged policies. *Brach*, 38 F.4th at 14.  But those cases depended in large part on the fact that "the public health landscape has so fundamentally changed," making the theoretical prospect that a new health emergency could prompt the government to take new "extraordinary measures" and impose similar restrictions "too remote and speculative" to defeat mootness. *Id*.  By contrast, maintaining the state employee health plan is part of the ordinary business of government—not an extraordinary measure to respond to a once-in-a-century event—and, especially in light of the current political climate, there is nothing speculative about the possibility of the exclusion being reinstated.

7

negotiating parties." *Id.* Moreover, courts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment. *Id.*

Such deference is particularly appropriate here. The Consent Decree arrives only after four years of contentious litigation. The negotiation of the terms of the Consent Decree took nearly seven months and "at all times, the negotiations were adversarial, non-collusive, and at arm's length[.]" Consent Mot. § A(i)-(ii). And the resulting relief embodied in the Consent Decree—a permanent bar on reinstating the Exclusion or its equivalent aligns with the decisions of virtually every other Court to consider the underlying legal issue—namely, that gender-affirming surgery exclusions, like the ones at issue here, violate Title VII, the Equal Protection clause, and/or other applicable federal law.[5]

As noted above, the Legislators assert that the Consent Decree conflicts with A.R.S. § 32-3230(A), which provides that "[a] physician may not provide irreversible gender reassignment surgery to any individual who is under eighteen years of age." PB at 6-10. But there is no such conflict. The Consent Decree does not address the legality of gender reassignment surgery or any other form of health care; rather, it only addresses insurance coverage for gender-affirming healthcare. Accordingly, to the extent that A.R.S. § 32-3230(A), bars physicians from performing certain procedures in Arizona, the Consent Decree does not alter that result in any respect. However, the Plan could cover those procedures when performed by a participating provider in another state. *See* Doc. 300, Ex.

---

[5] *See, e.g., Fain v. Crouch*, No. CV 3:20-0740, 2022 WL 3051015, at *8 (S.D.W. Va. Aug. 2, 2022) (granting summary judgment for plaintiffs and holding that exclusion of medically necessary surgeries for treatment of gender dysphoria from state Medicaid program discriminated based on transgender status); *Kadel v. Folwell,* 620 F. Supp. 3d 339, 392 (M.D.N.C. 2022)(granting summary judgment and holding that categorical sex- and transgender-based exclusion of gender-affirming treatments from coverage unlawfully discriminates in violation of the U.S. Constitution and Title VII); *Lange v. Houston Cnty, Ga.*, No. 5:19-CV-392 (MTT), 2022 WL 1812306, at *10 (M.D. Ga. June 2, 2022) (granting summary judgment and holding that exclusion for gender-affirming surgery violates Title VII); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024 (D. Alaska 2020) (same); *Boyden v. Conlin*, 341 F. Supp. 3d 979 (W.D. Wis. 2018) (same); *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931 (W.D. Wis. 2018) (issuing preliminary injunction for Title VII and Section 1557).

12 (EPO Plan 2017) (noting in Article 7.4, Covered Expenses, that, "[a]ll non-emergency services within the network Service Area must be incurred at a Participating Provider," and in Article 16, Definitions, defining, "Service Area," as "*the nationwide* network offered by the Medical Network Vendor.").

Moreover, even if there is conflict between a federal consent decree and state law, a consent decree would still control if the decree is tailored to implement federal law. To be valid, "a federal consent decree must spring from, and serve to resolve, a dispute within the court's subject-matter jurisdiction; must come within the general scope of the case made by the pleadings; and must further the objectives of the law upon which the complaint was based." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). With a misleading citation to *Keith v. Volpe*, 118 F.3d 1386 (9th Cir. 1997), the Legislators assert that consent decrees cannot require the parties to violate state laws. PB at 9. But in *Keith*, "there simply was no federal law to justify the district court's superseding of state law." 118 F.3d at 1393. Here, by contrast, the Consent Decree is precisely tailored to implement federal law. Indeed, the Consent Decree provides virtually the same permanent relief that Dr. Toomey and the Certified Classes would have received if they had prevailed on their Title VII and equal protection claims. *Compare* Doc. 86 (First Amended Complaint)(relief sought included "[p]ermanent injunctive relief with respect to all Defendants, requiring Defendants to remove the Plan's categorical exclusion of coverage for '[g]ender reassignment surgery' and evaluate whether Dr. Toomey and the proposed classes' surgical care for gender dysphoria is "medically necessary" in accordance with the Plan's generally applicable standards and procedures") with the Consent Decree (Doc. 353-1 at 4-5). No more, no less. Under the Consent Decree: "Defendants are hereby permanently enjoined from providing or administering a health plan for employees of ABOR or the State of Arizona and their beneficiaries that categorically excludes coverage of medically necessary surgical care to treat gender dysphoria," and, "State Defendants' [ ] shall evaluate health care claims for surgical care to treat gender dysphoria pursuant to the health plan's generally applicable standards and procedures for determining whether service is a 'covered expense,' including

9

[ ] whether a service meets the definition of 'medically necessary.'" (Doc. 353-1 at 4-5).

The Legislators also complain that they may wish to enact future legislation restricting insurance coverage for gender-affirming surgery, and wrongly contend that a consent decree cannot "bind Arizona lawmakers" if they enact future legislation on the topic. PB at 5-6. But there is nothing unusual about a consent decree binding future policymakers. *See generally Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004).[6] If future changes in Arizona or federal law occur, the parties to the Consent Decree—or future intervenors—can always file a motion pursuant to Federal Rule of Civil Procedure 60(b)(5), which "provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal quotation marks omitted). The court can then address any such arguments at the appropriate time. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992) (setting forth the standards for evaluating such motions). The mere fact that future policymakers may disagree with a valid consent decree is not a basis for rejecting it.

## IV. THE AWARD OF ATTORNEYS' FEES IS REASONABLE IN LIGHT OF THE CLASS'S VICTORY.

The Legislators' wrongly contend that Dr. Toomey and the Certified Classes are not entitled to attorneys' fees because the parties settled the dispute by means of a consent decree. "Plaintiffs who prevail under Title VII are entitled to attorneys' fees in 'all but special circumstances.'" *Everts v. Sushi Brokers LLC*, No. CV-15-02066-PHX-JJT, 2018

---

[6] *See also Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Clev.*, 478 U.S. 501, 525 (1986) (upholding consent decree and noting, "a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial"); *Davis v. City & Cnty. of San Francisco*, 890 F.2d 1438, 1452 (9th Cir. 1989) (holding that the district court did not abuse its discretion in concluding that the consent decree is fair, adequate and reasonable under Title VII; *Lab./Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 263 F.3d 1041, 1050 (9th Cir. 2001)(sanctioning transit authority for violating consent decree and rejecting argument based on federalism concerns).

WL 3707923, at *1 (D. Ariz. Aug. 3, 2018) (quoting *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978)).  The Supreme Court had made clear that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorneys' fees" even when they do not "include an admission of liability by the defendant." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001).  Moreover, the fact that a party prevailed through settlement rather than litigation "does not weaken [their] claim to fees." *Maher v. Gagne*, 448 U.S. 122, 129 (1980).  "Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated." *Id.*; s*ee e.g. Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (noting § 1988 attorneys' fee provision was modeled after Title VII, and that the standards to determine "prevailing parties" are the same).

      Following removal of the Exclusion, and the issuance of the Consent Decree, there is no question that Dr. Toomey and the classes are prevailing parties, as they have received the complete relief they sought from the outset of this litigation: the Exclusion will be removed in its entirety and State Defendants will be barred from reinstating the discriminatory Exclusion.  This outcome resulted from four years of hard-fought and costly litigation, including Plaintiff's efforts to: respond to and ultimately prevail on the State Defendants' motion to dismiss; obtain certification of the Classes; conduct discovery, including written discovery, document production, extensive depositions and third-party discovery; succeed on their discovery motions against State Defendants and the Governor's Office, including  an appeal to the Ninth Circuit; fully brief summary judgment; and conduct the extensive negotiations that led to the Consent Decree.  All told, the undersigned counsel devoted over 7000 hours of time and incurred substantial out-of-pocket expenses in pursuing these claims.  Against this backdrop, the Consent Decree's $500,000 fee award – which is less than 10% of actual expenses and incurred fees under customary rates – is more than reasonable. (Doc. 353 at 15).

# CONCLUSION

For the reasons articulated above, the Legislators' Motion for Leave to File a Brief as *Amicus Curiae* should be denied.

Respectfully submitted this 24th day of July, 2023.

           ACLU FOUNDATION OF ARIZONA

           By /s/ *Christine K. Wee*
                Christine K. Wee
                3707 North 7th Street, Suite 235
                Phoenix, Arizona 85014

           AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                Joshua A. Block*
                Leslie Cooper*
                125 Broad Street, Floor 18
                New York, New York 10004

           WILLKIE FARR & GALLAGHER LLP
                Wesley R. Powell*
                Matthew S. Freimuth*
                Jordan C. Wall*
                787 Seventh Avenue
                New York, New York 10019

           *Admitted pro hac vice

           *Attorneys for Plaintiff Russell B. Toomey and the certified classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2023, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

>			/s/ *Christine K. Wee*
>			Christine K. Wee